1  Gerald E. Hawxhurst (Bar No. 220327)
       jerry@hawxhurstllp.com
2  Patrick B. Nichols (Bar No. 294389)
       pat@hawxhurstllp.com
3  Kyle Foltyn-Smith (Bar No. 307835)
       kyle@hawxhurstllp.com
4  HAWXHURST LLP
   11111 Santa Monica Blvd., Suite 620
5  Los Angeles, California 90025
   Telephone:   (310) 893-5150
6  Facsimile:   (310) 893-5195

7  Ken C. Stone (*pro hac vice*)
       kstone@grayreed.com
8  London England (*pro hac vice*)
       lengland@grayreed.com
9  GRAY REED & McGRAW LLP
   1601 Elm St., Suite 4600
10 Dallas, Texas 75201
   Telephone:   (214) 954-4135
11 Facsimile:   (214) 953-1332

12 Attorneys for Defendant Trammell S.
   Crow, Jr.

13

14                  **UNITED STATES DISTRICT COURT**

15                  **CENTRAL DISTRICT OF CALIFORNIA**

16

17 JULIA HUBBARD and KAYLA            Case No. 2:22-cv-7957-FLA-MAA
   GOEDINGHAUS,
18
              Plaintiffs,            **DEFENDANT TRAMMELL S.**
19                                    **CROW, JR.'S NOTICE OF**
         v.                           **MOTION AND MOTION TO**
20                                    **DISMISS THE COMPLAINT;**
   TRAMMELL S. CROW, JR., DR.         **MEMORANDUM OF POINTS AND**
21 BENJAMIN TODD ELLER, DR.           **AUTHORITIES**
   RICHARD HUBBARD, DR.
22 MELISSA MILLER, DR. JOSEPH         [[Proposed] Order submitted
   BOLIN, DR. SCOTT WOODS, DR.        concurrently herewith]
23 MRUGESHKUMAR SHAH,
   MICHAEL CAIN, COE JURACEK,
24 PHILIP ECOB, H.J. COLE, TEXAS      Date:       March 24, 2023
   RANGER CODY MITCHELL, KURT         Time:       1:30 p.m.
25 KNEWITZ, PAUL PENDERGRASS,         Courtroom:  6B, 6th Floor
   RALPH ROGERS, ROBERT PRUIT,
26 SCOTT BRUNSON, CASE GROVER,
   RICHARD BUTLER, MARC
27 MOLINA, MICHAEL HYNES, JR.,
   SHAWN MAYER, JADE MAYER,
28 RCI HOSPITALITY HOLDINGS,

INC., INTEGRITY BASED
MARKETING, LLC, STPORM
FITNESS NUTRITION, LLC, ULTRA
COMBAT NUTRITION, LLC,
ECOLIFT HOMES LLC, ELEVATED
WELLNESS PARTNERS LLC, DOE
INDIVIDUALS 1–20, and DOE
COMPANIES 21–30

Defendants.

## <u>NOTICE OF MOTION AND MOTION</u>

TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 24, 2023, at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Fernando L. Aenlle-Rocha, in Courtroom 6B of the above-entitled Court, located at 350 W. 1st St., 6th Floor, Los Angeles, California 90012, defendant Trammell S. Crow, Jr. ("Mr. Crow") will, and hereby does, move to dismiss with prejudice Plaintiffs' purported human trafficking and civil RICO claims pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6).

Good cause exists to grant this motion, which is made on the following grounds:

**A.    As to the Purported First Cause of Action for Sex Trafficking:**

(1)    The First Cause of Action for violation of the Trafficking and Violence Protection Act of 2000 ("TVPA") alleging perpetrator liability asserted by both Plaintiffs fails as against Mr. Crow because there are no plausible allegations showing that Mr. Crow (a) knowingly obtained sex acts with Plaintiffs by prohibited means or (b) exchanged anything of value "on account of" the alleged sex acts. Moreover, the Complaint relies on improper group pleading to generally allege claims against some or all defendants in violation of Rules 8 and 9(b).

(2)    The First Cause of Action for violation of the TVPA alleging beneficiary liability asserted by both Plaintiffs fails as against Mr. Crow because there are no plausible allegations that Mr. Crow (a) knowingly participated in or (b) benefitted financially or received a "thing of value" from the supposed sex-trafficking venture.  Allegations that he received "sexual gratification" and "other benefits" are insufficient as a matter of law: "sexual gratification" is not a thing of value under the TVPA and any "other benefits" are too vague to plausibly allege claims against Mr. Crow or satisfy Federal Rule of Civil Procedure 8.

TRAMMELL S. CROW, JR.'S MOTION TO DISMISS

**B.     As to the Purported Second Cause of Action for Labor Trafficking:**

The Second Cause of Action for violation of labor trafficking laws asserted by both Plaintiffs fails as against Mr. Crow because there are no allegations that Mr. Crow plausibly obtained Plaintiffs' labor by improper means or received any "thing of value" for his alleged participation in the supposed labor trafficking ring.  For the same reasons, it also fails as to most of the so-called Investor, Fixer and Medical Doctor Defendants.

**C.     As to the Purported Third and Fourth Causes of Action under RICO:**

(1)     The Third and Fourth Causes of Action for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") asserted by Plaintiffs fail against Mr. Crow, and to all defendants, because Plaintiffs do not plausibly allege cognizable injuries under RICO, and therefore Plaintiffs lack standing.

(2)     The Third and Fourth Causes of Action for violation of RICO asserted by both Plaintiffs fail as to Mr. Crow, and again as to all defendants, for the additional reason that Plaintiffs fail to plausibly allege the existence of any RICO enterprise.  The alleged facts do not show a plausible "common purpose" among the defendants; rather, each defendant is alleged to have acted with distinct purposes, interests and goals.  Moreover, the alleged facts do not show that the supposed enterprise had any organization, coordination or continuity, and the Complaint fatally conflates the supposed enterprise with the alleged pattern of racketeering itself (to the extent any pattern is alleged).

(3)     The Third and Fourth Causes of Action for violation of RICO asserted by both Plaintiffs fail as to Mr. Crow, as well as the so-called Investor and Fixer Defendants for the additional reason that Plaintiffs fail to adequately allege a plausible pattern of racketeering.  There are no alleged facts that plausibly establish sufficient predicate acts (violations of sex and labor trafficking laws, wire fraud, witness tampering, or violations of the Controlled Substances Act ("CSA")) as to Mr. Crow or any of these other defendants.

(4)     The Third and Fourth Causes of Action for violation of RICO asserted by both Plaintiffs fail as to Mr. Crow for the additional reason that Plaintiffs fail to adequately allege facts that could plausibly show that Mr. Crow "conducted or participated, directly or indirectly, in the conduct of the alleged enterprise."  The allegations at most imply that Mr. Crow was a bystander to the alleged enterprise and was merely managing his personal affairs, not those of any RICO enterprise.

(5)     The Third and Fourth Causes of Action for violation of RICO asserted by Plaintiff Ms. Hubbard fail as against Mr. Crow, and as to all other defendants because the Complaint's allegations establish that her RICO claims are barred by the applicable statute of limitations.

(6)     The Fourth Cause of Action for RICO conspiracy under Section 1962(d) asserted by both Plaintiffs fails against Mr. Crow, and—because it is a "conspiracy" claim—it necessarily fails as to all other defendants because Plaintiffs do not plausibly allege a predicate RICO claim under Section 1962(c).

This motion is made following the conference of counsel pursuant to <u>Local Rule</u> 7-3, which took place on December 29, 2022, and is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; all pleadings and other matters already before the Court in this action, and such further information presented at or before any hearing on the motion.

Dated:  January 9, 2023

GRAY REED & McGRAW LLP

HAWXHURST LLP

By:  ___/s/ *Gerald E. Hawxhurst*___
Gerald E. Hawxhurst
Kenneth Stone

Attorneys for Defendant
Trammell S. Crow, Jr.

# **Table of Contents**

Allegations Relevant to This Motion..............................................................................1

    A.   Ms. Hubbard's Relationships with Ex-Husbands and Ex-Boyfriends...............................................................................1

    B.   Ms. Goedinghaus's Relationship with Defendant Ex-Boyfriend.....................................................................................2

    C.   Defendant Rick Hubbard's Businesses. ........................................3

    D.   The Alleged "Trafficking Venture" and "RICO Enterprise." ............................................................................4

Applicable Legal Standards ........................................................................................6

    I.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ........................7

    A.   Rule 8 Notice Pleading Requirements Are Not Satisfied............7

    B.   The First Cause of Action Should Be Dismissed. .........................8

        1.   No Perpetrator Liability.....................................................9

        2.   No Beneficiary Liability...................................................12

    C.   The Second Cause of Action for Labor Trafficking Should Be Dismissed Because Plaintiffs Do Not Plausibly Allege That Mr. Crow Provided or Obtained Plaintiffs' Labor by Force or Received Any Thing of Value.....................................13

    D.   The Third and Fourth Causes of Action for Violation of RICO Under 18 U.S.C. § 1962(c) and (d) Should Be Dismissed for Several Reasons.....................................................15

        1.   Ms. Hubbard and Ms. Goedinghaus Lack RICO Standing.........................................................................15

        2.   Plaintiffs Fail to Otherwise Allege a Section 1962(c) Claim. ...........................................................................16

            a.   *Plaintiffs Fail to Allege an "Enterprise."* ............17

            b.   *Plaintiffs Do Not Allege a "Pattern of Racketeering."* ...................................................20

            c.   *Plaintiffs Do Not Sufficiently Allege "Conduct."* ...................................................22

        3.   The Statute of Limitations Bars Ms. Hubbard's Claims.............................................................................23

        4.   Plaintiffs' RICO Conspiracy Claims Also Fail................24

- i -

II.     NO LEAVE TO AMEND SHOULD BE GRANTED .........................25

Conclusion...............................................................................................................25

TRAMMELL S. CROW, JR.'S MOTION TO DISMISS

1

**<u>Table of Authorities</u>**[1]

2

<u>Cases</u>

3

<u>Aleck v. U.S.</u>,

4
        2022 WL 3106690 (D. Alaska Aug. 4, 2022) ...................................................9

5
<u>Anza v. Ideal Steel Supply Corp.</u>,
        547 U.S. 451 (2006) ...........................................................................................15

6
<u>Ashcroft v. Iqbal</u>,

7
        556 U.S. 662 (2009) ...............................................................................7, 9, 13

8
<u>Baker v. IBP, Inc.</u>,
        357 F.3d 685 (7th Cir. 2004) ............................................................................19

9
<u>Balistreri v. Pacifica Police Dep't</u>,

10
        901 F.2d 696 (9th Cir. 1990)...............................................................................6

11
<u>Baumer v. Pachl</u>,
        8 F.3d 1341 (9th Cir. 1993).................................................................................22

12
<u>Beck v. Prupis</u>,

13
        529 U.S. 494 (2000) ...........................................................................................15

14
<u>Bell Atl. Corp. v. Twombly</u>,
        550 U.S. 544 (2007) ..................................................................................7, 17

15
<u>Berg v. First State Ins. Co.</u>,

16
        915 F.2d 460 (9th Cir. 1990)..............................................................................15

17
<u>BMA LLC v. HDR Glob. Trading Ltd.</u>,
        2021 WL 4061698 (N.D. Cal. Sept. 7, 2021) ...............................................25

18
<u>Boyle v. United States</u>,

19
        556 U.S. 938 (2009) ................................................................................18, 19, 20

20
<u>Bryant v. Mattel</u>,
        573 F. Supp. 2d 1254 (C.D. Cal. 2007).............................................................20

21
<u>Canyon Cnty. v. Syngenta Seeds, Inc.</u>,

22
        519 F.3d 969 (9th Cir. 2008)........................................................................15, 23

23
<u>Chaset v. Fleer/Skybox Int'l, LP</u>,
        300 F.3d 1083 (9th Cir. 2002)............................................................................17

24
<u>Comm. to Protect Our Agric. Water v. Occidental Oil</u>,

25
        235 F. Supp. 3d 1132 (E.D. Cal. 2017)...............................................18, 19, 21

26

27
_____

28
[1] Unless stated otherwise, all emphasis is added and internal quotations and citations are omitted.

- iii -

_Destfino v. Reiswig,_
    630 F.3d 952 (9th Cir. 2011) ................................................................... 8

_Doan v. Singh,_
    617 F. App'x 684 (9th Cir. 2015) ......................................................... 18

_Doe v. Fitzgerald,_
    2022 WL 2784805 (C.D. Cal. May 13, 2022) ("_Fitzgerald II_") .............. 11, 12

_Doe v. Fitzgerald,_
    2022 WL 425016 (C.D. Cal. Jan. 6, 2022) ..................................... 9, 12, 13, 15

_Does v. Reddit, Inc.,_
    51 F.4th 1137 (9th Cir. 2022) ............................................................. 11, 12

_Eclectic Props. E., LLC v. Marcus & Millichap Co.,_
    751 F.3d 990 (9th Cir. 2014) ............................................................. passim

_Evans v. Arizona Cardinals Football Club, LLC,_
    761 Fed. Appx. 701 (2019) ............................................................. 23, 24

_Gomez v. Guthy-Renker, LLC,_
    2015 WL 4270042 (C.D. Cal. July 13, 2015) .......................................... 23

_Holmes v. Sec. Inv'r Prot. Corp.,_
    503 U.S. 258 (1992) ....................................................................... 15, 16

_Howard v. Am. Online Inc.,_
    208 F.3d 741 (9th Cir. 2000) ............................................................. 20, 24

_Kelmar v. Bank of Am. Corp.,_
    2012 WL 12850425 (C.D. Cal. Oct. 26, 2012) ......................................... 22

_Ma v. Ashcroft,_
    361 F.3d 553 (9th Cir. 2004) ................................................................. 13

_Mitchell v. Harris,_
    2019 WL 1117531 (N.D. Cal. Mar. 11, 2019) ......................................... 16

_Moore v. Bushman,_
    559 S.W.3d 645 (Tex. App. 2018) ......................................................... 14

_Motel 6 Sec. Litig.,_
    161 F. Supp. 2d 227 (S.D.N.Y. 2001) .................................................... 23

_Noble v. Weinstein,_
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) .............................................. 9, 10, 13

_Oscar v. Univ. Students Coop. Ass'n,_
    965 F.2d 783 (9th Cir. 1992) ................................................................. 16

_Painters and Allied Trades Dist. Council 82 Health Care Fund v. Takeda_
    _Pharm. Co. Ltd.,_
    943 F.3d 1243 (9th Cir. 2019) ............................................................. 15, 16

- iv -

Porter v. Jones,
    319 F.3d 483 (9th Cir. 2003) ...................................................................... 6

Quillinan v. Ainsworth,
    2018 WL 2151936 (N.D. Cal. May 10, 2018) ........................................ 21

Reves v. Ernst & Young,
    507 U.S. (1993) ........................................................................................ 22

RJ v. Cigna Health & Life Ins. Co.,
    2022 WL 4021890 (N.D. Cal. Sept. 2, 2022) ......................................... 21

Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.,
    806 F.2d 1393 (9th Cir. 1986) ........................................................... 21, 25

Sedima, S.P.R.L. v. Imrex Co.,
    473 U.S. 479 (1985) ................................................................................. 17

Shulman v. Kaplan,
    2020 WL 7094063 (C.D. Cal. Oct. 29, 2020) ........................................ 16

Skye Orthobiologics, LLC v. CTM Biomedical, LLC,
    2021 WL 6102520 (C.D. Cal. Feb. 9, 2021) ..................................... 17, 19

Staff Holdings, Inc. v. Raygoza,
    2017 WL 7410981 (C.D. Cal. Sept. 27, 2017) ....................................... 19

Standard v. Nygren,
    658 F.3d 792 (7th Cir. 2011) ............................................................... 8, 14

State Farm Mut. Auto. Ins. Co. v. Lee,
    193 Cal. App. 4th 34 (2011) .................................................................... 14

Stitt v. Citibank, N.A.,
    942 F. Supp. 2d 944, 957 (N.D. Cal. 2013) ........................................... 20

Swierkiewicz v. Sorema, N.A.,
    534 U.S. 506 (2002) ................................................................................... 7

Thinket Ink Informative Resources, Inc. v. Sun Microsystems, Inc.,
    383 F.3d 1053 (9th Cir. 2004) ................................................................. 25

Turner v. Cook,
    362 F.3d 1219 (9th Cir. 2004) ................................................................. 20

U.S. v. Todd,
    627 F.3d 329 (9th Cir. 2010) ................................................................. 9, 13

United States v. Turkette,
    452 U.S. 576 (1981) ................................................................................. 17

Walter v. Drayson,
    538 F.3d 1244 (9th Cir. 2008) ........................................................... 22, 23

Yellowcake, Inc. v. Morena Music, Inc.,
        522 F. Supp. 3d 747 (E.D. Cal. 2021).................................................................8

Statutes

18 U.S.C. § 1589.............................................................................................................14

18 U.S.C. § 1595...............................................................................................................8

18 U.S.C. § 1961.............................................................................................................17

18 U.S.C. § 1962......................................................................................................16, 22

18 U.S.C. § 1591....................................................................................................8, 9, 12

21 U.S.C. § 841...............................................................................................................21

Tex. Penal Code § 43.02.................................................................................................16

Rules

Fed. R. Civ. P. 8..............................................................................................................14

Fed. R. Civ. P. 9..............................................................................................................21

TRAMMELL S. CROW, JR.'S MOTION TO DISMISS

Plaintiffs Julia Hubbard's ("Ms. Hubbard") and Kayla Goedinghaus's ("Ms. Goedinghaus") (collectively "Plaintiffs") Complaint tells a story of dysfunctional personal and professional relationships with their ex-husbands and ex-boyfriends, defendants Sean Mayer, Richard Hubbard, Case Grover, and Michael Hynes, Jr. (the "Domestic Partners Defendants").  Plaintiffs attempt to leverage their long-running domestic quarrels into federal human trafficking and RICO claims is a cynical attempt to extract financial gain from persons who were unfortunate enough to cross paths with them.  As explained below, the law does not permit Plaintiffs to gerrymander their inter-personal disputes (no matter how serious) into federal claims against Mr. Crow or other defendants.

The story Plaintiffs allege begins long before they met Mr. Crow and most other defendants.  As alleged by them, Plaintiffs chose to work in strip clubs, use illegal drugs, and engage in group sex (even while married), well before any alleged illegal conduct by any defendant took place.  While unfortunate, the long-running tale of Plaintiffs' domestic and personal strife does not and cannot plausibly support the asserted causes of action against Mr. Crow and, indeed, most every defendant.

## **Allegations Relevant to This Motion[2]**

### A.   Ms. Hubbard's Relationships with Ex-Husbands and Ex-Boyfriends.

Ms. Hubbard was originally married to defendant Mayer.  Ms. Hubbard alleges that Mayer abused her during their time together.  (Compl. ¶ 96.)  They had two children together and after their divorce in or about 2009, they began a custody battle with each alleging that the other was abusive.  (Id.)  During her custody dispute, Ms. Hubbard met Mr. Crow while she worked at a Dallas "gentlemen's club."  (Id. ¶ 167.)  Ms. Hubbard alleges that she became close friends with Mr. Crow, such that they exchanged text messages, he would "allow himself to be

---

[2] Mr. Crow generally denies all allegations and insinuations of wrongdoing in the Complaint.  The allegations described here are merely *treated as* true pursuant to the Rule 12(b)(6) standard for determining this Motion, and their inclusion herein does not in any way indicate Mr. Crow accepts them.

TRAMMELL S. CROW, JR.'S MOTION TO DISMISS

photographed with her," and he invited her to attend charity events while she invited him to her modeling events.  (Id. ¶¶ 168, 186.)  There are no allegations that Mr. Crow was ever romantically or sexually involved with Ms. Hubbard.

The same year that Ms. Hubbard alleges to have met Mr. Crow, she alleges that she also met and "quickly entered a [romantic] relationship" with Mr. Hubbard because he acted like a "hero" and helped with her custody battle against Mayer.  (Id. ¶¶ 96-97, 100.)  Ms. Hubbard introduced Mr. Hubbard to Mr. Crow at one of her modeling shows.  (Id. ¶¶ 33, 169.)  According to Ms. Hubbard, Mr. Hubbard sought to "ingratiate himself to Crow for his own advantage," eventually asking Mr. Crow for a loan to pay legal fees related to a child custody battle.  (Id. ¶¶ 169, 187.)  Mr. Hubbard never repaid the loan, despite Mr. Crow's requests.  (Id. ¶ 187.)

In February 2010, Ms. Hubbard married Mr. Hubbard and had a daughter later that year.  (Id. ¶ 97.)  Also in 2010, Mr. and Ms. Hubbard began attending "swinger parties" together, where they would each meet and engage in consensual sex with others.  (Id. ¶¶ 108, 112-13.)

In March 2017, Ms. Hubbard left Mr. Hubbard; she continued to work at Dallas area gentlemen's clubs.  (Id. ¶¶ 247, 249.)  In early 2017, she began dating defendant Grover, the manager of the club where she worked, who allegedly abused her and took a portion of her wages for himself.  (Id. ¶¶ 45, 250-53.)

In October 2017, Ms. Hubbard left Grover and began dating defendant Hynes, Jr., who allegedly forced her to sell drugs.  (Id. ¶¶ 48, 258, 261-64.)  Hynes, Jr. lived with Ms. Hubbard until "March or April of 2018," when Ms. Hubbard's "home was repossessed due to her heavily strained financial situation."  (Id. ¶ 265.)

**B.    Ms. Goedinghaus's Relationship with Defendant Ex-Boyfriend.**

Ms. Goedinghaus also alleges a history of physical and sexual abuse prior to her meeting any defendant, including Mr. Crow.  (Id. ¶ 282.)  She met defendant Mr. Hubbard in November 2018 (presumably after Mr. and Ms. Hubbard separated) while Ms. Goedinghaus was going through "a difficult divorce."  Ms. Goedinghaus

- 2 -

1    moved in with Mr. Hubbard within a month of meeting him.  (Id. ¶¶ 280-81.)

2          Mr. Hubbard allegedly convinced Ms. Goedinghaus to attend swinger parties

3    at an Austin-area swinger club.  The Complaint also alleges that Mr. Hubbard and

4    Ms. Goedinghaus attended a party at Mr. Crow's residence, where Mr. Hubbard

5    supposedly planned for her to seduce Mr. Crow (or his son) and become pregnant by

6    one of them.  (Id. ¶ 295.)  Ms. Goedinghaus alleges that at some point Mr. Hubbard

7    made her "have sex outside of [Mr.] Crow's house where [Mr. Hubbard] could

8    watch," and that Mr. Hubbard choked her when he thought she would not comply.

9    (Id.)  This allegedly caused her physical and psychological injuries.  (Id. ¶ 343.)

10         After living together a year, Ms. Goedinghaus left Mr. Hubbard and filed a

11   criminal domestic abuse complaint against him.  (Id. ¶ 302.)  She does not allege

12   that any other defendant physically or mentally abused her.  (Id. ¶¶ 288-304.)

13   **C.    Defendant Rick Hubbard's Businesses.**

14         In 2012, Mr. Hubbard was struggling financially due to a criminal conviction

15   for stealing $3,400 from an elderly woman.  (Id. ¶ 105.)  He engaged defendant Dr.

16   Eller's services as a "business consultant" to advise him on how to make a business

17   "comeback."  (Id. ¶¶ 114, 116.)  Eller is a psychologist and "life coach" who

18   consults entrepreneurs in exchange for a monthly retainer of $2,000 to $5,000.  (Id.

19   ¶¶ 116-17.)  Between 2013 and 2017, Mr. Hubbard formed five of the defendant

20   business entities (Integrity Based Marketing, LLC, Storm Fitness Nutrition, LLC,

21   Ultra Combat Nutrition, LLC, Ecoloft Homes, LLC, and Elevated Wellness

22   Partners, LLC).  According to the Complaint, Mr. Hubbard asked the so-called

23   "Investor Defendants" to invest in one or more of his businesses.  (Id. ¶ 190.)  The

24   alleged investments were supposedly to "gain access" to sex trafficked women and,

25   in turn, Mr. Hubbard would use the Investor Defendants' names and reputations to

26   increase his own profile in the Dallas community.  (Id. ¶ 190.)  For example, Mr.

27   Hubbard allegedly put Ms. Goedinghaus to the task of encouraging investments in

28   Ecoloft Homes by offering sex.  (See id. ¶¶ 193, 194.)  Defendant Brunson

supposedly invested $27,000 in 2019.  (Id.)  Defendant Pendergrass allegedly

invested $250,000.  (Id. ¶ 214.)  According to the Complaint, Brunson had sex with

Ms. Goedinghaus, whereas Pendergrass demanded repayment of his investment

despite Goedinghaus's sexual advances.  (Id. ¶¶ 193, 216-17.)

**D.     The Alleged "Trafficking Venture" and "RICO Enterprise."**

The Complaint alleges that in 2012, Eller and Mr. Hubbard decided to start a

"sex and labor trafficking venture" (the so-called "Venture") whereby Mr. Hubbard

would prostitute Ms. Hubbard at swinger parties, which the Complaint calls "Forced

Sex Parties."[3]  (Id. ¶¶ 119-21.)  Eller would "use his psychological practice to force

[Ms.] Hubbard to engage in … the Forced Sex Parties" by "claim[ing] that [she] was

his patient and had serious psychological issues requiring heavy medication."  (Id.

¶¶ 123-24.)  She spoke with Eller twice.  (Id. ¶ 10.)  The Venture's alleged purpose

was "to traffic women for purposes of sexual acts and forced labor, to the financial

benefit of [Mr.] Hubbard, Eller, and the Medical Doctor Defendants and for the

sexual gratification and other benefits of all Defendants."  (Id. ¶ 341.)

At some unstated point the so-called "Venture" allegedly transformed into a

purported "illegal racketeering Enterprise" as other persons became entangled in

Plaintiffs' domestic affairs.  (Id. ¶ 6.)  As alleged, "[b]ecause Eller was not a

medical doctor, he was unable to write the prescriptions."  (Id. ¶ 139.)  So,

"[s]tarting in Fall 2010, Mr. Hubbard located the Medical Doctor Defendants … to

write prescriptions based only on Eller's written recommendations in exchange for

payments from [Mr. Hubbard.]"[4]  (Id. ¶ 139.)  Mr. Hubbard allegedly found the

"Medical Doctor Defendants" (Drs. Bolin, Shah, and Woods) to examine Ms.

---

[3] The Complaint defines "Forced Sex Parties" as parties where Mr. Hubbard
allegedly forced Plaintiffs "to perform sex acts for payment, which payments [Mr.
Hubbard] retained, and to secure business relationships" for him.  (Compl. ¶ 3.)

[4] The Complaint implausibly alleges that the Enterprise began procuring the
doctors' services two years before Mr. Hubbard and Eller began their consulting
relationship.  (Compare Compl. ¶ 139, with id. ¶ 116.)

1    Hubbard and prescribe medication "that Eller and [Mr.] Hubbard requested" to

2    make Ms. Hubbard more willing to participate in swinger parties.  (Id. ¶¶ 141-44.)

3    In Ms. Goedinghaus's case, the Complaint alleges that defendant Dr. Miller renewed

4    prescriptions that Ms. Goedinghaus took prior to meeting Mr. Hubbard.  (Id. ¶ 145.)

5         Ms. Hubbard began seeing Shah for pain management in 2013.  (Id.)  Bolin

6    had been Mr. Hubbard's primary care physician and occasionally wrote

7    prescriptions for Ms. Hubbard.  (Id.)  Woods was a psychiatrist who Ms. Hubbard

8    saw for $100 per visit and wrote her prescriptions.  (Id.)  While Ms. Hubbard

9    underwent multiple surgeries, including for neck injuries and torn intestinal lining

10   (id. ¶¶ 239, 241), she allegedly informed Shah (in summer 2014), Bolin[5] (in summer

11   2018) and Woods (in 2017) that "she did not need the [prescribed] drugs and was

12   being forced to engage in sex against her will."  (Id. ¶ 145.)  Miller was a primary

13   care physician who Ms. Goedinghaus began seeing in April or May 2019.  (Id.)  Ms.

14   Goedinghaus allegedly informed Miller at some point that Mr. Hubbard was

15   "withholding her medications," "physically abusing her" and "raping her."  (Id.)

16        Plaintiffs allege that Mr. Hubbard and Drs. Eller, Shah, Miller, Woods, and

17   Bolin employed two of Mr. Hubbard's long-time friends, defendants Knewitz and

18   Mitchell, as so-called fixers to deal with "problems as they came up."  (Id. ¶ 154.)

19   The alleged "problems" related to Mr. and Ms. Hubbard's tumultuous domestic

20   issues.  (E.g., id. ¶ 162.)  Knewitz was an ex-boyfriend of Ms. Hubbard and

21   allegedly counseled her to "stay with [Mr. Hubbard]."  (Id. ¶ 157.)  Mitchell, a

22   Texas Ranger, allegedly helped Ms. Hubbard report Mayer for child abuse, which

23   resulted in Mayer losing custody of his children.  (Id. ¶ 162.)

24        Plaintiffs next allege that Mr. Hubbard and Eller secured so-called "investors"

25   in the purported sex trafficking Venture, including Mr. Crow and defendants

26

27   _____

28   [5] It is implausibly alleged that Ms. Hubbard continued visits to Bolin for a year after
     she escaped the so-called "Venture."  (Compare id. ¶ 145 with id. ¶¶ 247, 249.)

TRAMMELL S. CROW, JR.'S MOTION TO DISMISS

Brunson, Cain, Cole, Ecob, Juracek, Pendergrass, Pruitt, and Rogers.[6]  The so-called

"Investor Defendants" allegedly provided "funding to run the general operations [of

the so-called Venture] and provisioning of the Plaintiffs and others, as well as to pay

Eller and the Medical Doctor Defendants, and accrue profits to [Mr. Hubbard]

himself."  (Id. ¶¶ 29, 160.)  As alleged, each "Investor Defendant" interacted with

Mr. Hubbard and Eller's supposed scheme at separate times and in different ways in

order to further their own divergent interests.[7]  (Id. ¶ 40.)

## Applicable Legal Standards

Dismissal under Rule 12(b)(6) follows a "lack of a cognizable legal theory or

the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v.

Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a Rule

12(b)(6) motion to dismiss, a complaint must satisfy "the minimal notice pleading

requirements of Rule 8(a)(2)"—a short and plain statement of the claim.  Porter v.

Jones, 319 F.3d 483, 494 (9th Cir. 2003).  The "[f]actual allegations must be enough

---

[6] Ecob and Juracek are alleged employees of Crow Holdings Capital ("CHC")
(Compl. ¶¶ 208, 212), which is not a defendant.  Mr. Crow is not employed by
CHC, nor does he have managerial control over CHC.  The Complaint does not
allege otherwise.  Mr. Crow allegedly spends his professional time "in other
endeavors, focusing on environmental philanthropy" and his role as "president of
the Crow Family Foundation," which disburses charitable funding.  (Id. ¶¶ 171-72.)

[7] The gamut of each person's alleged interests runs far and wide:  Brunson invested
$27,000 in one of Mr. Hubbard's businesses.  (Id. ¶ 195.)  Cain and Cole attended
swinger parties and watched Ms. Hubbard have sex with another woman.  (Id. ¶ 40.)
Cole once had sex with Ms. Hubbard.  (Id. ¶ 203.)  Ecob and Juracek were merely
"aware" of the swinger parties but did not talk about them.  (Id. ¶ 40.)  Juracek was
sent a nude photo of Ms. Hubbard.  (Id.)  At some point Pendergrass provided a
$250,000 loan to one of Mr. Hubbard's companies, which he expected to be repaid
(allegedly it was).  (Id. ¶¶ 40, 216.)  Meanwhile, Pendergrass saw Ms. Goedinghaus
have sex with someone, but rejected her sexual advances.  (Id. ¶ 217.)  Pruitt
employed Mr. Hubbard at his company and at some point, paid Mr. Hubbard's
utility bill, in exchange for Ms. Hubbard sitting on his lap so he could "grope" her
and "kiss her cheek"; he too received nude photos of her.  (Id. ¶¶ 221-22.)  Rogers
owned the mobile home where Mr. Hubbard and Goedinghaus lived; he partially
waived rent after watching them have sex.  (Id. ¶¶ 225-226, 228.)

- 6 -

to raise a right to relief above the speculative level."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  A complaint must include sufficient "factual enhancement" to cross "the line between possibility and plausibility."  <u>Id.</u> at 557. This standard is to prevent "a plaintiff with a largely groundless claim" from "tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of settlement value."  <u>Id.</u> at 557-58.

Establishing plausibility requires a "context specific" two-step process in which the court "draws on its judicial experience and common sense."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  First, a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  <u>Id.</u> Second, the court "assume[s] the … veracity [of] well pleaded factual allegations [and] determine[s] whether they plausibly give rise to an entitlement to relief."  <u>Id.</u> "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility."  <u>Id.</u> at 678. "When considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior."  <u>Eclectic Props. E., LLC v. Marcus & Millichap Co.</u>, 751 F.3d 990, 996 (9th Cir. 2014); <u>see</u> <u>also</u> <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506, 514-15 (2002) ("Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits … that is not the test").

<u>Argument</u>

## I.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED

### A.   Rule 8 Notice Pleading Requirements Are Not Satisfied.

The Complaint attempts to turn a series of domestic disputes between Plaintiffs and the Domestic Partner Defendants into a sweeping criminal sex trafficking venture and RICO enterprise without giving Mr. Crow and the other defendants it attempts to ensnare sufficient notice to adequately respond to the allegations.  "To form a defense, a defendant must know what he is defending against; that is, he must know the legal wrongs he is alleged to have committed and

- 7 -

1  the factual allegations that form the core of the claims asserted against him."

2  Standard v. Nygren, 658 F.3d 792, 799-800 (7th Cir. 2011).  Deciphering Plaintiffs'

3  Complaint is, at best, difficult.  The first sentence of each claim adopts and realleges

4  all prior paragraphs.  (Compl. ¶¶ 318, 322, 326, 336.)  And each count is merely a

5  recitation of the elements of each cause of action alleged without specific facts.

6      Furthermore, the Complaint relies heavily on "everyone did everything"

7  allegations.  (See, e.g., id. ¶ 309 (stating all defendants participated in alleged

8  predicate acts).)  In reading the Complaint, it remains unclear which allegations

9  concerning which defendant make up each claim.  Moreover, there are a number of

10  salacious claims against several defendants, but they are not connected to any

11  alleged injuries.  The Complaint should be dismissed for noncompliance with Rule

12  8(a).  See Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011) (dismissing

13  complaint containing "everyone did everything" allegations); see also Yellowcake,

14  Inc. v. Morena Music, Inc., 522 F. Supp. 3d 747, 769-70 (E.D. Cal. 2021)

15  (incorporation by reference of all preceding allegations is "an improper shotgun

16  pleading technique that does not give proper notice to [defendants] or the Court").

17      **B.    The First Cause of Action Should Be Dismissed.**

18      The Victims of Trafficking and Violence Protection Act of 2000 ("TVPA")

19  creates a private right of action for a victim of sex trafficking as defined in the act.

20  18 U.S.C. § 1595(a).  There are two types of liability under the TVPA:  (1) liability

21  for *perpetrators* of a violation and (2) for anyone who knowingly *benefits from*

22  *participation* in a "venture" that violated the TVPA.  18 U.S.C. § 1591(a)(1)-(a)(2).

23  Plaintiffs' claim fails as to Mr. Crow and all other defendants because it does not

24  allege—explicitly or implicitly—which defendant is purportedly liable under which

25  theory.  Each defendant is left to guess the alleged wrong each of them respectively

26  committed and how such conduct constitutes a TVPA cause of action.  That is

27  insufficient under Rule 8.  See Nygren, 658 F.3d at 799-800.  But even with proper

28  notice, Plaintiffs do not sufficiently allege either type of liability.  Moreover,

- 8 -

Plaintiffs do not state facts that plausibly make up a cause of action considering the interpersonal relationships between Plaintiffs and the Domestic Partner Defendants.[8]

### 1. No Perpetrator Liability.

To sufficiently allege that Mr. Crow is a TVPA "perpetrator," Plaintiffs must allege plausible facts that he "(i) knowingly; (ii) in interstate or foreign commerce; (iii) recruit[ed], entic[ed], harbor[ed], transport[ed], provid[ed], obtain[ed], maintain[ed], patronize[d], or solicit[ed] by any means a person; (iv) knowing, or, in reckless disregard of the fact, that means of force, threats of force, fraud or any combination of such means will be used; (v) to cause the person to engage in a commercial sex act." See 18 U.S.C. § 1591(a); see also Doe v. Fitzgerald, 2022 WL 425016, *5 (C.D. Cal. Jan. 6, 2022) ("Fitzgerald I").  The causal relationship between the alleged perpetrator's conduct and the occurrence of the allegedly trafficked sex act is a crucial inquiry.  See Noble v. Weinstein, 335 F. Supp. 3d 504, 519 (S.D.N.Y. 2018) ("[T]he question is whether the prohibited means of fraud and force were 'used to cause,' or designed to bring about, the sex act."); see also U.S. v. Todd, 627 F.3d 329, 334 (9th Cir. 2010) ("What the statute requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution.").  Crucially, it is the fulfillment of the knowledge requirement that creates TVPA liability for a defendant who would otherwise merely be the customer of a commercial sex act.  Compare id., with Iqbal, 556 U.S. at 678 (allegations that are "merely consistent with a

---

[8] Although this Motion focuses on the pleading failures as to Mr. Crow, the same arguments apply to most of the other defendants.  See Aleck v. U.S., 2022 WL 3106690, *4 (D. Alaska Aug. 4, 2022) (dismissing other defendants that had not appeared based on defendant's motion to dismiss).  For example, the TVPA claim should be dismissed against most of the Labor Trafficking Defendants (e.g., Grover, Molina and RCI Entertainment, Inc.) because no factual allegations connect them to the TVPA allegations.  The Complaint alleges that Ms. Hubbard left Mr. Hubbard in March 2017 and only thereafter encountered these defendants, but there are no sex trafficking allegations concerning her and these defendants.  (Compl. ¶ 249.)

1  defendant's liability" do not meet plausibility standard).

2      Plaintiffs attempt to allege that Mr. Crow "obtained" "commercial sex acts"

3  from Plaintiffs knowing that Mr. Hubbard would engage in prohibited conduct to

4  cause Ms. Hubbard to "have sex with [Mr.] Crow's then girl-friend" and Ms.

5  Goedinghaus to "have sex in front of [Mr.] Crow."  (See Compl. ¶¶ 34, 36.)  These

6  allegations are not plausible for at least three reasons: (1) there are no allegations of

7  a "commercial sex act"; (2) there are no plausible, non-conclusory allegations

8  showing that Mr. Crow knew at the time he allegedly obtained Plaintiffs that it was

9  by prohibited means; and (3) the allegations against Mr. Crow are as consistent with

10  "an obvious alternative explanation"—observing a consensual sex act—as with

11  alleged illegal conduct.  See Eclectic Props. E., LLC, 751 F.3d at 996.

12      The Complaint does not plausibly allege any direct fraud, force, threat of

13  force, or combination thereof by Mr. Crow, let alone conduct that *caused* Plaintiffs

14  to engage in a purported commercial sex act.  The Complaint offers the conclusory

15  allegation that Mr. Crow "knew full well all the details of force, fraud, threat, and

16  coercion which [Mr. Hubbard] used" to force Plaintiffs to engage in sex acts

17  because Ms. Hubbard once "told [Mr.] Crow that [Mr. Hubbard] was forcing her to

18  perform sex acts and forcing her to take drugs to induce such acts."  (See Compl. ¶¶

19  31, 34, 36, 185.)  This fails the plausibility requirement as a matter of law.  See

20  Eclectic Props. E., LLC, 751 F.3d at 996.

21      Even taken as true, the allegation is vague; Ms. Hubbard may have informed

22  Mr. Crow of her circumstances in 2017 or later—at or after the time she supposedly

23  escaped the so-called Venture (Compl. ¶¶ 247, 249)—so it does not save her claim

24  against him because Mr. Crow could not plausibly have had the requisite knowledge

25  at the time the wrongful means were employed.  See Noble, 335 F. Supp. 3d at 518

26  (TVPA "requires the pleader allege awareness, *at the initial … stage*, that certain

27  prohibited means will be employed to achieve a … commercial sex act").  Nor does

28  the Complaint plausibly allege that Ms. Hubbard ever informed Mr. Crow that she

- 10 -

1   was being forced to engage in *commercial* sex acts as opposed to private sex acts

2   (such as attending swingers' parties with Mr. Hubbard—her abusive husband).

3   With respect to Ms. Goedinghaus, the Complaint does not even attempt a conclusory

4   allegation that Mr. Crow was informed of any forced sex or sex trafficking.  See

5   Does v. Reddit, Inc., 51 F.4th 1137, 1145 (9th Cir. 2022) ("Mere association with

6   sex traffickers is insufficient absent some knowing participation").

7         Next, Plaintiffs fail to allege a "commercial sex act," i.e., that Mr. Crow

8   exchanged any "thing of value" to cause Plaintiffs to engage in a sex act.  See Doe

9   v. Fitzgerald, 2022 WL 2784805, at *3 (C.D. Cal. May 13, 2022) ("Fitzgerald II")

10  ("Commercial sex act" defined in § 1591(e)(3) as "any sex act, on account of which

11  anything of value is given to or received by any person.").  Plaintiffs allege that Mr.

12  Hubbard "convinced [Mr.] Crow to invest in the Venture" but there are no

13  allegations (let alone plausible allegations) that the supposed investment was *on*

14  *account of* the alleged sex acts.  (See Compl. ¶ 34.)  Indeed, the only specific

15  allegation of Mr. Hubbard asking for money from Mr. Crow is in connection with

16  Mr. Hubbard needing money to fund his child custody litigation.  (Id. ¶ 187 (Mr.

17  Hubbard's purported letter to Mr. Crow).)  There is no allegation that the loan Mr.

18  Crow provided to Mr. Hubbard was related to the so-called Venture in any manner.

19  And the Complaint's allegations foreclose any such conclusion.  (See id. (Mr.

20  Hubbard's purported email to an unknown third party mentioning that Mr. Crow

21  was "frustrated" Mr. Hubbard had not repaid the loan).)

22        When stripped of its conclusory allegations, the Complaint fails to allege any

23  sex trafficking violation against Mr. Crow (or any other defendant).  The Complaint

24  attempts to smear Mr. Crow with allegations concerning his "lifestyle," viz., that he

25  "enjoyed hosting drug-fueled parties" (id.) and "recreational sex."  (Id. ¶ 179.)

26  Gossip column fodder does not satisfy federal pleading standards.  Cf. Eclectic

27  Props. E., LLC, 751 F.3d at 996 (setting forth pleading standards).  There are no

28  allegations that Mr. Crow knowingly hosted parties where Plaintiffs were forced to

have sex or that he paid for them to be sex trafficked at any party he hosted. Compare Fitzgerald II, 2022 WL 2784805, at *5 (finding no commercial sex act where Doe No. 5 merely alleged that she was offered "things of value" that "were not offered in exchange for a sex act"), with id. at *3 (allegation that defendant "would provide '$200 and clothing' in 'payment' for the sex acts with Doe No. 6" suffices).  The claim for perpetrator liability against Mr. Crow should be dismissed.

### 2.  No Beneficiary Liability.

To adequately allege a claim for beneficiary liability under the TVPA, Plaintiffs must allege that Mr. Crow knowingly benefitted from participation in a venture, which he knew or should have known was engaged in sex trafficking. Fitzgerald I, 2022 WL 425016, at *8.  "Participation in a venture" means knowingly assisting, supporting or facilitating sex trafficking.  18 U.S.C. § 1591(e).  To "knowingly benefit" Plaintiffs must show that Mr. Crow "benefitted either financially or by receiving a 'thing of value'" and that there is a "causal relationship between affirmative conduct … and receipt of a benefit."  Id.; see also Reddit, Inc., 51 F.4th at 1145.  Plaintiffs do not adequately allege that Mr. Crow participated in the so-called Venture or that he was financially compensated by it.

First, there are no allegations showing Mr. Crow provided "assistance, support, or facilitation" to the alleged sex trafficking ring.  (See supra at I.B.1). Notwithstanding vague allegations that *Mr. Hubbard* supposedly threatened Plaintiffs and others privately with Mr. Crow's "influence," the only allegations regarding Mr. Crow's connection to the so-called "Venture" are:  (1) that Mr. Crow gave a loan to Mr. Hubbard so he could pay his child-custody lawyer, and that this loan was not repaid, (2) that Mr. Crow supposedly received nude photos of Plaintiffs and held parties for business associates at which *Mr. Hubbard* allegedly forced Plaintiffs to do drugs and have public sex with persons other than Mr. Crow, (3) that defendant Ecob kept the supposed parties a secret, and (4) that defendant Juracek told Ms. Hubbard that he would testify in her child custody case.  (Id. ¶¶ 208, 212.)

- 12 -

1      These allegations are insufficient to plausibly show beneficiary liability by

2   Mr. Crow or the so-called Investor and Fixer Defendants.  See Noble, 335 F. Supp.

3   3d at 524 (dismissing TVPA claim where complaint was missing "factual

4   allegations that link [defendant's] actions to" conduct of the alleged venture).

5      Second, Plaintiffs vaguely allege that Mr. Crow (and the so-called "Investor

6   Defendants") received "sexual gratification" and "other benefits" for their support of

7   the "Venture."  (Compl. ¶ 337; see also id. ¶ 38 ("Crow benefitted from working

8   [with Mr. Hubbard] to get others to join the Venture as co-investors and clients.").)

9   But "sexual gratification" is not a "thing of value" under the TVPA, otherwise it

10  would transform innumerable, consensual sexual activities into "sex trafficking."

11  See Fitzgerald I, 2022 WL 425016 at *6-7 (finding that interpretation of "sexual

12  gratification" as a "thing of value" under TVPA would "yield absurd results"); see

13  also Ma v. Ashcroft,361 F.3d 553, 558  (9th Cir. 2004) (interpretations "which could

14  produce absurd results are to be avoided").  The "other benefits" alleged in the

15  Complaint are too vague and conclusory to support a claim.  See Iqbal, 556 U.S. at

16  678, 681.  The claim for beneficiary liability should be dismissed as to Mr. Crow.[9]

17  **C.    The Second Cause of Action for Labor Trafficking Should Be Dismissed**

18  **Because Plaintiffs Do Not Plausibly Allege That Mr. Crow Provided or**

19  **Obtained Plaintiffs' Labor by Force or Received Any Thing of Value.**

20     To maintain a labor trafficking claim, Plaintiffs must plead facts that

21  plausibly show that Mr. Crow (and each defendant) knowingly provided or obtained

22  the plaintiffs' labor or services by means of (1) "force, threats of force, physical

23  restraint, or threats of physical restraint," (2) "serious harm or threats of serious

24  harm," (3) "the abuse or threatened abuse of law or legal process," *or* (4) "any

25  scheme, plan, or pattern intended to cause" the plaintiff to believe that "serious harm

26  or physical restraint" would result if they did not perform such labor.  See 18 U.S.C.

27

28  [9] Ms. Goedinghaus's TVPA claims also fail because it is not alleged that Mr. Crow
    was *aware* of Mr. Hubbard's control or abuse of her.  See Todd, 627 F.3d at 334.

TRAMMELL S. CROW, JR.'S MOTION TO DISMISS

§ 1589(a)(1)-(4).  Alternatively, Plaintiffs must plead facts that plausibly show that Mr. Crow (and each defendant) "knowingly benefit[ted], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means[.]"  See 18 U.S.C. § 1589(b).  Here again, the Complaint—long in rhetoric and short on detail—does not provide proper notice to Mr. Crow (or any other defendant) what alleged conduct *by each of them* purportedly supports a cause of action against them, or under which theory.  See Fed. R. Civ. P. 8; see also Nygren, 658 F.3d at 799-800.

Plaintiffs' labor trafficking claim fails for additional reasons.  Assuming Plaintiffs intended to allege that Mr. Crow obtained sex acts from them, the section 1589(a) claim fails because they do not allege any threats, force, serious harm or scheme by Mr. Crow to provide or obtain any form of labor from them.  Plaintiffs instead make the spectacular allegation that Juracek (Mr. Crow's alleged "fixer") threatened to offer testimony against Ms. Hubbard "in court that could have [her] children taken away from her."  (Compl. ¶¶ 209, 211.)  But this is not sufficient.  Plaintiffs do not allege that Mr. Crow directed Juracek to say this, that Juracek was Mr. Crow's agent, or that Juracek otherwise participated in any scheme to cause Plaintiffs to believe they would be harmed by way of his testimony.  Moreover, Plaintiffs do not allege that Juracek threatened to *lie* (that is, to scheme or threaten) but only allege that he told Ms. Hubbard that he would *testify* (that is, take an oath to provide evidence) in a custody proceeding already underway.  (Id.)  This is not an actionable abuse of process.  See State Farm Mut. Auto. Ins. Co. v. Lee, 193 Cal. App. 4th 34, 40 (2011) (abuse of process requires an ulterior motive in using the process willfully and in a wrongful manner); see also Moore v. Bushman, 559 S.W.3d 645, 653 (Tex. App. 2018) (same under Texas law).

Furthermore, the section 1589(b) claim fails because Plaintiffs do not

- 14 -

TRAMMELL S. CROW, JR.'S MOTION TO DISMISS

sufficiently allege that Mr. Crow received anything of cognizable value or that there was any *quid pro quo*.  (See supra at I.A.2); cf. Fitzgerald I, 2022 WL 425016 at *6-7 ("sexual gratification" is not a "thing of value" under TVPA).  Nor do they allege facts showing that Mr. Crow obtained anything of cognizable value while knowing or in reckless disregard of the fact that it was improperly obtained.  (Supra at I.B.1)

**D.     The Third and Fourth Causes of Action for Violation of RICO Under 18 U.S.C. § 1962(c) and (d) Should Be Dismissed for Several Reasons.**

**1.     Ms. Hubbard and Ms. Goedinghaus Lack RICO Standing.**

To allege RICO standing, Plaintiffs must allege "concrete financial loss" to business or property and show that such harm was "by reason of the RICO violation."  See Canyon Cnty. v. Syngenta Seeds, Inc., 519 F.3d 969, 975 (9th Cir. 2008); see also Painters and Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd., 943 F.3d 1243, 1248 (9th Cir. 2019).  The showing requires both "proximate and but-for causation."  See Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992).  When evaluating a RICO claim for proximate causation, the question is whether the alleged violation led directly to the plaintiff's injuries.  Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006).  The injury must be cause by "an overt act" of racketeering or be "otherwise wrongful under RICO."  Beck v. Prupis, 529 U.S. 494, 505 (2000).

Plaintiffs allege the following supposed RICO injuries:  lost money that Plaintiffs earned for sexual acts at swinger parties and "physical and emotional injury."  (Compl. ¶¶ 312, 335, 343.)  Ms. Hubbard separately alleges injuries for the repossession of her home and confiscation of wages by Grover for his own benefit.  (Id. ¶¶ 45, 265.)  None of the alleged injuries provide a basis for RICO standing.  As a matter of law, the conclusory allegations that Defendants "damaged" Plaintiffs or "caused physical and emotional injury" are insufficient.  See Berg v. First State Ins. Co., 915 F.2d 460, 463-64 (9th Cir. 1990) (personal injuries, including emotional distress, that result in pecuniary losses, are not compensable under RICO).  Also, as

TRAMMELL S. CROW, JR.'S MOTION TO DISMISS

a matter of law, money earned at parties in exchange for sexual acts (i.e., for illegal prostitution) is not recoverable under RICO.  See Shulman v. Kaplan, 2020 WL 7094063, at *2 (C.D. Cal. Oct. 29, 2020) (injuries to illegal businesses are not redressable under RICO); cf. Mitchell v. Harris, 2019 WL 1117531, at *1 (N.D. Cal. Mar. 11, 2019) (court is unable to grant relief which would violate state law); Tex. Penal Code § 43.02 (illegal to receive a fee to engage in sexual conduct).

Concerning Ms. Hubbard's additional alleged injury, no allegations sufficiently connect the loss of her home or Grover's supposed wage garnishment to the purported Enterprise's conduct, much less to anything done by Mr. Crow.  First, the Complaint asserts that Grover kept her wages "*for his own benefit*"—not for the so-called Enterprise.  (Compl. ¶ 45.)  Second, Ms. Hubbard alleges her home's repossession was caused by "her heavily strained financial situation."  (Id. ¶ 265.) There is no causal link between the supposed Enterprise and that repossession. Rather, there are numerous alternative causes that might be the actual source of her alleged harm, such as her ongoing domestic issues with Mr. Hubbard, Grover and Hynes, Jr. or a simple failure to pay her mortgage.  See Takeda Pharms Co. Ltd., 943 F.3d at 1249 (plaintiff must show injury is directly attributable to RICO violation as opposed to other factors); see also Eclectic Props. E., LLC, 751 F.3d at 996 ("When considering plausibility, courts must also consider an obvious alternative explanation").  The Complaint fails to proximately connect the alleged conduct to a cognizable RICO injury.  See Holmes, 503 U.S. at 268.

### 2.    Plaintiffs Fail to Otherwise Allege a Section 1962(c) Claim.

RICO is "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff."  Oscar v. Univ. Students Coop. Ass'n, 965 F.2d 783, 786 (9th Cir. 1992).  To sustain a civil RICO claim under 18 U.S.C. § 1962(c), Plaintiffs must plausibly allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's business or property.  See Sedima, S.P.R.L. v. Imrex

Co., 473 U.S. 479, 496 (1985); see also Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086 (9th Cir. 2002).

Plaintiffs allege a long-running story of domestic abuse and drug addiction as between themselves and the Domestic Partner Defendants, which they attempt to transform into RICO claims against others with whom they socially intersected.  Cf. Bell Atl. Corp., 550 U.S. at 557-58.  Plaintiffs strain to include as many defendants and as much conduct as possible (see id.), but even then, Mr. Crow and the other defendants come and go without any factual allegations that plausibly connect them, or their conduct, to the supposed Enterprise—the gravamen of a RICO claim.

Nor do Plaintiffs allege facts showing that any defendants functioned as a continuing unit with a common purpose.  Plaintiffs cannot salvage their pleading by resorting to conclusory allegations to fill the gaps.  (See, e.g., Compl. ¶ 342 (conclusory allegation that every act was done in furtherance of the enterprise).)  Simply put, they fail to allege facts to "nudge[] their [RICO] claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

### a.  Plaintiffs Fail to Allege an "Enterprise."

There are two categories of associations that come within the purview of the statutory definition of "enterprise."  See 18 U.S.C. § 1961(4).  The first encompasses "legal entities" and the second covers 'any union or group of individuals associated in fact although not a legal entity.'"  United States v. Turkette, 452 U.S. 576, 581-82 (1981).  "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."  Id. at 583; see Skye Orthobiologics, LLC v. CTM Biomedical, LLC, 2021 WL 6102520, at *11 (C.D. Cal. Feb. 9, 2021) (requiring "proof of an enterprise separate and apart from its alleged pattern of racketeering activity.").  Plaintiffs do not assert a legal entity and fail to adequately allege an association-in-fact.  (See Compl. ¶ 329.)

To allege an association-in-fact enterprise, Plaintiffs must plead that it "has

(A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." <u>Eclectic Props. East, LLC</u>, 751 F.3d at 997. At a minimum, they must allege that the defendants "associated together for a common purpose of engaging in a course of conduct … [,] evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit." <u>Doan v. Singh</u>, 617 F. App'x 684, 686 (9th Cir. 2015).

The Complaint does not plausibly allege a common purpose shared by all defendants. Rather, it alleges that the *purposes* of the supposed criminal enterprise were "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Mr. Hubbard, Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants." (Compl. ¶ 341.) But the facts alleged do not plausibly show any "common purpose and course of conduct" among the Defendants; instead, the allegations are that each defendant acted with distinct purposes, interests and goals. <u>See</u> <u>Boyle v. United States</u>, 556 U.S. 938, 950 (2009).

For example: the medical doctors prescribed drugs to Plaintiffs for their own pecuniary gain, not to traffic Plaintiffs (<u>id.</u> ¶ 146); Grover's goal was to withhold for his own benefit Ms. Hubbard's wages at a gentleman's club (<u>id.</u> ¶ 250); Hynes Jr. is an alleged drug dealer who had Ms. Hubbard sell drugs for his own financial gain (<u>id.</u> ¶ 269); there is no indication what purpose Mitchell had for "fixing" unidentified "problems" (<u>id.</u> ¶ 160); and the goal of the so-called "Investor Defendants" including Mr. Crow, was allegedly to receive "sex and media of naked women or individuals engaged in sex acts." (<u>Id.</u> ¶ 39.) Mr. Hubbard's purpose was allegedly to force Plaintiffs and others to "perform sex acts for payment, which payments he retained, and to secure business relationships." (<u>Id.</u> ¶ 3.) The Complaint's conclusory attempt to align defendants' goals cannot change the fact that their interests point in different directions. There is no plausible "unified agenda" pled. <u>See</u> <u>Comm. to Protect Our Agric. Water v. Occidental Oil</u>, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017) (failure to plead a RICO enterprise where

1  plaintiffs "allege[d] only a series of disconnected incidents, each involving a subset

2  of the overall group of defendants, with no clear indication of a unified agenda");

3  see also Baker v. IBP, Inc., 357 F.3d 685, 691 (7th Cir. 2004) (finding "divergent

4  goals" among defendants insufficient to allege a RICO enterprise).

5      Plaintiffs also do not adequately allege that Defendants had sufficient

6  organization or coordinated activities as a continuing unit.  Taking the Complaint at

7  face value, the alleged participants in the "Enterprise" that somehow sprung from

8  the supposed sex trafficking "Venture" never planned anything, worked together to

9  obtain a common end, split profits, or even knew who each other were in most

10 cases.  See Staff Holdings, Inc. v. Raygoza, 2017 WL 7410981, at *3 (C.D. Cal.

11 Sept. 27, 2017) (finding no enterprise where there were no facts indicating that

12 individual defendants together planned, discussed roles, or divided proceeds).

13 According to the Complaint, after Eller and Mr. Hubbard began the so-called

14 "Venture," a "racketeering enterprise" simply arose out it.  (Id. ¶ 6.)  To be sure,

15 "crime and misconduct" were admittedly part of Plaintiffs' lives long before the

16 events alleged in the Complaint, but that allegation hurts, not helps, their RICO

17 claim.  (Compare Compl. ¶¶ 160, 280, with Occidental Oil, 235 F. Supp. 3d at 1175

18 (no RICO enterprise based on disconnected incidents among subgroups).)  Plaintiffs

19 have not adequately alleged a RICO Enterprise.  See Boyle, 556 U.S. at 947 n.4 (un-

20 orchestrated pattern of crime is insufficient to show RICO enterprise).

21      The RICO claim also fails because the Complaint conflates the supposed

22 "Enterprise" with the alleged pattern of racketeering.  Again, the Enterprise

23 supposedly arose out of Mr. Hubbard's Venture for "traffic[king] women for

24 purposes of sexual acts and forced labor" purely by happenstance.  (Compl. ¶¶ 6,

25 341.)  There are no allegations indicating that there is an enterprise that stands

26 "separate and apart" from these wrongful acts—a basic requirement for a RICO

27 claim.  See Skye Orthobiologics, LLC, 2021 WL 6102520, at *11 (dismissing

28 complaint that conflates alleged enterprise with alleged pattern of racketeering).

- 19 -

TRAMMELL S. CROW, JR.'S MOTION TO DISMISS

1    Instead of establishing a plausible unified criminal enterprise, the Complaint

2    describes long-running, serial domestic disputes between Plaintiffs and the

3    Domestic Partner Defendants, with occasional cameos by other defendants

4    individually.  Plaintiffs do not allege facts sufficient to plausibly establish the

5    "organization" and "continuing unit" requirements for stating a RICO claim.  See

6    Boyle, 556 U.S. at 947 n.4 ("It is easy to envision situations in which proof that

7    individuals engaged in a pattern of racketeering activity would not establish the

8    existence of an enterprise.  For example, suppose that several individuals,

9    independently and without coordination, engaged in a pattern of crimes listed as

10   RICO predicates—for example, bribery or extortion.  Proof of these patterns would

11   not be enough to show that the individuals were members of an enterprise."); see

12   also Bryant v. Mattel, 573 F. Supp. 2d 1254, 1263 (C.D. Cal. 2007) (the "continuing

13   unit" requirement "is related to the duration of the racketeering activities," and to

14   "the notion that RICO was not meant to address discrete instances of fraud or

15   criminal conduct"); Stitt v. Citibank, N.A., 942 F. Supp. 2d 944, 957 (N.D. Cal.

16   2013) (dismissal required where plaintiff fails to make "factual allegations to detail

17   [defendant's] involvement or make [his] involvement in the enterprise plausible").

18           b.    Plaintiffs Do Not Allege a "Pattern of Racketeering."

19   To plead a pattern of racketeering activity, the Complaint must allege that the

20   racketeering predicates: (i) are related, and (ii) amount to or pose a threat of

21   continued criminal activity.  Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004).

22   The relatedness requirement is satisfied only where plaintiffs allege criminal acts

23   with the "same or similar purposes, results, participants, victims, or methods of

24   commission, or acts that are otherwise interrelated by distinguishing characteristics

25   and are not isolated events."  Howard v. Am. Online Inc., 208 F.3d 741, 749 (9th

26   Cir. 2000).  The continuity requirement is satisfied only where plaintiffs allege

27   "either a series of related predicates extending over a substantial period of time, i.e.,

28   closed-ended continuity, or past conduct that by its nature projects into the future

1    with a threat of repetition, i.e., open-ended continuity." Id. at 750. "[W]here RICO

2    is asserted against multiple defendants, a plaintiff must allege at least two predicate

3    acts by each defendant." RJ v. Cigna Health & Life Ins. Co., 2022 WL 4021890, at

4    *5 (N.D. Cal. Sept. 2, 2022).

5          Plaintiffs fail to allege the factual basis for any predicate act as to Mr. Crow.

6    See Occidental Oil, 235 F. Supp. 3d at 1178 ("[absent] supporting factual

7    allegations," mere allegations of wrongful conduct are insufficient to "plausibly

8    allege[] predicate offenses"). Plaintiffs generally allege four categories of supposed

9    predicate acts against all defendants: violations of sex and labor trafficking laws,

10   wire fraud,[10] witness tampering, and violations of the Controlled Substances Act

11   ("CSA"). The trafficking claims against Mr. Crow fail as a matter of law and must

12   be dismissed. (See supra at I.A., I.B.) Plaintiffs do not allege that Mr. Crow

13   engaged in fraud or tampered with witnesses. With respect to the CSA, there are no

14   allegations that Mr. Crow's alleged drug use or the presence of drugs at his parties

15   were predicate acts or caused Plaintiffs' alleged injury.[11] (See Compl. ¶ 310.) Nor

16   do they allege Mr. Crow's supposed drug use was related to and sprang from a

17   similar purpose as the alleged enterprise. See Quillinan v. Ainsworth, 2018 WL

18   2151936, at *6 (N.D. Cal. May 10, 2018) ("[T]o the extent that Plaintiff seeks to

19   allege that this violation is a predicate act on which to base another civil RICO

20   claim, Plaintiff's injury is even more remote to the conduct alleged.").

21

22   [10] Plaintiffs fail to sufficiently allege wire fraud as a predicate act as to any

23   defendant. (Compl. ¶ 310.) Pleading a predicate act sounding in fraud must satisfy
     the particularity requirements of Rule 9(b). Plaintiffs manifestly fail to meet this

24   heightened pleading standard because they do not, inter alia, specifically allege the
     "time, place, and specific content" of any supposedly fraudulent misrepresentation

25   or the "identities of the parties to the misrepresentation." Schreiber Distrib. Co. v.

26   Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1400 (9th Cir. 1986).

27   [11] The Complaint also fails to allege a CSA violation because it does not allege that
     the amount of drugs that Mr. Crow had was within the CSA's scope. See 21 U.S.C.

28   § 841 (criminalizing possession of cocaine where there is five kilograms or more).

1

                   *c.*      *Plaintiffs Do Not Sufficiently Allege "Conduct."*

2          RICO requires Plaintiffs plead that Mr. Crow "conduct[ed] or participate[d],

3  directly or indirectly, in the conduct of [the alleged] enterprise's affairs."  18 U.S.C.

4  § 1962(c).  In Reves v. Ernst & Young, 507 U.S. 170 (1993), the U.S. Supreme

5  Court set forth the "operation and management test" for determining what

6  constitutes "conduct or participation" for a RICO claim.  The "operation and

7  management test" requires that a defendant "have some part in directing [the

8  enterprise's] affairs." Id. at 179.  Rather than provide a rote definition of "conduct,"

9  the test requires courts to consider various factors, such as whether the defendant

10  occupied a position in the chain of command for conducting the alleged enterprise's

11  affairs, whether he knowingly implemented the decisions of upper management,

12  whether his position was vital to the mission's success and a "showing that the [he]

13  conducted or participated in the conduct of the 'enterprise's affairs,' not just [his]

14  own affairs." Reves, 507 U.S. at 185; see also Kelmar v. Bank of Am. Corp., 2012

15  WL 12850425, at *7 (C.D. Cal. Oct. 26, 2012), aff'd, 599 F. App'x 806 (9th Cir.

16  2015) (listing factors).  Under this test, a defendant does not "direct" the enterprise's

17  affairs by "simply being involved" or "performing services for the enterprise."

18  Walter v. Drayson, 538 F.3d 1244, 1248-49 (9th Cir. 2008); see also Baumer v.

19  Pachl, 8 F.3d 1341, 1344 (9th Cir. 1993) (affirming dismissal where the alleged

20  conduct was limited to providing legal services to the alleged enterprise).

21          There are no allegations that Mr. Crow conducted the alleged Enterprise.  At

22  most, there are conclusory allegations that he threw parties where Plaintiffs attended

23  and had sex with others (Compl. ¶ 178), was "[t]he key financial supporter of the

24  enterprise" by supposedly once loaning money to Mr. Hubbard (id. ¶¶ 30, 34, 186),

25  and knew of the "force, fraud, threat, and coercion which [Mr. Hubbard] used." (Id.

26  ¶ 31).  These allegations do not come close to demonstrating management,

27  command, carrying out of tasks by Mr. Crow, or that the so-called Enterprise would

28  fall apart without him.  The more plausible inference is that Mr. Crow was a

bystander to whatever Mr. Hubbard is alleged to have done on his own or while at a party hosted by Mr. Crow, which is not a RICO violation.  See Gomez v. Guthy-Renker, LLC, 2015 WL 4270042, at *5 (C.D. Cal. July 13, 2015) ("Since Business is merely a consumer of Provider's services, Business cannot be said to participate in the operation or management of Provider"); see also In re Motel 6 Sec. Litig., 161 F. Supp. 2d 227, 237 (S.D.N.Y. 2001) (finding insufficient conduct under § 1962(c) where defendant "was a mere customer of the alleged enterprise").

Even if the Complaint plausibly alleged that Mr. Crow was involved in "management" (it does not), the only plausible conclusion is that he was tending to his own affairs.  According to Plaintiffs, Mr. Crow hosted a party after his annual EarthX expo "to blow off steam."  (Compl. ¶ 178.)  Only Mr. Hubbard allegedly viewed the party as an opportunity for the "development of business relationships." (Id.)  Alleging that Mr. Crow simply knew that potentially illegal activity was occurring does not give rise to RICO liability.  See Walter, 538 F.3d at 1248 (noting Reves requires "some degree of direction" and that "fail[ure] to stop illegal activity" is not enough").  Plaintiffs fail to sufficiently allege the "conduct" element.

### 3.    The Statute of Limitations Bars Ms. Hubbard's Claims.

Civil RICO claims have a four-year statute of limitations which "begins to run once a plaintiff knows or should know of the injury that underlies [her] cause of action."  See Evans v. Arizona Cardinals Football Club, LLC, 761 Fed. Appx. 701, 703 (2019).  To the extent Plaintiffs allege any cognizable RICO injury,[12] the latest (and only) date that Ms. Hubbard alleges a "concrete financial loss" is April 2018, when her house was repossessed, allegedly as a result of Defendants' conduct.[13]

---

[12] The "injury that underlies" a RICO claim must be for a "concrete financial loss." Canyon Cnty., 519 F.3d at 975 ("Without a harm to a specific business or property interest … there is no injury to business or property within the meaning of RICO").

[13] Ms. Hubbard alleges domestic abuse by Hynes Jr. continued until "late October or early November 2018," but there are no allegations of business or property loss caused by any defendant after the repossession her house.  (See Compl. ¶¶ 277-79.)

1   (Compl. ¶ 265.)  Despite knowing of this injury at the time it allegedly occurred,

2   Ms. Hubbard waited more than four years, until November 2022, to file her claim.

3   See Evans, 761 F. App'x at 703 ("plaintiffs knew of their injury—that their careers

4   had been 'cut short'—as soon as their careers ended due to physical injuries").

5       Ms. Hubbard's claims are not subject to equitable tolling, either.  "To

6   establish equitable tolling, a plaintiff must plead with particularly that the defendant

7   actively misled her, and that she had neither actual nor constructive knowledge of

8   the facts constituting her RICO claim despite her due diligence in trying to uncover

9   those facts."  Id. at 703-04.  There are no allegations that Mr. Crow (or anyone else)

10  ever misled Ms. Hubbard.  Rather, Ms. Hubbard alleges that she learned from Mr.

11  Hubbard that she was supposedly being trafficked by the so-called criminal venture

12  as early as 2012.  (See Compl. ¶ 238 ("By 2012, [Mr. Hubbard] had dropped any

13  pretense of requiring [Ms. Hubbard]'s consent for the" swinger parties).  She also

14  alleges that she "escaped" the so-called venture in March 2017 (more than a year

15  before her alleged injury).  (Id. ¶ 243.)  Ms. Hubbard was not "misled"; she had

16  sufficient knowledge of the alleged facts to constitute a claim upon the repossession

17  of her home in April 2018.  Her RICO claims are time-barred.  See Evans, 761 F.

18  App'x at 703-4 (no equitable tolling where allegations demonstrated "plaintiffs'

19  knowledge of the facts on which their RICO claim [was] based").

20          **4.      Plaintiffs' RICO Conspiracy Claims Also Fail.**

21      To adequately plead a RICO conspiracy claim under section 1962(d), a

22  plaintiff must first adequately plead a cognizable substantive RICO violation of

23  sections 1962(a), (b) or (c).  See Howard, 208 F.3d at 751.  As shown above,

24  Plaintiffs failed to adequately allege a substantive RICO claim under Section

25  1962(c) (the only substantive RICO claim they allege).

26      Even if they had alleged a cognizable section 1962(c) claim (they have not),

27  Plaintiffs conspiracy claim fails because they have not plausibly alleged "that each

28  defendant was "aware of the essential nature and scope of the enterprise and

- 24 -

TRAMMELL S. CROW, JR.'S MOTION TO DISMISS

intended to participate in it." BMA LLC v. HDR Glob. Trading Ltd., 2021 WL 4061698, at *14 (N.D. Cal. Sept. 7, 2021).  For instance, they have not plausibly alleged that Mr. Crow was aware that Mr. Hubbard was engaged in a sex trafficking enterprise to enrich himself and develop business connections.  Nor do they allege that anyone other than Mr. Hubbard and Eller were aware of the nature of the alleged enterprise.  The RICO conspiracy claim must also be dismissed.

## II.    NO LEAVE TO AMEND SHOULD BE GRANTED

A court may deny leave to amend where "allegation[s] of other facts consistent with the challenged pleading *could not possibly cure the deficiency*." Schreiber Dist. Co., 806 F.2d at 1401.  Amendment would be futile because Plaintiffs admit that they have no cognizable RICO injury (and thus lack standing), admit that Mr. Crow did not provide anything of value to cause either Plaintiff to engage in a sex act, and admit that Mr. Crow did not obtain any labor by prohibited means under the trafficking statutes.  Additionally, Ms. Hubbard admits facts showing that the statute of limitations bars her RICO claims.  See Thinket Ink Informative Resources, Inc. v. Sun Microsystems, Inc., 383 F.3d 1053, 1061 (9th Cir. 2004).

### Conclusion

This Complaint alleges a disjointed story of long-running dysfunctional domestic relationships mired in physical abuse and drug addiction, centered around Plaintiffs' relationships with their ex-husbands and ex-boyfriends.  But it fails to allege facts showing any wrongful conduct by Mr. Crow or that his conduct caused the alleged harm (or even that the alleged harm is cognizable or redressable under the law).  Moreover, Ms. Hubbard's RICO claims expired because she waited more than four years after her latest possible injury to file her Complaint and Ms. Goedinghaus never suffered RICO injury.  For all the foregoing reasons, Mr. Crow respectfully requests that the Court dismiss the Complaint without leave to amend.

1

DATED:  January 9, 2023                  GRAY REED & McGRAW LLP
                                         HAWXHURST LLP

2

3

4

By  /s/ *Gerald E. Hawxhurst*
    _____

Gerald E. Hawxhurst
Kenneth Stone

5

6

*Attorneys for Defendant*
*Trammell S. Crow, Jr.*

7

8

9

## CERTIFICATE OF COMPLIANCE

10

The undersigned, counsel of record for Trammell S. Crow, Jr., certifies that

11

this brief contains 25 pages, which complies with the page limit set by the Court's

12

Initial Standing Order in this case, dated December 5, 2022 (Dkt. 24).

13

DATED:  January 9, 2023                  GRAY REED & McGRAW LLP
                                         HAWXHURST LLP

14

15

16

By  /s/ *Gerald E. Hawxhurst*
    _____

Gerald E. Hawxhurst
Kenneth Stone

17

18

19

*Attorneys for Defendant*
*Trammell S. Crow, Jr.*

20

21

22

23

24

25

26

27

28

TRAMMELL S. CROW, JR.'S MOTION TO DISMISS