John G. Balestriere*
Matthew W. Schmidt (Cal. Bar No. 302776)
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:  (212) 374-5401
Facsimile:   (212) 208-2613
john.balestriere@balestrierefariello.com
matthew.schmidt@balestrierefariello.com
*Admitted Pro hac vice*

Anastasia Mazzella (Cal. Bar. No. 245201)
**KABATECK LLP**
633 West Fifth Street, Suite 3200
Los Angeles, California 90071
Telephone: (213) 217-5007
Facsimile:   (213) 217-5010
am@kbklawyers.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JULIA HUBBARD, et al.,**<br><br>    Plaintiffs,<br><br>  –against–<br><br>**TRAMMELL S. CROW, JR., et al.,**<br><br>    Defendants. | Case No.: 2:22-cv-7957-FLA-MAA<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PRUITT'S MOTION TO DISMISS** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 3

LEGAL STANDARD ................................................................................................ 4

ARGUMENT .............................................................................................................. 4

   I.    PRUITT PURPOSEFULLY AVAILED HIMSELF OF CALIFORNIA JURISDICTION ............................................................................................ 5

   II.   PLAINTIFFS' CLAIMS ALL ARISE OUT OF PRUITT'S ACTIVITIES DIRECTED TO CALIFORNIA ........................................................................ 5

   III.  JURISDICTION IN CALIFORNIA IS REASONABLE AS DEFENDANT DR. ELLER WAS A KEY FIGURE IN THE ENTERPRISE AND PRUITT WILL SUFFER NO PREJUDICE FROM LITIGATING THIS DISPUTE IN CALIFORNIA ............................................................................ 6

   IV.  THE COURT SHOULD, AT A MINIMUM, ALLOW JURISDICTIONAL DISCOVERY AS TO PRUITT .................................................................... 6

CONCLUSION .......................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**

*Am. West Airlines, Inc. v. GPA Group, Ltd.*
    877 F.2d 793, 801 (9th Cir. 1989) .................................................................................. 7

*Burger King Corp. v. Rudzewicz*
    471 U.S. 462, 477–78 (1985) ..................................................................................... 5, 6

*Doe v. Am. Nat'l Red Cross*
    112 F.3d 1048, 1051 (9th Cir. 1997) ..................................................................... 4, 5, 6

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*
    326 U.S. 310 (1945) ......................................................................................................... 5

*Lazar v. Kroncke*
    862 F.3d 1186, 1201–02 (9th Cir. 2017.) ........................................................................ 5

*Orchid Biosciences, Inc. v. St. Louis Univ.*
    198 F.R.D. 670, 672 (S.D. Cal. 2001) ............................................................................. 7

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*
    556 F.2d 406, 430 n.24 (9th Cir. 1977) .......................................................................... 7

# PRELIMINARY STATEMENT[1]

Defendant Bob Pruitt ("Pruitt"), with his co-conspirators, for years participated in a sex trafficking scheme (the "Venture") that unlawfully trafficked Plaintiffs Julia Hubbard ("Hubbard") and Kayla Goedinghaus ("Goedinghaus"), subjecting them to hundreds of forced commercial sex acts, as well as the beatings, threats, and forced use of medications needed to compel Hubbard and Goedinghaus to engage in such acts.

Pruitt provided financial support to the Venture, including through his company Data Center Equipment and Support, LLC, which, for a time, employed Defendant Richard Hubbard ("Rick Hubbard") as a way to provide money pretextually to the Venture. Pruitt also made payments directly to Rick Hubbard under the guise of utility payments. In exchange for these payments, Pruitt received sexual favors from the Venture. These included Rick Hubbard sending Pruitt naked photos of Plaintiff Hubbard and forcing Hubbard to sit naked on Pruitt's lap while Pruitt would grope Plaintiff Hubbard, smell her hair, and kiss her cheek. Rick Hubbard also forced Plaintiff Hubbard to send "thank you" text messages to Pruitt after these encounters—which Pruitt referred to as "spending time with Uncle Bob"—for Pruitt's further sexual satisfaction.

While Plaintiffs do not seek to hold Pruitt to general jurisdiction in California, Pruitt is properly subject to specific personal jurisdiction in California because his actions as alleged in the Complaint establish minimum contacts with this State, through the central role of Defendant Dr. Benjamin Todd Eller ("Eller"), a psychologist residing in Santa Monica. Pruitt's activities availing himself of California's jurisdiction meet all three of the requirements for specific personal jurisdiction to exist.

First, Pruitt purposefully availed himself of the protections of the State of

---

[1] All capitalized terms are defined in the Complaint, Dkt. No. 1 (the "Complaint" or "Compl."). Some terms are redefined herein for the Court's convenience.

1  California. Dr. Eller's role in the Venture was not only central, but it was also
2  essential, without which the Venture could not have existed. Eller, who was involved
3  in the formation of the Venture at its earliest stages, assisted the Venture through the
4  fraudulent use of his psychological practice, including allowing the Venture to
5  procure large doses of highly potent and controlled drugs, including Xanax, Adderall,
6  Oxycodone, Marinol, Soma, Lorezapan, Ambien, and Trazadone. These drugs were
7  used by the Venture to force Plaintiffs to engage in commercial sex acts, both because
8  (especially when Plaintiffs were forced to take them together in large doses) the drugs
9  made it difficult for Plaintiffs to resist the Venture's demands, and because their
10 addictive nature meant that the Venture could withhold the drugs as a further means
11 to control Plaintiffs.

12      Given the strong visible effects of such heavy medication and the fact that
13 Pruitt was receiving nude photos and sexual favors from Hubbard—including her
14 sitting naked on his lap while he groped her and smelled her hair—it would have
15 been reckless on Pruitt's part to not make inquiry into Hubbard's psychological and
16 medicated state in order to ascertain whether she had the capacity to consent to such
17 acts. Had he done so, he would have learned of the role of Eller in the Venture as
18 well as his presence in California and that the Venture was purposefully availability
19 itself of the California forum. And further, given Pruitt's relationship with Rick
20 Hubbard, it is plausible that Pruitt and Rick Hubbard *did* discuss Eller and his role in
21 the Venture. At a minimum, the Court should allow limited jurisdictional discovery
22 into communications between Pruitt and Rick Hubbard and Pruitt's actual knowledge
23 of Eller, his location, and his role in the Venture.

24      Second, Plaintiffs' claims here arise out of Pruitt's contacts with California.
25 Had Eller not participated in the Venture, the Venture would not have existed.

26      Third, Pruitt has not and cannot make a "compelling case" that the exercise of
27 jurisdiction would be "unreasonable." Pruitt has made no showing that he will even
28 be inconvenienced by litigating in California rather than Texas. And Pruitt's own

Supreme Court authority holds that an "unreasonable" exercise of jurisdiction under this test means more than simple inconvenience or even conflicting laws (which Pruitt has not argued). Rather, Pruitt must show that having to litigate this action in California would make litigation "so gravely difficult and inconvenient" that a party is at a "severe disadvantage" in the litigation. But Pruitt has not shown how he suffered *any* disadvantage from having to litigate in this case in California. To the contrary, Pruitt has already engaged highly competent California counsel and this matter is currently proceeding with at least one Texas-based Defendant (Defendant Crow) not challenging jurisdiction. The interests of both judicial efficiency and the efficient disposition of this matter from the point of view of the Defendants both mitigate towards litigating this case in California.

The Court can and should properly exercise jurisdiction over Defendant Pruitt and deny his motion to dismiss on grounds of jurisdiction.

## **STATEMENT OF FACTS**

Plaintiff Hubbard married Defendant Rick Hubbard in February 2010. (Compl. ¶¶ 96–97.) Following an arrest later that year for financial fraud, Rick Hubbard became desperate for new financial opportunities. (Compl. ¶¶ 104–106.) Rick Hubbard then, along with Defendant Eller, and later, with key financing from Defendant Crow and his colleagues, formulated the Venture, which began to force Plaintiff Hubbard to perform sex acts for money. (Compl. ¶¶ 121–123.) The Venture forced Plaintiff Hubbard, through means that included Eller using his psychological practice, to claim that Hubbard had serious psychological issues and needed to be on high doses of drugs such as Xanax, Adderall, Oxycodone, Marinol, Soma, Lorezapan, Ambien, and Trazadone. (Compl. ¶¶ 123–24.) Certain of these drugs, when combined, are known as the "Holy Trinity" due to their potent effects when taken together. (Compl. ¶¶ 123–24.) This medication scheme made Plaintiff Hubbard, and, later, Plaintiff Goedinghaus—and likely others—pliable, and susceptible to other forms of threats and force. (Compl. ¶¶ 123–24.) Eller's

contributions to the Venture also involved swearing false affidavits claiming that both Plaintiffs were seriously psychiatrically troubled persons under his care. (Compl. ¶¶ 8–12.)

Pruitt made significant contributions to the Venture by providing financial support to Rick Hubbard and to the Venture, both employing Rick Hubbard and making further payments to him under the guide of payments for expenses such as Rick Hubbard's utility bills. (Compl. ¶¶ 40, 219.) As repayment for Pruitt's financial contribution to the Venture, Rick forced Hubbard to provide naked photographs of herself to Pruitt and to perform sex acts with Pruitt. (Compl. ¶ 40.) Pruitt would also make threats, telling Rick Hubbard he would fire him if he did not send such photos. (Compl. ¶ 221.)

On multiple occasions Hubbard would meet with Pruitt and Rick Hubbard would force Hubbard to sit on Pruitt's lap, while Pruitt would grope her, smell her hair, and kiss her cheek. (Compl. ¶ 222.) Pruitt also referred to himself as "Uncle Bob" to Hubbard and would refer to his meetings with Hubbard as "spending time with Uncle Bob." (Compl. ¶ 223.) Rick also forced Hubbard to send "thank you" texts to Pruitt after these encounters. (Compl. ¶ 224.)

## **LEGAL STANDARD**

A California court may exercise specific personal jurisdiction over a non-resident defendant where a plaintiff shows that he purposefully avails himself of the privilege of transacting business in California and that the claims against him arise from such purposeful availment, provided that the defendant cannot show that. *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997).

## **ARGUMENT**

This Court can, and should, exercise specific personal jurisdiction over Defendant Pruitt. As Pruitt sets forth (Dkt. No. 50 at 13), a court properly exercises specific personal jurisdiction over a defendant who (1) purposefully avails himself of the forum state and (2) the claim at issue arises out of the defendant's forum-

related activities. *Am. Nat'l Red Cross*, 112 F.3d at 1051; *see Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (recognizing due process necessity of "minimum contacts" with the forum state). Where a plaintiff satisfies those two factors, the burden shifts to the defendant to show that the exercise of jurisdiction would be "unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Plaintiffs satisfy the first two prongs, and Defendant Pruitt cannot meet the third, such that Pruitt is properly subject to the jurisdiction of this Court.

## I. PRUITT PURPOSEFULLY AVAILED HIMSELF OF CALIFORNIA JURISDICTION

Pruitt purposefully availed himself of California jurisdiction through his participation in the Venture. A plaintiff "purposefully avails" himself of a forum when he avails himself "of the privilege of conducting activities in the forum State, thus invoking the benefits and protections of its laws." *Lazar v. Kroncke*, 862 F.3d 1186, 1201–02 (9th Cir. 2017).

Here, Pruitt purposefully availed himself of California jurisdiction through his participation in the Venture, in which Eller, residing in this District, played a central role. Pruitt knew or should have known—especially considering the drugged state that Plaintiff Hubbard would have been in during any encounter with Pruitt—of Eller's role in the Venture. By participating in the Venture, including making financial payments paid to Rick Hubbard in exchange for sex acts and nude photos from Plaintiff Hubbard, Pruitt knowingly availed himself of the benefits of California jurisdiction.

## II. PLAINTIFFS' CLAIMS ALL ARISE OUT OF PRUITT'S ACTIVITIES DIRECTED TO CALIFORNIA

Not only did Pruitt purposefully avail himself of California jurisdiction, but all of Plaintiffs' claims also arise out of those activities. Courts apply a "but for" causation test to determine "whether a plaintiff's injury arises out of a defendant's

Case No. 2:22-cv-7957-FLA-MAA

5

forum-related activities." *Am. Nat'l Red Cross*, 112 F.3d at 1051. Here, all of Plaintiffs' claims against Pruitt would not have occurred absent Eller. While Pruitt is responsible for his own wrongful actions towards Plaintiffs, had Eller not been involved the Venture would not have existed, none of Plaintiffs' claims against Pruitt would have arisen. Plaintiffs' claims all arise, out of Pruitt's activities directed at this State.

### III.   JURISDICTION IN CALIFORNIA IS REASONABLE AS DEFENDANT DR. ELLER WAS A KEY FIGURE IN THE ENTERPRISE AND PRUITT WILL SUFFER NO PREJUDICE FROM LITIGATING THIS DISPUTE IN CALIFORNIA

Since Plaintiffs have established that Pruitt purposefully availed himself of California's jurisdiction and Plaintiffs' claims, it is Pruitt's burden to then demonstrate a "compelling case" that jurisdiction in California would be "unreasonable." *See Burger King Corp.*, 471 U.S. at 477. As Pruitt's own authority recognizes, this requires a showing that the exercise of jurisdiction causes prejudice that cannot be cured by lesser means; for instance, unfair substantive law can be addressed through choice-of-law rules, and even a substantially inconvenient venue may be dealt with by seeking a change in venue. *Id.* at 477. Pruitt has failed to show even risk of these low-level harms, let alone any prejudice that would rise to the level of being constitutionally unreasonable. Plaintiffs have adequately pleaded specific personal jurisdiction over Pruitt, and his motion to dismiss on grounds of jurisdiction should be denied.

### IV.   THE COURT SHOULD, AT A MINIMUM, ALLOW JURISDICTIONAL DISCOVERY AS TO PRUITT

At a minimum, the Court should allow limited jurisdictional discovery into communications between Pruitt and Rick Hubbard and Pruitt's actual knowledge of Eller, his location, and his role in the Venture. Granting of jurisdictional discovery is within the sound discretion of the Court, and appropriate where "pertinent facts

bearing on the question of jurisdiction are in dispute." *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672 (S.D. Cal. 2001) (quoting *Am. West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989)). Such discovery is appropriate except where a Defendant can show that "it is clear that further discovery would *not* demonstrate facts sufficient to constitute a basis for jurisdiction." *Id.* at 674 (emphasis added) (quoting *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

Here, the Court should respectfully find that it has personal jurisdiction over Pruitt, but at a minimum the Court should allow jurisdictional discovery into communications between Pruitt and Rick Hubbard and Pruitt's own knowledge of Eller, Eller's location in California, and Eller's central rule in the Venture.

## **CONCLUSION**

Pruitt knowingly participated in and benefitted from a sex trafficking scheme which he knew or should have known had a nexus in California, through Defendant Dr. Eller. Eller had a central role in the Venture, through providing access to key drugs that allowed Plaintiffs to be forced, threatened with force, and coerced by the Venture into performing commercial sex acts. And crucially, these potent drugs were such that a reasonable person in Pruitt's position would have made inquiries into their source upon observing Plaintiff Hubbard under their influence. In this way, Pruitt purposefully availed himself of the jurisdiction of California, and all of Plaintiffs' claims here arise from that availment.

Weighed against that, Pruitt cannot show any prejudice that he would suffer from being subject to California jurisdiction. To the contrary, he has already retained highly competent counsel, and at least two of the most central figures of the Venture—Crow, who has moved to dismiss, but not on jurisdictional grounds, and Eller, who resides in this District—will be litigating the claims here on the merits, making litigation here most efficient for judicial resources.

For these reasons, and all those other foregoing reasons, the Court should

respectfully deny Crow's motion to dismiss, or at a minimum allow Plaintiffs jurisdiction discovery into Pruitt and his relevant knowledge of Eller.

Dated: New York, New York
February 15, 2023

By: _____

Matthew W. Schmidt

John G. Balestriere*

**BALESTRIERE FARIELLO**

225 Broadway, 29th Floor

New York, New York 10007

Telephone:   (212) 374-5401

Facsimile:   (212) 208-2613

john.balestriere@balestrierefariello.com

matthew.schmidt@balestrierefariello.com

*Admitted Pro hac vice*

Anastasia Mazzella

**KABATECK LLP**

633 West Fifth Street, Suite 3200

Los Angeles, California 90071

Telephone:   (213) 217-5007

Facsimile:   (213) 217-5010

am@kbklawyers.com

*Attorneys for Plaintiffs*

Case No. 2:22-cv-7957-FLA-MAA

8

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that on this date, the foregoing document filed electronically using the Court's CM/ECF System are served on counsel of record pursuant to the Federal Rules of Civil Procedure through the Court's Notice of Electronic Filing generated by the CM/ECF System, per L.R. 5–3.2.1.

Dated: New York, New York

   February 15, 2023.

               BALESTRIERE FARIELLO

               By: _____

               Matthew W. Schmidt

               Attorney for Plaintiffs