5John G. Balestriere*
Matthew W. Schmidt (Cal. Bar No. 302776)
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:  (212) 374-5401
Facsimile:   (212) 208-2613
john.balestriere@balestrierefariello.com
matthew.schmidt@balestrierefariello.com
*Admitted Pro hac vice*

Anastasia Mazzella (Cal. Bar. No. 245201)
**KABATECK LLP**
633 West Fifth Street, Suite 3200
Los Angeles, California 90071
Telephone: (213) 217-5007
Facsimile:   (213) 217-5010
am@kbklawyers.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JULIA HUBBARD, et al.,**<br><br>   Plaintiffs,<br><br>   –against–<br><br>**TRAMMELL S. CROW, JR., et al.,**<br><br>   Defendants. | Case No.: 2:22-cv-7957-FLA-MAA<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GROVER'S MOTION TO DISMISS** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. II

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT ........................................................................................................................ 4

    I.   GROVER PURPOSEFULLY AVAILED HIMSELF OF CALIFORNIA JURISDICTION ................................................................................................. 4

    II.  PLAINTIFFS' CLAIMS ALL ARISE OUT OF GROVER'S ACTIVITIES DIRECTED TO CALIFORNIA ......................................................................... 4

    III. THE COURT SHOULD, AT A MINIMUM, ALLOW JURISDICTIONAL DISCOVERY AS TO GROVER ..................................................................... 5

    IV. PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 8 NOTICE PLEADING BECAUSE THEY PLEADED DETAILED FACTS SHOWING GROVER'S ROLE IN THE VENTURE AND ENTERPRISE THROUGH WHICH BOTH PLAINTIFFS WERE HARMED ..................... 6

        A.  Plaintiffs Have Pleaded Beneficiary Liability as to Grover Consistent with Rule 8 .................................................................................................. 6

        B.  Plaintiffs Have Pleaded Labor Trafficking Liability as to Grover Consistent with Rule 8 ...................................................................................... 8

    V.  PLAINTIFFS HAVE PROPERLY ALLEGED THAT GROVER IS LIABLE FOR BOTH A SUSTANTIVE RICO CLAIM AND A RICO CONSPIRACY CLAIM ................................................................................. 9

        A.  Plaintiff Hubbard Has Pleaded a Timely RICO Claim ........................... 9

        B.  Plaintiff Hubbard Has Pleaded that Grover Was Involved in a Substantive and Conspiracy RICO Claims ............................................ 10

CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Am. West Airlines, Inc. v. GPA Group, Ltd.*
    877 F.2d 793 (9th Cir. 1989) ................................................................................... 5

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................................ 4, 6

*Doe v. Mindgeek USA Inc.*
    558 F. Supp. 3d 828 (C.D. Cal. 2021) ................................................................... 7

*Gilligan v. Jamco Dev. Corp.*
    108 F. 3d 246 (9th Cir. 1997) ................................................................................ 3

*J.C. v. Choice Hotels Int'l, Inc.*
    No. 20-CV-00155-WHO, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ........... 3

*Kelmar v. Bank of Am. Corp.*
    No. CV 12-6826 PSG (EX), 2012 WL 12850425 (C.D. Cal. Oct. 26, 2012) .. 10

*Lazar v. Kroncke*
    862 F.3d 1186 (9th Cir. 2017) ............................................................................... 4

*Martinez-Rodriguez v. Giles*
    31 F.4th 1139 (9th Cir. 2022) ................................................................................ 8

*Odom v. Microsoft Corp.*
    486 F.3d 541 (9th Cir. 2007) ................................................................................. 3

*Orchid Biosciences, Inc. v. St. Louis Univ.*
    198 F.R.D. 670 (S.D. Cal. 2001) .......................................................................... 5

*Reves v. Ernst & Young*
    507 U.S. 170 (1993) ............................................................................................ 10

*Ruelas v. Cnty. of Alameda*
    519 F. Supp. 3d 636 (N.D. Cal. 2021) .................................................................. 8

*Swierkiewicz v. Sorema N.A.*
    534 U.S. 506 (2002)..................................................................................4

*United States v. Bazar*
    747 Fed. Appx. 454 (9th Cir. 2018)..........................................................7

*United States v. Todd*
    627 F.3d 329 (9th Cir. 2010) ....................................................................7

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*
    556 F.2d 406 (9th Cir. 1977) ....................................................................5

**Statutes**

18 U.S.C. § 1591............................................................................................7

**Rules**

Fed. R. Civ. P. 8(a)(2)....................................................................................3

Rule 12(b)(6)..................................................................................................4

# PRELIMINARY STATEMENT[1]

Defendant Case Grover ("Grover"), with his co-conspirators, for years participated in a sex trafficking scheme (the "Venture") that unlawfully trafficked Plaintiffs Julia Hubbard ("Hubbard") and Kayla Goedinghaus ("Goedinghaus"), subjecting them to hundreds of forced commercial sex acts, as well as the beatings, threats, and forced use of medications needed to compel Hubbard and Goedinghaus to engage in such acts.

Grover—Plaintiff Hubbard's former manager at a club owned by Defendant RCI Hospitality Holdings, Inc. ("RCI")—assisted the Venture by seizing a portion of Plaintiff Hubbard's legal earnings by use of physical abuse and threats, including while in contact with Rick Hubbard, a central figure of the Venture. Given Grover's regular contact with Rick Hubbard and Plaintiff Hubbard, he would have known or should have known of the central role in the Venture of Defendant Dr. Benjamin Todd Eller ("Eller"), whose psychological "advice" to Plaintiffs allowed the Venture's control over them, giving rise to specific personal jurisdiction over Grover. At a minimum, the Court should allow jurisdictional discovery into communications between Grover and Eller, or other knowledge that Grover had at the time concerning Eller's key role in the Venture.

Plaintiffs also adequately plead substantive allegations against Grover as required by Federal Rule of Civil Procedure ("Rule") 8, including specific allegations against Grover. Both Plaintiffs plead how Grover either harmed them directly (in the case of Plaintiff Hubbard) or supported and benefitted from the Venture which harmed them (in the case of both Plaintiffs), including details of Grover's role in the Venture.

Plaintiffs have also both adequately pleaded RICO claims against Grover. Plaintiff Hubbard pleaded financial harm suffered from the Enterprise into November

---

[1] All capitalized terms are defined in the Complaint, Dkt. No. 1 (the "Complaint" or "Compl."). Some terms are redefined herein for the Court's convenience.

2019 (meaning that all Plaintiffs' claims are timely) and that Grover's wrongful acts towards Plaintiffs benefitted the Enterprise. These allegations also give rise to a RICO conspiracy claim, both because Plaintiffs plead a substantive RICO claim and because Grover was aware of the nature of the Enterprise, including through his contact with Rick Hubbard.

The Court can and should properly exercise jurisdiction over Defendant Mitchell, find him properly liable for trafficking activities of the Venture and the racketeering activities of the Enterprise, and deny his motion to dismiss on grounds of jurisdiction.

## **STATEMENT OF FACTS**

Plaintiff Hubbard married Defendant Rick Hubbard in February 2010. (Compl. ¶¶ 96–97.) Following an arrest later that year for financial fraud, Rick Hubbard became desperate for new financial opportunities. (Compl. ¶¶ 104–106.) Rick Hubbard then, along with Defendant Eller, and later, with key financing from Defendant Crow and his colleagues, formulated the Venture, which began to force Plaintiff Hubbard to perform sex acts for money. (Compl. ¶¶ 121–123.) The Venture forced Plaintiff Hubbard, through means that included Eller using his psychological practice, to claim that Hubbard had serious psychological issues and needed to be on high doses of drugs such as Xanax, Adderall, Oxycodone, Marinol, Soma, Lorezapan, Ambien, and Trazadone. (Compl. ¶¶ 123–24.) Certain of these drugs, when combined, are known as the "Holy Trinity" due to their potent effects when taken together. (*Id.*) This medication scheme made Plaintiff Hubbard, and, later, Plaintiff Goedinghaus—and likely others—pliable, and susceptible to other forms of threats and force. (*Id.*) Eller's contributions to the Venture also involved swearing false affidavits claiming that both Plaintiffs were seriously psychiatrically troubled persons under his care. (Compl. ¶¶ 8–12.)

Plaintiff Hubbard met Grover in 2017—after fleeing Rick Hubbard, she found work as a waitress at Silver City Cabaret, a gentlemen's club owned by Defendant

RCI. (Compl. ¶ 249.) There, Grover was Hubbard's manager. (*Id.*) And as Plaintiff Hubbard later learned, Grover was also in regular contact with Rick Hubbard since at least the time that Plaintiff Hubbard began working at Silver City Cabaret. (Compl. ¶ 255.) As Hubbard's manager, Grover would act in ways that benefited the Venture to Hubbard's detriment, including refusing to pay Hubbard her full earned wages, a fact known to Rick Hubbard. (Compl. ¶¶ 250, 256.) In order to compel Hubbard to continue working for him despite the confiscation of her wages, Grover would use physical abuse and threats towards Hubbard. (Compl. ¶ 251.) This abuse included going to Hubbard's home and firing guns, including an AK-47; beating Hubbard so badly that she suffered multiple rib fractures; and intentionally crashing Hubbard's car so that she would depend on Grover for transportation. (Compl. ¶¶ 250–253.)

## **LEGAL STANDARD**

A California court may exercise specific personal jurisdiction over a non-resident defendant where a plaintiff shows that he purposefully avails himself of the privilege of transacting business in California, and that the claims against him arise from such purposeful availment. *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997).

Federal Rule of Civil Procedure ("Rule") 8 requires that pleadings contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and prevents courts from granting motions to dismiss absent exceptional circumstances. Fed. R. Civ. P. 8(a)(2); *Gilligan v. Jamco Dev. Corp.*, 108 F. 3d 246, 248 (9th Cir. 1997); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 6318707, at *10 (N.D. Cal. Oct. 28, 2020) (applying Rule 8 to TVPA claims). Claims of fraud, including those pleaded under RICO, require more specific pleading that identifies "the circumstances constituting fraud" with "particularity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). However, non-fraudulent elements of RICO, including a defendant's state of mind, may be "alleged generally."

1  *Id.*

2  On a Rule 12(b)(6) motion, a court may dismiss a claim "only if it is clear that
3  no relief could be granted under any set of facts that could be proved consistent with
4  the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). In other
5  words, a court may not dismiss a complaint in which Plaintiffs have alleged enough
6  facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*,
7  550 U.S. 544, 570 (2007).

## ARGUMENT

### I. GROVER PURPOSEFULLY AVAILED HIMSELF OF CALIFORNIA JURISDICTION

This Court can, and should, exercise specific personal jurisdiction over Defendant Grover. A defendant "purposefully avails" himself of a forum when he avails himself "of the privilege of conducting activities in the forum State, thus invoking the benefits and protections of its laws." *Lazar v. Kroncke*, 862 F.3d 1186, 1201–02 (9th Cir. 2017).

Grover purposefully availed himself of California jurisdiction through his participation in the Venture, in which Dr. Eller, residing in this District, played a central role. Specifically, Grover was in "regular contact" with Rick Hubbard, and traded information with him concerning Hubbard for the "advancement" of the sex trafficking Venture. (Compl. ¶ 47.) Given such a close relationship with Venture mastermind Rick Hubbard, Grover knew or should have known of Eller's involvement and the nexus connecting his activities to this District, thus purposefully availing himself of California's jurisdiction.

### II. PLAINTIFFS' CLAIMS ALL ARISE OUT OF GROVER'S ACTIVITIES DIRECTED TO CALIFORNIA

Not only did Grover purposefully avail himself of California jurisdiction, but all of Plaintiffs' claims also arise out of those activities. Courts apply a "but for" causation test to determine "whether a plaintiff's injury arises out of a defendant's

Case No. 2:22-cv-7957-FLA-MAA
4

forum-related activities." *Am. Nat'l Red Cross*, 112 F.3d at 1051. Here, all of Plaintiffs' claims against Grover would not have occurred absent Eller: without Eller's work to cause Plaintiffs to be on debilitating doses of drugs, the Venture would not have been able to force Plaintiffs to engage in commercial sex acts. (*See* Compl. ¶¶ 121–24.). While Grover is responsible for his own wrongful actions towards Plaintiffs, had Eller not been involved, the Venture would not have existed, and none of Plaintiffs' claims against Grover would have arisen. Plaintiffs' claims all arise, out of Grover's activities directed at this State.

### III.  THE COURT SHOULD, AT A MINIMUM, ALLOW JURISDICTIONAL DISCOVERY AS TO GROVER

At a minimum, the Court should allow limited jurisdictional discovery into communications between Grover and Rick Hubbard as well as Grover's knowledge of Eller, his location, and his role in the Venture. Granting of jurisdictional discovery is within the sound discretion of the Court, and appropriate where "pertinent facts bearing on the question of jurisdiction are in dispute." *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672 (S.D. Cal. 2001) (quoting *Am. West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989)). Such discovery is appropriate except where a defendant can show that "it is clear that further discovery would *not* demonstrate facts sufficient to constitute a basis for jurisdiction." *Id.* at 674 (emphasis added) (quoting *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

Here, the Court should respectfully find that it has personal jurisdiction over Grover, but at a minimum—especially given the close relationship between Grover and Rick Hubbard—the Court should allow jurisdictional discovery into communications between Grover and Rick Hubbard and Grover's own knowledge of Eller, Eller's location in California, and Eller's central rule in the Venture.

IV. **PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 8 NOTICE PLEADING BECAUSE THEY PLEADED DETAILED FACTS SHOWING GROVER'S ROLE IN THE VENTURE AND ENTERPRISE THROUGH WHICH BOTH PLAINTIFFS WERE HARMED**

Plaintiffs have adequately pleaded all aspects necessary under Rule 8. Under Rule 8, a plaintiff must plead a "short and plain statement" of each claim in a "concise and direct manner," that gives rise to a "plausible" inference of relief. Fed. R. Civ. P. 8(a)(2), (d); *Twombly*, 550 U.S. at 570. Rather than pleading "everyone did everything" allegations, Plaintiffs have made specific allegations regarding each Defendant, including Grover. (*See* Compl. ¶¶ 42–47.) These included:

- Grover forced Plaintiff Hubbard to work at Silver City Cabaret, confiscating a portion of her wages for his personal benefit and others' for the benefit of the Venture and Enterprise. (*See* Compl. ¶¶ 44-45.)
- Grover used physical abuse and threats towards Hubbard, including threatening Hubbard with an AK-47. (*See* Compl. ¶ 46.)
- Grover was in "regular contact" with Rick Hubbard, exchanged information, and threaten to "give [her] back" to Rick Hubbard. (*See* Compl. ¶ 47.)

These—and Plaintiffs' other—allegations not only meet the requirements of Rule 8 generally, but they also specifically plead TVPA beneficiary liability and labor trafficking liability against Grover.

A. **Plaintiffs Have Pleaded Beneficiary Liability as to Grover Consistent with Rule 8**

Plaintiffs' pleaded facts give rise to beneficiary liability as to both Plaintiffs. A defendant violates the TVPA's beneficiary liability prong when he benefits "financially or by receiving anything of value" from participation in a venture that recruits, entices, harbors, transports, provides, obtains, advertises, maintains,

Case No. 2:22-cv-7957-FLA-MAA

6

patronizes, or solicits a person—knowing, or in reckless disregard of the fact that, means of force, threats of force, fraud, or coercion will cause the person to engage in a "commercial sex act." 18 U.S.C. § 1591(a); *see United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) (recognizing that knowledge requirement "does not require knowledge in the sense of certainty as to a future act," but rather "awareness" that it is likely to occur). A "commercial sex act" is defined in the statute as "*any* sex act, on account of which *anything* of value is given or received by any person." 18 U.S.C. § 1591(e)(3) (emphasis added); *United States v. Bazar*, 747 Fed. Appx. 454, 456 (9th Cir. 2018) (recognizing that "commercial sex act" is not "limited to sexual intercourse for money"). As Grover's own authority holds, while Plaintiffs must plead a "continuous business relationship" or "tacit agreement" between a beneficiary defendant and the TVPA perpetrator, that test is flexible enough that, for example, it covers a hotel that ignored a "number of signs" that sex trafficking was taking place on its grounds, or even a high-volume social media platform that "failed to remove the child pornography" from its platform. *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 838 (C.D. Cal. 2021) (finding TVPA beneficiary liability).

Grover both supported and benefitted from the Venture sufficiently enough to have liability under the TVPA. Grover supported the Venture by providing information to Rick Hubbard about Plaintiff Hubbard's whereabouts. (*See* Compl. ¶ 47.) The very fact that Rick Hubbard sought out this information from Grover is enough to show benefit to the Venture. But beyond that, Rick Hubbard used the information in order to track down Plaintiff Hubbard and seek to bring her back under the Venture's control. (*See* Compl. ¶ 256.) In return, Grover received information from Rick Hubbard concerning Plaintiff Hubbard at the time that the Venture was sex trafficking Plaintiff Goedinghaus (*See* Compl. ¶ 47), which Grover valued as it allowed him to further labor traffic Hubbard. This is enough to give rise to TVPA beneficiary liability against Grover by both Plaintiffs. Plaintiffs allege more than a tacit agreement, but an actual quid pro quo relationship between Grover and the

Venture.

Grover provides no authority whatsoever for the assertion that specific knowledge of Plaintiff Goedinghaus by Grover is necessary for Goedinghaus to have standing to assert TVPA beneficiary liability. Grover engaged in misconduct that a reasonable person would foresee to harm women in Goedinghaus's position, so engaging in that misconduct at its peril Grover had at least knowledge of the Venture, and accordingly knew or should have known that there were other victims of the Venture that Grover was assisting for his benefit. Both Plaintiffs have a claim against Grover as a beneficiary of the Venture.

### B. Plaintiffs Have Pleaded Labor Trafficking Liability as to Grover Consistent with Rule 8

Plaintiffs' pleaded facts also go to a labor trafficking claim against Grover. Labor trafficking under 18 U.S.C. § 1589 exists where a defendant either knowingly provides or obtains the labor or services of a plaintiff (the perpetrator prong) either (1) through means of force or threats of force, (2) by means of serious harm or threats of physical harm, (3) by means of abuse or threatened abuse of legal process, or (4) by means of any scheme intended to cause the plaintiff to believe that if they "did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a); *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1150 (9th Cir. 2022) (plaintiffs had a successful forced labor claim where they pleaded that the defendants had obtained plaintiffs' labor through means of pressure created by abuse of law). Liability also attaches where a defendant "knowingly benefits" (the beneficiary prong) either "financially or by receiving anything of value," from participation in a venture that engaged in the providing or obtaining of labor or services by any of the above four grounds. 18 U.S.C. § 1589(b); *See Lesnik,* 374 F. Supp. 3d at 953; *Ruelas v. Cnty. of Alameda,* 519 F. Supp. 3d 636, 650 (N.D. Cal. 2021).

Plaintiff Hubbard pleaded specific acts that Grover committed, which subject

him to both perpetrator and beneficiary liability. Hubbard pleads outright that Grover used "physical abuse and threats," including causing Hubbard multiple broken ribs, and by such force and threats, "caus[ed] Hubbard" to perform work at the Silver City Cabaret, from which Grover profited. (*See* Compl. ¶¶ 45–47.) Plaintiffs have pleaded sufficient facts under Rule 8 for TVPA beneficiary and labor trafficking liability against Grover.

## V. PLAINTIFFS HAVE PROPERLY ALLEGED THAT GROVER IS LIABLE FOR BOTH A SUSTANTIVE RICO CLAIM AND A RICO CONSPIRACY CLAIM

### A. Plaintiff Hubbard Has Pleaded a Timely RICO Claim

Plaintiffs adequately plead that Plaintiff Hubbard's RICO injuries fall within the relevant four-year statute of limitations, running from the last RICO injury. RICO injuries include not only harm directly or intentionally caused by the Enterprise—the standard is "generous enough to include the unintended, though foreseeable, consequences of RICO predicate acts." *Diaz*, 420 F.3d at 901 (finding loss of employment caused by false imprisonment by RICO enterprise a valid RICO harm).

Plaintiff Hubbard pleads that, in late October or November 2018, she was falsely imprisoned by the Enterprise—to the extent that Defendant Michael Hynes ("Hynes"), an agent of the Enterprise, tied Hubbard to a bed and kept her restrained for three days, releasing her "only to use the restroom," and had previously, at Rick Hubbard's direction, confiscated Hubbard's "driver's license," "phone," and "credit cards." (Compl. ¶¶ 270, 277.) This prevented Hubbard from being able to hold employment, which constitutes a RICO injury. If the Court finds this insufficient, Plaintiff Hubbard can allege additional facts that Defendant Hynes and the Enterprise did not return her driver's license until December 2018, until which time Plaintiff Hubbard was unable to work due to lack of identification documents. These acts into December 2018--within four years of the complaint's filing in November 2022—lies within RICO's four-year statute of limitations such that Plaintiff Hubbard's RICO

claim is timely.

### B. Plaintiff Hubbard Has Pleaded that Grover Was Involved in a Substantive and Conspiracy RICO Claims

Plaintiffs also adequately plead the elements of a RICO claim towards Grover. Specifically, Plaintiffs pleaded that Grover was involved in the sex trafficking RICO Enterprise. Grover did so through his "regular contact" with Rick Hubbard, assisted the Enterprise by providing information to Rick Hubbard (and the Enterprise), and seizing a part of Plaintiff Hubbard's wages for the Enterprise's benefit. (*See* Compl. ¶¶ 45–47.) While Grover may have personally benefitted as well, that is not a bar to RICO liability, and Grover provides no authority for the proposition that it is—on the contrary, nearly any member in any illegal enterprise receives a personal benefit, or else they would not take the risk of engaging in such activity.

Grover's authorities are not to the contrary. *Fraser v. Team Health Holdings, Inc.*, holds in relevant part only that the relationship giving rise to RICO liability must be "predicated on a relationship more substantial than a routine business relationship." No. 20-CV-04600-JSW, 2022 WL 971579, at *12 (N.D. Cal. Mar. 31, 2022). And *Reves v. Ernst & Young* holds in relevant part that "outsiders" to an Enterprise are not liable unless they "participate" in the operation or management of the enterprise. 507 U.S. 170, 185 (1993); *see Kelmar v. Bank of Am. Corp.*, No. CV 12-6826 PSG (EX), 2012 WL 12850425, at *7 (C.D. Cal. Oct. 26, 2012) ("participation" requires only that a defendant occupied a "position in the 'chain of command'" of the Enterprise—including whether the defendant "knowingly implement[ed] the decisions" of the Enterprise) (alteration in original). Plaintiffs plead that Grover had exactly such a defined position in the Enterprise: in fact, they plead that Grover even was in regular communication with and received directions from central Enterprise figure Rick Hubbard. (*See* Compl. ¶ 45.)

Lastly, Plaintiffs have pleaded a RICO conspiracy claim. Here, Grover only argues that the RICO conspiracy claim fails because Grover was not "aware of the

essential nature" of the Enterprise. (Mot. at 25.) But, again, this is precisely what Plaintiffs plead: that Grover was in "regular contact" with Rick Hubbard and had taken action for the benefit of the Enterprise. (*See* Compl. ¶¶ 47, 255.) Plaintiffs have pleaded that Grover knowingly participated in, and conspired with other members of, the Enterprise.

## CONCLUSION

Grover knowingly participated in and benefitted from a sex trafficking scheme which he knew or should have known had a nexus in California through Defendant Dr. Eller. Eller had a central role in the Venture, through providing access to key drugs that allowed Plaintiffs to be forced, threatened with force, and coerced by the Venture into performing commercial sex acts. And crucially, these potent drugs were such that a reasonable person in Grover's position would have made inquiries into their source upon observing Plaintiff Hubbard under their influence. In this way, Grover purposefully availed himself of the jurisdiction of California, and all of Plaintiffs' claims here arise from that availment.

Plaintiffs also pleaded that Grover participated in the Venture and had a defined role through his regular contact with Rick Hubbard. Plaintiffs also pleaded that Grover participated in the RICO Enterprise, which harmed both Plaintiffs within the relevant limitations period and for the benefit of the Enterprise. Grover also had a defined role in the Enterprise, including exchanging information with the Enterprise and receiving directions that he followed. Grover also is liable for RICO conspiracy because he was, through these acts, aware of the sex trafficking nature of the Enterprise.

For these reasons, and all those other foregoing reasons, the Court should respectfully deny Grover's motion to dismiss, or at a minimum allow Plaintiffs jurisdiction discovery into Grover and his relevant knowledge of Eller.

Dated: New York, New York
March 10, 2023

By: _____

Matthew W. Schmidt

John G. Balestriere*

**BALESTRIERE FARIELLO**

225 Broadway, 29th Floor

New York, New York 10007

Telephone:     (212) 374-5401

Facsimile:      (212) 208-2613

john.balestriere@balestrierefariello.com

matthew.schmidt@balestrierefariello.com

*Admitted Pro hac vice*

Anastasia Mazzella

**KABATECK LLP**

633 West Fifth Street, Suite 3200

Los Angeles, California 90071

Telephone:     (213) 217-5007

Facsimile:      (213) 217-5010

am@kbklawyers.com

*Attorneys for Plaintiffs*

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that on this date, the foregoing document filed electronically using the Court's CM/ECF System are served on counsel of record pursuant to the Federal Rules of Civil Procedure through the Court's Notice of Electronic Filing generated by the CM/ECF System, per L.R. 5–3.2.1.

Dated: New York, New York
　　　　March 10, 2023.

　　　　　　　　　　　　　　　　　　　　BALESTRIERE FARIELLO

　　　　　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　Matthew W. Schmidt
　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiffs