Alec Simpson (SBN: 300809)
Alec.simpson@oag.texas.gov
Office of the Attorney General State of Texas
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 936-1284; Fax: 312-370-9814

Attorney for Defendant,
CODY MITCHELL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA HUBBARD, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>TRAMMELL S. CROW, JR., *et al.*,<br><br>Defendants. | No. 2:22-cv-07957-FLA-MAA<br><br>Assigned to Honorable<br>Fernando L. Aenelle-Rocha<br><br>**DEFENDANT CODY MITCHELL'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT**<br><br>Date: March 31, 2023<br>Time: 1:30 P.M.<br>Place: Courtroom 6B<br><br>Trial Date: None set |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

In Plaintiffs' opposition to Cody Mitchell's motion to dismiss ("Opposition"), Plaintiffs take aim at Mitchell's contention of lack of personal jurisdiction by contending that he purposefully availed himself to California through the acts of Defendant Eller. *See* Opposition at pp. 5-6.  However, the links between Mr. Mitchell and Defendant Eller are far too attenuated for this Court to establish specific jurisdiction over Mr. Mitchell especially when Mr. Mitchell never lived in California, never worked in California, never held property in California, and has never previously been a litigant in California.

Plaintiffs' Opposition also failed to show how Defendant Hubbard's use of his supposed close friendship with a Texas Ranger to threaten and intimidate Plaintiffs qualifies as Mr. Mitchell's participation in the alleged RICO venture.  Further, the only specific allegation of participation in the venture against Mr. Mitchell, that Defendant Hubbard sought his help to report child abuse, was to take Plaintiff Hubbard's children away from co-defendant and alleged member of the RICO venture, Shawn Mayer—not Plaintiff Hubbard.

Accordingly, Mr. Mitchell requests the Court grant his motion to dismiss.

## II. California Does Not Have Specific Jurisdiction

The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76 (1985).  In their Opposition, Plaintiffs argue Mr. Mitchell purposefully availed himself to California "through his participation in the Venture, in which Mr. Eller, residing in the District, played a central role," and "through a close personal relationship with his 'longtime friend' Rick Hubbard, the Venture's main contact with Santana Monica-based Dr. Eller." *See* ECF No. 89 ("Opposition") at 5.  In essence, Plaintiffs argue that because

one of the participants in this alleged RICO venture resides in California, then California can hale in any other defendant into it notwithstanding defendants' due process rights.  However, "Regardless of [alleged] joint liability, jurisdiction over each defendant must be established individually." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).

Here, Plaintiffs did not overcome their burden to demonstrate jurisdiction over Mr. Mitchell.  The Ninth Circuit uses a three-prong test to analyze specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Purposeful availment and purposeful direction are two distinct concepts. *Id*. A purposeful availment analysis is most often used in suits sounding in contract, while a purposeful direction analysis is most often used in suits sounding in tort. *Id*. Plaintiffs' Opposition only contests that Mr. Mitchell purposefully availed himself to the forum state, and as such, Mr. Mitchell will reply to this argument and not restate his purposeful direction analysis made in his motion to dismiss.  ECF No. 76 ("Motion to Dismiss") at p. 16-17.

The Plaintiffs bear the burden of the first two prongs on the analysis. *Id*.  If the plaintiff establishes both prongs one and two, then the defendant must provide a "compelling case that the exercise of jurisdiction would not be reasonable. *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 476-78 (1985)).  But if the plaintiff fails at

the first step, the jurisdictional inquiry ends, and the case must be dismissed. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir.2006) ("[Plaintiff's] arguments fail under the first prong. Accordingly, we need not address [the remaining two prongs].").

A. <u>Mr. Mitchell Did Not Purposefully Avail Himself to California</u>

For a plaintiff to satisfy their burden to establish specific jurisdiction, they must provide "[a] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state [that] typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there.  By taking such actions a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Schwarzenegger*, 374 F.3d at 802. And "[i]n return for these 'benefits and protections,' a defendant must – as a quid pro quo – 'submit to the burdens of litigation in that forum.'" *Id*.

Here, Plaintiffs argue that Mr. Mitchell's alleged friendship with Defendant Hubbard who also happened to know Mr. Eller, a California resident and alleged fellow-member of the alleged RICO venture, establishes specific jurisdiction over Mr. Mitchell.  *See* Opposition at p. 5-6.  However, "a defendant's relationship with a … third party, standing alone, is an insufficient basis for jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S.Ct. 1773, 1781 (2017).  Notably, Plaintiffs do not even allege that Mr. Mitchell even knew Mr. Eller, and quite simply, there are too many links in the chain to find Mr. Mitchell availed himself to California jurisdiction.

The alleged involvement of Mr. Eller was that he resided in California, referred medications to Plaintiffs while they lived in Texas, got three Texas physicians and one non-Texas, non-California physician to prescribe the medications for the Texas-based Plaintiffs at the time, and submitted allegedly false affidavits against Plaintiff Hubbard

in a Texas court.  *See* ECF No. 1 ("Complaint") at ¶¶ 7-16, 132, 139, 304.

This alleged involvement of Mr. Eller, without more, does not justify exercising specific jurisdiction over Mr. Mitchell.  *Compare Born v. Celtic Mktg. LLC*, No. 819CV01950JLSADS, 2020 WL 3883273, at *4 (C.D. Cal. May 20, 2020) (noting that "an out-of-state defendant's mere agreement with a third-party located within the forum, pursuant to which that third-party independently operates an advertising or solicitation campaign, does not satisfy the first prong of the three-part jurisdictional analysis set forth in *Schwarzenegger*, and is thus an insufficient basis for an exercise of specific jurisdiction over the foreign defendant.").  Even if the Court reads Plaintiffs' Complaint that Mr. Mitchell somehow knew of Mr. Eller and where he resided, the Supreme Court made clear that "[t]he proper question is … whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 517 U.S. 277, 290 (2014).

Here, Mr. Mitchell's declaration establishes his connection to California is essentially non-existent. In his declaration, Mr. Mitchell established that he never purposefully availed himself to California because he has never lived in California, never worked in California, never owned/leased/rented property in California, never paid taxes in California, never been part of litigation in California[1], never held a bank account in California, never paid taxes in California, and the only time he was in California was for connecting flight layovers at Los Angeles International Airport.  *See* Mitchell Declaration, ¶¶ 3-13.

In short, under the purposeful availment standard, Plaintiffs failed to show that Mr. Mitchell availed himself of the privileges and protections of California.

B.  <u>Plaintiffs' Claims Do Not Arise Out of California</u>

In the second prong of the analysis, a plaintiff must overcome the burden of showing "the claim must be one which arises out of or relates to the defendant's

---

[1] Aside from this matter.

forum-related activities[.]" *Schwarzenegger*, 374 F.3d at 802.  The Ninth Circuit relies on a "but-for" test to determine whether a particular claim arises out of forum-related activities to satisfy the second prong for specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir.1995).

Substantially everything involving the alleged RICO venture took place in Texas. *See generally ECF No. 1* at ¶¶ 1, 44, 62, 64-67, 69-83, 85-89, 93-94, 105, 176-78, 192, 216, 225, 235, 249, 268, 282, 286, 295-302, 304-05, 332.  Plaintiffs' claims, specifically against Mr. Mitchell, are "Rick also sought, with the help of Mitchell, to report abuse in order to take custody of Hubbard's children with Mayer away from him in order to better control Hubbard," (*Id*. at ¶ 21) which would have arisen regardless of Mr. Eller and Defendant Hubbard's connections to California because this alleged act occurred entirely in Texas.  While it may be true that Plaintiffs' *claims against Mr. Eller* would not have arisen in California but for him allegedly residing in California at the relevant time, it does not answer the proper question of whether Mr. Mitchell's alleged forum-related activities arose out of California.  Even still, the allegations against Mr. Eller all mostly arise out of Texas, not California— Mr. Eller allegedly got Plaintiffs, Texas residents at the relevant time, to participate in commercial sex acts in Texas by referring them to psychiatrists, three Texas residents at the time and one non-California resident, to prescribe medications. *Id*. at ¶¶ 14, 65-68.  Plaintiffs should have sued in Texas, where the claims arose.

Thus, Plaintiffs cannot satisfy this circuit's "but for" test for the second prong.

C.  Jurisdictional Discovery Is Unnecessary

"A district court is vested with broad discretion to permit or deny [jurisdictional] discovery." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir.2003).  Here, Plaintiffs request they be afforded an opportunity to conduct jurisdictional discovery on Mr. Mitchell's contacts with California because Mr. Mitchell was allegedly close friends with Defendant Hubbard and Defendant Hubbard knew Eller.  *See* Opposition

at p. 6-7.

The party seeking jurisdictional discovery must make at least a colorable showing that jurisdiction exists. *Mitan v. Feeney*, 497 F.Supp.2d 1113, 1119 (C.D. Cal. 2007). Jurisdictional discovery need not be allowed if the request is "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir.2008).

Based on Plaintiffs' 64-page Complaint with 343 paragraphs of allegations and Mr. Mitchell's declaration in support of his motion to dismiss, it is clear that this Court lacks specific jurisdiction over Mr. Mitchell. Answers to Plaintiffs' requested questions of what Mr. Mitchell's role in the alleged RICO venture (even if there were a venture, he did not have any role), would amount to a fishing expedition. *See Johnson v. Mitchell*, No. CIV S-10-1968 GEB GGH PS, 2012 WL 1657643, *7 (E.D. Cal. May 10, 2012) (noting that jurisdictional discovery need not be allowed if the requests amounts merely to a fishing expedition).

Plaintiffs have not made their required colorable showing, and as such, their request for jurisdictional discovery should be denied.

**III.    Mitchell Did Not Participate in The Alleged Venture**

Plaintiffs allege Mr. Mitchell played a vital role in the alleged RICO venture and cite to Paragraph 22 of their Complaint. *See* Opposition at p. 7. This paragraph states, "On one occasion, Rick shared with Hubbard that Mitchell has taken in his police cruiser and sent to Rick. In the photo Mitchel was holding his penis in one hand and an open bottle of Jack Daniels whiskey in the other." However, Plaintiffs failed to cite to any authority that a picture of someone is enough to show participation of that person in the alleged enterprise.

A RICO plaintiff must allege and prove that a defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of the enterprise's affairs." 18 U.S.C. § 1962(c). The Supreme Court clarified that the word "conduct" requires an

element of direction, and the word "participate" connotes "to take part in." *Reves v. Ernst & Young*, 507 U.S. 170, 177 - 79 (1993). Thus, "to 'participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' one must have some part in directing those affairs." *Id*. at 179 (quoting 18 U.S.C. § 1962(c)). In evaluating this "conduct" element under RICO, courts in the Ninth Circuit consider "whether that defendant (1) gave or took directions; (2) occupied a position in the 'chain of command' through which the affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; or (4) was indispensable to the achievement of the enterprise's goal. *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1152 - 53 (C.D. Cal. 2016) (quoting *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008)).

First, even construed at its most liberal, the Complaint does not allege Mr. Mitchell gave or took directions or knowingly implemented decisions of upper mangagement. All the allegations against Mr. Mitchell are through what Defendant Hubbard told Plaintiffs:

- "**Rick** had a close friendship with Mitchell and **would regularly threaten** [Plaintiffs] with arrest under false charges, telling them that if they did go to law enforcement, no one would believe them." *Id*. at ¶ 20;
- "**On one occasion, Rick shared with Hubbard that Mitchell has taken in his police cruiser and sent to Rick**. In the photo Mitchel was holding his penis in one hand and an open bottle of Jack Daniels whiskey in the other." *Id*. at 21;
- "**This photo was presented as a threat to Hubbard**: Mitchell considered himself above the law and would do what he needed to do to protect Rick and the Venture." *Id*. at ¶ 23;
- "Rick made use of Mitchell early on to intimidate Hubbard — **Rick told Hubbard that Mitchell had done research** and that her former husband,

Shawn Mayer, had been under 'investigation' by the Texas Rangers for child exploitation." Id. at ¶ 160;

- "**Rick also sought**, with the help of Mitchell, **to report abuse** in order to take custody of Hubbard's children with Mayer away from him in order to better control Hubbard." *Id.* at ¶ 162; and

- "When Hubbard seemed like she may not obey Rick's demands, **Rick would tell Hubbard that Mitchell could** cause her to be arrested. **Rick also repeatedly told Hubbard that if she did attempt to contact law enforcement, a call from Mitchell** (as well as Eller) **would** quickly cause the police to disregard whatever Hubbard said." *Id.* at ¶ 163 (emphasis added).

None of the allegations above show any participation by Mr. Mitchell. Plaintiffs did not allege Mr. Mitchell was the one who threatened them, rather, Defendant Hubbard threatened them with Mr. Mitchell's occupation. Nowhere is it alleged that Plaintiffs relied on these threats, let alone that Mr. Mitchell himself even made them. Further, it isn't alleged that Mr. Mitchell actually investigated Mr. Mayer, rather, Defendant Hubbard said Mr. Mayer was under "investigation." If more is required than "simply being involved," and "[s]imply performing services for the enterprise does not rise to the level of direction." *Walter*, 538 F.3d 1249, then certainly more is required than the idea of an individual hypothetically participating. Even if it is true that Defendant Hubbard "sought the help of Mitchell" to report child abuse, the allegations that Mr. Mitchell did help are absent and the supposed harm would not be to Plaintiff Hubbard, but to a co-defendant and alleged member of the RICO venture, Mr. Mayer. This cannot constitute an "injury to plaintiff's business or property" as required when alleging a civil RICO claim. *Chaset v. Fleer/Skybox Intern.*, LP, 300 F.3d 1083, 1086 (9th Cir. 2002).

///

  Second, Plaintiffs did not provide any allegations of Mr. Mitchell being in the alleged venture's chain of command. Although Plaintiffs force the title of "Fixer" on Mr. Mitchell in their Complaint, the conduct attributed to Mr. Mitchell does not state any allegation that he gave or took any direction. Relevant considerations include whether "defendant occup[ies] a position in the chain of command ... through which the affairs of the enterprise are conducted, whether the defendant knowingly implement[ed] the decisions of upper management, and whether the defendant's participation was vital to the mission's success." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 910 (C.D. Cal. 2012) (internal quotations omitted) (citing *Walter*, 538 F.3d at 1249).

  Third, there are no allegations that Mr. Mitchell implemented any decisions from "upper management" in this alleged venture. Aside from a photo of Mr. Mitchell supposedly used to threaten the legal process against Plaintiffs, the only allegation of possible participation by Mr. Mitchell was to help Defendant Hubbard use the legal system to take Plaintiff Hubbard's children away from co-defendant and alleged RICO conspirator, Mr. Mayer — not Plaintiff Hubbard. At most, the Complaint shows that Defendant Hubbard used Mr. Mitchell's name and occupation as empty threats, but these allegations fail to show that Mr. Mitchell had "some part in directing its affairs." *Reves*, 507 U.S. at 179, 113 S.Ct. 1163. One can be "part" of an enterprise without having a role in its management and operation, but simply performing services for the enterprise does not rise to the level of direction, whether one is "inside" or "outside." *Walter*, 538 F.3d at 1249.

  Accordingly, no reasonable inferences exist sufficient to subject Mr. Mitchell to civil RICO liability.

### IV. Conclusion

  This Court does not have specific jurisdiction over Mr. Mitchell because he has never availed himself to California. Mr. Mitchell, a Texas resident, cannot be haled

into California court because of his alleged friendship with Defendant Hubbard, a Texas resident, who allegedly conspired with Mr. Eller, a California resident. Lastly, Plaintiffs did not adequately allege that Mr. Mitchell himself participated in the alleged venture beyond the mere idea of him and his occupation. Accordingly, Mr. Mitchell respectfully requests this Court to grant his motion to dismiss.

DATED: March 17, 2023

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ *Alec Simpson*
**ALEC SIMPSON**
Attorney-In-Charge
Assistant Attorney General
Texas State Bar No. 24118534

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814
Alec.Simpson@oag.texas.gov

**ATTORNEYS FOR DEFENDANT CODY MITCHELL**

## CERTIFICATE OF SERVICE

I, **ALEC SIMPSON**, certify that a true and correct copy of the foregoing, **Defendant Cody Mitchell's Reply in Support of His Motion to Dismiss Plaintiff's Complaint**, was filed and served via the Electronic Case Files System of the Central District of California on March 17, 2023:

/s/ *Alec Simpson*
**ALEC SIMPSON**
Assistant Attorney General

## CERTIFICATE OF COMPLAINCE

The undersigned, counsel of record for Defendant Cody Mitchell, certifies that this brief contains approximately 2,887 words as calculated by Microsoft Word in compliance with Local Rule 11-6.1. Further, this brief contains only 12 pages, which complies with the page limit requirement in the Initial Standing Order. ECF No. 24.

DATED:    March 17, 2023

/s/ *Alec Simpson*
**ALEC SIMPSON**
Assistant Attorney General