UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

June 06, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____NM_____

DEPUTY

| | | |
|---|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, | § § § | |
| Plaintiffs, | § § | Case No. 5:23-cv-00580-FB |
| v. | § § § | |
| TRAMMELL S. CROW, JR., DR. BENJAMIN TODD ELLER, RICHARD HUBBARD, DR. MELISSA MILLER, DR. JOSEPH BOLIN, DR. SCOTT WOODS, DR. MRUGESHKUMAR SHAH, MICHAEL CAIN, COE JURACEK, PHILIP ECOB, H.J. COLE, TEXAS RANGER CODY MITCHELL, KURT KNEWITZ, PAUL PENDERGRASS, RALPH ROGERS, ROBERT PRUIT, SCOTT BRUNSON, CASE GROVER, RICHARD BUTLER, MARC MOLINA, MICHAEL HYNES, JR., SHAWN MAYER, JADE MAYER, RCI HOSPITALITY HOLDINGS, INC., INTEGRITY BASED MARKETING, LLC, STPORM FITNESS NUTRITION, LLC, ULTRA COMBAT NUTRITION, LLC, ECOLIFT HOMES LLC, ELEVATED WELLNESS PARTNERS LLC, DOE INDIVIDUALS 1–20, and DOE COMPANIES 21–30 | § § § § § § § § § § § § § § § § § § § § § | Judge: Hon. Fred Biery Date Action Filed: May 8, 2023 (transferred) |
| Defendants. | § § | |

## TRAMMELL S. CROW, JR.'S MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................................ 1

Allegations Relevant to This Motion ................................................................................... 1

    A. Ms. Hubbard's Relationships with Ex-Husbands and Ex-Boyfriends. ......................... 1

    B. Ms. Goedinghaus's Relationship with Ex-Boyfriend, Defendant Rick Hubbard. ......... 2

    C. Defendant Rick Hubbard's Businesses. ........................................................................ 3

    D. The Alleged "Trafficking Venture" and "RICO Enterprise." ....................................... 4

Applicable Legal Standards ................................................................................................. 6

Argument ............................................................................................................................. 7

PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ........................................................ 7

    A. Rule 8 Notice Pleading Requirements Are Not Satisfied. ............................................. 7

    B. The First Cause of Action Should Be Dismissed. ......................................................... 8

        1. No Perpetrator Liability. ......................................................................................... 9

        2. No Beneficiary Liability. ...................................................................................... 12

    C. The Second Cause of Action for Labor Trafficking Should Be Dismissed Because Plaintiffs Do Not Plausibly Allege That Mr. Crow Provided or Obtained Plaintiffs' Labor by Force or Received Any Thing of Value. ............................................................ 14

    D. The Third and Fourth Causes of Action for Violation of RICO Under 18 U.S.C. § 1962(c) and (d) Should Be Dismissed for Several Reasons. ......................................... 15

        1. Ms. Hubbard and Ms. Goedinghaus Lack RICO Standing. ................................. 15

        2. Plaintiffs Fail to Otherwise Allege a Section 1962(c) Claim. ............................. 17

            *a. Plaintiffs Fail to Allege an "Enterprise."* .............................................. 18

            *b. Plaintiffs Do Not Allege a "Pattern of Racketeering."* ......................... 21

            *c. Plaintiffs Do Not Sufficiently Allege RICO "Conduct."* ........................ 22

        3. The Statute of Limitations Bars Ms. Hubbard's Claims. .................................... 24

        4. Plaintiffs' RICO Conspiracy Claims Also Fail. .................................................. 25

LEAVE TO AMEND SHOULD BE DENIED .................................................................. 25

Conclusion ......................................................................................................................... 26

# TABLE OF AUTHORITIES[1]

**Cases**

*A.B. v. Salesforce.com, Inc.*,
No. 4:20-cv-1254, 2021 WL 3616097 (S.D. Tex. Mar. 22, 2021) .......................................... 12

*Aleck v. U.S.*,
No. 3:21-cv-00147, 2022 WL 3106690 (D. Alaska Aug. 4, 2022) .......................................... 9

*Allstate Ins. Co. v. Plambeck*,
802 F.3d 665 (5th Cir. 2015) .................................................................... 23

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ............................................................................ 16

*Arruda v. Curves, Int'l, Inc.*,
861 Fed. App'x 831 (5th Cir. 2021) ............................................................. 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................ 7, 10, 14

*Baker v. IBP, Inc.*,
357 F.3d 685 (7th Cir. 2004) ................................................................... 19

*Beck v. Prupis*,
529 U.S. 494 (2000) ............................................................................ 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................... 7, 11, 12, 17

*Berg v. First State Ins. Co.*,
915 F.2d 460 (9th Cir. 1990) ................................................................... 16

*Boulmay v. Rampart 920, Inc.*,
124 F. App'x 889 (2005) ....................................................................... 24

*Boyle v. United States*,
556 U.S. 938 (2009)........................................................................ 18, 20

*Comm. to Protect Our Agric. Water v. Occidental Oil*,
235 F. Supp. 3d 1132 (E.D. Cal. 2017).................................................... 19, 20

*Do v. Pilgrim's Pride Corp.*,
512 F. Supp. 2d 764 (E.D. Tex. 2007).......................................................... 20

*Doe v. Fitzgerald*,
No. 20-cv-10713, 2022 WL 2784805 (C.D. Cal. May 13, 2022)............................. 12

*Doe v. Fitzgerald*,
No. 20-cv-10713, 2022 WL 425016 (C.D. Cal. Jan. 6, 2022).......................... 10, 12, 13, 15

---

[1] Unless stated otherwise, all emphasis is added, and internal quotations and citations are omitted.

---

*Does v. Reddit, Inc.*,
   51 F.4th 1137 (9th Cir. 2022) .......................................................................................... 12, 13

*Ducote Jax Holdings, LLC v. Bradley*,
   No. 04-1943, 2007 WL 2008505 (E.D. La. Jul. 5, 2007) ...................................................... 25

*Duru v. TSPMG Kaiser Permanente Georgia*,
   2015 WL 3403946 (N.D. Tex. May 26, 2015) ....................................................................... 9

*Elliott v. Foufas*,
   867 F.2d 877 (5th Cir. 1989) ............................................................................................. 6

*Farmer v. D&O Contractors, Inc.*,
   640 F. App'x 302 (5th Cir. 2016) ...................................................................................... 24

*Fisher v. Halliburton*,
   No. H-05-1731, 2009 WL 5170280 (S.D. Tex. Dec. 17, 2009) ............................................ 17

*Frith v. Guardian Life Ins. Co.*,
   9 F. Supp. 2d 734 (S.D. Tex. 1998) ..................................................................................... 6

*Gabriel v. Outlaw*,
   3:20-cv-60, 2021 WL 1030157 (N.D. Tex. Mar. 1, 2021) ................................................... 21

*Gomez v. Guthy-Renker, LLC*,
   No. EDCV-14-01425, 2015 WL 4270042 (C.D. Cal. July 13, 2015) .................................... 23

*Gore v. Cedar Hill Independent School Dist.*,
   No. 3:14-cv-3963, 2016 WL 7638293 (N.D. Tex. Dec. 8, 2016)........................................... 25

*Gutierrez v. Venegas*,
   No. 6:20-cv-129, 2021 WL 9314946 (N.D. Tex. Sept. 8, 2021) ............................................ 22

*H.J. Inc. v. N.W. Bell Telephone Co.*,
   492 U.S. 229 (1989)......................................................................................................... 21

*HCB Fin. Corp. v. McPherson*,
   8 F.4th 335 (5th Cir. 2021) .......................................................................................... 15, 24

*Hemi Group, LLC v. City of N.Y., N.Y.*,
   559 U.S. 1 (2010)............................................................................................................. 22

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992)..................................................................................................... 15, 17

*In re Motel 6 Sec. Litig.*,
   161 F. Supp. 2d 227 (S.D.N.Y. 2001)................................................................................. 23

*Jim S. Adler, P.C. v. Angel S. Reyes & Assocs., PC*,
   No. 3:19-cv-2027, 2020 WL 5099596 (N.D. Tex. Aug. 7, 2020) ........................................... 8

*Labaty v. UWT, Inc.*,
   121 F. Supp. 3d 721 (W.D. Tex. 2015)................................................................................ 19

*Langston v. Ethicon*,
   No. 3:20-cv-3712, 2021 WL 6198218 (N.D. Tex. Dec. 31, 2021)........................................... 8

*Ma v. Ashcroft*,
   361 F.3d 553 (9th Cir. 2004) ..................................................................................... 14

*Malibu Media LLC v. Duncan*,
   No. 4:19-cv-2314, 2020 WL 567105 (S.D. Tex. Feb. 4, 2020) .................................. 7

*Malvino v. Delluniversita*,
   840 F.3d 223 (5th Cir. 2016) ..................................................................................... 21

*Manax v. McNamara*,
   842 F.2d 808 (5th Cir. 1988) ..................................................................................... 18

*McPeters v. Edwards*,
   806 F.Supp.2d 978 (S.D. Tex. 2011) .................................................................. 18, 20

*Moore v. Bushman*,
   559 S.W.3d 645 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ........................... 15

*Noble Capital Tex. Real Estate Income Fund LP v. Newman*,
   No. 1:22-cv-652, 2023 WL 3035411 (W.D. Tex. Jan. 13, 2023) ........................... 8, 9

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018) ........................................................... 10, 11, 13

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms Co. Ltd.*, 943
   F.3d 1243 (9th Cir. 2019) ......................................................................................... 17

*Poe v. Bock*,
   No. EP-cv-17-232, 2018 WL 4677901 (W.D. Tex. Jun. 11, 2018) .......................... 25

*Price v. Pinnacle Brands, Inc.*,
   138 F.3d 602 (5th Cir. 1998) ..................................................................................... 16

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ................................................................................................... 22

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) ..................................................................................... 25

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ................................................................................................... 17

*Shulman v. Kaplan*,
   No. 2:19-cv-5413, 2020 WL 7094063 (C.D. Cal. Oct. 29, 2020) ............................ 16

*Standard v. Nygren*,
   658 F.3d 792 (7th Cir. 2011) .................................................................................. 8, 14

*Stitt v. Citibank, N.A.*,
   942 F. Supp. 2d 944 (N.D. Cal. 2013) ...................................................................... 20

*Swierkiewicz v. Sorema, N.A.*,
   534 U.S. 506 (2002) ..................................................................................................... 7

*Tel-Phonic Services, Inc. v. TBS Intern, Inc.*,
   975 F.2d 1134 (1992) ................................................................................................. 21

*Tijerina-Salazar v. Venegas*,
    No. P:19-cv-74, 2022 WL 17815729 (W.D. Tex. Jan. 9, 2022) ............................................. 22

*U.S. v. Sutherland*,
    656 F.2d 1181 (5th Cir. 1981) ................................................................................................. 21

*U.S. v. Todd*,
    627 F.3d 329 (9th Cir. 2010) ........................................................................................... 10, 14

*United States v. Turkette*,
    452 U.S. 576 (1981) ................................................................................................................. 18

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) ................................................................................................. 23

*Williams v. Steward Health Care Sys., LLC*,
    No. 5:20-cv-123, 2022 WL 575939 (E.D. Tex. 2022) ............................................................ 16

**Statutes**

18 U.S.C. § 1589 ............................................................................................................................. 14

18 U.S.C. § 1591 .................................................................................................................. 9, 10, 13

18 U.S.C. § 1961 ............................................................................................................................. 18

21 U.S.C. § 841 ............................................................................................................................... 22

Tex. Penal Code § 43.02 ................................................................................................................. 16

**Rules**

Federal Rule of Civil Procedure 12 .............................................................................................. 1, 6

Federal Rule of Civil Procedure 8 .................................................................................................... 8

Federal Rule of Civil Procedure 9 .................................................................................................. 21

Trammell S. Crow, Jr. ("Mr. Crow") respectfully moves to dismiss each of cause of action in plaintiffs Julia Hubbard's ("Ms. Hubbard") and Kayla Goedinghaus's ("Ms. Goedinghaus") (collectively "Plaintiffs") Complaint.

## SUMMARY OF ARGUMENT

Plaintiffs' Complaint tells a story of dysfunctional personal and professional relationships with their ex-husbands and ex-boyfriends, defendants Sean Mayer, Richard Hubbard, Case Grover, and Michael Hynes, Jr. (the "Domestic Partners Defendants").  Plaintiffs' attempt to leverage their long-running domestic quarrels into federal human trafficking and RICO claims is a cynical ploy to extract financial gain from persons who were unfortunate enough to cross paths with them.  As explained below, the law does not permit Plaintiffs to gerrymander their inter-personal disputes (no matter how serious) into federal claims against Mr. Crow or other defendants.

The story Plaintiffs allege begins long before they met Mr. Crow and most other defendants.  As detailed in the Complaint, Plaintiffs chose to work in strip clubs, use illegal drugs, and engage in group sex (even while married), well before any alleged illegal conduct by any defendant took place.  While unfortunate, the long-running tale of Plaintiffs' domestic and personal strife does not and cannot plausibly support the asserted causes of action against Mr. Crow and, indeed, most every defendant.

## Allegations Relevant to This Motion[2]

### A.  Ms. Hubbard's Relationships with Ex-Husbands and Ex-Boyfriends.

Plaintiffs' story begins years ago when Ms. Hubbard was married to defendant Mayer.  Ms. Hubbard alleges that Mayer abused her during their time together.  (Compl. ¶ 96.)  They had

---

[2] Mr. Crow generally denies all allegations and insinuations of wrongdoing in the Complaint.  As demonstrated in this Motion, the allegations of wrongdoing against Mr. Crow are implausible; they are treated as "true" pursuant to the Rule 12(b)(6) standard for determining this Motion.  Their inclusion herein does not in any way indicate Mr. Crow accepts them.

---

children together and after divorcing in 2009, they began a custody battle with each alleging that the other was abusive.  (*Id.*)   During her custody dispute, Ms. Hubbard met Mr. Crow while working at a Dallas "gentlemen's club."  (*Id.*¶ 167.)  Ms. Hubbard became friends with Mr. Crow, they exchanged text messages, he "allow[ed] himself to be photographed with her," and invited her to attend charity events, while she invited him to "modeling" events.  (*Id.* ¶¶ 168, 186.)

The same year that Ms. Hubbard met Mr. Crow, she also met and "quickly entered a [romantic] relationship" with Mr. Hubbard because, according to Ms. Hubbard, he acted like a "hero" and helped with her custody battle against Mayer.  (*Id.* ¶¶ 96-97, 100.)  Ms. Hubbard introduced Mr. Hubbard to Mr. Crow at a modeling show.  (*Id.* ¶¶ 33, 169.)  According to Ms. Hubbard, Mr. Hubbard sought to "ingratiate himself to Crow for his own advantage," eventually asking Mr. Crow for a loan to pay legal fees for his own child custody battle.  (*Id.* ¶¶ 169, 187.)  Mr. Crow loaned him money, which was never repaid despite Mr. Crow's requests.  (*Id.* ¶ 187.)

In February 2010, Ms. Hubbard married Mr. Hubbard and they had a daughter later that year.  (*Id.* ¶ 97.)  Mr. and Ms. Hubbard began attending "swinger parties" together, where they would each meet and engage in consensual sex with others.  (*Id.* ¶¶ 108, 112-13.)  In March 2017, Ms. Hubbard left Mr. Hubbard; she continued working at gentlemen's clubs.  (*Id.* ¶¶ 247, 249.)

In early 2017, Ms. Hubbard began dating defendant Grover, the manager of the club where she worked.  Ms. Hubbard alleges that Grover abused her and took a portion of her wages for himself.  (*Id.* ¶¶ 45, 250-53.)   In October 2017, Ms. Hubbard left Grover and began dating defendant Hynes, Jr., who she alleges forced her to sell drugs.  (*Id.* ¶¶ 48, 258, 261-64.)  Hynes, Jr. lived with Ms. Hubbard until "March or April of 2018," when Ms. Hubbard's "home was repossessed due to her heavily strained financial situation."  (*Id.* ¶ 265.)

**B.  Ms. Goedinghaus's Relationship with Ex-Boyfriend, Defendant Rick Hubbard.**

Ms. Goedinghaus also alleges a history of physical and sexual abuse prior to her meeting

any defendant.  (*Id.* ¶ 282.)  She met defendant Mr. Hubbard in November 2018 while Ms. Goedinghaus was going through "a difficult divorce."  She moved in with Mr. Hubbard within a month of meeting him.  (*Id.* ¶¶ 280-81.)

Mr. Hubbard allegedly convinced Ms. Goedinghaus to attend swinger parties at an Austin-area swingers' club.  The Complaint alleges that Mr. Hubbard and Ms. Goedinghaus attended a party at Mr. Crow's residence, where Mr. Hubbard supposedly planned for her to seduce Mr. Crow (or his son) to become pregnant by one of them.  (*Id.* ¶ 295.)  Ms. Goedinghaus alleges that at some point Mr. Hubbard made her "have sex outside of [Mr.] Crow's house where [Mr. Hubbard] could watch," and that Mr. Hubbard choked her when he thought she would not comply.  (*Id.*) This allegedly caused her physical and psychological injuries.  (*Id.* ¶ 343.)

After living together a year, Ms. Goedinghaus left Mr. Hubbard and filed a criminal domestic abuse complaint against him.  (*Id.* ¶ 302.)  She does not allege that any other defendant physically or mentally abused her.  (*Id.* ¶¶ 288-304.)

### C.  Defendant Rick Hubbard's Businesses.

In 2012, Mr. Hubbard was struggling financially due to a criminal conviction for stealing $3,400 from an elderly woman.  (*Id.* ¶ 105.)  He engaged defendant Dr. Eller's services as a "business consultant" to advise him on how to make a "comeback."  (*Id.* ¶¶ 114, 116.)  Eller is a psychologist and "life coach" who consults entrepreneurs in exchange for a monthly retainer of $2,000 to $5,000.  (*Id.* ¶¶ 116-17.)  Between 2013 and 2017, Mr. Hubbard formed five of the defendant business entities (Integrity Based Marketing, LLC, Storm Fitness Nutrition, LLC, Ultra Combat Nutrition, LLC, Ecoloft Homes, LLC, and Elevated Wellness Partners, LLC).  According to the Complaint, Mr. Hubbard asked some of the so-called "Investor Defendants" to invest in one or more of his businesses.  (*Id.* ¶ 190.)  The alleged investments were supposedly to "gain access" to sex trafficked women and, in turn, Mr. Hubbard would use the Investor Defendants' names and

reputations to increase his own profile in the Dallas community.  (*Id.* ¶ 190.)  For example, Mr. Hubbard allegedly put Ms. Goedinghaus to the task of encouraging investments in Ecoloft Homes by offering sex.  (*See id.* ¶¶ 193, 194.)  Defendant Brunson supposedly invested $27,000 in 2019. (*Id.*)  Defendant Pendergrass allegedly invested $250,000.  (*Id.* ¶ 214.)  Brunson allegedly had sex with Ms. Goedinghaus, whereas Pendergrass demanded (and received) repayment of his investment, despite Goedinghaus's sexual advances.  (*Id.* ¶¶ 193, 216-17.)

### D.  The Alleged "Trafficking Venture" and "RICO Enterprise."

The Complaint alleges that in 2012, Eller and Mr. Hubbard decided to start a "sex and labor trafficking venture" (the so-called "Venture") whereby Mr. Hubbard would prostitute Ms. Hubbard at swinger parties, which the Complaint calls "Forced Sex Parties."[3]  (*Id.* ¶¶ 119-21.) Eller would "use his psychological practice to force [Ms.] Hubbard to engage in … the Forced Sex Parties" by "claim[ing] that [she] was his patient and had serious psychological issues requiring heavy medication."  (*Id.* ¶¶ 123-24.)  She spoke with Eller twice.  (*Id.* ¶ 10.)  The Venture's alleged purpose was "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of [Mr.] Hubbard, Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants."  (*Id.* ¶ 341.)

At some unstated point the "Venture" morphed into a purported "illegal racketeering Enterprise" as other persons became entangled in Plaintiffs' domestic affairs.  (*Id.* ¶ 6.)  As alleged, "[b]ecause Eller was not a medical doctor, he was unable to write the prescriptions."  (*Id.* ¶ 139.) So, "[s]tarting in Fall 2010, Mr. Hubbard located the Medical Doctor Defendants … to write prescriptions based only on Eller's written recommendations in exchange for payments from [Mr.

---

[3] The Complaint defines "Forced Sex Parties" as parties where Mr. Hubbard allegedly forced Plaintiffs "to perform sex acts for payment, which payments [Mr. Hubbard] retained, and to secure business relationships" for him.  (Compl. ¶ 3.)

Hubbard.]"[4]  (*Id.* ¶ 139.)  Mr. Hubbard allegedly found the "Medical Doctor Defendants" (Drs. Bolin, Shah, and Woods) to examine Ms. Hubbard and prescribe medication "that Eller and [Mr.] Hubbard requested" to make Ms. Hubbard more willing to participate in swinger parties.  (*Id.* ¶¶ 141-44.)  The Complaint alleges that Dr. Miller renewed prescriptions that Ms. Goedinghaus took prior to meeting Mr. Hubbard.  (*Id.* ¶ 145.)

Ms. Hubbard began seeing Shah for pain management in 2013.  ( *Id.*)  Bolin had been Mr. Hubbard's primary care physician and occasionally wrote prescriptions for her.  (*Id.*)  Woods was a psychiatrist who treated Ms. Hubbard.  (*Id.*)  While Ms. Hubbard underwent multiple surgeries, including for neck injuries and torn intestinal lining (*id.* ¶¶ 239, 241), she allegedly informed Shah (in summer 2014), Bolin[5] (in summer 2018) and Woods (in 2017) that "she did not need the [prescribed] drugs and was being forced to engage in sex against her will."  (*Id.*¶ 145.)  Miller was a primary care physician who Ms. Goedinghaus began seeing in 2019.  (*Id.*)  Ms. Goedinghaus allegedly informed Miller that Mr. Hubbard was "withholding her medications," "physically abusing her" and "raping her."  (*Id.*)

Plaintiffs allege that Mr. Hubbard and Drs. Eller, Shah, Miller, Woods, and Bolin employed two of Mr. Hubbard's long-time friends, defendants Knewitz and Mitchell, as so-called fixers to deal with "problems as they came up."  (*Id.*¶ 154.)  The alleged "problems" related to Mr. and Ms. Hubbard's tumultuous domestic issues.  (*E.g.*, *id.* ¶ 162.)  Knewitz (an ex-boyfriend of Ms. Hubbard) allegedly counseled her to "stay with [Mr. Hubbard]."  (*Id.*¶ 157.)  Mitchell, a Texas Ranger, allegedly helped Ms. Hubbard report Mayer for child abuse, which resulted in Mayer losing custody of his children.  (*Id.* ¶ 162.)

---

[4] The Complaint alleges that the Enterprise began procuring the doctors' services two years *before* Mr. Hubbard and Eller began the consulting relationship.  (*Compare* Compl. ¶ 139, *with id.* ¶ 116.)

[5] It is also alleged that Ms. Hubbard continued visits to Bolin for a year after she escaped the so-called "Venture."  (*Compare id.* ¶ 145, *with id.* ¶¶ 247, 249.)

Plaintiffs allege that Mr. Hubbard and Eller secured so-called "investors" in the purported sex trafficking Venture, including Mr. Crow and defendants Brunson, Cain, Cole, Ecob, Juracek, Pendergrass, Pruitt, and Rogers.[6]  The "Investor Defendants" allegedly provided "funding to run the general operations [of the so-called Venture] and provisioning of the Plaintiffs and others, as well as to pay Eller and the Medical Doctor Defendants, and accrue profits to [Mr. Hubbard] himself." (*Id.* ¶¶ 29, 160.)  Each "Investor Defendant" allegedly interacted with Mr. Hubbard and Eller's supposed scheme at separate times and in different ways to further their own divergent interests.[7] (*Id.* ¶ 40.)

## Applicable Legal Standards

Dismissal under Rule 12(b)(6) follows a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp. 2d 734, 373-38 (S.D. Tex. 1998).  To survive a Rule 12(b)(6) motion a plaintiff must "state her case with enough clarity to enable a court or opposing party to determine whether or not a claim is alleged." *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).  The "[f]actual allegations

---

[6] Ecob and Juracek are alleged employees of Crow Holdings Capital ("CHC") (Compl. ¶¶ 208, 212), which is not a defendant.  Mr. Crow is not alleged to be employed by CHC, or have managerial control over CHC.  Mr. Crow allegedly spends his professional time "in other endeavors, focusing on environmental philanthropy" and his role as "president of the Crow Family Foundation," which disburses charitable funding.  (*Id.* ¶¶ 171-72.)

[7] The gamut of each person's *alleged* interests runs far and wide:  Brunson invested $27,000 in one of Mr. Hubbard's businesses.  (*Id.* ¶ 195.)  Cain and Cole attended swinger parties and watched Ms. Hubbard have sex with another woman.  (*Id.* ¶ 40.)  Cole once had sex with Ms. Hubbard.  (*Id.*¶ 203.)  Ecob and Juracek were merely "aware" of the swinger parties but did not talk about them.  (*Id.* ¶ 40.)  Juracek was sent a nude photo of Ms. Hubbard.  (*Id.*)  At some point Pendergrass provided a $250,000 loan to one of Mr. Hubbard's companies, which he expected to be repaid (and allegedly it was).  (*Id.* ¶¶ 40, 216.)  Meanwhile, Pendergrass saw Ms. Goedinghaus have sex with someone, but rejected her sexual advances.  (*Id.* ¶ 217.)  Pruitt employed Mr. Hubbard at his company and at some point, paid Mr. Hubbard's utility bill, in exchange for Ms. Hubbard sitting on his lap so he could "grope" her and "kiss her cheek"; he too received nude photos of her.  (*Id.* ¶¶ 221-22.)  Rogers owned the mobile home where Mr. Hubbard and Goedinghaus lived; he partially waived rent after watching them have sex.  (*Id.* ¶¶ 225-226, 228.)

must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must include sufficient "factual enhancement" to cross "the line between possibility and plausibility." *Id.* at 557. This standard prevents "a plaintiff with a largely groundless claim" from "tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of settlement value." *Id.* at 557-58.

Judging plausibility requires a "context specific" two-step process in which the court "draws on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Second, the court "assume[s] the … veracity [of] well pleaded factual allegations [and] determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* at 678. When considering plausibility, courts must also consider an "obvious alternative explanation" for the defendant's alleged behavior. *Malibu Media LLC v. Duncan*, No. 4:19-cv-2314, 2020 WL 567105, at *6 (S.D. Tex. Feb. 4, 2020) (citing *Twombly*, 550 U.S. at 567); *see also Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514-15 (2002) ("Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits … that is not the test").

## Argument

### PLAINTIFFS' CLAIMS SHOULD BE DISMISSED

**A. Rule 8 Notice Pleading Requirements Are Not Satisfied.**

The Complaint attempts to transform a series of domestic disputes between Plaintiffs and the Domestic Partner Defendants into a sweeping criminal sex trafficking venture and RICO enterprise without giving Mr. Crow and the other defendants it attempts to ensnare sufficient notice to adequately respond to the allegations. "To form a defense, a defendant must know what he is

defending against; that is, he must know the legal wrongs he is alleged to have committed and the factual allegations that form the core of the claims asserted against him." *Standard v. Nygren*, 658 F.3d 792, 799-800 (7th Cir. 2011); *see also Noble Capital Tex. Real Estate Income Fund LP v. Newman*, No. 1:22-cv-652, 2023 WL 3035411, at *3 (W.D. Tex. Jan. 13, 2023) ("The Federal Rules of Civil Procedure, the clear precedent in the Fifth Circuit, and basic notions of fairness and justice require the undersigned to recommend dismissal of the Fund's claims due to illicit group pleading."). Deciphering Plaintiffs' Complaint is, at best, difficult—and even more challenging is determining what wrong each Defendant is alleged to have committed. The first sentence of each claim adopts and realleges all prior paragraphs. (Compl. ¶¶ 318, 322, 326, 336.) And each count is merely a recitation of the elements of each cause of action alleged without specific facts.

The Complaint relies heavily on "everyone did everything" allegations. (*See, e.g.*, *id.* ¶ 309 (stating all defendants participated in alleged predicate acts).) In reading the Complaint, it remains unclear which allegations concerning which defendant make up each claim. The Complaint should be dismissed for noncompliance with Rule 8(a). *See Langston v. Ethicon*, No. 3:20-cv-3712, 2021 WL 6198218, *3 (N.D. Tex. Dec. 31, 2021) ("The Fifth Circuit disfavors what it has referred to as the 'shotgun approach' to pleadings where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick"); *see also Jim S. Adler, P.C. v. Angel S. Reyes & Assocs., PC*, No. 3:19-cv-2027, 2020 WL 5099596, *13-14 (N.D. Tex. Aug. 7, 2020) (shotgun pleading is the "inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired"). The Complaint should be dismissed for failure to comply with Rule 8.

## B.  The First Cause of Action Should Be Dismissed.

The Victims of Trafficking and Violence Protection Act of 2000 ("TVPA") creates a

private right of action for a victim of sex trafficking as defined in the act.  There are two types of civil TVPA liability: (1) liability for *perpetrators* of a violation, and (2) for anyone who knowingly *benefits from participation* in a "venture" that violated the TVPA.  18 U.S.C. § 1591(a)(1)-(a)(2). Plaintiffs' TVPA claim fails as to Mr. Crow and all other defendants because Plaintiffs do not allege—explicitly or implicitly—which defendant is purportedly liable under which part of the statute.  Each defendant is left to guess the alleged wrong each of them respectively committed and how such conduct constitutes a TVPA cause of action.  The claim fails for this reason alone. *See Noble Capital*, 2023 WL 3035411, at *3 ("With the number of defendants named and the number and nature of causes of action asserted, the Fund's claims must be more clearly—and more fairly—connected to particular defendants.").  Moreover, Plaintiffs do not sufficiently allege either type of liability, nor do Plaintiffs allege facts that plausibly state a cause of action considering the interpersonal relationships between Plaintiffs and the Domestic Partner Defendants.[8]

### 1.  No Perpetrator Liability.

To sufficiently allege that Mr. Crow is a TVPA "perpetrator," Plaintiffs must allege plausible facts that he "(i) knowingly; (ii) in interstate or foreign commerce; (iii) recruit[ed], entic[ed], harbor[ed], transport[ed], provid[ed], obtain[ed], maintain[ed], patronize[d], or solicit[ed] by any means a person; (iv) knowing, or, in reckless disregard of the fact, that means of force, threats of force, fraud or any combination of such means will be used; (v) to cause the

---

[8] Although this Motion focuses on the pleading failures as to Mr. Crow, these same defects apply to most of the other defendants.  *See Aleck v. U.S.*, 2022 WL 3106690, *4 (D. Alaska Aug. 4, 2022) (dismissing other defendants that had not appeared based on defendant's motion to dismiss); *see also Duru v. TSPMG Kaiser Permanente Georgia*, 2015 WL 3403946, at *7 (N.D. Tex. May 26, 2015) (report and recommendation finding defendants not yet appearing should be dismissed without prejudice).  For example, the TVPA claim should be dismissed against most of the Labor Trafficking Defendants (e.g., Grover, Molina and RCI Entertainment, Inc.) because no factual allegations connect them to the TVPA allegations.  The Complaint alleges that Ms. Hubbard left Mr. Hubbard in March 2017 and only thereafter encountered these defendants, but there are no sex trafficking allegations concerning her and these after-the-fact defendants.  (Compl. ¶ 249.)

person to engage in a commercial sex act." *See* 18 U.S.C. § 1591(a); *see also Doe v. Fitzgerald*, No. 20-cv-10713, 2022 WL 425016, *5 (C.D. Cal. Jan. 6, 2022) ("*Fitzgerald I*").  The causal relationship between the alleged perpetrator's conduct and the occurrence of the allegedly trafficked sex act is a crucial inquiry.  *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 519 (S.D.N.Y. 2018) ("[T]he question is whether the prohibited means of fraud and force were 'used to cause,' or designed to bring about, the sex act."); *see also U.S. v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) ("What the statute requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution."); *see also U.S. v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006) (discussing same).  Crucially, it is the fulfillment of the knowledge requirement that creates TVPA liability for a defendant who would otherwise merely be the "customer."  *Compare Todd*, 627 F.3d at 334, *with Iqbal*, 556 U.S. at 678 (allegations that are "merely consistent with a defendant's liability" do not meet plausibility standard).

Plaintiffs allege that Mr. Crow "obtained" "commercial sex acts" from Plaintiffs knowing that Mr. Hubbard would engage in prohibited conduct to cause Ms. Hubbard to "have sex with [Mr.] Crow's then girlfriend" and Ms. Goedinghaus to "have sex in front of [Mr.] Crow."  (*See* Compl. ¶¶ 34, 36.)  These allegations are not plausible for at least three reasons.

First, there are no allegations that Mr. Crow knowingly obtained "commercial sex acts." The allegations are that Mr. Crow watched Ms. Hubbard have sex with another person, but that's not a commercial sex act.  (*See* Compl. ¶¶  3.)  Plaintiffs do not allege that Mr. Crow exchanged any "thing of value" to cause Plaintiffs to engage in a sex act.  *See* 18 U.S.C. § 1591 (e)(3) ("Commercial sex act" defined as "any sex act, on account of which anything of value is given to or received by any person.").  Plaintiffs allege that Mr. Hubbard "convinced [Mr.] Crow to invest in the Venture" but there are no allegations (let alone plausible allegations) that the supposed investment was *on account of* the alleged sex acts.  (*See* Compl. ¶ 34.)  Indeed, the only specific

allegation of Mr. Hubbard asking for money from Mr. Crow is in connection with Mr. Hubbard needing money to fund his child custody litigation.  (*Id.* ¶ 187 (Mr. Hubbard's purported letter to Mr. Crow).)  There is no allegation that the loan Mr. Crow provided to Mr. Hubbard was related to the so-called Venture in any manner.  And the Complaint's allegations foreclose any such conclusion.  (*See id.* (Mr. Hubbard's purported email to an unknown third party mentioning that Mr. Crow was "frustrated" Mr. Hubbard had not repaid the loan).)

Second, the Complaint fails to allege that Mr. Crow used "prohibited" means to watch Ms. Hubbard have sex with her friend.  The Complaint does not plausibly allege any direct fraud, force, threat of force, or combination thereof by Mr. Crow, let alone conduct that *caused* Plaintiffs to engage in a purported commercial sex act.  The Complaint offers the conclusory allegation that Mr. Crow "knew full well all the details of force, fraud, threat, and coercion which [Mr. Hubbard] used" to force Plaintiffs to engage in sex acts because Ms. Hubbard once "told [Mr.] Crow that [Mr. Hubbard] was forcing her to perform sex acts and forcing her to take drugs to induce such acts."  (*See* Compl. ¶¶ 31, 34, 36, 185.)  This fails the plausibility requirement as a matter of law. *See Twombly*, 550 U.S. at 565.

Even taken as true, the allegation is vague: Ms. Hubbard may have informed Mr. Crow of her circumstances in 2017 or later—at or after the time she supposedly escaped the so-called Venture (Compl. ¶¶ 247, 249)—but it does not save her claim because Mr. Crow could not plausibly have had the requisite knowledge at the time the wrongful means were employed.  *See Noble*, 335 F. Supp. 3d at 518 (TVPA "requires the pleader allege awareness, *at the initial … stage*, that certain prohibited means will be employed to achieve a … commercial sex act").  Nor does the Complaint plausibly allege that Ms. Hubbard ever informed Mr. Crow that she was being forced to engage in *commercial* sex acts as opposed to private sex acts (such as attending swingers' parties with Mr. Hubbard—her abusive husband).  With respect to Ms. Goedinghaus, the

Complaint contains no allegations that Mr. Crow was informed of any forced sex or sex trafficking. Mr. Crow is not liable as a mere alleged bystander. *See A.B. v. Salesforce.com, Inc.*, No. 4:20-cv-1254, 2021 WL 3616097, \*6 (S.D. Tex. Mar. 22, 2021) (providing service to business that catered to sex traffickers is insufficient); *Does v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) ("Mere association with sex traffickers is insufficient absent some knowing participation").

Third, when stripped of its conclusory allegations, the Complaint fails to plausibly allege any sex trafficking violation against Mr. Crow (or any other defendant).  The Complaint attempts to smear Mr. Crow with allegations concerning his "lifestyle," *viz.*, that he "enjoyed hosting drug-fueled parties" (*id.*) and "recreational sex."  (*Id.* ¶ 179.)  Gossip column fodder does not satisfy federal pleading standards.  *Cf. Twombly*, 550 U.S. at 565.  There are no allegations that Mr. Crow knowingly hosted parties where Plaintiffs were forced to have sex or that he paid for them to be sex trafficked at any party he hosted.  *Compare Doe v. Fitzgerald*, No. 20-cv-10713, 2022 WL 2784805, \*5 (C.D. Cal. May 13, 2022) ("*Fitzgerald II*") (finding no commercial sex act where Doe No. 5 merely alleged that she was offered "things of value" that "were not offered in exchange for a sex act"), *with id.* at \*3 (allegation that defendant "would provide '$200 and clothing' in 'payment' for the sex acts with Doe No. 6" suffices).  Judged in light of all other allegations, Plaintiffs' sex trafficking claims are no more plausible than concluding that Plaintiffs were in highly dysfunctional and at times abusive relationships with Mr. Hubbard and other ex-boyfriends. The claim for perpetrator liability against Mr. Crow should be dismissed.

### 2.  No Beneficiary Liability.

To adequately allege a claim for beneficiary liability under the TVPA, Plaintiffs must allege that Mr. Crow knowingly benefitted from participation in a venture, which he knew or should have known was engaged in sex trafficking.  *Fitzgerald I*, 2022 WL 425016, at \*8. "Participation in a venture" means knowingly assisting, supporting or facilitating sex trafficking.

18 U.S.C. § 1591(e). To "knowingly benefit" Plaintiffs must show that Mr. Crow "benefitted either financially or by receiving a 'thing of value'" and that there is a "causal relationship between affirmative conduct … and receipt of a benefit." *Id.*; *see also Reddit, Inc.*, 51 F.4th at 1145. Plaintiffs do not adequately allege that Mr. Crow participated in the so-called Venture or that he was financially compensated by it.

First, there are no allegations showing Mr. Crow provided "assistance, support, or facilitation" to the alleged sex trafficking ring. (*See supra* at I.B.1). Notwithstanding vague allegations that *Mr. Hubbard* supposedly threatened Plaintiffs and others privately with Mr. Crow's "influence," the only allegations regarding Mr. Crow's connection to the so-called "Venture" are: (1) that Mr. Crow gave a loan to Mr. Hubbard to pay his child-custody lawyer, and that this loan was not repaid, (2) that Mr. Crow supposedly received nude photos of Plaintiffs and held parties at which *Mr. Hubbard* allegedly forced Plaintiffs to do drugs and have public sex with persons other than Mr. Crow, (3) that defendant Ecob kept the supposed parties a secret, and (4) that defendant Juracek told Ms. Hubbard that he would testify in her child custody case. (*Id.* ¶¶ 208, 212.) These allegations are insufficient to plausibly show beneficiary liability by either Mr. Crow or the so-called Investor and Fixer Defendants. *See Noble*, 335 F. Supp. 3d at 524 (dismissing TVPA claim where complaint was missing "factual allegations that link [defendant's] actions to" conduct of the alleged venture).

Second, Plaintiffs allege that Mr. Crow (and the so-called "Investor Defendants") received "sexual gratification" and "other benefits" for their support of the "Venture." (Compl. ¶ 337; *see also id.* ¶ 38 ("Crow benefitted from working [with Mr. Hubbard] to get others to join the Venture as co-investors and clients.").) But "sexual gratification" is not a "thing of value" under the TVPA, otherwise it would transform innumerable, consensual sexual activities into "sex trafficking." *See Fitzgerald I*, 2022 WL 425016 at *6-7 (finding that interpretation of "sexual gratification" as a

"thing of value" under TVPA would "yield absurd results"); *see also Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) (interpretations "which could produce absurd results are to be avoided"). The "other benefits" alleged in the Complaint are too vague and conclusory to support a claim. *See Iqbal*, 556 U.S. at 678, 681. The beneficiary liability claim should be dismissed as to Mr. Crow.[9]

### C. The Second Cause of Action for Labor Trafficking Should Be Dismissed Because Plaintiffs Do Not Plausibly Allege That Mr. Crow Provided or Obtained Plaintiffs' Labor by Force or Received Any Thing of Value.

To maintain a labor trafficking claim, Plaintiffs must plead facts that plausibly show that Mr. Crow knowingly provided or obtained the plaintiffs' labor or services by means of (1) "force, threats of force, physical restraint, or threats of physical restraint," (2) "serious harm or threats of serious harm," (3) "the abuse or threatened abuse of law or legal process," *or* (4) "any scheme, plan, or pattern intended to cause" the plaintiff to believe that "serious harm or physical restraint" would result if they did not perform such labor. *See* 18 U.S.C. § 1589(a)(1)-(4). Alternatively, Plaintiffs must plead facts that plausibly show that Mr. Crow "knowingly benefit[ted], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means[.]" <u>See</u> 18 U.S.C. § 1589(b). The Complaint—long in rhetoric and short on detail—does not provide proper notice to Mr. Crow (or any other defendant) what alleged conduct *by each of them* purportedly supports a cause of action against them, or under which theory. *See* Fed. R. Civ. P. 8; *see also Nygren*, 658 F.3d at 799-800.

---

[9] Ms. Goedinghaus's TVPA claims also fail because it is not alleged that Mr. Crow was *aware* of Mr. Hubbard's alleged control or abuse of her. *See Todd*, 627 F.3d at 334.

Plaintiffs' labor trafficking claim fails for additional reasons.  Assuming Plaintiffs intended to allege that Mr. Crow obtained sex acts from them, the section 1589(a) claim fails because they do not allege any threats, force, serious harm, or scheme by Mr. Crow to provide or obtain any form of labor from them.  Plaintiffs instead make the spectacular allegation that Juracek (Mr. Crow's alleged "fixer") threatened to offer testimony against Ms. Hubbard "in court that could have [her] children taken away from her."  (Compl. ¶¶ 209, 211.)  But Plaintiffs do not allege that Mr. Crow directed Juracek to say this, that Juracek was Mr. Crow's agent, or that Juracek otherwise participated in any scheme to cause Plaintiffs to believe they would be harmed by way of his testimony.  Moreover, Plaintiffs do not allege that Juracek threatened to *lie* (that is, to scheme or threaten), only that he told Ms. Hubbard he would *testify* in a custody proceeding already underway.  (*Id.*)  This is not an actionable abuse of process.  *See Moore v. Bushman*, 559 S.W.3d 645, 653 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (abuse of process requires an ulterior motive in using the process willfully and in a wrongful manner).

Furthermore, the section 1589(b) claim fails because Plaintiffs do not sufficiently allege that Mr. Crow received anything of cognizable value or that there was any *quid pro quo*.  (*See supra* at I.A.2); *cf. Fitzgerald I*, 2022 WL 425016 at *6-7 ("sexual gratification" is not a "thing of value" under TVPA).  Nor do they allege facts showing that Mr. Crow obtained anything of cognizable value while knowing or in reckless disregard of the fact that it was improperly obtained.  (*Supra* at I.B.1)

### D. The Third and Fourth Causes of Action for Violation of RICO Under 18 U.S.C. § 1962(c) and (d) Should Be Dismissed for Several Reasons.

#### 1. Ms. Hubbard and Ms. Goedinghaus Lack RICO Standing.

To establish RICO standing, Plaintiffs must allege a "concrete financial loss" to business or property and show that the RICO violation was both "proximate and but-for" causation of the alleged harm.  *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992); *HCB Fin. Corp. v.*

*McPherson*, 8 F.4th 335, 344 (5th Cir. 2021).  When evaluating proximate cause, the question is whether the alleged violation led directly to the plaintiff's injuries.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  The injury must be caused by "an overt act" of racketeering or conduct "otherwise wrongful under RICO." *Beck v. Prupis*, 529 U.S. 494, 505 (2000).

Plaintiffs' alleged RICO injuries are (1) lost money that Plaintiffs earned for sexual acts at swinger parties, and (2) "physical and emotional injury." (Compl. ¶¶ 312, 335, 343.)  Ms. Hubbard separately alleges additional injuries for the repossession of her home and confiscation of wages by Grover for his own benefit.  (*Id.* ¶¶ 45, 265.)  None of the alleged injuries establish RICO standing.  Conclusory allegations that Defendants "damaged" Plaintiffs or "caused physical and emotional injury" are insufficient.  *See Berg v. First State Ins. Co.*, 915 F.2d 460, 463-64 (9th Cir. 1990); *see also Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 n.20 (5th Cir. 1998) (personal injuries, including emotional distress, that result in pecuniary losses, are not compensable under RICO).  Also, money earned at parties in exchange for sexual acts (i.e., for illegal prostitution) is not recoverable under RICO.  *See Shulman v. Kaplan*, No. 2:19-cv-5413, 2020 WL 7094063, at *2 (C.D. Cal. Oct. 29, 2020) (injuries to illegal businesses are not redressable under RICO); TEX. PENAL CODE § 43.02 (illegal to receive a fee to engage in sexual conduct).

Concerning Ms. Hubbard's additional alleged injury, no allegations sufficiently connect the loss of her home or Grover's supposed wage garnishment to the purported RICO conduct, much less to anything done by Mr. Crow.  Rather, the Complaint asserts that Grover kept her wages "*for his own benefit*"—not for the so-called Enterprise. (Compl. ¶ 45.)  And Ms. Hubbard alleges her home's repossession was caused by "her heavily strained financial situation." (*Id.* ¶ 265.)  There are numerous alternative reasons for "her heavily strained financial situation" and foreclosure, such as her ongoing domestic issues with Mr. Hubbard, Grover and Hynes, Jr., or a simple failure to pay her mortgage. *See Williams v. Steward Health Care Sys., LLC*, No. 5:20-cv-

123, 2022 WL 575939, *14 n.4 (E.D. Tex. 2022) (*citing Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms Co. Ltd.*, 943 F.3d 1243, 1250 (9th Cir. 2019)) (plaintiff must show injury is directly attributable to RICO violation as opposed to other factors); *see also Twombly*, 550 U.S. at 565 (when considering plausibility, courts must also consider an obvious alternative explanation).  The Complaint fails to proximately connect the alleged conduct to a cognizable RICO injury.  *See Holmes*, 503 U.S. at 268.

### 2.   Plaintiffs Fail to Otherwise Allege a Section 1962(c) Claim.

RICO is "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff."  *Fisher v. Halliburton*, No. H-05-1731, 2009 WL 5170280, *3 (S.D. Tex. Dec. 17, 2009).  To assert a RICO claim under 18 U.S.C. § 1962 (c), Plaintiffs must plausibly allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's business or property.  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also Arruda v. Curves, Int'l, Inc.*, 861 Fed. App'x 831, 834 (5th Cir. 2021).

Plaintiffs allege a long-running story of domestic abuse and drug addiction as between themselves and the Domestic Partner Defendants, which they attempt to transform into RICO claims against others with whom they socially intersected.  *Cf. Twombly*, 550 U.S. at 557-58.  Plaintiffs strain to include as many defendants and as much conduct as possible, but even then, Mr. Crow and the other Defendants come and go without any factual allegations that plausibly connect them, or their conduct, to the supposed Enterprise—the gravamen of a RICO claim.

Nor do Plaintiffs allege facts showing that any defendants functioned as a continuing unit with a common purpose, and Plaintiffs cannot salvage their pleading by resorting to conclusory allegations to fill the gaps.  (*See*, *e.g.*, Compl. ¶ 342 (conclusory allegation that every act was done in furtherance of the enterprise).)  Simply put, they fail to allege facts to "nudge[] their [RICO]

claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### a.   Plaintiffs Fail to Allege an "Enterprise."

There are two categories of associations that come within the statutory definition of "enterprise."  *See* 18 U.S.C. § 1961(4).  The first encompasses "legal entities" and the second covers 'any union or group of individuals associated in fact although not a legal entity.'"  *United States v. Turkette*, 452 U.S. 576, 581-82 (1981).  "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."  *Id.* at 583; *see Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988) ("an enterprise must be an entity separate and apart from the pattern of racketeering activity in which it engages.").  Plaintiffs do not assert a legal entity and fail to adequately allege an association-in-fact enterprise.  (*See* Compl. ¶ 329.)

To allege an association-in-fact enterprise, Plaintiffs must plead that it has (1) a common purpose, (2) a structure or organization, and (3) longevity necessary to accomplish the purpose.  *See McPeters v. Edwards*, 806 F.Supp.2d 978, 988 (S.D. Tex. 2011).  At a minimum, they must allege that Defendants had "[common] purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Id.*

The Complaint does not plausibly allege a common purpose shared by all Defendants.  Rather, it alleges that the *purposes* of the supposed criminal enterprise were "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Mr. Hubbard, Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants."  (Compl. ¶ 341.)  The facts alleged do not plausibly show any "common purpose and course of conduct" among the Defendants; instead, the allegations are that each Defendant acted with distinct purposes, interests, and goals.  *See Boyle v. United States*, 556 U.S. 938, 950 (2009).

---

For example: the medical doctors prescribed drugs to Plaintiffs for their own pecuniary gain, not to traffic Plaintiffs (*id.* ¶ 146); Grover's goal was to withhold for his own benefit Ms. Hubbard's wages at a gentleman's club (*id.* ¶ 250); Hynes Jr. is an alleged drug dealer who had Ms. Hubbard sell drugs for his own financial gain (*id.* ¶ 269); there is no indication what purpose Mitchell had for "fixing" unidentified "problems" (*id.* ¶ 160); and the goal of the so-called "Investor Defendants," including Mr. Crow, was allegedly to receive "sex and media of naked women or individuals engaged in sex acts." (*Id.* ¶ 39.)  Mr. Hubbard's purpose was allegedly to force Plaintiffs and others to "perform sex acts for payment, which payments he retained, and to secure business relationships." (*Id.* ¶ 3.)  The Complaint's conclusory attempt to align Defendants' goals cannot change the fact that their interests point in different directions.  There is no plausible "unified agenda" pled.  *See Labaty v. UWT, Inc.*, 121 F. Supp. 3d 721, 752-753 (W.D. Tex. 2015); *see also Comm. to Protect Our Agric. Water v. Occidental Oil*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017) (failure to plead a RICO enterprise where plaintiffs "allege[d] only a series of disconnected incidents, each involving a subset of the overall group of defendants, with no clear indication of a unified agenda"); *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004) (finding "divergent goals" among defendants insufficient to allege a RICO enterprise).

Plaintiffs also do not adequately allege that Defendants had sufficient relationships, i.e., they do not allege any organization or coordinated activities as a continuing unit.  Taking the Complaint at face value, the alleged participants in the "Enterprise" that somehow sprung from the supposed sex trafficking "Venture" never planned anything, worked together to obtain a common end, split profits, or even knew who each other were in most cases.  *See Labaty*, 121 F. Supp. 3d at 753 (no enterprise where there were no facts indicating that individual defendants together planned, discussed roles, or coordinated efforts).  According to the Complaint, after Eller and Mr. Hubbard began the so-called "Venture," a "racketeering enterprise" simply arose out it.  (*Id.* ¶ 6.)

"Crime and misconduct" were admittedly part of Plaintiffs' lives long before the events alleged in the Complaint, but that allegation hurts, not helps, their RICO claim.  (*Compare* Compl. ¶¶ 160, 280, *with Occidental Oil*, 235 F. Supp. 3d at 1175 (no RICO enterprise based on disconnected incidents among subgroups)); *see also Boyle*, 556 U.S. at 947 n.4 (un-orchestrated pattern of crime is insufficient to show RICO enterprise).

The RICO claim also fails because the Complaint conflates the supposed "Enterprise" with the alleged pattern of racketeering.  Again, the Enterprise supposedly arose out of Mr. Hubbard's Venture for "traffic[king] women for purposes of sexual acts and forced labor" purely by happenstance.  (Compl. ¶¶ 6, 341.)  There are no allegations indicating that there is an enterprise that stands "separate and apart" from these wrongful acts—a basic requirement for a RICO claim. *See McPeters*, 806 F.Supp.2d at 988 (dismissing complaint that conflates alleged enterprise with alleged pattern of racketeering).

Instead of establishing a plausible unified criminal enterprise, the Complaint describes long-running, serial domestic disputes between Plaintiffs and the Domestic Partner Defendants, with occasional cameos by other defendants.  Plaintiffs do not allege facts sufficient to plausibly establish the "organization" and "continuing unit" requirements for stating a RICO claim.  *See Boyle*, 556 U.S. at 947 n.4 ("It is easy to envision situations in which proof that individuals engaged in a pattern of racketeering activity would not establish the existence of an enterprise.  For example, suppose that several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates—for example, bribery or extortion.  Proof of these patterns would not be enough to show that the individuals were members of an enterprise."); *see also Do v. Pilgrim's Pride Corp.*, 512 F. Supp. 2d 764, 768 (E.D. Tex. 2007) ("the enterprise must continue to have this same purpose, and the new member must perform the same roles as the old did"); *Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 957 (N.D. Cal. 2013) (dismissal required where plaintiff

fails to make "factual allegations to detail [defendant's] involvement or make [his] involvement in the enterprise plausible").

### b. Plaintiffs Do Not Allege a "Pattern of Racketeering."

To plead a pattern of racketeering activity, the Complaint must allege that the racketeering predicates: (i) are *related*, and (ii) amount to or pose a threat of *continued criminal activity*. *Malvino v. Delluniversita*, 840 F.3d 223, 232 (5th Cir. 2016). The relatedness requirement is satisfied only where a plaintiff alleges criminal acts with the "same or similar purposes, results, participants, victims, or methods of commission, or acts that are otherwise interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. N.W. Bell Telephone Co.*, 492 U.S. 229, 240 (1989). The continuity requirement is satisfied only where the plaintiff alleges "either a series of related predicates extending over a substantial period of time," i.e., closed-ended continuity, "or past conduct that by its nature projects into the future with a threat of repetition," i.e., open-ended continuity. *Id.* at 241-242. Where RICO is asserted against multiple defendants, the plaintiff must allege at least two predicate acts by *each* defendant. *See U.S. v. Sutherland*, 656 F.2d 1181, 1203 (5th Cir. 1981).

Plaintiffs generally allege four categories of supposed predicate acts against all Defendants: violations of sex and labor trafficking laws, wire fraud,[10] witness tampering, and violations of the Controlled Substances Act ("CSA"). Plaintiffs fail to allege the factual basis for any predicate act as to Mr. Crow. *See Gabriel v. Outlaw*, 3:20-cv-60, 2021 WL 1030157, *2 (N.D. Tex. Mar. 1, 2021) (conclusory allegations of various criminal acts are insufficient). First, the trafficking claims

---

[10] Plaintiffs fail to sufficiently allege wire fraud as a predicate act as to any Defendant. (Compl. ¶ 310.) Pleading a predicate act sounding in fraud must satisfy the particularity requirements of Rule 9(b). Plaintiffs manifestly fail to meet this heightened pleading standard because they do not, *inter alia*, specifically allege the "time, place, and contents" of any supposedly fraudulent misrepresentation or the "identity of the person making the misrepresentation and what he obtained thereby." *Tel-Phonic Services, Inc. v. TBS Intern, Inc.*, 975 F.2d 1134, 1139 (1992) (applying 9(b) to mail fraud).

against Mr. Crow fail as a matter of law.  (*See supra* at I.A., I.B.)  Second, Plaintiffs do not allege that Mr. Crow engaged in fraud or tampered with witnesses.  With respect to the CSA, there are no allegations that Mr. Crow's alleged drug use or the presence of drugs were predicate acts or caused Plaintiffs' alleged injury.[11]  (*See* Compl. ¶ 310.)  *See Hemi Group, LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 13 (2010) ("[T]he compensable injury flowing from a RICO violation necessarily is the harm caused by the predicate acts").

### c.   *Plaintiffs Do Not Sufficiently Allege RICO "Conduct."*

RICO requires Plaintiffs plead that Mr. Crow "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the alleged] enterprise's affairs."  18 U.S.C. § 1962(c).  In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the U.S. Supreme Court set forth the "operation and management test" for determining what constitutes "conduct or participation" for a RICO claim.  The "operation and management test" requires that a defendant "have some part in directing [the enterprise's] affairs."  *Id.* at 179.  Rather than provide a rote definition of "conduct," the test requires courts to consider various factors, such as whether the defendant occupied a position in the chain of command for conducting the alleged enterprise's affairs, whether he knowingly implemented the decisions of upper management, whether his position was vital to the mission's success and a "showing that the [he] conducted or participated in the conduct of the 'enterprise's affairs,' not just [his] own affairs."  *Reves*, 507 U.S. at 185; *see also Tijerina-Salazar v. Venegas*, No. P:19-cv-74, 2022 WL 17815729, *4 (W.D. Tex. Jan. 9, 2022) (discussing factors).  Under this test, the Supreme Court limited RICO liability: a defendant with mere "non-supervisory involvement" does not "direct" the enterprise's affairs.  *See Gutierrez v. Venegas*, No. 6:20-cv-129, 2021 WL 9314946, *5 (N.D. Tex. Sept. 8, 2021); *see also Allstate Ins. Co. v. Plambeck*, 802

---

[11] The Complaint also fails to allege a CSA violation because it does not allege that the amount of drugs was within the CSA's scope.  *See* 21 U.S.C. § 841.

F.3d 665, 675 (5th Cir. 2015) (plaintiff must show defendant had "supervisory involvement" to satisfy conduct requirement).

There are no allegations that Mr. Crow played a supervisory role in the alleged Enterprise. At most, there are conclusory allegations that he hosted parties where Plaintiffs attended and had sex with others (Compl. ¶ 178), was "[t]he key financial supporter of the enterprise" by supposedly once loaning money to Mr. Hubbard to pay his divorce lawyer (*id.* ¶¶ 30, 34, 186), and knew of the "force, fraud, threat, and coercion which [Mr. Hubbard] used." (*Id.* ¶ 31). These allegations do not come close to demonstrating management, command, carrying out of tasks by Mr. Crow, or that the so-called Enterprise would fall apart without him. The more plausible inference is that Mr. Crow was a bystander to whatever Mr. Hubbard is alleged to have done on his own or while at a party hosted by Mr. Crow, which is not a RICO violation. *See Gomez v. Guthy-Renker, LLC*, No. EDCV-14-01425, 2015 WL 4270042, at *5 (C.D. Cal. July 13, 2015) ("Since Business is merely a consumer of Provider's services, Business cannot be said to participate in the operation or management of Provider"); *see also In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 237 (S.D.N.Y. 2001) (finding insufficient conduct under § 1962(c) where defendant "was a mere customer of the alleged enterprise").

Even if the Complaint plausibly alleged that Mr. Crow was involved in "management" (it does not), the only plausible conclusion is that he was "managing" his own affairs. According to Plaintiffs, Mr. Crow hosted a party after his annual EarthX expo "to blow off steam." (Compl. ¶ 178.) Only Mr. Hubbard allegedly viewed the party as an opportunity for the "development of business relationships." (*Id.*) Alleging that Mr. Crow simply knew that potentially illegal activity was occurring does not give rise to RICO liability. *See Walter v. Drayson*, 538 F.3d 1244, 1248 (9th Cir. 2008) (noting *Reves* requires "some degree of direction" and that "fail[ure] to stop illegal activity" is not enough"). Plaintiffs fail to sufficiently allege the "conduct" element. *Reeves*, 507

U.S. at 179 (requiring "some degree of direction").

### 3. The Statute of Limitations Bars Ms. Hubbard's Claims.

Civil RICO claims have a four-year statute of limitations, which begins to run once a plaintiff knows or should know of the injury that underlies her cause of action. *See Boulmay v. Rampart 920, Inc.*, 124 F. App'x 889, 891 (2005). To the extent Plaintiffs allege any cognizable RICO injury,[12] the latest (and only) date that Ms. Hubbard alleges a "concrete financial loss" is April 2018, when her house was repossessed, allegedly because of Defendants' conduct.[13] (Compl. ¶ 265.) Despite knowing of this "injury" at the time, Ms. Hubbard waited more than four years, until November 2022, to sue. *See Boulmay*, 124 F. App'x at 891. ("Boulmay's filings show that he was aware of a RICO injury in 1999, more than four years prior to the filing of his complaint").

Ms. Hubbard's claims are not subject to equitable tolling. "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Farmer v. D&O Contractors, Inc.*, 640 F. App'x 302, 305 (5th Cir. 2016) ("equitable tolling is to be applied sparingly"). Ms. Hubbard alleges that she learned from Mr. Hubbard that she was supposedly being trafficked by the so-called criminal venture as early as 2012. (*See* Compl. ¶ 238 ("By 2012, [Mr. Hubbard] had dropped any pretense of requiring [Ms. Hubbard]'s consent for the" swinger parties). She also alleges that she "escaped" the so-called venture in March 2017 (more than a year before her alleged injury). (*Id.* ¶ 247.) Ms. Hubbard had sufficient knowledge of the alleged facts to constitute a claim upon the repossession of her home in April 2018. Her RICO claims are time-barred. *See*

---

[12] The injury must be for a "concrete financial loss." *HCB Fin. Corp.*, 8 F.4th at 344.

[13] Ms. Hubbard alleges domestic abuse by Hynes Jr. continued until "late October or early November 2018," but there are no allegations of business or property loss caused by any Defendant after the repossession. (*See* Compl. ¶¶ 277-79.)

*Farmer*, 640 F. App'x at 306.

### 4. Plaintiffs' RICO Conspiracy Claims Also Fail.

To adequately plead a RICO conspiracy claim under section 1962(d), a plaintiff must first adequately plead a cognizable substantive RICO violation of sections 1962(a), (b) or (c). *See Poe v. Bock*, No. EP-cv-17-232, 2018 WL 4677901, *5 (W.D. Tex. Jun. 11, 2018). As shown above, Plaintiffs failed to adequately allege a substantive RICO claim under Section 1962(c) (the only substantive RICO claim they allege).

Even if they had alleged a cognizable section 1962(c) claim (they have not), Plaintiffs conspiracy claim fails because they have not plausibly alleged "that each defendant was "aware of the essential nature and scope of the enterprise and intended to participate in it." *Ducote Jax Holdings, LLC v. Bradley*, No. 04-1943, 2007 WL 2008505, *7 (E.D. La. Jul. 5, 2007). For instance, they have not plausibly alleged that Mr. Crow was aware that Mr. Hubbard was engaged in a sex trafficking enterprise to enrich himself and develop business connections. Nor do they allege that anyone other than Mr. Hubbard and Eller were aware of the nature of the alleged enterprise. The RICO conspiracy claim must also be dismissed.

### LEAVE TO AMEND SHOULD BE DENIED

A court may deny leave to amend where the amendment would be futile. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003). Amendment would be futile because Plaintiffs admit that they have no cognizable RICO injury (and thus lack standing), admit that Mr. Crow did not provide anything of value to cause either Plaintiff to engage in a sex act, and admit that Mr. Crow did not obtain any labor by prohibited means under the trafficking statutes. Additionally, Ms. Hubbard admits facts showing that the statute of limitations bars her RICO claims. *See Gore v. Cedar Hill Independent School Dist.*, No. 3:14-cv-3963, 2016 WL 7638293, *3 (N.D. Tex. Dec. 8, 2016) (leave to amend is futile where claim is time barred).

## Conclusion

This Complaint alleges a disjointed story of long-running dysfunctional domestic relationships mired in physical abuse and drug addiction, centered around Plaintiffs' relationships with their ex-husbands and ex-boyfriends.  The Complaint fails to allege facts showing any wrongful conduct by Mr. Crow or that his conduct caused the alleged harm (or even that the alleged harm is cognizable or redressable under the law).  Ms. Hubbard's RICO claims expired because she waited more than four years after her latest possible injury to file her Complaint, and Ms. Goedinghaus never suffered RICO injury.  For all the foregoing reasons, Mr. Crow respectfully requests that the Court dismiss the Complaint without leave to amend.

DATED:  June 2, 2023                              Respectfully submitted,


                                    /s/ *Kenneth C. Stone*
                                    Gerald E. Hawxhurst
                                    Texas State Bar No. 24090636
                                    jerry@hawxhurstllp.com
                                    HAWXHURST LLP
                                    1301 S. Capital of Texas Hwy
                                    Building C, Suite 300
                                    Austin, Texas 78746
                                    Tel: (512) 522-4995
                                    Fax: (512) 522-4961

                                    GRAY REED
                                      KENNETH C. STONE
                                      Texas Bar No. 19296300
                                      LONDON ENGLAND
                                      Texas Bar No. 24110313
                                    1601 Elm Street, Suite 4600
                                    Dallas, Texas 75201
                                    Telephone:  (214) 954-4135
                                    Facsimile:  (214) 953-1332
                                    Email:  kstone@grayreed.com
                                            lengland@grayreed.com

                                    *Attorneys for Defendant Trammell S. Crow, Jr.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing "Trammell S. Crow, Jr.'s Motion to Dismiss the Complaint" was served on the following counsel of record via ECF on June 2, 2023.

*/s/ Kenneth C. Stone*
Kenneth C. Stone
