UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, | § § § | |
| Plaintiffs, | § § | Case No. 5:23-cv-00580-FB |
| v. | § § | |
| TRAMMELL S. CROW, JR., DR. BENJAMIN TODD ELLER, RICHARD HUBBARD, DR. MELISSA MILLER, DR. JOSEPH BOLIN, DR. SCOTT WOODS, DR. MRUGESHKUMAR SHAH, MICHAEL CAIN, COE JURACEK, PHILIP ECOB, H.J. COLE, TEXAS RANGER CODY MITCHELL, KURT KNEWITZ, PAUL PENDERGRASS, RALPH ROGERS, ROBERT PRUITT, SCOTT BRUNSON, CASE GROVER, RICHARD BUTLER, MARK MOLINA, MICHAEL HYNES, JR., SHAWN MAYER, JADE MAYER, RCI HOSPITALITY HOLDINGS, INC., INTEGRITY BASED MARKETING, LLC, STORM FITNESS NUTRITION, LLC, ULTRA COMBAT NUTRITION, LLC, ECOLOFT HOMES LLC, ELEVATED WELLNESS PARTNERS LLC, DOE INDIVIDUALS 1–20, and DOE COMPANIES 21–30 | § § § § § § § § § § § § § § § § § § § § § § § § § | Judge: Hon. Fred Biery Date Action Filed: May 8, 2023 (transferred) |
| Defendants. | § | |

### DEFENDANT DR. MELISSA MILLER'S
### RULE-12(b)(6) MOTION TO DISMISS

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE FRED BIERY:**

COMES NOW, Defendant Dr. Melissa Miller (**"Dr. Miller"**) and pursuant to Federal

Rules of Civil Procedure 8, 9(b) and 12(b)(6), files this motion requesting the Court to dismiss

all claims made against her in this case, on two grounds:  (1) that all claims against Dr. Miller are in actuality health care liability claims that must be filed under Chapter 74 of the Texas Civil Practice and Liability Code, warranting dismissal under Fed. R. Civ. P. 12(b)(6); and (2) that Plaintiffs' pleadings fail to meet the minimum pleading standards set forth in Fed. R. Civ. P. 8(a) and fail to set forth allegations that sufficiently plead a cognizable claim for relief against Dr. Miller, such that dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(6).

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS......................................................................................................iii

TABLE OF AUTHORITIES ............................................................................................. iv

I. INTRODUCTION ........................................................................................................ 1

   A.  Brief Background................................................................................................... 1

   B.  Factual Allegations Relevant to This Motion ...................................................... 2

      1.  Dr. Miller's involvement with Plaintiffs ......................................................... 2

      2.  The Alleged "Trafficking Venture" and "RICO Enterprise." ........................ 2

   C.  Applicable Legal Standards ................................................................................. 3

II. ARGUMENTS AND AUTHORITES ....................................................................... 5

   A.  Dismissal is appropriate under Rule 12(b)(6) because Plaintiffs' causes of action against Dr. Miller are health care liability claims. ............................................................... 5

      1.  Health Care Liability Claims under Texas Law. .............................................. 5

      2.  Plaintiffs' Claims are Health Care Liability Claims. ...................................... 6

   B.  Dismissal is Appropriate under Rule 12(b)(6) because the Complaint Fails to Satisfy the Pleading Requirements of Rule 8. ...................................................................... 10

      1.  Count One – Violation of Human Trafficking Laws (Sex Trafficking). ....... 11

      2.  Count Two – Violation of Human Trafficking Laws (Labor Trafficking). .... 12

      3.  Counts Two and Three:  Violations of RICO (Pattern of Racketeering and RICO Conspiracy)............................................................................................................ 13

         a.  Plaintiffs Lack RICO Standing. .................................................................. 13

         b.  Plaintiffs Fail to Allege a Section 1962(c) Claim...................................... 14

           (1)  Plaintiffs Fail to Allege an "Enterprise." ............................................. 14

           (2)  Plaintiffs do not Allege a Pattern of Racketeering. .............................. 16

           (3)  Plaintiffs Do Not Sufficiently Allege RICO "Conduct." ..................... 17

           (4)  Plaintiffs' RICO Conspiracy Claims Also Fail. .................................. 18

   III.  CONCLUSION.................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Cases**

*Allstate Ins. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015) .......................................... 18

*Arruda v. Curves, Int'l, Inc.*, 861 Fed. App'x 831 (5th Cir. 2021).................................. 14

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ..................................................................... 3, 4

*Baker v. IBP*, Inc., 357 F.3d 685 (7th Cir. 2004) .......................................................... 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 3

*Boyle v. United States*, 556 U.S. 938 (2009) ............................................................... 15

*Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842 (Tex. 2005).................................... 6

*Ducote Jax Holdings, LLC v. Bradley*, No. 04-1943, 2007 WL 2008505 (E.D. La. Jul. 5, 2007)19

*Earle v. Ratliff*, 998 S.W.2d 882 (Tex. 1999) .................................................................. 6

*Garland Community Hosp. v. Rose*, 156 S.W.3d 541 (Tex. 2004)......................................... 6

*Garrison v. Members of the Bd. Of Thomason Hosp.*, 2015 WL 12570884 (W.D. Tex. – El Paso 2015)........................................................................................................ 6, 9

*Gormley v. Stover*, 907 S.W.2d 448 (Tex. 1995)............................................................. 6

*Gutierrez v. Venegas*, No. 6:20-cv-129, 2021 WL 9314946 (N.D. Tex. Sept. 8, 2021) .............. 18

*H.J. Inc. v. N.W. Bell Telephone Co.*, 492 U.S. 229 (1989) .......................................... 17

*Harris v. Henry*, 2022 WL 16825200 (W.D. Tex. Jan. 11, 2023) .............................. 12

*Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417 (5th Cir. 2001)........................................... 13

*Jackson v. Sedgwick Claims Mgmt. Servs.*, Inc., 731 F.3d 556 (6th Cir. 2013) ........................... 13

*Jim S. Adler, P.C. v. Angel S. Reyes & Assocs., PC*, No. 3:19-cv-2027, 2020 WL 5099596 (N.D. Tex. Aug. 7, 2020)............................................................................................. 11

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir.1982) ............................................................................................................... 4, 10

*Labaty v. UWT, Inc.,* 121 F. Supp. 3d 721 (W.D. Tex. 2015) ........................................ 16

*Langston v. Ethicon*, No. 3:20-cv-3712, 2021 WL 6198218 (N.D. Tex. Dec. 31, 2021)............. 11

*Loaisiga v. Cerda*, 379 S.W.3d 248 (Tex. 2012) ........................................................ 5

*MacGregor Medical Ass'n v. Campbell*, 985 S.W.2d 38 (Tex. 1998) ........................................ 6

*Malvino v. Delluniversita*, 840 F.3d 223 (5th Cir. 2016) ............................................ 16

*Maxx Sports Tech. Ltd. v. Hansen*, 2020 WL 4756760 (S.D. Tex. 2020) ..................................... 4

*McPeters v. Edwards*, 806 F.Supp.2d 978 (S.D. Tex. 2011)........................................... 15, 16

*Noble Capital Tex. Real Estate Income Fund LP v. Newman*, No. 1:22-cv-652, 2023 WL 3035411 (W.D. Tex. Jan. 13, 2023)................................................................. 10

*Poe v. Bock*, No. EP-cv-17-232, 2018 WL 4677901 (W.D. Tex. Jun. 11, 2018)........................ 18

*Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2022 WL 106733 (M.D. Tenn. Jan. 11, 2022)...... 12

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)....................................................... 17, 18

*Rio Grande Valley Vein Clinic, P.A. v. Guerrero*, 431 S.W.3d 64 (Tex. 2014)........................... 5

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ................................................... 14

*Shulman v. Kaplan*, 2020 WL 7094063 (C.D. Cal. Oct. 29, 2020) ............................................ 14

*Sorensen v. FedEx Kinko's Office and Print Services, Inc.,* 2006 WL 3779783 (W.D. Tex. – San Antonio 2006) ..................................................................................... 4

*Sorokolit v. Rhodes*, 889 S.W.2d 239 (Tex. 1994) ...................................................... 6

*Standard v. Nygren*, 658 F.3d 792 (7th Cir. 2011) .............................................. 10, 13

*Tijerina-Salazar v. Venegas*, No. P:19-cv-74, 2022 WL 17815729 (W.D. Tex. Jan. 9, 2022).... 18

*U.S. v. Sutherland*, 656 F.2d 1181 (5th Cir. 1981) ..................................................... 17

*United States v. Baylor Scott & White Health*, 2019 WL 3713756 (W.D. Tex – San Antonio 2019) ....................................................................................................... 4

*United States v. Turkette*, 452 U.S. 576 (1981) ....................................................... 15

*Walden v. Jeffery*, 907 S.W.2d 446 (Tex. 1995)........................................................ 6

*Walter v. Drayson*, 538 F.3d 1244 (9th Cir. 2008) ........................................................ 18

**Statutes**

18 U.S.C. § 1589 ............................................................................................... 1, 12, 13

18 U.S.C. § 1591(a) .............................................................................................. 1, 11

18 U.S.C. § 1595(a) .................................................................................................. 11

18 U.S.C. § 1961 ...................................................................................................... 14

18 U.S.C. § 1962 ................................................................................... 1, 14, 17, 18

18 U.S.C. § 1964(c) ........................................................................................... 13, 14

Tex. Civ. Prac. & Rem. Code Ann. § 74.001 ............................................................ 5

Tex. Civ. Prac. & Rem. Code Ann. § 74.251 ......................................................... 10

Tex. Penal Code § 43.02 ......................................................................................... 14

**Rules**

Fed. R. Civ. P. 8 ............................................................................................. 10, 13, 19

Fed. R. Civ. P. 8(a) .................................................................................................. 11

Fed. R. Civ. P. 8(a)(2) ............................................................................................... 3

Fed. R. Civ P. 12(b)(6) ..................................................................................... 3, 5, 10

# I.
# INTRODUCTION

## A.    Brief Background

Plaintiffs have sued 23 specific individuals, as well as numerous entities and "Doe Individuals" and "Doe Companies," alleging that these parties participated in a sex and labor trafficking venture in which Plaintiffs were forced to be sex slaves and engage in commercial sex acts.  Defendant Dr. Miller is one of four defendant physicians (referred to in Plaintiffs' Complaint as the "Medical Doctor Defendants") who allegedly participated in this venture by prescribing medications for Plaintiffs that they (the physicians) knew were being used for improper purposes and by ignoring Plaintiffs' reports of physical and sexual abuse.

Specifically regarding Defendant Dr. Miller, Plaintiffs' Complaint alleges that she continued to prescribe medications (including controlled substances) to Plaintiff Goedinghaus despite Plaintiff informing her that she was being physically abused and raped by Defendant Richard Hubbard ("Rick").  Plaintiffs' Complaint further alleges that the defendant physicians (including Dr. Miller) continued to prescribe medications to Plaintiffs despite being informed of the Venture, the fact that Rick was stealing the prescribed medications, and that Plaintiffs were being physically and sexually abused.

Plaintiffs have alleged causes of action against all Defendants (including Dr. Miller) for:

- Sex Trafficking under 18 U.S.C. § 1591(a)

- Labor Trafficking under 18 U.S.C. § 1589

- Pattern of Racketeering Activity under 18 U.S.C. § 1962(c)

- RICO Conspiracy under 18 U.S.C. § 1962(d)

1

B.      **Factual Allegations Relevant to This Motion**

   1. *Dr. Miller's involvement with Plaintiffs*

Dr. Miller's involvement with Plaintiffs (according to the allegations in the Complaint) was limited to prescribing medications to Plaintiff Goedinghaus from April 2019 through September 2019.  (Compl. ¶ 152).  There is no allegation in the Complaint that Dr. Miller treated Plaintiff Goedinghaus during any other time period, or that she ever treated or prescribed medications to Plaintiff Hubbard.

   2. *The Alleged "Trafficking Venture" and "RICO Enterprise."*

The Complaint alleges that in 2012, Codefendants Dr. Eller (a psychologist in California) and Rick decided to start a "sex and labor trafficking venture" (the so-called "Venture") whereby Rick would prostitute Plaintiff Hubbard at swinger parties, which the Complaint refers to as "Forced Sex Parties."  (*Id.* ¶¶ 119-21).  The Venture's alleged purpose was "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of [Rick], [Dr.] Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants." (*Id.* ¶ 341).

At some unspecified time the so-called "Venture" allegedly transformed into an "illegal racketeering Enterprise" as other persons became entangled in Plaintiffs' domestic affairs. (*Id.* ¶ 6).  As alleged, "[b]ecause Eller was not a medical doctor, he was unable to write the prescriptions." (*Id.* ¶ 139). So, "[s]tarting in Fall 2010, [the Venture] located the Medical Doctor Defendants … to write prescriptions based only on Eller's written recommendations in exchange for payments from Rick." (*Id.* ¶ 139).   The Complaint alleges that Dr. Miller prescribed medications to Plaintiff Goedinghaus despite her report to Dr. Miller that Rick was withholding her medications and physically and sexually abusing her. (*Id.* ¶ 145).

The Venture then allegedly added two of Rick's friends, Defendants Knewitz and Mitchell (the "Fixer Defendants"), to "fix" problems as they arose. (*Id*. ¶ 154). The Fixer Defendants kept Plaintiff Hubbard and the Venture's "other victims" in line by threatening misuse of the legal process. (Id. ¶ 155). At some point Rick and Eller also secured investors (the "Investor Defendants") for the Venture, which provided the Venture with funding and the accrual of profits to Rick. (*Id.* ¶¶ 29, 40).

**C.    Applicable Legal Standards**

Dismissal under Rule 12(b)(6) is warranted when the pleadings fail to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must also satisfy the pleading requirements of Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." These pleading requirements do not require "detailed factual allegations," but they do demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). A plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Id.* A plaintiff's lawsuit will not survive a motion to dismiss if the facts pleaded do not raise the right to relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Formulaic recitations of the elements of a cause of action and naked assertions devoid of further factual enhancement are insufficient. *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

3

Establishing plausibility requires a "context specific" two-step process in which the court "draws on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. First, a court should "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Second, the court should "assume the … veracity [of] well pleaded factual allegations [and] determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* When considering the plausibility of a claim, courts must also consider any "obvious alternative explanation" for a defendant's behavior. *Id.* at 681-83 (holding allegations of purposeful, invidious discrimination implausible where an "obvious alternative explanation" appears to be a more likely cause of the claimed misconduct); *United States v. Baylor Scott & White Health*, 2019 WL 3713756, *6 (W.D. Tex – San Antonio 2019) (where there is an "obvious alternative explanation" that is legal, the complaint fails to state a claim for relief); *Maxx Sports Tech. Ltd. v. Hansen*, 2020 WL 4756760, *5 (S.D. Tex. 2020) (Where an "obvious alternative explanation" provides a more likely reason for the complained of conduct, the plaintiff's claim does not cross the plausibility threshold).

Directly relevant to this case, "a complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982); *see also Sorensen v. FedEx Kinko's Office and Print Services, Inc.,* 2006 WL 3779783, *1 (W.D. Tex. – San Antonio 2006).

# II.
# ARGUMENTS AND AUTHORITIES

**A.** **Dismissal is appropriate under Rule 12(b)(6) because Plaintiffs' causes of action against Dr. Miller are health care liability claims.**

As summarized above and explained in detail below, Dr. Miller is entitled to dismissal of all Plaintiffs' causes of action against her under Rule 12(b)(6) on the ground that these claims are actually health care liability claims under Chapter 74 of the Texas Civil Practices and Remedies Code. Consequently, Plaintiffs' claims against Dr. Miller under the above federal statutes fail as a matter of law and should be dismissed with prejudice, as these statutes cannot provide remedies for alleged medical negligence.

### 1. *Health Care Liability Claims under Texas Law.*

Chapter 74 defines "health care liability claim" as follows:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). Accordingly, the elements of a health care liability claim are (1) the defendant is a physician or health care provider, (2) the claim concerns treatment, lack of treatment, or a departure from standards of medical or health care, or safety, professional, or administrative services directly related to health care, and (3) the defendant's actions were the proximate cause of the plaintiff's injury. *Rio Grande Valley Vein Clinic, P.A. v. Guerrero*, 431 S.W.3d 64, 65 (Tex. 2014). Section 74.001(a)(13) is broadly construed, and "creates a rebuttable presumption that a patient's claims against a physician or health care provider based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement are health care liability claims." *Loaisiga v. Cerda*, 379 S.W.3d 248, 252 (Tex. 2012).

Texas courts have consistently held that causes of action that are, in actuality, health care liability claims cannot simply be recast in the language of a different cause of action in order to avoid application of Chapter 74. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005); *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex. 1994). A cause of action based on a health care provider's breach of the accepted standard of care is nothing more than a health care liability claim no matter how it is labeled. *Gormley v. Stover*, 907 S.W.2d 448, 450 (Tex. 1995); *Earle v. Ratliff*, 998 S.W.2d 882, 892-93 (Tex. 1999). The test is whether, to successfully prove the claim, the plaintiff must prove a breach of the applicable standard of care. *MacGregor Medical Ass'n v. Campbell*, 985 S.W.2d 38, 41 (Tex. 1998). If the alleged conduct is inseparable from the underlying medical or health care services, then the claim is a health care liability claim. *Garland Community Hosp. v. Rose*, 156 S.W.3d 541, 543-44 (Tex. 2004); *Walden v. Jeffery*, 907 S.W.2d 446, 448 (Tex. 1995). Because a health care liability claim is broadly defined, "a claim *is* an HCLC (health care liability claim) if it is 'premised on facts that *could* support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care.'" *Garrison v. Members of the Bd. Of Thomason Hosp.*, 2015 WL 12570884, at *4 (W.D. Tex. – El Paso 2015).

### 2. *Plaintiffs' Claims are Health Care Liability Claims.*

A careful review of every factual allegation in the Complaint relied upon to support Plaintiffs' claims against Dr. Miller reveal that each of their claims are based on Dr. Miller's provision of medical care and services to Plaintiff Goedinghaus during a 4-5 month period in 2019:

- **Comp. ¶ 14 – Codefendant Rick "found medical doctors who were willing to write prescriptions based on [Codefendant] Eller's written recommendations. These physicians included Dr. Melissa Miller . . ."** Writing prescriptions for patients is an

inseparable part of the medical services and treatments that licensed physicians provide to their patients.  In this case, expert medical opinions will be required to determine whether the prescriptions written by Dr. Miller were appropriate and within standard of care.  Any issue as to the appropriateness of these prescriptions thus falls squarely within the definition of a health care liability claim.

- **¶¶ 15, 16, 143, 144 – Each of the Medical Doctor Defendants were informed by either or both Plaintiffs that the drugs they were prescribing were being used for an improper purpose, that Plaintiffs were being abused by Rick, and that Plaintiffs needed help; the Medical Doctor Defendants took no action in response to these reports but instead continued prescribing the medications that Eller recommended in return for payment from Rick.**  As mentioned above, prescribing medications is an inseparable part of the care and treatment provided by physicians to their patients, and any claims that these particular prescriptions were inappropriate – in other words, that prescribing these medications violated the physician standard of care – are clearly health care liability claims.  Moreover, whether the physicians had a duty to take some "action" based on Plaintiffs' alleged reporting is also a physician standard of care issue.  Defendant would also point out that Plaintiffs provide no details to support their conclusory statement that Rick made payments to Dr. Miller, and more importantly Plaintiffs do not allege that these payments were for anything other than medical services or treatment.

- **¶ 142 – The Medical Doctor Defendants all knowingly provided essential support to the Venture in exchange for financial benefits.**  This "essential support" is presumably the medications prescribed by the physicians to Plaintiffs, and the "financial benefits" are presumably the payments made to the physicians for the care and treatment they provided

to Plaintiffs as their patients.  This is basically the same allegation made in the above referenced paragraphs – that the medication prescriptions were inappropriate and not within the physician standard of care – and clearly falls within the broad definition of health care liability claim.

- **¶ 145 – Dr. Miller is a primary care physician whom Plaintiffs allege Rick "forced" Plaintiff Goedinghaus to see starting in April or May 2019.  Goedinghaus informed Dr. Miller that she was being abused and raped by Rick, but Dr. Miller continued to provide drugs to Goedinghaus and provided her no assistance.**  Once again, whether Dr. Miller inappropriately prescribed medications to Plaintiff Goedinghaus, or had some duty as a physician to provide assistance to her based on her report of abuse by Rick, is a physician standard of care issue.

- **¶ 146, 149, 150 – The large doses of medications prescribed by the Medical Doctor Defendants should have caused them to exercise further professional diligence, which they ignored to encourage continued payments from the Venture.  These high doses place them in "reckless disregard" that these drugs were being used for an improper purpose.  In combination the prescribed drugs presented a high risk of overdose and death as well as addiction.**  Whether the size of the doses of medications was or was not appropriate, and whether the size of the doses should have alerted the physicians that the medications were being used for an improper purpose, are also physician standard of care issues.

- **¶ 152 – This is a list of medications prescribed by Dr. Miller to Plaintiff Goedinghaus from May 2019 through September 2019.**  Whether these medications were or were not appropriately prescribed by Dr. Miller is a physician standard of care question.

Summarizing, Plaintiffs' allegations against Dr. Miller are based on: (1) Dr. Miller's prescribing medications to Plaintiff Goedinghaus from April 2019 until September 2019 in return for unspecified amounts of payment; (2) Dr. Miller's failure to take some unspecified action to assist Plaintiff Goedinghaus based on her reports that she was being abused by Rick and that Rick was using the medications for improper purposes; and (3) Dr. Miller's failure to recognize that, based on the size of the medication dosages being prescribed, these medications were likely being used for improper purposes.  Even accepting these factual allegations as true (as implausible as they are), each of Plaintiffs' claims against Dr. Miller are "health care liability claims" under Chapter 74.  Each claim is based on conduct that occurred during Dr. Miller's treatment of Plaintiff Goedinghaus.  Each claim is based on alleged conduct by Dr. Miller that is inseparable from her rendition of care to Plaintiff Goedinghaus.  Each claim is based on conduct by Dr. Miller – prescribing medications to Plaintiff Goedinghaus – that *could* support a health care liability claim against Dr. Miller.  *See Garrison* ("a claim *is* an HCLC if it is 'premised on facts that *could* support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care.'").

Based on the foregoing analysis, Plaintiffs have failed to state a claim upon which relief can be granted under any of the federal statutes in which they are seeking relief from Dr. Miller in this lawsuit.  Each of Plaintiffs' claims against Dr. Miller are properly characterized as health care liability claims under Chapter 74 of the Texas Civil Practice and Remedies Code and cannot be recast as claims under the federal Sex Trafficking statute, the federal Forced Labor statute, or the RICO statute.  Dr. Miller is entitled to dismissal of all causes of action brought against her in this lawsuit.

The Court should note that the statute of limitations for health care liability claims in Texas is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a).  Based on the Complaint, the latest date of Dr. Miller's treatment of Plaintiff Goedinghaus was October 2019.  The Complaint was filed on November 1, 2022, well over two years later.  Plaintiffs' claims against Dr. Miller are also subject to dismissal because of the expiration of the applicable statute of limitations.  See *Kaiser Aluminum & Chem. Sales, Inc.,* 677 F.2d at 1050) ("a complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action.").

**B.**   **Dismissal is Appropriate under Rule 12(b)(6) because the Complaint Fails to Satisfy the Pleading Requirements of Rule 8.**

The Complaint attempts to transform a series of domestic disputes between Plaintiffs and the Domestic Partner Defendants into a sweeping criminal sex trafficking venture and RICO enterprise without giving Defendants sufficient notice to adequately respond to the allegations. "To form a defense, a defendant must know what he is defending against; that is, he must know the legal wrongs he is alleged to have committed and the factual allegations that form the core of the claims asserted against him." *Standard v. Nygren*, 658 F.3d 792, 799-800 (7th Cir. 2011); *see also Noble Capital Tex. Real Estate Income Fund LP v. Newman*, No. 1:22-cv-652, 2023 WL 3035411, at *3 (W.D. Tex. Jan. 13, 2023) ("The Federal Rules of Civil Procedure, the clear precedent in the Fifth Circuit, and basic notions of fairness and justice require the undersigned to recommend dismissal of the Fund's claims due to illicit group pleading.").

The Complaint relies heavily on "everyone did everything" allegations.  *See, e.g.,* Compl. ¶ 309 (stating all defendants participated in alleged predicate acts).  Each of Plaintiffs' four counts in their Complaint is made "against all Defendants."  (*Id.* ¶¶ 318, 322, 326, 336.)  The first sentence

of each count adopts and realleges all prior paragraphs.  *Id.*  And each count is merely a recitation of the elements of each cause of action alleged without specific facts.  *Id.*  After a careful reading of the Complaint, it remains unclear which allegations concerning which defendant make up each claim.  *See Langston v. Ethicon*, No. 3:20-cv-3712, 2021 WL 6198218, *3 (N.D. Tex. Dec. 31, 2021) ("The Fifth Circuit disfavors what it has referred to as the 'shotgun approach' to pleadings where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick"); *see also Jim S. Adler, P.C. v. Angel S. Reyes & Assocs., PC*, No. 3:19-cv-2027, 2020 WL 5099596, *13-14 (N.D. Tex. Aug. 7, 2020) (shotgun pleading is the "inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired").

As discussed in detail below, each of the causes of action pleaded against Dr. Miller (Counts One, Two, Three and Four) should be dismissed for noncompliance with Rule 8(a).

### 1.  *Count One – Violation of Human Trafficking Laws (Sex Trafficking).*

The Victims of Trafficking and Violence Protection Act of 2000 ("TVPA") creates a private right of action for a victim of sex trafficking as defined in the act.  18 U.S.C. § 1595(a). There are two types of liability under the TVPA: (1) for *perpetrators* of a violation; and (2) for anyone who knowingly *benefits from participation* in a "venture" that violates the TVPA. 18 U.S.C. § 1591(a)(1)-(a)(2).  Plaintiffs' Complaint does not allege, either explicitly or implicitly, which defendant is purportedly liable under which theory.

More specifically, Plaintiffs do not plead facts that plausibly make up a cause of action against Dr. Miller under the TVPA.  The only facts pleaded in the Complaint regarding Dr. Miller's liability under the TVPA is that she accepted payments from Plaintiffs or Rick with knowledge of the alleged Venture.  However, there is an "obvious alternative explanation" as to why Dr. Miller

accepted payment from Plaintiffs (or Rick) – the payment was for medical services she provided to Plaintiff Goedinghaus.  Based on this obvious alternative explanation, this cause of action fails to "cross the plausibility threshold" and thus fails to state a claim upon which relief can be granted.

In addition, Plaintiffs have not pointed to any actual facts that support their assertion that Dr. Miller knew or should have known that Rick was engaged in sex trafficking at all, much less sex trafficking that involved Plaintiff Goedinghaus. *See Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2022 WL 106733, at *11 (M.D. Tenn. Jan. 11, 2022); see also *Harris v. Henry*, 2022 WL 16825200, at *6 (W.D. Tex. Jan. 11, 2023) ("Because liability under § 1591(a)(2) cannot be established by association alone, Plaintiff must allege facts showing that [defendant] was aware of the sex trafficking venture.").

This cause of action against Dr. Miller should be dismissed because the Complaint fails to plausibly show that Dr. Miller benefited from any sex trafficking venture.

### 2. *Count Two – Violation of Human Trafficking Laws (Labor Trafficking).*

To maintain a labor trafficking claim, Plaintiffs must plead facts that plausibly show that Dr. Miller (and each defendant) knowingly provided or obtained the plaintiffs' labor or services by means of (1) "force, threats of force, physical restraint, or threats of physical restraint," (2) "serious harm or threats of serious harm," (3) "the abuse or threatened abuse of law or legal process," *or* (4) "any scheme, plan, or pattern intended to cause" the plaintiff to believe that "serious harm or physical restraint" would result if they did not perform such labor. *See* 18 U.S.C. § 1589(a)(1)-(4).  Alternatively, Plaintiffs must plead facts that plausibly show that Dr. Miller (and each defendant) "knowingly benefit[ted], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the

venture has engaged in the providing or obtaining of labor or services by any of such means[.]" *See* 18 U.S.C. § 1589(b).  Once again, the Complaint – long in rhetoric and short on detail – fails to provide proper notice to Dr. Miller (or any other defendant) what alleged conduct *by each of them* purportedly supports a cause of action against them, or under which theory.  *See* FED. R. CIV. P. 8; *see also Nygren*, 658 F.3d at 799-800.

As with the sex trafficking allegations in Count One, the only facts pleaded in the Complaint regarding Dr. Miller's liability for labor trafficking is that she accepted payments from Plaintiffs or Rick with knowledge of alleged Venture.  Once again, there is an "obvious alternative explanation" as to why Dr. Miller accepted payment from Plaintiffs (or Rick) – the payment was for medical services she provided to Plaintiff Goedinghaus.  Based on this obvious alternative explanation, the labor trafficking cause of action also fails to "cross the plausibility threshold" and thus fails to state a claim upon which relief can be granted.

Additionally, the Complaint wholly fails to allege any facts that plausibly establish that Dr. Miller was aware of any forced labor ventures or that Plaintiffs were being forced to work against their will.

This cause of action against Dr. Miller should be dismissed because the Complaint fails to plausibly show that Dr. Miller knew of or benefited from any labor trafficking venture.

### 3. *Counts Two and Three:  Violations of RICO (Pattern of Racketeering and RICO Conspiracy)*

#### a. **Plaintiffs Lack RICO Standing.**

To allege RICO standing, Plaintiffs must allege injury to their business or property.  18 U.S.C. § 1964(c).  "The phrase 'injury to business or property' excludes personal injuries." *See, e.g.*, *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001); *see also Jackson v. Sedgwick Claims Mgmt. Servs.*, Inc., 731 F.3d 556, 565–66 (6th Cir. 2013) ("Although courts have used

various terms to describe the distinction between non-redressable personal injury and redressable injury to property, the concept is clear: both personal injuries and pecuniary losses flowing from those personal injuries fail to confer relief under § 1964(c).").

Plaintiff Goedinghaus alleges the following supposed RICO injuries: (1) lost money that Plaintiffs earned for sexual acts at swinger parties, and (2) "physical and emotional injury." (Compl. ¶¶ 312, 335, 343.)  Neither provides a basis for RICO standing. As a matter of law, the conclusory allegations that Defendants "damaged" Plaintiffs or "caused physical and emotional injury" are insufficient, as these are not damages for injury to business or property.  Also as a matter of law, money earned at parties in exchange for sexual acts (i.e., for illegal prostitution) is not recoverable under RICO.  *See Shulman v. Kaplan*, 2020 WL 7094063, at *2 (C.D. Cal. Oct. 29, 2020) (injuries to illegal businesses are not redressable under RICO); Tex. Penal Code § 43.02 (illegal to receive a fee to engage in sexual conduct).  Plaintiff Goedinghaus clearly has no standing to bring a RICO complaint against Dr. Miller (or any other defendant).

### b.  Plaintiffs Fail to Allege a Section 1962(c) Claim

To sustain a civil RICO claim under 18 U.S.C. § 1962(c), Plaintiffs must plausibly allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's business or property. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also Arruda v. Curves, Int'l, Inc.*, 861 Fed. App'x 831, 834 (5th Cir. 2021).

### (1) Plaintiffs Fail to Allege an "Enterprise."

First of all, Plaintiffs have failed to plausibly identify any enterprise that Dr. Miller was a part of.  There are two categories of associations that come within the purview of the statutory definition of "enterprise."  *See* 18 U.S.C. § 1961(4). The first encompasses "legal entities" (not

14

applicable to Dr. Miller) and the second covers "any union or group of individuals associated in fact although not a legal entity." *United States v. Turkette*, 452 U.S. 576, 581-82 (1981).  To allege an association-in-fact enterprise, Plaintiffs must plead that it has (1) a common purpose, (2) a structure or organization, and (3) longevity necessary to accomplish the purpose. *See McPeters v. Edwards*, 806 F.Supp.2d 978, 988 (S.D. Tex. 2011).  At a minimum, they must allege that Defendants had a "[common] purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*

The Complaint does not plausibly allege a common purpose shared by all Defendants. Rather, it alleges that the *purposes* of the supposed criminal enterprise were "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Mr. Hubbard, Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants." (Compl. ¶ 341.)  The facts alleged do not plausibly show any "common purpose and course of conduct" among the Defendants; instead, the allegations are that each Defendant acted with distinct purposes, interests, and goals. *See Boyle v. United States*, 556 U.S. 938, 950 (2009).  For example: the medical doctors prescribed drugs to Plaintiffs for their own pecuniary gain, not to traffic Plaintiffs (Compl. ¶ 146); Defendant Grover's goal was to withhold for his own benefit Ms. Hubbard's wages at a gentleman's club (*Id.* ¶ 250); Defendant Hynes Jr. is an alleged drug dealer who had Plaintiff Hubbard sell drugs for his own financial gain (*Id*. ¶ 269); there is no indication what purpose Defendant Mitchell had for "fixing" unidentified "problems" (*Id.* ¶ 160); and the goal of the so-called "Investor Defendants" was allegedly to receive "sex and media of naked women or individuals engaged in sex acts." (*Id.* ¶ 39.)  Rick's purpose was allegedly to force Plaintiffs and others to "perform sex acts for payment, which payments he retained, and to secure business relationships." (*Id.* ¶ 3.) The Complaint's conclusory attempt to align defendants' goals

cannot change the fact that their interests point in different directions. *See Baker v. IBP*, Inc., 357 F.3d 685, 691 (7th Cir. 2004) (finding "divergent goals" among defendants insufficient to allege a RICO enterprise).

Plaintiffs also do not adequately allege that Defendants had sufficient relationships, i.e., they do not allege any organization or coordinated activities as a continuing unit. Taking the Complaint at face value, the alleged participants in the "Enterprise" that somehow sprung from the supposed sex trafficking "Venture" never planned anything, worked together to obtain a common end, split profits, or even knew who each other were in most cases. *See Labaty v. UWT, Inc.,* 121 F. Supp. 3d 721 (W.D. Tex. 2015) at 753 (no enterprise where there were no facts indicating that individual defendants together planned, discussed roles, or coordinated efforts).

The RICO claim also fails because the Complaint conflates the supposed "Enterprise" with the alleged pattern of racketeering. Again, the Enterprise supposedly arose out of Mr. Hubbard's Venture for "traffic[king] women for purposes of sexual acts and forced labor" purely by happenstance. (Compl. ¶¶ 6, 341.) There are no allegations indicating that there is an enterprise that stands "separate and apart" from these wrongful acts—a basic requirement for a RICO claim. *See McPeters*, 806 F.Supp.2d at 988 (dismissing complaint that conflates alleged enterprise with alleged pattern of racketeering).

### *(2) Plaintiffs do not Allege a Pattern of Racketeering.*

To plead a pattern of racketeering activity, the Complaint must allege that the racketeering predicates: (i) are *related*, and (ii) amount to or pose a threat of *continued criminal activity*. *Malvino v. Delluniversita*, 840 F.3d 223, 232 (5th Cir. 2016). The relatedness requirement is satisfied only where a plaintiff alleges criminal acts with the "same or similar purposes, results, participants, victims, or methods of commission, or acts that are otherwise interrelated by

distinguishing characteristics and are not isolated events." *H.J. Inc. v. N.W. Bell Telephone Co.*, 492 U.S. 229, 240 (1989).  The continuity requirement is satisfied only where the plaintiff alleges "either a series of related predicates extending over a substantial period of time," i.e., closed-ended continuity, "or past conduct that by its nature projects into the future with a threat of repetition," i.e., open-ended continuity.  *Id.* at 241-242.  Where RICO is asserted against multiple defendants, the plaintiff must allege at least two predicate acts by *each* defendant.  *See U.S. v. Sutherland*, 656 F.2d 1181, 1203 (5th Cir. 1981).

Plaintiffs generally allege four categories of supposed predicate acts against all Defendants: violations of sex and labor trafficking laws, wire fraud, witness tampering, and violations of the Controlled Substances Act.  The only RICO predicate act alleged against Dr. Miller is a violation of the Controlled Substances Act.  This single predicate act is insufficient to assert RICO claims and liability against Dr. Miller.

### (3) Plaintiffs Do Not Sufficiently Allege RICO "Conduct."

RICO requires Plaintiffs plead that Dr. Miller "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the alleged] enterprise's affairs."  18 U.S.C. § 1962(c).  In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the U.S. Supreme Court set forth the "operation and management test" for determining what constitutes "conduct or participation" for a RICO claim. The "operation and management test" requires that a defendant "have some part in directing [the enterprise's] affairs."  *Id.* at 179.  Rather than provide a rote definition of "conduct," the test requires courts to consider various factors, such as whether the defendant occupied a position in the chain of command for conducting the alleged enterprise's affairs, whether he knowingly implemented the decisions of upper management, whether his position was vital to the mission's success and a "showing that the [he] conducted or participated in the conduct of the 'enterprise's

affairs,' not just [his] own affairs." *Reves*, 507 U.S. at 185; *see also Tijerina-Salazar v. Venegas*, No. P:19-cv-74, 2022 WL 17815729, *4 (W.D. Tex. Jan. 9, 2022) (discussing factors).  Under this test, the Supreme Court limited RICO liability: a defendant with mere "non-supervisory involvement" does not "direct" the enterprise's affairs.  *See Gutierrez v. Venegas*, No. 6:20-cv-129, 2021 WL 9314946, *5 (N.D. Tex. Sept. 8, 2021); *see also Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015) (plaintiff must show defendant had "supervisory involvement" to satisfy conduct requirement).

There are no allegations that Dr. Miller played a supervisory role in the alleged Enterprise.  The only allegations against her are that she prescribed medications to Plaintiffs with knowledge that the medications were being used by the alleged Enterprise for improper purposes.  These allegations do not come close to demonstrating management, command, carrying out of tasks by Dr. Miller, or that the so-called Enterprise would fall apart without her.  Alleging that Dr. Miller simply knew that potentially illegal activity was occurring does not give rise to RICO liability.  *See Walter v. Drayson*, 538 F.3d 1244, 1248 (9th Cir. 2008) (noting *Reves* requires "some degree of direction" and that "fail[ure] to stop illegal activity" is not enough").  Plaintiffs fail to sufficiently allege the "conduct" element.  *Reves*, 507 U.S. at 179 (requiring "some degree of direction").

#### (4) Plaintiffs' RICO Conspiracy Claims Also Fail.

To adequately plead a RICO conspiracy claim under section 1962(d), a plaintiff must first adequately plead a cognizable substantive RICO violation of sections 1962(a), (b) or (c).  *See Poe v. Bock*, No. EP-cv-17-232, 2018 WL 4677901, *5 (W.D. Tex. Jun. 11, 2018).  As shown above, Plaintiffs failed to adequately allege a substantive RICO claim under Section 1962(c) (the only substantive RICO claim they allege).

Even if they had alleged a cognizable section 1962(c) claim (they have not), Plaintiffs conspiracy claim fails because they have not plausibly alleged "that each defendant was "aware of the essential nature and scope of the enterprise and intended to participate in it." *Ducote Jax Holdings, LLC v. Bradley*, No. 04-1943, 2007 WL 2008505, *7 (E.D. La. Jul. 5, 2007). For instance, they have not plausibly alleged that Dr. Miller was aware that Rick was engaged in a sex trafficking enterprise to enrich himself and develop business connections. Nor do they allege that anyone other than Rick and Dr. Eller were aware of the nature of the alleged enterprise. The RICO conspiracy claim must also be dismissed.

## III.
## CONCLUSION

Plaintiffs' Complaint against Dr. Miller should be dismissed on the ground that all of these claims are in actuality health care liability claims that must be filed under Chapter 74 of the Texas Civil Practice and Liability Code. Plaintiffs' Complaint against Dr. Miller should be dismissed on the further ground that it fails to meet the minimum pleading standards set forth in Fed. R. Civ. P. 8(a) and fails to set forth allegations that sufficiently plead a cognizable claim for relief against Dr. Miller. For all the foregoing reasons, Dr. Miller respectfully requests that the Court dismiss the Complaint without leave to amend.

Respectfully submitted,

**GERMER BEAMAN & BROWN PLLC**
One Barton Skyway
1501 S Mopac Expy, Suite A400
Austin, Texas 78746
(512) 472-0288
(512) 472-0721 Fax

By:___*/s/ R. Chad Geisler*_____
          R. Chad Geisler
          State Bar No. 00793793
          cgeisler@germer-austin.com
          Steve Dillawn
          State Bar No. 05871300
          sdillawn@germer-austin.com

**ATTORNEYS FOR DEFENDANT**
**DR. MELISSA MILLER**

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the foregoing document was served on all attorneys of record on this 7th day of June, 2023.

          _____*/s/ R. Chad Geisler*_____
          R. Chad Geisler