**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JULIA HUBBARD, *ET AL.*, | § | |
| PLAINTIFFS, | § | |
| | § | |
| | § | CIVIL ACTION NO. 5:23-CV-00580-FB |
| v. | § | |
| | § | |
| TRAMMEL S. CROW, JR., *ET AL.*, | § | |
| DEFENDANTS. | § | |

## DEFENDANT CODY MITCHELL'S MOTION TO DISMISS

COMES NOW, Defendant Cody Mitchell, through the Office of the Attorney General for the State of Texas, who file this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure in response to Plaintiffs Julia Hubbard and Kayla Goedinghaus (collectively "Plaintiffs") Complaint.

## TABLE OF CONTENTS

I.  STATEMENT OF THE CASE ................................................................................. 1

    A.  Ms. Hubbard's Relationships ................................................................. 1

    B.  Ms. Goedinghaus's Relationship .......................................................... 2

    C.  The Alleged Trafficking and RICO Enterprise ..................................... 3

    D.  Allegations Against Mr. Mitchell .......................................................... 3

        1.  "Rick said" Allegations .................................................................. 3

        2.  Other Allegations ........................................................................... 4

II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ...................... 5

    A.  Standard of Review ................................................................................ 5

    B.  Plaintiffs Failed to State a Claim for 18 U.S.C. § 1591 ....................... 5

        1.  Mitchell Was Not a Perpetrator ..................................................... 7

        2.  No Beneficiary Liability ................................................................ 9

    C.  No Labor Trafficking Liability ........................................................... 11

    D.  Mr. Mitchell Joins Mr. Crow's RICO Arguments ............................. 13

III. PRAYER ........................................................................................................... 17

NOTICE OF ELECTRONIC FILING ...................................................................... 18

CERTIFICATE OF SERVICE .................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allstate Ins. Co. v. Benhamou*,
  190 F. Supp. 3d. 631 (S.D. Tex. 2016) ................................................................. 15
*Allstate Ins. Co. v. Plambeck*,
  802 F.3d 665 (5th Cir. 2015) ................................................................................ 15
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 5, 6, 10
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007) ........................................................................................ 5, 10
*Doe v. Red Roof Inns, Inc.*,
  Case No. 1:19-cv-3840, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020) .................... 8
*Doe v. Fitzgerald*,
  No. 20-cv-10713, 2022 WL 425016 ........................................................ 10, 13, 16
*Does v. Reddit, Inc.*,
  51 F.4th 1137 (9th Cir. 2022) ................................................................................. 9
*E.S. v. Best W. Int'l, Inc.*,
  510 F. Supp. 3d 420 (N.D. Tex. 2021) ................................................................... 9
*Garcia-Lopez v. Waste Mgmt. of Texas, Inc.*,
  No. 22-20112, 2022 WL 17547458 (5th Cir. Dec. 9, 2022) .......................... 12, 13
*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019) .................................................................... 9
*In re MasterCard Int'l Inc.*,
  313 F.3d 257 (5th Cir. 2002) ................................................................................ 17
*Ma v. Ashcroft*,
  361 F.3d 553 (9th Cir. 2004) ................................................................................ 10
*Noble v. Weinstein*,
  335 F. Supp. 3d 504 (S.D.N.Y. 2018) ................................................................ 7, 8
*Powers v. Northside Indep. Sch. Dist.*,
  951 F.3d 298 (5th Cir. 2020) .................................................................................. 5
*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) .............................................................................................. 14
*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) ................................................................................ 10

Statutes

18 U.S.C. 1589(c)(1) .................................................................................................. 12
18 U.S.C. §1961(1) .................................................................................................... 15
18 U.S.C. §1962(c) ........................................................................................ 14, 15, 17
18 U.S.C. § 1512 ......................................................................................................... 4
18 U.S.C. § 1589(a)(3), § 1589(c)(1) ........................................................................ 13

18 U.S.C. § 1591 ................................................................................................................... 5, 9

18 U.S.C. § 1591(a) .......................................................................................................... 6, 7, 11

18 U.S.C. § 1961(5) .................................................................................................................. 15

18 U.S.C. §§ 1589, 1595(a) ......................................................................................... 11, 12, 13

§ 1589(a) ................................................................................................................................... 11

§ 1589(a)(3) ........................................................................................................................ 12, 13

§ 1589(b) ............................................................................................................................. 11, 13

§ 1595(a) ................................................................................................................................... 12

Rules

Federal Rule of Civil Procedure 9(b) ......................................................................................... 5

Rule 9 .......................................................................................................................................... 5

Rule 12(b)(6) of the Federal Rule of Civil Procedure .......................................................... i, 5

# I.
## STATEMENT OF THE CASE

At the core of the Complaint, is an unfortunate story about two domestic situations involving a husband, Defendant Richard Hubbard ("Mr. Hubbard") forcing his then-wife, Plaintiff Julia Hubbard ("Ms. Hubbard") and later his fiancée, Plaintiff Kayla Goedinghaus ("Ms. Goedinghaus") to engage in sex acts with others by grim means. ECF No. 1 at ¶¶ 1-2, 4. Plaintiffs allege their forced arrangement with Defendant Hubbard took place over a decade. *Id*. at ¶ 1. Plaintiffs attempt to spin this sad domestic situation into an elaborate and sophisticated human trafficking and RICO enterprise. Plaintiffs drag whomever Mr. Hubbard happened to know over a ten-year period of the alleged enterprise into this suit by naming them as a defendant. One such defendant is Cody Mitchell ("Mr. Mitchell") whose sole bad act appears that he was a friend of Mr. Hubbard's at some point in time. *Id*. at ¶ 18.

### A.     **Ms. Hubbard's Relationships**

At or prior to 2009, Ms. Hubbard divorced Defendant Shawn Mayer ("Mr. Mayer"). *Id*. at ¶ 96. After the divorce, they had a custody battle for their children. *Id*. During this time, Ms. Hubbard met Mr. Hubbard, and "quickly entered a relationship" with Mr. Hubbard because he acted like a "hero" and helped with her custody battle against Mr. Mayer. *Id*. at ¶¶ 96–97, 100. Soon thereafter in February 2010, Ms. Hubbard married Mr. Hubbard and they had a daughter. *Id*. at ¶ 97. During 2010, Mr. and Ms. Hubbard attended "swinger parties" together, where they would each meet and engage in consensual sex with others. *Id*. at ¶¶ 108, 112–13.

Seven years later, in March 2017, Ms. Hubbard left Mr. Hubbard and began to work at gentlemen's club including in Dallas, Texas that Defendant Case Grover ("Mr. Grover") managed. *Id*. at ¶¶ 44, 247, 249. Ms. Hubbard found herself in a similar situation whereby Mr. Grover would physically abuse her and threaten her to get her to do extra work at the gentlemen's club which

1

included Mr. Grover's managerial duties and dancing, but Mr. Grover would withhold her wages. *Id*. at ¶¶ 45, 250–53.

In October 2017, Ms. Hubbard left Mr. Grover and quit her job at the gentlemen's club. *Id*. at ¶ 257. Two months later, in December 2017, Ms. Hubbard began to date an alleged meth-addict Defendant Michael Hynes, Jr. ("Mr. Hynes"). *Id* at ¶¶ 258, 267. Unfortunately, this relationship also took a turn for the worse when Mr. Hynes "used deceit to make Hubbard addicted to meth" by switching her prescription medications with meth. *Id*. at ¶ 264. Approximately three months later, in March or April of 2018, Ms. Hubbard's home was repossessed "due to her heavily trained financial situation," resulting in Mr. Hynes and her moving in with his parents. *Id*. at ¶ 265. The relationship further devolved when Mr. Hynes allegedly forced Ms. Hubbard, via physical violence and threats of violence, to become a drug dealer herself. *Id*. at ¶ 272. At some time after October or November 2018, Ms. Hubbard escaped her relationship with Mr. Hynes. *Id*. at ¶¶ 277–79.

**B.** **Ms. Goedinghaus's Relationship**

The Complaint does not mention, allege, or link Mr. Mitchell to the alleged trafficking of Ms. Goedinghaus. *See generally* ECF No. 1 at ¶¶ 286–302. However, Ms. Goedinghaus's relationship with Mr. Hubbard began in November 2018 where he gave her a job at his company so she could spend more time with her daughter as she underwent a difficult divorce. *Id*. at ¶¶ 280–81. In December 2019, Ms. Goedinghaus moved in with Mr. Hubbard and they became engaged shortly thereafter. *Id*. at ¶ 283. In February 2019, Mr. Hubbard convinced Ms. Goedinghaus to have sex with others through violence and threats of violence from Defendant Dr. Eller, Defendant Knewitz, and himself. *Id*. at ¶¶ 286–90, 293, 295, 297–99. In January 2020, Ms. Goedinghaus left Mr. Hubbard and filed a criminal domestic abuse complaint against him. *Id*. ¶ 302.

C.      **The Alleged Trafficking and RICO Enterprise**

Plaintiffs allege that Mr. Hubbard and Dr. Ben Eller ("Dr. Eller") decided to start a "sex and labor trafficking venture" (the so-called "Venture") in 2012 whereby Mr. Hubbard would solicit Ms. Hubbard at swinger parties, or "Forced Sex Parties." *Id*. at ¶¶ 119-21. The alleged purpose of the Venture was "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Hubbard, Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants." *Id*. at ¶ 341.

Plaintiffs affix RICO enterprise claims to the alleged Venture. *Id*. at ¶ 6. In essence, Mr. Hubbard would get Dr. Eller to recommend Medical Doctor Defendants (*Id*. at ¶¶ 7–16) to prescribe drugs to Plaintiffs to better control them along with the Labor Trafficking Defendants (*Id*. at ¶¶ 41–52) and the Fixer Defendants (*Id*. at ¶¶ 17–28) so that Mr. Hubbard could convince them to have sex with others for Mr. Hubbard's financial benefit.

D.      **Allegations Against Mr. Mitchell**

Plaintiffs allege Mr. Mitchell was one of the "Fixer Defendants" who were to "fix problems as they came up" with the Venture. *Id*. at ¶ 154. However, the specific allegations against Mr. Mitchell's involvement in the Venture are unclear because some generic allegations involve Mr. Mitchell, while others are imputed on Mr. Mitchell by what Mr. Hubbard told Ms. Hubbard. For clarity, Mr. Mitchell will separate them as such below.

1.   **"Rick said" Allegations**

Plaintiffs allege Mr. Hubbard was friends with Mr. Mitchell. *Id*. at ¶ 20. Through this friendship, Plaintiffs state Mr. Hubbard would "use beatings, choking, guns, and threats of legal process to cause [Plaintiffs] to do as he wished, often through the use of the Fixer Defendants: Texas Ranger Cody Mitchell and Kurt Knewitz." *Id*. at ¶ 18. These alleged threats of legal process

were done by Mr. Hubbard using Mr. Mitchell's occupation and an unflattering photo of Mr. Mitchell. Specifically, Plaintiffs allege Mr. Hubbard had a photo of Mr. Mitchell displaying him holding a bottle of alcohol and his penis while in his police cruiser, which Mr. Hubbard presented as a threat to Ms. Hubbard that Mr. Mitchell "considered himself above the law and would do what he needed to do to protect Rick and the Venture." *Id*. at ¶¶22–23.

Plaintiffs also allege "Rick […] would regularly threaten [Plaintiffs] with arrest under false charges, *telling* them that if they did go to law enforcement, no one would believe them." *Id*. at ¶ 20 (emphasis added). Additionally, "Rick *told* Hubbard that Mitchell had done research and that her former husband, Shawn Mayer, had been under 'investigation' by the Texas Rangers for child exploitation." *Id*. at ¶160 (emphasis added). Further, "Rick *sought*, with the help of Mitchell, to report abuse in order to take custody of Hubbard's children with Mayer away from [Mayer] in order to better control Hubbard." *Id*. at ¶ 162 (emphasis added). And "Rick *would tell* Hubbard that Mitchell could cause her to be arrested. Rick also repeatedly *told* Hubbard that if she did attempt to contact law enforcement, a call from Mitchell (as well as Eller) would quickly cause the police to be disregarded." *Id*. at ¶ 163 (emphasis added). Later in the Complaint, Plaintiffs convert these threats of deterring Ms. Hubbard from contacting law enforcement by Mr. Hubbard as Mr. Mitchell's predicate act of witness tampering under 18 U.S.C. § 1512. *Id*. at ¶ 310.

### 2.  Other Allegations

The other allegations specifically mentioning Mr. Mitchell are as follows: (1) "Rick informed Mitchell in detail of the operations of the Venture and provided him with naked photos of [Plaintiffs]," and (2) "While early on in the Venture, Rick and Mitchell made exaggerated allegations concerning Shawn Mayer," *Id*. at ¶¶ 21, 229.

4

## II.
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.    Standard of Review

A motion to dismiss under Rule 12(b)(6) is proper when the plaintiff's complaint fails to state a claim upon which relief can be granted.   A court reviewing a Rule 12(b)(6) motion must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020) (internal quotation marks and citation omitted).   "However, the plaintiff must plead specific facts, not mere conclusory allegations to state a claim for relief that is facially plausible." *Id.* (Internal quotation marks and citation omitted). To withstand a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).   Allegations that offer only the possibility that a defendant acted unlawfully, or facts merely consistent with liability do not demonstrate entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   If the complaint does not set forth, "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Twombly,* 550 U.S. at 570.

### B.    Plaintiffs Failed to State a Claim for 18 U.S.C. § 1591

Any complaint must contain sufficient facts to demonstrate a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. A claim lacks facial plausibility when the facts alleged do not allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Allegations that offer only the possibility that a defendant acted unlawfully, or facts merely consistent with liability, do not demonstrate entitlement to relief. *Id.*

Federal Rule of Civil Procedure 9(b) allows knowledge and intent to be alleged generally. But "Rule 9 merely excuses a party from pleading [conditions of the mind] under an elevated pleading standard." *Id.* at 686. The "strictures of Rule 8" still apply. *Id.* at 686–87. "And Rule 8

5

does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id*. at 687. Here, the Complaint does exactly this by applying a shotgun approach of a myriad of allegations, instances, and various actors, then attempts to place a general label on which laws are violated. *See* ECF No. 1 at ¶¶ 318–43. It is not the Court's role to guess whether and how Plaintiffs' generalized and conclusory allegations were intended against each Defendant. Nor is it the Court's role to select from among a myriad of unstated and unsubstantiated implications those most favorable to the Plaintiffs. When read liberally in favor of the non-moving party, the Complaint, at most, implies Mr. Mitchell's involvement was nothing more than Mr. Hubbard using the threat of his friendship with a Texas Ranger against Plaintiffs— not Mr. Mitchell making the threats himself or even knowing they were made. ECF No. 1 at ¶¶ 20, 22-23, 160, 163.

Plaintiffs allege that all Defendants violated the Victims of Trafficking and Violence Protection Act of 2000 ("TVPA") 18 U.S.C. § 1591(a). Under this section, the TVPA holds criminally liable "whoever knowingly in or affecting interstate or foreign commerce," (1) "recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person," (2) "knowing ... that means of force, threats of force, fraud, coercion ... or any combination of such means will be used," (3) "to cause the person to engage in a commercial sex act...." "[C]ommercial sex act" is defined under the statute as "any sex act, on account of which anything of value is given to or received by any person." *Id*. § 1591(e)(3). In 2003, Congress amended and expanded the TVPA to create a civil private right of action for victims of the same conduct. *Id.* § 1595.

The TVPA creates two types of liability: (1) perpetrator liability and (2) beneficiary liability. *See id.* § 1591(a)(1)–(a)(2). Instead of pleading with the requisite particularity of which theory of liability Plaintiffs bring against Mr. Mitchell, Plaintiffs generally allege all Defendants

are liable under both types of liability. ECF No. 1 at ¶¶ 319–20. However, Plaintiffs did not plead facts that state a TVPA cause of action against Mr. Mitchell under either theory of liability because he was not involved in the alleged venture and did not receive anything of value.

### 1.      Mitchell Was Not a Perpetrator

To allege that Defendant is a "perpetrator" of a TVPA violation, Plaintiffs must allege that Defendant (i) knowingly; (ii) in interstate or foreign commerce; (iii) recruit[ed], entic[ed], harbor[ed], transport[ed], provid[ed], obtain[ed], maintain[ed], patronize[d], or solicit[ed] by any means a person; (iv) knowing, or, in reckless disregard of the fact, that means of force, threats of force, fraud or any combination of such means will be used; (v) to cause the person to engage in a commercial sex act. *See* 18 U.S.C. § 1591(a); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018). The causal relationship between the alleged perpetrator's conduct and the occurrence of the allegedly trafficked sex act is a crucial inquiry, "In other words, Defendant must have intended, or been aware, that the fraud and force *would cause* a sex act to take place." *See id*. at 519 (finding, among other things, an aspiring actress did not state claim for civil damages against co-founder of movie production company for aiding and abetting film producer, who allegedly employed both fraud and physical force to cause actress to engage in sex act with him, under the TVPA because she did not allege substantial assistance by co-founder in commission of the primary violation).

Here, as discussed above, the Complaint is absent any alleged participation by Mr. Mitchell. Any specific allegation made with Mr. Mitchell's name is merely what Mr. Hubbard said his friend would do: (1) "Rick […] would regularly threaten [Plaintiffs] with arrest under false charges, telling them that if they did go to law enforcement, no one would believe them." (¶ 20); (2) Mr. Hubbard was in possession of a photo depicting Mr. Mitchell in his police cruiser depicting

a bottle of whiskey and his penis, and this photo was "presented as a threat to Hubbard" by Mr. Hubbard that Mr. Mitchell was above the law and "would do what he needed to do to protect Rick and the Venture." (¶¶ 22-23); (3) "Rick *told* Hubbard that Mitchell had had done research and that her former husband, Shawn Mayer, had been under 'investigation' by the Texas Rangers for child exploitation." (¶160, emphasis added); (4) "Rick also sought, with the help of Mitchell, to report abuse in order to take custody of Hubbard's children with Mayer away from him in order to better control Hubbard." (¶162); and (5) "Rick *would tell* Hubbard that Mitchell could cause her to be arrested.  Rick also repeatedly *told* Hubbard that if she did attempt to contact law enforcement, a call from Mitchell (as well as Eller) would quickly cause the police to be disregarded." (¶163, emphasis added).

There is not a single allegation that Mr. Mitchell himself participated in the Venture beyond Mr. Hubbard telling them that he was friends with a Texas Ranger and had a photo to prove it. But this is not sufficient to state a claim for TVPA perpetrator liability, or any other liability as alleged in this Complaint, because it does not allege Mr. Mitchell engaged in any fraud, force, or threat of force. Further, Plaintiffs don't allege that Mr. Mitchell's conduct caused them to engage in the sex acts as depicted in the Complaint—Mr. Mitchell's alleged friendship with Mr. Hubbard is not enough to state a claim for perpetrator liability against him. *See Doe 1 v. Red Roof Inns, Inc.*, Case No. 1:19-cv-3840, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) ("Association alone cannot establish liability; instead, knowledge and 'some participation in the sex trafficking act itself must be shown'") (internal citation omitted); *Noble* 335 F. Supp. 3d at 524 ("Plaintiff must allege specific conduct that furthered the sex trafficking venture. Such conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture. In other words, some participation in the sex trafficking act itself

must be shown"); *Does v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) ("Mere association with sex traffickers is insufficient absent some knowing participation").

Accordingly, the claim for perpetrator liability against Mr. Mitchell should be dismissed.

### 2.      No Beneficiary Liability

To state a financial beneficiary claim under the TVPA, a plaintiff must allege facts from which it can be reasonably inferred that they "(1) knowingly benefitted financially or by receiving anything of value, (2) from participation in a venture, they (3) knew or should have known has engaged in sex trafficking under § 1591." *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 426 (N.D. Tex. 2021) (cleaned up). A violation of § 1591 requires a defendant to knowingly benefit from and knowingly assist, support, or facilitate sex trafficking activities, and knowingly benefitting from participation in such a venture requires actual knowledge and "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019); *Reddit, Inc.*, 51 F.4th at 1145.

Here, again, there are no specific allegations that Mr. Mitchell participated in the alleged venture. It was Mr. Mitchell's occupation that Mr. Hubbard used—among other things devoid of Mr. Mitchell's knowledge or association—to coerce Plaintiffs to perform sexual acts. Plaintiffs don't allege Mr. Mitchell told Mr. Hubbard to use his status as a Ranger to influence them or that Mr. Mitchell was aware that Mr. Hubbard used his occupation as a means of coercion. Instead, Plaintiffs allege without any specific facts that "Rick informed Mitchell in detail of the operations of the Venture and provided him with naked photos of [Plaintiffs]." ECF No. 1 at ¶ 21. Where "the well-pleaded facts of a complaint do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'— 'that the pleader is entitled to

relief."' *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S at 678). At best, the Complaint pleads facts merely consistent with Mr. Mitchell's liability. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). This allows the Court to infer only the possibility of his misconduct, but post *Twombly* and *Iqbal*, this falls far short of the plausible claim needed to survive a Rule 12(b)(6) motion.

Plaintiffs expect the Court to infer that Mr. Mitchell committed violations of the law, risked throwing away his career and going to prison all for their nude photos. ECF No. 1 at ¶ 21. Plaintiffs' allegations do not even go that far. Plaintiffs do not allege Mr. Mitchell and Mr. Hubbard agreed to use his occupation to further the alleged venture for consideration of nude photographs, nor do they allege Mr. Mitchell received any financial benefit or anything of value. *See id.* at ¶¶ 18, 20–23, 160, 162–63, 229, 310.

Moreover, nude photos of Plaintiffs are not a thing of value under the TVPA. The Complaint does not allege Mr. Mitchell used those photos to make money. As such, it can only be liberally assumed that Plaintiffs contend these photos were used for Mr. Mitchell's sexual gratification. "But "sexual gratification" is not a "thing of value" under the TVPA, otherwise it would transform innumerable, consensual sexual activities into "sex trafficking." *Doe v. Fitzgerald*, No. 20-cv-10713, 2022 WL 425016 at *6-7 (finding that interpretation of "sexual gratification" as a "thing of value" under TVPA would "yield absurd results"); *see also Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) (interpretations "which could produce absurd results are to be avoided"). ECF No. 143-1 at pp. 13–14.

Thus, Plaintiffs failed to state a claim for beneficiary liability under the TVPA because they did not allege Mr. Mitchell participated in the venture, knowingly or otherwise, and Mr. Mitchell did not receive a thing of value.

Accordingly, the TVPA claims against Mr. Mitchell should be dismissed.

### C.        No Labor Trafficking Liability

Section 1589 of the TVPA provides criminal penalties for "forced labor," and Section 1595 authorizes victims of forced labor to assert private civil claims. 18 U.S.C. §§ 1589, 1595(a).  Under § 1589(a) whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or restraint. Under § 1589(b), whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

Plaintiffs' claims against Mr. Mitchell fail for the same reasons as do their § 1591(a) claims—there are no allegations specifically Mr. Mitchell participated or benefitted from the alleged venture. Although the Complaint generically states Mr. Mitchell "assisted" with Mr. Hubbard's threats of legal process (ECF No. 1 at ¶ 19), nowhere in the Complaint does it state what Mr. Mitchell actually did to assist Mr. Hubbard or even if he did.  Instead, the Complaint merely states what Mr. Hubbard told Plaintiffs what Mr. Mitchell could or would do. *See* ECF No. 1 at ¶¶ 20, 160, 162–63. Notably absent from the allegations is any indication Mr. Mitchell made

threats himself, directed Mr. Hubbard to make threats against Plaintiffs, or that he even knew these threats were made on his behalf.  Accordingly, Plaintiffs failed to allege any force, threats of force, restraint, serious harm, pattern, or scheme used by Mr. Mitchell to force Plaintiffs' labor.

Further, Plaintiffs' claim that Mr. Hubbard sought "to report abuse *to report abuse* to take custody of Hubbard's children with Mayer away from him in order to better control Hubbard," is not properly plead under §1589.  The plain language of the statute makes clear that to plead a civil claim under § 1595(a) premised on violations of § 1589(a)(3), a plaintiff must plead allegations sufficient to satisfy that an abuse of law was: (1) undertaken "to exert pressure" on the plaintiff; (2) done "knowingly" by the defendant; and (3) that caused the plaintiff to provide labor or services he would otherwise not have willingly provided. 18 U.S.C. §§ 1589(a)(3), 1595(a).  *Garcia-Lopez v. Waste Mgmt. of Texas, Inc.*, No. 22-20112, 2022 WL 17547458, at *2 (5th Cir. Dec. 9, 2022). "Abuse or threatened abuse of law or legal process" means, "[T]he use or threatened use of a law or legal process ... in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." 18 U.S.C. 1589(c)(1).

As a practical matter, the allegation in Paragraph 162 of the Complaint is non-sensical. On one hand, the alleged venture "enticed Hubbard's ex-husband, Shawn Mayer, and his new wife, Jade Mayer, to assist the venture by exercising control over Hubbard's children—at Rick's direction and the venture's benefit—in exchange for cash payments and other benefits." ECF No. 1 at ¶ 28. Yet, Plaintiffs allege that Mr. Hubbard threatened to report abuse, with the help of Mr. Mitchell, to take away these children from Mr. Mayer, and thereby negate the ability for Mr. Mayer to exercise control over Ms. Hubbard's children.

Another issue with the allegation is that Plaintiffs failed to identify a law or legal process that Mr. Mitchell knowingly used or threatened to use in a manner for which it was not designed to pressure or coerce labor from them. *Garcia-Lopez,* 2022 WL 17547458 at *2 (finding plaintiff-employee failed to state a claim under 18 U.S.C. § 1589(a)(3) because he did not allege defendant-employer abused any law or legal process to force the plaintiff's labor or services from him even though plaintiff-employee alleged the defendant-employer was involved with and had knowledge of the use plaintiff-employee's fake identities). Again, Plaintiffs suggest that Mr. Mitchell helped to report abuse by Mr. Mayer, but this is not sufficient because Plaintiffs *must identify a law or legal process that Mr. Mitchell knowingly used or threatened to use* in a manner for which it was not designed to pressure or coerce labor from Ms. Hubbard. *See* 18 U.S.C. § 1589(a)(3), § 1589(c)(1).  Because Plaintiffs fail to state what Mr. Mitchell did to "help" (i.e., lie, scheme, or threaten) Mr. Hubbard report abuse, this claim against him fails.

This claim also fails because Mr. Mitchell did not receive anything of value for the alleged forced labor under § 1589(b). As discussed earlier, nude photographs are not a thing of value. *Cf. Fitzgerald*, 2022 WL 425016 at *6–7 ("sexual gratification" is not a thing of under TVPA). As such, Plaintiffs' § 1589 claim fails against Mr. Mitchell because: (1) they do not sufficiently allege he forced, threatened, restrained, or coerced Plaintiffs; (2) they have not alleged a law or legal process Mr. Mitchell knowingly used or threatened to use; and (3) Mr. Mitchell did not receive a thing of value for the alleged forced labor.

**D.**       **Mr. Mitchell Joins Mr. Crow's RICO Arguments**

In order to save the time and resources of the Parties and the Court from reading and responding to nearly identical arguments, Mr. Mitchell joins, refers to, and incorporates Mr. Crow's Motion to Dismiss Section D found on pages 15–25 as its applicability to Mr. Mitchell:

(1) Plaintiffs Lack RICO Standing (ECF No. 151 at pp.21–17); (2) Plaintiffs Failure to Allege a

Section 1962(c) Claim (*id*. at p. 17); (2)(a) Plaintiffs Fail to Allege an Enterprise (*id*. at pp. 18–

21); (2)(b) Plaintiffs Do Not Allege a Pattern of Racketeering (id. at pp. 21–22): (3) The Statute

of Limitations Bars Ms. Hubbard's Claims (*id*. at pp. 24–25); and (4) Plaintiffs' RICO Conspiracy

Claims Also Fail (*id*. at pp. 25).

Mr. Mitchell will specifically address how the Complaint does not contain sufficient factual

allegations to plausibly allege he "conduct[ed] or participate[d], directly or indirectly, in the

conduct of [the] enterprise's affairs." *See* 18 U.S.C. §1962(c). Under Supreme Court precedent,

alleging conduct or participation requires more than mere association. *See Reves v. Ernst & Young*,

507 U.S. 170, 177–79 (1993).

The plain meaning of "conduct" supports Mr. Mitchell's dismissal from suit. In *Reves v.

Ernst & Young*, the Supreme Court held "that 'to conduct or participate, directly or indirectly, in

the conduct of such enterprise's affairs,' §1962(c), one must participate in the operation or

management of the enterprise itself." *Reves*, 507 U.S. at 185. There, the Supreme Court affirmed

the lower court's finding that an accountant who prepared audit reports and financial statements

for a farmer's cooperative was not liable under Section 1962(c). *Id*. at 186. *Reves* explains that "as

both a noun and a verb in this subsection 'conduct' requires an element of direction." *Id*. at 177–

78. Rejecting the argument that "any involvement in the affairs of an enterprise would satisfy the

'conduct or participate' requirement," the Supreme Court also clarified that—while "the word

'participate' makes clear that RICO liability is not limited to those with primary responsibility"—

at least "some part in directing the enterprise's affairs is required." *Id*. at 178–79.

Furthermore, lower court decisions affirmed *Reves's* interpretation of §1962(c) in finding

that something more than non-supervisory involvement is required to sufficiently allege this

element. *See Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d. 631, 655 (S.D. Tex. 2016) (citing *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015)) ("Although one need not be a ringleader, the Fifth Circuit has made clear that a defendant must have some supervisory involvement in an enterprise in order to satisfy §1962(c)'s conduct or participate requirement."). In *Benhamou*, the court dismissed RICO claims against a nurse anesthetist pursuant to Rule 12(b)(6). *Id*. at 655–56. The court explained that "simply providing goods and services that ultimately benefit the enterprise will not subject one to liability." *Id*. at 655. Thus, the court found the plaintiffs' allegations that the nurse anesthetist "was employed by [the enterprise], worked at the direction of [other defendants], and administered unnecessary general anesthesia [were] insufficient to show that [the nurse anesthetist] had any supervisory role in the scheme." *Id*. at 656.

Here, Plaintiffs' Complaint does not contain sufficient factual matter to plausibly allege Mr. Mitchell's participation in the conduct of the alleged enterprise. Count Three broadly allege that "Defendants came together to form an association in fact Enterprise [,]" and "Defendants engaged in activities which constitute 'racketeering activity,' including violation of the [TVPA], violation of the Controlled Substances Act [], wire fraud [], and witness tampering [], within the meaning of 18 U.S.C. §1961(1). ECF No. 1 at ¶¶ 329, 333. It further states that "all Defendants have acted in violation of the [RICO] Act, 18 U.S.C. §1962(c)." *Id*. ¶ 327. Plaintiffs support these conclusory statements with threadbare recitals of the elements. For example, Plaintiffs generally allege, "Defendants engaged in multiple predicate acts amounting to a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5)." *Id*. at ¶ 334. Under *Twombly and Iqbal*, the Court cannot extend the presumption of truth to these legal conclusions, and such conclusory allegations are insufficient to state a plausible claim for relief.

Plaintiffs' remaining non-conclusory allegations against Mr. Mitchell are too innocuous in character to infer anything more than the mere possibility of his misconduct. At most, Mr. Mitchell somehow helped Mr. Hubbard "report abuse" with the alleged goal to take away Mr. Mayer's custody of his children with Ms. Hubbard. *Id*. at ¶ 162. This exemplifies the complaint's overall lack of specificity of Mr. Mitchell's conduct regarding his participation in the alleged enterprise.

Moreover, the Complaint lacks allegations of Mr. Mitchell's role as an employee—or more importantly as a supervisor—within the alleged RICO enterprise. Although Plaintiffs labeled him as a "Fixer Defendant," there is nothing that he apparently fixed, and he did not receive any compensation for his alleged assistance with the alleged child custody dispute. Plaintiffs' exclusion of Mr. Mitchell from the vast majority of its contentions demonstrates Plaintiffs' failure to plead facts regarding Mr. Mitchell's operational or managerial function and allege his participation in the conduct of the alleged enterprise's affairs. Plaintiffs do not allege that Mr. Mitchell was aware Mr. Hubbard used his occupation as a Texas Ranger to threaten arrest or the futility of going to law enforcement officials.

Relatedly, Plaintiffs' fail to allege any compensation received by Mr. Mitchell for his alleged participation in the enterprise. Rather, the Complaint states, "The object of the conspiracy was to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Defendant Rick Hubbard, Defendant Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants." *Id*. at ¶ 341. Because sexual gratification is not a "thing of value" (*Fitzgerald*, 2022 WL 425016 at *6-7) and "other benefits" is far too general, it is more reasonable to interpret that Mr. Mitchell did not receive any compensation for his alleged service to the Enterprise.

In sum, Plaintiffs have not pled facts to sufficiently allege any single element of § 1962(c), the inquiry is over, the Court "need not consider whether the Plaintiffs sufficiently alleged the other elements," and "dismissal is proper under Rule 12(b)(6)." *In re MasterCard Int'l Inc.*, 313 F.3d 257, 261, 264 (5th Cir. 2002). The Complaint fails to provide factual—or even conclusory—allegations that Mr. Mitchell had any level of supervisory, directorial, or managerial role in the alleged enterprise. Accordingly, Mr. Mitchell respectfully requests the Court to find that Plaintiffs failed to plausibly allege Mr. Mitchell's participation in the conduct of the alleged enterprise.

### III
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Mr. Mitchell respectfully requests that all causes of action brought against him by Plaintiffs be dismissed with prejudice.

Respectfully submitted,

**JOHN SCOTT**
Provisional Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Alec Simpson*
**ALEC SIMPSON**
Attorney-In-Charge
Assistant Attorney General
Texas State Bar No. 24118534

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814
Alec.Simpson@oag.texas.gov

**ATTORNEYS FOR DEFENDANT MITCHELL**


## NOTICE OF ELECTRONIC FILING

I, **ALEC SIMPSON**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing a true copy of the above **Defendant Cody Mitchell's Motion to Dismiss** in accordance with the Electronic Case Files System of the Western District of Texas on June 7, 2023.

/s/ Alec Simpson
**ALEC SIMPSON**
Assistant Attorney General


## CERTIFICATE OF SERVICE

I, **ALEC SIMPSON**, certify that a true and correct copy of the foregoing, **Defendant Cody Mitchell's Motion to Dismiss**, has been served on all counsel of record who have appeared and consented to electronic notification via the Electronic Case Files System of the Western District of Texas on or about June 7, 2023:

/s/ Alec Simpson
**ALEC SIMPSON**
Assistant Attorney General

18