**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JULIA HUBBARD et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| vs. | § | Civil Case No. SA-23-CV-00580-FB |
| | § | |
| TRAMMELL S. CROW. JR. et al., | § | |
| | § | |
| *Defendants* | § | |

---

## DEFENDANT RCI HOSPITALITY HOLDINGS, INC.'S
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

---

Defendant RCI Hospitality Holdings, Inc. ("RCIHH") files this <u>Motion to Dismiss for Failure to State a Claim</u>, and in support, respectfully show the Court as follows:

## I.
## <u>Summary of Arguments</u>

This case concerns an alleged sex- and labor-trafficking venture purportedly operated by Richard Hubbard ("Richard") and which allegedly victimized Plaintiffs Julia Hubbard ("Julia") and Kayla Goedinghaus.  Plaintiffs allege that they were forced into the venture where they were verbally, sexually, and physically abused, and compelled to perform sex acts for payment and to secure business relationships for Richard.  Plaintiffs identify a large cast of characters as venture members, ranging from various doctors who allegedly drugged Plaintiffs into submission to assorted investors who allegedly financed the venture to a Texas Ranger who allegedly threatened Plaintiffs with arrest on false charges.  Plaintiffs' account has RCIHH playing a fairly minor role in the venture and only as to Julia as Plaintiffs do not allege any facts suggesting it had involvement with Goedinghaus.  According to Plaintiffs' Complaint, RCIHH owns the

---

Silver City Cabaret in Dallas where managers there abused Julia through various methods. Setting aside Plaintiffs' failure to connect these alleged bad acts by managers to RCIHH, the only supposed connection from RCIHH to the venture is Plaintiffs' allegation that Silver City manager Casey Grover was in regular contact with Richard.  That is insufficient to support the serious claims of sex- and labor-trafficking and RICO violations against RCIHH.

RCIHH now moves to dismiss Plaintiffs' claims against it under Federal Rule of Civil Procedure 12(b)(6) for the following reasons:

First, Plaintiffs' improper shotgun Complaint with its "everyone-did-everything" approach fails to comply with Rule 8 notice requirements.  Second, Goedinghaus does not allege any facts suggesting RCIHH had any connection to her (Plaintiffs allege Goedinghaus was first victimized by the alleged sex-trafficking venture over a year after the last alleged act of misconduct by a person connected to RCI), and therefore her claims against it should be dismissed.  Third, the sex-trafficking claims fail as no facts suggest RCIHH was part of the venture Plaintiffs allege. At best Plaintiffs allege isolated misconduct by RCIHH's alleged agents. Fourth, the labor-trafficking claims fail for lack of any facts plausibly showing RCIHH's participation in the previously-mentioned venture.  Fifth, Julia's RICO claims are time-barred, having been filed around a year after the four-year deadline.  Finally, the RICO claims fail because no pled facts plausibly show RCIHH's participation in an enterprise, namely, the aforementioned venture, or even the existence of such an enterprise.

## II.
## Procedural History

On November 1, 2022, Plaintiffs filed this lawsuit against RCIHH and others in the United States District Court for the Central District of California, based on the facts alleged above, and asserting claims for (1) sex-trafficking; (2) labor-trafficking; and (3) violations of the

Racketeer Influenced and Corrupt Organizations Act.  (Doc. 1, <u>Compl</u>. ¶¶ 319-321, 323-325, 327-343.)

On February 23, 2023, RCIHH filed a Motion to Dismiss under (among other things), Federal Rule of Civil Procedure 12(b)(6) ("MTD").  (Doc. 83, <u>RCIHH's MTD</u>.)

On May 3, 2023, the California federal court transferred the case to this Court under 28 U.S.C. § 1404(a) and denied RCIHH's MTD without prejudice on the basis of mootness due to the transfer, stating, "Defendants may file renewed Motions to Dismiss within thirty (30) days of the acknowledgement of receipt of this action by the Western District of Texas, unless that court orders otherwise."  (Doc. 132, <u>Transfer Ord</u>. at 9.)

**III.**
**<u>Allegations Relevant to this Motion</u>[1]**

In the summer of 2017, several years after the venture's beginning in 2012 (<u>Compl</u>. ¶¶ 232, 238, 314, 316, 340), Julia allegedly left Richard and took a job at Silver City Cabaret in Dallas which Plaintiffs claim is owned by RCIHH. (<u>Id</u>. ¶¶ 247, 249.)  There, Julia met Casey Grover, who was employed as a manager. (<u>Id</u>.)  After meeting Julia, Grover supposedly used abusive tactics to "force [Julia] to do as he wished for his financial benefit." (<u>Id</u>. ¶ 250.)  These tactics allegedly included Grover refusing to disburse her wages, threatening to cut her hours or fire her, depriving her of her vehicle and tracking her using her phone.  (<u>Id</u>. ¶¶ 250, 252-253.)

Julia alleges she learned that Grover was part of the venture and had been in regular contact with Richard since Julia began working at Silver City, with Richard even contacting Grover's wife. (<u>Id</u>. ¶ 255.)  Julia recounts one supposed incident in the fall of 2017 in which Richard came to visit Julia and offered to allow her to see her daughter, but only if she gave him

---

[1] RCIHH generally denies all allegations and insinuations of wrongdoing in the Complaint but treats them as "true" here pursuant to the Rule 12(b)(6) standard for determining this Motion.  Their inclusion herein does not in any way indicate RCIHH accepts them.

her earnings from the club that day and had sex with him.  (Id., ¶ 256)  She says "[t]his request showed that [Richard] knew that Grover was himself confiscating Hubbard's wages, and [Richard] knew that such a demand was impossible."  (Id.)

Julia supposedly reported Grover's conduct to other managers at the club, including Mark Molina, the waitress manager, and Richard Butler, the club's owner, but neither of them did anything. (Id., ¶ 254)  However, according to Julia, Butler did repeatedly ask her for sexual favors and threatened to fire her if she did not comply. (Id.)

Julia's relationship with Grover apparently ended when he allegedly broke her ribs in October 2017, prompting her to leave him and quit her job at Silver City.  (Id. ¶¶ 257-258.)  She then became involved with a man named Michael Hynes (Id. ¶ 258), who, among other things, forced Julia, through physical violence, to "'work' by selling cocaine and other drugs at various clubs owned by Defendant RCIHH, called XTC and Temptations, and Hynes would collect the money."  (Id., ¶ 272)  RCIHH's role in the story appears to end here, with Julia allegedly escaping Hynes in November 2018.  (Id., ¶¶ 277, 279)

Plaintiffs do not allege any facts suggesting that RCIHH or any of the RCIHH-related individual Defendants had any involvement with Goedinghaus.  Accordingly, the only claims with an alleged factual basis are Julia's.

## IV.
## Governing Standards

Motions under Federal Rule of Civil Procedure 12(b)(6) are governed as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Although

> a complaint does not need detailed factual allegations, the allegations must be enough to raise a right to relief above the speculative level.... [C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.

*Firefighters Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) (cleaned up).[2]

To survive a Rule 12(b)(6) motion a plaintiff must "state her case with enough clarity to enable a court or opposing party to determine whether or not a claim is alleged." *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989). A complaint must include sufficient "factual enhancement" to cross "the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). This standard prevents "a plaintiff with a largely groundless claim" from "tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of settlement value." *Id.* at 557-58.

Judging plausibility requires a "context specific" two-step process in which the court "draws on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Second, the court "assume[s] the … veracity [of] well pleaded factual allegations [and] determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* at 678. When considering plausibility, courts must also consider an "obvious alternative explanation" for

---

[2] Fifth Circuit law governs this transferred federal-question case. *See Tel-Phonic Serv., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992) ("When a case is transferred from a district in another circuit, the precedent of the circuit court encompassing the transferee district court applies to the case on matters of federal law."); *Xiamen Baby Pretty Prods. Co., Ltd. v. Talbot's Pharm. Family Prods., LLC*, No. 3:21-CV-00409, 2021 WL 5831346, at *2 (W.D. La. Nov. 23, 2021) ("Questions of general federal law are decided using 'the precedent of the circuit encompassing the transferee district court[.]'").

the defendant's alleged behavior. *Malibu Media LLC v. Duncan*, No. 4:19-cv-2314, 2020 WL 567105, at *6 (S.D. Tex. Feb. 4, 2020).

## V.
## Arguments and Authorities

A.    Plaintiffs did not satisfy Rule 8's notice pleading requirements.

While the allegations in the Complaint are dense, the claims themselves are sparse. The first sentence of each count adopts and realleges all prior paragraphs. (Compl. ¶¶ 318, 322, 326, 336.)   And each count is merely a recitation of the elements without specific facts. The Complaint also heavily relies on "everyone did everything" allegations. (See, e.g., id. ¶ 309 (stating all defendants participated in alleged predicate acts).)  The Complaint is not clear on which allegations relate to which defendant for each claim, and even less clear on how Plaintiffs' claims are connected to any alleged injuries.

Because of these failings, the Complaint should be dismissed for noncompliance with Rule 8(a). *See Griffin v. HSBC Mortgage Serv., Inc.*, No. 4:14–CV–00132–DMB–JMV, 2015 WL 4041657, at *5 (N.D. Miss. July 1, 2015) ('[Q]uintessential" shotgun pleadings also fail to distinguish between the actions of named defendants.' . . . Because Griffin's complaint is a quintessential shotgun pleading, which frustrates the very purpose of Rule 8, it is subject to dismissal pursuant to Rule 12(b)(6).") (citations omitted); *United States v. Lakeway Reg'l Med. Ctr., LLC*, No. A-19-CV-00945-JRN, 2020 WL 6146571, at *4 (W.D. Tex. Feb. 13, 2020) ("[T]he Court finds that the 'shotgun' pleading style employed by the Government is impermissible under Rule 12(b) . . . If the Government chooses to replead these claims, it 'should avoid lumping the defendants together and should instead separately allege the scope of any duties owed and conduct alleged to have breached those duties as to each defendant.'") (citations omitted); *Noble Capital Tex. Real Estate Income Fund LP v. Newman*, No. 1:22-cv-652, 2023

WL 3035411, at *3 (W.D. Tex. Jan. 13, 2023) ("The Federal Rules of Civil Procedure, the clear precedent in the Fifth Circuit, and basic notions of fairness and justice require the undersigned to recommend dismissal of the Fund's claims due to illicit group pleading.").

B.      Goedinghaus does not allege any facts relevant to RCIHH.

Because Goedinghaus does not allege that RCIHH had any interactions or connections with her of any kind, and she does not plausibly allege any RCIHH was part of any larger criminal venture, her claims against it should be dismissed.

Plaintiffs' shotgun-pleading Complaint alleges that all Defendants are liable on all claims. (Compl. ¶¶ 319-321, 324-325, 327, 337.)  However, Plaintiffs do not allege any facts suggesting that RCIHH ever interacted with, had contact or other involvement with, or even knew of Goedinghaus, let alone acted tortiously toward her.  Further, Plaintiffs do not plead any facts plausibly showing membership or participation by RCIHH in the sex-trafficking, labor-trafficking venture posited across the 64-page Complaint, precluding RCIHH's liability on an agency, coconspirator, or similar theory.  Additionally, the last act of participation by any RCI-related person in the supposed venture that Plaintiffs allege occurred in October 2017 (by Casey Grover), over a year before February 2019, when Plaintiffs allege that Goedinghaus was first abused by the venture.  (Id. ¶¶ 257, 286.)

The Complaint states that Casey Grover, who was allegedly an RCIHH club manager, supposedly abused Julia, forced her to work at Silver City, and was in regular contact with purported venture participant Richard. (Id. ¶¶ 249-256.) However, these allegation do not plausibly demonstrate participation by RCIHH in the venture – mere consistency with Plaintiffs' proffered explanation is not enough.  See Bell, 550 U.S. at 557 ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold

requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to relief.'"); *BRFFH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 525 (5th Cir. 2022) ("A complaint cannot survive a motion to dismiss by stating facts 'merely consistent with' liability.").  Because Plaintiffs do not plead facts supporting any claim by Goedinghaus against RCIHH, all of Goedinghaus' claims against RCIHH should be dismissed.  *See Harris on Behalf of DCJH v. Travis*, No. 20-680-JWD-RLB, 2021 WL 4025803, at *18 (M.D. La. July 12, 2021) (dismissing, on Rule 12(b)(6) motion, individual-capacity claims against sheriff for alleged unconstitutional fatal shooting where sheriff "is not even alleged to have been at the scene of Mr. Whitfield's shooting").

C.     Julia does not plausibly allege her sex-trafficking claim against RCIHH.

Julia's factual allegations do not plausibly state a sex-trafficking claim against RCIHH, so that claim should be dismissed.

"An individual who is a victim of a violation of this [sex-trafficking] chapter  may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)[.]"  18 U.S.C. § 1595(a).  There are two types of liability under § 1595(a), perpetrator and beneficiary.  *Ratha v. Phatthana* Seafood Co., 35 F.4th 1159, 1175 (9th Cir. 2022).  Julia pleads both. (Compl. ¶¶ 319-320.)

To prove perpetrator liability, Julia must establish that RCIHH "(i) knowingly; (ii) in interstate or foreign commerce; (iii) recruit[ed], entic[ed], harbor[ed], transport[ed], provid[ed], obtain[ed], maintain[ed], patroniz[ed], or solicit[ed] by any means a person; (iv) knowing, or, in reckless disregard of the fact, that means of force, threats of force, fraud or any combination of such means will be used; (v) to cause the person to engage in a commercial sex act."  *Doe v.*

*Fitzgerald*, No. CV 20-10713-MWF (RAOx), 2022 WL 2784805, at *3 (C.D. Cal. May 13, 2022).   To show beneficiary liability, Julia must prove that RCIHH "(1) knowingly benefitted financially or by receiving anything of value, (2) from participation in a venture, and (3) knew or should have known has engaged in sex trafficking under § 1591."   *Harris v. Henry*, No. 1:22-cv-00366-LY, 2022 WL 16825200, at *6 (W.D. Tex. Nov. 7, 2022), *adopted*, 2023 WL 3035423 (Jan. 11, 2023).

Both of Julia's sex-trafficking theories rest on her allegation that RCIHH was aware of, recklessly disregarded, and/or participated in the larger criminal venture that is the central focus of the Complaint, a supposed sex-trafficking, labor-trafficking enterprise masterminded by Richard. (Compl. ¶¶ 319-320.)  However, there are no allegations to plausibly support any such knowledge, disregard, or concerted action by RCIHH, causing her claim to fail.

The factual allegations against RCIHH in the Complaint are meager. The Complaint alleges Silver City manager Grover was abusive to Julia, forcing her to work there, terrorizing her, and refusing to pay her for her work.  (Compl. ¶¶ 249-53.) Julia purportedly complained about Grover's conduct to Molina, another manager there, and to Butler, the alleged owner, but neither did anything. (Id. ¶ 254.)  Instead, Julia alleges Butler repeatedly asked her for sexual favors and threatened to fire her if she declined. (Id.) Additionally, after Julia quit her job at Silver City in October 2017, she met Hynes who supposedly forced her to sell drugs at other clubs allegedly owned by RCIHH. (Id. ¶ 272.) Nothing in these allegations supports that RCIHH had awareness of any larger criminal venture.

"In the absence of direct association with traffickers, Plaintiff must 'allege at least a showing of a continuous business relationship between the trafficker and [Defendants] such that it would appear that the trafficker and [Defendants] have established a pattern of conduct or

could be said to have a tacit agreement.'"). *Doe v. Mindgeek USA Inc*., 558 F.Supp.3d 828, 837 (C.D. Cal. 2021).  The only alleged direct association between RCIHH and any non-RCIHH venture is Grover's supposedly regular contact with Richard.  But this shows mere consistency with Julia's reading of the (alleged) facts; it is not a <u>plausible</u> reading.  *See BRFFH Shreveport*, 49 F.4th at 525 (mere consistency insufficient to survive dismissal motion).

Julia also pleads no facts explaining what Grover and Richard discussed, and she never explains why her reading (that Grover was a venture participant) is a plausible one.  *See JSW Steel (USA) Inc. v. Nucor Corp.*, 586 F.Supp.3d 585, 595 (S.D. Tex. 2022) ("When faced with two possible explanations for a defendant's conduct, only one of which results in liability, a plaintiff cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation. '[S]omething more' is needed. The plaintiff must plead facts excluding the possibility that the 'obvious alternative explanation' is true, which requires 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (citations omitted).  Her threadbare allegation does not offer a plausible basis to choose her preferred theory from among many other explanations.

With no other direct association allegations, Julia must allege a continuous business relationship between RCIHH and some other member of the purported venture.  *Mindgeek*, 558 F.Supp.3d at 837.  On this score she fails.  She only alleges that Grover abused her, that Butler demanded sex from her and threatened her job, and that Molina ignored her complaint about Grover's misconduct. None of this plausibly suggests that Grover, Butler, Molina, or RCIHH by extension, knew of, ignored, or participated in a multi-person criminal venture, let alone the sex-trafficking, labor-trafficking enterprise Julia posits. Rather, the alleged facts at best show isolated misconduct.  *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D. N.Y. 2018) (dismissing

sex-trafficking claim where complaint was missing "factual allegations that link [defendant's] actions to" conduct of the alleged venture).

Finally, there is no basis to impute alleged misconduct by RCIHH's alleged agents, Grover, Butler, and Molina, to RCIHH.  Ordinary federal-law agency principles apply to federal claims where the governing statute is silent on the matter.  *See U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 349 (5th Cir. 2013) ("When grappling with the standard for imposing vicarious liability in civil liability provisions, we look to the common law principles distilled in the Restatement (Second) of Agency for guidance.").  "A master is subject to liability for the torts of his servants committed while acting in the scope of their employment." Restatement (Second) Of Agency § 2019 (1958).  The Restatement explains that serious criminal conduct by an employee usually falls outside the scope of employment:

> The fact that the servant intends a crime, especially if the crime is of some magnitude, is considered in determining whether or not the act is within the employment, since the master is not responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of the authorized result. The master can reasonably anticipate that servants may commit minor crimes in the prosecution of the business, but <u>serious crimes are not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do</u>.

§ 231 cmt. a (emphasis added).  Julia alleges that Grover used force and threats to cause her to work, including working as an exotic dancer, for "his financial benefit."  (<u>Compl</u>., ¶ 250)  If true, this would constitute serious criminal conduct falling outside the scope of employment – Julia nowhere alleges that forcing people to work against their will was part of Grover's job as a Silver City Cabaret manager, nor is it plausible to infer that it was.  Julia's allegation that Grover's conduct was committed for his benefit and not RCIHH's furthers the case against imputing, since a principal is generally not vicariously liable where the agent acts for his own

purposes, not the principal's. *See* § 229 cmt. c ("Although the servant is authorized to act, the master is not liable for his conduct unless the servant is in fact acting in the employment and for his master's purposes."). Nor is Grover's other alleged misconduct, such as stalking and terrorizing Julia, plausibly readable as providing any benefit to RCIHH. As such, his alleged torts, including any violation of the sex-trafficking statute, is not attributable to RCIHH. The same holds true for Butler, whom Julia says pressured her for sex by threatening her job. This alleged conduct served only Butler's personal interests and not RCIHH's, so it is not imputable.

Finally, Julia does not plausibly allege a sex-trafficking violation by Molina, as her only allegation against him is that he ignored her report of Grover's alleged misconduct, and as explained above, Julia does not plead facts plausibly supporting the criminal venture her Complaint alleges. Accordingly, there is no sex-trafficking misconduct by Molina to impute to RCIHH, and RCIHH cannot be liable for sex-trafficking based on any conduct of Molina.

D.    Julia does not plausibly allege a labor-trafficking claim against RCIHH.

The live Complaint does not plausibly state a labor-trafficking claim against RCIHH, so that claim should be dismissed.

The same statutory provision granting a civil sex-trafficking claim also grants a civil labor-trafficking claim. 18 U.S.C. § 1595(a). As with sex-trafficking, civil liability for labor-trafficking comes in two forms, perpetrator and civil. Perpetrator liability requires a violation of the criminal labor-trafficking statute, while § 1595 governs beneficiary liability. Julia pleads both liability types. (Compl. ¶¶ 323-324.) Her beneficiary theory, which presupposes the existence of a large criminal venture between RCIHH and others not under its control (Id. ¶ 324), is dismissible for the reason discussed above, namely, that Julia has not pled facts plausibly

showing that RCIHH or any of its agents was part of the criminal enterprise or venture she alleges.  This leaves her perpetrator theory.

Julia's perpetrator labor-trafficking claim alleges violations of § 1589(a)(1)-(4). (<u>Id.</u> ¶ 323.)  The relevant statutory text reads as follows:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--
>
> > (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> >
> > (2) by means of serious harm or threats of serious harm to that person or another person;
> >
> > (3) by means of the abuse or threatened abuse of law or legal process; or
> >
> > (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
>
> shall be punished as provided under subsection (d).

§ 1589(a). Julia's Subsection (3) theory is dismissible because Julia does not allege any facts, let alone plausible facts, suggesting or stating that anyone connected with RCIHH threatened to use the law or the legal process to force her to work.

Next, the only potential labor-trafficking-related conduct Julia alleges with respect to RCIHH is Grover supposedly forcing Julia to work through "forcing dependency and physical violence." (<u>Compl</u>. ¶ 250.) However, as explained above, this would be serious criminal misconduct removing it from the scope of Grover's employment, precluding imputation of that conduct to RCIHH. Further, Julia pleads that this conduct was committed for Grover's personal

financial benefit, not RCIHH's, which militates against imputation. (Id.) Accordingly, she does not state a plausible labor-trafficking claim against RCIHH.

E.   Julia's RICO claims are time-barred.

The four-year limitations period on Julia's RICO claims against RCIHH passed before she filed suit, so those claims should be dismissed.

Civil claims under the Racketeer Influenced and Corrupt Organizations Act are subject to a four-year limitations period. *Rotella v. Wood*, 528 U.S. 549, 553 (2000); *Rogers v. McDorman*, 521 F.3d 381, 387 (5th Cir. 2008).   The factual allegations against RCIHH are limited to "summer 2017," when Julia took a job at Silver City, the club allegedly owned by RCIHH and where the three individual Defendants (Grover, Butler, and Molina) worked, and ending in October 2017, when she "left [Grover] and quit her job at the Cabaret." (Compl. ¶¶ 249, 257) The Complaint does not plausibly allege any post-October 2017 wrongful conduct by RCIHH, nor does it show participation by RCIHH in a wrongful venture, including the sex- and labor-trafficking venture Plaintiffs allege.  Plaintiffs filed their Complaint on November 1, 2022, a year after the October 2021 deadline.  As such, the RICO claims are time-barred. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]").

F.   Julia does not plausibly allege her RICO claims against RCIHH.

The RICO statute sets out four paths to liability; Julia pleads violations of two of them. (Compl. ¶¶ 327, 337.)  The first one at issue forbids a person employed by or associated with any enterprise affecting interstate commerce from conducting or participating in the conduct of the enterprise's affairs through a pattern of racketeering activity.  18 U.S.C. § 1962(c).  The second one prohibits conspiring to violate any of the three substantive RICO provisions.  § 1962(d).

A claim under § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (footnote omitted).  Section 1962(c) requires that the defendant be employed by other associated with an "enterprise."  § 1962(c); *accord Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  An enterprise includes "any union or group of individuals associated in fact although not a legal entity[.]"  § 1961(4).  "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *accord Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988).  Julia alleges an association-in-fact enterprise. (Compl. ¶¶ 329, 339.)  "[A]n 'association-in-fact enterprise 1) must have an existence separate and apart from the pattern of racketeering, 2) must be an ongoing organization and 3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure.'"  *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995).

Julia contends that the relevant "enterprise" is the alleged network among all of the Defendants to this lawsuit to, among other things, engage in sex-trafficking and labor-trafficking of the Plaintiffs. (Compl. ¶¶ 329-333.)  However, except for its statement that Grover communicated with Richard, the Complaint contains no facts suggesting that RCIHH or any of its alleged agents or employees was involved with the criminal venture Julia alleges.  Julia even pleads facts in conflict with the alleged enterprise – for example, when she says that Grover forced her to work, she notes that this was for Grover's financial benefit, not the venture's. (Compl. ¶ 250.)  Similarly, Butler supposedly demanding sex by threatening to fire Julia does not plausibly suggest he was part of an alleged venture, nor does Molina's alleged failure to act on her complaint about Grover's supposed misconduct. (Id.)  Julia alleges a long-running story

of domestic abuse and drug addiction as between herself and her domestic partners, which she attempts to transform into RICO claims against others with whom she socially intersected.  *Cf. Twombly*, 550 U.S. at 557-58.  She strains to include as many defendants and as much conduct as possible, but even then, RCI and the other Defendants come and go without any factual allegations that plausibly connect them, or their conduct, to the supposed Enterprise—the gravamen of a RICO claim.

The Complaint does not plausibly allege a common purpose shared by all Defendants. Rather, it alleges that the purposes of the supposed criminal enterprise were "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of [Richard], Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants." (Compl. ¶ 341.) The facts alleged do not plausibly show any "common purpose and course of conduct" among the Defendants; instead, the allegations are that each Defendant acted with distinct purposes, interests, and goals.  *Boyle v. United States*, 556 U.S. 938, 950 (2009).

For example: the medical doctors prescribed drugs to Plaintiffs for their own pecuniary gain, not to traffic Plaintiffs (Compl. ¶ 146); Hynes Jr. is an alleged drug dealer who had Ms. Hubbard sell drugs for his own financial gain (Id. ¶ 269); there is no indication what purpose Mitchell had for "fixing" unidentified "problems" (Id. ¶ 160); and the goal of the so-called "Investor Defendants" was allegedly to receive "sex and media of naked women or individuals engaged in sex acts." (Id. ¶ 39.) Richard's purpose was allegedly to force Plaintiffs and others to "perform sex acts for payment, which payments he retained, and to secure business relationships." (Id. ¶ 3.)  And according to Plaintiffs, Casey Grover's goal was to withhold for his own benefit Julia's wages at a gentleman's club (Id. ¶ 250).  The Complaint's conclusory attempt to align Defendants' goals cannot change the fact that their interests point in different

---

directions. There is no plausible "unified agenda" pled.  *See Labaty v. UWT, Inc.*, 121 F. Supp. 3d 721, 752-753 (W.D. Tex. 2015); *see Comm. to Protect Our Agric. Water v. Occidental Oil*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017) (failure to plead a RICO enterprise where plaintiffs "allege[d] only a series of disconnected incidents, each involving a subset of the overall group of defendants, with no clear indication of a unified agenda"); *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004) ("divergent goals" among defendants insufficient to allege a RICO enterprise).

Instead, the facts alleged show only that RCIHH's various alleged agents and employees were each conducting his own affairs, and not that any of them, and by extension, RCIHH, were participating in or conducting the affairs of the enterprise Julia alleges.  *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ("[L]iability [under § 1962(c)] depends on showing that the defendants conducted or participated in the conduct of the "enterprise's affairs," not just their own affairs."); *Kariem v. United Parcel Serv., Inc.*, No. 3:05-CV-2079-P, 2006 WL 8437577, at *3-4 (N.D. Tex. Sept. 18, 2006) (dismissing RICO claims on Rule 12(b)(6) motion because, among other things, "Plaintiff fails to point to any facts that indicate that . . . Defendants were an ongoing organization. The complaint does not even hint at facts that would show the enterprise had a hierarchical or consensual decision making structure. Without establishing an enterprise, Plaintiff has no grounds for recovery under a RICO claim.")  And as discussed, the alleged communications between Grover and Butler does not plausibly support a determination that Grover (or RCIHH) was a participant in the venture Julia alleges, particularly since she provides no details about the substance of those communications.

Plaintiffs also do not adequately allege that Defendants had sufficient relationships, i.e., they do not allege any organization or coordinated activities as a continuing unit. Taking the Complaint at face value, the alleged participants in the "Enterprise" that somehow sprung from

the supposed sex trafficking "Venture" never planned anything, worked together to obtain a common end, split profits, or even knew who each other were in most cases. *See Labaty*, 121 F. Supp. 3d at 753 (no enterprise where there were no facts indicating that individual defendants together planned, discussed roles, or coordinated efforts.  According to the Complaint, after Defendants Eller and Richard began the so-called "Venture," a "racketeering enterprise" simply arose out it. (Id. ¶ 6.)  "Crime and misconduct" were admittedly part of Plaintiffs' lives long before the events alleged in the Complaint, but that allegation hurts, not helps, their RICO claim. *See Occidental Oil*, 235 F. Supp. 3d at 1175 (no RICO enterprise based on disconnected incidents among subgroups)); *Boyle*, 556 U.S. at 947 n.4 (un-orchestrated pattern of crime is insufficient to show RICO enterprise).

Instead of establishing a plausible unified criminal enterprise, the Complaint describes long-running, serial domestic disputes between Plaintiffs and their domestic partners, with occasional cameos by other defendants. Plaintiffs do not allege facts sufficient to plausibly establish the "organization" and "continuing unit" requirements for stating a RICO claim. *See Boyle*, 556 U.S. at 947 n.4 ("[S]uppose that several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates—for example, bribery or extortion. Proof of these patterns would not be enough to show that the individuals were members of an enterprise."); *see also Do v. Pilgrim's Pride Corp.*, 512 F. Supp. 2d 764, 768 (E.D. Tex. 2007) ("[T]he enterprise must continue to have this same purpose, and the new member must perform the same roles as the old did"); *Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 957 (N.D. Cal. 2013) (dismissal required where plaintiff fails to make "factual allegations to detail [defendant's] involvement or make [his] involvement in the enterprise plausible").

A claim under § 1962(c) also requires that the defendant conduct or participate in the conduct of the enterprise's affairs.  *See Reves*, 507 U.S. at 185 ("[W]e hold that 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself.").  Julia's § 1962(c) claims fail because taking her alleged facts as true, they show at best only isolated misconduct by Grover, not that he was part of the enterprise Julia hypothesizes.

Finally, Julia does not adequately state a conspiracy-based RICO claim. § 1962(d).  A § 1962(d) claim fails automatically if the plaintiff has no claim under one of the other substantive provisions of § 1962 (i.e., under Subsections (a)-(c)).  *See N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015) ("Since North Cypress failed to properly plead a claim under §§ 1962(a), (b), or (c), it correspondingly failed to properly plead a claim under § 1962(d)."); *accord Allstate Ins. Co. v. Benhamou*, 190 F.Supp.3d 631, 663 (S.D. Tex. June 2, 2016).  Because Julia has no valid substantive RICO claim against RCIHH, her conspiracy-based RICO claim fails as well.  Additionally, the conspiracy theory fails on the merits.  "A [RICO] conspirator must at least know of the conspiracy and 'adopt the goal of furthering or facilitating the criminal endeavor.'"  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010).  For the reasons already explained, Julia does not plead facts plausibly showing that RCIHH was part of the alleged enterprise referenced in the Complaint.  The conspiracy theory should be dismissed accordingly.

## VI.
## Prayer

In light of the foregoing, Defendant RCI Hospitality Holdings, Inc. respectfully prays that the Court: (1) grant this <u>Motion Dismiss for Failure to State a Claim</u>; (2) dismiss with prejudice

all claims against RCIHH by Plaintiffs Julia Hubbard and Kayla Goedinghaus; and (3) award

RCIHH its costs of court from Plaintiffs; and (4) grant RCIHH all other proper relief.

Respectfully submitted,

/s/ Stephanie Richmond Roark
**STEPHANIE RICHMOND ROARK**
State Bar No. 24070498
sroark@hartlinebarger.com
**BRIAN S. RAWSON**
State Bar No. 24041754
brawson@hartlinebarger.com
**HOLLY NAEHRITZ**
State Bar No. 24083700
hnaehritz@hartlinebarger.com
**HARTLINE BARGER LLP**
8750 N. Central Expy., Suite 1600
Dallas, Texas 75231
Telephone:  (214) 369-2100
Facsimile:  (214) 369-2118

**DARRELL L. BARGER**
State Bar No. 01733800
dbarger@hartlinebarger.com
**HARTLINE BARGER LLP**
800 North Shoreline Blvd.
Suite 200, North Tower
Corpus Christi, Texas 78401
Telephone:  (361) 866-8000
Facsimile:  (361) 866-8039

**ATTORNEYS FOR DEFENDANT
RCI HOSPITALITY HOLDINGS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record and *pro se* parties in accordance with the applicable Federal Rules of Civil Procedure on June 7, 2023.

/s/ Stephanie Richmond Roark
**STEPHANIE RICHMOND ROARK**