UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

John G. Balestriere*
Matthew W. Schmidt*
BALESTRIERE FARIELLO
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5401
Facsimile: (212) 208-2613
john.balestriere@balestrierefariello.com
Attorneys for Plaintiffs
*Admitted pro hac vice

**FILED**

June 20, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
NM
DEPUTY

| | |
|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS,<br><br>               Plaintiffs,<br><br>v.<br><br>TRAMMELL S. CROW, JR., DR. BENJAMIN TODD ELLER, RICHARD HUBBARD, DR. MELISSA MILLER, DR. JOSEPH BOLIN, DR. SCOTT WOODS, DR. MRUGESHKUMAR SHAH, MICHAEL CAIN, COE JURACEK, PHILIP ECOB, H.J. COLE, TEXAS RANGER CODY MITCHELL, KURT KNEWITZ, PAUL PENDERGRASS, RALPH ROGERS, ROBERT PRUIT, SCOTT BRUNSON, CASE GROVER, RICHARD BUTLER, MARC MOLINA, MICHAEL HYNES, JR., SHAWN MAYER, JADE MAYER, RCI HOSPITALITY HOLDINGS, INC., INTEGRITY BASED MARKETING, LLC, STPORM FITNESS NUTRITION, LLC, ULTRA COMBAT NUTRITION, LLC, ECOLIFT HOMES LLC, ELEVATED WELLNESS PARTNERS LLC, DOE INDIVIDUALS 1–20, and DOE COMPANIES 21–30 | Case No. 5:23-cv-00580-FB<br><br>Judge: Hon. Fred Biery<br>Date Action Filed: May 8, 2023 (transferred) |

**PLAINTIFFS' OPPOSITION TO TRAMMEL S. CROW JR.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... i

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS ............................................................................4

LEGAL STANDARD...................................................................................6

ARGUMENT ................................................................................................6

   **I.**   PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 8 NOTICE PLEADING BECAUSE THEY PLEADED DETAILED FACTS SHOWING CROWS'S ROLE IN THE VENTURE ................................................................6

  **II.**  PLAINTIFFS HAVE ALLEGED A VALID TVPA VIOLATION UNDER BOTH PERPETRATOR AND BENEFICIARY LIABILITY........................................8

     A.  Plaintiffs Have Alleged That Crow Is Liable Under TVPA Perpetrator Liability .....9

     B.  Plaintiffs Have Alleged That Crow Is Liable Under TVPA Beneficiary Liability...12

        **1.**  Plaintiffs Have Alleged That Crow Provided Assistance, Support, And Facilitation to The Venture Through Financial Aid and Providing a Forum for The Forced Sex Parties ....................................................... 13

        **2.**  Plaintiffs Have Alleged That Crow Receive Multiple Things of Value from Plaintiffs ........................................................... 13

 **III.** PLAINTIFFS HAVE ALLEGED A VALID LABOR TRAFFICKING CLAIM BECAUSE CROW OBTAINED THE BENEFIT OF PLAINTIFFS' LABOR BY FORCE ................................................................................................15

 **IV.** PLAINTIFFS HAVE ALLEGED A VALID RICO CLAIM AGAINST CROW ...........17

     A.  Plaintiffs Have Established RICO Standing Because the Enterprise Caused Financial Harm to Plaintiffs....................................................18

     B.  Plaintiffs Have Pleaded a RICO Association-in-Fact Enterprise ...........................19

        **1.**  Plaintiffs Have Pleaded a Common Purpose .................................. 19

        **2.**  Plaintiffs Have Pleaded an Ongoing Organization ........................ 20

        **3.**  Plaintiffs Have Pleaded a Continuing Unit.................................... 21

     C.  Plaintiffs Have Pleaded a Pattern of Racketeering .................................22

      D.     Plaintiffs Have Pleaded That Crow Participated in The Affairs of The Enterprise..23

      E.     Hubbard's RICO Injury Does Not Lie Outside the Statute of Limitations Because Hubbard Pleaded Financial Harm That She Suffered from The Enterprise into November 2019.........................................................................................................24

      F.     Plaintiffs Have Alleged a RICO Conspiracy ............................................................25

  **V.**   PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE GRANTED...........26

CONCLUSION.........................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.B. v. Salesforce.com, Inc.*,

No. 4:20-cv-1254, 2021 WL 3616097 (S.D. Tex. Mar. 22, 2021) ........................................... 10

*Allstate Ins. Co. v. Plambeck*,

802 F.3d 665 (5th Cir. 2015) ........................................................................................ 24

*Baker v. IBP, Inc.*,

357 F.3d 685 (7th Cir. 2004) ........................................................................................ 20

*Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007)........................................................................................................ 6

*Bias v. Wells Fargo & Co.*,

942 F. Supp. 2d 915 (N.D. Cal. 2013) .......................................................................... 25

*Bistline v. Parker*,

918 F.3d 849 (10th Cir. 2019) ...................................................................................... 13

*Boudeloche v. Grow Chem. Coatings Corp.*,

728 F.2d 759 (5th Cir. 1984) .......................................................................................... 6

*Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,

295 F. Supp. 3d 927 (N.D. Cal. 2018) .......................................................................... 23

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,

235 F. Supp. 3d 1132 (E.D. Cal. 2017)......................................................................... 20

*Diaz v. Gates*,

420 F.3d 897 (9th Cir. 2005) ................................................................................... 18, 25

*Doe v. Fitzgerald* ("*Fitzgerald II*"),

    No. CV2010713MWFRAOX, 2022 WL 2784805 (C.D. Cal. May 13, 2022) ........................ 11

*Does 1-6 v. Reddit, Inc.*,

    51 F.4th 1137 (9th Cir. 2022) ................................................................................................. 15

*Eclectic Properties East, LLC v. Marcus & Millichap Company*,

    751 F.3d 990 (9th Cir. 2014) ........................................................................................... 11, 12

*HCB Fin. Corp. v. McPherson,*

    8 F.4th 335 (5th Cir. 2021) ..................................................................................................... 18

*Gabriel v. Outlaw,*

    3:20-cv-60, 2021 WL 1030157 (N.D. Tex. Mar. 1, 2021) ...................................................... 23

*Gomez v. Guthy-Renker, LLC,*

    No. EDCV 14–01425, 2015 WL 4270042 (C.D. Cal. July 13, 2015) ...................................... 24

*Gutierrez v. Venegas*,

    No. 6:20-cv-129, 2021 WL 9314946 (N.D. Tex. Sept. 8, 2021) .............................................. 24

*H.J. Inc. v. Nw. Bell Tel. Co.,*

    492 U.S. 229 (1989) ................................................................................................................ 22

*J.C. v. Choice Hotels Int'l, Inc.,*

    No. 20-CV-00155-WHO, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ................................ 13

*Jane Doe No. 1 et al v. Daniel S. Fitzgerald* ("*Fitzgerald II*"),

    No. CV2010713MWFRAOX, 2022 WL 425016 (C.D. Cal. Jan. 6, 2022). ............................. 14

*Kelmar v. Bank of Am. Corp.*,

    No. CV 12-6826 PSG (EX), 2012 WL 12850425 (C.D. Cal. Oct. 26, 2012) .......................... 23

*Labaty v. UWT, Inc.*,

   121 F. Supp. 3d 721 (W.D. Tex. 2015)................................................................. 20, 21

*Lesnik v. Eisenmann SE*,

   374 F. Supp. 3d 923 (N.D. Cal. 2019) .................................................................. 13, 14

*Manax v. McNamara*,

   842 F.2d 808 (5th Cir. 1988) ..................................................................................... 21

*Martinez-Rodriguez v. Giles*,

   31 F.4th 1139 (9th Cir. 2022) .................................................................................... 13

*Molina-Aranda v. Black Magic Enterprises, L.L.C.*,

   983 F.3d 779 (5th Cir. 2020) ....................................................................................... 6

*Moreno v. Dretke*,

   450 F.3d 158 (5th Cir. 2006) ....................................................................................... 8

*Motel 6 Sec. Litig.*,

   161 F. Supp. 2d 227 (S.D.N.Y. 2001)...................................................................... 24

*Noble v. Weinstein*,

   335 F. Supp. 3d 504 (S.D.N.Y. 2018) ................................................................. 10, 14

*Occidental Oil & Gas Corp.*,

   235 F. Supp. 3d at 1175 ........................................................................................... 20

*Odom v. Microsoft Corp.*,

   486 F.3d 541 (9th Cir. 2007) ........................................................................... 19, 20, 21

*Price v. Pinnacle Brands, Inc.*,

   138 F.3d 602 (5th Cir. 1998) ..................................................................................... 18

*Ruelas v. Cnty. of Alameda,*

    519 F. Supp. 3d 636 (N.D. Cal. 2021) .................................................................. 16

*Staff Holdings, Inc. v. Raygoza,*

    No. SACV1700983CJCDFMX, 2017 WL 7410981 (C.D. Cal. Sept. 27, 2017) .................... 21

*Standard v. Nygren*,

    658 F.3d 792 (7th Cir. 2011) ........................................................................... 7

*Swierkiewicz v. Sorema N.A.*,

    534 U.S. 506 (2002) ...................................................................................... 6

*United States v. Bazar*,

    747 Fed. Appx. 454 (9th Cir. 2018) .............................................................. 8, 11

*United States v. Calimlim,*

    538 F.3d 706 (7th Cir. 2008) .......................................................................... 16

*United States v. Chang Ru Meng Backman*,

    817 F.3d 662 (9th Cir. 2016) .......................................................................... 10

*United States v. Cook*,

    782 F.3d 983 (8th Cir. 2015) .......................................................................... 14

*United States v. Lacey*,

    No. 22-10000, 10 2022 WL 4363818 (9th Cir. Sept. 21, 2022) ........................... 18, 19

*United States v. Maneri*,

    353 F.3d 165 (2d Cir. 2003) ........................................................................... 14

*United States v. Todd*,

    627 F.3d 329 (9th Cir. 2010) ..................................................................... 8, 9, 12

*United States v. Turkette*,

    452 U.S. 576 (1981) ................................................................................................ 19

*Walter v. Drayson*,

    538 F.3d 1244 (9th Cir. 2008) .............................................................................. 24

*Williams v. WMX Techs., Inc.*,

    112 F.3d 175 (5th Cir. 1997) .................................................................................. 6

## **<u>Statutes</u>**

18 U.S.C. § 1343 ............................................................................................................ 20

18 U.S.C. § 1512 ............................................................................................................ 20

18 U.S.C. § 1589 .................................................................................................. 15, 16, 20

18 U.S.C. § 1591 ............................................................................ 8, 9, 10, 11, 12, 13, 16

18 U.S.C. § 1962 .................................................................................................... 17, 25

18 U.S.C. § 2252 ............................................................................................................ 14

21 U.S.C. § 801 .............................................................................................................. 20

## **<u>Rules</u>**

Fed. R. Civ. P. 8(a)(2) .................................................................................................. 6, 8

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 6

## PRELIMINARY STATEMENT[1]

Defendant Trammell Crow ("Crow"), with his co-conspirators, for years was an essential funder to a sex trafficking scheme (the "Venture") that unlawfully trafficked Plaintiffs Julia Hubbard ("Hubbard") and Kayla Goedinghaus ("Goedinghaus"), subjecting them to hundreds of forced commercial sex acts, as well as the beatings, threats, and forced use of medications needed to compel Hubbard and Goedinghaus to engage in such acts. And Crow's misconduct working with others makes out an illegal racketeering enterprise (the "Enterprise").

Crow's essential role in the Venture was that of the primary financer and host. Crow's involvement in the Venture began near its inception, when he worked with Hubbard's then-husband Defendant Rick Hubbard ("Rick Hubbard") and the Venture's other central partner, Defendant Dr. Benjamin Todd Eller ("Eller"), who assisted the Venture with the provision of drugs to control Hubbard and Goedinghaus. Crow provided the Venture with necessary funding, provided to Rick Hubbard as supposed loans in the form of payments made under the guise of paying Rick Hubbard for a family law attorney, or by making investments into Rick Hubbard's various shell companies. Instead, Crow's payments directly funded and indeed made possible the Venture, and his hosting of sex parties ("the Forced Sex Parties") provided the venue for the Venture's key activities.

Plaintiffs have pleaded specific facts as to Defendant Crow that make out claims under the Trafficking Victims Protection Act ("TVPA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO").

First, Plaintiffs have sufficiently pleaded that Crow substantively violated the TVPA under both perpetrator liability (meaning that Crow caused Plaintiffs to be trafficked) and beneficiary liability (meaning that Crow provided support to the Venture and knowingly benefitted from

---

[1] All capitalized terms are defined in the Complaint, Dkt. No. 1 (the "Complaint" or "Compl."). Some terms are redefined herein for the Court's convenience.

Plaintiffs' trafficking). Crow is liable under the TVPA perpetrator liability prong because his actions enticed (by luring Plaintiffs to continue to be involved with the Venture), harbored (by giving Plaintiffs shelter at his home), provided (by arranging Plaintiffs to be available to others at his home), obtained (by arranging for Plaintiffs to be available for Crow himself at his home), maintained (by providing financial support for), patronized (by paying Plaintiffs to perform sex acts for himself or others), and solicited (by causing Plaintiffs to perform sex acts for himself or others) Plaintiffs, while knowing or acting in reckless disregard of the fact that force (physical force that Rick Hubbard used on all Plaintiffs), threats of force (threats that Rick Hubbard used on all Plaintiffs), or coercion (threats that Rick Hubbard made to Plaintiffs, including through use of legal process and drugging of Plaintiffs) would be used to cause Plaintiffs to engage in a commercial sex act. This is illegal sex trafficking.

While Crow claims he had no actual knowledge of the Plaintiffs' trafficking (a factual assertion anyway inappropriate for consideration on a motion to dismiss), Plaintiffs allege sufficient facts to make clear that Crow did in fact have such knowledge, including that Plaintiff Hubbard *told* Crow that she was being forced to perform sex acts against her will. And while Crow, a highly sophisticated businessman, structured his funding of the Venture as "loans" to Rick Hubbard so that Crow would have some plausible deniability in his essential role in the Venture, such pretextual payments only further show Crow's state of mind—that he knew of the Venture's actions at all relevant times and sought to fund it in such a way to avoid detection of his essential role. And such payments, in addition to the numerous other payments by other Defendants, made the sex acts that Plaintiffs were forced to perform of a commercial nature in violation of the TVPA.

Crow is also liable under the TVPA's beneficiary liability prong because, at a minimum, Plaintiffs allege that he knowingly supported the Venture in the form of both financial payments

and hosting the Venture's Forced Sex Parties, and Crow received benefits in the form of at least receipt of naked photos of Hubbard; Crow observing Hubbard engaging in sex acts with Crow's then-girlfriend in front of Crow; and Crow observing Goedinghaus having sex. Crow further benefitted by having the Plaintiffs provide sex acts to the guests at Forced Sex Parties hosted by Crow, while Crow developed and maintained his network by throwing parties on his property.

Second, Plaintiffs have alleged a labor trafficking claim under the TVPA because Plaintiffs have alleged that Crow knowingly obtained the benefit of Plaintiffs' labor (including in the form of sex acts and social benefits) by force, threats of force, or fraud (typically in the form of Rick Hubbard exercising physical violence, threatening physical violence, of falsely threatening use of legal process). This forced labor included the sex acts performed by Plaintiffs at Crow's parties as well as the Venture seizing revenue that Plaintiff Hubbard earned in other work.

Third, Plaintiffs have alleged a valid RICO claim against Crow. Plaintiffs have RICO standing because the RICO Enterprise caused financial harm to Plaintiffs, including taking moneys that Hubbard and Goedinghaus earned for providing what was otherwise legal companionship. The RICO Enterprise existed separate from the Enterprise's racketeering activities because, in addition to its illegal activities that it coordinated, the Enterprise also organized social events at Crow's property. Plaintiffs have alleged both closed-ended and open-ended continuity—the Enterprise was not discreet but formed an organized scheme that went on for years—and Plaintiffs pleaded Crow's role in the enterprise as a financier and host. Lastly, Plaintiff Hubbard's harm took place within the statute of limitations because she alleged that she suffered harm from the Enterprise into November 2019, and Plaintiffs have alleged the existence of a RICO conspiracy.

Plaintiffs have adequately alleged Crow's central and key role in the Venture, as a financer and a host, who had knowledge at all times of the Venture's trafficking of Plaintiffs Hubbard and

Goedinghaus, and who benefitted from that trafficking. Crow knowingly obtained the benefits of Plaintiffs' labor by force, and Crow also played a central role in a RICO Enterprise that comprised the venture. The Court should deny Crow's motion to dismiss (the "Motion," Dkt. No. 151) and allow this matter to proceed to discovery.

## **STATEMENT OF FACTS**

### *Defendants Form the Venture*

Crow and Plaintiff Hubbard met in 2009, shortly before Plaintiff Hubbard married Defendant Rick Hubbard in February 2010. (Compl. ¶¶ 96–97.) Following Rick Hubbard's 2010 arrest for financial fraud, Rick Hubbard became desperate for new financial opportunities. (Compl. ¶¶ 104–106.) Rick Hubbard then, along with Defendant Dr. Todd Eller, started the Venture, which began to force Plaintiff Hubbard to perform sex acts for money. (Compl. ¶¶ 121–123.) The Venture forced Plaintiff Hubbard through means that included Dr. Eller using his psychological practice to claim that Hubbard had serious psychological issues and needed to be on high doses of potent drugs such as Xanax, Adderall, Oxycodone, Marinol, Soma, Lorazepam, Ambien, and Trazadone. (Compl. ¶¶ 123–24.) This medication scheme made Plaintiff Hubbard, and, later, Plaintiff Goedinghaus—and likely others—pliable, and susceptible to other forms of threats and force. (Id.)

### *Crow Provides Crucial Financial Support to the Venture and Receives Benefits in Exchange*

Defendants Rick Hubbard and Eller soon realized that they needed funding to fully profit from the Venture, and Rick Hubbard turned to his friend Crow. (Compl. ¶¶ 167–69.) Crow provided the Venture with financial funding (Compl. ¶¶ 30, 34, 38–39, 187); organized and hosted the Forced Sex Parties at which Plaintiffs were forced to perform sex acts (*see* Compl. ¶¶ 3, 34, 40); and assisted in the recruiting of other investors to the Venture (*see* Compl. ¶¶ 34, 178–79, 185–188.) To provide deniability for his payments, Crow often structured his payments as "loans."

(Compl. ¶ 187.)

Crow was aware of the Venture's activities, including, most importantly, that Plaintiffs were forced to engage in commercial sex acts against their will. (*See* Compl. ¶ 185.) Crow had close and repeated contact for years with both Plaintiff Hubbard and Plaintiff Goedinghaus, including regular text messaging with Hubbard and allowing himself to be photographed with her. (*See* Compl. ¶ 186.) Given Hubbard's highly drugged state at the hands of the Venture, Crow, a highly educated, intelligent, and sophisticated businessman should at a minimum have known that Hubbard was being compelled to engage in sex acts by means of force and coercion. (See Compl. ¶ 186.) But Crow did not have to make such an inference: Hubbard herself "told Crow [outright] that Rick was forcing her to perform sex acts." (Compl. ¶ 185.)

Crow was similarly aware of Plaintiff Goedinghaus's status, as Goedinghaus was forced by Rick Hubbard, who choked her and threatened her with Crow's influence, to have sex in front of Crow, and, at a minimum, should have known that Goedinghaus was being forced to engage in sex acts against her will, just as Hubbard told Crow she was (meaning that Crow was well on notice of Rick Hubbard's tactics). (Compl. ¶¶ 34, 288.) Goedinghaus even stayed at Crow's guest house for several days following a Forced Sex Party at which Goedinghaus was on drugs. (See Compl. ¶ 296.) Crow's activities continued with each Plaintiff until they escaped the Venture, in 2018 for Plaintiff Hubbard and 2020 for Plaintiff Goedinghaus. (Compl. ¶¶ 51–52.)

In addition to providing financial support to the Venture, Crow received benefits from the Venture, including in the form receipt of naked photos of Hubbard (Compl. ¶ 39); Hubbard engaging in sex acts with Crow's then-girlfriend (Compl. ¶ 34); and watching Goedinghaus have sex (Compl. ¶ 34). Crow also benefitted from the Venture by providing sex acts to guests at his parties, which gave Crow social benefits and increased esteem in his community. (*See, e.g.,* Compl.

¶¶ 177–79, 197–200.)

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8 requires that pleadings contain "a short and plain statement of the claim" that gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *Boudeloche v. Grow Chem. Coatings Corp*., 728 F.2d 759, 762 (5th Cir. 1984). "Allegations of fraud. . . must meet Rule 9(b)'s heightened pleading standard, under which plaintiffs 'must state with particularity the circumstances' of the allegedly fraudulent conduct." *Molina-Aranda v. Black Magic Enterprises, L.L.C*., 983 F.3d 779, 784 (5th Cir. 2020); *see also Williams v. WMX Techs*., Inc., 112 F.3d 175, 177 (5th Cir. 1997).

On a Rule 12(b)(6) motion, a court may dismiss a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) In other words, a court may not dismiss a complaint in which Plaintiffs have alleged enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

### I. PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 8 NOTICE PLEADING BECAUSE THEY PLEADED DETAILED FACTS SHOWING CROWS'S ROLE IN THE VENTURE

Plaintiffs have met the requirements of Rule 8 because they have pleaded detailed facts showing Crow's role in the Venture giving rise to liability. Under Rule 8, a plaintiff must plead a "short and plain statement" of each claim in a "concise and direct manner," that gives rise to a "plausible" inference of relief. Fed. R. Civ. P. 8(a)(2), (d); *Twombly*, 550 U.S. at 570. Rather than a shotgun approach to pleading, Plaintiffs have made specific allegations regarding each

Defendant, including Crow.  These include allegations with regards to Crow that:

- Crow provided financial funding to the Venture, which he camouflaged as "loans" to hide their improper purpose (Compl. ¶ 187; *see also id.* ¶¶ 31, 34, 36, 185);

- Crow had actual knowledge—and even if not, had more than enough information such that as a reasonable person he should have known—that Plaintiffs Hubbard and Goedinghaus were both being forced to engage in commercial sex acts against their will (Compl. ¶¶ 185–86; *see also id.* ¶¶ 31, 34, 36, 185); and

- Crow benefitted from the Venture in the form of receipt of naked photos, watching sex acts involving Hubbard, engaging in sex acts with Goedinghaus, and receiving the benefit of having sex services available to guests at his parties. (*See* Compl. ¶¶ 186, 295–296).

The Complaint includes ample detail regarding all Defendants, but sufficient specific detail regarding Crow, his liability, and how he benefited, such that the Motion should be denied.

While the Complaint alleges that certain activities were performed by many or all Defendants—as its expected of an organized trafficking venture—there is no bar against such allegations, especially when, as here, it is coupled with specific allegations towards Crow and each other Defendant. None of Crow's authorities hold otherwise. *See Standard v. Nygren*, 658 F.3d 792, 799 (7th Cir. 2011) (affirming dismissal of *second amended* complaint where plaintiff "could not even bring himself to correct the errors cataloged by the district court following the first two rejections"); *Langston v. Ethicon Inc.*, No. 3:20-CV-3712-S, 2021 WL 6198218, at *3, *9 (N.D. Tex. Dec. 31, 2021) (dismissing only in part and allowing second chance to amend, despite fact that complaint contained "[o]nly four paragraphs" concerning plaintiffs individually and parts of complaint were "copie[d] substantially from other complaints filed by other plaintiffs nationwide around the same time as this action was filed"); *Noble Cap. Texas Real Est. Income Fund LP v. Newman*, No. 1-22-CV-652-LY, 2023 WL 3035411, at *3-4 (W.D. Tex. Jan. 13, 2023) (allowing plaintiffs second chance to amend despite lack of specific allegations against individual defendants, rather grouping defendants into "two camps"); *Elliott v. Foufas*, 867 F.2d 877, 882

(5th Cir. 1989) (party filing amended complaint ignored guidance in court's prior order that had "explicitly demonstrated what was necessary to a valid complaint"); *Jim S. Adler, P.C. v. Angel S. Reyes & Assocs., PC*, No. 3:19-cv-2027, 2020 WL 5099596, at *13-14 (N.D. Tex. Aug. 7, 2020) (*rejecting* characterization of "shotgun pleading" because plaintiffs' alleged facts were not "irrelevant or unrelated" to the scheme at issue in complaint); *Malibu Media LLC v. Duncan*, No. 4:19-cv-2314, 2020 WL 567105, at *4-6 (S.D. Tex. Feb. 4, 2020) (copyright infringement suit failed to allege any individualized basis for liability against plaintiff beyond IP address that could have been used by others). Plaintiffs have adequately met their obligations under Rule 8.

## II. PLAINTIFFS HAVE ALLEGED A VALID TVPA VIOLATION UNDER BOTH PERPETRATOR AND BENEFICIARY LIABILITY

A defendant violates the TVPA when he either (1) recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits a person (the perpetrator prong)— or (2) benefits, "financially or by receiving anything of value," from participation in a venture that recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits a person (the beneficiary prong)—knowing, or in reckless disregard of the fact that, means of force, threats of force, fraud, or coercion will cause the person to engage in a "commercial sex act." 18 U.S.C. § 1591(a); *see United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) (recognizing that knowledge requirement "does not require knowledge in the sense of certainty as to a future act," but rather "awareness" that it is likely to occur). A "commercial sex act" is defined in the statute as "*any* sex act, on account of which *anything* of value is given or received by any person." 18 U.S.C. § 1591(e)(3) (emphasis added); *Moreno v. Dretke*, 450 F.3d 158, 172 (5th Cir. 2006) (recognizing conduct or circumstances surrounding his conduct when he is aware of the nature of the conduct or that the circumstances exist"); *United States v. Bazar*, 747 Fed. Appx. 454, 456 (9th Cir. 2018) (recognizing that "commercial sex act" is not "limited to sexual intercourse for

money"). Plaintiffs have pleaded that Crow faces TVPA liability under both the perpetrator and beneficiary prongs.

### A.   Plaintiffs Have Alleged That Crow Is Liable Under TVPA Perpetrator Liability

Plaintiffs have sufficiently alleged that Crow violated the perpetrator prong of the TVPA, including that Crow enticed (by luring Plaintiffs to continue to be involved with the Venture), harbored (by giving Plaintiffs shelter at his home), provided (by arranging Plaintiffs to be available to others at his home), obtained (by arranging for Plaintiffs to be available for Crow himself at his home), maintained (by providing financial support for), patronized (by paying them to perform sex acts for himself or others), and solicited (by causing them to perform sex acts for himself or others) Plaintiffs, knowing or in reckless disregard of the fact that means of force, threats of force, or coercion would cause Plaintiffs to engage in a commercial sex act.

First, Plaintiffs allege that Crow caused each of the Plaintiffs by force, threat of force, or coercion to engage in commercial sex acts. Despite Crow's unsupported assertion that the TVPA's perpetrator prong requires Crow *himself* to have caused Plaintiffs to engage in sex acts (Mot. at 10), the statute requires only that Crow entice, harbor, provide, obtain, maintain, patronize, or solicit Plaintiffs while knowing (or recklessly disregarding) the fact that prohibited means would be used to force Plaintiffs to engage in commercial sex acts. *See* 18 U.S.C. § 1591(a); *Todd*, 627 F.3d at 336. And Plaintiffs have pleaded, in detail, how Rick Hubbard engaged in force, threat of force, and coercion to cause Plaintiffs to engage in commerce sex. For example:

- Rick Hubbard used force and threats of force when he beat Plaintiffs to the point of unconsciousness and hospitalization and, on two occasions, injured Hubbard's neck requiring spinal surgery, thus forcing Hubbard into commercial sex acts. (Compl. ¶¶ 5, 18, 239, 297.)

- Rick Hubbard used coercion, in the form of threat of misuse of legal process, when he made Hubbard take a polygraph test to "prove" that Defendant Mayer had abused 26 her, so that he could take custody of Hubbard's children who were in Mayer's custody, and threatened her with loss of custody, thus coercing Hubbard

9

into performing commercial sex acts. (Compl. ¶¶ 161–162.)

- Rick Hubbard coerced Plaintiffs Hubbard and Goedinghaus when he procured high doses of drugs and made Plaintiffs take them, using such to force them to coerce them into commerce sex acts. (Compl. ¶¶ 123–124, 127.)

Second, Plaintiffs plead that Crow knew, or recklessly disregarded, that force, threat of force, or coercion would cause Plaintiffs to engage in commercial sex acts. 18 U.S.C. § 1591(a); *United States v. Chang Ru Meng Backman*, 817 F.3d 662, 666–67 (9th Cir. 2016) (recognizing that 18 U.S.C. § 1591(a) "knowing" requirement does not require a forced sex act to even occur—only that defendant is "aware of an established modus operandi"). (*See* Compl. ¶¶ 36, 295–296.) Crow misstates the relevant standard (Mot. at 10), here relying on *Noble v. Weinstein* for the proposition that Crow must have had the required state of mind at the "initial . . . stage" of any trafficking. 335 F. Supp. 3d 504, 518 (S.D.N.Y. 2018). But that language from *Noble* specifically concerns the recruitment and enticement prongs of the TVPA, in a situation where such actions began at the "initial recruitment or enticement stage." *Id.* Even if Crow did not have such knowledge at the point of recruitment or enticement (which is highly unlikely, and anyway a factual point which must be viewed in Plaintiffs' favor at this stage), Plaintiffs have at a minimum pleaded that he had such knowledge at the time he actually began harboring, providing, obtaining, maintaining, patronizing, or soliciting the Plaintiffs. (Compl. ¶¶ 37–38, 173, 179, 295–296.) *A.B. v. Salesforce.com, Inc.*, is not relevant, as the allegations there concerned customer relationship management software that was used by an allege sex-trafficking website—opposed to as here, an individual who was personally involved in forced sex parties. *See* No. 4:20-cv-1254, 2021 WL 3616097, at *5-6 (S.D. Tex. Mar 22, 2021). Plaintiffs have adequately pleaded that Crow's actions satisfy the scienter requirement of the TVPA's perpetrator prong.

Third, Plaintiffs have alleged that they were forced to engage in "commercial sex acts" and that Crow knew specifically that the forced sex acts were commercial in nature, meaning that

something of value was exchanged. *See Bazar*, 747 Fed. Appx. at 457. For the perpetrator prong, Plaintiffs do not need to allege that Crow *himself* received anything of value, only that there occurred a sex act "on account of which *anything of value* is given to or received by *any* person." 18 U.S.C. § 1591(e)(3); *Doe v. Fitzgerald* ("*Fitzgerald II*"), No. CV2010713MWFRAOX, 2022 WL 2784805, at *3 (C.D. Cal. May 13, 2022). Plaintiffs have alleged at length the financial benefits alone that were exchanged for the sex acts that Plaintiff Hubbard and Plaintiff Goedinghaus were each forced to perform, including being forced to perform sex acts for drugs (*See, e.g.,* Compl. ¶¶ 13, 40, 48, 237, 293.) *Fitzgerald II* does not hold otherwise because, there, not only had the plaintiffs *not* contested that nothing of value had been exchanged, but the fact pattern concerned allegations that a defendant had gratuitously given gifts which he then withdrew when the plaintiff did not provide sex, and the defendant did *not* restore such payments after the plaintiff engaged in sex acts with him. Nothing was exchanged. No. CV2010713MWFRAOX, 2022 WL 2784805, at *3. That is not the case here, where Plaintiffs have specifically pleaded that money and other things of value were exchanged for sex acts. (Compl. ¶¶ 40, 48, 142, 195, 199, 220–27, 237, 286.) And Crow's assertions that "[t]here is no allegation that the loan Mr. Crow provided to Mr. [Rick] Hubbard was related to the so-called Venture in any manner" (Mot. at 11) is simply wrong. Plaintiffs alleged that Rick Hubbard had "receiv[ed] information from Crow's accountant on how to best structure loans *to the Venture*." (Compl. ¶ 187.) Crow knew specifically that the forced acts were commercial in nature.

Fourth, there exists no "obvious alternative explanation" that Crow was simply engaging in consensual sex acts–not when the Venture forced each of the Plaintiffs to engage in forced sex acts over and over again, over a period of years. (Compl. ¶¶ 3, 34.). *Eclectic Properties East, LLC v. Marcus & Millichap Company* holds that a defendant's "obvious alternative explanation" is only

11

relevant where a complaint fails to "offer[] facts that tend[] to exclude the defendants' innocuous alternative explanation." *Eclectic Properties East, LLC v. Marcus & Millichap Company*, 751 F.3d 990, 996 (9th Cir. 2014). But Plaintiffs have pleaded numerous such facts, including that Rick Hubbard trafficked Plaintiffs Hubbard and Goedinghaus to Crow, supplied drugs for Crow's parties, forced Hubbard to have sex with Crow's then-girlfriend in front of Crow (which was used both for Crow's enjoyment and to threaten Hubbard, Rick Hubbard forced Goedinghaus to have sex in front of Crow (Compl. ¶ 34). And Crow's alternative explanation—that he was hosting parties for years in which forced commercial sex occurred *and* he provided funds to Rick Hubbard, the person at the center of the forced sex scheme, *but* Crow was somehow completely unaware of these facts—totally ignores the "established modus operandi" of the Forced Sex Parties taking place at his own home. Moreover, as specifically pleaded, one of the Venture's victims told Crow that "Rick was forcing her to perform sex acts and take drugs to force such acts." (Compl. ¶ 185 (emphasis added).) Crow's "alternative explanation" is not simply implausible; it is simply unbelievable.

Plaintiffs have alleged TVPA perpetrator liability for Crow, and the Motion should be denied.

### B.   Plaintiffs Have Alleged That Crow Is Liable Under TVPA Beneficiary Liability

Besides alleging that Crow is liable under the TVPA perpetrator liability prong, Plaintiffs have also alleged that Crow is liable as a beneficiary under the TVPA. Beneficiary liability under the TVPA attaches where a defendant benefits either "financially or by receiving anything of value" from participation in a venture that recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits a person knowing, or in reckless disregard of the fact that, means of force, threats of force, fraud, or coercion will cause the person to engage in a "commercial sex act." 18 U.S.C. § 1591(a); *Todd*, 627 F.3d at 333. A venture is defined in 18

U.S.C. § 1591(e)(6) as "any group of two or more individuals associated in fact, whether or not a legal entity." *Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019). Plaintiffs have alleged that Crow participated in the Venture by providing assistance, support, and facilitation to the Venture, that he knew or should have known that the Venture involved sex trafficking, and that Crow himself received things of value from his participation in the Venture.

### 1. Plaintiffs Have Alleged That Crow Provided Assistance, Support, And Facilitation to The Venture Through Financial Aid and Providing a Forum for The Forced Sex Parties

Plaintiffs have alleged that Crow provided assistance, support, and facilitation to the Venture through financial support and providing the main forum for the Venture's Forced Sex Parties. *See J.C. v. Choice Hotels Int'l, Inc.,* No. 20-CV-00155-WHO, 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020) (finding TVPA beneficiary liability where "defendants . . . rented rooms to people they should have known were engaging in [plaintiff's] sex trafficking"). Plaintiffs have alleged that Crow provided financial support to the Venture as well as provided the primary forum for the Venture's Forced Sex Parties (Compl. ¶¶ 30–34, 178–179, 295.) Crow may not at the pleading stage reframe Plaintiffs' allegations to his own benefit. While Plaintiffs allege that Crow made "loans" to the Venture that were not repaid, Plaintiffs also plead that such "loans" were pretextual and intended to be cash payments to the Venture. (Compl. ¶¶ 187, 189.) Such cash payments are, even alone, the prototypical way to support a Venture or even any other type of organization.

### 2. Plaintiffs Have Alleged That Crow Receive Multiple Things of Value from Plaintiffs

Plaintiffs have alleged that Crow knowingly benefitted from the Venture. A defendant "knowingly benefits" from a venture where he benefits "either financially or by receiving a thing of value" and where there is a "causal relationship" between the conduct at issue and receipt of the benefit. 18 U.S.C. § 1591(e); *see Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 953 (N.D. Cal.

13

2019) (finding establishment of paint shop and offering employment to construct paint shop a "thing of value")*. A "thing of value" has been held by various courts to include a sexual act or even the "opportunity" for a sexual encounter. *See United States v. Maneri*, 353 F.3d 165, 168 (2d Cir. 2003) (holding "thing of value" under 18 U.S.C. § 2252 to include "the opportunity for a sexual encounter"); *United States v. Cook*, 782 F.3d 983, 989 (8th Cir. 2015) (under the TVPA, a "thing of value" includes "sexual acts, *see also Noble*, 335 F. Supp. 3d at 520 (finding "meeting a world-renowned film producer" a thing of value under TVPA). Crow benefited from the Venture in multiple ways.

Plaintiffs have alleged that Crow received a thing of value in exchange for his participation in and assistance to the Venture, particularly sex acts and the benefit from receiving sexual services for his guests at his parties, which increased his reputation and relationship with those in attendance. *See Lesnik*, 374 F. Supp. 3d at 953. And because Crow's parties were often affiliated with his charities (Compl. ¶¶ 172, 176–178), he received further benefit in the form of increased esteem for his charitable activities. These sex acts and the social benefit of the sex acts at his parties all constitute a thing of value, and none of Crow's authorities are to the contrary. In *Jane Doe No. 1 et al v. Daniel S. Fitzgerald* ("*Fitzgerald I*")—an unpublished decision which has not been cited by any court—the court considered not whether "sex acts" were a thing of value, but, distinguishing *Cook*, found that mere "sexual gratification" was not enough to be a "thing of a value." *Jane Doe No. 1 et al v. Daniel S. Fitzgerald* ("*Fitzgerald II*"), No. CV2010713MWFRAOX, 2022 WL 425016, at *6 (C.D. Cal. Jan. 6, 2022). That is not the case here. Here, the Complaint alleges that the Venture involved the use of force, threats of force, and coercion to cause Plaintiffs to engage in commercial sex acts, for which money, sex acts, social benefits, and other things of value were exchanged. And Crow knowingly benefited from his

14

participation in the Venture. He benefitted by receiving sexual services for him and his guests at the parties he hosted. These are multiple things of value embraced by the very broad definition of the statute.

Lastly *Does 1-6 v. Reddit, Inc.* is inapposite as it specifically concerns criminal liability, that "to hold a defendant *criminally liable* as a beneficiary of sex trafficking," the defendant must have actually "engaged in some aspect of the sex trafficking." *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (emphasis added). But even if this heightened criminal standard applied here, which it does not, Plaintiffs have satisfied that standard, as they have alleged that Crow was closely involved in all aspects of the Venture. (Compl. ¶¶ 31, 34.) Plaintiffs have alleged that Crow received a thing of value—and in fact, many things of value—in exchange for his assistance to the Venture.

Plaintiffs have pleaded a TVPA liability against Crow, who is liable under both perpetrator and beneficiary liability.

## III.   PLAINTIFFS HAVE ALLEGED A VALID LABOR TRAFFICKING CLAIM BECAUSE CROW OBTAINED THE BENEFIT OF PLAINTIFFS' LABOR BY FORCE

Plaintiffs have alleged a labor trafficking claim under 18 U.S.C. § 1589. Labor trafficking under 18 U.S.C. § 1589 exists where a defendant either knowingly provides or obtains the labor or services of a plaintiff (the perpetrator prong) either (1) through means of force or threats of force, (2) by means of serious harm or threats of physical harm, (3) by means of abuse or threatened abuse of legal process, or (4) by means of any scheme intended to cause the plaintiff to believe that if they "did not perform such labor or services, that person or another person would suffer serious harm or physical restraint. 18 U.S.C. § 1589(a); *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1150 (9th Cir. 2022) (plaintiffs had a successful forced labor claim where they pleaded that the defendants had obtained plaintiffs' labor through means of pressure created by abuse of law).

15

Liability also attaches where a defendant "knowingly benefits" (the beneficiary prong) either "financially or by receiving anything of value," from participation in a venture that engaged in the providing or obtaining of labor or services by any of the above four grounds. 18 U.S.C. § 1589(b); *see Lesnik,* 374 F. Supp. 3d at 953; *Ruelas v. Cnty. of Alameda,* 519 F. Supp. 3d 636, 650 (N.D. Cal. 2021). Crow is liable under both prongs.

Just as Plaintiffs pleaded a proper 18 U.S.C. § 1591(a) sex trafficking claim, they have pleaded an 18 U.S.C. § 1589 labor trafficking claim against Crow on the same facts. (*See supra* at II.) Plaintiffs have pleaded the perpetrator prong, that Crow obtained the services, namely, sex services, of both Plaintiff Hubbard and Plaintiff Goedinghaus through force, threats of force, and coercion. (*See, e.g.,* Compl. ¶¶ 5, 18, 123–124, 127, 161–162, 239, 297.) Further, Crow participated in the Venture, which involved obtaining forced labor and knowingly benefiting from this participation. (*See, e.g.,* Compl. ¶¶ 167–190.)

Nor, despite Crow's unsupported assertion (Mot. at 14) that a labor trafficking claim requires Crow *himself* to make use of force, is such language in the statute. *See* 18 U.S.C. § 1591(a); *United States v. Calimlim*, 538 F.3d 706, 711 (7th Cir. 2008) (a labor trafficking claim does not require that the "serious harm" be at the defendant's hand). Instead, 18 U.S.C. § 1589 requires only that a defendant obtains the labor or services of a person through *means* of force or other prohibited means. 18 U.S.C. § 1589.

Crow is also wrong that Plaintiffs have not alleged a threat of abuse of process. In addition to the threats by Defendant Coe Juracek[2] to testify in a way harmful to Plaintiff Hubbard, Plaintiffs

---

[2] Defendant Coe Juracek was a Senior Managing Director at Crow Holdings Capital and member of its investment committee, who also informally worked as Crow's "fixer," solving problems that came up in his personal life. Coe Juracek also provided support to the Venture as well as social cachet which Rick used to further grow the Venture. (Compl. ¶¶ 209–212.)

have pleaded that Defendant Cody Mitchell,[3] in conjunction with Rick Hubbard, would "regularly threaten Hubbard and Goedinghaus" with "arrest under false charges, telling them that if they did go to law enforcement, no one would believe them." (Compl. ¶ 20.)

Alternatively, Plaintiffs have also pleaded the beneficiary prong, that Crow knowingly benefitted from participating in the Venture, which itself obtained the labor and services of Plaintiffs through prohibited means. As discussed at length above (*see supra* at II.B), Plaintiffs have pleaded that Crow received things of value from the Venture, at least in the form of form of at least receipt of naked photos of Hubbard (Compl. ¶ 39); Hubbard engaging in sex acts with Crow's then-girlfriend (Compl. ¶ 34); and sex with Goedinghaus (Compl. ¶ 295). Plaintiffs have alleged a labor trafficking claim against Crow. Crow's motion to dismiss should be denied.

## IV.   PLAINTIFFS HAVE ALLEGED A VALID RICO CLAIM AGAINST CROW

Plaintiffs have pleaded a substantive RICO violation against Defendant Crow under 18 U.S.C. § 1962(c). A civil RICO claim must plead (1) a separate and distinct RICO enterprise that (2) engaged in a pattern of racketeering (3) causing harm to the Plaintiff. *See* 18 U.S.C. § 1962(c), (d).

Plaintiffs have properly alleged that Plaintiffs have RICO standing; have properly alleged the existence of a RICO Enterprise; have alleged a pattern of racketeering; and that Crow conducted or participated in the Enterprise. Plaintiffs have also properly alleged that Plaintiff Hubbard's RICO claim is not barred by the statute of limitations and the existence of a RICO conspiracy.

---

[3] Defendant Cody Mitchell is member of the elite Texas Ranger Division who specializes in human trafficking and child exploitation cases. Rick Hubbard had a close friendship with Cody Mitchell and regularly threatened Hubbard and Goedinghaus with arrest under false charges, telling them that if they did go to law enforcement, no one would believe them. (Compl. ¶¶ 17–28.)

A.  **Plaintiffs Have Established RICO Standing Because the Enterprise Caused Financial Harm to Plaintiffs**

Plaintiffs have pleaded standing under RICO. RICO standing exists where a plaintiff suffers a "concrete financial loss" to business or property that was proximately caused by an overt RICO violation. *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (false imprisonment that caused the victim to lose employment and employment opportunities was an injury to "business or property" within the meaning of RICO). Plaintiffs have been injured in the form of "moneys that Hubbard and Goedinghaus earned for providing companionship, including at Forced Sex Parties, and moneys that Hubbard earned" while working as a dancer but were confiscated by the RICO Enterprise. (Compl. ¶ 312.) Crow cites *Price v. Pinnacle Brands* to demonstrate that "personal injuries, including emotional distress, that result in pecuniary losses, are not compensable under RICO." *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 n.20 (5th Cir. 1998). (Mot. at 16.) But Plaintiffs do not allege solely personal injuries but concrete pecuniary losses because the money they earned was confiscated by the RICO Enterprise. (Compl. ¶ 45, 256). *See also HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 345 (5th Cir. 2021) (recognizing potential investment opportunities as invalid for "concrete loss" under RICO). This is enough to allege RICO standing.

All of Crow's attempts to portray Plaintiffs as lacking standing is based on his favored views of facts, not what Plaintiffs have actually pleaded. First, Plaintiffs did not plead that they suffered RICO injury in the form of illegal payments from "sexual acts at swinger parties" or "money earned at parties in exchange for sexual acts" (Mot. at 16), but legally earned "moneys that Hubbard Goedinghaus earned for providing companionship" (Compl. ¶ 312). *United States v. Lacey*, No. 22-10000, 10 2022 WL 4363818, at *1 (9th Cir. Sept. 21, 2022) (affirming that it is lawful to receive payments for companionship provided through escort services). Second, Plaintiffs did not plead that Hubbard's income as a dancer was withheld by her manager Defendant

Grover "for his own benefit" (Mot. at 16), but that he confiscated a "*portion*" of her wages for his

own benefit, with the remainder to the benefit of the Venture (*see* Compl. ¶ 44, 250, 312 (emphasis

added). Third, Plaintiff Hubbard did not plead that the loss of her home in April 2018 was caused

by a "heavily strained financial situation" separate from RICO harm (Mot. at 16), but that the

RICO Enterprise caused this loss by the confiscation of her wages (Compl. ¶¶ 249–251, 257). *See*

*Lacey*, 2022 WL 4363818, at *1.

Plaintiffs have adequately pleaded that Plaintiffs have suffered RICO injury, and thus have

RICO standing.

## B.   Plaintiffs Have Pleaded a RICO Association-in-Fact Enterprise

Plaintiffs have adequately pleaded the existence of an association-in-fact enterprise. An

association-in-fact enterprise—one that is not coterminous with a formal legal entity—exists

where there is (i) a "common purpose," (ii) an "ongoing organization," and (iii) a "continuing

unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552-53 (finding association-in-fact enterprise

between software manufacturer and retailer.)

### 1.   Plaintiffs Have Pleaded a Common Purpose

First, Plaintiffs have pleaded a "common purpose," which requires only that the Defendants

be "associated for 'a common purpose of engaging in a course of conduct.'" *Id.* at 552 (quoting

*United States v. Turkette*, 452 U.S. 576, 583 (1981)). As Crow concedes (Mot. at 18), Plaintiffs *do*

allege the purpose of the Enterprise "to traffic women for purposes of sexual acts and forced labor,

to the financial benefit of Mr. [Rick] Hubbard, Eller, and the Medical Doctor Defendants and for

the sexual gratification and other benefits of all Defendants" (Compl. ¶ 341). Crow disputes only

that this itself is a "common purpose," rather than multiple "*purposes*." (Mot. at 18 (emphasis in

original).) But the language Crow quotes does, on its face, state a single purpose—"to traffic

women"—and the rest of the sentence simply describes how different members of the Enterprise

had varied roles and motivations to pursue that benefit. (*See* Compl. ¶ 341) This does not defeat the existence of a common purpose. *Odom*, 486 F.3d at 552-53 (finding common purpose of "increasing the number of people using Microsoft's Internet Service and doing so by fraudulent means" despite defendants furthering purpose in distinct ways).

Crow's authorities are not to the contrary, as they concern situations where the alleged common purpose was no different from "ordinary business or government aims" or the different defendants, unlike here, had outright "divergent goals." *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017) (rejecting common purpose "to maximize profits, increase revenues, and avoid the consequences of the contamination of fresh water"); *see also Labaty*, 121 F. Supp. 3d 721, 752-753 (W.D. Tex. 2015); *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004) (rejecting common purpose between company and recruiters where company sought to lower payments that recruiters sought to increase). Plaintiffs have pleaded a common purpose as required by RICO.

## 2. Plaintiffs Have Pleaded an Ongoing Organization

Second, Plaintiffs allege that the Enterprise had an "ongoing organization," which requires the Enterprise to have engaged in the commission of "two or more predicate crimes." *Odom*, 486 F.3d at 552. Plaintiffs have alleged numerous predicate acts, including the TVPA, 18, U.S.C. § 1591, 1589; the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, Wire Fraud, 18 U.S.C. § 1343; and Witness Tampering, 18 U.S.C. § 1512. (Compl. ¶ 310.) And the Enterprise went about these acts with a distinct structure separate from distinct racketeering acts: Rick Hubbard and Eller would regularly communicate so that Eller could assist in coercing Plaintiffs, including through affidavits, and causing the Medical Doctor Defendants (doctors who provided prescription drugs for the Enterprise) to improperly issue medication to Plaintiffs. (Compl. ¶¶ 303–305.) Rick Hubbard, including through the assistance of the Fixer Defendants (friends of Rick Hubbard who

provided additional threats of force and coercion towards Plaintiffs) coordinated in the provision of Plaintiffs to Crow and the other Investor Defendants (those who provided funding to the Enterprise, and were often Crow's friends who attended his parties). (Compl. ¶¶ 17–28, 29–40.) Also involved were the Labor Trafficking Defendants, individuals who were in regular contact with Rick Hubbard after Plaintiff Hubbard had left Rick Hubbard and attempted to extract further value from Plaintiff Hubbard and coerce her back into being forced to provide forced commercial sex. (Compl. ¶¶ 41–50.) And in addition, Plaintiffs pleaded that the Enterprise had a "legitimate non-criminal purpose, specifically facilitation of entertainment, companionship, and networking at social functions." (Compl. ¶ 315.)

None of Crow's authorities offer any rebuttal to the "ongoing organization" that Plaintiffs pleaded. *Staff Holdings, Inc. v. Raygoza*, No. SACV1700983CJCDFMX, 2017 WL 7410981, at *3 (C.D. Cal. Sept. 27, 2017) (plaintiffs had not pleaded "any facts indicating interpersonal relationships between the participants" in RICO enterprise); *McPeters v. Edwards*, 806 F.Supp.2d 978, 988 (S.D. Tex. 2011) (dismissing complaint that conflates alleged enterprise with alleged pattern of racketeering). *Occidental Oil & Gas Corp.*, 235 F. Supp. 3d at 1175 (finding no common purpose pleaded); *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988) (no continuity where association had only "one short-term goal"); *Do v. Pilgrim's Pride Corp.*, 512 F. Supp. 2d 764, 769 (E.D. Tex. 2007) (finding no continuity on summary judgment where, among other failings, enterprise members had "interests" that "ultimately collided"); *Labaty*, 121 F. Supp. 3d at 753 (alleged RICO enterprise members had "greatly-differ[ing] interests). Plaintiffs have pleaded a bevy of predicated acts to make out an ongoing organization under RICO.

### 3. Plaintiffs Have Pleaded a Continuing Unit

Third, Plaintiffs allege that the Enterprise was a "continuing unit," meaning that the actions of the Enterprise were "ongoing" rather than "isolated activity." *Odom*, 486 F.3d at 552-53 (finding

that "an almost two-year time span is far more than adequate to establish" that two members of RICO enterprise "functioned as a continuing unit"). The "continuing unit" requirement does not mean that "every member" of the Enterprise "be involved in each" of the predicate acts, or that "the predicate acts be interrelated in any way—ongoing that there was ongoing conduct. *Id.* ("That several employees engaged in the activity at different times does not defeat the continuity requirement.")

Here, Plaintiffs allege a series of predicate acts that took place over at least *seven* years— from August 2012 to September 2019—more than three times as long as the Court of Appeals found "far more than adequate." *Id.* (*See, e.g.,* Compl. ¶¶ 316–17.) And Plaintiffs allege, at a minimum, three main players—Rick Hubbard, Eller, and Crow—who were involved at all stages of the Enterprise, in an organized fashion. (*See, e.g.,* Compl. ¶¶ 3–13, 29–30.)

Plaintiffs have adequately pleaded an association-in-fact RICO Enterprise.

C.   **Plaintiffs Have Pleaded a Pattern of Racketeering**

Plaintiffs have adequately pleaded a pattern of racketeering, under both closed- and open-ended continuity. A pattern of racketeering requires that the pleaded predicate acts (i) be related and (ii) either demonstrate on their own or pose a risk of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 237 (1989). The second prong, risk of continued criminal activity, can be satisfied by pleading either "closed-ended continuity" (that a series of events occurred over a substantial period of time) or "open-ended continuity" (that the series of past events, by their nature, risk repetition." *Id.* at 237, 241-42. Against an individual defendant, a RICO plaintiff must plead at least two predicate acts. *Id.* at 236–37. Plaintiffs have pleaded numerous related predicate acts (at least two of which accrue to Crow) which demonstrate both closed- and opened-ended continuity. These include lengthy allegations describing the TVPA violations, which occurred in part at "dozens" of parties hosted by Crow. (Compl. ¶ 34; *see id.* ¶¶ 5, 8, 9, 13, 15, 17, 18, 21, 26–

28, 35, 38, 40, 43, 45–50, 120–126, 132, 134, 136, 139, 141–143, 146, 147, 150, 152, 155–158, 183–185, 187–190, 192–194, 197–199, 201–203, 205–207, 2019–212, 214–217, 220–223, 225, 228, 232–237, 245–247, 249, 251, 254, 258, 264, 267–269, 281–285, 287, 288, 290, 292, 294.) Crow offers no rebuttal here except that TVPA claims do not lie against Crow, which for the reasons set forth above is wrong. (*Supra* at II.) *Gabriel v. Outlaw*, where the plaintiff pleaded "invocation[s] of [] crimes" does not help Crow, where here Plaintiffs pleaded specific acts in detail leading to such crimes. *See* No. 3:20-CV-60-E-BK, 2021 WL 1030157, at *2 (N.D. Tex. Mar. 1, 2021). Plaintiffs have alleged a pattern of racketeering activities.

### D.   Plaintiffs Have Pleaded That Crow Participated in The Affairs of The Enterprise

Plaintiffs have pleaded that Crow participated in the affairs of the Enterprise. To show participation in a RICO enterprise, a Plaintiff must show that a defendant had a role in directing the affairs of the Enterprise *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 983 (N.D. Cal. 2018). In this context, "'directing' has a different meaning than is commonly understood" in daily usage and does not require even "significant control" over the Enterprise. *Kelmar v. Bank of Am. Corp.*, No. CV 12-6826 PSG (EX), 2012 WL 12850425, at *7 (C.D. Cal. Oct. 26, 2012).

Instead, this requirement is satisfied so long as the defendant had a sufficiently important role, considering their position in the "chain of command" of the Enterprise and whether their actions were "vital" to the Enterprise's success. *Id.*

Plaintiffs have pleaded that Crow had a central role in the Enterprise, where his direction was obeyed, and he was vital to its success. (Compl. ¶ 30 ("[t]he *key* financial supporter of the enterprise was Defendant Trammel S. Crow, Jr.") (emphasis added)). Plaintiffs pleaded that Crow was involved at the start of the Enterprise and was essential to the Enterprise's success almost as much as Rick Hubbard. (Compl. ¶¶ 31–32.) Crow was the primary host of the Forced Sex Parties,

but numerous other members who provided not only financial support to the Enterprise were Crow's friends. (*See* Compl. ¶¶ 37–40.) Simply put, whatever Rick Hubbard's schemes and intentions were, without the essential, timely financial and then social support of his friend Crow, the primary host, the Venture would have likely gone nowhere. Crow unquestionably participated in the affairs of the Enterprise for RICO pleading purposes.

Crow's authorities that purport to hold otherwise are inapposite. They instead concern situations where a specific defendant had a marginal role in the Enterprise—far from what is alleged as to Crow. *See Walter v. Drayson*, 538 F.3d 1244, 1248-49 (9th Cir. 2008) (defendant was not "vital" to the enterprise); *Gomez v. Guthy-Renker, LLC*, No. EDCV 14–01425, 2015 WL 4270042, at *5 (C.D. Cal. July 13, 2015) (defendant "merely a consumer" of RICO enterprise's services); *In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 237 (S.D.N.Y. 2001) (same); *Gutierrez v. Venegas*, No. 6:20-CV-129-H, 2021 WL 9314946, at *5 (N.D. Tex. Sept. 8, 2021) (rejecting defendant's alleged role in enterprise where no substantial particularized allegations against defendant); *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015) (recognizing even "lower rung participants" (which Crow was not) engaged in "operation" of enterprise).

Crow's attempts to dodge the allegations of his key role by arguing that applicable law requires that he was involved in a "management" role are simply wrong, and his insistence that his role was not as Plaintiffs describe is not relevant on a motion to dismiss. If Crow believes that Plaintiffs' pleaded facts are wrong, he will have his opportunity in discovery to adduce such facts. But at this stage, Plaintiffs' well-pleaded allegations control.

**E.   Hubbard's RICO Injury Does Not Lie Outside the Statute of Limitations Because Hubbard Pleaded Financial Harm That She Suffered from The Enterprise into November 2019**

Plaintiffs adequately plead that Plaintiff Hubbard's RICO injuries fall within the relevant four-year statute of limitations, running from the last RICO injury. RICO injuries include not only

harm directly or intentionally caused by the Enterprise—the standard is "generous enough to include the unintended, though foreseeable, consequences of RICO predicate acts." *Diaz*, 420 F.3d at 901 (finding loss of employment caused by false imprisonment by RICO enterprise a valid RICO harm).

Here, Plaintiff Hubbard pleads that in late October or November 2018, she was falsely imprisoned by the Enterprise—to the extent that Defendant Michael Hynes, an agent of the Enterprise, tied Hubbard to a bed and kept her restrained for three days, releasing her only to use the restroom," and had previously at Rick Hubbard's direction, confiscated Hubbard's "driver's license," "phone," and "credit cards." (Compl. ¶ 270, 277.) This prevented Hubbard from being able to hold employment, which constitutes a RICO injury. If the Court finds this insufficient, Plaintiff Hubbard can allege additional facts that Defendant Hynes and the Enterprise did not return her driver's license until December 2018, until which time Plaintiff Hubbard was unable to work due to lack of identification documents. These acts into December 2018—within four years of the complaint's filing of November 2018—lies within RICO's four-year statute of limitations, and Plaintiff Hubbard's RICO claim is timely.

## F.   Plaintiffs Have Alleged a RICO Conspiracy

Plaintiffs have also alleged a RICO conspiracy. A claim for a RICO conspiracy exists under 18 U.S.C. § 1962(d) where a defendant "conspire[s] to violate" the substantive RICO provision of 18 U.S.C. § 1962(a). *See* 18 U.S.C. § 1962(d); *Bias v. Wells Fargo & Co.,* 942 F. Supp. 2d 915, 942 (N.D. Cal. 2013). For the reasons discussed above (*supra* at IV.A-E), Plaintiffs have established a valid substantive RICO claim. (*Supra* at IV.A-E.) Crow challenges Plaintiff's RICO conspiracy claim only on the ground that Crow lacked knowledge of the Enterprise's activities, including that Plaintiffs failed to show that Crow "was aware that Mr. [Rick] Hubbard was engaged in a sex trafficking enterprise to enrich himself and develop business connections" or that "anyone

other than Mr. [Rick] Hubbard and Eller were aware of the nature of the alleged enterprise. (Mot. at 25.) But this is again *Crow's* version of the facts, rather than what Plaintiffs allege. As discussed at length above, Plaintiffs properly allege that Crow at all relevant times had full knowledge of the activities of the Enterprise and Venture. (*Supra* at II.A–B.) Plaintiffs have pleaded a proper substantive RICO claim and a RICO conspiracy claim.

## V.  PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE GRANTED

While the Motion should be denied if the Court believes that further or more detailed allegations would cure any concerns, Plaintiffs respectfully request leave to amend. Plaintiffs' complaint is identical all substantive regards to the one which Plaintiffs first filed in the Central District of California such that leave should be freely granted. Contrary to Crow's arguments, Plaintiffs do not admit lack of standing regarding the RICO claim or that Crow is not liable for the other claims. If necessary, the Court should permit an amendment.

## <u>CONCLUSION</u>

Crow was a central—indeed an essential—member of the trafficking Venture and Enterprise, who at all relevant times knew of the Venture's activities and, at a minimum, provided it financial support without which the Venture would not have existed and thrived in exchange for sex acts for his own direct benefit, as well as his indirect significant benefit in the increase in social cachet by providing sexual services to his party guests. Crow's attempts to reframe this case as a "series of domestic disputes" is simply not consistent with Plaintiffs' detailed allegations of the Venture, especially as they concern Crow himself. Crow will have his chance in discovery to adduce his preferred version of facts, but at the pleading stage, he is limited to Plaintiffs' well-pleaded allegations.

For these reasons, and all those other foregoing reasons, the Court should respectfully deny Crow's motion to dismiss, or at a minimum grant Plaintiffs' leave to amend to address any

deficiencies that the Court finds.

Dated: New York, New York
      June 16, 2023

By: _____

Matthew W. Schmidt*
John G. Balestriere*
BALESTRIERE FARIELLO
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5401
Facsimile: (212) 208-2613
john.balestriere@balestrierefariello.com
matthew.schmidt@balestrierefariello.com
*Admitted Pro Hac Vice

CERTIFICATION OF SERVICE

I hereby certify by my signature below that a true and correct copy of the foregoing document was served on all attorneys of record on this 16th day of June, 2023.

Dated: New York, New York
         June 16, 2023

                              BALESTRIERE FARIELLO

                              By: _____ _____
                              Matthew W. Schmidt
                              Attorney for Plaintiffs