UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

John G. Balestriere*
Matthew W. Schmidt*
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5401
Facsimile: (212) 208-2613
john.balestriere@balestrierefariello.com
Attorneys for Plaintiffs
*Admitted pro hac vice

| | |
|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, <br>     Plaintiffs, <br> v. <br> TRAMMELL S. CROW, JR., DR. BENJAMIN TODD ELLER, RICHARD HUBBARD, DR. MELISSA MILLER, DR. JOSEPH BOLIN, DR. SCOTT WOODS, DR. MRUGESHKUMAR SHAH, MICHAEL CAIN, COE JURACEK, PHILIP ECOB, H.J.COLE, TEXAS RANGER CODY MITCHELL, KURT KNEWITZ, PAUL PENDERGRASS, RALPH ROGERS, ROBERT PRUIT, SCOTT BRUNSON, CASE GROVER, RICHARD BUTLER, MARC MOLINA, MICHAEL HYNES, JR., SHAWN MAYER, JADE MAYER, RCI HOSPITALITY HOLDINGS, INC., INTEGRITY BASED MARKETING, LLC, STORM FITNESS NUTRITION, LLC, ULTRA COMBAT NUTRITION, LLC, ECOLIFT HOMES LLC, ELEVATED WELLNESS PARTNERS LLC, DOE INDIVIDUALS 1–20, and DOE COMPANIES 21–30 <br>     Defendants. | Case No. 5:23-cv-00580-FB <br><br> Judge: Hon. Fred Biery <br> Date Action Filed: May 8, 2023 (transferred) |

**PLAINTIFFS' OPPOSITION TO RCI HOSPITALITY HOLDINGS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………………… ii–iii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..................................................................................................2

LEGAL STANDARD..........................................................................................................3

ARGUMENT......................................................................................................................4

    I.    PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 8 NOTICE PLEADING BECAUSE THEY PLEADED DETAILED FACTS SHOWING RCI AGENT GROVER'S ROLE IN THE VENTURE AND ENTERPRISE THROUGH WHICH BOTH PLAINTIFFS WERE HARMED ........................................................................4

        A.    Plaintiffs Have Pleaded Beneficiary Liability as to RCI Consistent with Rule 8....5

        B.    The Wrongful Acts of RCI's Agents Was Within Their Scope of Employment With RCI, Making RCI Liable for Their Misconduct .......................................................7

        C.    Plaintiffs Have Pleaded Labor Trafficking Liability as to RCI Consistent with Rule 8 .................................................................................................................................7

    II.    PLAINTIFFS HAVE PROPERLY ALLEGED THAT RCI IS LIABLE FOR BOTH A SUBSTANTIVE RICO CLAIM AND A RICO CONSPIRACY CLAIM......................8

        A.    Plaintiff Hubbard Has Pleaded a Timely RICO Claim............................................8

        B.    Plaintiff Hubbard Has Pleaded that RCI is Liable Under Substantive and Conspiracy RICO Claims .........................................................................................9

CONCLUSION..................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Baker v. IBP, Inc.*,
  357 F.3d 685 (7th Cir. 2004) ............................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................... 3, 4

*Boudeloche v. Grow Chem. Coatings Corp.*,
  728 F.2d 759 (5th Cir. 1984) ............................................................................................... 3

*Diaz v. Gates*,
  420 F.3d 897 (9th Cir. 2005) ............................................................................................... 8

*Do v. Pilgrim's Pride Corp.*,
  512 F. Supp. 2d 764 (E.D. Tex. 2007) ................................................................................ 9

*Doe v. Mindgeek USA Inc.*,
  558 F. Supp. 3d 828 (C.D. Cal. 2021) ................................................................................ 5

*Griffin v. HSBC Mortgage Services, Inc.*,
  2015 WL 4041657 (N.D. Miss. July 1, 2015) ..................................................................... 5

*Kariem v. United Parcel Services, Inc.*,
  No. 3:05-CV-2079-P, 2006 WL 8437577 (N.D. Tex. Sept. 18, 2006) ................................ 9

*Labaty v. UWT, Inc.*,
  121 F. Supp. 3d 721 (W.D. Tex. 2015) ............................................................................... 9

*Lesnik v. Eisenmann SE*,
  374 F. Supp. 3d 923 (N.D. Cal. 2019) ................................................................................ 7

*Liu v. Republic of China*,
  892 F.2d 1419 (9th Cir. 1989) ......................................................................................... 6, 7

*Manax v. McNamara*,
  842 F.2d 808 (5th Cir. 1988) ............................................................................................... 9

*Martinez-Rodriguez v. Giles*,
  31 F.4th 1139 (9th Cir. 2022) .............................................................................................. 7

*Molina-Aranda v. Black Magic Enterprises, L.L.C.*,
  983 F.3d 779 (5th Cir. 2020) ............................................................................................... 3

*Noble Cap. Texas Real Est. Income Fund LP v. Newman*,
  No. 1-22-CV-652-LY, 2023 WL 3035411 (W.D. Tex. Jan. 13, 2023) ................................ 6

*Occidental Oil & Gas Corp.*,
    235 F. Supp. 3d at 1175 .................................................................................................. 9

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ........................................................................................................ 9

*Ruelas v. Cnty. of Alameda*,
    519 F. Supp. 3d 636 (N.D. Cal. 2021) ........................................................................... 7

*Saleh v. Bush*,
    848 F.3d 880 (9th Cir. 2017) ...................................................................................... 6, 7

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ....................................................................................................... 3

*United States v. Bazar*,
    747 Fed. Appx. 454 (9th Cir. 2018) ............................................................................... 5

*United States v. Lakeway Regional Medical Center, LLC*,
    No. A-19-CV-00945-JRN, 2020 WL 6146571 (W.D. Tex. Feb. 13, 2020) ................. 5

*United States v. Todd*,
    627 F.3d 329 (9th Cir. 2010) .......................................................................................... 4

*Williams v. WMX Techs.*, Inc.,
    112 F.3d 175 (5th Cir. 1997) .......................................................................................... 3

**Statutes**

18 U.S.C. § 1589 ..................................................................................................................... 7

18 U.S.C. § 1591 ................................................................................................................. 4, 5

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................. Passim

**Other Authorities**

Restatement (Second) of Agency § 228 ................................................................................. 6

**PRELIMINARY STATEMENT**[1]

Defendant RCI Hospitality Holdings, Inc. ("RCI"), with its co-conspirators, participated in a sex trafficking scheme (the "Venture") that unlawfully trafficked Plaintiffs Julia Hubbard ("Hubbard") and Kayla Goedinghaus ("Goedinghaus"), subjecting them to hundreds of forced commercial sex acts, as well as the beatings, threats, and forced use of medications needed to compel Hubbard and Goedinghaus to engage in such acts.

RCI, owner of Silver City Cabaret (the "Cabaret"), where Plaintiff Hubbard worked as a waitress, assisted the Venture through its employees and Cabaret managers, Defendants Case Grover ("Grover"), Mark Molina ("Molina"), and Richard Butler ("Butler"). Through Defendants Grover, Molina, and Butler (acting within the scope of their employment) RCI knowingly assisted and received benefits from the Venture, including in the form of seizing a portion of Plaintiff Hubbard's legal earnings by use of physical abuse and threats including while in contact with Defendant Richard Hubbard ("Rick Hubbard"), a central figure of the Venture. Given at least Grover's regular contact with Rick Hubbard, RCI was on notice of the central role in the Venture of Defendant Dr. Benjamin Todd Eller ("Eller"), whose psychological "advice" to Plaintiffs allowed the Venture's control over them.

Plaintiffs adequately plead substantive allegations against RCI as required by Federal Rule of Civil Procedure ("Rule") 8. Both Plaintiffs plead how RCI, through its agents, either harmed them directly (in the case of Plaintiff Hubbard) or supported and benefitted from the Venture which harmed them (in the case of both Plaintiffs), which give rise to both sex trafficking and labor trafficking claims under the Trafficking Victims Protection Act ("TVPA"). And the actions of all Defendants were within the scope of their employment, as they primarily involved forcing Plaintiff

---

[1] All capitalized terms are defined in the Complaint, Dkt. No. 1 (the "Complaint" or "Compl."). Some terms are redefined herein for the Court's convenience.

1

Hubbard *to work* at the Cabaret, owned by RCI. Besides broad, general statements from the Restatement (Third) of Agency, Plaintiffs present no authority whatsoever in support of their theory that this lies outside the scope of employment.

Both Plaintiffs have also both adequately pleaded RICO claims against RCI. Plaintiff Hubbard pleaded financial harm suffered from the Enterprise into November 2019 (meaning that all Plaintiffs' claims are timely) and that RCI's wrongful acts towards Plaintiffs, through its agents, benefited the Enterprise. These allegations also give rise to a RICO conspiracy claim, both because Plaintiffs plead a substantive RICO claim and because RCI's key employee Grover was aware of the nature of the Enterprise, including through his contact with Rick Hubbard.

The Court can and should find Defendant RCI liable for trafficking activities of the Venture and the racketeering activities of the Enterprise and deny its motion to dismiss.

## STATEMENT OF FACTS

Plaintiff Hubbard married Defendant Rick Hubbard in February 2010. (Compl. ¶¶ 96–97.) Following an arrest later that year for financial fraud, Rick Hubbard became desperate for new financial opportunities. (Compl. ¶¶ 104–106.) Rick Hubbard then, along with Defendant Eller, and later, with key financing from Defendant Crow and his colleagues, formulated the Venture, which began to force Plaintiff Hubbard to perform sex acts for money. (Compl. ¶¶ 121–123.) The Venture forced Plaintiff Hubbard, through means that included Eller using his psychological practice, to claim that Hubbard had serious psychological issues and needed to be on high doses of drugs such as Xanax, Adderall, Oxycodone, Marinol, Soma, Lorazepam, Ambien, and Trazadone. (Compl. ¶¶ 123–24.) Certain of these drugs, when combined, are known as the "Holy Trinity" due to their potent effects when taken together. (Compl. ¶ 150.) This medication scheme made Plaintiff Hubbard, and, later, Plaintiff Goedinghaus—and likely others—pliable, and susceptible to other

2

forms of threats and force. (Compl. ¶ 24.) Eller's contributions to the Venture also involved swearing false affidavits claiming that both Plaintiffs were seriously psychiatrically troubled persons under his care. (Compl. ¶¶ 8–12.)

Plaintiff Hubbard first began working at the Cabaret, owned by RCI, in summer 2017. (Compl. ¶ 249.) While working at the Cabaret as a waitress, Plaintiff Hubbard encountered Cabaret manager Defendant Grover; Cabaret waitress manager Defendant Molina; and Cabaret owner Defendant Butler. (Compl. ¶¶ 249, 254.) As Plaintiff Hubbard later learned, Grover was in regular contact with Rick Hubbard, and—with the knowledge and involvement of Molina and Butler—forced Hubbard to work without pay, while Grover withheld Hubbard's wages for the benefit of the Venture, RCI, and Grover himself. (*See* Compl. ¶¶ 247–255.) In order to compel Hubbard to continue working for him despite the confiscation of her wages, RCI's Grover would use physical abuse and threats towards Hubbard. (Compl. ¶ 251.) This abuse included going to Hubbard's home and firing guns, including an AK-47; beating Hubbard so badly that she suffered multiple rib fractures; and intentionally crashing Hubbard's car so that she would depend on Grover for transportation. (Compl. ¶¶ 250–253.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 8 requires that pleadings contain "a short and plain statement of the claim" that gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *Boudeloche v. Grow Chem. Coatings Corp.*, 728 F.2d 759, 762 (5th Cir. 1984). "Allegations of fraud. . . must meet Rule 9(b)'s heightened pleading standard, under which plaintiffs 'must state with particularity the circumstances' of the allegedly fraudulent conduct." *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020); *see also Williams v. WMX Techs.*, Inc., 112 F.3d 175, 177 (5th Cir. 1997).

On a Rule 12(b)(6) motion, a court may dismiss a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) In other words, a court may not dismiss a complaint in which Plaintiffs have alleged enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

**I.   PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 8 NOTICE PLEADING BECAUSE THEY PLEADED DETAILED FACTS SHOWING RCI AGENT GROVER'S ROLE IN THE VENTURE AND ENTERPRISE THROUGH WHICH BOTH PLAINTIFFS WERE HARMED**

Plaintiffs have adequately pleaded all aspects necessary under Rule 8. Under Rule 8, a plaintiff must plead a "short and plain statement" of each claim in a "concise and direct manner," that gives rise to a "plausible" inference of relief. Fed. R. Civ. P. 8(a)(2), (d); *Twombly*, 550 U.S. at 570. Rather than pleading "everyone did everything" allegations, Plaintiffs have made specific allegations regarding each Defendant, including RCI and its agents. (*See* Compl. ¶¶ 42–47.) These included:

- RCI agent Grover forced Plaintiff Hubbard to work at Silver City Cabaret, confiscating a portion of her wages for his personal benefit and others for the benefit of the Venture and Enterprise (*See* Compl. ¶¶ 44–45);
- RCI agent Grover used physical abuse and threats towards Hubbard, including threatening Hubbard with an AK-47 (*See* Compl. ¶ 46);
- RCI agent Grover was in "regular contact" with Rick Hubbard, exchanged information, and threatened to "give [her] back" to Rick Hubbard (*See* Compl. ¶ 47).

These—and Plaintiffs' other—allegations not only meet the requirements of Rule 8 generally, but they also specifically plead TVPA beneficiary liability and labor trafficking liability against RCI.

### A. Plaintiffs Have Pleaded Beneficiary Liability as to RCI Consistent with Rule 8

Plaintiffs' pleaded facts give rise to beneficiary liability as to both Plaintiffs. A defendant violates the TVPA's beneficiary liability prong when it benefits "financially or by receiving anything of value" from participation in a venture that recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits a person—knowing, or in reckless disregard of the fact that, means of force, threats of force, fraud, or coercion will cause the person to engage in a "commercial sex act." 18 U.S.C. § 1591(a); *see United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) (recognizing that knowledge requirement "does not require knowledge in the sense of certainty as to a future act," but rather "awareness" that it is likely to occur). A "commercial sex act" is defined in the statute as "*any* sex act, on account of which *anything* of value is given or received by any person." 18 U.S.C. § 1591(e)(3) (emphasis added); *United States v. Bazar*, 747 Fed. Appx. 454, 456 (9th Cir. 2018) (recognizing that "commercial sex act" is not "limited to sexual intercourse for money"). As RCI's own authority holds, while Plaintiffs must plead a "continuous business relationship" or "tacit agreement" between a beneficiary-defendant and the TVPA perpetrator, that test is flexible enough that it, for example, covers a hotel that ignored a "number of signs" that sex trafficking was taking place on its grounds, or even a high-volume social media platform that "failed to remove the child pornography" from its platform. *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 838 (C.D. Cal. 2021) (finding TVPA beneficiary liability).

RCI, through its agents, both supported and benefitted from the Venture. Grover supported the Venture by providing information to Rick Hubbard about Plaintiff Hubbard's whereabouts, and the Venture harmed Goedinghaus. (*See* Compl. ¶¶ 47, 280–302.) The very fact that Rick Hubbard sought out this information from RCI's Grover is enough to show benefit to the Venture. But beyond that, Rick Hubbard used the information in order to track down Plaintiff Hubbard and seek

5

to bring her back under the Venture's control. (*See* Compl. ¶ 256.) In return, RCI received information from Rick Hubbard concerning Plaintiff Hubbard (*See* Compl. ¶ 47), which RCI valued as it allowed it, through its agents, to further labor traffic Hubbard. This is enough to give rise to TVPA beneficiary liability against Grover by both Plaintiffs. Plaintiffs allege more than a tacit agreement, but an actual quid pro quo relationship between RCI and the Venture.

RCI's authority against so-called "shotgun pleading" is not only inapposite, but they also show how the specific allegations that Plaintiffs allege are not shotgun pleading even by RCI's own authority and definitions. In *Griffin v. HSBC Mortgage Services, Inc.*, the complaint failed to distinguish between defendants, particularly failing to distinguish what corporate entities had performed certain acts. No. 4:14-CV-00132-DMB, 2015 WL 4041657, at *5 (N.D. Miss. July 1, 2015). Here, in contrast, Plaintiffs plead specific behavior by RCI and each of its specific agents. (See Compl. ¶¶ 44–47.) Similarly, in *United States v. Lakeway Regional Medical Center, LLC*— inapposite as well for the reason that it applied the more stringent Rule 9, not Rule 8—the government without explanation attributed "discrete actions, such as the sending of a letter" to multiple defendants without explanation. No. A-19-CV-00945-JRN, 2020 WL 6146571, at *2 (W.D. Tex. Feb. 13, 2020); *see also Noble Cap. Texas Real Est. Income Fund LP v. Newman*, No. 1-22-CV-652-LY, 2023 WL 3035411, at *3-4 (W.D. Tex. Jan. 13, 2023) (allowing plaintiffs second chance to amend despite lack of specific allegations against individual defendants, rather grouping defendants into "two camps").

RCI provides no authority whatsoever for the assertion that specific knowledge of Plaintiff Goedinghaus is necessary for Goedinghaus to have standing to assert TVPA beneficiary liability. RCI, through its agents, engaged in misconduct that a reasonable person would foresee to harm women in Goedinghaus's position, so engaged in that misconduct at its peril. RCI had knowledge

of the Venture, and, accordingly, knew or should have known that there were other victims of the Venture that Grover was assisting for his benefit.

### B. The Wrongful Acts of RCI's Agents Was Within Their Scope of Employment With RCI, Making RCI Liable for Their Misconduct

The wrongful acts of RCI's agents were within the scope of their employment with RCI. A person acts within the scope of their employment where the act at issue is (i) "of the kind he is employed to perform," (ii) occurs "substantially within the authorized time and space limits," and (iii) "is actuated, at least in part, by a purpose to serve the master." *Saleh v. Bush*, 848 F.3d 880, 890 (9th Cir. 2017) (finding senior elected official within scope of employment by starting unlawful war); *Liu v. Republic of China,* 892 F.2d 1419, 1429 (9th Cir. 1989) (finding employee's use of his authority and company facilities to prepare for an assassination for the benefit of his employer, was within scope of employment); *see* Restatement (Second) of Agency § 228.

RCI's argument that it was not within Grover's job to "forc[e] people to work against their will" (Mot. at 11) seeks to apply a narrower standard than that set forth in the Restatement, which RCI concedes applies (Mot. at 12). Grover's role as a manager at the Cabaret would have been to cause people to work, and RCI cannot reasonably dispute that it benefitted from Hubbard, its employee, working at its club. (*See* Compl. ¶ 249.) The mere fact that RCI's conduct was illegal does not make it outside the scope of their employment. *See Saleh*, 848 F.3d at 890; *Liu,* 892 F.2d at 1430. The wrongful acts of Grover (and Molina and Butler) were within the scope of their employment with RCI and RCI is liable for those acts.

### C. Plaintiffs Have Pleaded Labor Trafficking Liability as to RCI Consistent with Rule 8

Plaintiffs' pleaded facts also go to a labor trafficking claim against RCI. Labor trafficking under 18 U.S.C. § 1589 exists where a defendant either knowingly provides or obtains the labor or services of a plaintiff (the perpetrator prong) either (1) through means of force or threats of

7

force, (2) by means of serious harm or threats of physical harm, (3) by means of abuse or threatened abuse of legal process, or (4) by means of any scheme intended to cause the plaintiff to believe that if they "did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a); *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1150 (9th Cir. 2022) (plaintiffs had successful forced labor claim where they pleaded that the defendants had obtained plaintiffs' labor through means of pressure created by abuse of law). Liability also attaches where a defendant "knowingly benefits" (the beneficiary prong) either "financially or by receiving anything of value," from participation in a venture that engaged in the providing or obtaining of labor or services by any of the above four grounds. 18 U.S.C. § 1589(b); *see Lesnik v. Eisenmann SE,* 374 F. Supp. 3d 923, 953 (N.D. Cal. 2019); *Ruelas v. Cnty. of Alameda,* 519 F. Supp. 3d 636, 650 (N.D. Cal. 2021).

Plaintiff Hubbard pleaded specific acts that RCI committed that subjects RCI to both perpetrator and beneficiary liability. Hubbard pleads outright that RCI, through its agents, used "physical abuse and threats," including causing Hubbard multiple broken ribs, and by such force and threats, "caus[ed] Hubbard" to perform work at the Silver City Cabaret, from which RCI, as its corporate owner profited. (*See* Compl. ¶¶ 45–47, 251.) Plaintiffs have pleaded sufficient facts under Rule 8 for TVPA beneficiary and labor trafficking liability against Grover.

## II. PLAINTIFFS HAVE PROPERLY ALLEGED THAT RCI IS LIABLE FOR BOTH A SUBSTANTIVE RICO CLAIM AND A RICO CONSPIRACY CLAIM

### A. Plaintiff Hubbard Has Pleaded a Timely RICO Claim

Plaintiffs adequately plead that Plaintiff Hubbard's RICO injuries fall within the relevant four-year statute of limitations, running from the last RICO injury. RICO injuries include not only harm directly or intentionally caused by the Enterprise—the standard is "generous enough to include the unintended, though foreseeable, consequences of RICO predicate acts." *Diaz v. Gates,*

420 F.3d 897, 901 (9th Cir. 2005) (finding loss of employment caused by false imprisonment by RICO enterprise a valid RICO harm).

Plaintiff Hubbard pleads that in late October or November 2018, she was falsely imprisoned by the Enterprise—to the extent that Defendant Michael Hynes ("Hynes"), an agent of the Enterprise, tied Hubbard to a bed and kept her restrained for three days, releasing her only to use the restroom," and had previously at Rick Hubbard's direction, confiscated Hubbard's "driver's license," "phone," and "credit cards." (Compl. ¶¶ 270, 277.) This prevented Hubbard from being able to hold employment, which constitutes a RICO injury. If the Court finds this insufficient, Plaintiff Hubbard can allege additional facts that Defendant Hynes and the Enterprise did not return her driver's license until December 2018, until which time Plaintiff Hubbard was unable to work due to lack of identification documents. These acts into December 2018—within four years of the complaint's filing of November 2018—lie within RICO's four-year statute of limitations, and Plaintiff Hubbard's RICO claim is timely.

### B. Plaintiff Hubbard Has Pleaded that RCI is Liable Under Substantive and Conspiracy RICO Claims

Plaintiffs also adequately plead the elements of a RICO claim towards RCI. Specifically, Plaintiffs pleaded that RCI was involved in the sex trafficking RICO Enterprise. RCI, through the "regular contact" between its agent Grover and Rick Hubbard through its agent Grover, assisted the Enterprise by providing information to Rick Hubbard (and the Enterprise) and seizing Plaintiff Hubbard's wages for the Enterprise's benefit. (*See* Compl. ¶¶ 45–47.) While RCI may have personally benefitted as well, that is not a bar to RICO liability, and RCI provides no authority for the proposition that it is—on the contrary, nearly any member in any illegal enterprise receives a personal benefit, or else they would not take the risk of engaging in such activity.

RCI's authorities are not to the contrary. *Labaty v. UWT, Inc.* and several of RCI's other

authorities concerned an alleged conspiracy where the alleged RICO enterprise members had "greatly-differ[ing] interests," if not ones in outright conflict. 121 F. Supp. 3d 721, 753 (W.D. Tex. 2015); *Occidental Oil & Gas Corp.*, 235 F. Supp. 3d at 1175 (finding no common purpose pleaded); *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988) (association had only "one short-term goal"); *Do v. Pilgrim's Pride Corp.*, 512 F. Supp. 2d 764, 769 (E.D. Tex. 2007) (finding no continuity on summary judgment where, among other failings, enterprise members had "interests" that "ultimately collided"); *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004) (rejecting common purpose between company and recruiters where company sought to lower payments that recruiters sought to increase). But Plaintiffs do plead a common purpose: "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Mr. [Rick] Hubbard, Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants." (Compl. ¶ 341.) As with a personal benefit, members of any conspiracy (criminal or otherwise) will have separate roles and motivations for engaging in the wrongful conduct at issue. But here, the individual behavior of all members of the RICO Enterprise—including RCI—were to the common end of trafficking Plaintiffs.

Nor is *Reves v. Ernst & Young* relevant, which holds in relevant part that "outsiders" to an Enterprise are not liable unless they "participate" in the operation or management of the enterprise. 507 U.S. 170, 185 (1993). Plaintiffs plead that RCI, through its agents, had exactly such a defined position in the Enterprise: in fact, they plead that Grover, RCI's agent, was even in regular communication with and received directions from central Enterprise figure Rick Hubbard. (*See* Compl. ¶ 45.)

*Kariem v. United Parcel Services, Inc.*, is likewise inapposite because there was no allegation of an "ongoing organization." No. 3:05-CV-2079-P, 2006 WL 8437577, at *3 (N.D. Tex.

10

Sept. 18, 2006). That is not the case here: Plaintiffs pleaded numerous predicate acts that took place over seven years. (Compl. ¶¶ 3–13, 29–30, 316–17.) Plaintiffs have adequately alleged RICO liability towards RCI.

## CONCLUSION

RCI, through its agents, Defendants Grover, Molina, and Butler, knowingly participated in and benefitted from a sex trafficking scheme, wherein Plaintiffs were threatened with force and coerced into performing commercial sex acts.

Plaintiffs also pleaded that RCI participated in the Venture and had a defined role through the regular contact of its agent Grover with Rick Hubbard. Plaintiffs also pleaded that RCI participated in the RICO Enterprise, which harmed both Plaintiffs within the relevant limitations period and for the benefit of the Enterprise. RCI and its agents also had defined roles in the Enterprise, including through its agent Grover exchanging information with the Enterprise and receiving directions that he followed. RCI also is liable for RICO conspiracy because it was, through these acts, aware of the sex trafficking nature of the Enterprise.

For these reasons, and all those other foregoing reasons, the Court should respectfully deny RCI's motion to dismiss.

Dated: New York, New York
      June 21, 2023

By: _____
    Matthew W. Schmidt*
    John G. Balestriere*

11

**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5401
Facsimile: (212) 208-2613
john.balestriere@balestrierefariello.com
matthew.schmidt@balestrierefariello.com
*Admitted Pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing "Plaintiffs' Opposition to Defendant RCI Hospitality Holdings' Motion to Dismiss the Complaint" was served on the following counsel of record via ECF on June 21, 2023.

Dated: New York, New York
    June 21, 2023

BALESTRIERE FARIELLO

By: _____
Matthew W. Schmidt
Attorney for Plaintiffs
