UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, | § § § | |
| Plaintiffs, | § § | Case No. 5:23-cv-00580-FB |
| v. | § § | |
| TRAMMELL S. CROW, JR., DR. BENJAMIN TODD ELLER, RICHARD HUBBARD, DR. MELISSA MILLER, DR. JOSEPH BOLIN, DR. SCOTT WOODS, DR. MRUGESHKUMAR SHAH, MICHAEL CAIN, COE JURACEK, PHILIP ECOB, H.J. COLE, TEXAS RANGER CODY MITCHELL, KURT KNEWITZ, PAUL PENDERGRASS, RALPH ROGERS, ROBERT PRUITT, SCOTT BRUNSON, CASE GROVER, RICHARD BUTLER, MARK MOLINA, MICHAEL HYNES, JR., SHAWN MAYER, JADE MAYER, RCI HOSPITALITY HOLDINGS, INC., INTEGRITY BASED MARKETING, LLC, STORM FITNESS NUTRITION, LLC, ULTRA COMBAT NUTRITION, LLC, ECOLOFT HOMES LLC, ELEVATED WELLNESS PARTNERS LLC, DOE INDIVIDUALS 1–20, and DOE COMPANIES 21–30 | § § § § § § § § § § § § § § § § § § § § § § | Judge: Hon. Fred Biery<br>Date Action Filed: May 8, 2023 (transferred) |
| Defendants. | § § | |

## **DEFENDANT DR. MELISSA MILLER'S REPLY IN SUPPORT OF HER RULE 12(b)(6) MOTION TO DISMISS**

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE FRED BIERY:**

COMES NOW, Defendant Dr. Melissa Miller (**"Dr. Miller"**) and files this Reply in support of her 12(b)(6) Motion to Dismiss (Dkt. No. 156).

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

I. ARGUMENTS AND AUTHORITIES ...................................................................................... 1

    A.   Plaintiffs' Contention – that the TMLA does not Preempt Federal TVPA and RICO Claims ............................................................................................................................. 1

        1.   Plaintiffs bear the burden of persuasion on the issue of preemption. ............................ 1

        2.   Congress has not explicitly stated any intent that RICO or the TVPA preempt state statutes. ........................................................................................................................ 2

        3.   Several Texas federal court cases have held that the TMLA is not preempted by federal statutes. .......................................................................................................................... 2

        4.   Plaintiffs have failed to state a claim upon which relief can be granted, and their claims against Dr. Miller are health care liability claims under the TMLA that cannot be recast as claims under the TVPA or RICO. .................................................................. 5

    B.   Plaintiffs' Contention – That They Met the Requirements of Rule 8 Notice Pleading Because They Pleaded Detailed Facts Showing Dr. Miller's Role in the Venture ..................... 5

        1.   The Complaint Fails to Meet Applicable Pleading Standards. ....................................... 5

            a.   The Allegations Do Not Cross the Line from Possible to Probable. ........................ 5

            b.   Counts One and Two – Plaintiffs' Allegations that Dr. Miller Violated the TVPA by Participating in Sex Trafficking and Labor Trafficking. ............................... 6

            c.   Counts Three and Four: Plaintiffs' Allegations That Dr. Miller Violated RICO (Pattern of Racketeering and RICO Conspiracy) ................................................. 7

                (1)   Plaintiffs Lack RICO Standing. .......................................................................... 7

                (2)   Plaintiffs' RICO Claims Fail for Additional Reasons .......................................... 8

II. CONCLUSION ....................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**CASES**

*Aaron v. Atiq Durrani*, 2014 WL 996471 (S.D. Ohio 2014) ...................................................... 4

*Allstate Ins. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015) ...................................................... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 5, 6

*Atias v. Phillips*, No. 18-cv-01259, 2018 WL 11355475 (C.D. Cal. Dec. 7, 2018) ...................... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 5

*Berg v. First State Ins. Co.*, 915 F.2d 460 (9th Cir. 1990) ........................................................... 7

*Boyle v. U.S.*, 556 U.S. 938 (2009) ......................................................................................... 8, 9

*Brown v. Wilson*, 2012 WL 6719464 (N.D. Tex. 2012) .............................................................. 4

*Comm. to Protect our Agric. Water*, 235 F. Supp. 3d 1132 (E.D. Ca. 2017) .............................. 9

*Creel v. Dr. Says, LLC*, 2022 WL 991568 (E.D. Tex. 2022) ....................................................... 2

*Cristantielli v. Kaiser Foundation Health Plan of Texas*, 113 F.Supp.2d 1055 (N.D. Tex. 2002) .................................................................................................................................................. 4

*Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) ............................................................................... 7

*Do v. Pilgrim's Pride Corp.*, 512 F. Supp. 2d 764 (E.D. Tex. 2007) .......................................... 9

*Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796 (5th Cir. 2011) ....................................................... 1

*G.T. by Rolla v. Epic Health Services*, 2018 WL 8619803 (W.D. Tex. 2018) ........................ 3, 4

*Gabriel v. Outlaw*, No. EDCV-14-01425, 2021 WL 1030157 (N.D. Tex. Mar. 1, 2021) ............ 9

*Gutierrez v. Venegas*, No. 6:20-cv- 129, 2021 WL 9314946 (N.D. Tex. Sept. 8, 2021) ........... 10

*Guzman v. Memorial Hermann Hospital System*, 637 F.Supp.2d (S.D. Tex. 2009) ................... 4

*HCB Fin. Corp. v. McPherson*, 8 F.4th 335 (5th Cir. 2021) ....................................................... 7

*In re Enron Corp. Securities, Derivative & ERISA Litigation*, 284 F.Supp.2d 511 (S.D. Tex. 2003) ......................................................................................................................................... 2

*In re Taxable Mun. Bond Securities Lit.*, 51 F.3d 518 (5th Cir. 1995) ........................................ 8

*Jackson v. Sedgwick*, 731 F.3d 556 (6th Cir. 2013)..........................................................................4

*Manax v. McNamara*, 842 F.2d 808 (5th Cir. 1988) ......................................................................6

*Marshall v. East Carroll Parish Hosp.*, 134 F.3d 319 (5th Cir. 1998)............................................4

*Reves v. Ernst & Young*, 507 U.S. 170 (1993).............................................................................10

*Roark v. Humana*, Inc., 307 F.3d 298 (5th Cir. 2002) ....................................................................4

*Shulman v. Kaplan*, No. 2:19-cv-5413, 2020 WL 7094063 (C.D. Cal. Oct. 29, 2020)..................8

*U.S. v. Lacey*, No. 2:18-cr-00422, 2022 WL 4363818 (9th Cir. Sept. 21, 2022) ...........................7

*U.S. v. Sutherland*, 656 F.2d 1181 (5th Cir. 1981) ........................................................................9

*United States v. Zadeh*, 820 F.3d 746 (5th Cir. 2016) ...................................................................2

*Univ. of Texas System v. Alliantgroup LP*, 400 F.Supp.3d 610 (S.D. Tex. 2019).....................1, 2

*Wyeth v. Levine*, 555 U.S. 555, 565, 129 S.Ct. 1187 (2009) .........................................................2

## **STATUTES**

18 U.S.C. § 1591..............................................................................................................................6

18 U.S.C. § 1964(c) .........................................................................................................................7

Tex. Civ. Prac. & Rem. Code Chapter 74................................................................................ii, 10

## **RULES**

Fed. R. Civ. P. 8(a) ...................................................................................................................ii, 10

Fed. R. Civ. P. 9(b) ..........................................................................................................................i

Fed. R. Civ. P. 12(b)(6)...............................................................................................................i, ii

# I.
# ARGUMENTS AND AUTHORITIES

**A.     Plaintiffs' Contention – that the TMLA does not Preempt Federal TVPA and RICO Claims**

Dr. Miller argues in her Motion to Dismiss that Plaintiffs' causes of action against her, based on the federal Trafficking Victims Protection Act ("TVPA") and the federal Racketeering Influenced and Corrupt Organization Act ("RICO"), are in actuality health care liability claims under the Texas Medical Liability Act, Chapter 74 of the Texas Civil Practice and Remedies Code ("TMLA") and should be dismissed for failure to state a claim upon which relief may be granted.

In their Opposition to Dr. Miller's motion to dismiss, Plaintiffs do not contest the fact that their causes of action against Dr. Miller are based on allegations that Dr. Miller violated the applicable standard of care, or that their causes of action against Dr. Miller are somehow separable from her rendition of care to Plaintiff Goedinghaus. Instead, Plaintiffs argue the TMLA is not applicable in this case because it does not preempt the TVPA or RICO. *See* Opposition at 4 (Dkt. 175).

   *1. Plaintiffs bear the burden of persuasion on the issue of preemption.*

Plaintiffs' contention – that the provisions of the TMLA are not applicable to this case – is flatly wrong. Initially, Dr. Miller would point out that Plaintiffs' argument is backward – a state statute like the TMLA would not preempt federal statutes but would instead be preempted by the federal statutes. This is an important point, because it is well settled in this circuit that "the party asserting preemption bears the burden of persuasion" that preemption applies. *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011); *Univ. of Texas System v. Alliantgroup LP*, 400 F.Supp.3d 610, 615 (S.D. Tex. 2019). The burden is thus on Plaintiffs, as the party asserting

1

preemption, to persuade the Court that the TVPA and/or RICO do in fact preempt the application of the TMLA to the facts of this case.

### 2. Congress has not explicitly stated any intent that RICO or the TVPA preempt state statutes.

There is a strong presumption against preemption unless Congress indicates otherwise. *Wyeth v. Levine*, 555 U.S. 555, 565, 129 S.Ct. 1187 (2009); *Univ. of Texas System*, 400 F.Supp.3d at 615. Unless Congress "explicitly states its intent to preempt relevant state laws," then a court need not address express preemption. *United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016); *Univ. of Texas System*, 400 F.Supp.3d at 620 (n. 3). RICO does not contain any preemption provision within its statutory boundaries. *See, e.g., In re Enron Corp. Securities, Derivative & ERISA Litigation*, 284 F.Supp.2d 511, 624 (S.D. Tex. 2003) ("RICO, of course, has no preemption provision."). Neither does the TVPA. For this reason, Congress has not explicitly expressed any intent that RICO and TVPA preempt any state laws, and this Court does not need to even address whether preemption applies in this case – it does not.

### 3. Several Texas federal court cases have held that the TMLA is not preempted by federal statutes.

In their Opposition, Plaintiffs make the argument that Dr. Miller does not cite "a single case where the TMLA preempts a federal statute or make any argument why [the TMLA] should apply despite the Supremacy Clause." (Opposition at 4 (Dkt. 175)). Dr. Miller would point out that until Plaintiffs' Opposition was filed there was no way to know that Plaintiffs would be making any preemption argument. And as is shown below, there are several federal court cases interpreting Texas law that have explicitly or implicitly held that the TMLA is not preempted by federal statutes, including RICO.

In *Creel v. Dr. Says, LLC*, 2022 WL 991568 (E.D. Tex. 2022), a psychiatric patient sued several physicians and their business entities for numerous causes of action, including RICO violations and medical negligence. The parties in that case made the same arguments that are being made in the present case – the defendants argued that the plaintiffs' RICO claims were improperly recast medical negligence claims, and the plaintiffs argued that under the Supremacy Clause the state law medical negligence claims were preempted by the RICO claims. That court determined that preemption was not an issue, stating:

> ***As an initial matter, the Court does not recognize how the supremacy clause is applicable in any manner.*** The outcome on this point requires that the Court analyze the underlying nature of the RICO claim, as compared to the facts underlying the medical negligence claim, through the evidence put on at trial. (emphasis added)

*Id.* at *14. The court noted that "[a] plaintiff may not convert state law claims into a federal treble damage action simply by alleging that wrongful acts are a pattern of racketeering relating to an enterprise," and that "[w]hether a cause of action falls within the definition of a 'health care liability claim' turns on the underlying nature of the claim pleaded." *Id.* The court went on to hold that the RICO claims in that case "were not improperly recast medical negligence claims" but "were RICO claims separate from the claim of medical negligence." *Id.* at *15. The court added that "the Supremacy Clause has no effect on this conclusion." *Id.*

*G.T. by Rolla v. Epic Health Services*, 2018 WL 8619803 (W.D. Tex. 2018) is a case in which Magistrate Judge Mark Lane of the Austin Division addressed whether an alleged violation of the federal Rehabilitation Act[1] was in actuality a medical malpractice claim. The court did not discuss whether the Rehabilitation Act preempted the TMLA, but instead considered whether the

---

[1] The Rehabilitation Act protects from discrimination disabled individuals who seek to participate in programs receiving federal funds.

3

plaintiff's claims were in actuality health care liability claims under the TMLA that could not be recast as claims under the federal Rehabilitation Act.  Judge Lane held that the plaintiffs' purported Rehabilitation Act claims were actually health care liability claims under the TMLA and recommended that the defendant's 12(b)(6) motion to dismiss be granted.  Judge Yeakel of the Austin Division subsequently approved this recommendation and granted the motion to dismiss. *G.T. by Rolla v. Epic Health Services,* 2019 WL 2565245 (W.D. Tex. 2019).

Numerous cases have held that other federal statutes do not preempt the TMLA on the ground that no federal statute creates a federal medical malpractice cause of action.  *See Roark v. Humana*, Inc., 307 F.3d 298, 309 (5th Cir. 2002) ("This court has treated as a given that ERISA provides no cause of action for medical malpractice against an HMO"); *Cristantielli v. Kaiser Foundation Health Plan of Texas*, 113 F.Supp.2d 1055, 1063 (N.D. Tex. 2000) (ERISA, despite its expansive preemption clause, does not preempt claims for medical malpractice); *Marshall v. East Carroll Parish Hosp*., 134 F.3d 319, 322 (5th Cir. 1998) (EMTALA establishes neither a federal medical malpractice cause of action nor a nationalized standard of medical care); *Guzman v. Memorial Hermann Hospital System*, 637 F.Supp.2d (S.D. Tex. 2009) (same); *Brown v. Wilson*, 2012 WL 6719464, at *3 (N.D. Tex. 2012) ("when a plaintiffs' core complaint is incompetent treatment for his underlying medical condition, such a complaint does not state a claim for relief under the ADA because the ADA does not create a remedy for medical malpractice").

Regarding similar cases from other circuits, *see Jackson v. Sedgwick*, 731 F.3d 556, 568-69 (6th Cir. 2013) (RICO "is not a means for federalizing personal injury tort claims arising under state law"); *and Aaron v. Atiq Durrani*, 2014 WL 996471 (S.D. Ohio 2014) ("Among other things, if the Court were to accept Plaintiffs' theory, any hospital will have engaged in a pattern of racketeering activity when a credentialed physician of the hospital is accused of committing

4

medical malpractice. This is nonsense.").

There is ample authority that the TMLA is not preempted by RICO or any other federal statute. Plaintiffs have provided no authority to the contrary.

> **4. Plaintiffs have failed to state a claim upon which relief can be granted, and their claims against Dr. Miller are health care liability claims under the TMLA that cannot be recast as claims under the TVPA or RICO.**

Based on the foregoing analysis, Plaintiffs have failed to state a claim upon which relief can be granted under any of the federal statutes in which they are seeking relief from Dr. Miller in this lawsuit. Each of Plaintiffs' claims against Dr. Miller are properly characterized as health care liability claims under the TMLA and cannot be recast as claims under the TVPA or RICO. Moreover, it is abundantly clear that neither RICO nor the TVPA preempts the TMLA. Dr. Miller is entitled to dismissal of all causes of action brought against her in this lawsuit.

**B.    Plaintiffs' Contention – That They Met the Requirements of Rule 8 Notice Pleading Because They Pleaded Detailed Facts Showing Dr. Miller's Role in the Venture.**

Plaintiffs allege that they have pleaded sufficient facts evidencing Dr. Miller's role in the Venture to support TVPA and RICO claims against her. However, their pleadings fail to meet the plausibility standard required under Rule 8. Plaintiffs do not plausibly allege a human-trafficking venture or RICO enterprise or, even if they did, that Dr. Miller is plausibly liable for human trafficking or participating in a RICO enterprise. Dr. Miller's 12(b)(6) motion should be granted.

**1. The Complaint Fails to Meet Applicable Pleading Standards.**

**a.   *The Allegations Do Not Cross the Line from Possible to Probable.***

"Where a complaint pleads facts that are merely consistent with [plaintiffs' theories], it stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). The Complaint's factual allegations do not "raise a right to relief above a speculative level"—because they fail to cross the line from merely possible to being plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The gist of the story alleged in the Complaint is Plaintiffs' long-running, dysfunctional relationships with ex-husbands and ex-boyfriends. Dr. Miller is neither. As sad as their story is, allegations concerning persons whose lives happened to intersect with those of Plaintiffs and their ex-partners do not convert domestic dysfunction into a plausible human-trafficking venture or a RICO enterprise. *See* 18 U.S.C. § 1591 (trafficking requires active assistance, support or facilitation of alleged venture); *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988) (RICO requires "an entity separate and apart from the pattern of [criminal] activity in which it engages").

The Opposition does not explain how allegations concerning Plaintiffs' long-running domestic troubles, drug abuse, and swinging, plausibly support their human trafficking and RICO theories. Plaintiffs go so far as to ask the Court to conclude that obviously benign events, combined with lawyer-driven conclusions, plausibly allege trafficking and RICO violations. *Cf. Iqbal*, 556 U.S. at 664 (when determining plausibility, courts must "draw on [their] experience and common sense").

### b. Counts One and Two – Plaintiffs' Allegations that Dr. Miller Violated the TVPA by Participating in Sex Trafficking and Labor Trafficking.

Plaintiffs contend in their Opposition that they have alleged a valid TVPA beneficiary claim (under both sex trafficking and labor trafficking) against Dr. Miller. They contend that they pleaded the following facts to support this TVPA beneficiary claim: (1) that Plaintiff Goedinghaus told Dr. Miller of the trafficking activity; and (2) that the amount of "high-risk" medications Dr. Miller prescribed for Plaintiff Goedinghaus put Dr. Miller on constructive notice of their improper use. (Opposition at 5 (Dkt. 175)). Plaintiffs essentially allege that Dr. Miller is liable as a TVPA

6

beneficiary because she accepted payment in return for prescribing these medications. However, Plaintiffs ignore the "obvious alternative explanation" as to why Dr. Miller accepted payment from Plaintiffs (or Rick) – the payment was for medical services provided to Plaintiff Goedinghaus. Based on this obvious alternative explanation, the causes of action under the TVPA fail to "cross the plausibility threshold" and thus fail to state a claim upon which relief can be granted.

Moreover, the Complaint does not allege that Plaintiff Goedinghaus told Dr. Miller that she was being sex trafficked or labor trafficked, but only that she was being domestically abused and raped by Rick. (Compl. ¶ 145 (Dkt. 1)). This does not constitute sufficient awareness of the Venture or the purposes of the Venture to support a TVPA beneficiary claim against Dr. Miller.

### c. Counts Three and Four: Plaintiffs' Allegations That Dr. Miller Violated RICO (Pattern of Racketeering and RICO Conspiracy)

**(1) Plaintiffs Lack RICO Standing.**

To allege RICO standing, each Plaintiff must allege, among other things, an injury to her own "business or property." 18 U.S.C. § 1964(c); *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 344 (5th Cir. 2021). The Opposition argues that Plaintiffs allege three injuries caused by a RICO violation: (1) lost "moneys earned [in exchange] for companionship," (2) Grover's withholding of wages supposedly earned by working at a strip club, and (3) the mortgage company's repossession of Ms. Hubbard's home. (Opposition at 8 (Dkt. 175)) None of these is a cognizable RICO injury. *See HCB Fin. Corp.*, 8 F. 4th at 338 (RICO requires an "injury to the plaintiff's business or property *by reason of a violation of RICO*").

Plaintiffs' "lost-money-in-exchange-for-companionship" injury theory has no support in the law. The case they cite concerns prostitutes where the "pimp" kept the *prostitutes'* "earnings."[2]

---

[2] Plaintiffs cite *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) for the proposition that personal injury can constitute "business or property" loss within the meaning of RICO. (Opp'n (Dkt. 175) at 8.)

7

*U.S. v. Lacey*, No. 2:18-cr-00422, 2022 WL 4363818, *1 (9th Cir. Sept. 21, 2022) ("The indictment recognizes that escort services are lawful, but goes on to allege that the vast majority of advertisements for escort services on Backpage were thinly-veiled prostitution ads."). The allegations that Rick "forced [Plaintiffs] ... to perform sex acts for payment [to him], which payments he retained" (Compl. ¶¶ 3, 312 (Dkt. 1)) do not allege that Plaintiffs were prostitutes who expected to be paid for sex; the allegations are that Rick "sold" them to third parties without their consent or knowledge. *Id.* Whatever these allegations might say about Rick, they do not demonstrate standing to allege a RICO claim against Dr. Miller. *See In re Taxable Mun. Bond Securities Lit.*, 51 F.3d 518, 523 (5th Cir. 1995) (no standing where plaintiffs did not allege that *defendant's* conduct interfered with existing economic rights); *see also Shulman v. Kaplan*, No. 2:19-cv-5413, 2020 WL 7094063, at *2 (C.D. Cal. Oct. 29, 2020) (injuries to illegal businesses are not redressable under civil RICO); TEX. PENAL CODE § 43.02 (illegal to receive a fee to engage in sexual conduct).

### (2) Plaintiffs' RICO Claims Fail for Additional Reasons.

<u>Failure to adequately allege a common purpose</u>. Mr. Crow's moving papers demonstrated that the Complaint does not allege a plausible "common purpose *and* course of conduct" among Defendants. *See Boyle v. U.S.*, 556 U.S. 938, 950 (2009). The Opposition merely repeats the conclusory allegations that Defendants acted with the "common purpose" to "traffic women," without pointing to any specific factual allegations that plausibly support their conclusions.

---

To the extent it could be read that way, *Diaz* does not confer RICO standing to every personal injury claim that results in lost wages. *See Diaz*, 420 F.3d at 900. *Diaz* explains that RICO standing exists *only* where the loss arises out of a business or property interest as defined by state law. *Id.* Other cases hold that personal injury does not satisfy RICO's "business or property" requirement. *See Atias v. Phillips*, No. 18-cv-01259, 2018 WL 11355475, *3-4 (C.D. Cal. Dec. 7, 2018); *Berg v. First State Ins. Co.*, 915 F.2d 460, 463 (9th Cir. 1990).

(*Compare* Opposition at 9, *with* Compl. ¶¶ 34 (Dkt. 1). On the other hand, Plaintiffs' own allegations foreclose any conclusion that Defendants acted with a "common purpose." (*See, e.g.,* Compl. ¶¶ 146 (Dkt. 1)) (alleging doctor's goal of personal profit), 250 (Grover's goal to keep Ms. Hubbard's wages for himself), 269 (Hynes, Jr.'s goal of selling drugs with Ms. Hubbard's assistance for his personal benefit).) The failure to plead a "common purpose" dooms the RICO claims. *See Boyle*, 556 U.S. at 950.

<u>Failure to allege a continuing unit</u>. Plaintiffs argue that there is a "continuing unit" because the alleged illegal conduct took place over several years (Opposition at 10 (Dkt. 175)), but this argument misses the point. To show a plausible "continuing unit" Plaintiffs must allege facts showing that the predicate acts were connected to the alleged RICO enterprise, as opposed to illegal conduct that would otherwise occur outside a RICO conspiracy. *See Do v. Pilgrim's Pride Corp.*, 512 F. Supp. 2d 764, 768 (E.D. Tex. 2007) (the continuing unit requirement extends to the purpose and structure of the enterprise and "the enterprise must continue to have this same purpose, and the new member must perform the same roles as the old did"); *Comm. to Protect our Agric. Water*, 235 F. Supp. 3d 1132 (E.D. Ca. 2017) (no RICO enterprise based on disconnected illegal conduct among supposed RICO members). The complaint describes long running, disconnected domestic disputes between Plaintiffs and their ex-husbands and ex-boyfriends, along with alleged occasional interactions with Dr. Miller and others. The intermittent appearance of other defendants over the years is insufficient to allege a plausible RICO enterprise. *See Boyle v. U.S.*, 556 U.S. at 947 n.4.

<u>No pattern of racketeering</u>. The Complaint also fails to allege the factual basis for any predicate acts as to Dr. Miller. (Opposition at 11 (Dkt. 175)) The Opposition lists dozens of paragraphs of the Complaint, which they argue "plead[] numerous related predicate acts (at least

9

two of which accrue to Miller)." (Opp'n at 11 (Dkt. 175)) These paragraphs show nothing of the sort; they either concern other Defendants or do not concern purported predicate acts. *See U.S. v. Sutherland*, 656 F.2d 1181, 1203 (5th Cir. 1981) ("plaintiff must allege at least two predicate acts *by each defendant*"); *see also Gabriel v. Outlaw*, No. EDCV-14-01425, 2021 WL 1030157, *2 (N.D. Tex. Mar. 1, 2021) (conclusory allegations of various criminal acts are insufficient to plausibly state RICO claim). The RICO claim fails as to Dr. Miller.

<u>Dr. Miller did not "conduct" the alleged enterprise</u>. The Complaint does not allege facts plausibly showing Dr. Miller conducted or participated in the supposed enterprise's affairs. The Opposition simply argues that Dr. Miller Mr. Crow "had a vital role in prescribing medication without which the Enterprise could not have trafficked Plaintiff Goedinghaus." (Opposition at 12 (Dkt. 175)) There are no allegations that Dr. Miller gave any direction concerning the supposed enterprise or that her "direction was obeyed" by anyone. *See Reves v. Ernst & Young*, 507 U.S. 170 (1993) (plaintiff must show how each defendant participated in the conduct of the alleged enterprise's affairs). Plaintiffs have failed to sufficiently plead that Dr. Miller participated in the affairs of the Venture or had any role in directing the affairs of the Venture. *See Gutierrez v. Venegas*, No. 6:20-cv- 129, 2021 WL 9314946, *5 (N.D. Tex. Sept. 8, 2021) (a defendant with mere "non-supervisory involvement" does not "direct" the enterprise's affairs.; s*ee also Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015) (plaintiff must show defendant had "supervisory involvement" to satisfy conduct requirement).

## II.
## CONCLUSION

Plaintiffs' Complaint against Dr. Miller should be dismissed on the ground that all of these claims are in actuality health care liability claims that must be filed under Chapter 74 of the Texas Civil Practice and Liability Code. Plaintiffs' Complaint against Dr. Miller should be dismissed on

the further ground that it fails to meet the minimum pleading standards set forth in Fed. R. Civ. P. 8(a) and fails to set forth allegations that sufficiently plead a cognizable claim for relief against Dr. Miller. For all the foregoing reasons, Dr. Miller respectfully requests that the Court dismiss the Complaint without leave to amend.

Respectfully submitted,

**GERMER BEAMAN & BROWN PLLC**
One Barton Skyway
1501 S Mopac Expy, Suite A400
Austin, Texas 78746
(512) 472-0288
(512) 472-0721 Fax

By: */s/ R. Chad Geisler*
R. Chad Geisler
State Bar No. 00793793
cgeisler@germer-austin.com
Steve Dillawn
State Bar No. 05871300
sdillawn@germer-austin.com

**ATTORNEYS FOR DEFENDANT
DR. MELISSA MILLER**

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the foregoing document was served on all attorneys of record via ECF on this 28th day of June, 2023.

*/s/ R. Chad Geisler*
R. Chad Geisler