UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, | § § § | |
| Plaintiffs, | § § | Case No. 5:23-cv-00580-FB |
| v. | § § | |
| TRAMMELL S. CROW, JR., DR. BENJAMIN TODD ELLER, RICHARD HUBBARD, DR. MELISSA MILLER, DR. JOSEPH BOLIN, DR. SCOTT WOODS, DR. MRUGESHKUMAR SHAH, MICHAEL CAIN, COE JURACEK, PHILIP ECOB, H.J. COLE, TEXAS RANGER CODY MITCHELL, KURT KNEWITZ, PAUL PENDERGRASS, RALPH ROGERS, ROBERT PRUITT, SCOTT BRUNSON, CASE GROVER, RICHARD BUTLER, MARK MOLINA, MICHAEL HYNES, JR., SHAWN MAYER, JADE MAYER, RCI HOSPITALITY HOLDINGS, INC., INTEGRITY BASED MARKETING, LLC, STORM FITNESS NUTRITION, LLC, ULTRA COMBAT NUTRITION, LLC, ECOLOFT HOMES LLC, ELEVATED WELLNESS PARTNERS LLC, DOE INDIVIDUALS 1–20, and DOE COMPANIES 21–30 | § § § § § § § § § § § § § § § § § § § § § § § § § § § | Judge: Hon. Fred Biery Date Action Filed: May 8, 2023 (transferred) |
| Defendants. | § | |

**DEFENDANT DR. MELISSA MILLER'S**
**RULE-12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT**

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE FRED BIERY:**

COMES NOW, Defendant Dr. Melissa Miller (**"Dr. Miller"**) and pursuant to Federal

Rules of Civil Procedure 8, 9(b) and 12(b)(6), files this motion requesting the Court to dismiss

all claims made against her in this case, on two grounds:  (1) that all claims against Dr. Miller are in actuality health care liability claims that must be filed under Chapter 74 of the Texas Civil Practice and Liability Code, warranting dismissal under Fed. R. Civ. P. 12(b)(6); and (2) that Plaintiffs' pleadings fail to meet the minimum pleading standards set forth in Fed. R. Civ. P. 8(a) and fail to set forth allegations that sufficiently plead a cognizable claim for relief against Dr. Miller, such that dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(6).

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ................................................................................................................. 1

   A.   Status of Case ............................................................................................................ 1

   B.   Brief Background ...................................................................................................... 1

   C.   Factual Allegations Relevant to This Motion .......................................................... 2

      1.   Dr. Miller's involvement with Plaintiffs .......................................................... 2

      2.   The Alleged "Trafficking Venture" and "RICO Enterprise." .......................... 2

   D.   Applicable Legal Standards ...................................................................................... 3

II.  ARGUMENT AND AUTHORITIES ................................................................................ 5

   A.   Dismissal is appropriate under Rule 12(b)(6) because Plaintiffs' causes of action against Dr. Miller are health care liability claims. ............................................................ 5

      1.   Health Care Liability Claims under Texas Law. .............................................. 5

      2.   Plaintiffs' Claims are Health Care Liability Claims. ....................................... 6

      3.   The TMLA is not preempted by the TVPA or RICO. ...................................... 9

         a.    Congress has not explicitly stated any intent that RICO or the TVPA preempt state statutes. .................................................................................................... 10

         b.    Several Texas federal court cases have held that the TMLA is not preempted by federal statutes. ............................................................................................. 10

      4.   Dr. Miller is entitled to dismissal of Plaintiffs' claims against her on the ground that they are health care liability claims. ............................................................ 12

   B.   Dismissal is Also Appropriate under Rule 12(b)(6) because the Complaint Fails to Satisfy the Pleading Requirements of Rule 8. ......................................................... 13

      1.   Counts One and Two – Violation of the TVPA (Sex and Labor Trafficking). ............ 14

      2.   Counts Three and Four:  Violations of RICO (Pattern of Racketeering and RICO Conspiracy) ........................................................................................................ 15

         a.    Plaintiffs Lack RICO Standing. ................................................................... 15

         b.    Plaintiffs Fail to Allege a Section 1962(c) Claim ...................................... 16

            (1)   Plaintiffs Fail to Allege an "Enterprise." ............................................. 16

            (2)   Plaintiffs Do Not Sufficiently Allege RICO "Conduct." ................... 18

            (3)   Plaintiffs' RICO Conspiracy Claims Also Fail. ................................. 19

III. CONCLUSION ................................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aaron v. Atiq Durrani*, 2014 WL 996471 (S.D. Ohio 2014) ........................................................ 12

*Allstate Ins. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015) ..................................................... 18

*Arruda v. Curves, Int'l, Inc.*, 861 Fed. App'x 831 (5th Cir. 2021) ............................................. 16

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................................. 3, 4

*Baker v. IBP*, Inc., 357 F.3d 685 (7th Cir. 2004) .................................................................... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 4

*Boyle v. United States*, 556 U.S. 938 (2009) .......................................................................... 17

*Brown v. Wilson*, 2012 WL 6719464 (N.D. Tex. 2012) ............................................................. 12

*Creel v. Dr. Says, LLC*, 2022 WL 991568 (E.D. Tex. 2022) ........................................................ 10

*Cristantielli v. Kaiser Foundation Health Plan of Texas*, 113 F.Supp.2d 1055 ........................ 12

*Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842 (Tex. 2005) .................................... 6

*Earle v. Ratliff*, 998 S.W.2d 882 (Tex. 1999) ........................................................................... 6

*Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796 (5th Cir. 2011) ....................................................... 9

*G.T. by Rolla v. Epic Health Services*, 2018 WL 8619803 (W.D. Tex. 2018) ............................. 11

*Garland Community Hosp. v. Rose*, 156 S.W.3d 541 (Tex. 2004) ............................................... 6

*Garrison v. Members of the Bd. Of Thomason Hosp.*, 2015 WL 12570884 (W.D. Tex. – El Paso 2015) ........................................................................................................................ 6, 9

*Gormley v. Stover*, 907 S.W.2d 448 (Tex. 1995) ....................................................................... 6

*Gutierrez v. Venegas*, No. 6:20-cv-129, 2021 WL 9314946 (N.D. Tex. Sept. 8, 2021) ............. 18

*Guzman v. Memorial Hermann Hospital System*, 637 F.Supp.2d (S.D. Tex. 2009) ................... 12

*Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417 (5th Cir. 2001) ..................................................... 15

*In re Enron Corp. Securities, Derivative & ERISA Litigation*, 284 F.Supp.2d 511 (S.D. Tex. 2003) ............................................................................................................................. 10

*Jackson v. Sedgwick Claims Mgmt. Servs.*, Inc., 731 F.3d 556 (6th Cir. 2013) .......................... 15

*Jackson v. Sedgwick*, 731 F.3d 556 (6ᵗʰ Cir. 2013)........................................................................ 12

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th
    Cir.1982) ................................................................................................................................. 4, 13

*Labaty v. UWT, Inc.,* 121 F. Supp. 3d 721 (W.D. Tex. 2015) ...................................................... 17

*Langston v. Ethicon*, No. 3:20-cv-3712, 2021 WL 6198218 (N.D. Tex. Dec. 31, 2021)............. 14

*Loaisiga v. Cerda*, 379 S.W.3d 248, 252 (Tex. 2012) .................................................................... 5

*MacGregor Medical Ass'n v. Campbell*, 985 S.W.2d 38 (Tex. 1998) ........................................... 6

*Marshall v. East Carroll Parish Hosp.*, 134 F.3d 319 (5ᵗʰ Cir. 1998)......................................... 12

*Maxx Sports Tech. Ltd. v. Hansen*, 2020 WL 4756760 (S.D. Tex. 2020) ...................................... 4

*McPeters v. Edwards*, 806 F.Supp.2d 978 (S.D. Tex. 2011)................................................... 16, 18

*Noble Capital Tex. Real Estate Income Fund LP v. Newman*, No. 1:22-cv-652, 2023 WL
    3035411 (W.D. Tex. Jan. 13, 2023)........................................................................................ 13

*Poe v. Bock*, No. EP-cv-17-232, 2018 WL 4677901 (W.D. Tex. Jun. 11, 2018)......................... 19

*Reves v. Ernst & Young*, 507 U.S. 170 (1993).............................................................................. 18

*Rio Grande Valley Vein Clinic, P.A. v. Guerrero*, 431 S.W.3d 64 (Tex. 2014)............................ 5

*Roark v. Humana*, Inc., 307 F.3d 298 ......................................................................................... 12

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ................................................................... 16

*Shulman v. Kaplan*, 2020 WL 7094063 (C.D. Cal. Oct. 29, 2020) ............................................. 16

*Sorensen v. FedEx Kinko's Office and Print Services, Inc.,* 2006 WL 3779783 (W.D. Tex. –
    San Antonio 2006)...................................................................................................................... 4

*Sorokolit v. Rhodes*, 889 S.W.2d 239 (Tex. 1994) ........................................................................ 6

*Standard v. Nygren*, 658 F.3d 792 (7th Cir. 2011) ...................................................................... 13

*United States v. Baylor Scott & White Health*, 2019 WL 3713756 (W.D. Tex – San Antonio
    2019) .......................................................................................................................................... 4

v

*United States v. Turkette*, 452 U.S. 576 (1981) ................................................................ 16

*United States v. Zadeh*, 820 F.3d 746  (5th Cir. 2016) ...................................................... 10

*Univ. of Texas System v. Alliantgroup LP*, 400 F.Supp.3d 610 (S.D. Tex. 2019) .................. 9, 10

*Walden v. Jeffery*, 907 S.W.2d 446 (Tex. 1995) .................................................................. 6

*Walter v. Drayson*, 538 F.3d 1244 (9th Cir. 2008) .......................................................... 19

*Wyeth v. Levine*, 555 U.S. 555, 565, 129 S.Ct. 1187 (2009) ............................................ 10

**STATUTES**

18 U.S.C. § 1591 .................................................................................................. 14

18 U.S.C. § 1595(a) .............................................................................................. 14

18 U.S.C. § 1961 .................................................................................................. 16

18 U.S.C. § 1962(c) .......................................................................................... 16, 18

18 U.S.C. § 1964(c) .............................................................................................. 15

TEX. CIV. PRAC. & REM. CODE ANN. § 74 ............................................................ 5, 19

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001 ......................................................... 5

TEX. CIV. PRAC. & REM. CODE ANN. § 74.251 ....................................................... 13

TEX. PENAL CODE § 43.02 ..................................................................................... 16

**RULES**

FED. R. CIV. P. 8 ............................................................................................ 13, 19

FED. R. CIV. P. 8(a) .............................................................................................. 19

FED. R. CIV. P. 8(a)(2) ........................................................................................... 3

FED. R. CIV. P. 12(b)(6) .................................................................................. 3, 5, 13

# I.
## INTRODUCTION

**A.     Status of Case**

Plaintiffs filed their Complaint on November 1, 2022 in the Central District of California (Docket 1).  The case was subsequently assigned to the Western District of Texas, San Antonio Division on May 5, 2023 (Docket 132).  Defendant Dr. Miller filed her Motion to Dismiss on June 7, 2023 (Docket 156).  Plaintiffs filed their Opposition to this Motion to Dismiss on June 21, 2023 (Docket 175), and Dr. Miller filed her Reply to this Opposition on June 28, 2023 (Docket 185).  Plaintiffs filed their Amended Complaint on July 7, 2023 (Docket 190).  By Order of July 10, 2023, this Court dismissed Dr. Miller's Motion to Dismiss (which was based on Plaintiffs' Original Complaint) without prejudice to refiling this motion in response to Plaintiffs' Amended Complaint (Docket 191).

The only changes in the Amended Complaint that relate to Plaintiffs' claims against Dr. Miller are found in ¶¶ 342-346.  These new paragraphs do not contain any new factual allegations supporting Plaintiffs' claims against Dr. Miller, but merely assert that the allegations pleaded in the Amended Complaint meet the elements of the Trafficking and Violence Protection Act of 2000 ("TVPA").  Plaintiffs' claims against Dr. Miller are still based solely on Dr. Miller's provision of medical care and services to Plaintiff Goedinghaus during a 4-5 month period in 2019.  For this reason the grounds for dismissal alleged by Dr. Miller in her original Motion to Dismiss, including the contention that Plaintiffs' claims are actually health care liability claims, are applicable to the claims made against Dr. Miller in Plaintiffs' Amended Complaint.

**B.     Brief Background**

Plaintiffs have sued 23 specific individuals, as well as numerous entities and "Doe Individuals" and "Doe Companies," alleging that these parties participated in a sex and labor

1

trafficking venture in which Plaintiffs were forced to be sex slaves and engage in commercial sex acts. Defendant Dr. Miller is one of four defendant physicians (referred to in Plaintiffs' Amended Complaint as the "Medical Doctor Defendants") who allegedly participated in this venture by prescribing medications for Plaintiffs that they (the physicians) knew were being used for improper purposes and by ignoring Plaintiffs' reports of physical and sexual abuse.

Specifically regarding Defendant Dr. Miller, Plaintiffs allege that Dr. Miller violated the TVPA because she participated in the "sex and labor trafficking venture" (the so-called "Venture") by prescribing controlled substances to Plaintiff Goedinghaus in return for payment from Codefendant Rick Hubbard ("Rick"), who allegedly paid for Plaintiff Goedinghaus' appointments with Dr. Miller. Plaintiffs further allege that Dr. Miller provided "assistance, support and facilitation" to the Venture by prescribing these medications, and that she knew or should have known of the sex and labor trafficking acts committed by the Venture and Rick in forcing Plaintiff Goedinghaus to engage in commercial sex against her will. (Am. Complaint ¶¶ 342-346).

**C.**     **Factual Allegations Relevant to This Motion**

**1.  *Dr. Miller's involvement with Plaintiffs***

Dr. Miller's involvement with Plaintiffs (according to the allegations in the Amended Complaint) was limited to prescribing medications to Plaintiff Goedinghaus from April 2019 through September 2019. (Am. Compl. ¶¶ 14, 16, 144, 151). There is no allegation in the Amended Complaint that Dr. Miller treated Plaintiff Goedinghaus during any other time period, or that she ever treated or prescribed medications to Plaintiff Hubbard.

**2.  *The Alleged "Trafficking Venture" and "RICO Enterprise."***

The Amended Complaint alleges that in 2012, Codefendants Dr. Eller (a psychologist in California) and Rick decided to start a "sex and labor trafficking venture" (the "Venture") whereby

Rick would prostitute Plaintiff Hubbard at swinger parties, which the Amended Complaint refers to as "Forced Sex Parties." (*Id.* ¶¶ 120-122). The Venture's alleged purpose was "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of [Rick], [Dr.] Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants." (*Id.* ¶ 445).

At some unspecified time the so-called "Venture" allegedly transformed into an "illegal racketeering Enterprise" as other persons became entangled in Plaintiffs' domestic affairs. (*Id.* ¶ 6). As alleged, "[b]ecause Eller was not a medical doctor, he was unable to write the prescriptions for the medications essential to the Venture." (*Id.* ¶ 138). So, "[s]tarting in Fall 2010, [the Venture] located the Medical Doctor Defendants … to write prescriptions based only on Eller's written recommendations in exchange for payments from Rick." (*Id.* ¶ 138). The Amended Complaint alleges that Dr. Miller prescribed medications to Plaintiff Goedinghaus despite being informed that Rick was withholding her medications and physically and sexually abusing her. (*Id.* ¶ 144). Dr. Miller's only alleged involvement with the Venture was accepting payments from Rick for Plaintiff Goedinghaus' medical appointments.

## D.   <u>Applicable Legal Standards</u>

Dismissal under Rule 12(b)(6) is warranted when the pleadings fail to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must also satisfy the pleading requirements of Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." These pleading requirements do not require "detailed factual allegations," but they do demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). A plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Id.* A plaintiff's lawsuit

will not survive a motion to dismiss if the facts pleaded do not raise the right to relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Formulaic recitations of the elements of a cause of action and naked assertions devoid of further factual enhancement are insufficient. *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

Establishing plausibility requires a "context specific" two-step process in which the court "draws on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. When considering the plausibility of a claim, courts must also consider any "obvious alternative explanation" for a defendant's behavior. *Id.* at 681-83 (holding allegations of purposeful, invidious discrimination implausible where an "obvious alternative explanation" appears to be a more likely cause of the claimed misconduct); *United States v. Baylor Scott & White Health*, 2019 WL 3713756, *6 (W.D. Tex. – San Antonio 2019) (where there is an "obvious alternative explanation" that is legal, the complaint fails to state a claim for relief); *Maxx Sports Tech. Ltd. v. Hansen*, 2020 WL 4756760, *5 (S.D. Tex. 2020) (Where an "obvious alternative explanation" provides a more likely reason for the complained of conduct, the plaintiff's claim does not cross the plausibility threshold).

Directly relevant to this case, "a complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982); *see also Sorensen v. FedEx Kinko's Office and Print Services, Inc.,* 2006 WL 3779783, *1 (W.D. Tex. – San Antonio 2006).

## II.
## ARGUMENTS AND AUTHORITIES

### A.   Dismissal is appropriate under Rule 12(b)(6) because Plaintiffs' causes of action against Dr. Miller are health care liability claims.

As summarized above and explained in detail below, Dr. Miller is entitled to dismissal of all Plaintiffs' causes of action against her under Rule 12(b)(6) on the ground that these claims are actually health care liability claims under the Texas Medical Liability Act, Chapter 74 of the Texas Civil Practices and Remedies Code (the "TMLA").   Consequently, Plaintiffs' claims against Dr. Miller under the above federal statutes fail as a matter of law and should be dismissed with prejudice, as these statutes cannot provide remedies for alleged medical negligence.

#### 1.   *Health Care Liability Claims under Texas Law.*

The TMLA defines "health care liability claim" as follows:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).   Accordingly, the elements of a health care liability claim are (1) the defendant is a physician or health care provider, (2) the claim concerns treatment, lack of treatment, or a departure from standards of medical or health care, or safety, professional, or administrative services directly related to health care, and (3) the defendant's actions were the proximate cause of the plaintiff's injury.   *Rio Grande Valley Vein Clinic, P.A. v. Guerrero*, 431 S.W.3d 64, 65 (Tex. 2014).   Section 74.001(a)(13) is broadly construed, and "creates a rebuttable presumption that a patient's claims against a physician or health care provider based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement are health care liability claims." *Loaisiga v. Cerda*, 379 S.W.3d 248, 252 (Tex. 2012).

Texas courts have consistently held that causes of action that are, in actuality, health care liability claims cannot simply be recast in the language of a different cause of action in order to avoid application of the TMLA. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005); *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex. 1994). A cause of action based on a health care provider's breach of the accepted standard of care is nothing more than a health care liability claim no matter how it is labeled. *Gormley v. Stover*, 907 S.W.2d 448, 450 (Tex. 1995); *Earle v. Ratliff*, 998 S.W.2d 882, 892-93 (Tex. 1999). The test is whether, to successfully prove the claim, the plaintiff must prove a breach of the applicable standard of care. *MacGregor Medical Ass'n v. Campbell*, 985 S.W.2d 38, 41 (Tex. 1998). If the alleged conduct is inseparable from the underlying medical or health care services, then the claim is a health care liability claim. *Garland Community Hosp. v. Rose*, 156 S.W.3d 541, 543-44 (Tex. 2004); *Walden v. Jeffery*, 907 S.W.2d 446, 448 (Tex. 1995). Because a health care liability claim is broadly defined, "a claim *is* an HCLC (health care liability claim) if it is 'premised on facts that *could* support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care.'" *Garrison v. Members of the Bd. Of Thomason Hosp.*, 2015 WL 12570884, at *4 (W.D. Tex. – El Paso 2015).

### 2. *Plaintiffs' Claims are Health Care Liability Claims.*

A careful review of every factual allegation in the Amended Complaint relied upon to support Plaintiffs' claims against Dr. Miller reveal that each of their claims are based on Dr. Miller's provision of medical care and services to Plaintiff Goedinghaus during a 4-5 month period in 2019:

- **Comp. ¶ 14 – Codefendant Rick "found medical doctors who were willing to write prescriptions based on [Codefendant] Eller's written recommendations. These**

**physicians included Dr. Melissa Miller . . .”**  Writing prescriptions for patients is an inseparable part of the medical services and treatments that licensed physicians provide to their patients.  In this case, expert medical opinions will be required to determine whether the prescriptions written by Dr. Miller were appropriate and within standard of care.  Any issue as to the appropriateness of these prescriptions thus falls squarely within the definition of a health care liability claim.

- **¶¶ 15, 16, 142, 143 – Each of the Medical Doctor Defendants were informed by either or both Plaintiffs that the drugs they were prescribing were being used for an improper purpose, that Plaintiffs were being abused by Rick, and that Plaintiffs needed help; the Medical Doctor Defendants took no action in response to these reports but instead continued prescribing the medications that Eller recommended in return for payment from Rick.**  As mentioned above, prescribing medications is an inseparable part of the care and treatment provided by physicians to their patients, and any claims that these particular prescriptions were inappropriate – in other words, that prescribing these medications violated the physician standard of care – are clearly health care liability claims.  Moreover, whether the physicians had a duty to take some “action” based on Plaintiffs’ alleged reporting is also a physician standard of care issue.

- **¶ 141 – The Medical Doctor Defendants all knowingly provided essential support to the Venture in exchange for financial benefits.**  This “essential support” is presumably the medications prescribed by the physicians to Plaintiffs, and the “financial benefits” are presumably the payments made to the physicians for the care and treatment they provided to Plaintiffs as their patients.  This is basically the same allegation made in the above referenced paragraphs – that the medication prescriptions were inappropriate and not

within the physician standard of care – and clearly falls within the broad definition of health care liability claim.

- **¶ 144 – Dr. Miller is a primary care physician whom Plaintiffs allege Rick "forced" Plaintiff Goedinghaus to see starting in April or May 2019.  Goedinghaus informed Dr. Miller that she was being abused and raped by Rick, but Dr. Miller continued to provide drugs to Goedinghaus and provided her no assistance.**  Once again, whether Dr. Miller inappropriately prescribed medications to Plaintiff Goedinghaus, or had some duty as a physician to provide assistance to her based on her report of abuse by Rick, is a physician standard of care issue.

- **¶ 148, 149, 151 – The large doses of medications prescribed by the Medical Doctor Defendants should have caused them to exercise further professional diligence, which they ignored to encourage continued payments from the Venture.  These high doses place them in "reckless disregard" that these drugs were being used for an improper purpose.  In combination the prescribed drugs presented a high risk of overdose and death as well as addiction.**  Whether the size of the doses of medications was or was not appropriate, and whether the size of the doses should have alerted the physicians that the medications were being used for an improper purpose, are also physician standard of care issues.

- **¶ 151 – This is a list of medications prescribed by Dr. Miller to Plaintiff Goedinghaus from May 2019 through September 2019.**  Whether these medications were or were not appropriately prescribed by Dr. Miller is a physician standard of care question.

Summarizing, Plaintiffs' allegations against Dr. Miller are based on: (1) Dr. Miller's prescribing medications to Plaintiff Goedinghaus from April 2019 through September 2019 in

return for unspecified amounts of payment; (2) Dr. Miller's failure to take some unspecified action to assist Plaintiff Goedinghaus based on her reports that she was being abused by Rick and that Rick was using the medications for improper purposes; and (3) Dr. Miller's failure to recognize that, based on the size of the medication dosages being prescribed, these medications were likely being used for improper purposes. Even accepting these factual allegations as true (as implausible as they are), each of Plaintiffs' claims against Dr. Miller are "health care liability claims" under the TMLA. Each claim is based on conduct that occurred during Dr. Miller's treatment of Plaintiff Goedinghaus. Each claim is based on alleged conduct by Dr. Miller that is inseparable from her rendition of care to Plaintiff Goedinghaus. Each claim is based on conduct by Dr. Miller – prescribing medications to Plaintiff Goedinghaus – that *could* support a health care liability claim against Dr. Miller. *See Garrison,* 2015 WL 12570884, at *4 ("a claim *is* an HCLC if it is 'premised on facts that *could* support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care.'").

### 3. The TMLA is not preempted by the TVPA or RICO.

Plaintiffs have previously argued that the TMLA is not applicable to this case because it does not preempt either the TVPA or RICO. This argument is backward – a state statute like the TMLA would not preempt federal statutes but would instead be preempted by the federal statutes. This is an important point, because it is well settled in this circuit that "the party asserting preemption bears the burden of persuasion" that preemption applies. *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011); *Univ. of Texas System v. Alliantgroup LP*, 400 F.Supp.3d 610, 615 (S.D. Tex. 2019). In the event that Plaintiffs contend that the TMLA is preempted, the burden

is on Plaintiffs to persuade the Court that the TVPA and/or RICO do in fact preempt the application

of the TMLA to the facts of this case.

### a. Congress has not explicitly stated any intent that RICO or the TVPA preempt state statutes.

There is a strong presumption against preemption unless Congress indicates otherwise. *Wyeth v. Levine*, 555 U.S. 555, 565, 129 S.Ct. 1187 (2009); *Univ. of Texas System*, 400 F.Supp.3d at 615. Unless Congress "explicitly states its intent to preempt relevant state laws," then a court need not address express preemption. *United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016); *Univ. of Texas System*, 400 F.Supp.3d at 620 (n. 3). The RICO statute does not contain any express preemption provision. *See, e.g., In re Enron Corp. Securities, Derivative & ERISA Litigation*, 284 F.Supp.2d 511, 624 (S.D. Tex. 2003) ("RICO, of course, has no preemption provision."). Neither does the TVPA. For this reason, Congress has not explicitly expressed any intent that RICO and TVPA preempt any state laws, and this Court does not need to even address whether preemption applies in this case – it does not.

### b. Several Texas federal court cases have held that the TMLA is not preempted by federal statutes.

Several federal court cases interpreting Texas law have explicitly or implicitly held that the TMLA is not preempted by federal statutes, including RICO. In *Creel v. Dr. Says, LLC*, 2022 WL 991568 (E.D. Tex. 2022), a psychiatric patient sued several physicians and their business entities for numerous causes of action, including RICO violations and medical negligence. The defendants in that case argued that the plaintiffs' RICO claims were improperly recast medical negligence claims, and the plaintiffs argued that under the Supremacy Clause the state law medical negligence claims were preempted by the RICO claims. That court determined that preemption was not an issue, stating:

10

> ***As an initial matter, the Court does not recognize how the supremacy clause is applicable in any manner.*** The outcome on this point requires that the Court analyze the underlying nature of the RICO claim, as compared to the facts underlying the medical negligence claim, through the evidence put on at trial. (emphasis added)

*Id.* at *14.  The court noted that "[a] plaintiff may not convert state law claims into a federal treble damage action simply by alleging that wrongful acts are a pattern of racketeering relating to an enterprise," and that "[w]hether a cause of action falls within the definition of a 'health care liability claim' turns on the underlying nature of the claim pleaded."  *Id.*  The court went on to hold that the RICO claims in that case "were not improperly recast medical negligence claims" but "were RICO claims separate from the claim of medical negligence."  *Id.* at *15.  The court added that "the Supremacy Clause has no effect on this conclusion."  *Id.*

  *G.T. by Rolla v. Epic Health Services*, 2018 WL 8619803 (W.D. Tex. 2018) is a case in which Magistrate Judge Mark Lane of the Austin Division addressed whether an alleged violation of the federal Rehabilitation Act[1] was in actuality a medical malpractice claim.  The court did not discuss whether the Rehabilitation Act preempted the TMLA, but instead considered whether the plaintiff's claims were in actuality health care liability claims under the TMLA that could not be recast as claims under the Rehabilitation Act.  Judge Lane held that the plaintiffs' purported Rehabilitation Act claims were actually health care liability claims under the TMLA, and recommended that the defendant's 12(b)(6) motion to dismiss be granted.  Judge Yeakel subsequently approved this recommendation and granted the motion to dismiss.  *G.T. by Rolla v. Epic Health Services,* 2019 WL 2565245 (W.D. Tex. 2019).

  Numerous cases have held that federal statutes do not preempt the TMLA on the ground

---

[1] The Rehabilitation Act prohibits discrimination of disabled individuals who seek to participate in programs receiving federal funds.

that no federal statute creates a federal medical malpractice cause of action. *See Roark v. Humana, Inc.*, 307 F.3d 298, 309 (5th Cir. 2002) ("This court has treated as a given that ERISA provides no cause of action for medical malpractice against an HMO"); *Cristantielli v. Kaiser Foundation Health Plan of Texas*, 113 F.Supp.2d 1055, 1063 (N.D. Tex. 2000) (ERISA, despite its expansive preemption clause, does not preempt claims for medical malpractice); *Marshall v. East Carroll Parish Hosp.*, 134 F.3d 319, 322 (5th Cir. 1998) (EMTALA establishes neither a federal medical malpractice cause of action nor a nationalized standard of medical care); *Guzman v. Memorial Hermann Hospital System*, 637 F.Supp.2d (S.D. Tex. 2009) (same); *Brown v. Wilson*, 2012 WL 6719464, at *3 (N.D. Tex. 2012) ("when a plaintiffs' core complaint is incompetent treatment for his underlying medical condition, such a complaint does not state a claim for relief under the ADA because the ADA does not create a remedy for medical malpractice").

Regarding similar cases from other circuits, *see Jackson v. Sedgwick*, 731 F.3d 556, 568-69 (6th Cir. 2013) (RICO "is not a means for federalizing personal injury tort claims arising under state law"); *and Aaron v. Atiq Durrani*, 2014 WL 996471 (S.D. Ohio 2014) ("Among other things, if the Court were to accept Plaintiffs' theory, any hospital will have engaged in a pattern of racketeering activity when a credentialed physician of the hospital is accused of committing medical malpractice. This is nonsense.").

### 4. Dr. Miller is entitled to dismissal of Plaintiffs' claims against her on the ground that they are health care liability claims.

Each of Plaintiffs' claims against Dr. Miller are properly characterized as health care liability claims under Chapter 74 of the Texas Civil Practice and Remedies Code and cannot be recast as claims under the federal Sex Trafficking statute, the federal Forced Labor statute, or the RICO statute. For this reason Plaintiffs have failed to state a claim upon which relief can be

granted and Dr. Miller is entitled to dismissal of all causes of action brought against her in this lawsuit.

The Court should note that the statute of limitations for health care liability claims in Texas is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a).  Based on the Amended Complaint, the latest date of Dr. Miller's treatment of Plaintiff Goedinghaus was October 2019.  The original Complaint was not filed until November 1, 2022, over three years later.  Plaintiffs' claims against Dr. Miller are thus subject to dismissal because of the expiration of the applicable statute of limitations.  See *Kaiser Aluminum & Chem. Sales, Inc.,* 677 F.2d at 1050 ("a complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action.").

**B.** **Dismissal is Also Appropriate under Rule 12(b)(6) because the Complaint Fails to Satisfy the Pleading Requirements of Rule 8.**

Alternatively, dismissal is appropriate because Plaintiffs' Amended Complaint fails to satisfy the pleading requirements of Rule 8.  The Amended Complaint attempts to transform a series of domestic disputes between Plaintiffs and the Domestic Partner Defendants into a sweeping criminal sex trafficking venture and RICO enterprise without giving Defendants sufficient notice to adequately respond to the allegations. "To form a defense, a defendant must know what he is defending against; that is, he must know the legal wrongs he is alleged to have committed and the factual allegations that form the core of the claims asserted against him." *Standard v. Nygren*, 658 F.3d 792, 799-800 (7th Cir. 2011); *see also Noble Capital Tex. Real Estate Income Fund LP v. Newman*, No. 1:22-cv-652, 2023 WL 3035411, at \*3 (W.D. Tex. Jan. 13, 2023) ("The Federal Rules of Civil Procedure, the clear precedent in the Fifth Circuit, and

basic notions of fairness and justice require the undersigned to recommend dismissal of the Fund's claims due to illicit group pleading.").

The Amended Complaint relies heavily on "everyone did everything" allegations. *See, e.g.,* Am. Compl. ¶¶ 413-418 (stating all defendants participated in alleged predicate acts). Each of Plaintiffs' four counts in their Amended Complaint is made "against all Defendants." (*Id.* ¶¶ 423, 427, 431, 441.) The first sentence of each count adopts and realleges all prior paragraphs. *Id.* And each count is merely a recitation of the elements of each cause of action alleged without specific facts. *Id.* After a careful reading of the Amended Complaint, it remains unclear which allegations concerning which defendant make up each claim. *See Langston v. Ethicon*, No. 3:20-cv-3712, 2021 WL 6198218, *3 (N.D. Tex. Dec. 31, 2021) ("The Fifth Circuit disfavors what it has referred to as the 'shotgun approach' to pleadings where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick").

As discussed in detail below, each of the causes of action pleaded against Dr. Miller (Counts One, Two, Three and Four) should be dismissed for noncompliance with Rule 8(a).

### 1.   *Counts One and Two – Violation of the TVPA (Sex and Labor Trafficking).*

The Victims of Trafficking and Violence Protection Act of 2000 ("TVPA") creates a private right of action for a victim of sex or labor trafficking as defined in the act. 18 U.S.C. § 1595(a). There are two types of liability under the TVPA: (1) for *perpetrators* of a violation; and (2) for anyone who knowingly *benefits from participation* in a "venture" that violates the TVPA. 18 U.S.C. § 1591(a)(1)-(a)(2). Plaintiffs' Amended Complaint alleges that Dr. Miller benefitted from her participation in the Venture. Am. Complaint, ¶ 342.

Plaintiffs do not plead facts that plausibly make up a cause of action against Dr. Miller under the TVPA. The only facts pleaded in the Complaint regarding Dr. Miller's liability under

the TVPA is that she accepted payments from Plaintiffs or Rick with knowledge of the alleged Venture.  However, there is an "obvious alternative explanation" as to why Dr. Miller accepted payments from Plaintiffs (or Rick) – the payments were for medical services she provided to Plaintiff Goedinghaus.  Based on this obvious alternative explanation, the TVPA causes of action fail to "cross the plausibility threshold" and thus fail to state a claim upon which relief can be granted.

These causes of action against Dr. Miller should be dismissed because the Amended Complaint fails to plausibly show that Dr. Miller benefited from any sex trafficking venture.

### 2. Counts Three and Four:  Violations of RICO (Pattern of Racketeering and RICO Conspiracy)

#### a.  Plaintiffs Lack RICO Standing.

To allege RICO standing, Plaintiffs must allege injury to their business or property.  18 U.S.C. § 1964(c).  "The phrase 'injury to business or property' excludes personal injuries." *See, e.g.*, *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001); *see also Jackson v. Sedgwick Claims Mgmt. Servs.*, Inc., 731 F.3d 556, 565–66 (6th Cir. 2013) ("Although courts have used various terms to describe the distinction between non-redressable personal injury and redressable injury to property, the concept is clear: both personal injuries and pecuniary losses flowing from those personal injuries fail to confer relief under § 1964(c).").

Plaintiff Goedinghaus alleges the following supposed RICO injuries: (1) lost money that Plaintiffs earned for sexual acts at swinger parties, and (2) "physical and emotional injury." (Am. Compl. ¶¶ 416, 447.)  Neither provides a basis for RICO standing. As a matter of law, the conclusory allegations that Defendants "damaged" Plaintiffs or "caused physical and emotional injury" are insufficient, as these are not damages for injury to business or property.  Also as a matter of law, money earned at parties in exchange for sexual acts (i.e., for illegal prostitution) is

not recoverable under RICO.  *See Shulman v. Kaplan*, 2020 WL 7094063, at *2 (C.D. Cal. Oct. 29, 2020) (injuries to illegal businesses are not redressable under RICO); Tex. Penal Code § 43.02 (illegal to receive a fee to engage in sexual conduct).  Plaintiff Goedinghaus clearly has no standing to bring a RICO complaint against Dr. Miller (or any other defendant).

### b.  *Plaintiffs Fail to Allege a Section 1962(c) Claim*

To sustain a civil RICO claim under 18 U.S.C. § 1962(c), Plaintiffs must plausibly allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's business or property. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also Arruda v. Curves, Int'l, Inc.*, 861 Fed. App'x 831, 834 (5th Cir. 2021).

### (1)  *Plaintiffs Fail to Allege an "Enterprise."*

First of all, Plaintiffs have failed to plausibly identify any enterprise that Dr. Miller was a part of.  There are two categories of associations that come within the purview of the statutory definition of "enterprise."  *See* 18 U.S.C. § 1961(4). The first encompasses "legal entities" (not applicable to Dr. Miller) and the second covers "any union or group of individuals associated in fact although not a legal entity." *United States v. Turkette*, 452 U.S. 576, 581-82 (1981).  To allege an association-in-fact enterprise, Plaintiffs must plead that it has (1) a common purpose, (2) a structure or organization, and (3) longevity necessary to accomplish the purpose. *See McPeters v. Edwards*, 806 F.Supp.2d 978, 988 (S.D. Tex. 2011).  At a minimum, they must allege that Defendants had a "[common] purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*

The Amended Complaint does not plausibly allege a common purpose shared by all Defendants.  Rather, it alleges that the *purposes* of the supposed criminal enterprise were "to traffic

women for purposes of sexual acts and forced labor, to the financial benefit of Mr. Hubbard, Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants." (Am. Compl. ¶ 445.)  The facts alleged do not plausibly show any "common purpose and course of conduct" among the Defendants; instead, the allegations are that each Defendant acted with distinct purposes, interests, and goals.  *See Boyle v. United States*, 556 U.S. 938, 950 (2009).  For example: the medical doctors prescribed drugs to Plaintiffs for their own pecuniary gain, not to traffic Plaintiffs (Am. Compl. ¶ 145); Defendant Grover's goal was to withhold for his own benefit Ms. Hubbard's wages at a gentleman's club (*Id.* ¶ 251); Defendant Hynes Jr. is an alleged drug dealer who had Plaintiff Hubbard sell drugs for his own financial gain (*Id.* ¶ 270); there is no indication what purpose Defendant Mitchell had for "fixing" unidentified "problems" (*Id.* ¶ 159); and the goal of the so-called "Investor Defendants" was allegedly to receive "sex and media of naked women or individuals engaged in sex acts." (*Id.* ¶ 38.)  Rick's purpose was allegedly to force Plaintiffs and others to "perform sex acts for payment, which payments he retained, and to secure business relationships." (*Id.* ¶ 3.)  The Amended Complaint's conclusory attempt to align defendants' goals cannot change the fact that their interests point in different directions.  *See Baker v. IBP*, Inc., 357 F.3d 685, 691 (7th Cir. 2004) (finding "divergent goals" among defendants insufficient to allege a RICO enterprise).

Plaintiffs also do not adequately allege that Defendants had sufficient relationships, i.e., they do not allege any organization or coordinated activities as a continuing unit.  Taking the Amended Complaint at face value, the alleged participants in the "Enterprise" that somehow sprung from the supposed sex trafficking "Venture" never planned anything, worked together to obtain a common end, split profits, or even knew who each other were in most cases.  *See Labaty v. UWT, Inc.,* 121 F. Supp. 3d 721 (W.D. Tex. 2015) at 753 (no enterprise where there were no

facts indicating that individual defendants together planned, discussed roles, or coordinated efforts).

The RICO claim also fails because the Complaint conflates the supposed "Enterprise" with the alleged pattern of racketeering.  Again, the Enterprise supposedly arose out of Mr. Hubbard's Venture for "traffic[king] women for purposes of sexual acts and forced labor" purely by happenstance.  (Am. Compl. ¶¶ 6, 445.)  There are no allegations indicating that there is an enterprise that stands "separate and apart" from these wrongful acts—a basic requirement for a RICO claim.  *See McPeters*, 806 F.Supp.2d at 988 (dismissing complaint that conflates alleged enterprise with alleged pattern of racketeering).

### (2) Plaintiffs Do Not Sufficiently Allege RICO "Conduct."

RICO requires Plaintiffs plead that Dr. Miller "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the alleged] enterprise's affairs."  18 U.S.C. § 1962(c).  In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the U.S. Supreme Court set forth the "operation and management test" for determining what constitutes "conduct or participation" for a RICO claim.  The "operation and management test" requires that a defendant "have some part in directing [the enterprise's] affairs."  *Id.* at 179.  Under this test, the Supreme Court limited RICO liability: a defendant with mere "non-supervisory involvement" does not "direct" the enterprise's affairs.  *See Gutierrez v. Venegas*, No. 6:20-cv-129, 2021 WL 9314946, *5 (N.D. Tex. Sept. 8, 2021); *see also Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015) (plaintiff must show defendant had "supervisory involvement" to satisfy conduct requirement).

There are no allegations that Dr. Miller played a supervisory role in the alleged Enterprise. The only allegations against her are that she prescribed medications to Plaintiffs with knowledge that the medications were being used by the alleged Enterprise for improper purposes.  These

allegations do not come close to demonstrating management, command, carrying out of tasks by Dr. Miller, or that the so-called Enterprise would fall apart without her.  Alleging that Dr. Miller simply knew that potentially illegal activity was occurring does not give rise to RICO liability. *See Walter v. Drayson*, 538 F.3d 1244, 1248 (9th Cir. 2008) (noting *Reves* requires "some degree of direction" and that "fail[ure] to stop illegal activity" is not enough").

### (3) Plaintiffs' RICO Conspiracy Claims Also Fail.

To adequately plead a RICO conspiracy claim under section 1962(d), a plaintiff must first adequately plead a cognizable substantive RICO violation of sections 1962(a), (b) or (c).  *See Poe v. Bock*, No. EP-cv-17-232, 2018 WL 4677901, *5 (W.D. Tex. Jun. 11, 2018).  As shown above, Plaintiffs failed to adequately allege a substantive RICO claim under Section 1962(c) (the only substantive RICO claim they allege).

### III.
### CONCLUSION

Plaintiffs' Amended Complaint against Dr. Miller should be dismissed on the ground that all of these claims are in actuality health care liability claims that must be filed under Chapter 74 of the Texas Civil Practice and Liability Code.  Plaintiffs' Amended Complaint against Dr. Miller should be dismissed on the further ground that it fails to meet the minimum pleading standards set forth in Fed. R. Civ. P. 8(a) and fails to set forth allegations that sufficiently plead a cognizable claim for relief against Dr. Miller.  For all the foregoing reasons, Dr. Miller respectfully requests that the Court dismiss the Amended Complaint without leave to amend.

Respectfully submitted,

**GERMER BEAMAN & BROWN PLLC**
One Barton Skyway
1501 S Mopac Expy, Suite A400
Austin, Texas 78746
(512) 472-0288
(512) 472-0721 Fax

By:    */s/ R. Chad Geisler*
　　　　R. Chad Geisler
　　　　State Bar No. 00793793
　　　　cgeisler@germer-austin.com
　　　　Steve Dillawn
　　　　State Bar No. 05871300
　　　　sdillawn@germer-austin.com

**ATTORNEYS FOR DEFENDANT
DR. MELISSA MILLER**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify by my signature below that a true and correct copy of the foregoing document was served on all attorneys of record on this 21st day of July, 2023.

　　　　　*/s/ R. Chad Geisler*
　　　　R. Chad Geisler

20