**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **JULIA HUBBARD and** **KAYLA GOEDINGHAUS,** | |
| *Plaintiffs,* | **CIVIL ACTION NO.** |
| **VS.** | **5:23-cv-00580-FB-EC** |
| **MICHAEL SCOTT WOODS, M.D., ET AL.** | |
| *Defendant,* | |

**DEFENDANT MICHAEL SCOTT WOODS, M.D.'S MOTION TO DISMISS**
**PLAINTIFFS' AMENDED COMPLAINT**

On June 6, 2023, Defendant Michael Scott Woods, M.D (hereafter, "Dr. Woods") filed his Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).  On  June 27, 2023, this Court granted Plaintiffs' Request for Leave to File an Amended Complaint.  On July 7, 2023, Plaintiffs filed their Amended Complaint.  On July 10, 2023, this Court denied Dr. Woods' Motion to Dismiss without prejudice as to refiling of the same.

Pursuant to Fed. R. Civ. P. 15(a)(3), Dr. Woods files this Motion to Dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In making this Motion, Dr. Woods incorporates by reference all arguments regarding Rules 8 and 9 Federal Rules of Civil Procedure, 18 U.S.C. §§ 1962 and 1964, and Chapter 74 of the Texas Civil Practice and Liability Code, as more fully briefed by other defendants to this matter in their respective motions to dismiss.  Accordingly, in support of this Motion, Dr. Woods would show as follows:

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ...................................................................................................4

II.    STATEMENT OF THE ISSUES,...........................................................................6

III.   FACTUAL BACKGROUND ..................................................................................6

     A.     General Allegations against all "Medical Doctor Defendants." .............................6

     B.     Specific Allegations against Dr. Woods. ...............................................................7

IV.   ARGUMENT AND AUTHORITIES.......................................................................9

     A.     Federal Rule of Civil Procedure 12(b)(6)'s Dismissal Standard ...........................9

     B.     18 U.S.C. § Creates a Civil Remedy for Victims of Trafficking and Forced Labor. .................................................................................................................10

     C.     Plaintiffs' Allegations Against Dr. Woods Do Not Give Rise To A Plausible Claim for Relief Under 18 U.S.C. § 1591(a). .......................................................10

          (1)     Plaintiffs' grouped allegation that they informed all Medical Doctor Defendants that Defendant Hubbard was abusing them and that they needed help does not establish a plausible claim for relief against Dr. Woods......12

          (2)     Plaintiffs' grouped allegations against the Medical Doctor Defendants do not plausibly establish how Dr. Woods, in particular, knowingly participated in or benefited from sex trafficking involving the Plaintiffs ...............................................................................................13

          (3)     The allegations in Plaintiffs' Complaint which specifically describes Dr. Woods' conduct does not plausibly establish that he was aware of sex trafficking involving the Plaintiffs or that he knowingly benefitted by from participating in what he knew or should have known was a venture engaged in trafficking the Plaintiffs ................................................................14

     D.     Plaintiffs' Allegations Against Dr. Woods Do Not Give Rise To A Plausible Claim for Relief Under 18 U.S.C. § 1589............................................................17

     E.     Plaintiffs' Allegations Against Dr. Woods Do Not Give Rise To A Plausible Claim for Relief Under 18 U.S.C. §§ 1962 and 1964...........................................18

V.    CONCLUSION AND REQUEST FOR RELIEF...............................................20

## INDEX OF AUTHORITIES

**Statutes**                                                                                                                                 **Page**

18 U.S.C. § 1589 ……………………………….............................................6, 10, 17

18 U.S.C. § 1591 ………………………………….............................................6, 10-11, 17

18 U.S.C. § 1595 ………………………………………….............................................*passim*.

18 U.S.C. § 1962 ……………………………….............................................6, 18-20

18 U.S.C. § 1964 ………………………………….............................................6, 18-19

Tex. Fam. Code  § 261.101 …………………………………………………………12, 16

Fed. R. Civ. P. 12 ……………………..………………………………….......................6, 9

Tex. Health & Safety Code § 611.004 …………………………………………..……12

**Cases**                                                                                                                                     **Page**

*Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023) …………………………..……………..……13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ………………………………..……………….9, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) …………………………..………….14, 17, 20

*Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016,

      2021 WL 1186333 (S.D. Tex. Mar. 30, 2021) ………………………………..…...11, 15

*E.S. v. Best W. Int'l, Inc.,* 510 F. Supp. 3d 420 (N.D. Tex. – Dallas 2021) ……………………11-13

*Harris v. Henry*, No. 1:22-CV-00366-LY,

      2022 WL 16825200 (W.D. Tex. – Austin Nov. 7, 2022) ……………………………11, 16-17

*Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417 (5th Cir. 2001) ………………….……………..…18

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890 (5th Cir. 2019) …………..9

*Jackson v. Sedgwick Claims Mgmt. Servs.*, Inc., 731 F.3d 556 (6th Cir. 2013) ……………….…18

*Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018) …………………………………11

*Ramsbottom v. Ashton*, No. 3:21-CV-00272,

    2022 WL 106733 (M.D. Tenn. Jan. 11, 2022) …………………..………..…………16

*Thapar v. Zezulka*, 994 S.W.2d 635 (Tex. 1999) ………………………………………………..12, 16

## I.    INTRODUCTION

1.    Plaintiffs Julia Hubbard and Kayla Goedinghaus allege that, between 2009 and 2022, Defendant Rick Hubbard formed and operated a human trafficking "Venture" and racketeering "Enterprise" to force or otherwise coerce Plaintiffs into committing commercial sex acts and obtain their forced labor.  Plaintiffs make these claims under the Trafficking Victims Protection Act ("TVPA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In support of these allegations, Plaintiffs make sweeping claims against numerous defendants, including Movant herein, Defendant Michael Scott Woods, M.D., claiming that he knowingly participated in the Venture (or Enterprise) and personally benefited from it financially.

2.    However, a review of Plaintiffs' Amended Complaint reveals a repeat failure to legally plead any facts which demonstrate how Dr. Woods knowingly caused Plaintiffs to engage in commercial sex acts or obtained their forced labor.  They also fail to plead any facts which demonstrate that he knowingly benefited from participation in what he knew or should have known was an unlawful trafficking or forced labor Venture involving the Plaintiffs.

3.    Most of Plaintiffs' allegations against Dr. Woods occur in the context of grouped allegations against multiple "Medical Doctor Defendants" that treated one or both of the Plaintiffs. As a psychiatrist, Dr. Woods treated **only** Plaintiff Hubbard as a patient, as is established by the Amended Complaint.

4.    Plaintiffs' broad and conclusory group allegations fail to give rise to any plausible claims of relief against Dr. Woods, as they do not describe what Dr. Woods supposedly did to

knowingly participate in the Venture (or Enterprise) or how he knowingly benefitted from it.  Rather, these allegations take a "each doctor did everything against both Plaintiffs" approach, even though Plaintiffs' Amended Complaint establishes that Dr. Woods only interacted with and treated Plaintiff Hubbard as a patient.  Moreover, even if accepted as true, Plaintiffs' allegations against the Medical Doctor Defendants only establish that Plaintiffs reported to these medical providers that they were being abused.  These allegations do not establish a plausible claim for relief that the Medical Doctor Defendants, including Dr. Woods, knowingly participated in or benefited from a sex trafficking and forced labor venture.

5.    The only allegations specific to Dr. Woods, if taken as true, merely establish that Plaintiff Hubbard was exhibiting signs of physical abuse and confided to Dr. Woods during a psychiatric appointment that, at some point, an unidentified actor forced her to engage in sex and that she did not want to take her prescribed medications.   These allegations do not state a plausible claim for relief against Dr. Woods under the TVPA, as they do not establish that he knowingly trafficked Plaintiffs, obtained their forced labor, or received a benefit by participating in a venture that he knew or should have known was engaged in trafficking the Plaintiffs.

6.    In addition, Plaintiffs have not established standing as a RICO civil claimant, as they do not allege any injury to their business or property. Instead, they only allege general damages, personal injury, and mental anguish.  Plaintiffs' other allegations fail to give rise to any plausible claims of relief against Dr. Woods under RICO, as they are conclusory recitations of the RICO statute's liability provisions.  For all of these reasons, the Court should grant the instant Motion to Dismiss.

## II.   STATEMENT OF THE ISSUES,

7.   Dr. Woods submits the following statement of the issues that are the subject of this motion:

- In their Amended Complaint, Plaintiffs fail to state a plausible claim for relief under 18 U.S.C. §§ 1589, 1591, and 1595 by making general and conclusory allegations that Dr. Woods knowingly participated in or received a benefitted from a venture designed to force Plaintiffs into performing commercial sex acts and unpaid labor.   The only specific allegations relate to Dr. Woods' supposed failure to recognize and respond to signs of Plaintiff Hubbard's physical and mental abuse while he treated her as a patient and prescribed her medication.   These alleged failures are not equivalent to properly pleading that Dr. Woods perpetrated Plaintiffs' trafficking or knowingly received a benefit from participating in what he knew or should have known was a venture engaged in trafficking the Plaintiffs. Plaintiffs' deficient pleadings render the case suitable for dismissal under FED. R. CIV. P. 12(b)(6).

- Plaintiffs' RICO claims are suitable for dismissal under FED. R. CIV. P. 12(b)(6) as Plaintiffs have not alleged any injury to their property or business, as is required under 18 U.S.C. §§ 1962 and 1964.  Thus, Plaintiffs have no civil RICO standing and this Court should dismiss their Amended Complaint against Dr. Woods. Furthermore, Plaintiffs' allegations regarding the supposed RICO "enterprise" and Dr. Woods' pattern of racketeering are vague and conclusory. Plaintiffs' deficient pleadings under RICO likewise render the case suitable for dismissal under FED. R. CIV. P. 12(b)(6).

## III.   FACTUAL BACKGROUND

8.   In their Amended Complaint, Plaintiffs allege that Defendant Richard Hubbard ran a sex and labor trafficking venture (referred to by Plaintiffs throughout their Amended Complaint as "Venture" or "Enterprise") for his financial gain.  (*See* Comp., ¶1).  Plaintiffs assert that Defendant Hubbard utilized the "essential services of numerous doctors," to "develop and run this successful venture," including Dr. Woods, Plaintiff Hubbard's treating psychiatrist.  (*See* Comp., ¶2).

### A.   General Allegations against all "Medical Doctor Defendants."

9.   Plaintiffs place Defendant Dr. Woods in the category of "Medical Doctor Defendants." (*See* Comp., ¶14). Except for a few paragraphs in their Amended Complaint (which specifically pertain to Dr. Woods), Plaintiffs allege that every "Medical Doctor Defendant" committed the following acts: ignored Plaintiffs' pleas for assistance, failed to take action in

response to Plaintiffs' reports of abuse and requests for help, prescribed drugs that Defendant Eller had requested in return for payment from Defendant Hubbard, and prescribed large doses of a wide variety of mediations, which allowed the Venture to function. (*See* Comp., ¶¶13-16, 138, 140-152).

10.     Plaintiffs allege that all "Medical Doctor Defendants knowingly provided essential support to the Venture, with knowledge or at least reckless disregard of its improper activities, in exchange for financial benefit." (*See* Comp., ¶141).  In support of this supposed "knowledge" or "reckless disregard," Plaintiffs contend that both Plaintiffs informed "[e]ach and every one of the Medical Doctor Defendants that the drugs that the Medical Doctor Defendants were prescribing were being used for an improper purpose, that [Plaintiffs] were being abused by [Defendant Hubbard], and that [Plaintiffs] needed help." (*See* Comp., ¶142).  In addition, Plaintiffs allege that, even if Plaintiffs had not informed the Medical Doctor Defendants of the Venture (which they purportedly did), the Medical Doctor Defendants prescribed high doses of medication without proper diligence, which placed them in "reckless disregard of the fact that these drugs were being used for an improper purpose and reasonable diligence would have required further inquiry." (*See* Comp., ¶¶145 and 148).

### B.     Specific Allegations against Dr. Woods.

11.     Again, all of the above constitute global accusations against the entire category of "Medical Doctor Defendants" and not Dr. Woods alone.  Examination of the few paragraphs in Plaintiffs' Amended Complaint that contain specific allegations against Dr. Woods shows that, despite the phrasing in every other grouped allegation in the Amended Complaint, Dr. Woods only treated Plaintiff Hubbard as a patient.

The specific allegations against Dr. Woods are as follows:

1.     It is not as if [the Medical Doctor Defendants] did not speak to the Plaintiffs; they did – but they ignored Plaintiffs' pleas

for assistance, and, in the case of Defendants Woods and Shah, ignored Hubbard's visible bruising, frequent injuries, and frequent surgeries that indicated physical abuse. (*See* Comp., ¶15).

2.      [Defendant Hubbard] also directed [Plaintiff Hubbard] to Woods, a psychiatrist. [Defendant Hubbard] acted eager for [Plaintiff Hubbard] to visit Woods, and Woods appeared particularly eager to prescribe drugs without question. Woods repeatedly assured [Plaintiff Hubbard] that he would give her "whatever [she] need[ed]," even when she repeatedly showed up for appointments while visibly on drugs. [Defendant Hubbard] would pay Woods $100 per visit for this service. In 2017, [Plaintiff Hubbard] told Woods that she did not need the drugs and was being forced to engage in sex against her will. Woods's[sic] action constituted a dealing in a controlled substance, a predicate act under RICO. (*See* Comp., ¶144).

3.      Woods is liable to both Plaintiffs under TVPA beneficiary liability because he benefitted, financially or by receiving anything of value, by participating in the Venture. (*See* Comp., ¶352).

4.      Woods provided assistance, support and facilitation to the Venture, including by prescribing controlled substances to Plaintiff Hubbard that allowed the Venture to force Hubbard to perform commercial sex acts against her will. (*See* Comp., ¶353).

5.      Woods received things of value from the Venture, including payment from Rick Hubbard on behalf of the Venture for Hubbard's visits to Woods, for which Rick Hubbard paid $100 per visit. (*See* Comp., ¶354).

6.      Woods knew or should have known of the trafficking acts, including because, In 2017, Hubbard informed Woods that Rick Hubbard and the Venture were, through the use of the drugs that Woods prescribed as well as other methods including beatings, forcing Hubbard to engage in commercial sex against her will. (*See* Comp., ¶355).

7.      On one occasion, Hynes went to an appointment with Plaintiff Hubbard to see Dr. Woods. At the appointment he tried to get Hubbard prescriptions for more drugs, including methamphetamines. (*See* Comp., ¶356).

## IV.    ARGUMENT AND AUTHORITIES

### A.    Federal Rule of Civil Procedure 12(b)(6)'s Dismissal Standard

12.    A defendant may move for dismissal of a plaintiff's complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). A motion asserting this defense must be made before pleading if a responsive pleading is allowed. *Id*.

13.    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks removed) (citing another case).  When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, a claim has facial plausibility. *Id*. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.

14.    The "plausibility" standard is not a "probability requirement," but it does ask for "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks removed) (citing another case).  When assessing a Rule 12(b)(6) motion to dismiss, the court limits its factual inquiry to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

**B.     18 U.S.C. § Creates a Civil Remedy for Victims of Trafficking and Forced Labor.**

15.     18 U.S.C. § 1595 creates civil remedies for victims of sex trafficking or forced labor. 18 U.S.C. § 1595.  Therefore, civil remedies exist for violations of 18 U.S.C. § 1591 and 18 U.S.C. § 1589, which criminalize sex trafficking and forced labor, respectively. *Id.*

16.     Although Plaintiffs have not cited to 18 U.S.C. § 1595 in their Amended Complaint beyond stating that the statute provides subject matter jurisdiction and attorney fees, this statute provides the relevant civil liability standard.  A plaintiff who alleges to be a victim of a 18 U.S.C. §§ 1591 or 1589 violation may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter). 18 U.S.C. § 1595(a).

**C.     Plaintiffs' Allegations Against Dr. Woods Do Not Give Rise To A Plausible Claim for Relief Under 18 U.S.C. § 1591(a).**

17.     A person violates 18 U.S.C.A. § 1591(a)(1) when he or she knowingly in or affecting interstate commerce recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person knowing that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sex act. 18 U.S.C. § 1591(a)(1). Under 18 U.S.C. § 1595, an individual who is a victim of these illicit acts may bring a civil action against the perpetrator. 18 U.S.C. § 1595(a). This statute uses virtually the same language as § 1591.

18.     A person violates 18 U.S.C. § 1591(a)(2) when he or she benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described under 18 U.S.C. § 1591(a)(1).  18 U.S.C. § 1591(a)(2). Some courts refer to allegations under this

subsection as the "financial beneficiary" theory of liability. *See, e.g., E.S. v. Best W. Int'l, Inc.,* 510 F. Supp. 3d 420, 426 (N.D. Tex. – Dallas 2021). To state a claim under a 18 U.S.C. § 1595 financial beneficiary theory, a plaintiff must allege facts from which it can be reasonably inferred that a defendant (1) knowingly benefitted financially or by receiving anything of value, (2) from participation in a venture, (3) that he or she knew or should have known has engaged in sex trafficking under § 1591. *E.S.,* 510 F. Supp. 3d at 426.

19.      Financial beneficiary liability under §§1591(a)(2) and 1595(a) cannot be established by association alone, and a plaintiff must allege facts showing that a beneficiary defendant was aware of the sex trafficking venture. *Harris v. Henry*, No. 1:22-CV-00366-LY, 2022 WL 16825200, at *6 (W.D. Tex. Nov. 7, 2022), *report and recommendation approved*, No. 1:22-CV-366-LY, 2023 WL 3035423 (W.D. Tex. Jan. 11, 2023).  Because liability cannot be established by association alone, a plaintiff must allege specific conduct that furthered the sex trafficking venture.  *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018).  A Plaintiff must allege facts that show the defendant undertook the conduct "with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture. In other words, some participation in the sex trafficking act itself must be shown." *Id*.

20.      To state a plausible claim for relief under §§1591 and 1595(a), a plaintiff must demonstrate "more than a sheer possibility" that a defendant knew or should have known of plaintiff's sex trafficking.  *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *2 (S.D. Tex. – Houston Mar. 30, 2021).

**(1)    Plaintiffs' grouped allegation that they informed all Medical Doctor Defendants of the "Venture" and that Defendant Hubbard was abusing them and that they needed help does not establish a plausible claim for relief against Dr. Woods for sex trafficking.**

21.    Each paragraph in Plaintiffs' Amended Complaint that refers to the "Medical Doctor Defendants" alleges circumstances that – accepted as true – are unfortunate, but they do not amount to Dr. Woods' perpetrating trafficking or knowingly benefitting from participation in what he knew or should have known was trafficking. (See Comp., ¶¶13-16, 138, 140-152, and 243). Rather than establishing that the Medical Doctor Defendants, including Dr. Woods, knowingly participated in or benefited from a venture that forced them into commercial sex acts, these paragraphs tell the story of two women who informed their doctors that they were in an abusive relationship with Defendant Hubbard. *See id.* Even taken as true, medical doctors who do not intervene on behalf of patients experiencing abuse to notify authorities are not knowingly participating in or receiving benefits from sex trafficking ventures.

22.    In fact, Texas law does not mandate that medical doctors disclose physician-patient communications regarding abuse unless the patient is a child. *See* Tex. Fam. Code § 261.101 (b) (statute mandating professionals to report child abuse or neglect); *see also Thapar v. Zezulka*, 994 S.W.2d 635, 640 (Tex. 1999) (declining to impose common law duty on mental health professionals to warn third parties of patient threats). Medical doctors *may* in their discretion disclose confidential physician-patient communications to law enforcement personnel if they determine there is a probability of imminent physical injury by the patient to the patient or others or there is a probability of immediate mental or emotional injury to the patient. Tex. Health & Safety Code § 611.004 (a)(1).

23.    The Northern District of Texas held pleading an alleged failure to alert authorities or "properly intervene in the situation" are not allegations sufficient to plead participation in a trafficking venture. *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d at 428. Although the E.S. case

involves trafficking allegations involving a hotel, this Court should find the *E.S. v. Best W. Int'l, Inc.* case persuasive in concluding that Dr. Woods alleged failure to intervene does not give rise to a plausible claim for relief for participation in trafficking involving the Plaintiffs.

> **(2)      Plaintiffs' grouped allegations against the Medical Doctor Defendants do not plausibly establish how Dr. Woods, in particular, knowingly participated in or benefited from sex trafficking involving the Plaintiffs.**

24.      Plaintiffs' group pleading of facts against the "Medical Doctor Defendants" also precludes a plausible claim for relief against Dr. Woods.  In each group pleading paragraph against the "Medical Doctor Defendants," Plaintiffs simply fault each and every doctor "as a group without factual material suggesting that any particular defendant" knowingly caused Plaintiffs to engage in commercial sex acts or benefited from participation in a venture engaged in the same.  *See Armstrong v. Ashley*, 60 F.4th 262, 274 (5th Cir. 2023).

25.      Plaintiffs' grouped allegations against Dr. Woods in each of the "Medical Doctor Defendants" paragraphs stop short of the line between possibility and plausibility of entitlement to relief.  Dr. Woods only treated Plaintiff Hubbard as a patient, as indicated by paragraphs 15, 144 and 150. (*See* Comp., ¶¶ 15, 144, and 150).   Nevertheless, the Amended Complaint contains multiple allegations that somehow both Plaintiff Hubbard and Plaintiff Goedinghaus informed "each Medical Doctor Defendant" of abuse, improper drug prescriptions, and the Venture itself.  (*See* Comp., at ¶¶ 15, 140, and 148). Considering that Plaintiffs' Amended Complaint does not establish that Dr. Woods had a doctor-patient relationship with Plaintiff Goedinghaus, these allegations do not establish a plausible claim for relief.  Stated differently, Plaintiffs' Amended Complaint does not permit this Court to draw the reasonable inference that Dr. Woods is liable for the misconduct alleged in these grouped allegations. *See Iqbal*, 556 U.S. at 678.

26.     In addition, Plaintiffs' grouped allegation against all "Medical Doctor Defendants," including Dr. Woods, that they "all knowingly provided essential support to the Venture, with knowledge or at least reckless disregard of its improper activities, in exchange for financial benefit" is conclusory and vague. *See* Comp., ¶ 141.  Similarly, the grouped allegation that Plaintiff Hubbard or Plaintiff Goedinghaus informed "[e]ach and every one of the Medical Doctor Defendants" that "the drugs [they] were prescribing were being used for an improper purpose" is equally conclusory and vague. *See* Comp., ¶ 15.    More specifically, these allegations do not offer any facts underpinning the scienter element of the human trafficking laws: that is, these allegations offer no factual basis for actually establishing Dr. Woods' alleged knowledge or constructive knowledge of trafficking or receiving a benefit from trafficking. *See* 18 U.S.C. §1595(a).

> **(3)     The allegations in Plaintiffs' Complaint which specifically describe Dr. Woods' conduct do not plausibly establish that he was aware of sex trafficking involving the Plaintiffs or that he knowingly benefitted from participating in what he knew or should have known was a venture engaged in trafficking the Plaintiffs .**

27.     Plaintiffs' particularized paragraphs against Dr. Woods in ¶¶ 15, 144, and 352-357 also fail to give rise to a plausible claim for relief against Dr. Woods. ¶¶ 352 and 357 are formulaic recitations of the elements of 18 U.S.C. § 1595(a), which are insufficient for a well pleaded complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (alteration in original) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

28.     Only ¶¶ 15, 144, 353-356 provide facts that go beyond mere statutory recitation. Ignoring the legal conclusions therein and accepting the factual allegations as true, these paragraphs merely establish the following: (1) Defendant Hubbard was "eager" for his wife, Plaintiff Hubbard, to visit Dr. Woods, a psychiatrist; (2) Dr. Woods was "eager" to prescribe drugs "without question;"

(3) Dr. Woods informed Plaintiff Hubbard, his patient, that he would give her whatever she needed; (4) Defendant Hubbard paid for Plaintiff Hubbard's (his wife's) medical treatment; (5) Plaintiff Hubbard informed Dr. Woods that she did not need the drugs and that she was being forced to engage in sex (with someone) against her will; (6) Plaintiff Hubbard was frequently injured or undergoing surgery; and (7) Defendant Michael Hynes, Jr. attended one of Plaintiff Hubbard's appointments with Dr. Woods, during which Defendant Hynes "tried to get Hubbard prescriptions for more drugs, including methamphetamines."   (*See* Comp., ¶¶ 15, 144, and 353-356).

29.     These allegations merely demonstrate the "sheer possibility" that Dr. Woods should have known that the payments he was receiving from Defendant Hubbard were a benefit from participation in an alleged sex trafficking venture. *See  Doe #9*, 2021 WL 1186333, at*1. This is legally insufficient.

30.     In short, none of these alleged facts establish that Dr. Woods knowingly in interstate commerce recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited Plaintiff Hubbard knowing that such acts would be used to cause her to engage in a commercial sex act.  Taken as true, these allegations merely establish that Dr. Woods knew that Defendant Hubbard was paying for his wife's medical treatment, that she was frequently injured and undergoing surgery, and that, at some point during their treatment sessions, Plaintiff Hubbard notified Dr. Woods that she had been forced to engage in sex with someone else. Regarding the allegation that Defendant Hynes accompanied Plaintiff Hubbard to an appointment, Plaintiffs do not allege that Dr. Woods knew who Defendant Hynes was, that Dr. Woods communicated with Defendant Hynes, that Dr. Woods knew that Defendant Hynes was attempting to "get" Plaintiff Hubbard prescription for drugs, or that Dr. Woods knew that Defendant Hynes was

doing so pursuant to a trafficking venture.   These alleged facts fall far short of the alleged "Venture" and "Enterprise" submitted by Plaintiffs.

31.     Plaintiffs fail to establish that the sex acts allegedly disclosed by Plaintiff Hubbard to Dr. Woods were committed in exchange for money or something of value. Notably, none of these allegations plausibly establish that Dr. Woods received payment from Defendant Hubbard as anything other than payment for his medical services as a licensed psychologist, much less that he knowingly received the payment as a financial benefit from a sex trafficking venture or enterprise. *See Harris*, 2022 WL16825200 at *7 (holding that allegations that defendant financed a film production company that sex trafficked an employee were insufficient to state a claim for relief because they did not show that defendant knew or should have known of the alleged sex trafficking).

32.     Also, as indicated above, Texas law does not mandate that medical doctors disclose physician-patient communications regarding abuse unless the patient is a child. *See* Tex. Fam. Code § 261.101 (b); *see also Thapar*, 994 S.W.2d at 640.   Alleging that Dr. Woods, as a treating psychologist, should have noticed signs of abuse and interceded is not equivalent to alleging that Dr. Woods benefitted, attempted to benefit, or conspired to benefit by receiving something of value from participating in what he knew or should have known was a venture engaged in trafficking the Plaintiffs.  *See* 18 U.S. Code § 1595(a).

33.     Taken as true, Plaintiffs' allegations suggest mere professional or medical negligence by Dr. Woods and, therefore, they do not offer a factual basis for establishing Dr. Woods' knowledge or constructive knowledge of trafficking or receiving a benefit from trafficking. *See* 18 U.S.C. §1595(a). In addition, Plaintiffs have not pointed to any actual facts that support their assertion that Dr. Woods knew or should have known that Defendant Hubbard was engaged in sex trafficking at all, much less sex trafficking that involved the Plaintiffs. *See Ramsbottom v. Ashton*,

No. 3:21-CV-00272, 2022 WL 106733, at *11 (M.D. Tenn. Jan. 11, 2022); see also *Harris*, 2022 WL 16825200, at *6 ("Because liability under § 1591(a)(2) cannot be established by association alone, Plaintiff must allege facts showing that [defendant] was aware of the sex trafficking venture."). Accordingly, the Court should dismiss Plaintiffs' claim against Dr. Woods.

>   **D.**   **Plaintiffs' Allegations Against Dr. Woods Do Not Give Rise To A Plausible Claim for Relief Under 18 U.S.C. § 1589.**

34.   A person violates 18 U.S.C. § 1589 when he or she knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by improper means.  These improper means include (1) force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) serious harm or threats of serious harm to that person or another person; (3) abuse or threatened abuse of law or legal process; or (4) schemes, plans, or patterns intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint. 18 U.S.C. § 1589.

35.   None of the facts alleged in the Amended Complaint against Dr. Woods, either in particular or generally as a Defendant, give rise to a plausible claim for relief against Dr. Woods for a violation of 18 U.S.C. § 1589.  Plaintiffs' Amended Complaint broadly alleges that all Defendants, including Dr. Woods, knowingly provided or obtained Plaintiffs' labor or services by improper means and that Defendants benefited financially from their participation in a venture engaged in providing or obtaining Plaintiffs' labor or services by proper means. (*See* Comp., ¶¶427-428). However, these assertions are simply a formulaic recitation of 18 U.S.C. § 1589's language woven together with conclusory statements, and this Court should disregard them as such. *See Twombly*, 550 U.S. at 545.  Beyond these conclusory statements, Plaintiffs do not cite to any facts which give rise to a plausible claim for relief against Dr. Woods for violation of 18 U.S.C. § 1589.

36.     Moreover, the only paragraph in Plaintiffs' Amended Complaint that alleges that Dr. Woods, in particular, provided or obtained Plaintiffs forced labor merely asserts a legal conclusion. (*See* Comp., ¶357) ("These acts also constitute labor trafficking under the TVPA, as Woods participated in and benefited from the Venture, which also obtained forced labor from Plaintiffs.").

37.     As for what constituted Plaintiffs' "forced labor," Plaintiffs' allege that Defendant Hubbard forced Plaintiff Hubbard to sell drugs for his benefit and forced Plaintiff Goedinghaus to help him run his "fraudulent companies." (*See id* at ¶291). Nowhere in Plaintiffs' Amended Complaint do they allege any facts that plausibly establish that Dr. Woods was aware of these purported forced labor ventures much less that he was knowingly participating in or benefitting from them financially.

**E.     Plaintiffs' Allegations Against Dr. Woods Do Not Give Rise To A Plausible Claim for Relief Under 18 U.S.C. §§ 1962 and 1964.**

38.     Under 18 U.S.C. § 1962(c), it is unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c).  Under 18 U.S.C. § 1962(d), it is unlawful for any person to conspire to commit the acts described above. *See id* at (d).

**(1)     Plaintiffs lack RICO standing, as they have failed to plead injury to business or property.**

39.     18 U.S.C. § 1964 creates civil remedies for violations of 18 U.S.C. § 1962. 18 U.S.C. § 1964(c).  Importantly, a claimant must suffer injury to her business or property to bring suit under 18 U.S.C. § 1964. *Id*.  "The phrase 'injury to business or property' excludes personal injuries." *See, e.g.*, *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001); *see also Jackson v. Sedgwick Claims Mgmt. Servs.*, Inc., 731 F.3d 556, 565–66 (6th Cir. 2013) ("Although courts have used

various terms to describe the distinction between non-redressable personal injury and redressable injury to property, the concept is clear: both personal injuries and pecuniary losses flowing from those personal injuries fail to confer relief under § 1964(c).")

40.     Plaintiffs' Amended Complaint fails to state a claim for relief for violations of 18 U.S.C. § 1962, as they have failed to allege that they have suffered injury to their business or property.  Instead, they generally claim that "[t]he predicate acts caused physical and emotional injury to Plaintiffs, in an amount to be determined at trial. (*See* Comp., ¶447).   These allegations are insufficient to state a plausible claim of relief for violations of the RICO act, and this Court should dismiss these claims on this basis alone.

> **(2)      Plaintiffs' RICO claims against Dr. Woods are conclusory and do not plausibly establish the existence of an "enterprise," that Dr. Woods participated in any "enterprise's" affairs through a pattern of racketeering, or that Dr. Woods conspired to do so.**

41.     In addition, as with Plaintiffs' sex trafficking and forced labor claims, Plaintiffs' Amended Complaint broadly alleges that all Defendants, including Dr. Woods, "came together to form an association in fact Enterprise" whose "legitimate purpose was subverted by illegal acts and violations of federal laws," including Defendants' engagement in activities which constituted "racketeering activity." (*See* Comp., ¶¶430-439).  Plaintiffs also allege that all Defendants, including Dr. Woods, conspired to violate the RICO Act.

42.     This Court received significant briefing by Defendants Coe Juracek, Melissa Miller, M.D., Trammel S. Crow, RCI Hospitality Holding, Inc., and Casey Grover pertaining to Plaintiffs' fail to statute a plausible claim for relief under 18 U.S.C. § 1964.   Plaintiffs' Amended Complaint does not overcome their failure to properly plead that the Defendants formed an "Enterprise" and each engaged in a pattern of racketeering activity, as pointed out by these Defendants in their previously filed motions to dismiss. These arguments equally apply to Dr. Woods, and – for the sake

of efficiency and brevity – Dr. Woods incorporates by reference their RICO Act arguments in this Motion.

43.     In short, Plaintiffs' assertions regarding Defendants' "Enterprise," the pattern of racketeering activity, and conspiracy are simply conclusory and a regurgitation of 18 U.S.C. § 1962's wording. *See Twombly*, 550 U.S. at 545. Plaintiffs' Amended Complaint does not plausibly establish that Dr. Woods, as an employee or associate of the supposed Enterprise, conducted or participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity or conspired to do the same. *See* 18 U.S.C. § 1962(c)-(d).

## V.     CONCLUSION AND REQUEST FOR RELIEF

44.     Plaintiffs' conclusory allegations against the Defendants, in general, and the sparse allegations against Dr. Woods, in particular, do not give rise to plausible claims for relief against Dr. Woods.  As such, Plaintiffs have failed to plead sufficient factual matters which, accepted as true, would allow this Court to draw a reasonable inference that Dr. Woods is liable for the misconduct alleged. As such, Plaintiffs have failed to state a claim upon which relief can be grated against Dr. Woods, and this Court should grant this Motion to Dismiss without leave to amend.

45.     WHEREFORE, PREMISES CONSIDERED, Defendant, Michael Scott Woods, M.D., requests that, upon notice, the Court grant its Motion to Dismiss without leave to amend and for such other and further relief to which it may show itself entitled, whether at law or in equity.

Dated:  July 21, 2023.

*Signature Page Follows*

Respectfully submitted,

**WOOD, SMITH, HENNING & BERMAN, LLP**

*/s/ Daniel J. Paret*
Daniel J. Paret, Texas State Bar No. 24088181
Robert W. Hellner, Texas State Bar No. 24108154
14860 Landmark Blvd. Suite 120
Dallas, Texas 75254
Tel: (469) 210-2054
Fax: (469) 210-2051
dparet@wshblaw.com
rhellner@wshblaw.com
***Attorneys for Defendant Michael Scott Woods, M.D.***

## <u>CERTIFICATE OF SERVICE</u>

I certify a copy of the foregoing document was filed in accordance with the protocols for e-filing in the United States District Court for the Western District of Texas on <u>July 21, 2023</u>, and served on all counsel of record who have appeared and consented to electronic notification *via* CM/ECF.

*/s/ Daniel J. Paret*
Daniel J. Paret