**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JULIA HUBBARD, *ET AL.*, | § | |
|  PLAINTIFFS, | § | |
| | § | |
| | § | CIVIL ACTION NO. 5:23-CV-00580-FB |
| v. | § | |
| | § | |
| TRAMMEL S. CROW, JR., *ET AL.*, | § | |
|  DEFENDANTS. | § | |

---

**DEFENDANT CODY MITCHELL'S 12(B)(1) AND 12(B)(6) MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

COMES NOW, Defendant Cody Mitchell, through the Office of the Attorney General for the State of Texas, who file this motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rule of Civil Procedure in response to Plaintiffs Julia Hubbard and Kayla Goedinghaus (collectively "Plaintiffs") First Amended Complaint (ECF No. 190, "FAC").

# TABLE OF CONTENTS

I.   STATEMENT OF THE CASE ................................................................. 1

  A.  The Alleged Trafficking and RICO Enterprise ................................ 1

  B.  Allegations Against Mr. Mitchell.................................................... 2

    1.  Defendant Hubbard Used Mr. Mitchell's Job Title to Threaten Ms. Hubbard ....... 2

    2.  Other Allegations........................................................................ 3

II.  MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) ......................... 4

  A.  Standard of Review....................................................................... 4

  B.  Plaintiffs' Official Capacity Claims Against Mr. Mitchell Are Barred ............ 4

III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM .................... 5

  A.  Standard of Review....................................................................... 5

  B.  No Beneficiary Liability Under 18 U.S.C. § 1591 ............................. 6

  C.  No Labor Trafficking Liability........................................................ 8

  D.  Plaintiffs Fail to State RICO Claims ............................................. 11

    1.  The Plaintiffs fail to claim an injury that is compensable under RICO. ............... 11

    2.  Ms. Hubbard's only potential injury is barred by the statute of limitations.......... 12

    3.  Plaintiffs fail to allege an Enterprise. ................................................... 13

    4.  Plaintiffs fail to allege a pattern of racketeering by Mr. Mitchell. ................. 13

    5.  Plaintiffs fail to allege Mr. Mitchell conducted the enterprise's affairs.............. 15

  E.  Plaintiffs Failed to Allege a RICO Conspiracy Claim ...................... 18

  F.  Mr. Mitchell Is Entitled to Qualified Immunity .............................. 18

IV.  PRAYER ...................................................................................... 20

CERTIFICATE OF SERVICE ................................................................. 21

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allstate Ins. Co. v. Benhamou*,
  190 F. Supp. 3d. 631 (S.D. Tex. 2016) .................................................................. 16

*Allstate Ins. Co. v. Plambeck*,
  802 F.3d 665 (5th Cir. 2015) ................................................................................. 16

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ............................................................................................... 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................... 5, 6, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007) ......................................................................................... 5, 6, 7

*Berg v. First State Ins. Co.*,
  915 F.2d 460 (9th Cir. 1990) ................................................................................. 11

*Boulmay v. Rampart 920, Inc.*,
  124 F. App'x 889 (2005) ........................................................................................ 12

*Collier v. Montgomery*,
  569 F.3d 214 (5th Cir. 2009) ................................................................................. 19

*Dallas Area Rapid Transit v. Whitley*,
  104 S.W.3d 540 (Tex. 2003) .................................................................................... 4

*Dep't of Ag. & Env't v. Printing Indus. Ass'n of Tex.*,
  600 S.W.2d 264 (Tex. 1980) .................................................................................... 4

*Doe v. Fitzgerald*,
  No. 20-cv-10713, 2022 WL 425016 .......................................................... 8, 10, 17

Ducote Jax Holdings, L.L.C., v. Bradley,
  No. CIV.A.04-1943, 2007 WL 2008505 (E.D. La. July 5, 2007)......................... 18

*E.S. v. Best W. Int'l, Inc.*,
  510 F. Supp. 3d 420 (N.D. Tex. 2021)..................................................................... 6

*Farmer v. D&O Contractors, Inc.*,
  640 F. App'x 302 (5th Cir. 2016) .......................................................................... 13

*Foster v. City of Lake Jackson*,
  28 F.3d 425 (5th Cir. 1994).................................................................................... 19

*Gaines v. Tex. Tech Univ.*,
  965 F. Supp. 886 (N.D. Tex. 1997)........................................................................... 5

*Garcia-Lopez v. Waste Mgmt. of Texas, Inc.*,
  No. 22-20112, 2022 WL 17547458 (5th Cir. Dec. 9, 2022) .................................. 10

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019)....................................................................... 7

*Gonzales v. Hunt Cnty. Sheriff's Dep't*,
  No. 3:20-CV-3279-K, 2021 WL 2580556 (N.D. Tex. June 23, 2021) .................... 5

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)................................................................................................ 19

*HCB Fin. Corp. v. McPherson*,
  8 F.4th 335 (5th Cir. 2021)................................................................... 11
*Hemi Group, LLC v. City of N.Y., N.Y.*,
  559 U.S. 1 (2010) .................................................................................. 15
*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
  143 F.3d 1006 (5th Cir. 1998)................................................................. 4
*In re MasterCard Int'l Inc.*,
  313 F.3d 257 (5th Cir. 2002)................................................................. 18
*Ma v. Ashcroft*,
  361 F.3d 553 (9th Cir. 2004)................................................................... 8
*Malvino v. Dellunversita*,
  840 F.3d 223 (5th Cir. 2016)................................................................. 13
*Manax v. McNamara*,
  842 F.2d 808 (5th Cir. 1988)................................................................. 13
*McIntoch v. Patridge*,
  540 F.3d 315................................................................................................. 20
*McPeters v. Edwards*,
  806 F.Supp.2d 978 (S.D. Tex. 2011) ................................................... 13
*Mojsilovic v. Oklahoma ex rel. Bd. of Regents for Univ. of Oklahoma*,
  841 F.3d 1129 (10th Cir. 2016)............................................................... 5
*Morgan v. Hubert*,
  335 Fed. App'x 466 (5th Cir. 2009) ..................................................... 19
*Noble v. Weinstein*,
  335 F. Supp 3d 5044 (S.D.N.Y. 2018 ..................................................... 8
*Pearson v. Callahan*,
  555 U.S. 223 (U.S. 2009) ...................................................................... 19
*Poe v. Bock*, No. EP-C,
  V-17-232, 2018 WL 4677901 (W.D. Tex. Jun. 11, 2018)................... 18
*Powers v. Northside Indep. Sch. Dist.*,
  951 F.3d 298 (5th Cir. 2020).................................................................... 5
*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ........................................................................ 15, 16
*Reyes v. Sazan*,
  168 F.3d 158 (5th Cir.1999)................................................................... 19
*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) .............................................................................. 11
*Shulman v. Kaplan*,
  No. 2:19-cv-5413, 2020 WL 7094063 (C.D. Cal. Oct. 29, 2020)....... 12
*St. Germain v. Howard*,
  556 F.3d 261 (5th Cir. 2009)................................................................. 14
*Tel-Phonic Services, Inc. v. TBS Intern, Inc.*,
  975 F.2d 1134 (5th Cir. 1992)............................................................... 14
*Tex. A & M Univ. Sys. v. Koseoglu*,
  233 S.W.3d 835 (Tex. 2007).................................................................... 4
*Tex. Dep't. of Parks and Wildlife v. Miranda*,
  133 S.W.3d 217 (Tex. 2004).................................................................... 4

*United Stated v. Turkette*,
    452 U.S. 576 (1981) .................................................................................. 13
*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ..................................................................... 7

Statutes

18 U.S.C. 1589(c)(1) ........................................................................................ 10
18 U.S.C. § 1512 ............................................................................... 3, 14, 15
18 U.S.C. § 1591 ................................................................................. ii, 6, 7
18 U.S.C. § 1591(a) ............................................................................... 6, 9
18 U.S.C. § 1961(1) .................................................................................... 14
18 U.S.C. § 1961(4) ........................................................................... 13, 16
18 U.S.C. § 1961(5) .................................................................................... 17
18 U.S.C. § 1962(c) ..................................................................... 11, 15, 16, 18
18 U.S.C. §§ 1589, 1591(a) ...................................................................... 5, 8, 9
21 U.S.C. § 841 ............................................................................................ 14
Texas Penal Code 43.02 ............................................................................... 12
§ 1589(a) ........................................................................................................ 9
§ 1589(a)(3) ............................................................................................. 9, 10
§ 1589(b) ................................................................................................ 9, 10
§ 1595(a) ........................................................................................................ 9

Rules

Rule 12(b)(6) of the Federal Rule of Civil Procedure ...................................... 4, 5, 7

## I.      STATEMENT OF THE CASE

Plaintiffs' allegations tell an unfortunate story about two domestic situations involving one individual, Defendant Richard Hubbard ("Mr. Hubbard"), forcing his then-wife, Plaintiff Julia Hubbard ("Ms. Hubbard") and later his fiancée, Plaintiff Kayla Goedinghaus ("Ms. Goedinghaus") to engage in sex acts with others. FAC at ¶¶ 2–3. Plaintiffs allege their forced arrangement with Defendant Hubbard took place over a decade. *Id*. at ¶ 1. Plaintiffs attempt to shoehorn their domestic issues into an implausible human trafficking and RICO enterprise. Plaintiffs drag whomever Mr. Hubbard happened to know over a ten-year period of the alleged enterprise into this suit by naming them as a defendant. One such defendant is Cody Mitchell whose sole bad act appears that his job title was used by Mr. Hubbard for vague threats of legal process. *Id*. at ¶ 159.

### A.      The Alleged Trafficking and RICO Enterprise

Plaintiffs allege that Mr. Hubbard and Dr. Ben Eller ("Dr. Eller") decided to start a "sex and labor trafficking venture" (the so-called "Venture") in 2012 whereby Mr. Hubbard would solicit Ms. Hubbard at swinger parties. *Id*. at ¶¶ 121. The alleged various purposes of the Venture were "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Hubbard, Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants." *Id*. at ¶ 445.

Plaintiffs affix RICO enterprise claims to the alleged Venture. *Id*. at ¶ 6. Allegedly, Mr. Hubbard would get Dr. Eller to recommend "Medical Doctor Defendants" (*id*. at ¶¶ 7–16) to prescribe drugs to Plaintiffs to better control them along with distinct, and unrelated individuals that Plaintiffs categorized as the "Labor Trafficking Defendants" (*id*. at ¶¶ 40–51) and the "Fixer Defendants" (*id*. at ¶¶ 17–27) and "Investor Defendants" (*id*. at ¶¶ 163–190). Mr. Mitchell is

alleged to be a "Fixer Defendant" who "fixed" unidentified problems and risked his career for a few nude photographs (*id*. at ¶¶ 20, 385).

### B.   <u>Allegations Against Mr. Mitchell</u>

The specific allegations against Mr. Mitchell's involvement in the Venture are unclear because some generic allegations involve Mr. Mitchell, while others are imputed on Mr. Mitchell by what Mr. Hubbard told Ms. Hubbard. When Plaintiffs allege Mr. Hubbard "made use of Mitchell" (*id*. at ¶ 159) it is clear from the Amended Complaint that Mr. Hubbard made use of Mr. Mitchell's job title as a Texas Ranger.

#### 1.   **Defendant Hubbard Used Mr. Mitchell's Job Title to Threaten Ms. Hubbard**

Plaintiffs allege Mr. Hubbard was friends with Mr. Mitchell. *Id*. at ¶ 155. Through this friendship, Plaintiffs state Mr. Hubbard would "use beatings, choking, guns, and threats of legal process to cause [Plaintiffs] to do as he wished, often through the use of the Fixer Defendants: Texas Ranger Cody Mitchell and Kurt Knewitz." *Id*. at ¶ 17. These alleged threats of legal process were not done by Mr. Mitchell, rather Mr. Hubbard using Mr. Mitchell's Texas Ranger job title and an unflattering photo allegedly of Mr. Mitchell. Specifically, Plaintiffs allege Mr. Hubbard had a photo of Mr. Mitchell displaying him holding a bottle of alcohol and his penis while in his police cruiser *Id*. at ¶ 21. Notably, the FAC is silent on how, when, and why this photo was provided, but states *Mr. Hubbard* presented the photo as a threat to Ms. Hubbard. *Id*. at ¶ 22.

Plaintiffs also allege "Rick had a close friendship with Mitchell and would regularly threaten [Plaintiffs] with arrest under false charges, *telling* them that if they did go to law enforcement, no one would believe them." *Id*. at ¶ 19. Additionally, "Rick *told* Hubbard that Mitchell had done research and that her former husband, Shawn Mayer, had been under 'investigation' by the Texas Rangers for child exploitation." *Id*. at ¶ 154. Further, "Rick *sought*,

with the help of Mitchell, to report abuse in order to take custody of Hubbard's children with Mayer away from [Mayer] in order to better control Hubbard." *Id*. at ¶ 161. And "Rick *would tell* Hubbard that Mitchell could cause her to be arrested. Rick also repeatedly *told* Hubbard that if she did attempt to contact law enforcement, a call from Mitchell (as well as Eller) would quickly cause the police to be disregarded." *Id*. at ¶ 162. Additionally, "Rick *told* Hubbard that Mitchell had done research and that her former husband, Shawn Mayer, had been under "investigation" by the Texas Rangers for child exploitation." *Id*. at ¶ 159. Later in the FAC, Plaintiffs convert these threats made by Mr. Hubbard of deterring Ms. Hubbard from contacting law enforcement by Mr. Hubbard as Mr. Mitchell's predicate act of witness tampering under 18 U.S.C. § 1512. *Id*. at ¶ 414.

### 2.   Other Allegations

The other allegations specifically mentioning Mr. Mitchell regarding the alleged venture are as follows: (1) "Rick informed Mitchell in detail of the operations of the Venture and provided him with naked photos of [Plaintiffs]," and (2) "While early on in the Venture, Rick and Mitchell made exaggerated allegations concerning Shawn Mayer," *Id*. at ¶¶ 20, 229. Plaintiffs added that "Mitchell knew or should have known of the trafficking acts, including — because based on numerous phone calls between Rick Hubbard and Mitchell that [Plaintiffs] each overheard — Rick Hubbard had informed Mitchell of all aspects of the Venture, including the fact that the Venture was using Mitchell's influence in and threats in order to force Plaintiffs into engaging in commercial sex acts against their will." [1] *Id*. at ¶ 386.

Because Plaintiffs conflate Mr. Hubbard threatening them with threats of legal process for Mr. Mitchell threatening legal process, they have not nudged their claims across the line from conceivable to plausible.

---

[1] The allegation in ¶ 386 is notably absent from Plaintiffs' Original Complaint.

## II.      MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1)

### A.      <u>Standard of Review</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

### B.      <u>Plaintiffs' Official Capacity Claims Against Mr. Mitchell Are Barred</u>

To the extent Plaintiffs sue Mr. Mitchell for money damages in his official capacity, these claims are barred by the Eleventh Amendment to the Constitution.

Sovereign immunity deprives a court of subject-matter jurisdiction in suits against the State. *Tex. Dep't. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). A suit against a state official lawfully exercising his governmental functions is considered a suit against the State. *Dir. of Dep't of Ag. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264, 265–66, 270 (Tex. 1980).

It is well-established that public officials sued in their official capacities are protected by the same sovereign or governmental immunity as the governmental unit they represent. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843–44 (Tex. 2007) (holding that "an official sued in his official capacity would assert sovereign immunity" and that "[w]hen a state official files a plea to the jurisdiction, the official is invoking the sovereign immunity from suit held by the government itself").

Here, the Amended Complaint alleges Mr. Mitchell is a Texas Ranger with the Department of Public Safety ("DPS"). ECF No. 190 at ¶ 158. It is well-established that DPS "is an arm of the State of Texas" that is entitled to Eleventh Amendment immunity. *Gonzales v. Hunt Cnty. Sheriff's Dep't*, No. 3:20-CV-3279-K, 2021 WL 2580556, at *2 (N.D. Tex. June 23, 2021).

Congress has not clearly abrogated the States' Eleventh Amendment immunity under any of the claims brought against Mr. Mitchell. *See Mojsilovic v. Oklahoma ex rel. Bd. of Regents for Univ. of Oklahoma*, 841 F.3d 1129, 1132–33 (10th Cir. 2016) (finding no abrogation of immunity for, among other statutes, 18 U.S.C. §§ 1589, 1591(a)); *see also Gaines v. Tex. Tech Univ.*, 965 F. Supp. 886, 889 (N.D. Tex. 1997) (holding that "RICO claims against Texas Tech and the individual defendants in their official capacity are therefore barred under the doctrine of sovereign immunity."). Accordingly, the claims against Mr. Mitchell in his official capacity are barred.

## III.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.  <u>Standard of Review</u>

A motion to dismiss under Rule 12(b)(6) is proper when the plaintiff's complaint fails to state a claim upon which relief can be granted.  A court reviewing a Rule 12(b)(6) motion must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020) (internal quotation marks and citation omitted). "However, the plaintiff must plead specific facts, not mere conclusory allegations to state a claim for relief that is facially plausible." *Id.* (Internal quotation marks and citation omitted). To withstand a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  Allegations that offer only the possibility that a defendant acted unlawfully, or facts merely consistent with liability do not demonstrate entitlement to relief. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  If the complaint does not set forth, "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Twombly,* 550 U.S. at 570. A claim lacks facial plausibility when the facts alleged do not allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Allegations that offer only the possibility that a defendant acted unlawfully, or facts merely consistent with liability, do not demonstrate entitlement to relief. *Id.*

**B.**      **<u>No Beneficiary Liability Under 18 U.S.C. § 1591</u>**

Any complaint must contain sufficient facts to demonstrate a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. When read liberally in favor of the non-moving party, the FAC, at most, implies Mr. Mitchell's involvement was nothing more than Mr. Hubbard using Mr. Mitchell's job title of Texas Ranger against Plaintiffs— not Mr. Mitchell agreeing with or directing Mr. Hubbard to make threats on behalf of his profession. FAC at ¶¶ 19, 21, 159, 162.

The Victims of Trafficking and Violence Protection Act of 2000 18 U.S.C. § 1591(a) ("TVPA") creates two types of liability: (1) perpetrator liability and (2) beneficiary liability. See § 1591(a)(1)–(a)(2). Plaintiffs only allege beneficiary liability against Mr. Mitchell because he benefitted, "financially or by receiving anything of value, by participating in the Venture." FAC at ¶ 383. However, Plaintiffs did not plead facts that state a TVPA cause of action against Mr. Mitchell under beneficiary liability because he was not involved in the alleged venture and did not receive anything of value or financial benefit.

To state a financial beneficiary claim under the TVPA, a plaintiff must allege facts from which it can be reasonably inferred that they "(1) knowingly benefitted financially or by receiving anything of value, (2) from participation in a venture, they (3) knew or should have known has engaged in sex trafficking under § 1591." *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 426 (N.D.

Tex. 2021) (cleaned up). A violation of § 1591 requires a defendant to knowingly benefit from and knowingly assist, support, or facilitate sex trafficking activities, and knowingly benefitting from participation in such a venture requires actual knowledge and "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019).

Here, there are no specific allegations that Mr. Mitchell knowingly assisted in the alleged venture. It was the influence of Mr. Mitchell's occupation utilized by Mr. Hubbard to coerce Plaintiffs to perform sexual acts. Plaintiffs don't allege Mr. Mitchell told Mr. Hubbard to use his status as a Ranger to influence them or that Mr. Mitchell agreed that Mr. Hubbard used his occupation as a means of coercion. Instead, Plaintiffs allege without the requisite specificity in a newly added allegation that at various times Plaintiffs overheard Mr. Hubbard discuss the Venture over the phone. FAC at ¶ 386. Where "the well-pleaded facts of a complaint do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'— 'that the pleader is entitled to relief.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S at 678).  At best, the Amended Complaint pleads facts merely consistent with Mr. Mitchell's liability. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). This allows the Court to infer only the possibility of his misconduct, but post *Twombly* and *Iqbal*, this falls far short of the plausible claim needed to survive a Rule 12(b)(6) motion.

Plaintiffs expect the Court to infer that Mr. Mitchell committed violations of the law, risked throwing away his career and going to prison all for a few nude photos of Ms. Hubbard. FAC at ¶ 385. Plaintiffs' allegations do not even go that far. Plaintiffs do not allege Mr. Mitchell and Mr. Hubbard agreed to use his occupation to further the alleged venture for consideration of nude

photographs, nor do they allege Mr. Mitchell received any specific financial benefit or thing of value. *See id.* at ¶¶ 18, 20–23, 160, 162–63, 229, 310. These allegations are insufficient to plausibly show beneficiary liability by Mr. Mitchell. *See Noble v. Weinstein*, 335 F. Supp 3d 504, 524 (S.D.N.Y. 2018) (dismissing a TVPA claim where the complaint missed "factual allegations that link [defendant's] actions to" conduct of the alleged venture).

Moreover, nude photos of Plaintiffs are not a thing of value under the TVPA. Plaintiffs contend these photos were used for Mr. Mitchell's sexual gratification. See ECF No. 190 at ¶ 440 ("The object of the conspiracy was to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Defendant Rick Hubbard, Defendant Eller, and the Medical Doctor Defendants and **for the sexual gratification and other benefits of all Defendants**."). "But "sexual gratification" is not a "thing of value" under the TVPA, otherwise it would transform innumerable, consensual sexual activities into "sex trafficking." *Doe v. Fitzgerald*, No. 20-cv-10713, 2022 WL 425016 at *6-7 (finding that interpretation of "sexual gratification" as a "thing of value" under TVPA would "yield absurd results"); *see also Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) (interpretations "which could produce absurd results are to be avoided"). Further, the "other benefits" Plaintiffs allege the other Defendants received are far too generalized and fall short of *Twombly*, *Iqbal*, and their progeny.

Thus, Plaintiffs failed to state a claim for beneficiary liability under the TVPA because they did not plausibly allege Mr. Mitchell participated in the venture, knowingly or otherwise, and Mr. Mitchell did not receive a thing of value.

## C.       No Labor Trafficking Liability

Section 1589 of the TVPA provides criminal penalties for "forced labor," and Section 1595 authorizes victims of forced labor to assert private civil claims. 18 U.S.C. §§ 1589, 1595(a).  Under

§ 1589(a) whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or restraint. Under § 1589(b), whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

Plaintiffs' claims against Mr. Mitchell fail for the same reasons as do their § 1591(a) claims—there are no allegations specifically Mr. Mitchell participated or benefitted from the alleged venture. Although the Complaint vaguely states Mr. Mitchell "assisted" with Mr. Hubbard's threats of legal process (FAC at ¶ 18), nowhere in the FAC does it state what Mr. Mitchell specifically and actively did beyond Mr. Hubbard threatening what he could or would do. *Id.* at ¶¶ 20, 160, 162–63.

Further, Plaintiffs' claim that Mr. Hubbard sought with the help of Mr. Mitchell "*to report abuse* to take custody of Hubbard's children with Mayer away from him in order to better control Hubbard," is not properly plead under §1589.  The plain language of the statute makes clear that to plead a civil claim under § 1595(a) premised on violations of § 1589(a)(3), a plaintiff must plead allegations sufficient to satisfy that an abuse of law was: (1) undertaken "to exert pressure" on the

plaintiff; (2) done "knowingly" by the defendant; and (3) that caused the plaintiff to provide labor or services he would otherwise not have willingly provided. 18 U.S.C. §§ 1589(a)(3), 1595(a). *Garcia-Lopez v. Waste Mgmt. of Texas, Inc.*, No. 22-20112, 2022 WL 17547458, at *2 (5th Cir. Dec. 9, 2022). "Abuse or threatened abuse of law or legal process" means, '[T]he use or threatened use of a law or legal process ... in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." 18 U.S.C. 1589(c)(1).

Here, Plaintiffs failed to identify a law or legal process that Mr. Mitchell knowingly used or threatened to use in a manner for which it was not designed to pressure or coerce labor from them. *Garcia-Lopez,* 2022 WL 17547458 at *2 (finding plaintiff-employee failed to state a claim under 18 U.S.C. § 1589(a)(3) because he did not allege defendant-employer abused any law or legal process to force the plaintiff's labor or services from him even though plaintiff-employee alleged the defendant-employer was involved with and had knowledge of the use plaintiff-employee's fake identities). Here, Mr. Hubbard made all the threats using Mr. Mitchell's job title, not Mr. Mitchell, and furthermore the allegation that Mr. Mitchell helped to report abuse by Mr. Mayer is not sufficient because Plaintiffs fail to state what Mr. Mitchell did to "help" (i.e., lie, scheme, or threaten) Mr. Hubbard report abuse.

This claim also fails because Mr. Mitchell did not receive anything of value for the alleged forced labor under § 1589(b) or any *quid pro quo*. As discussed earlier, nude photographs are not a thing of value. *Cf. Fitzgerald*, 2022 WL 425016 at *6–7 ("sexual gratification" is not a thing of under TVPA).

**D.**         **Plaintiffs Fail to State RICO Claims**

An 18 U.S.C. § 1962(c) RICO claim requires a plaintiff to plausibly allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to the plaintiff's business or property. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

The Plaintiffs' Amended Complaint alleges that Mitchell violated RICO by participating in a Pattern of Racketeering and a Conspiracy. (FAC at ¶¶ 430–447). The Plaintiffs fail to adequately state a sufficient RICO claim for multiple reasons: (1) they fail to state a claim because general emotional, physical, and financial damages are not compensable injuries under RICO; (2) they fail to state a claim because the only adequate injury they allege is barred by the statute of limitations; (3) fail to allege an "enterprise"; (4) fail to allege a pattern of racketeering; and (5) they fail to allege Mr. Mitchell "conducted" the affairs of the enterprise.

**1.   The Plaintiffs fail to claim an injury that is compensable under RICO.[2]**

To make a RICO claim, a Plaintiff must allege that they suffered a "concrete financial loss" to a business or property that was proximately caused by the RICO violation. *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 344 (5th Cir. 2021). Here, the Plaintiffs claim physical, emotional, and financial damage. (FAC at ¶¶ 447, 439, 415, 416). The Plaintiffs cannot recover for physical and emotional damage under RICO—or for financial loss resulting from such personal damage— because personal injury claims are not recoverable under RICO. *See Berg v. First State Ins. Co.*, 915 F.2d 460, 463-64 (9th Cir. 1990); *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 344 (5th Cir. 2021). Nor can they recover for their generalized claim of "financial harm including the loss of

---

[2] For this Court's efficiency, Mr. Mitchell also incorporates the argument filed by Mr. Crow on the issue of RICO standing. ECF No. 196 at pp. 15–17.

earnings" because it is not a claim of a "concrete" financial loss and the do not specifically allege that the "Venture" was the proximate cause[3] of any general financial loss. FAC at ¶ 439.

The Plaintiffs also cannot claim the "moneys that [Plaintiffs] earned for providing companionship, including at Forced Sex Parties" as a RICO injury, because if the allegations are true,[4] those moneys are the profits of prostitution[5] and proceeds of illegal activity cannot satisfy the injury requirement for a RICO claim. FAC at ¶¶ 415, 416; *see Shulman v. Kaplan*, No. 2:19-cv-5413, 2020 WL 7094063, at *2 (C.D. Cal. Oct. 29, 2020). Plaintiffs additionally cannot claim Ms. Hubbard's withheld wages from the Silver City Cabaret as a RICO injury because they don't allege that but-for the Venture, Defendant Grover would not have withheld Ms. Hubbard's wages.

### 2. Ms. Hubbard's only potential injury is barred by the statute of limitations.

The only potentially concrete financial loss that Plaintiffs allege is the loss of Ms. Hubbard's house in March or April of 2018, but it is barred by the statute of limitations. (FAC at ¶ 266). The RICO statute has a four-year statute of limitations that begins to run once a plaintiff knows or should know of the injury that underlies her cause of action. *See Boulmay v. Rampart 920, Inc.*, 124 F. App'x 889, 891 (2005). Ms. Hubbard knew she was being trafficked as early as 2012[6] and knew she suffered an injury in April 2018 but did not begin this litigation until November 2022—seven months after the limitations period expired. FAC at ¶¶ 239, 266. Therefore, the statute of limitations bars Ms. Hubbard's claim.

---

[3] When evaluating proximate cause, the question is whether the alleged violation led directly to the plaintiff's injuries. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).
[4] At no point in the FAC do the Plaintiffs claim they performed anything other than sexual acts for compensation at the "Forced Sex Parties", rather, they continuously claim that they were forced to commit sex acts at these parties. *E.g.*, FAC at ¶ 3, 33,122, 198, 207, 211, 228, 238
[5] Texas Penal Code 43.02 ("A person commits an offense if the person knowingly offers or agrees to receive a fee from another to engage in sexual conduct")
[6] Arguably, Ms. Hubbard knew she was being trafficked when Rick Hubbard forced her to undergo nonconsensual sterilization and used reversal as an enticement to get her to comply with his demands. (FAC at ¶ 244).

Equitable tolling is "to be used sparingly" and only applies where the plaintiff is "actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Farmer v. D&O Contractors, Inc.*, 640 F. App'x 302, 305 (5th Cir. 2016). Ms. Hubbard is not entitled to equitable tolling because Plaintiffs admit that Ms. Hubbard was free from Mr. Hubbard's influence in 2017, and only provide conclusory statements that attach other Defendants who allegedly exercised some influence over Ms. Hubbard until 2018 to the "Venture." FAC at ¶¶ 248, 50. Thus, Plaintiff did not plead any allegation justifying equitable tolling.

### 3. Plaintiffs fail to allege an Enterprise.

An "enterprise" under 18 U.S.C. § 1961(4) encompasses legal entities or any union or group of individuals associated in fact although not a legal entity. *See United Stated v. Turkette*, 452 U.S. 576, 581–82 (1981). Here, the FAC alleges an association-in-fact enterprise because it does not allege an entity separate and apart from the pattern of activity in which it engages. *See Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988) ("an enterprise must be an entity separate and apart from the pattern of racketeering activity in which it engages."); FAC at ¶ 433.

To plead an association-in-fact enterprise, Plaintiffs must allege that defendants had a common purpose, structure or organization, and longevity necessary to achieve the enterprise's purpose. *See McPeters v. Edwards*, 806 F.Supp.2d 978, 988 (S.D. Tex. 2011). Plaintiffs allege each unrelated group and individual actors with different, unaligned purposes as articulated in Mr. Crow's Motion to Dismiss (ECF No. 196 at 18–21) which Mr. Mitchell incorporates by reference for the Court's efficiency. The RICO allegations should be dismissed for lack of common purpose.

### 4. Plaintiffs fail to allege a pattern of racketeering by Mr. Mitchell.

To adequately allege a pattern of racketeering, Plaintiffs must plead that the racketeering predicates are related and amount to or pose a threat of continued criminal activity. *See Malvino*

*v. Dellunversita*, 840 F.3d 223, 232 (5th Cir. 2016). A pattern of racketeering activity requires at least two predicate acts listed in 18 U.S.C. § 1961(1) by each defendant. *See St. Germain v. Howard*, 556 F.3d 261, 262–63 (5th Cir. 2009).

Plaintiffs broadly assert four predicate acts committed by all defendants: (1) TVPA violations; (2) Controlled Substances Act ("CSA") violations; (3) wire fraud; and (4) witness tampering. FAC at ¶¶ 414, 437. However, none of these acts have any factual basis as it pertains to Mr. Mitchell.

As discussed in Parts III.B and III.C of the instant motion, the trafficking claims against Mr. Mitchell fail as a matter of law. The CSA claims also fail because Plaintiffs do not allege Mr. Mitchell processed drugs or what type of drug and the amount thereof to establish a CSA violation under 21 U.S.C. § 841. Plaintiffs' allegation about Mr. Mitchell's wire fraud also fails because they did not allege the time place and contents of any fraudulent misrepresentation or the "identity of the person making the misrepresentation and what he obtained thereby." *See Tel-Phonic Services, Inc. v. TBS Intern, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). The lack of specificity as to wire fraud further fails under Rule 9(b)'s heightened pleading standard for a predicate act sounding in fraud.

Although Plaintiffs specifically mention Mr. Mitchell tampered with witnesses, when reading the factual basis for such an allegation, it is clear Mr. Mitchell did not tamper with any witness. *See* FAC at ¶¶ 161–62, 229. In pertinent part, witness tampering under 18 U.S.C. § 1512(b) requires, "Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to… hinder, delay, or prevent the communication to a law enforcement officer[.]" As detailed in Parts III.B and III.C, Mr. Mitchell never made threats that he would arrest Ms. Hubbard or somehow

"cause the police to disregard whatever [Ms.] Hubbard said." *Id*. at ¶ 162. As for the generic allegations against co-defendant, Shawn Mayer, the pleadings are silent on how Mr. Mitchell "knowingly uses intimidation, threatens, or corruptly persuades another person" intending to "influence, delay, or prevent the testimony of any person in an official proceeding." 18 U.S.C. § 1512(b). Moreover, Plaintiffs failed to allege how these supposed predicate acts by Mr. Mitchell caused their injury. *See Hemi Group, LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 13 (2010) (stating "the compensable injury flowing from a RICO violation necessarily is the harm caused by the predicate acts[.]"). As such, Mr. Mitchell did not engage in any "pattern of racketeering" or any "racketeering" thereof.

### 5.   Plaintiffs fail to allege Mr. Mitchell conducted the enterprise's affairs.

Mr. Mitchell will specifically address how the Complaint does not contain sufficient factual allegations to plausibly allege he "conduct[ed] or participate[d], directly or indirectly, in the conduct of [] enterprise's affairs." *See* 18 U.S.C. §1962(c). Under Supreme Court precedent, alleging conduct or participation requires more than mere association. *See Reves v. Ernst & Young*, 507 U.S. 170, 177–79 (1993).

The plain meaning of "conduct" supports Mr. Mitchell's dismissal from suit. In *Reves v. Ernst & Young*, the Supreme Court held "that 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' §1962(c), one must participate in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 185. There, the Supreme Court affirmed the lower court's finding that an accountant who prepared audit reports and financial statements for a farmer's cooperative was not liable under Section 1962(c). *Id*. at 186. *Reves* explains that "as both a noun and a verb in this subsection 'conduct' requires an element of direction." *Id*. at 177–78. Rejecting the argument that "any involvement in the affairs of an enterprise would satisfy the

15

'conduct or participate' requirement," the Supreme Court also clarified that—while "the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility"—at least "some part in directing the enterprise's affairs is required." *Id*. at 178–79.

Furthermore, lower court decisions affirmed *Reves's* interpretation of §1962(c) in finding that something more than non-supervisory involvement is required to sufficiently allege this element. *See Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 655 (S.D. Tex. 2016) (citing *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015)) ("Although one need not be a ringleader, the Fifth Circuit has made clear that a defendant must have some supervisory involvement in an enterprise in order to satisfy §1962(c)'s conduct or participate requirement."). In *Benhamou*, the court dismissed RICO claims against a nurse anesthetist pursuant to Rule 12(b)(6). *Id*. at 655–56. The court explained that "simply providing goods and services that ultimately benefit the enterprise will not subject one to liability." *Id*. at 655. Thus, the court found the plaintiffs' allegations that the nurse anesthetist "was employed by [the enterprise], worked at the direction of [other defendants], and administered unnecessary general anesthesia [were] insufficient to show that [the nurse anesthetist] had any supervisory role in the scheme." *Id*. at 656.

Here, Plaintiffs' Complaint does not contain sufficient factual matter to plausibly allege Mr. Mitchell's participation in the conduct of the alleged enterprise. Count Three broadly alleges that "Defendants came together to form an association in fact Enterprise [,]" and "Defendants engaged in activities which constitute 'racketeering activity,' including violation of the [TVPA], violation of the Controlled Substances Act [], wire fraud [], and witness tampering [], within the meaning of 18 U.S.C. §1961(1). FAC at ¶¶ 433, 437. It further states that "all Defendants have acted in violation of the [RICO] Act, 18 U.S.C. §1962(c)." *Id*. ¶ 431. Plaintiffs support these conclusory statements with threadbare recitals of the elements. For example, Plaintiffs generally

allege, "Defendants engaged in multiple predicate acts amounting to a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5)." *Id*. at ¶ 438. Under *Twombly* and *Iqbal*, the Court cannot extend the presumption of truth to these legal conclusions, and such conclusory allegations are insufficient to state a plausible claim for relief.

Plaintiffs' remaining non-conclusory allegations against Mr. Mitchell are too innocuous in character to infer anything more than the mere possibility of his misconduct. At most, Mr. Mitchell somehow helped Mr. Hubbard "report abuse" with the alleged goal to take away Mr. Mayer's custody of his children with Ms. Hubbard. *Id*. at ¶ 161. This exemplifies the complaint's overall lack of specificity of Mr. Mitchell's conduct regarding his participation in the alleged enterprise.

Moreover, the Complaint lacks allegations of Mr. Mitchell's role as an employee—or more importantly as a supervisor—within the alleged RICO enterprise. Although Plaintiffs labeled him as a "Fixer Defendant," there is nothing that he apparently fixed, and he did not receive any credible compensation. Plaintiffs' exclusion of Mr. Mitchell from most of its contentions demonstrates Plaintiffs' failure to plead facts regarding Mr. Mitchell's operational or managerial function and allege his participation in the conduct of the alleged enterprise's affairs. Plaintiffs do not allege that Mr. Mitchell was aware Mr. Hubbard used his occupation as a Texas Ranger to threaten arrest or the futility of going to law enforcement officials.

Relatedly, Plaintiffs' fail to allege any compensation received by Mr. Mitchell for his alleged participation in the enterprise.  Rather, the Complaint states, "The object of the conspiracy was to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Defendant Rick Hubbard, Defendant Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants." *Id*. at ¶ 445.  Because sexual gratification is not a "thing of value" (*Fitzgerald*, 2022 WL 425016 at *6-7) and "other benefits" is far too general, it

is more reasonable to interpret that Mr. Mitchell did not receive any compensation for his alleged service to the Enterprise.

In sum, Plaintiffs have not pled facts to sufficiently allege any single element of § 1962(c), the inquiry is over, the Court "need not consider whether the Plaintiffs sufficiently alleged the other elements," and "dismissal is proper under Rule 12(b)(6)." *In re MasterCard Int'l Inc.*, 313 F.3d 257, 261, 264 (5th Cir. 2002). The Complaint fails to provide factual—or even conclusory—allegations that Mr. Mitchell had any level of supervisory, directorial, or managerial role in the alleged enterprise. Accordingly, Mr. Mitchell respectfully requests the Court to find that Plaintiffs failed to plausibly allege Mr. Mitchell's participation in the conduct of the alleged enterprise.

### E. **Plaintiffs Failed to Allege a RICO Conspiracy Claim**

A plaintiff must adequately plead a cognizable substantive RICO violation under 18 U.S.C. § 1962(a), (b), or (c) to plead an 18 U.S.C. § 1962(d) RICO conspiracy claim. *See Poe v. Bock*, No. EP-CV-17-232, 2018 WL 4677901, *5 (W.D. Tex. Jun. 11, 2018). Because Plaintiffs failed to sufficiently plead a substantive 1962(c) RICO claim (Part III.D), this claim, too, must fail.

Moreover, Plaintiffs failed to adequately allege either "an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." Ducote Jax Holdings, L.L.C., v. Bradley, No. CIV.A.04-1943, 2007 WL 2008505, at * 7 (E.D. La. July 5, 2007).  As discussed in Part III.D.4, Plaintiffs did not show Mr. Mitchell committed two or more predicate offenses or agreed to commit them. Accordingly, Plaintiffs' RICO conspiracy claim against Mr. Mitchell should be dismissed.

### F. **Mr. Mitchell Is Entitled to Qualified Immunity**

As discussed earlier in Parts III.B, III.C, III.D, Plaintiffs' do not show Mr. Mitchell engaged in the bad acts, rather, Mr. Hubbard used Mr. Mitchell's job title to make threats of legal process.  Accordingly, Mr. Mitchell should be entitled to qualified immunity.

Qualified immunity protects government officials in their individual capacity while performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Notably, it is immunity from suit — not just from liability. *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994).

In determining the viability of a qualified immunity defense, courts apply the following analysis: (1) whether the plaintiff has asserted a constitutional or statutory violation; (2) whether the record shows that the defendant actually engaged in the conduct that violated the law, or at least gives rise to a genuine issue of material fact; and (3) whether the law regarding the alleged violation was clearly established at the time of the operative events and, if so, whether the defendant's conduct was objectively unreasonable in light of that clearly established law. *Pearson v. Callahan*, 555 U.S. 223, 231 (U.S. 2009).

Even though qualified immunity is an affirmative defense, the "plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). Further, a plaintiff must show with factual detail and particularity why the defendant official cannot maintain the qualified immunity defense. "[A] plaintiff cannot be allowed to rest on general characterizations but must speak to the factual particulars of the alleged actions ..." *Morgan v. Hubert*, 335 Fed. App'x 466, 469-70 (5th Cir. 2009); *see also Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir.1999) ("Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury.").

Mr. Mitchell is entitled to qualified immunity because Plaintiffs failed to demonstrate with the requisite specificity that Mr. Mitchell engaged in conduct that violated the law. *McIntoch v. Patridge*, 540 F.3d 315, 323, n. 8 (5th Cir. 2008) (finding that to defeat qualified immunity, a plaintiff must provide "a sufficient factual basis for a reasonable jury to conclude that the defendant violated the plaintiff's constitutional rights"); *supra*-Parts III.B, III.C, III.D. Further, Plaintiffs' allegations that Mr. Mitchell helped Mr. Hubbard to report abuse by Mr. Mayer (FAC at ¶ 159) and made "exaggerated allegations" about Mr. Mayer (*id*. at ¶ 229) are far too vague for Plaintiffs to overcome Mr. Mitchell's entitlement to qualified immunity. Even if this allegation was true, Mr. Mitchell would be well within the scope of his duties as a law enforcement official to act upon reports of child abuse and should further be afforded qualified immunity.

Because Plaintiffs failed to allege Mr. Mitchell actually engaged in conduct that violated the law and they did not adequately plead the requisite specificity on what "exaggerated allegations" made about Mr. Mayer or how he "helped" Mr. Hubbard report child abuse by Mr. Mayer, Mr. Mitchell is entitled to qualified immunity.

## IV.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Mr. Mitchell respectfully requests that all causes of action brought against him by Plaintiffs be dismissed with prejudice.

Respectfully submitted,

**ANGELA COLMENERO**
Provisional Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Acting Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Alec Simpson*
**ALEC SIMPSON**
Attorney-In-Charge
Assistant Attorney General
Texas State Bar No. 24118534

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814
Alec.Simpson@oag.texas.gov

**ATTORNEYS FOR DEFENDANT MITCHELL**

## CERTIFICATE OF SERVICE

I, **ALEC SIMPSON**, certify that a true and correct copy of the foregoing, **Defendant Cody Mitchell's Motion to Dismiss Plaintiffs' First Amended Complaint**, has been served on all counsel of record who have appeared and consented to electronic notification via the Electronic Case Files System of the Western District of Texas on or about July 21, 2023:

*/s/ Alec Simpson*
**ALEC SIMPSON**
Assistant Attorney General

21