## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

John G. Balestriere*
Matthew W. Schmidt*
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5401
Facsimile: (212) 208-2613
john.balestriere@balestrierefariello.com
Attorneys for Plaintiffs
*Admitted pro hac vice

| | |
|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, | ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 5:23-cv-00580-FB |
| TRAMMELL S. CROW, JR., DR. BENJAMIN TODD ELLER, RICHARD HUBBARD, DR. MELISSA MILLER, DR. JOSEPH BOLIN, DR. SCOTT WOODS, DR. MRUGESHKUMAR SHAH, MICHAEL CAIN, COE JURACEK, PHILIP ECOB, H.J.COLE, TEXAS RANGER CODY MITCHELL, KURT KNEWITZ, PAUL PENDERGRASS, RALPH ROGERS, ROBERT PRUITT, SCOTT BRUNSON, CASE GROVER, RICHARD BUTLER, MARC MOLINA, MICHAEL HYNES, JR., SHAWN MAYER, JADE MAYER, RCI HOSPITALITY HOLDINGS, INC., INTEGRITY BASED MARKETING, LLC, STORM FITNESS NUTRITION, LLC, ULTRA COMBAT NUTRITION, LLC, ECOLIFT HOMES LLC, ELEVATED WELLNESS PARTNERS LLC, DOE INDIVIDUALS 1–20, and DOE COMPANIES 21–30 | ) ) ) ) Judge: Hon. Fred Biery ) Date Action Filed: May 8, 2023 (transferred) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## PLAINTIFFS' OPPOSITION TO DEFENDANT MILLER'S MOTION TO DISMISS AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii–iv

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS .................................................................................... 2

LEGAL STANDARD ........................................................................................ 3

ARGUMENT ................................................................................................ 4

    I.     MILLER IS NOT SHIELDED FROM TVPA AND RICO LIABILITY UNDER
          TEXAS STATUTE BECAUSE IT DOES NOT PREEMPT FEDERAL TVPA AND
          RICO CLAIMS ...................................................................................... 4

    II.    PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 8 NOTICE
          PLEADING BECAUSE THEY PLEADED DETAILED FACTS SHOWING
          MILLER'S ROLE IN THE VENTURE .......................................................... 6

    III.   PLAINTIFFS HAVE ALLEGED A VALID TVPA VIOLATION AGAINST MILLER . 7

    IV.   PLAINTIFFS HAVE ALLEGED A VALID LABOR TRAFFICKING CLAIM
          BECAUSE MILLER OBTAINED THE BENEFIT OF PLAINTIFFS' LABOR BY
          FORCE ................................................................................................ 8

    V.    PLAINTIFFS HAVE ALLEGED A VALID RICO CLAIM AGAINST MILLER ......... 9

          A.  Plaintiffs Have Established RICO Standing Because the Enterprise Caused
               Financial Harm to Plaintiffs ............................................................... 9

          B.  Plaintiffs Have Pleaded a RICO Association-in-Fact Enterprise ...................... 10

          1.  Plaintiffs Have Pleaded a Common Purpose ..................................... 10

          2.  Plaintiffs Have Pleaded an Ongoing Organization .............................. 10

          3.  Plaintiffs Have Pleaded a Continuing Unit ....................................... 11

          4.  Plaintiffs Have Pleaded a Pattern of Racketeering ............................. 12

          C.  Plaintiffs Have Pleaded That Miller Participated in the Affairs of the Enterprise
               .................................................................................................. 13

          D.  Hubbard's RICO Injury Does Not Lie Outside the Statute of Limitations
               Because Hubbard Pleaded Financial Harm That She Suffered From The
               Enterprise Into November 2019 ......................................................... 13

E.  Plaintiffs Have Alleged a RICO Conspiracy ......................................................14

CONCLUSION.............................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 4, 6

*Bias v. Wells Fargo & Co.*,
    942 F. Supp. 2d 915 (N.D. Cal. 2013) ...................................................... 14

*Bistline v. Parker*,
    918 F.3d 849 (10th Cir. 2019) .................................................................... 7

*Boudeloche v. Grow Chem. Coatings Corp.*,
    728 F.2d 759 (5th Cir. 1984) ...................................................................... 3

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) ................................................................. 9, 13

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) .................................................................................. 12

*Harris v. Henry*,
    No. 1:22-CV-00366-LY, 2022 WL 16825200 (W.D. Tex. Nov. 7, 2022) ................................... 8

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018) ...................................................... 13

*Jim S. Adler, P.C. v. Angel S. Reyes & Assocs., PC*,
    No. 3:19-cv-2027, 2020 WL 5099596 (N.D. Tex. Aug. 7, 2020) ................................ 6

*Kelmar v. Bank of Am. Corp.*,
    No. CV 12-6826 PSG (EX), 2012 WL 12850425 (C.D. Cal. Oct. 26, 2012) .......................... 13

*McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*,
    923 F.3d 427 (5th Cir. 2019) ...................................................................... 4

*Molina-Aranda v. Black Magic Enterprises, L.L.C.*,
    983 F.3d 779 (5th Cir. 2020) ...................................................................... 3

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ............................................................... 10, 11

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011) .................................................................................... 4

*Ramsbottom v. Ashton*,
    No. 3:21-CV-00272, 2022 WL 106733 (M.D. Tenn. Jan. 11, 2022) ......................... 8

*Ruelas v. Cnty. of Alameda*,
   519 F. Supp. 3d 636 (N.D. Cal. 2021) ................................................................ 8

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ........................................................................................... 3

*United States v. Lacey*,
   No. 22-10000, 2022 WL 4363818 (9th Cir. Sept. 21, 2022) ............................ 10

*United States v. Todd*,
   627 F.3d 329 (9th Cir. 2010) ............................................................................. 7

*United States v. Turkette*,
   452 U.S. 576 (1981) ......................................................................................... 10

*Villas at Parkside Partners v. City of Farmers Branch, Tex.*,
   726 F.3d 524 (5th Cir. 2013) ............................................................................. 4

*Wells Fargo Bank of Texas NA v. James*,
   321 F.3d 488 (5th Cir. 2003) ............................................................................. 4

*Williams v. WMX Techs*., Inc.,
   112 F.3d 175 (5th Cir. 1997) ............................................................................. 3

**Statutes**

18 U.S.C. § 1343 ..................................................................................................... 11

18 U.S.C. § 1512 ..................................................................................................... 11

18 U.S.C. § 1589 .................................................................................................. 8, 11

18 U.S.C. § 1591 .................................................................................................. 6, 7

18 U.S.C. § 1962 ................................................................................................. 9, 14

21 U.S.C. § 801 ....................................................................................................... 11

**Rules**

Fed. R. Civ. P. 8 ........................................................................................................ 6

Fed. R. Civ. P. 12 ...................................................................................................... 3

**Other Authorities**

U.S. Const., Art. VI, cl. 2 .......................................................................................... 4

## **PRELIMINARY STATEMENT**[1]

Defendant Dr. Melissa B. Miller, M.D. ("Miller"), with her co-conspirators, for years participated in a sex trafficking scheme (the "Venture") that unlawfully trafficked Plaintiffs Julia Hubbard ("Hubbard") and Kayla Goedinghaus ("Goedinghaus"), subjecting them to hundreds of forced commercial sex acts, as well as the beatings, threats, and misuse of medications needed to compel Hubbard and Goedinghaus to engage in such acts.

Miller provided the Venture with medications used to force Plaintiff Goedinghaus to engage in sex acts against her will. Defendant Richard Hubbard ("Rick Hubbard") would force Plaintiff Goedinghaus to visit Miller and obtain the drug prescriptions identified by Defendant Dr. Benjamin Todd Eller ("Eller"), a Santa Monica-based psychologist. Plaintiff Goedinghaus outright told Miller that Rick Hubbard was withholding her medications, thus forcing her into withdrawal, physically abusing her, including choking her out to the point of unconsciousness and raping her. Miller took no action in response to Plaintiff Goedinghaus's requests for help.

Miller is not protected by the Texas Medical Liability Act ("TMLA")—which preempts claims arising out of medical care—as state laws cannot preempt the federal Trafficking Victims Protection Act ("TVPA") or Racketeering Influenced and Corrupt Organization Act ("RICO"). On the contrary, under the Constitution's Supremacy clause, the federal statutes must prevail. Miller does not offer a single argument or single authority holding otherwise: she instead relies on state court cases and a single federal case concerning common law claims under diversity jurisdiction.

Plaintiffs also plead sufficient facts establishing TVPA and RICO liability against Miller. Miller assisted the Venture through prescribing drugs that allowed Plaintiff Goedinghaus to be trafficked in exchange for financial payments and knew that unlawful sex trafficking was occurring

---

[1] All capitalized terms are defined in the Amended Complaint, Dkt. No. 190 (the "Complaint" or "AC"). Some terms are redefined herein for the Court's convenience.

because Plaintiff Goedinghaus told Miller.

The Court should deny Defendant Melissa Miller's motion to dismiss.

## STATEMENT OF FACTS

Plaintiff Hubbard married Defendant Rick Hubbard in February 2010. (AC ¶ 96.) Following an arrest later that year for financial fraud, Rick Hubbard became desperate for new financial opportunities. (AC ¶¶ 103–105.) Rick Hubbard then, along with Defendant Eller, and later, with key financing from Defendant Crow and his colleagues, formulated the Venture, which began to force Plaintiff Hubbard, and later Plaintiff Goedinghaus, to perform sex acts for money. (AC ¶¶ 121–123, 286–287.)

Plaintiff Goedinghaus met Defendant Rick Hubbard in November 2018 and moved in with him shortly thereafter. (AC ¶¶ 282–283.) Rick introduced Plaintiff Goedinghaus to Eller, they began having phone calls, and Eller insisted Goedinghaus needed medication and to stay with Rick. (AC ¶¶ 284–286.) The Venture forced Plaintiff, through means that included Eller using his psychological practice, to claim that Goedinghaus had serious psychological issues and needed to be on high doses of drugs such as Xanax, Adderall, Oxycodone, Marinol, Soma, Lorazepam, Ambien, and Trazadone. (AC ¶¶ 122–124.) Certain of these drugs, when combined, are known as the "Holy Trinity" due to their potent effects when taken together. (AC ¶ 149.)

This medication scheme made Plaintiff Hubbard, and, later, Plaintiff Goedinghaus—and likely others—pliable, and susceptible to other forms of threats and force. (AC ¶¶ 123.) Eller's contributions to the Venture also involved swearing false affidavits claiming that both Plaintiffs were seriously psychiatrically troubled persons under his care. (AC ¶¶ 8–12.)

Miller is a primary care physician who resides in Cedar Park, Texas. (AC ¶¶ 64, 145.) Rick Hubbard paid her, with the other Medical Doctor Defendants—Dr. Michael Scott Woods,

Dr. Joseph Bolin, and Dr. Mrugeshkumar Shah—to provide prescriptions for controlled medication to the Venture in order to assist in the force, threats, and coercion that the Venture applied to Plaintiffs in order to force them to perform commercial sex. (*See* AC ¶¶ 7–8, 15–16, 141.)

The Venture, through Rick Hubbard, would force Plaintiff Goedinghaus to visit Miller in order to obtain medications based on Eller's "written recommendations" (made to the Venture so that Rick Hubbard would know what drugs to seek) in exchange for payment from the Venture. (*See* AC ¶¶ 141, 144, 145.)

Goedinghaus informed Miller that Rick Hubbard was withholding her medications, thus forcing her into withdrawal, physically abusing her, including choking her out to the point of unconsciousness, and raping her, but Miller continued to provide drugs to Goedinghaus and provided no assistance to Goedinghaus. (AC ¶¶ 142–149, 151, 345.)

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8 requires that pleadings contain "a short and plain statement of the claim" that gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *Boudeloche v. Grow Chem. Coatings Corp.*, 728 F.2d 759, 762 (5th Cir. 1984). "Allegations of fraud . . . must meet Rule 9(b)'s heightened pleading standard, under which plaintiffs 'must state with particularity the circumstances' of the allegedly fraudulent conduct." *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020); *see also Williams v. WMX Techs.*, Inc., 112 F.3d 175, 177 (5th Cir. 1997).

On a Rule 12(b)(6) motion, a court may dismiss a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). In other words, a court may not dismiss a

complaint in which plaintiffs have alleged enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

### I.    MILLER IS NOT SHIELDED FROM TVPA AND RICO LIABILITY UNDER TEXAS STATUTE BECAUSE IT DOES NOT PREEMPT FEDERAL TVPA AND RICO CLAIMS

Miller is not protected by the TMLA (Tex. Civ. Prac. & Red. Code § 74.001(a)(13)) because state laws cannot preempt federal statutes. It is well-settled that, under the Supremacy Clause of the United States Constitution, where state and federal statutes conflict, federal law applies. *PLIVA, Inc. v. Mensing,* 564 U.S. 604, 618 (2011) (citing U.S. Const., Art. VI, cl. 2) ("Where state and federal law directly conflict, state law must give way.") (internal quotation marks omitted); *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 430 (5th Cir. 2019) ("when federal and state law conflict, the state law is nullified"); *Wells Fargo Bank of Texas NA v. James*, 321 F.3d 488, 491 (5th Cir. 2003) (finding Texas banking laws invalid where in conflict with federal banking statute provisions); *Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524, 528 (5th Cir. 2013) (finding criminal statutes invalid where in conflict with federal immigration law).

Miller's arguments that the TVPA and RICO cannot preempt the TMLA fail because her argument is backwards: she *is* asking the Court to find that federal statutes cannot apply because of a conflicting state statute. Miller relies heavily on authorities that go the other way around, where a defendant raises, as a defense, a federal statute to preempt a common law claim. *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) (finding common law negligence per se claim preempted by Interstate Commerce Commission Termination Act); *Univ. of Texas Sys. v.*

*Alliantgroup LP*, 400 F. Supp. 3d 610, 615–17 (S.D. Tex. 2019) (rejecting defense that federal tax law preempted Texas tax-related statute).

Indeed, the specific cases on which Miller relies in which the TMLA was not preempted by a federal statute all concern wildly different circumstances—indeed, most are cases far past the pleading stage and often where a state claim *was preempted* by a federal statute. *See RICO Creel v. Dr. Says, LLC*, No. 4:18-CV-00615, 2022 WL 991568, at *15 (E.D. Tex. Mar. 31, 2022) (finding, after trial based on trial evidence, RICO claims *not* barred by TMLA*); G.T. by Rolla v. Epic Health Servs.*, No. 17-CV-1127-LY, 2018 WL 8619803, at *2-6 (W.D. Tex. Dec. 27, 2018) (not addressing preemption; finding claims not valid under federal Rehabilitation Act for substantive reasons). Miller relies on other cases where a defendant failed to invoke a federal statute to avoid state law liability in the medical context, or whether a federal medical malpractice claim exists. *Roark v. Humana, Inc.*, 307 F.3d 298, 309 (5th Cir. 2002) (rejecting defendants' argument that they could not be liable under state medical malpractice law due to ERISA preemption); *Cristantielli v. Kaiser Foundation Health Plan of Texas*, 113 F. Supp. 2d 1055, 1063 (N.D. Tex. 2000) (same); *Marshall v. East Carroll Parish Hosp.*, 134 F.3d 319, 322 (5th Cir. 1998) (not addressing preemption, but rather whether federal statute create medical malpractice liability); *Guzman v. Memorial Hermann Hospital System*, 637 F.Supp.2d (S.D. Tex. 2009) (same); *Brown v. Wilson*, No. 5:10-CV-181-C, 2012 WL 6719464, at *3 (N.D. Tex. 2012) (same). Miller's authorities from other circuits are similarly irrelevant. *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013) (rejecting RICO claim on substantive grounds that no injury to business or property); *Aaron v. Durrani*, No. 1:13-CV-202, 2014 WL 996471, at *5 (S.D. Ohio Mar. 13, 2014) (rejecting RICO claim for failing to plead fraud with particularity).

Miller has not cited a single case in which a defendant avoids TVPA or RICO liability based on the TMLA. On the contrary, under Miller's own authority, a federal law "supersedes or supplants an inconsistent state law or regulation" where a state law "supersedes or supplants an inconsistent state law or regulation" and "compliance with" both the conflicting state and federal laws is "impossible." *United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016) (finding federal Controlled Substances Act conflicted with Texas state law). That is exactly what Miller seeks here: to avoid liability under the federal TVPA and RICO statutes solely based on a Texas state law that governs medical injuries.

Miller's preemption argument conflicts with the black letter law of the Constitution and she cannot use her status of a medical professional (who used that profession to affirmatively harm her patient for financial gain) to protect herself from federal law. Miller's Motion should be denied.

## II.   PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 8 NOTICE PLEADING BECAUSE THEY PLEADED DETAILED FACTS SHOWING MILLER'S ROLE IN THE VENTURE

Plaintiffs have met the requirements of Rule 8 because they have pleaded detailed facts showing Mitchell's role in the Venture giving rise to liability. Under Rule 8, a plaintiff must plead a "short and plain statement" of each claim in a "concise and direct manner," that gives rise to a "plausible" inference of relief. Fed. R. Civ. P. 8(a)(2), (d); *Twombly*, 550 U.S. at 570.

Despite Miller's insistence that Plaintiffs' Complaint consistent of improper "shotgun pleading" warranting dismissal under Rule 8, even under Miller's own cases's definition, the Complaint does not engage in any shotgun pleading. *See Jim S. Adler, P.C. v. Angel S. Reyes & Assocs., PC*, No. 3:19-cv-2027, 2020 WL 5099596, at *13-14 (N.D. Tex. Aug. 7, 2020) (rejecting characterization of "shotgun pleading" because plaintiffs' alleged facts were not "irrelevant or

unrelated" to the scheme at issue in complaint). To the contrary, Plaintiffs plead specific facts against Miller that are enough to give rise to liability under the TVPA and RICO:

- Rick Hubbard "forced Goedinghaus to visit" Miller starting in April or May 2019. (AC ¶ 144);
- Goedinghaus "*informed Miller* that Rick [Hubbard] was withholding her medications, thus forcing her into withdrawal, physically abusing her, including choking her out to the point of unconsciousness, and raping her," but Miller "continued to provide drugs to Goedinghaus" and "provided no assistance." (AC ¶ 144).

The Complaint also includes an example screenshot showing the high volume of drugs that Miller had prescribed for Goedinghaus in May through September 2019. (AC ¶ 151.) As discussed below, these allegations, especially combined with the other allegations in the Complaint, are more than enough to hold Miller liable under the TVPA and RICO, and Miller's Motion should be denied.

## III.    PLAINTIFFS HAVE ALLEGED A VALID TVPA VIOLATION AGAINST MILLER

Plaintiffs have alleged a valid TVPA beneficiary liability claim against Miller. A defendant violates the TVPA's beneficiary prong when he benefits, either "financially or by receiving anything of value" from participation in a venture that recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits a person knowing, or in reckless disregard of the fact that, means of force, threats of force, fraud, or coercion will cause the person to engage in a "commercial sex act." 18 U.S.C. § 1591(a); *United States v. Todd*, 627 F.3d 329, 333 (9th Cir. 2010). A venture is defined in 18 U.S.C. § 1591(e)(6) as "any group of two or more individuals associated in fact, whether or not a legal entity." *Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019).

Miller's only arguments against her TVPA liability are that she had no reason to know that Plaintiff Goedinghaus was being trafficked, and the "obvious alternative explanation" was that Miller was simply providing medical care to a patient. (Mot. at 14–15.) But this conflicts with

Plaintiff Goedinghaus's pleaded facts that she both told Miller of the trafficking activity (*see* AC ¶ 144) and that the drugs Miller prescribed were such that she was on constructive notice of their improper use (both of their volume and the fact that they constituted a high-risk combination of drugs (AC ¶¶ 149, 151)). From these, Miller knew of the use her drugs prescriptions were being used for and chose to ignore it for financial gain. None of Miller's authorities would subject Plaintiffs to a higher bar. *See Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2022 WL 106733, at *11 (M.D. Tenn. Jan. 11, 2022) (plaintiff failed to make a "single concrete allegation" as to why defendant should have knowledge of trafficking); *Harris v. Henry,* No. 1:22-CV-00366-LY, 2022 WL 16825200, at *6 (W.D. Tex. Nov. 7, 2022) (plaintiff pleaded only facts showing that defendants were "involved in [] film" where trafficking occurred and knew that plaintiff "was working on the set"). In neither of Miller's cases, unlikely here, did a plaintiff *tell* a defendant of her trafficking. Plaintiffs have sufficiently pleaded a TVPA beneficiary liability claim against Miller, and her Motion should be denied.

## IV.  PLAINTIFFS HAVE ALLEGED A VALID LABOR TRAFFICKING CLAIM BECAUSE MILLER OBTAINED THE BENEFIT OF PLAINTIFFS' LABOR BY FORCE

Plaintiffs have alleged a labor trafficking claim against Miller under 18 U.S.C. § 1589. Beneficiary liability under the labor trafficking statute exists where a defendant "knowingly benefits" (the beneficiary prong) either "financially or by receiving anything of value," from participation in a venture that engaged in the providing or obtaining of labor or services by any of the above four grounds. 18 U.S.C. § 1589(b); *see Lesnik,* 374 F. Supp. 3d at 953; *Ruelas v. Cnty. of Alameda,* 519 F. Supp. 3d 636, 650 (N.D. Cal. 2021).

Just as Plaintiffs pleaded a proper 18 U.S.C. § 1591(a) sex trafficking claim, they have pleaded a 18 U.S.C. § 1589 labor trafficking claim against Miller on the same facts: Miller knowingly provided large amount of prescription drugs in exchange for money (which had been

obtained from Plaintiff Goedinghaus's trafficking) where she was told that her patient was being trafficked. (*See* AC ¶ 144.) This is enough to give rise to labor trafficking liability, and Miller's Motion should be denied.

## V.       PLAINTIFFS HAVE ALLEGED A VALID RICO CLAIM AGAINST MILLER

Plaintiffs have pleaded a substantive RICO violation against Miller under 18 U.S.C. § 1962(c). A civil RICO claim must plead (1) a separate and distinct RICO enterprise that (2) engaged in a pattern of racketeering (3) causing harm to the Plaintiff. *See* 18 U.S.C. § 1962(c), (d).

Plaintiffs have properly alleged that Plaintiffs have RICO standing; have properly alleged the existence of a RICO Enterprise; have alleged a pattern of racketeering; and that Miller conducted or participated in the Enterprise. Plaintiffs have also properly alleged that Plaintiff Hubbard's RICO claim is not barred by the statute of limitations and the existence of a RICO conspiracy.

### A.      Plaintiffs Have Established RICO Standing Because the Enterprise Caused Financial Harm to Plaintiffs

Plaintiffs have pleaded standing under RICO. RICO standing exists where a plaintiff suffers a "concrete financial loss" to business or property that was proximately caused by an overt RICO violation. *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (false imprisonment that caused the victim to lose employment and employment opportunities was an injury to "business or property" within the meaning of RICO). Plaintiffs have been injured in the form of "moneys that Hubbard and Goedinghaus earned for providing companionship, including at Forced Sex Parties, and moneys that Hubbard earned" while working as a dancer being confiscated by the RICO Enterprise. (AC ¶ 416.) This is enough to allege RICO standing.

Miller's claim that Plaintiffs cannot recover for lost earnings because they seek earnings from illegal prostitution (Mot. at 15) is not what Plaintiffs plead: that they were deprived earnings

for legal work, including companionship at the Forced Sex Parties. (AC ¶ 416.) These are legal earnings and accordingly not barred from recovery. *See United States v. Lacey*, No. 22-10000, 10 2022 WL 4363818, at *1 (9th Cir. Sept. 21, 2022) (affirming that it is lawful to receive payments for companionship provided through escort services). Plaintiffs have adequately pleaded that Plaintiffs have suffered RICO injury, and thus have RICO standing.

### B.   Plaintiffs Have Pleaded a RICO Association-in-Fact Enterprise

Plaintiffs have adequately pleaded the existence of an association-in-fact enterprise. An association-in-fact enterprise—one that is not coterminous with a formal legal entity—exists where there is (i) a "common purpose," (ii) an "ongoing organization," and (iii) a "continuing unit." *Odom v. Microsoft Corp.,* 486 F.3d 541, 552-53 (9th Cir. 2007) (finding association-in-fact enterprise between software manufacturer and retailer). All three are present such that a RICO association-in-fact enterprise is adequately pleaded.

#### 1.   Plaintiffs Have Pleaded a Common Purpose

First, Plaintiffs have pleaded a "common purpose," which requires only that the Defendants were "associated for 'a common purpose of engaging in a course of conduct.'" *Id.* at 552 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Plaintiffs allege a specific common purpose of the Enterprise: "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Mr. [Rick] Hubbard, Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants." (AC ¶ 346, 445.) Plaintiffs have pleaded a common purpose under RICO.

#### 2.   Plaintiffs Have Pleaded an Ongoing Organization

Second, Plaintiffs allege that the Enterprise had an "ongoing organization," which requires the Enterprise to have engaged in the commission of "two or more predicate crimes." *Odom.*, 486

F.3d at 552. Plaintiffs have alleged the numerous predicate acts, including the TVPA, 18, U.S.C. § 1591, 1589; the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, Wire Fraud, 18 U.S.C. § 1343; and Witness Tampering, 18 U.S.C. § 1512. (AC ¶ 316.) And the Enterprise went about these acts with a distinct structure separate from distinct racketeering acts: Rick Hubbard and Eller would regularly communicate so that Eller could assist in coercing Plaintiffs, including through affidavits and causing the Medical Doctor Defendants (doctors who provided prescription drugs for the Enterprise) to improperly issue medication to Plaintiffs. (AC ¶¶ 311–313.) Rick Hubbard, including through the assistance of the Fixer Defendants (friends of Rick Hubbard who provided additional threats of force and coercion towards Plaintiffs) coordinated in the provision of Plaintiffs to Crow and the other Investor Defendants (those who provided funding to the Enterprise, and were often Crow's friends who attended his parties). (AC ¶¶ 17-27, 28-39.) Also involved were the Labor Trafficking Defendants, individuals who were in regular contact with Rick Hubbard after Plaintiff Hubbard had left Rick Hubbard, and attempted to extract further value from Plaintiff Hubbard and coerce her back into being forced to provide forced commercial sex. (AC ¶¶ 40–51.) And in addition, Plaintiffs pleaded that the Enterprise had a "legitimate non-criminal purpose, specifically facilitation of entertainment, companionship, and networking at social functions." (AC ¶ 419, 434.) Plaintiffs have pleaded numerous predicate acts to make out an ongoing organization under RICO.

### 3.     Plaintiffs Have Pleaded a Continuing Unit

Third, Plaintiffs allege that the Enterprise was a "continuing unit," meaning that the actions of the Enterprise were "ongoing" rather than "isolated activity." *Odom.*, 486 F.3d at 552-53 (finding that "an almost two-year time span is far more than adequate to establish" that two members of RICO enterprise "functioned as a continuing unit"). The "continuing unit" prong does

not require that "every member" of the Enterprise "be involved in each" of the predicate acts, or that "the predicate acts be interrelated in any way—only that there was ongoing conduct." *Id.* ("That several employees engaged in the activity at different times does not defeat the continuity requirement.").

Here, Plaintiffs allege a series of predicate acts that took place over at least *seven* years— from August 2012 to September 2019—more than three times as long as the Court of Appeals found "far more than adequate." *Id.* (*See, e.g.,* AC ¶ 316.) And Plaintiffs allege, at a minimum, three main players—Rick Hubbard, Eller, and Crow—who were involved at all stages of the Enterprise, in an organized fashion. (*See, e.g.,* AC ¶¶ 1, 7, 28–37.)

Plaintiffs have adequately pleaded an association-in-fact RICO Enterprise.

### 4.    Plaintiffs Have Pleaded a Pattern of Racketeering

Plaintiffs have adequately pleaded a pattern of racketeering, under both closed- and open-ended continuity. A pattern of racketeering requires that the pleaded predicate acts (i) are related and (ii) either demonstrate on their own or pose a risk of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 237 (1989). The second prong, risk of continued criminal activity, can be satisfied by pleading either "closed-ended continuity" (that a series of events occurred over a substantial period of time) or "open-ended continuity" (that the series of past events, by their nature, risk repetition." *Id.* at 241. Against an individual defendant, a RICO plaintiff must plead at least two predicate acts. *Id.* at 229. Plaintiffs have pleaded numerous related predicate acts (at least two of which accrue to Miller) which demonstrate both closed- and open-ended continuity. These include lengthy allegations describing the TVPA violations, which occurred in part at "dozens" of parties hosted by Crow.  (AC ¶ 33; *see id.* ¶¶ 5, 8, 9, 13, 15, 17, 18, 21, 26–28,  35, 38, 40, 43, 45–49, 120–126, 132, 134, 136, 138, 141–147, 151–152, 155–156, 159, 183–185, 187–190, 192–195,

197–199, 201–204, 206–208, 210–212, 214–217, 219–224, 225–228, 230–235, 244–247, 248–249, 251–252, 254–257, 258, 264, 267–269, 276–280, 287, 288, 290– 294.) Plaintiffs have alleged a pattern of racketeering activities.

### C.   Plaintiffs Have Pleaded That Miller Participated in the Affairs of the Enterprise

Plaintiffs have pleaded that Miller participated in the affairs of the Enterprise. To show participation in a RICO enterprise, a Plaintiff must show that a defendant had a role in directing the affairs of the Enterprise. *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 983 (N.D. Cal. 2018). In this context, "'directing' has a different meaning than is commonly understood" in daily usage and does not require even "significant control" over the Enterprise. *Kelmar v. Bank of Am. Corp.*, No. CV 12-6826 PSG (EX), 2012 WL 12850425, at *7 (C.D. Cal. Oct. 26, 2012). Instead, this requirement is satisfied so long as the defendant had a sufficiently important role, taking into account their position in the "chain of command" of the Enterprise and whether their actions were "vital" to the Enterprise's success. *Id.*

Miller's role in the Enterprise met these requirements. She had a vital role in prescribing medication without which the Enterprise could not have trafficked Plaintiff Goedinghaus. Plaintiffs have sufficiently pleaded that Miller participated in the affairs of the Enterprise and, further, has substantive liability under the RICO statute.

### D.   Hubbard's RICO Injury Does Not Lie Outside the Statute of Limitations Because Hubbard Pleaded Financial Harm That She Suffered From The Enterprise Into November 2019

Plaintiffs adequately plead that Plaintiff Hubbard's RICO injuries fall within the relevant four-year statute of limitations, running from the last RICO injury. RICO injuries include not only harm directly or intentionally caused by the Enterprise—the standard is "generous enough to include the unintended, though foreseeable, consequences of RICO predicate acts." *Diaz*, 420 F.3d

at 901 (finding loss of employment caused by false imprisonment by RICO enterprise a valid RICO harm).

Here, Plaintiff Hubbard pleads that in late October or November 2018, she was falsely imprisoned by the Enterprise—to the extent that Defendant Michael Hynes, an agent of the Enterprise, "tied Hubbard to a bed and kept her restrained for three days, releasing her only to use the restroom," and had previously at Rick Hubbard's direction, confiscated Hubbard's "driver's license," "phone," and "credit cards." (AC ¶¶ 27–279.) This prevented Hubbard from being able to hold employment, which constitutes a RICO injury. If the Court finds this insufficient, Plaintiff Hubbard can allege additional facts that Defendant Hynes and the Enterprise did not return her driver's license until December 2018, until which time Plaintiff Hubbard was unable to work due to lack of identification documents. These acts into December 2018—within four years of the complaint's filing of November 2022—lie within RICO's four-year statute of limitations, and Plaintiff Hubbard's RICO claim is timely.

E.     **Plaintiffs Have Alleged a RICO Conspiracy**

Plaintiffs have also alleged a RICO conspiracy. A claim for a RICO conspiracy exists under 18 U.S.C. § 1962(d) where a defendant "conspire[s] to violate" the substantive RICO provision of 18 U.S.C. § 1962(a). *See* 18 U.S.C. § 1962(d); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 915, 942 (N.D. Cal. 2013). For the reasons discussed above, Plaintiffs have established a valid substantive RICO claim. Plaintiffs have pleaded a proper substantive RICO claim and a RICO conspiracy claim.

## CONCLUSION

Miller knowingly participated in and benefitted from a sex trafficking scheme with Defendant Dr. Eller, whom she directly assisted through the prescribing of drugs to Plaintiff Goedinghaus that had been selected by Eller. Through this, both Eller and Miller had a crucial role in the Venture and in causing Plaintiff Goedinghaus to be forced, threatened, and coerced into commercial sex acts.

For these reasons, and all those other foregoing reasons, the Court should respectfully deny

Miller's motion to dismiss.


Dated: New York, New York
        August 17, 2023


                    By: _____
                        Matthew W. Schmidt*
                        John G. Balestriere*
                        **BALESTRIERE FARIELLO**
                        225 Broadway, 29th Floor
                        New York, New York 10007
                        Telephone: (212) 374-5401
                        Facsimile: (212) 208-2613
                        john.balestriere@balestrierefariello.com
                        matthew.schmidt@balestrierefariello.com
                        *Admitted Pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing "Plaintiffs' Opposition to Defendant Miller's Motion to Dismiss the Complaint" was served on the following counsel of record via ECF on August 17, 2023.

Dated: New York, New York
         August 17, 2023

                                        BALESTRIERE FARIELLO

                                        By:

                                        Matthew W. Schmidt
                                        Attorney for Plaintiffs