UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

John G. Balestriere*
Matthew W. Schmidt*
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5401
Facsimile: (212) 208-2613
john.balestriere@balestrierefariello.com
Attorneys for Plaintiffs
*Admitted *pro hac vice*

| | |
|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS,<br>    Plaintiffs,<br>v.<br>TRAMMELL S. CROW, JR., DR. BENJAMIN TODD ELLER, RICHARD HUBBARD, DR. MELISSA MILLER, DR. JOSEPH BOLIN, DR. SCOTT WOODS, DR. MRUGESHKUMAR SHAH, MICHAEL CAIN, COE JURACEK, PHILIP ECOB, H.J.COLE, TEXAS RANGER CODY MITCHELL, KURT KNEWITZ, PAUL PENDERGRASS, RALPH ROGERS, ROBERT PRUITT, SCOTT BRUNSON, CASE GROVER, RICHARD BUTLER, MARC MOLINA, MICHAEL HYNES, JR., SHAWN MAYER, JADE MAYER, RCI HOSPITALITY HOLDINGS, INC., INTEGRITY BASED MARKETING, LLC, STPORM FITNESS NUTRITION, LLC, ULTRA COMBAT NUTRITION, LLC, ECOLIFT HOMES LLC, ELEVATED WELLNESS PARTNERS LLC, DOE INDIVIDUALS 1–20, and DOE COMPANIES 21–30<br>    Defendants. | Case No. 5:23-cv-00580-FB<br><br>Judge: Hon. Fred Biery<br>Date Action Filed: May 8, 2023 (transferred) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT WOODS' MOTION TO DISMISS AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii–iii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 1

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT ................................................................................................................................ 3

    I.    PLAINTIFFS HAVE ALLEGED A VALID TVPA BENEFICIARY VIOLATION AGAINST WOODS ............................................................................................................. 3

    II.    PLAINTIFFS HAVE ALLEGED A VALID LABOR TRAFFICKING CLAIM BECAUSE WOODS OBTAINED THE BENEFIT OF PLAINTIFFS' LABOR BY FORCE ....................................................................................................................... 5

    III.    PLAINTIFFS HAVE ALLEGED THAT WOODS PARTICIPATED IN THE AFFAIRS OF THE RICO ENTERPRISE ................................................................... 6

CONCLUSION ............................................................................................................................ 7

# **TABLE OF AUTHORITIES**

**Cases**

*Armstrong v. Ashley*,
  60 F.4th 262 (5th Cir. 2023) ................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 3

*Bistline v. Parker*,
  918 F.3d 849 (10th Cir. 2019) ................................................................................................ 4

*Boudeloche v. Grow Chem. Coatings Corp.*,
  728 F.2d 759 (5th Cir. 1984) .................................................................................................. 3

*Diaz v. Gates*,
  420 F.3d 897 (9th Cir. 2005) .................................................................................................. 6

*Doe #9 v. Wyndham Hotels & Resorts, Inc.*,
  2021 WL 1186333 (S.D. Tex. Mar. 30, 2021) ........................................................................ 4

*E.S. v. Best W. Int'l Inc.*,
  510 F. Supp. 3d 420 (N.D. Tex. 2021) ................................................................................... 5

*Grogan v. Platt*,
  835 F.2d 844 (11th Cir. 1988) ................................................................................................ 6

*Harris v. Henry*,
  No. 1:22-CV-00366-LY, 2022 WL 16825200 (W.D. Tex. Nov. 7, 2022) .............................. 4

*Hughes v. Tobacco Inst., Inc.*,
  278 F.3d 417 (5th Cir. 2001) .................................................................................................. 7

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
  731 F.3d 556 (6th Cir. 2013) .................................................................................................. 7

*Lesnik v. Eisenmann SE*,
  374 F. Supp. 3d 923, 953 (N.D. Cal. 2019) ............................................................................ 6

*Molina-Aranda v. Black Magic Enterprises, L.L.C.*,
  983 F.3d 779 (5th Cir. 2020) .................................................................................................. 3

*Ramsbottom v. Ashton*,
   No. 3:21-CV-00272, 2022 WL 106733 (M.D. Tenn. Jan. 11, 2022) ..................................... 5

*Ruelas v. Cnty. of Alameda*,
  519 F. Supp. 3d 636 (N.D. Cal. 2021) .................................................................................... 6

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ........................................................................................................... 3

*United States v. Todd*,
   627 F.3d 329 (9th Cir. 2010) ............................................................................................. 3

*Williams v. WMX Techs.*, Inc.,
   112 F.3d 175 (5th Cir. 1997) ............................................................................................. 3

**Statutes**

18 U.S.C. § 1589 ..................................................................................................................... 5, 6

18 U.S.C. § 1591(a), (e)(6) ................................................................................................. 3, 4, 6

**Rules**

Fed. R. Civ. P. §8 ........................................................................................................................ 3

## PRELIMINARY STATEMENT[1]

Defendant Dr. Michael Scott Woods, M.D. ("Woods"), with his co-conspirators, for years participated in a sex trafficking scheme (the "Venture") that unlawfully trafficked Plaintiffs Julia Hubbard ("Hubbard") and Kayla Goedinghaus ("Goedinghaus"), subjecting them to hundreds of forced commercial sex acts, as well as the beatings, threats, and misuse of medications needed to compel Hubbard and Goedinghaus to engage in such acts.

Woods provided the Venture with medications used to force Plaintiff Hubbard to engage in sex acts against her will. Defendant Richard Hubbard ("Rick Hubbard") would force Plaintiff Hubbard to visit Woods and obtain the drug prescriptions identified by Defendant Dr. Benjamin Todd Eller ("Eller"), a Santa Monica-based psychologist. For this work, Rick Hubbard would pay Woods $100 for each time that Plaintiff Hubbard visited Woods. The drugs that Woods prescribed included fluoxetine (Prozac), alprazolam (Xanax), and amitriptyline (an antidepressant). In 2017, Plaintiff Hubbard outright told Woods that she did not need the drugs he was prescribing, and that she was being forced by Rick Hubbard to engage in sex acts against her will. Woods took no action in response to Plaintiff Hubbard's request for help, and also ignored Hubbard's visible bruising and medical history of frequent injuries and surgeries made necessary by such injuries. This gives rise to liability against Woods under the TVPA and RICO, such that Woods's Motion should be denied.

## STATEMENT OF FACTS

Plaintiff Hubbard married Defendant Rick Hubbard in February 2010. (AC ¶ 96.) Following an arrest later that year for financial fraud, Rick Hubbard became desperate for new financial opportunities. (AC ¶¶ 103–105.) Rick Hubbard then, along with Defendant Eller, and

---

[1] All capitalized terms are defined in the Amended Complaint, Dkt. No. 190 (the "Complaint" or "AC"). Some terms are redefined herein for the Court's convenience.

1

later, with key financing from Defendant Crow and his colleagues, formulated the Venture, which began to force Plaintiff Hubbard to perform sex acts for money. (AC ¶¶ 121–123.) The Venture forced Plaintiff Hubbard, through means that included Eller using his psychological practice, to claim that Hubbard had serious psychological issues and needed to be on high doses of drugs such as Xanax, Adderall, Oxycodone, Marinol, Soma, Lorazepam, Ambien, and Trazadone. (AC ¶¶ 122–124.) Certain of these drugs, when combined, are known as the "Holy Trinity" due to their potent effects when taken together. (AC ¶¶ 123–24, 149.) This medication scheme made Plaintiff Hubbard, and, later, Plaintiff Goedinghaus—and likely others—pliable, and susceptible to other forms of threats and force. (AC ¶¶ 123–24.) Eller's contributions to the Venture also involved swearing false affidavits claiming that both Plaintiffs were seriously psychiatrically troubled persons under his care. (AC ¶¶ 8–12.)

Woods is a medical doctor and psychiatrist who resides in Texas. (AC ¶¶ 67, 145.) Rick Hubbard paid him, with the other Medical Doctor Defendants—Dr. Melissa Miller, Dr. Joseph Bolin, and Dr. Mrugeshkumar Shah—to provide prescriptions for controlled medication to the Venture in order to assist in the force, threats, and coercion that the Venture applied to Plaintiffs in order to force them to perform commercial sex. (*See* AC ¶¶ 7–8, 15–16.) The Venture, through Rick Hubbard, would force Plaintiff Hubbard to visit Woods in order to obtain medication based on Eller's "written recommendations" (made to the Venture so that Rick Hubbard would know what drugs to seek) in exchange for payment from the Venture. (*See* AC ¶ 139.) Woods prescribed numerous drugs to Plaintiff Hubbard, including fluoxetine, alprazolam, and amitriptyline. (AC ¶ 121.) Woods continued in these actions—receiving $100 from the Venture through Rick Hubbard for each time that Plaintiff Hubbard visited Woods—even though, in 2017, Hubbard told Woods that she did not need the drugs that Woods was prescribing, and she was being forced to engage in

2

sex against her will. (AC ¶¶ 143, 145, 355.)

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8 requires that pleadings contain "a short and plain statement of the claim" that gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *Boudeloche v. Grow Chem. Coatings Corp.*, 728 F.2d 759, 762 (5th Cir. 1984). "Allegations of fraud . . . must meet Rule 9(b)'s heightened pleading standard, under which plaintiffs 'must state with particularity the circumstances' of the allegedly fraudulent conduct." *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020); *see also Williams v. WMX Techs.*, Inc., 112 F.3d 175, 177 (5th Cir. 1997).

On a Rule 12(b)(6) motion, a court may dismiss a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) In other words, a court may not dismiss a complaint in which Plaintiffs have alleged enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

**I.  PLAINTIFFS HAVE ALLEGED A VALID TVPA BENEFICIARY VIOLATION AGAINST WOODS**

Plaintiffs have alleged a valid TVPA beneficiary liability claim against Woods. A defendant violates the TVPA's beneficiary prong when he benefits, either "financially or by receiving anything of value" from participation in a venture that recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits a person knowing, or in reckless disregard of the fact that, means of force, threats of force, fraud, or coercion will cause the person to engage in a "commercial sex act." 18 U.S.C. § 1591(a); *United States v. Todd*, 627

3

F.3d 329, 333 (9th Cir. 2010). A venture is defined in 18 U.S.C. § 1591(e)(6) as "any group of two or more individuals associated in fact, whether or not a legal entity." *Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019).

Plaintiffs have pleaded specific acts that Woods took in support of the Venture, including assistance that he provided and benefits he received. These include:

- That Rick Hubbard directed Hubbard to meet with Woods, who "appeared particularly eager to prescribe drugs without question." (AC ¶ 145);
- That Woods "repeatedly assured Hubbard" he would give her whatever drugs she "need[ed]," even when Hubbard (due to the forced drugging from the Venture) would show up to medical appointments while visibly on drugs (AC ¶ 145 (emphasis added));
- That the Venture, through Rick Hubbard, paid Woods "$100 per visit" when he prescribed drugs to Hubbard for the Venture's benefit (AC ¶ 145); and
- That in 2017, Hubbard "*told Woods*" that "she did not need the drugs" he was prescribing, and that Hubbard was "*being forced to engage in sex against her will*" through means including "beatings" (AC ¶¶ 145, 355); and
- That on one occasion, Defendant Michael Hynes accompanied Hubbard to an appointment with Dr. Woods and "tried to get Hubbard prescriptions for more drugs, including methamphetamines" (AC ¶ 356).

These allegations establish all required elements under the TVPA: Woods received a benefit (in the form of $100 per appointment) in exchange for assisting the Venture (in the form of providing drug prescriptions), which Woods knew was engaged in sex trafficking (because Plaintiff Hubbard told Woods this). Woods's attempts to reinterpret these facts as a patient who was in an abusive relationship is simply not consistent with Plaintiffs' pleaded facts: that Woods was "eagerly" providing prescriptions for large amounts of strong medication to a woman who told him that she was being forced to have sex against her will.

*Harris v. Henry*, where there was no allegation that a defendant was "aware" of the trafficking in thus inapposite because here Plaintiff Hubbard directly told Woods of her trafficking. No. 1:22-CV-00366-LY, 2022 WL 16825200, at *6 (W.D. Tex. Nov. 7, 2022); *see also Doe #9 v.*

4

*Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *2 (S.D. Tex. Mar. 30, 2021) (large hotel operating having no alleged reason to know of trafficking on premises of franchisee properties). Also irrelevant is *E.S. v. Best W. International, Inc.,*—another case where a large hotel chain had no reason to know of trafficking on some of its properties—which Woods relies on for the proposition that a "failure to alert authorities" or otherwise intervene is not enough for trafficking liability. 510 F. Supp. 3d 420, 428 (N.D. Tex. 2021). (Mot. at 12–13.) But Plaintiffs' allegations are not that Woods failed to intervene or alert authorities—it's that Woods *actively engaged* in the Venture through providing drugs crucial to its operation.

*Armstrong v. Ashley* does not help Woods because it concerns "group pleading" against eight defendants "without factual material" alleged against any defendant individually, such that it was not clear what any specific defendant did. 60 F.4th 262, 274 (5th Cir. 2023). That is not the case here. While Plaintiffs do reference the "Medical Defendants" as a group, Plaintiffs also plead specific facts concerning Woods that establish each element of a TVPA beneficiary liability claim. Lastly, Woods's reliance on *Ramsbottom v. Ashton*, in which a plaintiff failed to make a "single concrete factual allegation" about why a defendant should have known of trafficking, fails for the same reason. *See* No. 3:21-CV-00272, 2022 WL 106733, at *11 (M.D. Tenn. Jan. 11, 2022).

Plaintiffs have sufficiently pleaded a TVPA beneficiary liability claim against Woods, and his Motion should be denied.

## II. PLAINTIFFS HAVE ALLEGED A VALID LABOR TRAFFICKING CLAIM BECAUSE WOODS OBTAINED THE BENEFIT OF PLAINTIFFS' LABOR BY FORCE

Plaintiffs have alleged a labor trafficking claim against Woods under 18 U.S.C. § 1589. Beneficiary liability under the labor trafficking statute exists where a defendant "knowingly benefits" (the beneficiary prong) either "financially or by receiving anything of value," from participation in a venture that engaged in the providing or obtaining of labor or services by any of

5

the above four grounds. 18 U.S.C. § 1589(b); *see Lesnik v. Eisenmann SE,* 374 F. Supp. 3d at 953; *Ruelas v. Cnty. of Alameda,* 519 F. Supp. 3d 636, 650 (N.D. Cal. 2021).

Just as Plaintiffs pleaded a proper 18 U.S.C. § 1591(a) sex trafficking claim, they have pleaded a 18 U.S.C. § 1589 labor trafficking claim against Woods on the same facts: Woods knowing provided large amount of prescription drugs in exchange for money (which had been obtained from Plaintiff Hubbard's trafficking) where he was told that his patient was being trafficked. (*See* AC ¶ 145.) This is enough to give rise to labor trafficking liability, and Woods's Motion should be denied.

### III. PLAINTIFFS HAVE ALLEGED THAT WOODS PARTICIPATED IN THE AFFAIRS OF THE RICO ENTERPRISE

Plaintiffs have adequately pleaded that Woods participated in the affairs of the RICO Enterprise that harmed Plaintiffs. Beyond arguments as to lack of particularity (which Plaintiffs addressed at length above and fail for the same reasons here). Woods only challenges that Plaintiffs pleaded no harm to business and property. But here again, Woods is simply wrong.

To plead a RICO violation, a plaintiff must suffer a "concrete financial loss" to business or property that was proximately caused by an overt RICO violation. *Diaz v. Gates*, 420 F.3d 897, 900–901 (9th Cir. 2005). This includes loss of employment earnings. *Id*. (false imprisonment that caused the victim to lose employment and employment opportunities was an injury to "business or property" within the meaning of RICO); *see also Grogan v. Platt*, 835 F.2d 844, 848 (11th Cir. 1988) ("We do not hold that plaintiffs may never recover under RICO for the loss of employment opportunities. We merely hold that the appellants cannot recover under RICO for those pecuniary losses that are most properly understood as part of a personal injury claim.").

Here, Plaintiffs do not simply plead loss of employment opportunities, they plead loss of actual earned income: they were injured in the form of injured in the form of "moneys that Hubbard

6

and Goedinghaus earned for providing companionship, including at Forced Sex Parties, and moneys that Hubbard earned" while working as a dancer but were confiscated by the RICO Enterprise. (AC ¶ 312.) There is, in fact, no RICO allegation based on personal injuries at all, making Woods's authorities on this topic inapposite. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001) (rejecting RICO injury based on "personal injury or death" caused by cigarettes); *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 566 (6th Cir. 2013) (rejecting RICO damages "arising out of" workplace injury). In other words, while Plaintiffs TVPA claims do seek damages from the extensive pain and suffering that Plaintiffs suffered as a result of Woods and other members of the RICO Enterprise, their RICO claims seek to recover only proper RICO injuries: the monies that Plaintiffs legally earned from activities that they were not paid. Plaintiffs have pleaded an adequate RICO claim against Woods.

## **CONCLUSION**

Woods provided prescriptions for large amounts of drugs in exchange for payments to a woman who told him that she was being trafficked and forced to engaged in sex against her will. For these reasons, and all those other foregoing reasons, the Court should respectfully deny Woods's motion to dismiss.

Dated: New York, New York
   August 17, 2023

                 By: _____
                    Matthew W. Schmidt*
                    John G. Balestriere*
                    **BALESTRIERE FARIELLO**
                    225 Broadway, 29th Floor
                    New York, New York 10007
                    Telephone: (212) 374-5401
                    Facsimile: (212) 208-2613
                    john.balestriere@balestrierefariello.com
                    matthew.schmidt@balestrierefariello.com
                    *\*Admitted Pro hac vice*

**CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing Plaintiffs' Opposition to Defendant Woods' Motion to Dismiss the Complaint" was served on the following counsel of record via ECF on August 17, 2023.

Dated: New York, New York
   August 17, 2023

                     BALESTRIERE FARIELLO

                     By:
                     Matthew W. Schmidt
                     Attorney for Plaintiffs