# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

John G. Balestriere*
Matthew W. Schmidt*
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5401
Facsimile: (212) 208-2613
john.balestriere@balestrierefariello.com
Attorneys for Plaintiffs
*Admitted pro hac vice

| | |
|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 5:23-cv-00580-FB |
| TRAMMELL S. CROW, JR., DR. BENJAMIN TODD ELLER, RICHARD HUBBARD, DR. MELISSA MILLER, DR. JOSEPH BOLIN, DR. SCOTT WOODS, DR. MRUGESHKUMAR SHAH, MICHAEL CAIN, COE JURACEK, PHILIP ECOB, H.J.COLE, TEXAS RANGER CODY MITCHELL, KURT KNEWITZ, PAUL PENDERGRASS, RALPH ROGERS, ROBERT PRUITT, SCOTT BRUNSON, CASE GROVER, RICHARD BUTLER, MARC MOLINA, MICHAEL HYNES, JR., SHAWN MAYER, JADE MAYER, RCI HOSPITALITY HOLDINGS, INC., INTEGRITY BASED MARKETING, LLC, STORM FITNESS NUTRITION, LLC, ULTRA COMBAT NUTRITION, LLC, ECOLIFT HOMES LLC, ELEVATED WELLNESS PARTNERS LLC, DOE INDIVIDUALS 1–20, and DOE COMPANIES 21–30 | ) ) ) Judge: Hon. Fred Biery ) Date Action Filed: May 8, 2023 (transferred) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## PLAINTIFFS' OPPOSITION TO DEFENDANT JURACEK'S MOTION TO DISMISS AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii–v

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 4

LEGAL STANDARD .................................................................................................... 5

ARGUMENT ................................................................................................................ 5

I.   PLAINTIFFS HAVE ALLEGED A VALID TVPA VIOLATION AGAINST JURACEK ........................................................................................................ 5

    A.   Plaintiffs Have Alleged That Juracek Provided Assistance, Support, And Facilitation to The Venture Through Financial Payments and Threats of Misuse of Legal Process ..................................................................................... 6

    B.   Plaintiffs Have Alleged That Juracek Benefitted from the Venture Through the Receipt of Pornographic Images of Plaintiff Hubbard ................................ 8

II.  PLAINTIFFS HAVE ALLEGED A VALID LABOR TRAFFICKING CLAIM BECAUSE JURACEK OBTAINED THE BENEFIT OF PLAINTIFFS' LABOR BY FORCE .................................................................................................... 10

III. PLAINTIFFS HAVE ALLEGED A VALID RICO CLAIM AGAINST JURACEK   11

    A.   Plaintiffs Have Established RICO Standing Because the Enterprise Caused Financial Harm to Plaintiffs .............................................................................. 12

    B.   Plaintiffs Have Pleaded a RICO Association-in-Fact Enterprise ................... 13

        1.   Plaintiffs Have Pleaded a Common Purpose ................................... 13

        2.   Plaintiffs Have Pleaded an Ongoing Organization ......................... 14

        3.   Plaintiffs Have Pleaded a Continuing Unit ..................................... 15

        4.   Plaintiffs Have Pleaded a Pattern of Racketeering ......................... 15

    C.   Plaintiffs Have Pleaded That Juracek "Conducted" and "Directed" the Affairs of the Enterprise ........................................................................................... 16

    D.   Hubbard's RICO Injury Does Not Lie Outside the Statute of Limitations Because Hubbard Pleaded Financial Harm That She Suffered From The Enterprise Into November 2019 ........................................................................ 17

    E.   Plaintiffs Have Alleged a RICO Conspiracy ................................................... 18

CONCLUSION............................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Benhamou,*
   190 F. Supp. 3d 631 (S.D. Tex. 2016) ................................................................. 17

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................. 5

*Bias v. Wells Fargo & Co.,*
   942 F. Supp. 2d 915 (N.D. Cal. 2013) ................................................................ 18

*Bistline v. Parker,*
   918 F.3d 849 (10th Cir. 2019) ............................................................................. 6

*Boudeloche v. Grow Chem. Coatings Corp.,*
   728 F.2d 759 (5th Cir. 1984) ............................................................................... 5

*Canosa v. Ziff,*
   No. 18 CIV. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ................... 7

*Diaz v. Gates,*
   420 F.3d 897 (9th Cir. 2005) ........................................................................ 12, 17

*Does 1-6 v. Reddit, Inc.,*
   51 F.4th 1137 (9th Cir. 2022) ....................................................................... 6, 7, 8

*Doe #9 v. Wyndham Hotels & Resorts, Inc.,*
   No. 4:19-CV-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021) ......................... 7

*Doe v. Twitter, Inc.,*
   555 F. Supp. 3d 889 (N.D. Cal. 2021) ................................................................. 8

*E.S. v. Best W. Int'l, Inc.,*
   10 F. Supp. 3d 420 (N.D. Tex. 2021) ................................................................... 7

*Gutierrez v. Venegas,*
   No. 6:20-CV-129-H, 2021 WL 9314946 (N.D. Tex. Sep. 8, 2021) ....................... 17

*Harris v. Henry,*
   No. 1:22-CV-00366-LY, 2022 WL 16825200 (W.D. Tex. Nov. 7, 2022) ................ 6

*H.H. v. G6 Hosp., LLC,*
   No. 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) ............................ 7

*H.J. Inc. v. Nw. Bell Tel. Co.,*
   492 U.S. 229, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) ................................... 16

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) ..................................................................... 16

*J.C. v. Choice Hotels Int'l, Inc.*,
   No. 20-CV-00155-WHO, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) .............................. 6, 7

*Kelmar v. Bank of Am. Corp.*,
   No. CV 12-6826 PSG (EX), 2012 WL 12850425 (C.D. Cal. Oct. 26, 2012) .......................... 16

*Lesnik v. Eisenmann SE*,
   374 F. Supp. 3d 923 (N.D. Cal. 2019) ...................................................................... 8

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
   425 F. Supp. 3d 959 (S.D. Ohio 2019) ...................................................................... 7

*Molina-Aranda v. Black Magic Enterprises, L.L.C.*,
   983 F.3d 779 (5th Cir. 2020) ................................................................................. 5

*Moore v. Bushman*,
   559 S.W.3d 645 (Tex. App. 2018) .......................................................................... 11

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018) ................................................................... 8, 10

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) ..................................................................... 13, 14, 15

*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017) .................................................................................. 7

*Ruelas v. Cnty. of Alameda*,
   519 F. Supp. 3d 636 (N.D. Cal. 2021) ..................................................................... 10

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ........................................................................................... 5

*Treminio v. Crowley Maritime Corp.*,
   No. 3:22-CV-174-MMH-PDB, 2023 WL 113565 (M.D. Fla. Jan. 5, 2023) ........................... 10

*United States v. Cook*,
   782 F.3d 983 (8th Cir. 2015) ................................................................................. 8

*United States v. Maneri*,
   353 F.3d 165 (2d Cir. 2003) .................................................................................. 8

*United States v. Raniere*,
   55 F.4th 354 (2d Cir. 2022) .................................................................................. 8

*United States v. Todd*,
  627 F.3d 329 (9th Cir. 2010) ............................................................................. 5

*United States v. Turkette*,
  452 U.S. 576 (1981) ........................................................................................ 13

*Jane Doe No. 1 et al v. Daniel S. Fitzgerald,*
  No. CV2010713MWFRAOX, 2022 WL 425016 (C.D. Cal. Jan. 6, 2022) ................... 9

*Williams v. WMX Techs*., Inc.,
  112 F.3d 175 (5th Cir. 1997) ............................................................................ 5

**<u>Statutes</u>**
18 U.S.C. § 1343 .................................................................................................. 14

18 U.S.C. § 1512 .................................................................................................. 14

18 U.S.C. § 1589 .................................................................................................. 10

18 U.S.C. § 1591 ...................................................................................... 5, 6, 8, 11, 14

18 U.S.C. § 1962 ............................................................................................... 11, 18

18 U.S.C. § 2252 ................................................................................................... 8

21 U.S.C. § 801 ................................................................................................... 14

**<u>Rules</u>**
Fed. R. Civ. P. 8 ................................................................................................. 5, 8

Fed. R. Civ. P. 12 ................................................................................................. 5

## PRELIMINARY STATEMENT[1]

Defendant Coe Juracek ("Juracek") assisted and benefitted from a sex trafficking scheme (the "Venture") that unlawfully trafficked Plaintiffs Julia Hubbard ("Hubbard") and Kayla Goedinghaus ("Goedinghaus"), subjecting them to hundreds of forced commercial sex acts, as well as the beatings, threats, and forced use of medications needed to compel Hubbard and Goedinghaus to engage in such acts. These acts of misconduct, including Juracek's own acts, also make out an illegal racketeering enterprise (the "Enterprise").

Juracek's role in the enterprise was one of knowingly providing key financial support to the Venture in return for benefits including receipt of pornographic images of Plaintiff Hubbard. Juracek was also at all relevant times closely linked to Defendant Trammell Crow, Jr. ("Crow"), who was (as Juracek knew) the Venture's primary financer and host of the sex parties (the "Forced Sex Parties") where Plaintiffs were forced to commit commercial sex acts. Juracek also threatened Hubbard with misuse of legal process by threatening to provide false testimony in court for the purpose of Hubbard losing custody of her children. Such threats were central to the Venture's ability to continue to force Hubbard to perform sex acts, since (as Juracek knew) Hubbard greatly feared the loss of custody of her children. And such threats were particularly effective from Juracek since, apart from the Venture itself, Juracek lacked connection to Hubbard or her then-husband Defendant Rick Hubbard ("Rick Hubbard"), meaning that Juracek's testimony against Hubbard would be seen as more credible.

While Juracek is correct that some of his co-conspirators, including Rick Hubbard, Dr. Benjamin Todd Eller ("Eller"), and Juracek's friend and business associate Crow, had more central

---

[1] All capitalized terms are defined in the Amended Complaint, Dkt. No. 190 (the "Complaint" or "AC"). Some terms are redefined herein for the Court's convenience.

roles in the Venture, that does not change the fact that Juracek's actions materially assisted the Venture and contributed to Plaintiffs' trafficking, through both financial contributions and threats of misuse of legal process, or that Juracek received benefit from the Venture, in the form of receipt of pornographic images. Simply because other Defendants in the Venture might be more essential or have engaged in worse misconduct does not relieve Juracek of his liability. His wrongful acts constitute violations of the Trafficking Victims Protection Act ("TVPA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO") that are properly brought in this Court.

Second, Plaintiffs have adequately pleaded beneficiary liability under the TVPA against Juracek. Juracek "participated" in the Venture through knowingly assisting, supporting, and facilitating the Venture's activities through financial support, provision of social cachet, and by threatening Hubbard with false testimony in court that would cause Hubbard to lose custody of her children. And Juracek "benefitted" from the Venture through the receipt of pornographic images of Plaintiff Hubbard. Juracek's participation in the Venture went beyond that of a mere customer who turned a "blind eye" to the Venture's activities—at minimum, Juracek, having "threatened Hubbard" with potential false testimony, constituted an active role in advancing the Venture's activities. And Juracek's reliance on a single, unpublished case for the proposition that "sexual gratification" alone does not constitute a thing of value under the TVPA is inapposite: even that case only found that sexual gratification *alone* did not constitute a thing of value, distinguishing another case where a defendant had (like Juracek) received pornographic images where the defendant, like here, was liable.

Third, Juracek's actions also give rise to beneficiary liability under the TVPA's labor trafficking provision. Juracek knowingly received the benefit of Plaintiffs' labor (in the form of pornographic images of Hubbard) arising from his participation (including through financial

payments and threats of false testimony). This forced labor included the sex acts performed by Plaintiffs at Crow's parties as well as the Venture seizing revenue that Plaintiff Hubbard earned in other work.

Fourth, Plaintiffs have alleged a valid RICO claim against Juracek. Plaintiffs have RICO standing because the RICO Enterprise caused financial harm to Plaintiffs, including seizing funds that Hubbard and Goedinghaus earned for providing what was otherwise legal companionship. Plaintiffs have pleaded that the Enterprise engaged in a pattern of racketeering activities, including, at a minimum, violations of the TVPA itself (which, while not required under RICO, Juracek personally violated). Plaintiffs also adequately allege that the Enterprise constituted an association-in-fact enterprise as a matter of law, including a common purpose (trafficking women, separate from the Enterprise's legitimate business of providing legal companionship), ongoing organization (shown by potentially hundreds of predicate acts), and that the Enterprise was a continuing unit (whose racketeering activities lasted at least seven years). Plaintiffs also adequately alleged that Juracek "conducted" and "directed" the Enterprise's affairs through his defined and vital role in the Enterprise; as Juracek's own authority holds, this prong does not require that Juracek hold a managerial role in the Enterprise, only that Juracek implemented the wishes of the Enterprise's "upper management" or was "vital" to the Enterprise's goals, both of which are true as to Juracek. And, lastly, Plaintiffs pleaded a sufficient RICO conspiracy claim against Juracek, as Juracek was aware of the RICO Enterprise and its actions, and, in proceeding to advance the Enterprise's interests, agreed to assist in the commission of further predicate acts.

While Plaintiffs' original complaint laid out sufficient facts to hold Juracek liable for all claims, Plaintiffs amended to plead further specific facts against Juracek and other Defendants. Plaintiffs have adequately alleged Juracek's important rule in the Venture, as a provider of

financial support and threats of misuse of legal process in exchange for pornographic imagery. And while engaging in these activities, Juracek had knowledge of the Venture's wrongful activities, meaning that Juracek assisted the Venture knowing that his activities would cause Plaintiffs and other victims of the Venture to be forced into commercial sex acts.

## STATEMENT OF FACTS

Plaintiff Hubbard married Defendant Rick Hubbard in February 2010. (AC ¶ 96.) Following an arrest later that year for financial fraud, Rick Hubbard became desperate for new financial opportunities. (AC ¶¶ 103–105.) Rick Hubbard then, along with Defendant Eller, and later, with key financing from Defendant Crow and his colleagues, formulated the Venture, which began to force Plaintiff Hubbard to perform sex acts for money. (AC ¶¶ 120–122.) The Venture forced Plaintiff Hubbard, through means that included Eller using his psychological practice, to claim that Hubbard had serious psychological issues and needed to be on high doses of drugs such as Xanax, Adderall, Oxycodone, Marinol, Soma, Lorazepam, Ambien, and Trazadone. (AC ¶¶ 122–124.) Certain of these drugs, when combined, are known as the "Holy Trinity" due to their potent effects when taken together. (*Id.*) This medication scheme made Plaintiff Hubbard, and, later, Plaintiff Goedinghaus—and likely others—pliable, and susceptible to other forms of threats and force. (*Id.*) Eller's contributions to the Venture also involved swearing false affidavits claiming that both Plaintiffs were seriously psychiatrically troubled persons under his care. (AC ¶¶ 7–11.)

Juracek, a personal associate of Crow, provided financial support to the Venture as well as the lending social cachet that Rick Hubbard used to further recruit into the Venture. (AC ¶¶ 209–10, 369.) Juracek knew of and attended the Forced Sex Parties and received pornographic images of Plaintiff Hubbard in exchange for his financial support of the Venture. (*See* AC ¶¶ 211–212, 370.) Juracek also threatened Hubbard with false testimony in court in order to deprive her of

custody of her children—a threat that Juracek made knowing that it would be used to force Hubbard to further engage in commercial sex acts. (*See* AC ¶ 211.)

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8 requires that pleadings contain "a short and plain statement of the claim" that gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *Boudeloche v. Grow Chem. Coatings Corp.*, 728 F.2d 759, 762 (5th Cir. 1984). "Allegations of fraud . . . must meet Rule 9(b)'s heightened pleading standard, under which plaintiffs 'must state with particularity the circumstances' of the allegedly fraudulent conduct." *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

On a Rule 12(b)(6) motion, a court may dismiss a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) In other words, a court may not dismiss a complaint in which Plaintiffs have alleged enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

## I.  PLAINTIFFS HAVE ALLEGED A VALID TVPA VIOLATION AGAINST JURACEK

Plaintiffs have alleged a valid TVPA beneficiary liability claim against Juracek. A defendant violates the TVPA's beneficiary prong when he benefits, either "financially or by receiving anything of value" from participation in a venture that recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits a person knowing, or in reckless disregard of the fact that, means of force, threats of force, fraud, or coercion will cause the person to engage in a "commercial sex act." 18 U.S.C. § 1591(a); *United States v. Todd*, 627

F.3d 329, 333 (9th Cir. 2010). A venture is defined in 18 U.S.C. § 1591(e)(6) as "any group of two or more individuals associated in fact, whether or not a legal entity." *Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019).

Plaintiffs have alleged that Juracek provided assistance in the Venture, in the form of funding and threats of misuse of legal process, and in return received benefit in the form of pornographic images of Plaintiff Hubbard. This is enough for beneficiary liability under the TVPA.

### A. Plaintiffs Have Alleged That Juracek Provided Assistance, Support, And Facilitation to The Venture Through Financial Payments and Threats of Misuse of Legal Process

Plaintiffs have adequately alleged that Juracek participated in the Venture by providing assistance, support, and facilitation of the Venture through financial support and threats of misuse of legal process to threaten Plaintiff Hubbard. *See J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020) (finding TVPA beneficiary liability where "defendants . . . rented rooms to people they should have known were engaging in [plaintiff's] sex trafficking"). Plaintiffs have alleged that Juracek provided financial support to the Venture (AC ¶ 210) and threatened Plaintiff Hubbard with false court testimony that would potentially result in Hubbard losing custody of her children. (AC ¶ 211.)

While Juracek is correct that simply associating with sex traffickers does not give rise to a TVPA violation, Plaintiffs do place Juracek as an active and knowing supporter of the Venture. Juracek's authority supposedly to the contrary are inapposite because they concern situations where a party was alleged only to have incidentally supported and benefitted from trafficking as part of a legitimate business. In *Does 1–6 v. Reddit, Inc.*, a social media company was held not liable under the TVPA for "turning a blind eye" to the fact that a small fraction of its tens of millions of users were using the platform to trade child pornography, and derived ad revenue from the traffic to its platform. 51 F.4th 1137, 1145 (9th Cir. 2022). In *Harris v. Henry*, the court held

that a law firm and lawyer involved in the production had no reason to know of trafficking—opposed to an owner who was alleged to have committed assaults, which is analogous to Juracek here, who received pornographic images of Plaintiff Hubbard. No. 1:22-CV-00366-LY, 2022 WL 16825200, at *7 (W.D. Tex. Nov. 7, 2022). (*See* AC ¶¶ 210–11.) And in *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, the defendant was alleged only to have knowledge of "trafficking occurring on the premises in general" opposed to "trafficking of the plaintiff in particular," a situation again distinct from Juracek who had specific knowledge of at least Plaintiff Hubbard's trafficking through his receipt of pornographic materials. No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 30, 2021). (*See* AC ¶¶ 210–11.) Similarly, *E.S. v. Best W. Int'l, Inc.* concerned large hotel operators who had no reason to know that trafficking was occurring on their premises. 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021).

In contrast, as Juracek's authority *Reddit* itself recognizes, courts do find participation in a TVPA venture where a defendant has "actual knowledge" and committed affirmative acts in furtherance of the venture. *Reddit, Inc.*, 51 F.4th at 1145–46 citing *Canosa v. Ziff*, No. 18 CIV. 4115 (PAE), 2019 WL 498865, at *23–24 (S.D.N.Y. Jan. 28, 2019) (TVPA beneficiary liability where defendants alleged to have lured victims "through the promise of production deals," provided primary violator "medications he required to perform sex acts," and "cleaned up after [] sexual assaults"). And courts have repeatedly held even major hotel chains to be subject to TVPA beneficiary liability where they knowingly rented rooms to customers committing sex trafficking on their property. *See Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 6318707, at *7–8; *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017) (holding hotel owners liable for trafficking occurring on premises); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019) (same); *H.H. v. G6 Hosp.*, LLC, No. 2:19-CV-755, 2019 WL 6682152, at

*4 (S.D. Ohio Dec. 6, 2019) (same).

Plaintiffs have alleged facts that Juracek participated in the Venture, specifically by providing financial support to the Venture and making threats of false testimony—made specifically to Hubbard, indicating even by itself that Juracek had actual knowledge of her trafficking—in exchange for pornographic images. (AC ¶¶ 210–11.) These are facts well above the cases on which Juracek relies where employees and companies with incidental connections to trafficking were found not liable, and the Court should find that Juracek participated in the Venture.

**B.    Plaintiffs Have Alleged That Juracek Benefitted from the Venture Through the Receipt of Pornographic Images of Plaintiff Hubbard**

In addition to providing assistance to the Venture, Juracek also benefitted from it by receiving pornographic images of Plaintiff Hubbard. A defendant "knowingly benefits" from a venture where he benefits "either financially or by receiving a thing of value" and where there is a "causal relationship" between the conduct at issue and receipt of the benefit. 18 U.S.C. § 1591(e); *see Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 953 (N.D. Cal. 2019) (finding establishment of paint shop and offering employment to construct paint shop a "thing of value"). A "thing of value" has been held by various courts to include a sexual act or even the "opportunity" for a sexual encounter. *See United States v. Maneri*, 353 F.3d 165, 168 (2d Cir. 2003) (holding "thing of value" under 18 U.S.C. § 2252 to include "the opportunity for a sexual encounter"); *United States v. Cook*, 782 F.3d 983, 989 (8th Cir. 2015) (holding under the TVPA, a "thing of value" includes "sexual acts"); *see also Noble*, 335 F. Supp. 3d at 520 (finding "meeting a world-renowned film producer" a thing of value under TVPA); *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 924 (N.D. Cal. 2021) (child pornography a "thing of value"), abrogated on other grounds by *Reddit, Inc.*, 51 F.4th at 1141. As Juracek's own authority supports, a "thing of value" is interpreted by its ordinary

meaning: something a person would assign value to. *See United States v. Raniere*, 55 F.4th 354, 363 (2d Cir. 2022) (affirming jury instruction stating no definition of "anything of value" except to clarify that it "need not involve a monetary exchange and need not have any financial component").

Juracek received a thing of value from the Venture in the form of pornographic images of Plaintiff Hubbard. While Defendant Crow has previously attempted to distinguish cases in which pornographic images were deemed a "thing of value" as limited to situations where the images were of children or involved "sadistic torture," he has cited no authority or even made any argument why only such egregious pornography would have value. (*See* Dkt. No. 151 at 6–7, n.7.) That limitation is on its face wrong, as the U.S. legal pornography market alone is a multi-billion-dollar industry. *See, e.g.,* Ross Benes, Porn Could Have a Bigger Economic Influence on the U.S. than Netflix, Yahoo! Finance (June 20, 2018), http://finance.yahoo.com/news/porn-could-bigger-economic-influence-121524565.html. Juracek cannot seriously argue, without benefit of any authority so-holding, that the *quid pro quo* receipt of a product—naked photos—which countless Americans pay money for on a daily basis does not constitute a thing of "value" under the ordinary understanding of the term.

Juracek's only remaining argument is that, according to an unpublished case that has yet to be cited by any court, "'sexual gratification' *alone*" is not enough to be a thing of value under the TVPA. *Jane Doe No. 1 et al v. Daniel S. Fitzgerald ("Fitzgerald I")*, No. CV2010713MWFRAOX, 2022 WL 425016, at *6 (C.D. Cal. Jan. 6, 2022) emphasis added. Juracek reads this as meaning that anything that *can result* in sexual gratification is not a thing of value. (Dkt. No. 203 "Mot." at 15–16.) But this does not follow from *Fitzgerald I*'s holding: an exclusive pornographic image by itself (which Juracek could share or sell at his discretion or use as leverage over Plaintiff Hubbard)

holds independent value by the ordinary meaning of the term, beyond whether sexual gratification could be had from it. This is especially true under the generous reading of a "thing of value" under applicable caselaw, which, by Juracek's own authority, is broad enough to include a personal meeting with Harvey Weinstein in which a plaintiff was sexually assaulted. *See Noble*, 335 F. Supp. 3d at 520.

Nor does *Treminio v. Crowley Maritime Corp.* help Juracek. No. 3:22-CV-174-MMH-PDB, 2023 WL 113565, at *4 (M.D. Fla. Jan. 5, 2023). There, the court did not find that no "thing of value" was exchanged, but that the things of value—continued employment and other career benefits—were not sufficiently connected to the sex acts. *Id.* Indeed, the *Treminio* court even recognized that a "thing of value" under the TVPA does not need to have a "monetary or financial component" and intangibles such a "ordination as a prophet" were sufficient. *Id.* Nothing in *Treminio* even suggests that receipt of pornographic images is not a thing of value under the TVPA.

Juracek received a thing of value from the Venture in exchange for his participation in the Venture and is subject to beneficiary liability under the TVPA. The Court should deny Juracek's Motion as to Plaintiffs' TVPA claim.

## II.   PLAINTIFFS HAVE ALLEGED A VALID LABOR TRAFFICKING CLAIM BECAUSE JURACEK OBTAINED THE BENEFIT OF PLAINTIFFS' LABOR BY FORCE

Plaintiffs have alleged a labor trafficking claim against Juracek under 18 U.S.C. § 1589. Beneficiary liability under the labor trafficking statute exists where a defendant "knowingly benefits" (the beneficiary prong) either "financially or by receiving anything of value," from participation in a venture that engaged in the providing or obtaining of labor or services by any of the above four grounds. 18 U.S.C. § 1589(b); *see Lesnik,* 374 F. Supp. 3d at 953; *Ruelas v. Cnty. of Alameda,* 519 F. Supp. 3d 636, 650 (N.D. Cal. 2021).

Just as Plaintiffs pleaded a proper 18 U.S.C. § 1591(a) sex trafficking claim, they have pleaded an 18 U.S.C. § 1589 labor trafficking claim against Juracek on the same facts. Juracek participated in the Venture, which obtained forced labor and knowingly benefitting from this participation. (*See, e.g.,* AC ¶¶ 210–211.)

*Moore v. Bushman* does not, as Juracek claims, mean that Juracek's threatening Hubbard with "testimony in court that could have Hubbard's children taken away from her" cannot give rise to TVPA liability. *See* 559 S.W.3d 645 (Tex. App. 2018) In addition to *Moore* concerning a *claim* for abuse of process (rather than analyzing misuse of process for purposes of TVPA or other liability), *Moore* (as Juracek admits) holds only that abuse of process requires process for an improper purpose with an improper motive. *Id.* But that is exactly what Plaintiffs allege: that Juracek had threatened to give false testimony to deprive Hubbard of her children in order to compel Hubbard to engage in further trafficking for the benefit of the Venture. (*See* AC ¶ 211.) But in any event, even aside from assisting the Venture through such threats of false testimony, Juracek also assisted the Venture through providing financial support and social cachet. (AC ¶ 210.)

Just as Plaintiffs properly pleaded a claim against Juracek under 18 U.S.C. § 1591(a) (*see supra* at I), Plaintiffs' labor trafficking claim against Juracek stands as well. The Court should deny Juracek's Motion as to Plaintiff's labor trafficking claim.

## III.   PLAINTIFFS HAVE ALLEGED A VALID RICO CLAIM AGAINST JURACEK

Plaintiffs have pleaded a substantive RICO violation against Juracek under 18 U.S.C. § 1962(c). A civil RICO claim must plead (1) a separate and distinct RICO enterprise that (2) engaged in a pattern of racketeering (3) causing harm to the Plaintiff. *See* 18 U.S.C. § 1962(c), (d).

Plaintiffs have properly alleged that Plaintiffs have RICO standing; have properly alleged the existence of a RICO Enterprise; have alleged a pattern of racketeering; and that Juracek

conducted or participated in the Enterprise. Plaintiffs have also properly alleged that Plaintiff Hubbard's RICO claim is not barred by the statute of limitations and the existence of a RICO conspiracy.

### A. Plaintiffs Have Established RICO Standing Because the Enterprise Caused Financial Harm to Plaintiffs

Plaintiffs have pleaded standing under RICO. RICO standing exists where a plaintiff suffers a "concrete financial loss" to business or property that was proximately caused by an overt RICO violation. *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (false imprisonment that caused the victim to lose employment and employment opportunities was an injury to "business or property" within the meaning of RICO). Plaintiffs have been injured in the form of "moneys that Hubbard and Goedinghaus earned for providing companionship, including at Forced Sex Parties, and moneys that Hubbard earned" while working as a dancer but were confiscated by the RICO Enterprise. (AC ¶ 312.) This is enough to allege RICO standing.

Juracek incorporates in his brief Defendant Crow's arguments on this point (Mot. at 14; Dkt. No. 151 at 15–16.) But all those arguments that seek to portray Plaintiffs as lacking standing are based on Defendants' favored views of facts, not what Plaintiffs have actually pleaded. First, Plaintiffs did not plead that they suffered RICO injury in the form of illegal payments from "sexual acts at swinger parties" or "money earned at parties in exchange for sexual acts" (Dkt. No. 151 at 16), but legally earned "moneys that Hubbard Goedinghaus earned for providing companionship." (AC ¶ 312.) *United States v. Lacey*, No. 22-10000, 2022 WL 4363818, at *1 (9th Cir. Sept. 21, 2022) (affirming that it is lawful to receive payments for companionship provided through escort services). Second, Plaintiffs did not plead that Hubbard's income as a dancer was withheld by her manager Defendant Grover "for his own benefit" (Dkt. No. 151 at 16), but that he confiscated a "*portion*" of her wages for his own benefit, with the remainder to the benefit of the Venture. (*See*

AC ¶¶ 44, 250, 312) emphasis added. Third, Plaintiff Hubbard did not plead that the loss of her home in April 2018 was caused by a "heavily strained financial situation" separate from RICO harm (Dkt. No. 151 at 16), but that the RICO Enterprise caused this loss by the confiscation of her wages. (AC ¶¶ 249–251, 257.) *See Lacey*, 2022 WL 4363818, at *1. These include that Juracek himself committed numerous predicate acts under the RICO statue, particularly multiple TVPA violations. (*See supra* at II.)

Plaintiffs have adequately pleaded that Plaintiffs have suffered RICO injury, and thus have RICO standing.

### B.      Plaintiffs Have Pleaded a RICO Association-in-Fact Enterprise

Plaintiffs have adequately pleaded the existence of an association-in-fact enterprise. An association-in-fact enterprise—one that is not coterminous with a formal legal entity—exists where there is (i) a "common purpose," (ii) an "ongoing organization," and (iii) a "continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d at 552-53 (finding association-in-fact enterprise between software manufacturer and retailer). All three are present such that a RICO association-in-fact enterprise is adequately pleaded.

### 1.     Plaintiffs Have Pleaded a Common Purpose

First, Plaintiffs have pleaded a "common purpose," which requires only that the Defendants were "associated for 'a common purpose of engaging in a course of conduct.'" *Id.* at 552 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Plaintiffs allege a specific common purpose of the Enterprise: "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Mr. [Rick] Hubbard, Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants" (AC ¶ 345.) Juracek contests only that this is a "common purpose," rather than distinct purposes among different groups. (Mot. at 17.) But this is, on its face, a single purpose: to "traffic women" for financial benefit, and within that purpose

different members of the Enterprise had varied roles and motivations to pursue that benefit. (*See* AC ¶ 345.) This does not defeat the existence of a common purpose. *Odom*, 486 F.3d at 552-53 (finding common purpose of "increasing the number of people using Microsoft's Internet Service and doing so by fraudulent means" despite defendants furthering purpose in distinct ways). Plaintiffs have pleaded a common purpose under RICO.

### 2.     Plaintiffs Have Pleaded an Ongoing Organization

Second, Plaintiffs allege that the Enterprise had an "ongoing organization," which requires the Enterprise to have engaged in the commission of "two or more predicate crimes." *Odom*, 486 F.3d at 552. Plaintiffs have alleged the numerous predicate acts, including the TVPA, 18, U.S.C. § 1591, 1589; the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, Wire Fraud, 18 U.S.C. § 1343; and Witness Tampering, 18 U.S.C. § 1512. (AC ¶ 414.) And the Enterprise went about these acts with a distinct structure separate from distinct racketeering acts: Rick Hubbard and Eller would regularly communicate so that Eller could assist in coercing Plaintiffs, including through affidavits and causing the Medical Doctor Defendants (doctors who provided prescription drugs for the Enterprise) to improperly issue medication to Plaintiffs. (AC ¶¶ 143–148.) Rick Hubbard, including through the assistance of the Fixer Defendants (friends of Rick Hubbard who provided additional threats of force and coercion towards Plaintiffs) coordinated in the provision of Plaintiffs to Crow and the other Investor Defendants (those who provided funding to the Enterprise, and were often Crow's friends who attended his parties). (AC ¶¶ 17–39.) Also involved were the Labor Trafficking Defendants, individuals who were in regular contact with Rick Hubbard after Plaintiff Hubbard had left Rick Hubbard and attempted to extract further value from Plaintiff Hubbard and coerce her back into being forced to provide forced commercial sex. (AC ¶¶ 40–51.) And in addition, Plaintiffs pleaded that the Enterprise had a "legitimate non-criminal purpose, specifically facilitation of entertainment, companionship, and networking at social

functions." (AC ¶ 419.) Plaintiffs have pleaded numerous predicate acts to make out an ongoing organization under RICO.

### 3.      Plaintiffs Have Pleaded a Continuing Unit

Third, Plaintiffs allege that the Enterprise was a "continuing unit," meaning that the actions of the Enterprise were "ongoing" rather than "isolated activity." *Odom*, 486 F.3d at 552-53 (finding that "an almost two-year time span is far more than adequate to establish" that two members of a RICO enterprise "functioned as a continuing unit"). The "continuing unit" prong does not require that "every member" of the Enterprise "be involved in each" of the predicate acts, or that "the predicate acts be interrelated in any way—only that there was ongoing conduct." *Id.* ("That several employees engaged in the activity at different times does not defeat the continuity requirement.").

Here, Plaintiffs allege a series of predicate acts that took place over at least *seven* years—from August 2012 to September 2019—more than three times as long as the Court of Appeals found "far more than adequate." *Id.* (*See, e.g.,* AC ¶¶ 413–14.) And Plaintiffs allege, at a minimum, three main players—Rick Hubbard, Eller, and Crow—who were involved at all stages of the Enterprise, in an organized fashion. (*See, e.g.,* AC ¶¶ 1–14, 29–30.)

Juracek's argument that the Enterprise's "longevity" is implausible based on the fact that Plaintiffs allege that the Enterprise is continuing is irrelevant. (Mot. at 17.) Aside from the fact that the Enterprise likely did and continues to traffic other victims, the facts alleged in the Complaint simply as to Plaintiffs Hubbard and Goedinghaus cover seven years—which, as above, is several times more adequate than the required longevity as a matter of law. Plaintiffs have adequately pleaded an association-in-fact RICO Enterprise.

### 4.      Plaintiffs Have Pleaded a Pattern of Racketeering

Plaintiffs have adequately pleaded a pattern of racketeering, under both closed- and open-

ended continuity. A pattern of racketeering requires that the pleaded predicate acts (i) are related and (ii) either demonstrate on their own or pose a risk of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 237 (1989). The second prong, risk of continued criminal activity, can be satisfied by pleading either "closed-ended continuity" (that a series of events occurred over a substantial period of time) or "open-ended continuity" (that the series of past events, by their nature, risk repetition." *Id.* at 237, 241–42. Against an individual defendant, a RICO plaintiff must plead at least two predicate acts. *Id.* at 236–37. Plaintiffs have pleaded numerous related predicate acts (at least two of which accrue to Juracek) which demonstrate both closed- and opened-ended continuity. These include lengthy allegations describing the TVPA violations, which occurred in part at "dozens" of parties hosted by Crow, of which Juracek was aware. (AC ¶ 34; *see id.* ¶¶ 5, 8, 9, 13, 15, 17, 18, 21, 26–28, 35, 38, 40, 43, 45–50, 120–126, 132, 134, 136, 139, 141–143, 146, 147, 150, 152, 155–158, 183–185, 187–190, 192–194, 197–199, 201–203, 205–207, 2019–212, 214–217, 220–223, 225, 228, 232–237, 245–247, 249, 251, 254, 258, 264, 267–269, 281–285, 287, 288, 290, 292, 294.) Juracek offers no rebuttal here except that TVPA claims do not lie against Juracek, which for the reasons set forth above is wrong. (*Supra* at III.) Plaintiffs have alleged a pattern of racketeering activities.

### C.     Plaintiffs Have Pleaded That Juracek "Conducted" and "Directed" the Affairs of the Enterprise

Plaintiffs have pleaded that Juracek participated in the affairs of the Enterprise. To show participation in a RICO enterprise, a Plaintiff must show that a defendant had a role in directing the affairs of the Enterprise. *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 983 (N.D. Cal. 2018). In this context, "'directing' has a different meaning than is commonly understood" in daily usage and does not require even "significant control" over the Enterprise. *Kelmar v. Bank of Am. Corp.*, No. CV 12-6826 PSG (EX), 2012 WL

12850425, at *7 (C.D. Cal. Oct. 26, 2012). Instead, this requirement is satisfied so long as the defendant had a sufficiently important role, taking into account their position in the "chain of command" of the Enterprise and whether their actions were "vital" to the Enterprise's success. *Id.*

Juracek's authorities are not to the contrary. *Allstate Ins. Co. v. Benhamou* and *Gutierrez v. Venegas* both concerned defendants who assisted a RICO Enterprise in the ordinary course of business—as a supplier in the case of *Allstate* and an employee in the case of *Gutierrez*. 190 F. Supp. 3d 631, 654 (S.D. Tex. 2016); No. 6:20-CV-129-H, 2021 WL 9314946, at *5 (N.D. Tex. Sept. 8, 2021). Neither is the case here: Juracek, a financial professional, did not plausibly either receive pornographic images or threaten women with false testimony to deprive them of custody in the ordinary course of his work. (*See* AC ¶¶ 210–11.)

Plaintiffs have pleaded that Juracek participated in the affairs of the Enterprise. Plaintiffs allege more than a mere passive role. (Mot. at 19.) Instead, Plaintiffs allege a specific affirmative role from Juracek, specifically that, among other acts, he threatened Plaintiff Hubbard with misuse of legal process at the behest of the Enterprise. (*See* AC ¶¶ 210–11.) Plaintiffs have sufficiently pleaded that Juracek conducted the Enterprise and, further, substantive liability under the RICO statute.

### D.    Hubbard's RICO Injury Does Not Lie Outside the Statute of Limitations Because Hubbard Pleaded Financial Harm That She Suffered From The Enterprise Into November 2019

Plaintiffs adequately plead that Plaintiff Hubbard's RICO injuries fall within the relevant four-year statute of limitations, running from the last RICO injury. RICO injuries include not only harm directly or intentionally caused by the Enterprise—the standard is "generous enough to include the unintended, though foreseeable, consequences of RICO predicate acts." *Diaz*, 420 F.3d at 901 (finding loss of employment caused by false imprisonment by RICO enterprise a valid RICO harm).

Here, Plaintiff Hubbard pleads that in late October or November 2018, she was falsely imprisoned by the Enterprise—to the extent that Defendant Michael Hynes, an agent of the Enterprise, "tied Hubbard to a bed and kept her restrained for three days, releasing her only to use the restroom," and had previously at Rick Hubbard's direction, confiscated Hubbard's "driver's license," "phone," and "credit cards." (AC ¶¶ 271, 278.) This prevented Hubbard from being able to hold employment, which constitutes a RICO injury. If the Court finds this insufficient, Plaintiff Hubbard can allege additional facts that Defendant Hynes and the Enterprise did not return her driver's license until December 2018, until which time Plaintiff Hubbard was unable to work due to lack of identification documents. These acts into December 2018—within four years of the complaint's filing of November 2022—lie within RICO's four-year statute of limitations, and Plaintiff Hubbard's RICO claim is timely.

### E.   Plaintiffs Have Alleged a RICO Conspiracy

Plaintiffs have also alleged a RICO conspiracy. A claim for a RICO conspiracy exists under 18 U.S.C. § 1962(d) where a defendant "conspire[s] to violate" the substantive RICO provision of 18 U.S.C. § 1962(a). *See* 18 U.S.C. § 1962(d); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 942 (N.D. Cal. 2013). For the reasons discussed above, Plaintiffs have established a valid substantive RICO claim. (*Supra* at III. A–D.) Beyond this, Juracek challenges Plaintiff's RICO conspiracy claim only on the ground that Juracek lacked knowledge of the Enterprise's activities. But this is Juracek's version of the facts, rather than what Plaintiffs allege. As discussed at length above, Plaintiffs adequately allege that Juracek at all relevant times had full knowledge of the activities of the Enterprise and Venture. (*Supra* at I. A–B.) Plaintiffs have pleaded a proper substantive RICO claim and a RICO conspiracy claim.

## CONCLUSION

Juracek was a key member of the Venture who assisted it to further its sex trafficking activities (through financial contributions and threats of legal process) and received in return a thing of value (pornographic images of Plaintiff Hubbard). These acts also give rise to labor trafficking liability and a violation of RICO. For these reasons, and those stated above, the Court should respectfully deny Juracek's motion to dismiss and allow this matter to proceed to discovery. At a minimize, the Court should permit Plaintiffs to amend their further to address any deficiencies that the Court finds.

Dated: New York, New York
        August 17, 2023

By: _____
        Matthew W. Schmidt*
        John G. Balestriere*
        **BALESTRIERE FARIELLO**
        225 Broadway, 29th Floor
        New York, New York 10007
        Telephone: (212) 374-5401
        Facsimile: (212) 208-2613
        john.balestriere@balestrierefariello.com
        matthew.schmidt@balestrierefariello.com
        *Admitted Pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing "Plaintiffs' Opposition to Defendant Juracek's Motion to Dismiss the Complaint" was served on the following counsel of record via ECF on June 21, 2023.

Dated: New York, New York
      August 17, 2023

BALESTRIERE FARIELLO

By:

Matthew W. Schmidt
Attorney for Plaintiffs