# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, | § § | |
| Plaintiffs, | § § | Case No. 5:23-cv-00580-FB |
| v. | § § § | |
| TRAMMELL S. CROW, JR., DR. BENJAMIN TODD ELLER, RICHARD HUBBARD, DR. MELISSA MILLER, DR. JOSEPH BOLIN, DR. SCOTT WOODS, DR. MRUGESHKUMAR SHAH, MICHAEL CAIN, COE JURACEK, PHILIP ECOB, H.J. COLE, TEXAS RANGER CODY MITCHELL, KURT KNEWITZ, PAUL PENDERGRASS, RALPH ROGERS, ROBERT PRUIT, SCOTT BRUNSON, CASE GROVER, RICHARD BUTLER, MARC MOLINA, MICHAEL HYNES, JR., SHAWN MAYER, JADE MAYER, RCI HOSPITALITY HOLDINGS, INC., INTEGRITY BASED MARKETING, LLC, STPORM FITNESS NUTRITION, LLC, ULTRA COMBAT NUTRITION, LLC, ECOLIFT HOMES LLC, ELEVATED WELLNESS PARTNERS LLC, DOE INDIVIDUALS 1–20, and DOE COMPANIES 21–30 | § § § § § § § § § § § § § § § § § § § § | Judge: Hon. Fred Biery
Date Action Filed: May 8, 2023 (transferred) |
| Defendants. | § § | |

**TRAMMELL S. CROW, JR.'S REPLY IN SUPPORT OF HIS
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

HAWXHURST LLP
1301 S. Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
Tel: (512) 522-4995
Fax: (512) 522-4961
Email: jerry@hawxhurstllp.com

GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:   (214) 953-1332
Email:  kstone@grayreed.com

# TABLE OF CONTENTS

Argument ............................................................................................................ 1

I.     THE FAC FAILS APPLICABLE PLEADING STANDARDS........................................ 1

II.    PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS ................................... 4

      A.     Plaintiffs Fail to Allege a Sex Trafficking Claim Against Mr. Crow. .................... 4

      B.     No Plausible Labor Trafficking Claim Against Mr. Crow. ............................... 6

      C.     Plaintiffs Do Not Allege a Cognizable Section 1962(c) Claim. ........................... 7

           1.     Plaintiffs lack RICO standing. ..................................................................7

           2.     Plaintiffs' 1962(c) Claim Fails for Additional Reasons. ...........................9

      D.     Ms. Hubbard's RICO Claims are Barred by the Statute of Limitations. .............. 12

      E.     The RICO Conspiracy Claim Still Fails. ............................................... 13

III.    LEAVE TO AMEND SHOULD NOT BE GRANTED.................................... 13

Conclusion ....................................................................................................... 13

# TABLE OF AUTHORITIES[1]

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................ 1, 2, 3, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................. 2, 3, 9

*Berg v. First State Ins. Co.*,
    915 F.2d 460 (9th Cir. 1990) ........................................................................................ 8

*Boyle v. U.S.*,
    556 U.S. 938 (2009)................................................................................................. 10, 11

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,
    235 F. Supp. 3d 1132 (E.D. Cal. 2017) .............................................................. 10, 11

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) ........................................................................................ 8

*Do v. Pilgrim's Pride Corp.*,
    512 F. Supp. 2d 764 (E.D. Tex. 2007) ..................................................................... 11

*Doe v. Fitzgerald*,
    No. CV 20-10713, 2022 WL 2784805 (C.D. Cal. May 13, 2022) ........................... 6

*Doe v. Roe*,
    958 F.2d 763 (7th Cir. 1992) ........................................................................................ 9

*Does v. Reddit, Inc.*,
    51 F.4th 1137 (9th Cir.) ........................................................................................... 5, 6

*Gabriel v. Outlaw*,
    No. EDCV-14-01425, 2021 WL 1030157 (N.D. Tex. Mar. 1, 2021) ..................... 11

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ....................................................................... 5

*Gomez v. GuthyRenker, LLC*,
    2015 WL 4270042 (C.D. Cal. July 13, 2015)......................................................... 12

---

[1] Unless stated otherwise, all emphasis is added, and internal quotations and citations are omitted.

*HCB Fin. Corp. v. McPherson*,
   8 F.4th 335 (5th Cir. 2021) ............................................................................................. 8

*In re Motel 6 Sec. Litig.*,
   161 F. Supp. 2d 227 (S.D.N.Y. 2001) ........................................................................... 12

*In re Taxable Mun. Bond Securities Lit.*,
   51 F.3d 518 (5th Cir. 1995) ........................................................................................ 9, 13

*JSW Steel (USA) Inc. v. Nucor Corp.*,
   586 F. Supp. 585 (S.D. Tex. 2022) .................................................................................. 6

*Keane v. Fox Tele. Stations, Inc.*,
   297 F. Supp. 2d 921 (S.D. Tex. 2004) ............................................................................ 3

*Langston v. Ethicon, Inc.*,
   No. 3:20-CV-3712, 2021 WL 6198218 (N.D. Tex. Dec. 31, 2021) ................................ 4

*Lesnik v. Eisenman SE*,
   374 F. Supp. 3d 923 (N.D. Cal. 2019) ............................................................................ 6

*Manax v. McNamara*,
   842 F.2d 808 (5th Cir. 1988) ........................................................................................... 2

*Moore v. Bushman*,
   559 S.W.3d 645 (Tex. App.—Houston 2018) ................................................................ 7

*Poe v. Bock*,
   No. EP-cv-17-232, 2018 WL 4677901 (W.D. Tex. Jun. 11, 2018) ............................... 13

*Ray v. Ronnie Moore Trucking*,
   No. DR-12-CV-17, 2012 WL 13032960 (W.D. Tex. Jun. 26, 2012) ............................... 9

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ...................................................................................................... 12

*Shulman v. Kaplan*,
   No. 2:19-cv-5413, 2020 WL 7094063, *2 (C.D. Cal. Oct. 29, 2020) ............................ 9

*Standard v. Nygren*,
   658 F.3d 792 (7th Cir. 2011) ........................................................................................... 4

*Stockwell v. Kanan*,
   442 F. App'x 911 (5th Cir. 2011) .................................................................................... 3

*U.S. ex rel. Grynberg Prod. Corp. v. Kinder Morgan $CO_2$ Co., L.P.*,
   491 F. Supp. 3d 220 (N.D. Tex. 2020) ......................................................................... 13

*U.S. ex. Rel. Gage v. Rolls-Royce N.A. Inc.*,
  No. A-16-CV-803, 2018 WL 852380 (W.D. Tex. Feb. 13, 2018) .......................................... 10

*U.S. v. Cook*,
  782 F.3d 983 (8th Cir. 2015) ......................................................................................... 6

*U.S. v. Lacey*,
  No. 2:18-cr-00422, 2022 WL 4363818 (9th Cir. Sept. 21, 2022) ........................................... 8

*U.S. v. Maneri*,
  353 F.3d 165 (2d Cir. 2003) ......................................................................................... 6

*U.S. v. Sutherland*,
  656 F.2d 1181 (5th Cir. 1981) ...................................................................................... 11

*U.S. v. Todd*,
  627 F.3d 329 (9th Cir. 2010) ........................................................................................ 5

**Statutes**

18 U.S.C. § 1589 ........................................................................................................ 7

18 U.S.C. § 1591 ..................................................................................................... 2, 6

18 U.S.C. § 1964 ........................................................................................................ 8

Tex. Penal Code § 43.02 ............................................................................................. 9

Plaintiffs still do not plausibly allege a human-trafficking venture or RICO enterprise in their First Amended Complaint ("FAC") or, even if they did, that Mr. Crow is plausibly liable for human trafficking or participating in a RICO enterprise.  To be sure, the plausibility standard is mentioned *once* in the 27-page Opposition (Opp'n (Dkt. 209) at 6-7), but the FAC does not add any substantive allegations to the fantastical conclusions of wrongdoing—where "happy birthday" texts and calendar reminders for doctor appointments are alleged "evidence" of trafficking and RICO conspiracy—to move Plaintiffs' inadequate claims from merely possible to being plausible. The Motion should be granted.

<u>Argument</u>

## I.     THE FAC FAILS APPLICABLE PLEADING STANDARDS

"Where a complaint pleads facts that are merely consistent with [plaintiffs' theories], it stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  After given the opportunity to allege critically missing facts, the FAC's scant new allegations still do not "raise a right to relief above a speculative level"—because the factual story, such as it is, does not cross the line from merely possible to being plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiffs' short-cut strategy of reciting the elements of their causes of action (*e.g.*, FAC ¶¶ 317-412) does not satisfy their pleading burden. *See Twombly*, 550 U.S. at 545 (recitation of elements, even combined with factual conclusions are insufficient).

The gist of the story alleged in the FAC remains Plaintiffs' long-running, dysfunctional relationships with their ex-husbands and ex-boyfriends, and Mr. Crow is neither.  As sad as their story is, allegations concerning persons whose lives happened to intersect with Plaintiffs and their exes do not convert domestic disfunction into a plausible human-trafficking venture or a RICO enterprise.  *See* 18 U.S.C. § 1591 (trafficking requires active assistance, support or facilitation of

alleged venture); *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988) (RICO requires "an entity separate and apart from the pattern of [criminal] activity in which it engages").

Despite a second opportunity to do so, the Opposition does not explain how Plaintiffs' long-running domestic troubles, drug abuse, and swinging, plausibly support their human trafficking and RICO theories.  Tellingly, the Opposition does not attempt to explain how the FAC's new allegations (such as they are) cure the defects in their original Complaint.  Instead, Plaintiffs again ask the Court to conclude that objectively benign events, combined with lawyer-driven conclusions, plausibly allege trafficking and RICO violations.  *Cf. Iqbal*, 556 U.S. at 664 (courts "draw on [their] experience and common sense" when determining plausibility).  Plaintiffs would have the Court conclude that Mr. Hubbard's *dinner invitation* to his then-wife, Ms. Hubbard, to join him *at a public seminar* at a Texas Land & Cattle steak house shows he was priming her for forced commercial sex.  (*See* FAC (Dkt. 190) ¶ 165 (Ms. Hubbard "invited if Nanny will babysit [the] kids").)  The Opposition also cites to Mr. Crow's and Ms. Hubbard's benign, non-sexual, non-suggestive texts and public photos as "evidence" of sex trafficking (Opp'n (Dkt. 209) at 5 (*citing* FAC (Dkt. 190) ¶ 186[2])), but like the seminar invitation, these allegations do not cross the line from *possibl*e to being *plausible*.  Intent on outdoing itself, the Opposition also argues that a defendant's "Happy Birthday" message to Ms. Hubbard supports a conclusion that Ms. Hubbard was forced to have sex against her will.  (*See id.* at 5-6 (*citing* FAC (Dkt. 190) ¶ 200).)  Lawyer argument cannot change the meaning of "Happy Birthday" to something other than Happy Birthday.  *See Twombly*, 550 U.S. at 554 (to defeat a Rule 12(b)(6) motion, plaintiff must allege facts sufficient to exclude possibility that an alternative explanation is plausible).

Plaintiffs also ask the Court to conclude that Mr. Crow was essential to the so-called

---

[2] The Opposition cites to the First Amended Complaint (Dkt. 209), but appears to reference the paragraph numbering of the original Complaint (Dkt. 1).  To avoid compounding the confusion caused by Plaintiffs' error, this reply uses the paragraph numbers cited by the Opposition.

"Venture" because he supposedly "structured his funding of the Venture as 'loans' to Rick Hubbard so that [Mr.] Crow would have some plausible deniability in his essential role in the Venture," and that Mr. Hubbard "received information from [Mr.] Crow's accountant on how to best structure loans to the [alleged] Venture." (*See* Opp'n (Dkt. 209) at 2, 5, 11.)  This fantastical story (such as it is), is foreclosed by emails and other writings incorporated in the body of Plaintiffs' FAC, which show that the loans were in fact loans.  *See Keane v. Fox Tele. Stations, Inc.*, 297 F. Supp. 2d 921 (S.D. Tex. 2004) (courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

For instance, the FAC cites an email where Mr. Hubbard asks Mr. Crow *for a loan*, yet Plaintiffs argue that Mr. Hubbard was cryptically soliciting funding for the alleged RICO enterprise or Venture.  This attempted "spin" is belied by the actual words of the email.  (FAC (Dkt. 190) ¶ 187; *see also id.* (quoting email from Mr. Hubbard to "papa" Jon Parsons (Ms. Hubbard's stepfather) explaining that Mr. Hubbard and "Papa" would transfer shares in Mr. Parson's company to Mr. Crow as repayment for the loan).)  Plaintiffs never explain why, if the goal was to "hide" money given to Mr. Hubbard, there was any writing about a loan at all.  *Cf. Stockwell v. Kanan*, 442 F. App'x 911, 913 (5th Cir. 2011) ("In case of a conflict between the allegations in a complaint and the exhibits attached to the complaint, the exhibits control"); *see also Iqbal*, 556 U.S. at 664 (when determining plausibility, courts must "draw on [their] experience and common sense").  As troubling as allegations of domestic abuse by Plaintiffs' exes are, they do not state plausible human trafficking or RICO claims against Mr. Crow.  *See Twombly*, 550 U.S. at 554.  The FAC should be dismissed as to Mr. Crow.

## II.      PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS

### A.      Plaintiffs Fail to Allege a Sex Trafficking Claim Against Mr. Crow.

No perpetrator liability. Plaintiffs argue that Mr. Crow "obtained," "enticed," "harbored,"
"provided," "maintained," "patronized," and "solicited" Plaintiffs, knowing that prohibited means
would be used to cause a commercial sex act.  (*See* Opp'n (Dkt. 209) at 9.)  Plaintiffs' disjointed
theory is that  because *Mr. Hubbard* was allegedly an abusive domestic partner, and because Mr.
Crow allegedly saw Ms. Hubbard have sex with another person, Mr. Crow must have known that
Mr. Hubbard was trafficking his wife (and later Ms. Goedinghaus).  (*Id.* at 9-10.)  To avoid
dismissal of their trafficking claims against Mr. Crow, Plaintiffs were required to allege facts
plausibly showing that Mr. Crow had an awareness that "if things go as he ha[d] planned, force,
fraud or coercion will be employed to cause his victim to engage in a commercial sex transaction."
*U.S. v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010).  They do not and cannot do so.

To be sure, there is one general allegation that Plaintiffs "told [Mr.] Crow that [Mr.
Hubbard] was forcing her to perform sex acts"  (Opp'n (Dkt. 209) at 5), but even taken as true the
allegation shows only that Mr. Crow was made aware of alleged domestic abuse, not sex
trafficking.[3]  Even if the allegation that *Mr. Hubbard* trafficked Plaintiffs were true, it would not
make Mr. Crow liable as a perpetrator or a beneficiary.  *See Does v. Reddit, Inc.*, 51 F.4th 1137,
1145 (9th Cir. 2022) (association with sex traffickers insufficient absent knowing participation);
*see also Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 n.5 (S.D.N.Y. 2019)
(hush payments to cover up sex trafficking does not trigger TVPA liability).

No beneficiary liability. Plaintiffs first argue they "have alleged that [Mr.] Crow
[participated in the Venture by] through financial support and providing the main forum for the

---

[3] In the FAC, Ms. Goedinghaus conveniently alleges for the first time that she also allegedly told
Mr. Crow that Mr. Hubbard had physically abused her.  (FAC (Dkt. 190) ¶ 327.)

Venture's Forced Sex Parties." (Opp'n (Dkt. 209) at 12.) As shown above, allegations that Mr. Crow "financially supported" the alleged trafficking venture are foreclosed by contemporaneous writings incorporated in the FAC. (*See supra* at I.) Plaintiffs' argument that they had sex with their boyfriends, husbands, or other persons while at Mr. Crow's home (Opp'n (Dkt. 209) at 12) does not plausibly support a conclusion that Mr. Crow "benefited" from the alleged scheme. These allegations are more consistent with Plaintiffs having consensual sex while guests than with an alleged trafficking scheme. *See JSW Steel (USA) Inc. v. Nucor Corp.*, 586 F. Supp. 585, 595 (S.D. Tex. 2022) (plaintiffs "cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed").

Plaintiffs next argue that because they allege Mr. Crow "received multiple things of value from Plaintiffs," they have plausibly alleged beneficiary liability. (Opp'n (Dkt. 209) at 12-14 (*citing* FAC ¶¶ 172, 176-178).) However, the FAC still does not identify any "thing of value" or benefit received by Mr. Crow as a *quid pro quo* for alleged participation in the Venture. Allegations that Mr. Crow and others watched Plaintiffs have sex cannot give rise to beneficiary liability. *See* 18 U.S.C. § 1591(e); *Reddit, Inc.*, 51 F.4th at 1145 ("knowingly benefit" means "benefit financially" or receive an actual "thing of value"). Plaintiffs' argument that "sex acts" or the "social benefit" of their attendance at Mr. Crow's home is a "thing of value" provided to Mr. Crow pursuant to an trafficking venture (Opp'n (Dkt. 209) at 13-14) is misplaced. The case cited, *U.S. v. Cook*, 782 F.3d 983, 989 (8th Cir. 2015), is inapposite. *Cook* involved live-streamed sadistic torture transmitted to and by criminal defendant Cook, whom the court found "clearly attached value" to the sexual acts because he *traded* his own videos, photographs, and advice *quid pro quo* for the torturer's online live streams. *Id*. at 986, 989. Here, there are no allegations remotely like *Cook*.[4]

---

[4] Plaintiffs' other cases are also inapposite. *Lesnik v. Eisenman SE*, 374 F. Supp. 3d 923, 953

There likewise is no plausible allegation that the so-called "social benefits" of the alleged parties were a *quid pro quo* for Plaintiffs having sex with Mr. Hubbard or their girlfriends.  *See* 18 U.S.C. § 1591(e); *see also Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 10-CV-4124, 2013 WL 6816174, *16 (W.D. Ark. Dec. 24, 2013) (dismissing TVPA claim where plaintiffs offered no evidence showing a *quid pro quo* between sex acts and benefits received).  In any event, this theory is absurd; any member of the public who attended the so-called sex parties (which allegedly occurred during fundraising events for nonprofits) would be liable for trafficking if courts adopted Plaintiffs' point of view.  *See Doe v. Fitzgerald*, No. CV 20-10713, 2022 WL 425016, *9 (C.D. Cal. Jan. 6, 2022) (rejecting theory that social benefits are thing of value because "entire guest list could be subject to beneficiary liability under the TVPA").  The sex trafficking claims against Mr. Crow should be dismissed.  *See Doe v. Fitzgerald*, No. CV 20-10713, 2022 WL 2784805, *5 (C.D. Cal. May 13, 2022).

### B.     No Plausible Labor Trafficking Claim Against Mr. Crow.

Plaintiffs were required to plead facts plausibly showing that Mr. Crow knowingly provided or obtained Plaintiffs' labor by means of force, threats of force, or abuse of the legal process.  *See* 18 U.S.C. § 1589(a).  Only Plaintiffs' ex-boyfriends, -husbands, and Ranger Mitchell are alleged to have used force or threats of harm.  (FAC (Dkt. 190) ¶¶ 45, 274.)  In contrast, Plaintiffs make conclusory, unsupported allegations that Mr. Crow must have known about alleged misconduct of other persons.  (*E.g., id.* ¶¶ 30 (Mr. Crow "knew full well" details of alleged abuse); 35 (Ms. Hubbard told Mr. Crow of her husband's alleged abuse).)  These allegations are insufficient to impute knowledge of a trafficking scheme to Mr. Crow.  *See Iqbal*, 556 U.S. at 678

---

(N.D. Cal. 2019) involved an offer of employment (obviously a "thing of value") as part of a *quid pro quo*, and *U.S. v. Maneri*, 353 F.3d 165, 168-70 (2d Cir. 2003) involved an anti-child pornography statute where pornographic child photos were *exchanged* for illegal sex.

---

("labels and conclusions or a formulaic recitation of the elements of a cause of action will not do").

The Opposition resorts to a strained argument that Mr. Crow somehow "engaged in threats" because, according to the FAC, Mr. Juracek allegedly "threatened Hubbard with his testimony in court that could have [her] children taken away from her." (FAC (Dkt. 190) ¶ 211.) The allegations concerning Mr. Juracek, even if assumed as true, do not show an actual threat. The FAC does not address the plausible possibility that Mr. Juracek believed Ms. Hubbard was not fit to have custody of her children at the time—or that any of his alleged potential testimony was untrue. (*E.g., id.* ¶¶ 95, 107-111, 166.) Further, an alleged "threat" to give testimony in a pending judicial proceeding is not an *abuse of process*. *See* 18 U.S.C. § 1589(a) (abuse requires use of process in a manner or for a purpose "which the law was not designed"); *Moore v. Bushman*, 559 S.W.3d 645, 653 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (abuse of process requires ulterior motive in using process in willfully wrongful manner). Finally, there are no allegations that Mr. Crow knew of Mr. Juracek's alleged willingness to testify in the custody battle. (Mot. (Dkt. 196) at 6 n.8.) The labor trafficking claim against Mr. Crow still fails.

**C. Plaintiffs Do Not Allege a Cognizable Section 1962(c) Claim.**

**1.    Plaintiffs lack RICO standing.**

To alleged RICO standing, each Plaintiff must allege, among other things, an injury to her own "business or property." 18 U.S.C. § 1964(c); *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 344 (5th Cir. 2021). The Opposition argues that Plaintiffs allege three injuries caused by a RICO violation: (1) lost "moneys earned [in exchange] for companionship," (2) Grover's withholding of wages supposedly earned by working at a strip club, and (3) the mortgage company's repossession of Ms. Hubbard's home. (Opp'n (Dkt. 209) at 17.) None of these is a cognizable RICO injury. *See HCB Fin. Corp.*, 8 F. 4th at 338 (RICO requires an "injury to the plaintiff's business or property *by reason of a violation of RICO*").

First, Plaintiffs' "lost-money-in-exchange-for-companionship" injury theory has no support in the law.  The case they cite concerns prostitutes where the "pimp" kept the *prostitutes'* "earnings."[5]  *U.S. v. Lacey*, No. 2:18-cr-00422, 2022 WL 4363818, *1 (9th Cir. Sept. 21, 2022) ("The indictment recognizes that escort services are lawful, but goes on to allege that the vast majority of advertisements for escort services on Backpage were thinly-veiled prostitution ads."). The allegations that "[Mr.] Hubbard forced [Plaintiffs] ... to perform sex acts for payment [to him]," which payments he retained" (FAC (Dkt. 190) ¶¶ 3, 416) do not allege that Plaintiffs were prostitutes who expected to be paid for sex; the allegations are that Mr. Hubbard "sold" them to third parties without their consent or knowledge.  (*See id.*)  Whatever these allegations might say about *Mr. Hubbard*, they do not demonstrate standing to allege a RICO claim against Mr. Crow. *See In re Taxable Mun. Bond Securities Lit.*, 51 F.3d 518, 523 (5th Cir. 1995) (no standing where plaintiffs did not allege that *defendant's* conduct interfered with existing economic rights); *see also Shulman v. Kaplan*, No. 2:19-cv-5413, 2020 WL 7094063, at *2 (C.D. Cal. Oct. 29, 2020) (injuries to illegal businesses are not redressable under civil RICO); TEX. PENAL CODE § 43.02 (illegal to receive a fee to engage in sexual conduct).

Second, Ms. Hubbard's argument that Grover withheld a portion of her wages as a stripper for his own benefit "with the remainder to the benefit of the Venture" (Opp'n (Dkt. 190) at 18-19) is *not* an allegation in the FAC, and therefore cannot defeat dismissal.  *See Ray v. Ronnie Moore Trucking*, No. DR-12-CV-17, 2012 WL 13032960, *3 n.2 (W.D. Tex. Jun. 26, 2012).  Rather, the

---

[5] Plaintiffs cite *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) for the proposition that personal injury can constitute "business or property" loss within the meaning of RICO.  (Opp'n (Dkt. 67) at 17.) To the extent it could be read that way, *Diaz* does not confer RICO standing to every personal injury claim that results in lost wages.  *See Diaz*, 420 F.3d at 900.  *Diaz* explains that RICO standing exists *only* where the loss arises out of a business or property interest as defined by state law.  *Id.*  Other cases hold that personal injury does not satisfy RICO's "business or property" requirement.  *See Atias v. Phillips*, No. 18-cv-01259, 2018 WL 11355475, *3-4 (C.D. Cal. Dec. 7, 2018); *Berg v. First State Ins. Co.*, 915 F.2d 460, 463 (9th Cir. 1990).

FAC alleges facts that foreclose RICO standing based on the "withheld wages" theory when it claims that "Grover forced [Ms.] Hubbard to work at the Cabaret, confiscating a portion of her wages *for his personal benefit*."  (FAC (Dkt. 190) ¶ 44.)[6]

Third, the argument that the supposed RICO enterprise led to the foreclosure of Ms. Hubbard's home in April 2018 due to "the confiscation of her wages" by Grover (Opp'n (Dkt. 209) at 18) is not plausibly supported by the FAC.  *See Ray*, 2012 WL 13032960 at *3 n.2.  Again, Ms. Hubbard alleges Grover kept her "wages *for his personal benefit.*"  (FAC (Dkt. 190) ¶ 44.)

Fourth, Ms. Hubbard's home was allegedly foreclosed months *after* she quit the Cabaret.  (Id. ¶¶ 258, 264.)   It is more plausible that the foreclosure was caused by Ms. Hubbard's intervening months of unemployment or drug use (FAC (Dkt. 190) ¶¶ 258, 264–65) than Grover's alleged confiscation of wages several months prior.  *See Twombly*, 550 U.S. at 554 (when considering plausibility, courts must also consider an "obvious alternative explanation"); *cf. Doe v. Roe*, 958 F.2d 763, 766 (7th Cir. 1992) (no standing where alleged financial injury is derivative of other injuries).

### 2.     Plaintiffs' 1962(c) Claim Fails for Additional Reasons.

Failure to adequately allege a common purpose.  Mr. Crow's moving papers demonstrated that the FAC does not allege a plausible "common purpose *and* course of conduct" among Defendants.  *See Boyle v. U.S.*, 556 U.S. 938, 950 (2009).  The Opposition merely repeats the conclusory allegations that Defendants acted with the "common purpose" to "traffic women," without pointing to any specific factual allegations that plausibly support their conclusions.  (*Compare* Opp'n (Dkt. 209) at 19, *with* FAC (Dkt. 190) ¶¶ 445.)  On the other hand, Mr. Crow's opening papers demonstrated that Plaintiffs' own allegations foreclose any conclusion that

---

[6] The parts of the FAC Plaintiffs argue support their theory do no such thing.  (*See* Opp'n (Dkt. 209) at 18 (*citing* FAC  ¶¶ 43 (identifying Cabaret managers), 251 (alleging Grover withheld her wages), 416 (allegation Plaintiffs incurred damages)).)

Defendants acted with a "common purpose." (*See, e.g.,* FAC (Dkt. 190) ¶¶ 145 (alleging doctor's goal of personal profit), 251 (Grover's goal to keep Ms. Hubbard's wages for himself), 270 (Hynes, Jr.'s goal of selling drugs with Ms. Hubbard's assistance for his personal benefit).)  The failure to plead a "common purpose" dooms the RICO claims.  *See Boyle*, 556 U.S. at 950.

<u>Failure to allege a structure or continuing unit</u>.  Plaintiffs also do not allege a cognizable RICO organization or that Defendants acted as a continuing RICO enterprise.  (Mot. (Dkt. 196) at 19-21.)  The Opposition does not contest Mr. Crow's showing that the FAC does not sufficiently allege any organizational structure, and therefore concedes this issue. *U.S. ex. Rel. Gage v. Rolls-Royce N.A. Inc.*, No. A-16-CV-803, 2018 WL 852380, *5 (W.D. Tex. Feb. 13, 2018) (failure to respond to arguments concedes them); *see Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017) (no RICO enterprise because no "specific facts as to the nature of the connection between defendants").

Plaintiffs argue that there is a "continuing unit" because the alleged illegal conduct took place over several years (Opp'n (Dkt. 209) at 21), but this argument misses the point.  To show a plausible "continuing unit" Plaintiffs must allege facts showing that the predicate acts were connected to the alleged RICO enterprise, as opposed to illegal conduct that would otherwise occur outside a RICO conspiracy.  *See Do v. Pilgrim's Pride Corp.*, 512 F. Supp. 2d 764, 768 (E.D. Tex. 2007) (the continuing unit requirement extends to the purpose and structure of the enterprise and "the enterprise must continue to have this same purpose, and the new member must perform the same roles as the old did"); *Comm. to Protect our Agric. Water*, 235 F. Supp. 3d at 1175 (no RICO enterprise based on disconnected illegal conduct among supposed RICO members).  The FAC describes long running, disconnected domestic disputes between Plaintiffs and their ex-husbands and ex-boyfriends, along with alleged occasional interactions with others including Mr. Crow. The intermittent appearance of other defendants over the years is insufficient to allege a plausible

RICO enterprise.  *See Boyle v. U.S.*, 556 U.S. at 947 n.4.

   <u>No pattern of racketeering</u>.  The FAC also fails to allege the factual basis for any predicate

acts as to Mr. Crow.  (Mot. (Dkt. 196) at 21.)  The Opposition lists dozens of paragraphs of the

FAC, which they argue "plead[] numerous related predicate acts (at least two of which accrue to

Crow)."  (Opp'n (Dkt. 209) at 22.)  These paragraphs show nothing of the sort; they either concern

other Defendants or do not concern purported predicate acts.[7]   *See U.S. v. Sutherland*, 656 F.2d

1181, 1203 (5th Cir. 1981) ("plaintiff must allege at least two predicate acts *by each defendant*");

*see also Gabriel v. Outlaw*, No. EDCV-14-01425, 2021 WL 1030157, *2 (N.D. Tex. Mar. 1, 2021)

(conclusory allegations of various criminal acts are insufficient to plausibly state RICO claim).

The RICO claim fails as to Mr. Crow.

   <u>Mr. Crow did not "conduct" the alleged enterprise</u>.  The FAC does not allege facts plausibly

showing Mr. Crow conducted or participated in the supposed enterprise's affairs.  (Mot. (Dkt. 196)

at 22-23.)  The Opposition simply argues that Mr. Crow "had a central role … where his direction

was obeyed" (Opp'n (Dkt. 209) at 23) without citing any supporting allegation.  Plaintiffs' reliance

on their unsupported conclusion that Mr. Crow was "the key financial supporter of the enterprise"

(*id.* (*citing* FAC (Dkt. 190) ¶ 30)) is insufficient because there are no factual allegations showing

that Mr. Crow gave any direction concerning the supposed enterprise or that his "direction was

obeyed" by anyone.  *See Reves v. Ernst & Young*, 507 U.S. 170 (1993) (plaintiff must show how

each defendant participated in the conduct of the alleged enterprise's affairs).

   Plaintiffs attempt to "amend" the FAC by arguing that Mr. Crow was the "primary host"

of the so-called Forced Sex Parties.  (Opp'n (Dkt. 209) at 23 (*citing* FAC (Dkt. 190) ¶¶ 37-40).)

The cited paragraphs do not allege that Mr. Crow was the "primary host" of any sex party; in fact,

---

[7] As one example, Plaintiffs cite paragraph 134, which concerns one of several domestic court
cases between Mr. and Ms. Hubbard.  It has nothing to do with Mr. Crow.

the FAC identifies only two times that Plaintiffs supposedly had sex while at Mr. Crow's residence. (*Id.* ¶¶ 33, 296.)  Even then, there are no allegations that plausibly show that Mr. Crow had a central role in the alleged sexual goings-on.  (*E.g., id.* ¶¶ 193, 215, 226, 298 (alleging that forced sex occurred at Mr. Hubbard's home, sex clubs, and Rogers' home).  Conclusory allegations that Mr. Crow was a "central figure" because he was allegedly present when Plaintiffs had sex with their exes are insufficient as a matter of law.  *Cf. Gomez v. GuthyRenker, LLC*, No. EDCV-14-01425, 2015 WL 4270042, at *5 (C.D. Cal. July 13, 2015) ("Since Business is merely a consumer of Provider's services, Business cannot be said to participate in the operation or management of Provider"); *In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 237 (S.D.N.Y. 2001) (no liability for being "a mere customer of the alleged enterprise").

### D.      Ms. Hubbard's RICO Claims are Barred by the Statute of Limitations.

Ms. Hubbard alleges that the latest date she suffered a "concrete financial loss" was April 2018, the date her house went to foreclosure.  (Mot. (Dkt. 196) at 24-25.)  Putting aside that her foreclosure is not a cognizable RICO injury, if it were, that injury occurred more than four years *before* Ms. Hubbard filed the original Complaint.  The Opposition argues that Hynes, Jr.'s alleged physical abuse extends the limitations period beyond the date of foreclosure (Opp'n (Dkt. 209) at 24), but that argument fails for several reasons.  First, the FAC alleges Ms. Hubbard "escaped" Mr. Hubbard's alleged trafficking venture in "March 2017" (well before the alleged foreclosure), and escaped Hynes, Jr. in "October or … November 2018" (over four years prior to this action).  (FAC (Dkt. 209) ¶¶ 248, 266, 278).  Second, as explained above (*supra* at II.C.), a financial injury that flows from personal injury (allegedly inflicted by Grover or Hynes, Jr.) is not a cognizable RICO injury.  *See Berg*, 915 F.2d at 463.  Third, Ms. Hubbard does not plausibly allege that Hynes, Jr.'s domestic abuse was in furtherance of any criminal enterprise; she alleges it occurred in connection with their romantic relationship.  Nor does she allege that Hynes, Jr.'s alleged abuse

interfered with her existing economic relationships (*In re Taxable Mun. Bond Securities Lit.*, 51 F.3d at 523)—at the time of the alleged abuse she had no job or prospects of any jobs.  (FAC (Dkt. No. 209) ¶¶ 258, 266-69.)  Ms. Hubbard's RICO claims are untimely.

### E.  The RICO Conspiracy Claim Still Fails.

Plaintiffs' RICO conspiracy claim under section 1962(d) fails because it is predicated on their section 1962(c) claim, which fails.  *Poe v. Bock*, No. EP-cv-17-232, 2018 WL 4677901, *5 (W.D. Tex. Jun. 11, 2018).  (*See also* Mot. (Dkt. 196) at 24-25; *supra* at II.C., II.D.)

## III.   LEAVE TO AMEND SHOULD NOT BE GRANTED

The Court should deny Plaintiffs' request to amend because they do not show how a second opportunity to amend would cure the FAC's several infirmities and because amendment would be futile.  *U.S. ex rel. Grynberg Prod. Corp. v. Kinder Morgan CO$_2$ Co., L.P.*, 491 F. Supp. 3d 220, 235-36 (N.D. Tex. 2020) (dismissal with prejudice where party provided "no explanation for how it might cure any of the deficiencies raised by Defendant, such as whether there are additional, specific facts that might remedy the pleading defects").  Plaintiffs do not explain how their proposed new allegations (i.e., that Hynes Jr. did not return Ms. Hubbard's driver's license until December 2018) would cure their pleading deficiencies such that, in this example, her claims would not be barred by the statute of limitations or why they were not included in the FAC.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (delay and dilatory tactics are grounds for granting motion to dismiss *without* leave to amend).  Leave to amend should be denied.

### <u>Conclusion</u>

Mr. Crow respectfully requests that the Court dismiss the First Amended Complaint with prejudice.

DATED:  August 23, 2023                    Respectfully submitted,

                                           /s/ *Kenneth C. Stone*
                                           Gerald E. Hawxhurst
                                           Texas State Bar No. 24090636
                                           jerry@hawxhurstllp.com
                                           HAWXHURST LLP
                                           1301 S. Capital of Texas Hwy
                                           Building C, Suite 300
                                           Austin, Texas 78746
                                           Telephone: (512) 522-4995
                                           Facsimile: (512) 522-4961

                                           GRAY REED
                                           KENNETH C. STONE
                                           Texas Bar No. 19296300
                                           LONDON ENGLAND
                                           Texas Bar No. 24110313
                                           1601 Elm Street, Suite 4600
                                           Dallas, Texas 75201
                                           Telephone:  (214) 954-4135
                                           Facsimile:  (214) 953-1332
                                           Email:  kstone@grayreed.com
                                                   lengland@grayreed.com

                                           *Attorneys for Defendant,*
                                           *Trammell S. Crow, Jr.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing "Trammell S. Crow, Jr.'s Reply in Support of His Motion to Dismiss the First Amended Complaint" was served on all counsel of record via ECF on August 23, 2023.

                                           /s/ *Kenneth C. Stone*
                                           Kenneth C. Stone

                                           *Attorneys for Defendant Trammell S. Crow, Jr.*