IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JULIA HUBBARD et al., | § § § | |
| *Plaintiffs,* | § § § | |
| vs. | § § § | Civil Case No. SA-23-CV-00580-FB |
| TRAMMELL S. CROW. JR. et al., | § § § | |
| *Defendants* | § | |

### DEFENDANT RCI HOSPITALITY HOLDINGS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant RCI Hospitality Holdings, Inc. ("RCIHH") files this Reply in Support of Its Motion to Dismiss for Failure to State a Claim (Doc. 201), and respectfully shows as follows:

A.  The Complaint is an improper "shotgun" pleading.

In their Response to RCIHH's Motion to Dismiss, Plaintiffs Julia Hubbard ("Julia") and Kayla Goedinghaus ("Goedinghaus") argue that their operative pleading is not a "shotgun" pleading because they "made specific allegations regarding each Defendant, including [RCIHH] and it agents." (Doc. 214, Resp., 8.) Plaintiffs misunderstand what a shotgun pleading is.

Plaintiffs' Complaint is 73 pages long with 447 numbered paragraphs. Plaintiffs name 24 Defendants and assert three different claims against all Defendants - sex-trafficking, labor-trafficking, and RICO violations – and each claim has multiple theories (*e.g.* the trafficking claims have perpetrator and beneficiary variants.) (Doc. 190, Compl., ¶¶ 62-84, 422-47.) Plaintiffs do not granulate their claims against RCIHH, and the discussion of each claim incorporates all preceding paragraphs of the Complaint. (Id., 422, 426, 430, 440.) Such

nebulous pleading forces RCIHH to guess what the factual basis for each claim against it is. In short, the Complaint is a classic shotgun pleading, as explained in RCIHH's Motion. (Doc. 201, MTD, 6-7.)

That the Complaint has some specific allegations against RCIHH's agents does not alleviate the rule violation. The Complaint's claim sections do not explain what the factual predicate is for each claim, and RCIHH cannot resolve the problem by looking only to the factual background's discussion of it since it is not clear whether all of those allegations are relevant to every claim. As an illustration of the problem, it was not clear until Plaintiffs filed their Response to RCIHH's original Motion to Dismiss in California federal court (Doc. 88, Prior Resp., 12.) that Goedinghaus was even pursuing claims against RCIHH, since nowhere in the Complaint does it identify any interaction between her and it. By failing to state the factual predicate for each claim against RCIHH in the claims section, either expressly or by incorporation only of those paragraphs relevant to that claim against RCIHH, the Complaint violates Rule 8, and RCIHH's Motion should be granted.

B.      Defendant Casey Grover's alleged misconduct was not in the scope of his employment.

RCIHH's Motion already explained why Grover's alleged egregious misconduct (*e.g.* firing a weapon at Julia's house, intentionally crashing her car) was not within the scope of his employment (Doc. 201, MTD, 11-12.), and Plaintiffs' only answer is that "[t]he mere fact that [RCIHH]'s conduct was illegal does not make it outside the scope of their employment." (Doc. 214, Resp., 11.) But Plaintiffs are not arguing that Grover ran a red light while working as a driver; they argue instead that Grover allegedly engaged in a shocking, extended campaign of physical and psychological abuse against Julia. Even Plaintiffs' own authority says that for an act to fall within the scope of employment it must occur "substantially within the authorized time

and space limits" of the employee's work. (Id., 11.) *Saleh v. Bush*, 848 F.3d 880, 890 (9th Cir. 2017). A good deal of Grover's purported misconduct occurred away from the club in question, such as when he allegedly fired a gun at Julia's house. (Doc. 190, Compl., ¶ 252.) Given the extreme nature of the conduct alleged, the commonsense fact that a manager's duties do not include, for example, forcing a subordinate to work against her will, or beating, stalking, intimidating, or refusing to pay her, and the fact that much of this conduct occurred away from the club in question, this conduct was not within the scope of employment and Plaintiffs cannot impute it to RCIHH.

To the extent Plaintiffs seek to impute to RCIHH misconduct by Defendants and other alleged RCIHH agents Mark Molina and Richard Butler, such imputation would be meaningless. The allegations against Molina are that he took no action when Julia complained to him about Grover's supposed abuse. (Doc. 190, Compl., ¶ 255.) This nonfeasance is not a RICO or trafficking violation, so imputation would achieve nothing. The allegations against Butler are that, like Molina, he failed to act on Julia's complaints about Grover, and also that he asked repeatedly asked Julia for sexual favors and threatened to fire her if she did not comply. (Id.) The nonfeasance provides nothing of substance to impute, and pressuring a subordinate for sex is plainly outside the scope of a club manager's employment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 757 (1998) ("The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment."); *accord Moody v. Atl. Cty Bd. of Educ.*, 870 F.3d 206, 216 (3d Cir. 2017).

C.  Plaintiffs' Response fails to show RCIHH's participation in a sex-trafficking venture or that it gained anything from such participation.

Plaintiffs argue that their Complaint adequately pleads sex-trafficking claims, saying that RCIHH supported a sex-trafficking venture because its agent, Grover, "supported the Venture by

providing information to [Richard] about [Julia's] whereabouts, and the Venture harmed Goedinghaus," and that RCIHH benefitted from the Venture because RCIHH, apparently through Grover, "received "information from [Richard] concerning [Julia] . . . , which [RCIHH] valued as it allowed it, through its agents, to further labor traffic [Julia]." (Doc. 214, Resp., 9-10.) The first contention is an improper attempt to defend the claims with factual assertions not pled, while the second contention is conclusory.

Beginning with Plaintiffs' argument that RCIHH, through Grover, supported the Venture by telling Defendant Richard Hubbard ("Richard") where Julia was, that argument is an improper attempt to add to the allegations in the Complaint. The Complaint says Grover "was also in regular contact with [Richard], exchanging information concerning [Julia] for their mutual benefit and the advancement of the Venture." (Doc. 190, Compl., ¶ 46.) It nowhere says Grover told Richard of Julia's whereabouts, and Plaintiffs cannot now supplement their Complaint by adding new allegations in their Response. *See Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) ("[T]his claim was not raised in Fisher's second amended complaint but, rather, was raised in his response to the defendants' motions for summary judgment and, as such, was not properly before the court."). This same principle bars Plaintiffs' allegation, also raised for the first time in their Response, that the information Richard provided to Grover enabled RCIHH to further labor-traffic Julia.

With the Response's new factual contentions ignored, the focus is on the allegations in the Complaint that Grover discussed Julia with Richard, that these discussions benefitted one another and the Venture, and that the Venture harmed Goedinghaus. The "benefitting" allegation is a conclusory recital of an element of the sex-trafficking cause of action, and therefore has no weight. *See Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (in Rule 12(b)(6)

context, "we do not presume to be true legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.") (cleaned up).  With respect to Julia, Plaintiffs are left with a mere contention that Grover repeatedly communicated with Richard about Julia.  This is insufficient to meet the plausibility standard, as Plaintiffs fail to rule out the many alternative explanations for those communications other than participation by Grover, Richard, and RCIHH in a sex-trafficking ring.  *See Swindol v. Aurora Flight Sci. Corp.*, 832 F.3d 492, 494 (5th Cir. 2016) ("A complaint must 'state a claim to relief that is plausible on its face.'").  For example, Richard, who at the time had custody of his child(ren) with Julia, may have used Grover as a go-between to relay information about or requests concerning the children to Julia.  (*See* Doc. 190, Compl., ¶ 132 (stating that Julia obtained custody of her child in 2022).)  Plaintiffs' allegation that the Venture harmed Goedinghaus is not just conclusory, it also fails to show that RCIHH participated in or benefitted from the Venture.  As the allegations move from consistency into plausibility, the sex-trafficking claims fail.

Additionally, Plaintiffs complain that RCIHH "provides no authority whatsoever for the assertion that specific knowledge of Plaintiff Goedinghaus is necessary for Goedinghaus to have standing to assert TVPA. beneficiary liability."  (Doc. 214, Resp., at 10-11.)  But specific knowledge of the particular Plaintiff is exactly what the statute requires, as courts have already ruled.  *See Doe #9 v. Wyndham Hotels and Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 30, 2021) ("More specifically, the complaint must contain facts sufficient to establish that the defendant knew or should have known about the trafficking of the plaintiff in particular—not about trafficking occurring on the premises in general.").  Accordingly, the sex-trafficking claims fail with respect to Goedinghaus on this additional ground.

D.  <u>Plaintiffs fail to show a labor-trafficking claim against RCIHH</u>.

Plaintiffs pursue beneficiary and perpetrator labor-trafficking claims against RCIHH. (Doc. 214, <u>Resp.</u>, at 12.) Neither claim should survive dismissal.

As to the beneficiary theory, the only allegations Plaintiffs point to for support are in Paragraphs 44-46 and 252 of the Complaint, with Paragraph 46 as the only one having any relevance.[1] Paragraphs 44, 45, and 252 allege that Grover forced Julia through threats and abuse to work at a gentlemen's club allegedly owned by RCIHH, that Grover was otherwise abusive towards Julia (ex: firing an AK-47 at her house), that he confiscated her wages for his personal benefit, and that RCIHH was aware of this misconduct. Even assuming these allegations show that Grover engaged in labor-trafficking, they do not show a labor-trafficking <u>venture</u> as needed to support a beneficiary claim against RCIHH, since they show only isolated misconduct by Grover.[2] Paragraph 46 is the only cited paragraph that even addresses a venture, and it states that Grover stayed in regular communication with Richard and exchanged information about Julia with him. However, as already explained above in the sex-trafficking section of this Reply, these allegations fail to show the required venture. The beneficiary theory is therefore deficient and proper for dismissal.

As for the perpetrator theory, Plaintiffs' shotgun-pleading approach is improper and fails to provide RCIHH (as well as every other Defendant) with proper notice of the claim's basis, so Plaintiffs' labor-trafficking claim based on that theory should be dismissed as well. (Doc. 201, <u>MTD</u>, 6-7.) That claim also fails because as explained above, Plaintiffs do not plead facts

---

[1] Based on their previous MTD Response, it appears Plaintiffs mistakenly cited Paragraphs 45-47 and 251, and instead meant to cite Paragraphs 44-46 and 252.

[2] Paragraph 44 says that Grover confiscated Julia's wages for his own benefit with the knowledge of Defendants Mark Molina, Richard Butler, and "RCI Entertainment, Inc." This does not plausibly show a venture since Plaintiffs admit that the confiscation was for Grover's benefit, not a group undertaking, and mere knowledge of another's misconduct does not make someone a co-venturer. *See Does v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2015) ("Mere association with sex traffickers is insufficient absent some knowing 'participation' in the form of assistance, support, or facilitation.").

plausibly showing that Grover's alleged misconduct is imputable to RCIHH under the *respondeat superior* theory they plead.

E.      The Response fails to show that Plaintiffs' RICO claims are timely.

Plaintiffs argue that the deadline to file their RICO claims against RCIHH only began to run when they sustained their last injuries from the Venture he was supposedly part of. The law does not justify this expansive view of limitations.

"[A] RICO cause of action accrues upon the discovery of the injury in question." *Rotella v. Wood*, 147 F.3d 438, 440 (5th Cir. 1998), *aff'd*, 528 U.S. 549 (2000). Further, "'each time a plaintiff suffers an injury caused by a [RICO] violation ..., a cause of action to recover damages based on that injury accrues to plaintiff at the time he discovered or should have discovered the injury[.]'" *Love v. Nat'l Med. Enter.*, 230 F.3d 765, 773 (5th Cir. 2000).

Plaintiffs' Complaint states that Grover forced Julia to work at a gentlemen's club, confiscated her wages, physically abused her to the point of breaking her ribs, threatened her with guns, and crashed her vehicle. (Doc. 190, Compl., ¶¶ 250-258.) Julia certainly would have been aware of this alleged misconduct when it occurred, and Plaintiffs do not contend otherwise. The Complaint goes on to say that Julia left Grover and her job at the aforementioned gentlemen's club in or near October 2017 following a violent incident with him. (Id., ¶ 258.) There are no allegations of later misconduct by Grover or anyone else allegedly connected with RCIHH. Accordingly, the statute of limitations with respect to purported misconduct of RCIHH began to run at the latest in November 2017, which makes the Complaint's November 2022 filing a year late. (Doc. 201, MTD, 14.)

Plaintiffs' answer to these facts is that a RICO claim only starts to run when the criminal enterprise inflicts its last injury on the plaintiff. (Doc. 214, Resp., 12-13.) That is not correct.

Plaintiffs cannot use a later, timely injurious act to recover for an earlier, untimely one. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) ("[T]he [RICO] plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period."); *accord CSX Transp., Inc. v. Norfolk S. Ry. Co.*, No. 2:18cv530, 2023 WL 25344, at *6 (E.D. Va. Jan. 3, 2023) (for pub.).

To the extent Plaintiffs argue that the limitations period does not begin to run until the conspiracy ends, that theory is foreclosed by Fifth Circuit's rule that the limitations clock starts when the plaintiff knows or should know of her injury. *Rotella*, 147 F.3d at 440. Plaintiffs' argument has also been expressly rejected by several courts. *See Borrego Cmty. Health Found. v. Inland Valley Inv., LLC*, No.: 3:21-cv-1417-L-AGS, 2022 WL 673266, at *4 (S.D. Cal. Mar. 7, 2022) ("BCHF also argues the statute of limitations for a RICO conspiracy claim runs until the scheme's objectives are accomplished or abandoned . . . . The civil RICO statute is focused on injuries. The statute of limitations is meant, in part, to motivate plaintiffs to be diligent and seek relief once they discover (or should discover) the injury, not wait for those injuries (and treble damages) to increase. BCHF's above contention conflicts with that purpose.") (cleaned up); *accord Hodas v. Sherburne, Powers & Needham, P.C.*, 938 F.Supp. 60, 65 (D. Mass. 1996); *Kerik v. Tacopina*, 64 F.Supp.3d 542, 558 (S.D. N.Y. 2014).

Finally, Plaintiffs' reliance on the Ninth Circuit's decision in *Diaz v. Gates* is unpersuasive. 420 F.3d 897 (9th Cir. 2005). (Doc. 214, Resp., 7.) That case addressed "whether a false imprisonment that caused the victim to lose employment and employment opportunities is an injury to 'business or property' within the meaning of RICO," not a RICO (or any) statute of limitations issue. 420 F.3d at 898. It has nothing relevant to say here.

Accordingly, Plaintiffs have no basis to hold RCIHH liable for any of the misconduct allegedly committed by its agents, and the RICO claims against RCIHH should be dismissed to the extent they rest on allege misconduct committed earlier than November 2017.

F.   Plaintiffs' Response does not adequately defend the RICO claims.

In order to preserve their RICO claims against RCIHH, Plaintiffs had to explain how their Complaint plausibly set forth a RICO claim, and more specifically, that RCIHH was a member of a RICO enterprise. Plaintiffs' Response fails at this task.

Plaintiffs again attempt to supplement their Complaint by alleging new facts in the Response: that Grover confiscated Julia's wages for the benefit of both himself and the Venture. (Doc. 214, Resp., 13.) However, that is not what the Complaint says – it says Grover confiscated Julia's wages for only his personal benefit. (Doc. 190, Compl., ¶ 44.) This supplementation is improper as explained above and should be disregarded by the Court. *Middaugh*, 528 F.Supp.3d at 535. Ignoring the material outside the Complaint, Plaintiffs are left with their allegations that Grover communicated repeatedly with supposed Venture member Richard about Julia, exchanging information with Richard that was "for their mutual benefit and the advancement of the Venture." (Doc. 190, Compl., ¶ 46.) As explained above, the "mutual benefit" allegation is conclusory, and the "discussing Julia with Richard" allegation does not cross the plausibility threshold.

Plaintiffs additionally plead that RCIHH was part of an "association in fact" enterprise. (Doc. 190, Compl., ¶ 433.) To plead association-in-fact, Plaintiffs must plead facts showing that RCIHH "has participated in the operation or management of the enterprise[.]" *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993); *accord Gianelli v. Schoenfeld*, No. 2:21-cv-0477-KJM-KJN (PS), 2022 WL 3230097, at *6 (E.D. Cal. Aug. 10, 2022). They must also show that the

enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," not merely "a series of criminal acts." *United States v. Turkette*, 452 U.S. 576, 583 (1981). An association-in-fact enterprise has "a hierarchical or consensual decision-making structure" enabling it to "function[] as a continuing unit over time[.]" *Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). The mere fact that two or more members of the alleged enterprise collectively engage in an illegal act does not show an enterprise. *See id*.

Nothing in the Complaint comes even close to showing an enterprise with regard to RCIHH. At best, Plaintiffs have pled isolated misconduct, so their substantive RICO claim fails, and their RICO conspiracy claim with it. *See Bradley v. Phillips Petroleum Co.*, 527 F.Supp.2d 625, 648 (S.D. Tex. 2007) ("Even if the Curry Plaintiffs' allegations properly pled predicate acts,4the acts pled are too isolated and discrete to satisfy RICO's continuity requirement.") (footnote omitted); *Lu v. Deng*, No. 2:16-cv-07283-CAS (RAOx), 2017 WL 373438, at *6 n. 5 (C.D. Cal. Jan. 23, 2017) (dismissing civil RICO claims because the conduct alleged was at best isolated activity); *Jimenez v. Serv. Emp. Int'l Union Loc. 775*, 590 F.Supp.3d 1349, 1362 (E.D. Wash. 2022) ("Four seemingly unrelated incidents of forged signatures are insufficient to establish the existence of a common purpose under the definition of a RICO enterprise.").[3]

---

[3] Plaintiffs' attempt to distinguish RCIHH's cited cases is both ineffectual and strange. (Doc. 214, Resp., 13-15.) RCIHH cited those cases to show that the isolated misconduct, such as the acts Plaintiffs complain of, is insufficient to show a RICO enterprise. (Doc. 201, MTD, at 17-19.) Instead of making a serious effort to explain how RCIHH (allegedly) engaged in anything other than isolated misconduct, Plaintiffs say the cited cases are inapplicable because they involved isolated misconduct while this case does not. (Doc. 214, Resp., 14.) But RCIHH's point is that those cases are about isolated misconduct, similar to this case. Simply denying the similarity in conclusory fashion, as Plaintiffs do, does not rebut RCIHH's point.

**DEFENDANT RCI HOSPITALITY HOLDINGS, INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**  PAGE 10

Respectfully submitted,

*/s/ Stephanie Richmond Roark*
**STEPHANIE RICHMOND ROARK**
State Bar No. 24070498
sroark@hartlinebarger.com
**BRIAN S. RAWSON**
State Bar No. 24041754
brawson@hartlinebarger.com
**HOLLY NAEHRITZ**
State Bar No. 24083700
hnaehritz@hartlinebarger.com
**HARTLINE BARGER LLP**
8750 N. Central Expy., Suite 1600
Dallas, Texas 75231
Telephone:  (214) 369-2100
Facsimile:  (214) 369-2118

**ATTORNEYS FOR DEFENDANT**
**RCI HOSPITALITY HOLDINGS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record and *pro se* parties in accordance with the applicable Federal Rules of Civil Procedure on August 24, 2023.

*/s/ Stephanie Richmond Roark*
**STEPHANIE RICHMOND ROARK**