UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, <br><br>    Plaintiff(s),<br><br>vs.<br><br>TRAMMELL S. CROW, JR., DR. BENJAMIN TODD ELLER, RICHARD HUBBARD, DR. MELISSA MILLER, DR. JOSEPH BOLIN, DR. SCOTT WOODS, DR. MRUGESHKUMAR SHAH, MICHAEL CAIN, COE JURACEK, PHILIP ECOB, H.J. COLE, TEXAS RANGER CODY MITCHELL, KURT KNEWITZ, PAUL PENDERGRASS, RALPH ROGERS, ROBERT PRUITT, SCOTT BRUNSON, CASE GROVER, RICHARD BUTLER, MARK MOLINA, MICHAEL HYNES, JR., SHAWN MAYER, JADE MAYER, RCI HOSPITALITY HOLDINGS, INC., INTEGRITY BASED MARKETING, LLC, STORM FITNESS NUTRITION, LLC, ULTRA COMBAT NUTRITION, LLC, ECOLOFT HOMES LLC, ELEVATED WELLNESS PARTNERS LLC, DOE INDIVIDUALS 1–20, and DOE COMPANIES 21–30<br><br>    Defendant(s). | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Case No.: 2:23-CV-00580-FB<br><br><br>BENJAMIN TODD ELLER'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FRCP12(b)(2) FOR LACK OF PERSONAL JURISDICTION, and FRCP 12(b)(6) FOR FAILURE TO STATE A CLAIM<br><br><br>Hon. Fred Biery |

**Table of Contents**

I.    INTRODUCTION ................................................................................................................1

II.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS TO ELLER PURSUANT TO FED. R. CIV. P. 12(b)(2) BECAUSE PLAINTIFFS STILL FAIL TO CARRY THEIR BURDEN O ESTABLISHING PERSONAL JURISDICTION  ...............................................1

III.  THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P 8(a) AND 12(b)(6) FOR FAILING TO PLEAD ANY PLAUSIBLE CLAIMS FOR RELIEF..............................5

V.    CONCLUSION ..................................................................................................................9

## Table of Authorities

*Allred v. Moore & Peterson*,
   117 F.3d 278 (5th Cir. 1997) ............................................................................................... 2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 5

*Burstein v. State Bar of California*,
   693 F.2d 511 (5th Cir. 1982) ............................................................................................... 1

*Choice Healthcare, Inc. v. Kaiser Found Health Plan of Cob.*,
   615 F.3d 364 (5th Cir. 2010) ........................................................................................... 2, 4

*Colwell Realty Invest., Inc. v. Triple T Inns, Inc.*,
   785 F.2d 1330 (5th Cir. 1986) ............................................................................................. 1

*De Melo v. Toche Marine, Inc.*,
   711 F.2d 1260 (5th Cir. 1983) ............................................................................................. 1

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ............................................................................................................ 2

*Jobe v. ATR Mktg., Inc.*,
   87 F.3d 751 (5th Cir. 1996) ................................................................................................. 2

*Mississippi Interstate Express, Inc. v. Transpo, Inc.*,
   681 F.2d 1003, 1006 (5th Cir. 1982) .................................................................................. 1

*Omni Cap. Intl, Ltd v. Rudolf Wolff & Co., Ltd.*,
   484 U.S. 97 (1987) .............................................................................................................. 1

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
   253 F.3d 865 (5th Cir. 2001) ........................................................................................... 2, 3

*Quick Technologies, Inc. v. Sage Group, PLC*,
   313 F.3d 338 (5th Cir. 2002) ............................................................................................... 2

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ............................................................................................................ 1

*Thompson v. Chrysler Motors Corp.*,
   755 F.2d 1162 (5th Cir. 1985) ............................................................................................. 2

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................................ 4

*Walk Haydel & Assocs., Inc. v. Coastal Power Production*,
   517 F.3d 235 (5th Cir. 2008) ............................................................................................... 3

18 U.S.C. 1962 (d) ................................................................................................................... 1
18 U.S.C. § 1589 ...................................................................................................................... 1

18 U.S.C. § 1591 ................................................................................................................................ 1
Fed. R. Civ. P. 12 ...................................................................................................................... 1, 5, 9
FED. R. CIV. P. 8 ......................................................................................................................... 5, 8

I.      INTRODUCTION

The Amended Complaint still fails to establish that the Court has personal jurisdiction over Defendant Benjamin Todd Eller ("Eller"), or allege any set of facts giving rise to any plausible claim that Eller engaged in misconduct making him liable under federal criminal statutes, namely provisions of the Trafficking Victims Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589 and/or § 1591, or the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962(c) and (d). Accordingly, the Complaint should be dismissed **with prejudice as to Eller** pursuant to Fed. R. Civ. P. 12(b)(2), as well as 12(b)(6) and 8(a).

II.     **THE COMPLAINT SHOULD BE DISMISSED *WITH PREJUDICE* AS TO ELLER PURSUANT TO FED. R. CIV. P. 12(b)(2) BECAUSE PLAINTIFFS STILL FAIL TO CARRY THEIR BURDEN OF ESTABLISHING PERSONAL JURISDICTION**

Simply stated, Plaintiffs fail to carry their burden -- despite repeated opportunities -- to establish personal jurisdiction over Eller. *See Colwell Realty Invest., Inc. v. Triple T Inns, Inc.*, 785 F.2d 1330, 1332 (5th Cir. 1986); *De Melo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270 (5th Cir. 1983). As such, this Court may not address the merits of any claims against Eller. *See generally Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-431 (2007).

The Court must engage in a fact-specific inquiry in order to determine whether it can exercise personal jurisdiction over a defendant without running afoul of the Constitutional limits of due process.[1] *See Mississippi Interstate Express, Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1006 (5th Cir. 1982)(analysis of whether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the

---

[1] Further, personal jurisdiction must (a) be authorized by law and (b) not violate Constitutional due process limits. *See Burstein v. State Bar of California*, 693 F.2d 511, 514 (5th Cir. 1982); *see generally Omni Cap. Intl, Ltd v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 105 (1987). As a threshold matter, Plaintiffs fail to even identify what law even authorizes this Court to exercise such jurisdiction -- alluding to the "long-arm statute" in its opposition brief and the RICO statute in the Complaint[1] (Pl. Op. at 6; AC ¶57-58) Regardless, Plaintiffs fail to establish how the exercise of personal jurisdiction over Eller comports with the Constitutional limits of due process.

1

forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state.)  Here specifically, the Court would have to conclude that Eller had sufficient "minimum contacts" with Texas such that the exercise of jurisdiction would not "offend traditional notions of fair play and substantial justice."  *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *see also Choice Healthcare, Inc. v. Kaiser Found Health Plan of Cob.*, 615 F.3d 364, 367 (5th Cir. 2010).

In conducting this analysis, the Court is not bound to -- and in fact, <u>should not consider</u> -- the "conclusory allegations" in a complaint, but instead may consider materials outside the Complaint, including any affidavits, exhibits and all documents in the record. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *Quick Technologies, Inc.* 313 F.3d 338, 343 (5th Cir. 2002); *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997); *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996); *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).  Here, Plaintiffs offer nothing to beyond conclusory allegations to this Court to support their claim that it can exercise personal jurisdiction.  In contrast, the uncontroverted evidence before this Court tips the scale – heavily – against the exercise of personal jurisdiction over Eller in this case.

Indeed, Plaintiffs *solely* rely on the fact that Eller had answered phone calls from Rick Hubbard to speak with him, and spoke with his partners – Plaintiffs in this case –to assert personal jurisdiction over Eller. (Opp. at 6) Plaintiffs are laboring under the misapprehension that this is "more than enough" to establish the requisite level of minimum contacts with Texas to allow this Court to exercise jurisdiction over Eller.  It is not, and doing so would require the Court to turn a blind eye to the Constitutional due process limits placed on its jurisdictional reach.

**It is undisputed that Eller has had no contact with Texas whatsoever, let alone "minimum contacts" sufficient to establish personal jurisdiction**.  What Plaintiffs refer to has Eller's "own

2

version of facts" are actually undisputed, uncontroverted facts that were presented in the record (Dkt. 108) and in his properly submitted Declaration. (Dkt. 108; Mtn. at 3-4)

For specific jurisdiction, the defendant has to have (1) purposely directed activities toward the forum state or purposely availed themselves of the privileges of conducting activities there and (2) those purposely directed activities give rise to the controversy or claims.[2] *See Choice Healthcare*, 615 F.3d at 369. Notably, **it is the defendant's own conduct that establishes personal jurisdiction** and that "defendant's suit-related conduct **must create a <u>substantial</u> connection with the forum State**." (emphasis added.) *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Moreover, **specific jurisdiction <u>is not</u> grounded in Plaintiffs' unilateral activity, status, or conduct**. In other words, the Court's "minimum contacts" analysis to establish specific (personal) jurisdiction must examine "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." (*Id.* at 285)("however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated.")

There are no facts before this Court establishing that Eller purposely directed any conduct whatsoever at Texas, let alone substantial conduct, or sought to avail himself of the laws of Texas. Further Plaintiffs' argument that he knew he was talking to parties in Texas does not constitute Eller directing substantial conduct at the state of Texas. (Opp. at 6)

Eller resides and conducts all his business (at all times relevant hereto) in Los Angeles County, California, where he is licensed in behavioral therapy and provides services to special needs children

---

[2] While Plaintiffs do not ever identify whether they are seeking to establish personal jurisdiction on general jurisdictional grounds (where the contacts with the forum state are so pervasive such that defendant is basically at home in the forum state), or specific jurisdiction (where litigation directly arises from a non-resident purposefully directing its activities at the forum state), it seems to be the latter. *See Walk Haydel & Assocs., Inc. v. Coastal Power Production*, 517 F.3d 235, 243 (5th Cir. 2008) (describing specific jurisdiction).

and adults. (Eller Decl. ¶ 2) He has never lived, worked, visited, or travelled to Texas, or ever conducted business, advertised, or solicited business or clients in the state. (Id. at ¶ 4) Eller provided services to a California entity of which defendant Richard (Rick) Hubbard was a client, and then simply responded to *his* request for further services but never solicited Defendant Hubbard has a client, never met him in person, and never travelled to Texas. (Eller Decl. at ¶¶ 5-6) Eller did speak with Plaintiff Goedinghaus when *she* called *him* on the phone, and directed her to find healthcare providers on her own in Texas and gave her a letter to help her with her own search, neither requesting nor receiving any compensation from her. (Id. at ¶ 7-10) Finally, Eller never submitted any statements in any judicial proceeding or ever issued any "affidavits" to anyone – ever – anywhere, including Texas, regarding either Plaintiff or their custodial rights over their children.[3] (Id. at ¶¶ 7-9, 11-14)

Eller's limited sporadic communications with Defendant Rick Hubbard and Plaintiff Goedinghaus, both of whom were presumably in Texas when they called Eller and he responded to them, do not rise to the level of minimum contacts with Texas to confer specific jurisdiction in this case, and any exercise of personal jurisdiction would offend the "notions of fair play and substantial justice." Eller only ever spoke to Plaintiff Goedinghaus on the phone, never treated her in person, and instead (after consulting with another psychologist) provided her directly with a letter to specifically find treaters in Texas itself because as Eller explained he was not able to provide her with the services she needed. (Id. at ¶¶7-10) Eller, who felt sympathy for Goedinghaus, never received any compensation for speaking with her on the phone or giving her the letter. (Id at ¶ 9) Any limited compensation Eller received from Defendant Rick Hubbard was for business consulting – a fact that is supported by the

---

[3] It is also undisputed that the Complaint embeds materially altered, false and/or fraudulent documents and information about Eller (a) providing sworn statements and testimony in divorce/custody court proceedings between Plaintiff Julia Hubbard and Defendant Richard Hubbard to keep Plaintiff from her child and/or (b) intentionally making recommendations to medical doctors in Texas to drug Plaintiff Kayla Goedinghaus. (Eller Decl. ¶ 7-14; Banks Decl. ¶ 4-14)

4

allegations in the Complaint itself which embeds a picture of payment that Defendant Hubbard made to his own company "for Dr Eller." (Eller Decl. ¶ 6; AC ¶ 125)

Absent any minimum contacts -- which do not exist here based on the uncontroverted facts here -- this Court cannot exercise personal jurisdiction over Defendant Eller, and should dismiss this Complaint as to Eller, and all claims asserted against him, for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

### III.  THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 8(a) and 12(b)(6) FOR FAILING TO PLEAD ANY PLAUSIBLE CLAIMS FOR RELIEF

A complaint must comport with Fed. R. Civ. P. 8 and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that **is plausible** on its face.'" (emphasis added) *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, the factual content in the complaint must give rise to a **"reasonable inference"** of defendant's liability based on the court's "judicial experience **and common sense**." (emphasis added) *Ashcroft,* 556 US at 663-664 (*citing Twombl*y, 550 U.S. at 556). While plausibility is not probability, it is "**more than a sheer possibility**" that Plaintiffs are entitled to relief. (emphasis added) *Ashcroft,* 556 US at 678; Fed. Rule Civ. Proc. 8(a)(2). As the Court in *Iqbal* explained, Rule 8 requires a complaint to contain **factual allegations that "nudge" a pleaded claim "across the line from conceivable to plausible."** *Id.* at 680.  The Amended Complaint does not cross that line, nor come anywhere near that line.

In their opposition brief, Plaintiffs argue that following eleven (11) paragraphs are what the Court should focus on in order to establish plausible claims under the TVPRA and RICO against Eller. (Opp. at 7-8) However, these following eleven (11) allegations fall short stating a possible actionable claim of misconduct under *any* theory, let alone plausible one under the TVPRA or RICO:

5

122. Still, Rick knew that he would need Hubbard to attend far more sex parties in order for the Venture to be as profitable as he wished. This was where Eller came in: Eller would fraudulently use his psychological practice to force Hubbard to engage in commercial sex at parties—the Forced Sex Parties.

123. Rick and Eller's scheme worked like this: Eller would claim that Hubbard was his patient and had serious psychological issues requiring heavy medication. Rick would then procure high doses of drugs, including Xanax, Adderall, Oxycodone, Marinol, Soma, Lorezapan, Ambien, and Trazadone, and force Hubbard to take them in high doses order to make her pliable. Rick kept these drugs in what he called his "prescription bar."

129. As Eller knew very well, psychologists are given great deference when giving what they represent as their professional opinion, especially psychologists with a respectable professional background who insist that their patient needs medication. If Eller said that Hubbard was a danger to herself and her daughter, and particularly if he were willing to say so under oath, few people would believe Hubbard over him.

130. Eller, having been a psychologist for decades, realized how powerful this was: it meant that Hubbard would be unlikely to be believed by the police or by courts, meaning that she had no recourse to anything that Rick might force her to do, and if she did try to resist, she was unlikely to retain any custody of her daughter. Any protests that Hubbard made would simply be dismissed as paranoid delusions.

131.* Below is an example of the type of signed documents that Eller would submit to courts. This is an excerpt Eller submitted on October 3, 2019, to assist Rick in a failed attempt to bring Hubbard back to the Venture by maintaining control of Hubbard's children:

> I have rarely disagreed with Rick's desires to maintain an open mind hoping that someday Julia will truly change and become the healthy, honest, and nurturing mother we all believed she could one-day be, but over the last 11 years of observations of these children, it is my professional opinion that even if she began counseling and rigorous inpatient behavior modification today, there is less than 10% chance that Julia Hubbard will ever be anything but a dangerous and destructive force to her children. We believe the children's continued healthy environments and their chance to fully recover from the recent and past traumas is far too important to risk with ANY future contact with their mother. We highly recommend that Summer Hubbard should remain in the continued and exclusive custody of Rick Hubbard.
>
> Benjamin Todd Eller, Ph.D.

**\*As discussed in Eller's declaration this is an image from a fraudulent document submitted to the family court by Hubbard, that Eller reported to law enforcement, and that Plaintiff Hubbard and her counsel know or should know is false and fraudulent**

284. After Goedinghaus confided in Rick of past sexual abuse, Rick introduced Goedinghaus to Defendant Eller, whom he claimed was the "best" psychologist, and told Goedinghaus that Eller was the "life coach" of famed motivational speaker Tony Robbins.

285. Goedinghaus began having phone calls with Eller one a week beginning in January or February 2019.

   286. Eller first presented himself as a therapist and life coach. However, it gradually became apparent that Eller had an ulterior motive in his role in the Venture, and Eller began insisting that Goedinghaus needed medication and needed to stay with Rick because he provided a highly supportive environment for her.

   287. In February 2019, Rick began forcing Goedinghaus to perform sex acts, including with Scott Brunson in Austin, Texas, and then with Ralph Rogers in the summer of 2019 in exchange for Rick to avoid an eviction.

   288. Rick would also force Goedinghaus to attend sex clubs, including one called Friends, where he forced Goedinghaus to walk around naked, have public sex with Rick, or a woman that Rick found, while others watched. At one of these parties in Austin, Goedinghaus was forced to have sex with a woman while twenty men watched her and masturbated. Rick further forced Goedinghaus to find women at these parties, who Rick would also force to perform sex acts.

   289. Rick would force Goedinghaus to perform these forced commercial sex acts by beatings, choking (on at least twenty-five occasions, often until she was unconscious), threats, and drugs procured by the assistance of Defendants Eller and Miller.

(AC ¶ 122-23, 129-31, 284-89; *See* Pl. Opp. at 7-8)

These eleven (11) paragraphs detail at best **how Richard (Rick) Hubbard**, **not** Eller: (a) used Plaintiffs' sex parties to traffic Plaintiffs, (b) procured drugs that he kept and forced Hubbard to take to make her pliable, (c) forced Geodinghaus to perform sex acts, and (d) made representations to Plaintiffs about Eller's reputation. Underscoring Hubbard's offensive conduct is the fact that the only paragraph describing an affirmative conduct by Eller is – based on the uncontroverted evidence before this court – a false and forged document submitted (and likely generated) by Eller to family court.

Accordingly, these allegations do not – and cannot -- lead to any plausible claim that Eller violated the TVPRA, or could be held liable for such claims as set forth in either the First or Second Causes of Action because none of these allegations give rise to a reasonable inference that Eller engaged in the necessary requisite conduct to establish a violation under the TVPRA. Specifically, these allegations do not lead to the reasonable inference that Eller (a) knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, patronized or solicited Plaintiffs to engage in a

commercial sex act that he knew was being performed by force or threats of force; (b) knowingly caused Plaintiff's to engage in a commercial sex act; (c) had actual knowledge of the purported trafficking "venture" involving Plaintiffs and assisted, supported and/or facilitated it; (d) knowingly benefited from the purported trafficking "venture" involving Plaintiffs; (e) actually knew, or should have known, about the purported trafficking venture that was providing or obtaining the labor or services of Plaintiffs through threats, harm, physical restraint, or abuse of process; (f) knowingly provided or obtained the labor or services of Plaintiffs' for anyone through force, threats of force, physical restraint, harm, threats of harm, abuse of law or legal process; or (g) knowingly received anything of value from knowing participation in the purported trafficking "venture."

Further, these allegations <u>do not</u> lead to any plausible claim that Eller violated RICO, or could be held liable for such claims as set forth in either the Third or Fourth Causes of Action because none of these allegations give rise to a reasonable inference that Eller engaged in the necessary requisite conduct to establish a violation under the RICO.  Specifically, these allegations do not lead to the reasonable inference that Eller (a) operated or managed a purported RICO enterprise or (b) that there was even a purported RICO enterprise; (c)  participated in a pattern of racketeering activity that (d) harmed Plaintiffs' "business or property"; or (e) had actual knowledge of a conspiracy, or criminal objective of an agreement to commit a substantive violation of RICO by other defendants. (Id.)

In sum, even when given multiple opportunities to explain and specifically identify the allegations against Eller that "nudge" the four pleaded claims against him under the TVPRA and RICO statutes "across the line from conceivable to plausible" Plaintiffs are unable to do so.  Accordingly, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6) for failure to state any claim against Eller.

## IV. CONCLUSION

For the reasons set forth in his Motion and herein, the Court should dismiss Plaintiffs' Complaint as to Eller pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6) and 8(a).

DATED: August 24, 2023                                        CAMERON JONES LLP

                                                              */s/ Indira J. Cameron-Banks*
                                                              Indira J. Cameron-Banks
                                                              (appearing *pro hac vice*)

                                                              *Attorneys For* DEFENDANT
                                                              Benjamin Todd Eller

9

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of Benjamin Todd Eller's Reply Brief in Support of His Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2)(6) and 8(a) was served on counsel of record via CM/ECF on August 24, 2023.

                                          */s/ Indira J. Cameron-Banks*
                                          Indira J. Cameron-Banks