## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JULIA HUBBARD, and KAYLA GOEDINGHAUS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO. SA-23-CA-580-FB |
| | ) | |
| TRAMMELL S. CROW, JR.; BENJAMIN TODD ELLER; RICHARD HUBBARD; MELISSA MILLER; SCOTT WOODS; MRUGESHKUMAR SHAH; MICHAEL CAIN; COE JURACEK; PHILIP ECOB; H.J. COLE; CODY MITCHELL; KURT KNEWITZ; PAUL PENDERGRASS; RALPH ROGERS; ROBERT PRUITT; SCOTT BRUNSON; CASE GROVER; RICHARD BUTLER; MARC MOLINA; MICHAEL HYNES, JR.; SHAWN MAYER; JADE MAYER; AARON BURLINGAME; RCI HOSPITALITY HOLDINGS, INC.; INTEGRITY BASED MARKETING, LLC; STORM FITNESS NUTRITION, LLC; ULTRA COMBAT NUTRITION, LLC; ECOLOFT HOMES LLC; ELEVATED WELLNESS PARTNERS LLC; DOE INDIVIDUALS 1-50; and DOE COMPANIES 1-50; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

Before the Court are the Motions to Dismiss filed by Defendants Trammell S. Crow, Jr.; Robert

Pruitt; Michael Scott Woods; Casey Grover; Cody Mitchell; RCI Hospitality Holdings, Inc.; Benjamin

Todd Eller; Melissa B. Miller; and Coe Juracek. (Docket nos. 196, 198, 199, 200, 201, 202, 203, 204,

205).  After careful consideration, the Court is of the opinion that the motions should be denied.

Procedural Background

On November 1, 2022, Plaintiffs Julia Hubbard and Kayla Goedinghaus ("Goedinghaus") (collectively, "Plaintiffs") filed their Complaint in the Central District of California asserting claims against 29 defendants (23 individuals and 6 corporations) for violations of the Trafficking Victims Protection Act of 2000 ("TVPA") and Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"). (Docket no. 1).  Defendants Crow, Pruitt, Woods, Grover, Mitchell, RCI, Eller, Miller, and Juracek filed Motions to Dismiss the Complaint. (Docket nos.  26, 50, 55, 72, 76, 83, 93, 102, 105).

On March 6, 2023, the California court ordered the parties to show cause why this action should not be transferred to a United States District Court in Texas pursuant to 28 U.S.C. § 1404(a).  (Docket no. 87).  Plaintiffs filed a response arguing the case should remain in the Central District of California. (Docket no. 107).  Defendants Crow, Pruitt, Woods, Grover, Mitchell, Eller, Miller, Juracek, and RCI (collectively, "Responding Defendants") argued in favor of a transfer to Texas.  (Docket no. 109).

After confirming that Plaintiffs reside in Virginia, Defendant Eller resides in California and the remaining Responding Defendants reside in the Western and Northern Districts of Texas, (docket no. 132 at pages 4-5), the California court transferred this case to the Western District of Texas "in the interests of justice and for the convenience of parties and witnesses" pursuant to 28 U.S.C. § 1404(a). (Docket no. 132 at page 9)  Although Austin is the Division with the greatest connection to the events pleaded in the complaint, the California court assigned this action "to the San Antonio Division pursuant to the parties' request."  (*Id.*).  The California court also dismissed as moot without prejudice to refiling in Texas the motions dismiss filed by Defendants Crow, Pruitt, Woods, Grover, Mitchell, RCI, Eller, Miller, and Juracek.  (*Id.*).

After the transfer was complete, Responding Defendants timely re-urged their motions to dismiss.

Plaintiffs responded by filing an amended complaint.  (Docket no. 190).  Therein, Plaintiffs reassert their trafficking and racketeering allegations, and add Aaron Burlingame, "Doe Individuals 1-50" and "Doe Companies 1-50" as named-defendants in this case.  According to the amended complaint, all Defendants engaged in:

> (1) sex trafficking in violation the Victims of Trafficking and Violence Protection Act of 2000 (18 U.S.C. § 1519(a)) by forcing Plaintiffs to engage in commercial sex acts;
>
> (2) labor trafficking in violation of human trafficking law (18 U.S.C. § 1589) by obtaining Plaintiffs' labor services by causing harm to Plaintiffs and making serious threats of harm to Plaintiffs and their children;
>
> (3) racketeering activities under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1962(c)) including the TVPA, the Controlled Substances Act (18 U.S.C. § 801, et seq.), wire fraud (18 U.S.C. § 1343), and witness tampering (18 U.S.C. § 1512); and
>
> (4) a RICO conspiracy "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Defendant Hubbard, Defendant Eller, and the Medical Doctor Defendants and for the sexual gratification and benefits of all other Defendants."

(Docket no. 190 at ¶ 445).

Responding Defendants–Crow (docket no. 196), Pruitt (docket no. 205), Woods (docket no.199), Grover (Docket no. 200), Mitchell (Docket no. 202), RCI (Docket no. 201), Eller (Docket no. 204), Miller (Docket no. 198), and Juracek (docket no. 203)–now move to dismiss Plaintiffs' amended complaint under Rules 8(a) and 12(b)(6). Defendant Eller additionally seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2).

<u>Allegations in the Amended Complaint</u>

Plaintiffs Julia Hubbard and Kayla Goedinghaus accuse more than 100 individuals and businesses–including a billionaire philanthropist named Trammell Crow, Jr., a prominent psychologist named Benjamin Todd Eller, and even a Texas Ranger sergeant named Cody Mitchell–of participating in an alleged human trafficking ring that victimized them over the course of many years.  The following factual background is taken from Plaintiffs' amended complaint.  "This opinion says harsh things about Defendants engaging in sex trafficking."  *See G.G. v. Salesforce.com, Inc.,* 76 F.4th 544, 549 (7th Cir. 2023).  Nonetheless, "[b]ecause of [Defendants'] tactical choice to move to dismiss, we treat the allegations as true, though we do not vouch for their objective truth at this point in the case."  *Id.*

Plaintiffs are Defendant Rick Hubbard's then-wife Julia Hubbard and later-fiancee Kayla Goedinghaus.  (Docket no. 190 at ¶ 2).  Defendant Hubbard allegedly developed the trafficking and racketeering scheme in 2010, (*Id.*).  Plaintiffs contend he operated the "Venture" or " Enterprise" by "making them into threatened, beaten and raped sex slaves," who were deprived of their income and property.  (*Id.*)  Plaintiff  Hubbard alleges that she escaped the Venture in 2018, and Plaintiff Goedinghaus allegedly made her escape in 2020.  (Docket no. 190 at ¶¶ 30, 50, 51).

Plaintiffs contend the key to Defendant Hubbard's control of Plaintiffs–and the essential functioning of the Venture–was psychologist Dr. Benjamin Todd Eller.  (Docket no. 190 at ¶ 7).  At the beginning of the Venture in 2010, allegedly under the direction of Defendant Hubbard, Defendant Eller falsely claimed that Plaintiffs were "seriously psychiatrically troubled" including Xanax, Adderall, Oxycodone, Marinol, Soma, Lorazepam, Clonazepam, Ambien and Trazadone.  (*Id.*)  Plaintiffs allege they both informed Defendant Eller that Defendant Hubbard was fraudulently obtaining drugs in order to force them to commit sex acts, but he ignored their pleas for help.  (Docket no. 190 at ¶¶ 9, 11).

Instead, Defendant Eller reportedly acted on Defendant Hubbard's directions "in return for hundreds of thousands of dollars in payments over the course of years." (Docket no. 190 at ¶ 11).

Although Defendant Eller was unable to write these prescriptions himself as a psychologist, a number of medical doctors allegedly participated in the Venture. (Docket no. 190 at ¶¶ 1, 14). Plaintiffs assert that they informed the medical doctors that they were being forced to engage in sex acts, but none stopped the abuse or assisted them in any way in return for payment from Defendant Hubbard. (Docket no. 190 at ¶ 16). These healthcare providers–including Dr. Melissa Miller and Dr. Scott Woods–are also named as defendants in the amended complaint.

Plaintiffs further allege that Defendant Eller used his credibility as a respected psychologist to give Defendant Hubbard even further control over Plaintiff Hubbard. (Docket no. 190 at ¶ 128). According to the amended complaint, Defendant Eller falsely informed various courts that Plaintiff Hubbard was a danger to herself and her daughter in order to keep her heavily medicated and active in the Venture. (Docket no. 190 at ¶ 129-31).

Plaintiffs contend the key to financing the Venture was Defendant Crow, a philanthropist and prominent member of the Dallas business community. (Docket no. 190 at ¶ 29). Plaintiffs also contend Defendant Crow provided his home in Marble Falls, Texas, so the Venture could use it for the forced sexual activities. (*Id.*).

Plaintiff Hubbard met Defendant Crow when she was working as a waitress at a nightclub in Dallas. (*Id.*) She would take him to her modeling shows and he would invite her to social events at his home. (*Id.*).

According to the amended complaint, Plaintiff Hubbard introduced her new husband, Defendant Hubbard, to Defendant Crow, which was the beginning of the Venture. (Docket no. 190 at ¶ 131).

Defendant Hubbard allegedly ingratiated himself with Defendant Crow and then "convinced Crow to invest in the Venture, which Crow did." (Docket no. 190 at ¶ 33). "In return," Defendant Hubbard allegedly "would traffic [Plaintiffs] to Crow, would supply drugs for Crow's parties, would force Hubbard to have sex with Crow's then-girlfriend in front of Crow (which Rick and Crow both videotaped and was used both for Crow's enjoyment and to threaten Hubbard), would force Goedinghaus to have sex in front of Crow (during the course of one Forced Sex Party over the course of several days), and would traffic other victims of the Venture to Crow at the 'parties' on dozens of occasions over the course of years." (Docket no. 190 at ¶ 33).

Plaintiff Hubbard allegedly told Defendant Crow that Defendant Hubbard "was forcing her to perform sex acts and forcing her to take drugs to induce such acts." (Docket no. 190 at ¶ 35). However, Defendant Crow purportedly had "grown to enjoy" Defendant Hubbard's services and took no action to either help Plaintiff Hubbard or stop doing business with Defendant Hubbard and the Venture. (Docket no. 190 at ¶ 36). Plaintiffs allege that "[i]n addition to the direct financial benefit" to Defendant Crow, Defendants Hubbard and Crow "benefitted from working together to get others to join the Venture as co-investors and clients." (Docket no. 190 at ¶ 37).

Among these alleged co-investors was Defendant Coe Juracek, named as a senior managing director of Crow Holdings Capital. The amended complaint asserts that Defendant Juracek was "well compensated as an employee of Defendant Crow, in part to maintain his silence regarding what he knew about Crow's Forced Sex Parties." (Docket no. 190 at page 9).

Another alleged co-investor was Defendant Robert Pruitt, named as the president of a data center equipment and support company. The amended complaint asserts that Defendant Pruitt supported the Venture by employing Defendant Hubbard and paying his utility bills, and that Defendant Hubbard

forced Plaintiff Hubbard "to provide naked photographs of herself to Pruitt and to perform sex acts with Pruitt." (Docket no. 190 at page 8).

Plaintiffs also maintain that Defendant Hubbard employed the services of Defendant Texas Ranger Cody Mitchell to threaten them with "arrest under false charges" and discourage them from seeking the help of law enforcement. (Docket no. 190 at ¶ 19). Defendant Mitchell allegedly sent Defendant Hubbard a sexually explicit photograph of himself in his police cruiser with a bottle of alcohol, which was allegedly shown to Plaintiffs as a "threat that no one in law enforcement would believe her" if she reported the abuse. (Docket no. 190 at ¶¶ 20-23).

Plaintiffs also name Defendants Case Grover and RCI as two of the "Labor Trafficking Defendants" in this case. Defendant Grover was a manager at Silver City Cabaret, a gentleman's club in Dallas, Texas, that is owned by Defendant RCI. (Docket no. 190 at ¶ 43). Plaintiff Hubbard alleges Defendant Grover forced her to work at the cabaret and confiscated a portion of her wages for his personal benefit with the knowledge of RCI. (Docket no. 190 at ¶ 44).

Plaintiff Hubbard further asserts that Defendant Grover forced her to work through physical abuse and threats. (Docket no. 190 at ¶ 45). She alleges he beat her so hard she suffered multiple broken ribs, brought an AK-47 to her home and fired repeatedly, and intentionally crashed and totaled her car so that she was dependent on him for transportation. (*Id.*) And, Plaintiff Hubbard alleges Defendant "Grover was also in regular contact with Defendant Hubbard, exchanging information concerning [Plaintiff] Hubbard for their mutual benefit and the advancement of the Venture." (Docket no. 190 at ¶ 46).

Plaintiff Hubbard states that she "eventually escaped the Venture in November 2018." (Docket no. 190 at ¶ 50). According to the amended complaint, "in March or April 2018," Plaintiff Hubbard's

"home was repossessed due to her heavily strained financial situation caused by acts of the Venture." (Docket no. 190 at ¶ 266).  She then went to live with Defendant Hynes, an alleged associate of the Enterprise, whose behavior was violent and erratic.  (*Id.*)  "In late October or early November 2018," Defendant Hynes purportedly "tied Plaintiff Hubbard to a bed and kept her restrained, releasing her only to use the restroom."  (Docket no. 190 at ¶ 278).

After three days of captivity, Plaintiff Hubbard alleges "she was able to attract the attention of a construction worker who brought her a phone," which allowed her to call for help.  (Docket no. 190 at ¶ 280).  "Plaintiff Goedinghaus, meanwhile, [alleges she] escaped from the Venture in January 2020." (Docket no. 190 at ¶ 51).  Plaintiffs filed suit on November 1, 2022.  (Docket no. 1).

Legal Standards

Notice Requirements Under Rule 8(a) of the Federal Rules of Civil Procedure

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a), sufficient to provide the defendant "fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted).  For example, a complaint is insufficient where it is devoid of "names, dates, locations, times, or any facts that would put [defendant] on notice as to what conduct supports . . . his claims." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 165 (5th Cir. 1999).

Dismissal for Lack of Personal Jurisdiction Under Federal Rule of Civil Procedure 12(b)(2)

A motion pursuant to Rule 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. *See* FED. R. CIV. P. 12(b)(2). "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv*

*N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Laplan*, 686 F.2d 276, 280 (5th Cir. 1982)).  "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (quoting *D.J. Inv. Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)).

<u>Dismissal for Failure to State a Claim Upon Which Relief can be Granted Under Rule 12(b)(6)</u>

"A motion to dismiss for failure to state a claim concerns the formal sufficiency of the statement of the claim for relief, not a lawsuit's merits." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (internal citation and quotations omitted). Therefore, in reviewing a Rule 12(b)(6) motion to dismiss, the Court must "assume that the facts the complaint alleges are true and view those facts in the light most favorable to the plaintiff." *Id*. The complaint survives if it contains sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although this framework is one-sided, the issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims." *Sewell*, 974 F.3d at 582 (citations omitted).

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). "When a defendant attaches documents to its motion that are referred to in the complaint and are central

to the plaintiff's claims, the Court may also properly consider those documents." *Id*. But because the Court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). A motion to dismiss under 12(b)(6) "is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

<u>Defendants' Motions to Dismiss</u>

<u>Personal Jurisdiction Over Defendant Eller</u>

Defendant Eller, who resides in Los Angeles, California, where this litigation was originally filed, is the only defendant who moves to dismiss for lack of personal jurisdiction.  He also joined in the Responding Defendants' request to the California court that this case be transferred to Texas and filed a separate declaration in support thereof.   (Docket no. 93 & 108-2).

Defendant Eller also submitted a declaration n affidavit in support of his pending motion to dismiss for lack of personal jurisdiction.  (Docket no. 204-2).  When considering a 12(b)(2) motion to dismiss for lack of jurisdiction, the "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).  Accordingly, any factual conflict created by the affidavit must be resolved in favor of Plaintiffs.  *Id.*

A court properly exercises specific personal jurisdiction over a defendant who has "minimum contacts" with the forum state when:  (1) defendant purposely directed his activities toward the forum state, (2) the cause of action arises out of defendant's forum-related contacts, and (3) the exercise of personal jurisdiction is fair and reasonable. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th

Cir. 2019); *see also International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (recognizing due process necessity of minimum contacts with the forum state).

Plaintiffs allege Defendant Eller had many telephone conversations over the course of years with Defendant Hubbard, Plaintiff Hubbard, and Plaintiff Goedinghaus, who were in Texas. (Docket no. 190 at ¶¶ 7–16, 115–136). Plaintiffs further allege that, for this work—which purportedly allowed the Venture to exist—Defendant Eller allegedly received "hundreds of thousands of dollars" of financial payments from Defendant Hubbard in Texas. (Docket no. 190 at ¶ 125).

Aggregating these separate contacts with Texas, personal jurisdiction over Defendant Eller comports with the due process requirement of minimum contacts. According to the amended complaint, Defendant Eller purposely directed his activities toward Texas and their causes of action arise out of Defendant Eller's Texas-related contacts.

Personal jurisdiction over Defendant Eller is both fair and reasonable in this case. Defendant Eller allegedly made it possible for an excessive amount of addictive drugs to be directly prescribed to Plaintiffs in Texas and the alleged trafficking and organized crime violations took place in whole in Texas.

Even if Defendant Eller's declaration were permissible for consideration, nothing contradicts Plaintiffs' allegations that Defendant Eller had numerous phone discussions with Defendant Hubbard–which Plaintiffs overheard on Defendant Hubbard's end–in which Defendants Eller and Hubbard discussed the details of the Venture. *Compare* (docket no. 190 at ¶ 336) *with* (docket no. 204-2 at Eller Decl). And, Defendant Eller never denied that he knew the relevant parties with whom he was speaking were all in Texas. *See* (Docket no. 204-2).

Where, as here, Plaintiffs have presented a colorable RICO claim, they may take advantage of the nationwide personal jurisdiction and venue provisions in 18 U.S.C. § 1965. *Fernandez-Lopez v. Hernandez*, Civil Action No. DR-19-CV-46-AM, 2020 WL 9396487, at *12 (W.D. Tex. Nov. 20, 2020) (collecting cases). However, the RICO statute further provides that the "ends of justice" must be served when requiring that a party residing in another district be brought before the Court. 18 U.S.C. § 1965(b).

The exercise of personal jurisdiction over Defendant Eller serves the ends of justice. Defendant Eller not only joined the other Responding Defendants' request that this case be transferred from California to Texas, he also submitted an additional statement and affidavit in further support of transfer out of California. *See* (Docket nos. 93 & 108-2). The apparent alternatives–allowing Defendant Eller to avoid resolution on the merits in any venue, having a separate suit for Defendant Eller alone in California or transferring this case to a multidistrict litigation panel–would waste of judicial resources, particularly given the Defendant Eller's extensive contacts with Texas. *See* (Eller Decl., docket no. 108-2) (setting forth additional contacts with Texas outside of Plaintiffs' amended complaint). Defendant Eller is properly subject to the jurisdiction of this Court.

## Dismissal Under Rule 8(a)

Responding Defendants argue Plaintiffs' amended complaint must be dismissed because it fails to comply with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). For example, citing *Stanard v. Nygren*, 658 F.3d 792, 799-800 (7th Cir. 2011), Defendant Crow contends the amended complaint "does not provide proper notice to Defendant Crow (or any other Defendant) what alleged conduct by each of them purportedly supports a cause of action against them, or under which theory." (Docket no. 196 at page

18).  The court in *Stanard* affirmed dismissal of an "unintelligible" complaint that "fail[ed] to put defendants on notice."  658 F.3d at 798-99.  Here, the amended complaint provides fair notice of the nature of the claims and grounds on which the claims rest, and is not so unclear that it warrants dismissal.  Accordingly, Plaintiffs have complied with the requirements of Rule 8(a).

### Dismissal Under Rule 12(b)(6)

For each of Plaintiffs' claims, the Court considers whether the amended complaint alleges sufficient facts to state a claim for relief that is plausible on its face.

### Sex and Labor Trafficking Claims

The Trafficking Victim's Protection Reauthorization Act ("TVPA") prohibits various forms of human trafficking, including involuntary servitude, forced labor and sex trafficking.  18 U.S.C. §§ 1581-92. Section 1591 of the TVPA imposes criminal liability for human trafficking, while § 1595(a) provides the following civil remedy:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person know or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).  Plaintiffs contend each Responding Defendant violated at least one of the sex trafficking and/or forced labor provisions of the TVPA.

### Sex Trafficking

With regard to sex trafficking, Plaintiffs allege Defendants Crow and Eller violated § 1591(a)(1) of the TVPA, which applies to direct violators, and all moving Defendants violated § 1591(a)(2), which applies to participants. Section 1591(a) of the TVPA provides, in relevant part:

13

Whoever knowingly –

> (1) . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing . . . or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion. . . or any combination of such means will be used to cause the person to engage in a commercial sex act, . . . shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).  The statute defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." *Id*. at § 1591(e)(3).  Defendants argue Plaintiffs have failed to allege sufficient facts to show a violation of § 1591.

<u>Section 1591(a)(1)–Defendants Crow & Eller</u>

Plaintiffs allege Defendant Crow is directly liable under § 1591(a)(1) because "he enticed, harbored, provided, obtained, maintained, patronized and solicited each Plaintiff . . . knowing or in reckless disregard of the fact that force, threats of force, or coercion would be used to cause each Plaintiff into engaging in a commercial sex act."  (Docket no. 190 at ¶¶ 317, 325). According to the amended complaint, [t]he key financial supporter of the enterprise was Defendant Crow" and he allegedly "involved from the very start of the Venture in 2010, knew full well all the details of the force, fraud, threat, and coercion that Defendant Hubbard used (in substantial part due to his past relationship with Plaintiff Hubbard), and without him the Venture never could have succeeded, or indeed, even gotten started."  (Docket no. 190 at ¶ ¶ 29 &30).

With regard to § 1591(a)(1), Defendant Crow purportedly:

\*      "enticed each Plaintiff by luring them to continue to be involved with the Venture,"

\*      "harbored each Plaintiff by giving them shelter at his home,"

\*      "provided each Plaintiff by arranging for them to be available to others at his home during Forced Sex Parties,"

\*      "obtained each Plaintiff by arranging for them to be available for Defendant Crow himself at his home during Forced Sex Parties,"

\*      "maintained each Plaintiff by providing financial support through means including but not limited to giving them drugs and access to Defendant Crow's inner circle,"

\*      "patronized each Plaintiff by paying them to perform sex acts for himself or others," and

\*      "solicited each Plaintiff by causing each Plaintiff to perform sex acts for himself or others."

(Docket no. 190 at ¶¶ 318-24).

Plaintiffs further allege Defendant Crow performed these acts–enticing, harboring, providing, obtaining, maintaining, patronizing, and soliciting–knowing or in reckless regard of the fact that force, threats of force, or coercion would be used to cause Plaintiffs to engage in commercial sex acts. (Docket no. 190 at ¶ 325).  Specifically, Plaintiffs contend:

> Defendant Crow knew, or recklessly disregarded, that Plaintiffs would be forced to engage in commercial sex acts because as early as 2011, Plaintiff Hubbard informed Crow that she was being forced by the Venture to engage in commercial sex acts against her will.

> Plaintiff Goedinghaus also informed Defendant Crow that the Venture was forcing her to engage in commercial sex acts against her will.

(Docket no. 190 at ¶ 327).  Plaintiffs have alleged sufficient facts against Defendant Crow to state a claim for a direct violation of § 1591(a)(1).

Plaintiffs allege Defendant Eller is directly liable under § 1591(a)(1) because he "maintained the Plaintiffs" by "agreeing to start the Venture and helping Defendant Hubbard put Plaintiffs under the Venture's control" and misusing the "court process by asserting that Plaintiffs needed drugs that made them pliable [in order] to continue the Venture's work." (Docket no. 190 at ¶ 332-35).  Defendant Eller allegedly "knew, or recklessly disregarded, that Plaintiffs would be forced in engage in commercial sex acts through his numerous communications with Defendant Hubbard (including numerous calls which Plaintiffs heard in which Defendant Hubbard described the Venture, including that it was forcing Plaintiffs to engage in commercial sex acts), and because both Plaintiffs told Defendant Eller that his work was being used to force them to engage in commercial sex." (Docket no. 190 at ¶ 336).  Plaintiffs have stated a plausible claim against Defendant Eller for a direct violation of § 1591(a)(1).

<u>Section 1591(a)(2)–Defendants Crow, Eller, Miller, Woods, Juracek, Pruitt & Mitchell</u>

Plaintiffs allege Defendants Crow, Eller, Miller, Woods, Juracek, Pruitt and Mitchell violated § 1591(a)(2) because they benefitted financially or by receiving value from their participation in the Venture and did so "knowing or in reckless disregard of the fact that Defendant Hubbard and other members of the Venture would use means of force, threats of force, fraud and coercion to cause Plaintiffs . . . to engage in commercial sex acts." (Docket no. 190 at ¶¶ 328, 337, 342, 352, 368, 383, 403, 423).  "To state a financial beneficiary claim against Defendants, Plaintiffs must allege facts from which it can be reasonably inferred that they (1) knowingly benefitted financially or be receiving anything of value, (2) from participating in a venture, they (3) knew or should have known has engaged in sex trafficking under § 1591." *Harris v. Henry*, Case No. 1:22-cv-00366-LY, 2022 WL 16825200, at *6 (W.D. Tex. Nov. 7, 2022) (internal quotation omitted).

Plaintiff allege Defendant "Crow provided assistance, support and facilitation to the Venture through financial aid and providing a forum for the Forced Sex Parties." (Docket no. 190 at ¶ 329). Specifically, Defendant Crow purportedly "provided tens of thousands of dollars of payments to Defendant Hubbard and the Venture, including under the pretext of paying for "family lawyers" or business investments." (*Id.*). According to the amended complaint, Defendant Crow "received multiple things of value from the Venture, including in the form of sex acts [by Plaintiffs for himself] and the social benefits and esteem of the Venture providing sex acts [by Plaintiffs] to guests at his parties." (Docket no. 190 at ¶ 330). Defendant Crow allegedly knew or should have known of the trafficking acts because he was informed of them by Defendant Hubbard and each Plaintiffs. (Docket no. 190 at ¶ 326).

Plaintiffs contend Defendant Eller "provided assistance, support, and facilitation to the Venture through providing recommendations to Defendant Hubbard, which Defendant Hubbard passed on to the Medical Doctor Defendants, which allowed the Venture to far more easily obtain controlled substances from the Medical Doctor Defendants, and threats including Plaintiffs' loss of custody of their children. (Docket no. 190 at ¶ 338). Defendant Eller allegedly "received things of value from the Venture in the form of thousands of dollars of payments" and "knew or should have known of the trafficking acts because he was informed of them by Defendant Hubbard and each Plaintiff." (Docket no. 190 at ¶¶ 339-40).

With regard to Defendant Miller, Plaintiffs allege she is liable under § 1591(a)(2) because she "provided assistance, support, and facilitation to the Venture by prescribing controlled substances to Plaintiff Goedinghaus that allowed the Venture to force Plaintiff Goedinghaus to perform commercial sex acts against her will." (Docket no. 190 at ¶ 343). Plaintiffs further contend Defendant Miller

17

"received things of value from the Venture, including payment from Defendant Hubbard on behalf of the Venture for Plaintiff Goedinghaus's visits to Defendant Miller."  (Docket no. 190 at ¶ 344).  And, Defendant Miller allegedly "knew or should have known of the trafficking acts, including because Plaintiff Goedinghaus informed Defendant Miller on or about summer 2019 that Defendant Hubbard and the Venture were, with the assistance of the drugs that Defendant Miller prescribed, forcing Plaintiff Goedinghaus to engage in commercial sex against her will."  (Docket no. 190 at ¶ 345).

According to the amended complaint, Defendant Woods is liable to both Plaintiffs under TVPA beneficiary liability because he benefitted, financially or by receiving anything of value, by participating in the Venture.  Defendant Woods allegedly "provided assistance, support and facilitation to the Venture, including by prescribing controlled substances to Plaintiff Hubbard that allowed the Venture to force Plaintiff Hubbard to perform commercial sex acts against her will."  (Docket no. 190 at ¶ 353). Plaintiffs contend Defendant Woods "received things of value from the Venture, including payment from Defendant Hubbard on behalf of the Venture for Plaintiff Hubbard's visits to Defendant Woods, for which Defendant Hubbard paid $100 per visit."  (Docket no. 190 at ¶ 354).  Plaintiffs further contend Defendant "Woods knew or should have known of the trafficking acts, including because, in 2017, Plaintiff Hubbard informed Defendant Woods that Defendant Hubbard and the Venture were, through the use of the drugs that Defendant Woods prescribed as well as other methods including beatings, forcing Defendant Hubbard to engage in commercial sex against her will."  (Docket no. 190 at ¶ 356).  On one occasion, Defendant Hynes allegedly "went to an appointment with Plaintiff Hubbard to see Defendant Woods" and "[a]t the appointment he tried to get Plaintiff Hubbard prescriptions for more drugs, including methamphetamines."  (*Id.*).

Plaintiffs allege Defendant Juracek is liable to both Plaintiffs under TVPA beneficiary liability because he benefitted, financially or by receiving anything of value, by participating in the Venture. Defendant Juracek allegedly "provided assistance, support and facilitation to the Venture, including by providing financial support and social cachet to the Venture." (Docket no. 190 at ¶ 369).  With the alleged assistance of Defendant Hubbard, Defendant Juracek purportedly "provided funds under the pretext of investing or doing business with Defendant Hubbard in order to attempt to provide plausible deniability of Defendant Juracek's financial support of the Venture." (Docket no. 190 at ¶ 369). Plaintiffs contend Defendant "Juracek received things of value from the Venture, including by attending the Forced Sex Parties, according to Defendant Hubbard, where Defendant Juracek observed Plaintiffs being forced to engage in commercial sex acts against their will and receiving naked photos of Plaintiff Hubbard." (Docket no. 190 at ¶370).  Accordingly, Defendant Juracek allegedly "knew or should have known of the trafficking acts, including that Plaintiff Hubbard that she was being forced to engage in sex acts against her will." (Docket no. 190 at ¶ 371).

Plaintiffs allege Defendant Pruitt is liable to both Plaintiffs under TVPA beneficiary liability because he benefitted, financially or by receiving anything of value, by participating in the Venture. According to the amended complaint, Defendant "Pruitt provided assistance, support and facilitation to the Venture, including by providing financial support to the Venture, including under the pretext of employing Defendant Hubbard and paying Defendant Hubbard's utility bills." (Docket no. 190 at ¶ 404).  Defendant Pruitt allegedly "received things of value from the Venture, including the Venture forcing Plaintiff Hubbard to perform sex acts with him and by providing naked photographs of Plaintiff Hubbard to Defendant Pruitt." (Docket no. 190 at ¶ 405).  Plaintiffs further contend Defendant "Pruitt

knew or should have known of the trafficking acts, including because he was told by Plaintiff Hubbard that she was being forced to engage in sex acts against her will." (Docket no. 190 at ¶ 406).

Finally, Plaintiffs contend Defendant Mitchell "provided assistance, support and facilitation to the Venture, including by providing intimidation and threats through which Rick Hubbard and the Venture were able to force both Plaintiffs into performing commercial sex acts against their will." (Docket no. 190 at ¶ 384). This intimidation allegedly included providing Defendant Hubbard with a sexually explicit photograph and introducing Defendant Hubbard "to the Adult Friend Finder website, through which the Venture would locate other women for its Forced Sex Parties." (Docket no. 190 at ¶ 385). Plaintiffs contend Defendant Mitchell "received things of value from the Venture, including by the receipt of naked photos of Plaintiff Hubbard" and he "knew or should have known of the trafficking acts, including because–based on numerous phone calls between Defendant Hubbard and Defendant Mitchell that Plaintiff Hubbard and Plaintiff Goedinghaus each overheard—Defendant Hubbard had informed Mitchell of all aspects of the Venture, including the fact that the Venture was using Defendant Mitchell's influence in and threats in order to force Plaintiffs into engaging in commercial sex acts against their will." (Docket no. 190 at ¶ 386). Plaintiffs have stated plausible claims that Defendants Crow, Eller, Miller, Woods, Juracek, Pruitt and Mitchell violated § 1591(a)(2).

<u>Labor Trafficking</u>

With regard to labor trafficking, Plaintiffs allege Defendants Crow, Eller and Grover violated § 1589(a) of the TVPA, which applies to direct violators, and Defendants Crow, Eller, Grover, Miller, Woods, Juracek, Mitchell, RCI and Pruitt violated § 1589(b), which applies to participants. Section 1589(a) provides:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or restraint,

shall be punished as provided under subsection (d).

18 U.S.C. § 1589(a).  Therefore, to state a claim under § 1589(a), a plaintiff must adequately plead that the defendant (1) provided or obtained the labor or services of plaintiff (2) "by means of" one of the enumerated means, and (3) did so "knowingly." *Id.*  see also *United States v. Toure*, 965 F.3d 393, 400 (5th Cir. 2020).

Section 1589(b) of the forced labor provision provides:

Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

18 U.S.C. § 1589(b).  Thus, to state a claim under § 1589(b), a plaintiff must adequately plead that the defendant knowingly benefitted from participation in a forced labor or forced services venture.  *Id.*

The difference appears to be that § 1589(a) creates liability for the party that provides or obtains the forced labor or services, while § 1589(b) creates liability for the party that knowingly participates in the forced labor venture.  *See id.*; *see also United States v. Calimlim*, 538 F.3d 706, 711 (7th Cir.

21

2008) ("Taken as a whole, the statute provides ample notice that it prohibits intentionally creating the belief that serious harm is possible, either at the defendant's hands or those of others.").

### Section 1589(a)–Defendants Crow, Eller and Grover

For the reasons discussed in the sex trafficking section of this order, the amended complaint alleges that Defendants Crow, Eller and Grover knowingly provided and obtained the labor, particularly sexual services, of Plaintiffs by means of force, threats of force and/or coercion to Plaintiffs, by a scheme, plan and pattern intended to cause Plaintiffs to believe that, if they did not provide the sexual services, they would suffer serious harm.  Accordingly, Plaintiffs have stated a claim for direct liability against Defendants Crow, Eller and Grover under § 1589(a).

### Section 1589(b)–Defendants Crow, Eller, Grover, Miller, Woods, Juracek, Mitchell, RCI and Pruitt

The amended complaint also alleges that Defendants Crow, Eller, Grover, Miller, Woods, Juracek, Mitchell, RCI and Pruitt knowingly participated in or disregarded the fact that Defendants were obtaining forced labor services from Plaintiffs.  Therefore, Plaintiffs have alleged a plausible claim under 18 U.S.C. § 1589(b) against these Responding Defendants.  For these reasons, Plaintiff's sex and labor trafficking claims survive Responding Defendants' motions to dismiss.

### Rico Claims

The RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).  "Any person injured in his business or property by reason of a violation of section 1962" may bring a civil suit for treble damages. *Id*. § 1964(c).  Defendants

argue Plaintiffs lack standing, have failed to sufficiently assert a RICO claim, and Plaintiff Hubbard's RICO claim is barred by limitations.

Standing to Assert a RICO Claim

Article III and statutory standing are analyzed separately. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998). To the extent Defendants contend Plaintiffs cannot plausibly allege a valid or viable RICO claim, the Court will analyze such arguments under Rule 12(b)(6), not Rule 12(b)(1). These alleged pleading defects are not "questions of subject-matter jurisdiction—*i.e.*, the power of the Court to hear the case—Rule 12(b)(1) is not the proper vehicle for Defendants' challenge." *Meier v. UHS of Del., Inc.*, No. 4:18-CV-00615, 2019 WL 6465314, at *5 (E.D. Tex. Dec. 2, 2019). "Although statutory standing involves an inquiry into the alleged injury, it is not synonymous with Article III standing." *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 339 (5th Cir. 2021). The Fifth Circuit has also noted that the use of the phrase "RICO Act standing" should be avoided because subject-matter jurisdiction is not implicated. *Gil Ramirez Grp., LLC v. Houston. Indep. Sch. Dist.*, 786 F.3d 400, 409 n.8 (5th Cir. 2015) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)). Because it is clear Plaintiffs have established Article III standing, the Court will analyze Defendants' challenge under Rule 12(b)(6).

To have statutory standing under RICO, a plaintiff must plausibly allege a "concrete financial loss" to business or property and show that the RICO violation was both the "proximate and but-for" causation of the alleged harm. *See Holmes v. Securities Inv. Prot. Corp.*, 503 U.S. 258, 266, 268 (1992); *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 344 (5th Cir. 2021). When evaluating proximate cause, the Court inquires whether the alleged violation led directly to the plaintiff's injuries. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

23

Plaintiffs assert their RICO "damages include, but are not limited to, moneys that Plaintiff Hubbard and Plaintiff Goedinghaus earned for providing companionship, including at Forced Sex Parties, and moneys that Plaintiff Hubbard earned work at Silver City Cabaret." (Docket no. 190 at ¶ 416). Plaintiff Hubbard additionally contends her "home was repossessed due to her heavily strained financial situation caused by acts of the Enterprise." (Docket no. 190 at ¶ 266). The Court finds Plaintiffs have sufficiently stated claims that their alleged harm qualifies as a concrete financial loss to their business of providing companionship (and Plaintiff Hubbard to her property), and that the alleged RICO violations were both the proximate and but-for cause of the alleged harm. Accordingly, Plaintiffs have standing to pursue their RICO claim.

Association-in-Fact Enterprise

A plaintiff "must allege the existence of an enterprise" to maintain a RICO claim. *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987). RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Thus, "[a] RICO enterprise can be either a legal entity or an association-in-fact." *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988).

Plaintiffs allege "Defendants came together to form an association-in-fact Enterprise." (Docket no. 190 at ¶ 433). An association-in-fact enterprise has a common purpose, a structure or organization, and the longevity necessary to accomplish the purpose. *McPeters v. Edwards*, 806 F. Supp. 2d 978, 988 (S.D. Tex. 2011). To survive Defendants' 12(b)(6) motions, Plaintiffs must allege Defendants had common purpose, relationships among those associated with the enterprise and "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*

24

Plaintiffs' amended complaint that the Defendants formed an association-in-fact enterprise satisfies the pleading requirements.  The amended complaint states that the purpose of the Enterprise was "to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Mr. Hubbard, Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants." (Docket no. 190 at ¶ 445).  Although Defendants are alleged to furthered the purpose of the Enterprise in distinct ways, Plaintiffs have sufficiently stated a claim that Defendants came together for the common purpose of enriching themselves by way of the alleged sex trafficking scheme. *Boyle v. United States*, 556 U.S. 938, 950 (2009).  There were also relationships among those associated with the alleged Enterprise.  The amended complaint describes how Defendants collaborated regarding the scheme and were connected through their common dealings with Defendant Hubbard.  *Id.* (noting that relationships among those associated with enterprise-in-fact need not involve "a hierarchical structure or chain of command").  The amended complaint also alleges that the association-in-fact's operation was continuous through the time frame alleged satisfies the longevity requirement. Accordingly, Plaintiffs have stated a claim that alleges a RICO enterprise.

Pattern of Racketeering Activity

"A pattern of racketeering activity consists of two or more predicate acts that are (1) related and (2) amount to or pose a threat of continued criminal activity."  *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 524 (5th Cir. 2016).  According to the amended complaint, "the misconduct and crimes of the Defendants were so egregious that the Venture became an illegal racketeering Enterprise, whereby the Defendants conspired together to commit various unlawful predicate acts, including coercion, human trafficking, dealing in controlled substances, and wire fraud."  (Docket no. 190 at ¶ 6).

Plaintiffs have satisfied the "related" requirement because they have alleged at least two predicate acts against each Defendant of sex trafficking and/or forced labor violations with the "same or similar purposes, results, participants, victims, or methods of commission" and/or "that are otherwise interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989). Plaintiffs have also satisfied the "continuity" requirement because they have alleged a series of related TVPA violations "extending over a substantial period of time," *i.e.*, closed-ended continuity, and/or "past conduct that by its nature projects into the future with a threat of repetition," *i.e.*, open-ended continuity. *Id*. at 241-242. Accordingly, Plaintiffs have sufficiently pleaded a pattern of racketeering activity. In sum, Plaintiffs' RICO claims survive Defendants' motions to dismiss.

<u>Limitations</u>

Civil RICO actions are subject to a four-year statute of limitations, *Agency Holding Corp. v. Malley–Duff & Assocs.,* 483 U.S. 143, 156 (1987), under which the limitations period runs from the date "when a plaintiff knew or should have known of his injury." *Rotella v.* Wood, 528 U.S. 549, 553-54 (2000). Plaintiff "Hubbard [alleges she] eventually escaped the Venture in November 2018." (Docket no. 190 at ¶ 50). To this end, Plaintiff Hubbard contends that "in late October or early November of 2018, Defendant Hynes, who was allegedly a person associated with the Enterprise, "tied [her] to a bed and kept her restrained for three days, releasing her only to use the restroom," having "previously at Defendant Hubbard's direction, confiscated Plaintiff Hubbard's driver's license, phone, and credit cards." (Docket no. 190 at 271, 278). Viewing these facts in the light most favorable to Plaintiff Hubbard, she has plausibly stated a claim that this prevented her from holding employment (which constitutes an alleged RICO injury) within the applicable limitations period.

Conspiracy to Commit RICO Violations

To adequately plead a RICO conspiracy claim, a plaintiff must sufficiently state that Defendants adopted the goal of furthering or facilitating the Enterprise. *See Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir. 2002); *see also Howard v. America Online*, 208 F.3d 741, 751 (9th Cir. 2001). Here, Plaintiffs have adequately pleaded that Defendants were aware of the essential nature and scope of the Enterprise and intended to participate in it. Accordingly, Plaintiffs have plausibly stated a claim for conspiracy to commit RICO violations.

Health Care Liability Claims: Defendant Miller and Woods

Defendants Miller and Woods, contend Plaintiffs' TVPA and RICO claims are recast health care liability claims under Texas law which must be dismissed.[1] *See* Tex. Civ. Prac. & Rem. Code § 74.001, *et seq.* "It is well settled that a health care liability claim cannot be recast as another cause of action to avoid the requirements of Chapter 74." *North Am. Specialty Ins. Co. v. Royal Surplus Lines Co.*, 541 F.3d 522, 561 (5th Cir.2008 *Id.* (citing *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex.2005)).

"Whether a cause of action falls within the definition of a 'health care liability claim' turns on the underlying nature of the claim plead." *Pena ex rel. De Los Santos v. Mariner Health Care Inc.*, Civil No. CC-09-62, 2010 WL 2671571, at *2 (S.D. Tex. July 1, 2010) (citing *Garland Community Hosp. v. Rose*, 156 S.W.3d 541, 543–44 (Tex.2004)). "The outcome on this point requires that the Court analyze the underlying nature of the [TVPA and] RICO claims, as compared to the facts

---

[1] A "health care liability claim" is defined as "[a] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departer from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." *Id.* at § 74.001(13).

underlying the medical negligence claim" through the allegations in the complaint.  *See Creel v. Dr. Says, LLC,* No. 4:18-CV-00615, 2022 WL 991568, at *14 (E.D. Tex. Mar. 31, 2022).

The underlying nature of Plaintiffs' TVPA and RICO claims in this case is that Defendants entered into a scheme "for purposes of sexual acts and forced labor, to the financial benefit of Defendant Hubbard, Defendant Eller and the Medical Doctor Defendants, and for the sexual gratification and benefits of all other Defendants." (Docket no. 190 at ¶ 445).  Though Plaintiffs allegedly "suffered physical harm that resulted from tortious conduct, the facts underlying the overall scheme purportedly involved far more than [Plaintiffs'] treatment and care."  *Creel,* 2022 WL 991568, at *15.  It allegedly involved sex trafficking, forced labor trafficking and predicate offenses of RICO violations, and this activity allegedly caused injury to Plaintiffs' business and/or property.

"If the act or omission alleged in the complaint is an inseparable part of the rendition of health care services, then the claim is a health care liability claim."  *Pena ex rel. De Los Santos*, 2020 WL 2671571, at *2 (citing *North Am. Specialty Ins. Co.*, 541 F.3d at 561).  Here, the acts related to Plaintiffs' claims are not an inseparable part of the rendition of healthcare services.  "For example, some Defendants could have committed medical negligence against [Plaintiffs] subject to health care liability claims without ever engaging in [trafficking or] racketeering."  *Creel*, 2022 WL 991568, at *15. Defendants Miller and Woods "could have failed to meet the standards of ordinary care in their treatment of [Plaintiffs] without the deliberate assistance of the other Defendants engaged in the common scheme. *Id.* (explaining that medical doctor could have committed medical negligence without deliberate assistance of "elaborate web of entities and doctors engaged in common scheme" to defraud insurance companies).  Coercion, human trafficking, unlawful dealing in controlled substances and wire fraud are not necessary actions for providing healthcare services. *See id.* ("Falsifying records,

misrepresenting patient symptoms, and detaining patients without reason or explanation for the detention are not necessary actions for providing health care services."). Therefore, the Court finds that Plaintiffs' TVPA and RICO claims were not improperly recast medical negligence claims.

<u>Immunity from Suit–Defendant Mitchell</u>

Plaintiffs bring this suit against Defendant Mitchell in his individual capacity as a Texas Ranger sergeant. (Docket no. 218) (explaining that Plaintiffs are not bringing suit against Defendant Mitchell his official capacity). Defendant Mitchell contends he is entitled to qualified immunity because Plaintiffs have failed to state TVPA or RICO claims against him. This argument fails because the Court has found that Plaintiffs have stated trafficking and racketeering claims against Defendant Mitchell.

Defendant Mitchell also argues he cannot be liable because Plaintiffs fail to allege that he was aware that Defendant Hubbard was using him to threaten Plaintiffs with false prosecution in order to assist the Venture. This argument fails because it is predicated on an interpretation of the amended complaint that is not in the light most favorable to Plaintiffs. The amended complaint specifically alleges that Defendant Hubbard "informed Defendant Mitchell in detail of the operations of the Venture" and Defendant Hubbard's "threats of legal process were assisted by Defendant Mitchell." (Docket no. 190 at ¶¶ 18, 20 ). Although jurors may not agree with Plaintiffs that Defendant "Mitchell considered himself above the law and would do what he needed to do to protect [Defendant Hubbard] and the Venture," (docket no. 190 at ¶ 22), there remains a genuine issue of fact for trial.

Finally, as Defendant Mitchell notes, "[q]ualified immunity protects government officials in their individual capacity while performing discretionary functions . . . ." (Docket no. 202) at page 24) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Indeed, the Fifth Circuit has specifically determined that law enforcement officers may be entitled to qualified immunity in a suit involving

trafficking and racketeering allegations arising out of the performance of their official duties. *See Brown v. Nationsbank Corp.*, 188 F.3d 579, 589 (5th Cir. 1999) (evaluating officers' conduct during official "sting operation" designed to uncover contract procurement fraud and other illegal activity committed in aerospace community to determine whether qualified immunity applied to bar Plaintiff's RICO suit against law enforcement officers).

Here, Plaintiffs allege Defendant Hubbard "shared with Plaintiff Hubbard a photograph that Defendant Mitchell had taken in his police cruiser and sent to Defendant Hubbard" for the express purpose of intimidating Plaintiffs. (Docket no. 190 at ¶ 21). In the photo, Defendant Mitchell is allegedly exposing himself, with his police badge and gun visible, while holding an open bottle of whiskey. (*Id.*). The issue of why Defendant Hubbard showed the picture to Plaintiff Hubbard aside, it cannot seriously be argued that Defendant Mitchell posed for or shared the photograph as part of his official duties as a Texas Ranger. For these reasons, Defendant Mitchell is not entitled to qualified immunity.

IT IS THEREFORE ORDERED that the Motion(s) to Dismiss filed by Defendants Trammell S. Crow, Jr.; Robert Pruitt; Michael Scott Woods; Casey Grover; Cody Mitchell; RCI Hospitality Holdings, Inc.; Benjamin Todd Eller; Melissa B. Miller; and Coe Juracek (docket nos. 196, 198, 199, 200, 201, 202, 203, 204, 205) are DENIED.

It is so ORDERED.

SIGNED this 20th day of November, 2023.

FRED BIERY
UNITED STATES DISTRICT JUDGE