UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, | § § § | |
| Plaintiffs, | § § | Case No. 5:23-cv-00580-FB |
| v. | § § | |
| RICHARD HUBBARD, et al. | § § | Judge: Hon. Fred Biery Date Action Filed: May 8, 2023 (transferred) |
| Defendants. | § § | |

**DECLARATION OF PATRICK B. NICHOLS IN SUPPORT OF TRAMMELL S. CROW'S OPPOSED MOTION TO COMPEL AMENDED RESPONSES TO INTERROGATORIES AND FOR AN AWARD OF THE EXPENSES INCURRED IN <u>BRINGING THIS MOTION</u>**

I, Patrick B. Nichols, declare as follows:

1. I am a partner at the law firm of Hawxhurst LLP, co-counsel of record for defendant Trammell S. Crow. I make this declaration in support of Mr. Crow's motion to compel amended responses to interrogatories and for an award of the expenses incurred in bringing the motion. I have personal knowledge of the facts stated herein, and if called upon to do so, I could and would testify truthfully and competently with respect thereto.

2. On January 24, 2024, Mr. Crow served 21 interrogatories to be answered separately by Ms. Hubbard and Ms. Goedinghaus. A true and correct copy of Mr. Crow's interrogatories to Ms. Hubbard is attached hereto as Exhibit A. A true and correct copy of Mr. Crow's interrogatories to Ms. Goedinghaus is attached hereto as Exhibit B.

3. On March 13, 2024, our law firm informed plaintiffs that responses to Mr. Crow's interrogatories were past-due because 30 days had passed since serving them and plaintiffs had not sought an extension to respond from us or the Court.

4.      Later on March 13, 2024, plaintiffs served their interrogatory responses.  A true and correct copy of Ms. Hubbard's responses is attached hereto as Exhibit C.   A true and correct copy of Ms. Goedinghaus's responses is attached hereto as Exhibit D.

5.      On March 20, 2024, I participated in a teleconference with our co-counsel Kenneth C. Stone and Jill Bindler of Gray Reed, and plaintiffs' counsel, Matthew Schmidt and Justin Loveland, to discuss plaintiffs' deficient responses to Mr. Crow's Interrogatories (and their long overdue document production, which we address by way of a separate motion).  During the teleconference, Mr. Schmidt agreed to provide amended responses to interrogatories 1, 2, 4, 8, 11, and 14.  Specifically, he promised to provide responses that contain the factual details requested by the interrogatories (dates, locations, etc.) and that the responses would also make clear that plaintiffs are not withholding information or otherwise circumscribing their responses based on any objection, including attorney-client privilege or work product.  He also agreed that Ms. Goedinghaus would serve amended responses that made clear which of her answers are based on her personal knowledge or on information and belief.  Mr. Schmidt agreed to provide the amended responses by March 22, 2024.

6.      I emailed confirmation of our agreement to Mr. Schmidt and Mr. Loveland on March 20, 2024.  A true and correct copy of my March 20, 2024 email is attached hereto as Exhibit E.

7.      Plaintiffs did not disagree with the terms of the agreement memorialized in my email.

8.      On March 22, 2024, plaintiffs did not serve any amended responses or indicate when they would be forthcoming.

9.      As of the date of filing of this declaration and the accompanying motion to compel, plaintiffs have not served amended interrogatory responses, nor have they

communicated with us about them.  They have not sought an extension or provided any update whatsoever.  As a result, Mr. Crow has been forced to file the accompanying motion to compel and a request for expenses incurred in doing so.

10.     In support of the motion to compel, a true and correct copy of excerpts of the hearing transcript in the state family court proceeding styled <u>In the Interest of D.B.B.</u>, Travis Cnty. Cause No. D-1-FM-20-001948 is attached hereto as Exhibit F.

### DECLARATION IN SUPPORT OF EXPENSES (ATTORNEYS' FEES)

11.     I am familiar with our firm's billing practices, the rates charged Mr. Crow for this matter, and the time spent by me, Mr. Foltyn-Smith and Mr. Hawxhurst in preparing the motion to compel and related papers.

12.     Hawxhurst LLP charges the following rates for the attorneys staffed on this matter:  Gerald E. Hawxhurst charges $850 per hour for this matter.  My hourly rate is $745 for this matter.  Mr. Foltyn-Smith charges $650 per hour for this matter.  I spent five hours preparing this motion and accompanying papers.  Mr. Foltyn-Smith spent two hours performing research for this motion.  Mr. Hawxhurst spent one and half hours preparing this motion and related papers.

13.     In total, Mr. Crow incurred $6,300.00 in attorney's fees for this motion and related papers.  These amounts do not include the hours of attorney time spent sending emails and conferring with plaintiffs in order to obtain their compliance with the discovery rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed in the City and County of Denver, Colorado, on the 24th day of March 2024.


_____
Patrick B. Nichols

EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

|  |  |
|---|---|
| | Case No.: 5:23-cv-00580-FB |
| | Judge: Hon. Fred Biery |
| JULIA HUBBARD, at al., | Courtroom: 8509 |
| Plaintiffs, | Date Action Filed: May 8, 2023 (transferred) |
| v. | |
| TRAMMELL S. CROW, JR., et al. | |
| Defendants. | |

**DEFENDANT TRAMMELL S. CROW'S INTERROGATORIES
TO PLAINTIFF JULIA HUBBARD, SET ONE**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the Local Court Rules of the United States District Court for the Western District of Texas, Defendant Trammel S. Crow hereby requests that that plaintiff Julia Hubbard answer the following interrogatories, in writing, under oath, within 30 days of service hereof.

## DEFINITIONS[1]

1.      "COMMUNICATION" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by any means, including but not limited to by such means as letters, memoranda, facsimiles, e-mails, face-to-face meetings, telephone conversations, video conversations, text messages, instant messages, online chat, online postings, applications (such as, by way of example, WhatsApp), or any other medium.

2.      "COMPLAINT" means the operative complaint on file in Case No. 5:23-cv-00580-FB.

3.      "CROW" means defendant Trammell S. Crow.

4.      "DEFENDANT(S)" means the named defendants in the COMPLAINT and, with respect to the individuals, each of such DEFENDANT'S present or former agents, representatives, attorneys, investigators, accountants and any and all persons or entities acting or purporting to act on behalf of any of them.  With respect to an entity, each such DEFENDANT'S (i) employees, officers, agents, brokers, representatives, accountants, investigators, consultants, and attorneys; (ii) any other person or entity acting or purporting to act on its behalf; (iii) any other person or entity that can control it; and (iv) any other person or entity otherwise subject to its control.

5.      "DOCUMENT" means any document or electronically stored information as described in Federal Rule of Civil Procedure 34(a).  A draft of a nonidentical copy is a separate document within the meaning of this term.

---

[1] In addition to the terms defined herein, see Western District of Texas Local Rule CV-26.

CROW'S INTERROGATORIES TO HUBBARD, SET ONE

6.      "EMPLOYMENT" means to perform a service or task, whether done in exchange for something of value or gratuitously.

7.      "GATHERING" shall mean an assembly of two or more persons, including "sheltering" at a person's home.

8.      "IDENTIFY" and "IDENTITY" mean the following:

   a.   When referring to DOCUMENTS, to "IDENTIFY" or "IDENTITY" means to give the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s); (v) addressee(s); and (vi) recipient(s).

   b.   When referring to a PERSON, to "IDENTIFY" or "IDENTITY" means to give the PERSON's (i) full name; (ii) present or last known address; (iii) e-mail address; (iv) telephone number; and (v) when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

   c.   When referring to a SEX PARTY, "IDENTIFY" means to give the (i) date; (ii) time; (iii) location; (iv) host(s)' name; (v) names of attendees; and (vi) IDENTITY of every PERSON who engaged in a SEX ACT during that event.

   d.   When referring to a GATHERING, "IDENTIFY" means to give the (i) date of; (ii) time of; (iii) location of; (iv) host(s)' name; (v) names of attendees; (vi) purpose of; and (vii) IDENTITY of every PERSON who was present during such GATHERING.

   e.   When referring to a name you have used, "IDENTIFY" means for each name give (a) the full name that you have used or been known by; and (b) the dates such name was used.

   f.   When referring to EMPLOYMENT, "IDENTIFY" means give the (a) name, address, and telephone number of the employer or place of self-employment

or place where the work was done; (b) dates of such EMPLOYMENT; (c) title of job or position title; and (d) nature of the work.

9.     "SEX ACT" means a physical act performed with another for sexual gratification.

10.    "SEX PARTY" means a gathering of people where one or more PERSON engaged in a SEX ACT.

11.    "YOU," "YOUR," and "PLAINTIFF," means Julia Hubbard.

## <u>INSTRUCTIONS</u>

1.     The singular form of a word should be interpreted as plural wherever necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

2.     All words whose meanings are not specifically defined shall be interpreted to have the common English meaning of the word.

3.     All words in quotations not otherwise defined shall have the definition contemplated in the COMPLAINT.

4.     The word "or" is used inclusively to mean "and/or."

5.     When an Interrogatory requests that YOU provide information, YOU are required to supply all information known by or available to YOU.  If YOU cannot completely answer the Interrogatory after making diligent efforts to do so, please so state.  Then describe in detail all efforts made to answer the Interrogatory, including identifying every PERSON involved in such efforts and stating the additional information YOU need, if any, to respond completely to the Interrogatory.

6.     If YOU object to any of these Interrogatories on any ground that it is protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege, YOU shall (a) state with particularity each objection, the reasons for the objection, and the categories of information to which the objection applies, and (b) respond to any part of the Interrogatory that is not objectionable.

7.     Unless stated otherwise in any Interrogatory, the period for which these Interrogatories seek information is January 1, 2009 to the present.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

For each DEFENDANT, state all facts that support YOUR contention that they "received benefits from the Venture," including but not limited to "receiving sex and media of naked women or individuals engaged in sex acts," "social benefits or "financial benefits," as alleged at paragraphs 4, 38, 141, 330 and 414 and throughout the COMPLAINT.

**INTERROGATORY NO. 2:**

IDENTIFY every SEX PARTY that YOU attended since January 1, 2009.

**INTERROGATORY NO. 3:**

IDENTIFY every health care provider who has treated YOU for any physical or mental ailment or illness from January 1, 2009, to the present, including but not limited to doctors, nurse practitioners, chiropractors, psychiatrists, psychologists, addiction specialists, other practitioners of the healing arts, hospitals, clinics, medical offices, treatment facilities and emergency rooms.

**INTERROGATORY NO. 4:**

IDENTIFY each GATHERING YOU attended at which YOU contend CROW was present for any part.

**INTERROGATORY NO. 5:**

State all facts that support YOUR contention that the "key financial support of the enterprise was Defendant Trammell S. Crow, Jr. [sic]," as alleged in paragraph 29 of the COMPLAINT.

**INTERROGATORY NO. 6:**

State all facts that support YOUR contention that "Crow was involved from the very start of the Venture in 2010, knew full well all the details of the force, fraud, threat, and coercion that Rick used (in substantial part due to his prior relationship with Hubbard), and without him the

Venture never could have succeeded, or indeed, ever gotten started," as alleged in paragraph 30 of the COMPLAINT.

**INTERROGATORY NO. 7:**

State all facts and legal theories that support YOUR contention that "Trammell was key to the Venture's existence and long running success," as alleged in paragraph 31 of the COMPLAINT.

**INTERROGATORY NO. 8:**

State all facts and legal theories that support YOUR contention that YOU were "traffic[ked] … to Crow," as alleged at paragraph 33 of the COMPLAINT.

**INTERROGATORY NO. 9:**

IDENTIFY each "other victim of the Venture" that YOU allege was "traffic[ked] … to Crow," as alleged at paragraph 33 and 34 of the COMPLAINT.

**INTERROGATORY NO. 10:**

State all facts that support YOUR contention that YOU "told Crow that Rick was forcing [YOU] to perform sex acts and forcing [YOU] to take drugs to induce such acts," as alleged in paragraph 35 of the COMPLAINT.

**INTERROGATORY NO. 11:**

State all facts and legal theories that support YOUR contention that "Rick and Crow benefitted from working together to get other to join the Venture as co-investors and clients," as alleged at paragraph 37 of the COMPLAINT.

**INTERROGATORY NO. 12:**

State all facts that support YOUR contention that CROW was "doing business with Rick and the Venture," as alleged at paragraph 185 of the COMPLAINT.

**INTERROGATORY NO. 13:**

State all facts and legal theories that support YOUR contention that CROW "enticed, harbored, provided, obtained, maintained, patronized and solicited [YOU]….  knowing or in reckless disregard of the fact that force, threats of force, or coercion would be used to cause

[YOU] [to] engag[e] in a commercial sex act," as alleged at paragraphs 317 to 325 of the COMPLAINT.

**INTERROGATORY NO. 14:**

State all facts and legal theories that support YOUR  contention that "Crow knew, or recklessly disregarded, that [YOU] would be forced to engage in commercial sex acts," as alleged in paragraphs 325, 326, 327, and elsewhere in the COMPLAINT.

**INTERROGATORY NO. 15:**

State all facts that support YOUR contention that "Crow maintained each Plaintiff by providing financial support," and patronized each Plaintiff by paying them to perform sex acts for himself and others," as alleged in paragraphs 322 and 323 of the COMPLAINT.

**INTERROGATORY NO. 16:**

State all facts and legal theories that support YOUR contention that CROW "allegedly kn[e]w of should have known of the trafficking acts," as alleged in paragraph 326 of the COMPLAINT.

**INTERROGATORY NO. 17:**

State all facts and legal theories that support YOUR contention that "Crow provided assistance, support and facilitation to the Venture through financial aid…. [s]pecifically [by] provid[ing] tens of thousands of dollars of payments to Rick Hubbard and the Venture, including under the pretext of paying for 'family lawyers' or business investments," as alleged at paragraph 329 of the COMPLAINT.

**INTERROGATORY NO. 18:**

State all facts and legal theories that support YOUR contention that "Crow received multiple things of value from the Venture, including in the form of sex acts (including Plaintiff Hubbard engaging in sex acts with Crow's then-girlfriend and watching Plaintiff Goedinghaus have sex) and the social benefits and esteem of the Venture providing sex acts to guests at his parties," as alleged in paragraph 330 of the COMPLAINT.

**INTERROGATORY NO. 19:**

State all facts and legal theories that support YOUR contention that CROW engaged in labor trafficking under the TVPA by "obtain[ing] [YOUR] services," as alleged in paragraph 331 of the COMPLAINT.

**INTERROGATORY NO. 20:**

IDENTIFY every name that you have used from January 1, 2009 to the present, including, but not limited to, every legal name, alias, pseudonym, stage name and pen name.

**INTERROGATORY NO. 21:**

IDENTIFY all YOUR EMPLOYMENT from January 1, 2009 to the present.


DATED:  January 24, 2024           GRAY REED
                                    HAWXHURST LLP



                              By  _/s/ Kenneth Stone_____
                                    Kenneth Stone
                                    Gerald Hawxhurst

                                    *Attorneys for Defendant*
                                    *Trammell S. Crow*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on the parties in this action via email on January 24, 2024.

_(signature)_
_____
Kyle Foltyn-Smith

<u>Service List</u>:

| | |
|---|---|
| John G. Balestriere<br>Matthew W. Schmidt<br>Balestriere Fariello<br>225 Broadway 29th Floor<br>New York, NY 10007<br>john.balestriere@balestrierefariello.com<br>matthew.schmidt@balestrierefariello.com<br><br>Anastasia Kinney Mazzella<br>Kabateck LLP<br>633 West 5th Street Suite 3200<br>Los Angeles, CA 90071<br>am@kbklawyers.com<br><br>*Attorneys for Plaintiffs Julia Hubbard and Kayla Goedinghaus* | Alec Raymond Simpson<br>Office of the Attorney General<br>Law Enforcement Defense Division<br>P.O. Box 12548<br>Austin, Texas 78711-2548<br>alec.simpson@oag.texas.gov<br><br>*Attorneys for Defendant Cody Mitchell* |
| Steven Berry<br>Berry Odom LLP<br>611 9th Ave.<br>Fort Worth, Texas 76104<br>sberry@berryodom.com<br><br>James M. Parker, Jr.<br>Naman Howell Smith & Lee PLLC<br>10001 Reunion Place, Suite 600<br>San Antonio, Texas 78216<br>jparker@namanhowell.com<br><br>*Attorneys for Defendant Robert Pruitt* | Brian Rawson<br>Stephanie Roark<br>Tyler Stuart<br>Hartline Barger LLP<br>8750 N. Central Expressway, Suite 1600<br>Dallas, Texas 75231<br>brawson@hartlinebarger.com<br>sroark@hartlinebarger.com<br>tstuart@hartlinebarger.com<br><br>*Attorneys for Defendant Case Grover and RCI Hospitality Holdings, Inc* |

| | |
|---|---|
| Terrence Matthew Jones<br>Indira J Cameron-Banks<br>Cameron Jones LLP<br>8383 Wilshire Blvd., Suite 800<br>Beverly Hills, CA 90211<br>terrence@cameronjones.law<br>indira@cameronjones.law<br><br>*Attorneys for Defendant Dr. Benjamin Todd Eller* | Stephen Dillawn<br>Chad Geisler<br>Sydney Jarvis<br>Germer Beaman & Brown PLLC<br>301 Congress Ave., Suite 1700<br>Sutin, Texas 78701<br>sdillawn@germer-austin.com<br>cgeisler@germer-austin.com<br>sjarvis@germer-austin.com<br><br>*Attorneys for Defendant Dr. Melissa Miller* |
| Daniel Paret<br>David Jonathan Rubaum<br>Christopher T. Freyder<br>Wood Smith Henning Berman LLP<br>14860 Landmark Blvd., Suite 120<br>Dallas, Texas 75254<br>dparet@wshblaw.com<br>DRubaum@wshblaw.com<br>CFreyder@wshblaw.com<br><br>*Attorneys for Defendant Dr. Scott Woods* | Diane Doolittle<br>Alex Bergjans<br>Evan Pearson<br>Quinn Emanuel, Urquhart & Sullivan LLP<br>555 Twin Dolphin Dr., 5th Floor<br>Redwood Shores, CA 94065<br>alexbergans@quinnemanuel.com<br>evanpearson@quinnemanuel.com<br><br>*Attorneys for Defendant Coe Juracek* |
| Kurt S. Elieson<br>Carpenter & Associates<br>555 Republic Drive, Suite 510<br>Plano, Texas 75074<br>kurte@carplawfirm.com – Email<br><br>*Attorneys for Defendants Shawn Mayer and Jade Mayer* | |

EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

Case No.: 5:23-cv-00580-FB

Judge: Hon. Fred Biery
Courtroom: 8509
Date Action Filed: May 8, 2023 (transferred)

JULIA HUBBARD, at al.,

        Plaintiffs,

v.

TRAMMELL S. CROW, JR., et al.,

        Defendants.

**DEFENDANT TRAMMELL S. CROW'S INTERROGATORIES
TO PLAINTIFF KAYLA GOEDINGHAUS, SET ONE**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the Local Court Rules of the United States District Court for the Western District of Texas, Defendant Trammel S. Crow hereby requests that that plaintiff Kayla Goedinghaus answer the following interrogatories, in writing, under oath, within 30 days of service hereof.

## DEFINITIONS[1]

1.      "COMMUNICATION" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by any means, including but not limited to by such means as letters, memoranda, facsimiles, e-mails, face-to-face meetings, telephone conversations, video conversations, text messages, instant messages, online chat, online postings, applications (such as, by way of example, WhatsApp), or any other medium.

2.      "COMPLAINT" means the operative complaint on file in Case No. 5:23-cv-00580-FB.

3.      "CROW" means defendant Trammell S. Crow.

4.      "DEFENDANT(S)" means the named defendants in the COMPLAINT and, with respect to the individuals, each of such DEFENDANT'S present or former agents, representatives, attorneys, investigators, accountants and any and all persons or entities acting or purporting to act on behalf of any of them.  With respect to an entity, each such DEFENDANT'S (i) employees, officers, agents, brokers, representatives, accountants, investigators, consultants, and attorneys; (ii) any other person or entity acting or purporting to act on its behalf; (iii) any other person or entity that can control it; and (iv) any other person or entity otherwise subject to its control.

5.      "DOCUMENT" means any document or electronically stored information as described in Federal Rule of Civil Procedure 34(a).  A draft of a nonidentical copy is a separate document within the meaning of this term.

---

[1] In addition to the terms defined herein, see Western District of Texas Local Rule CV-26.

6.     "EMPLOYMENT" means to perform a service or task, whether done in exchange for something of value or gratuitously.

7.     "GATHERING" shall mean an assembly of two or more persons, including "sheltering" at a person's home.

8.     "IDENTIFY" and "IDENTITY" mean the following:

a.     When referring to DOCUMENTS, to "IDENTIFY" or "IDENTITY" means to give the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s); (v) addressee(s); and (vi) recipient(s).

b.     When referring to a PERSON, to "IDENTIFY" or "IDENTITY" means to give the PERSON's (i) full name; (ii) present or last known address; (iii) e-mail address; (iv) telephone number; and (v) when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

c.     When referring to a SEX PARTY, "IDENTIFY" means to give the (i) date; (ii) time; (iii) location; (iv) host(s)' name; (v) names of attendees; and (vi) IDENTITY of every PERSON who engaged in a SEX ACT during that event.

d.     When referring to a GATHERING, "IDENTIFY" means to give the (i) date of; (ii) time of; (iii) location of; (iv) host(s)' name; (v) names of attendees; (vi) purpose of; and (vii) IDENTITY of every PERSON who was present during such GATHERING.

e.     When referring to a name you have used, "IDENTIFY" means for each name give (a) the full name that you have used or been known by; and (b) the dates such name was used.

f.     When referring to EMPLOYMENT, "IDENTIFY" means give the (a) name, address, and telephone number of the employer or place of self-employment

or place where the work was done; (b) dates of such EMPLOYMENT; (c) title of job or position title; and (d) nature of the work.

9.      "SEX ACT" means a physical act performed with another for sexual gratification.

10.     "SEX PARTY" means a gathering of people where one or more PERSON engaged in a SEX ACT.

11.     "YOU," "YOUR," and "PLAINTIFF," means Kayla Goedinghaus.

## INSTRUCTIONS

1.      The singular form of a word should be interpreted as plural wherever necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

2.      All words whose meanings are not specifically defined shall be interpreted to have the common English meaning of the word.

3.      All words in quotations not otherwise defined shall have the definition contemplated in the COMPLAINT.

4.      The word "or" is used inclusively to mean "and/or."

5.      When an Interrogatory requests that YOU provide information, YOU are required to supply all information known by or available to YOU.  If YOU cannot completely answer the Interrogatory after making diligent efforts to do so, please so state.  Then describe in detail all efforts made to answer the Interrogatory, including identifying every PERSON involved in such efforts and stating the additional information YOU need, if any, to respond completely to the Interrogatory.

6.      If YOU object to any of these Interrogatories on any ground that it is protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege, YOU shall (a) state with particularity each objection, the reasons for the objection, and the categories of information to which the objection applies, and (b) respond to any part of the Interrogatory that is not objectionable.

7.     Unless stated otherwise in any Interrogatory, the period for which these Interrogatories seek information is January 1, 2009 to the present.

## INTERROGATORIES

### INTERROGATORY NO. 1:

For each DEFENDANT, state all facts that support YOUR contention that they "received benefits from the Venture," including but not limited to "receiving sex and media of naked women or individuals engaged in sex acts," "social benefits or "financial benefits," as alleged at paragraphs 4, 38, 141, 330 and 414 and throughout the COMPLAINT.

### INTERROGATORY NO. 2:

IDENTIFY every SEX PARTY that YOU attended since January 1, 2009.

### INTERROGATORY NO. 3:

IDENTIFY every health care provider who has treated YOU for any physical or mental ailment or illness from January 1, 2009, to the present, including but not limited to doctors, nurse practitioners, chiropractors, psychiatrists, psychologists, addiction specialists, other practitioners of the healing arts, hospitals, clinics, medical offices, treatment facilities and emergency rooms.

### INTERROGATORY NO. 4:

IDENTIFY each GATHERING YOU attended at which YOU contend CROW was present for any part.

### INTERROGATORY NO. 5:

State all facts that support YOUR contention that the "key financial support of the enterprise was Defendant Trammell S. Crow, Jr. [sic]," as alleged in paragraph 29 of the COMPLAINT.

### INTERROGATORY NO. 6:

State all facts that support YOUR contention that "Crow was involved from the very start of the Venture in 2010, knew full well all the details of the force, fraud, threat, and coercion that Rick used (in substantial part due to his prior relationship with Hubbard), and without him the

Venture never could have succeeded, or indeed, ever gotten started," as alleged in paragraph 30 of the COMPLAINT.

**INTERROGATORY NO. 7:**

State all facts and legal theories that support YOUR contention that "Trammell was key to the Venture's existence and long running success," as alleged in paragraph 31 of the COMPLAINT.

**INTERROGATORY NO. 8:**

State all facts and legal theories that support YOUR contention that YOU were "traffic[ked] … to Crow," as alleged at paragraph 33 of the COMPLAINT.

**INTERROGATORY NO. 9:**

IDENTIFY each "other victim of the Venture" that YOU allege was "traffic[ked] … to Crow," as alleged at paragraph 33 and 34 of the COMPLAINT.

**INTERROGATORY NO. 10:**

State all facts that support YOUR contention that YOU "told Crow that Rick was forcing [YOU] to perform sex acts and forcing [YOU] to take drugs to induce such acts," as alleged in paragraph 35 of the COMPLAINT.

**INTERROGATORY NO. 11:**

State all facts and legal theories that support YOUR contention that "Rick and Crow benefitted from working together to get other to join the Venture as co-investors and clients," as alleged at paragraph 37 of the COMPLAINT.

**INTERROGATORY NO. 12:**

State all facts that support YOUR contention that CROW was "doing business with Rick and the Venture," as alleged at paragraph 185 of the COMPLAINT.

**INTERROGATORY NO. 13:**

State all facts and legal theories that support YOUR contention that CROW "enticed, harbored, provided, obtained, maintained, patronized and solicited [YOU]….  knowing or in reckless disregard of the fact that force, threats of force, or coercion would be used to cause

CROW'S INTERROGATORIES TO GOEDINGHAUS, SET ONE

[YOU] [to] engag[e] in a commercial sex act," as alleged at paragraphs 317 to 325 of the COMPLAINT.

**INTERROGATORY NO. 14:**

State all facts and legal theories that support YOUR  contention that "Crow knew, or recklessly disregarded, that [YOU] would be forced to engage in commercial sex acts," as alleged in paragraphs 325, 326, 327, and elsewhere in the COMPLAINT.

**INTERROGATORY NO. 15:**

State all facts that support YOUR contention that "Crow maintained each Plaintiff by providing financial support," and patronized each Plaintiff by paying them to perform sex acts for himself and others," as alleged in paragraphs 322 and 323 of the COMPLAINT.

**INTERROGATORY NO. 16:**

State all facts and legal theories that support YOUR contention that CROW "allegedly kn[e]w of should have known of the trafficking acts," as alleged in paragraph 326 of the COMPLAINT.

**INTERROGATORY NO. 17:**

State all facts and legal theories that support YOUR contention that "Crow provided assistance, support and facilitation to the Venture through financial aid…. [s]pecifically [by] provid[ing] tens of thousands of dollars of payments to Rick Hubbard and the Venture, including under the pretext of paying for 'family lawyers' or business investments," as alleged at paragraph 329 of the COMPLAINT.

**INTERROGATORY NO. 18:**

State all facts and legal theories that support YOUR contention that "Crow received multiple things of value from the Venture, including in the form of sex acts (including Plaintiff Hubbard engaging in sex acts with Crow's then-girlfriend and watching Plaintiff Goedinghaus have sex) and the social benefits and esteem of the Venture providing sex acts to guests at his parties," as alleged in paragraph 330 of the COMPLAINT.

**INTERROGATORY NO. 19:**

State all facts and legal theories that support YOUR contention that CROW engaged in labor trafficking under the TVPA by "obtain[ing] [YOUR] services," as alleged in paragraph 331 of the COMPLAINT.

**INTERROGATORY NO. 20:**

IDENTIFY every name that you have used from January 1, 2009 to the present, including, but not limited to, every legal name, alias, pseudonym, stage name and pen name.

**INTERROGATORY NO. 21:**

IDENTIFY all YOUR EMPLOYMENT from January 1, 2009 to the present.


DATED:  January 24, 2024            GRAY REED
                                    HAWXHURST LLP


                            By _/s/ Kenneth Stone_____
                                Kenneth Stone
                                Gerald Hawxhurst

                                *Attorneys for Defendant*
                                *Trammell S. Crow*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the parties in this action via email on January 24, 2024.

_Kyle Foltyn-Smith_
Kyle Foltyn-Smith

Service List:

| | |
|---|---|
| John G. Balestriere<br>Matthew W. Schmidt<br>Balestriere Fariello<br>225 Broadway 29th Floor<br>New York, NY 10007<br>john.balestriere@balestrierefariello.com<br>matthew.schmidt@balestrierefariello.com<br><br>Anastasia Kinney Mazzella<br>Kabateck LLP<br>633 West 5th Street Suite 3200<br>Los Angeles, CA 90071<br>am@kbklawyers.com<br><br>*Attorneys for Plaintiffs Julia Hubbard and Kayla Goedinghaus* | Alec Raymond Simpson<br>Office of the Attorney General<br>Law Enforcement Defense Division<br>P.O. Box 12548<br>Austin, Texas 78711-2548<br>alec.simpson@oag.texas.gov<br><br>*Attorneys for Defendant Cody Mitchell* |
| Steven Berry<br>Berry Odom LLP<br>611 9th Ave.<br>Fort Worth, Texas 76104<br>sberry@berryodom.com<br><br>James M. Parker, Jr.<br>Naman Howell Smith & Lee PLLC<br>10001 Reunion Place, Suite 600<br>San Antonio, Texas 78216<br>jparker@namanhowell.com<br><br>*Attorneys for Defendant Robert Pruitt* | Brian Rawson<br>Stephanie Roark<br>Tyler Stuart<br>Hartline Barger LLP<br>8750 N. Central Expressway, Suite 1600<br>Dallas, Texas 75231<br>brawson@hartlinebarger.com<br>sroark@hartlinebarger.com<br>tstuart@hartlinebarger.com<br><br>*Attorneys for Defendant Case Grover and RCI Hospitality Holdings, Inc* |

| | |
|---|---|
| Terrence Matthew Jones<br>Indira J Cameron-Banks<br>Cameron Jones LLP<br>8383 Wilshire Blvd., Suite 800<br>Beverly Hills, CA 90211<br>terrence@cameronjones.law<br>indira@cameronjones.law<br><br>*Attorneys for Defendant Dr. Benjamin Todd Eller* | Stephen Dillawn<br>Chad Geisler<br>Sydney Jarvis<br>Germer Beaman & Brown PLLC<br>301 Congress Ave., Suite 1700<br>Sutin, Texas 78701<br>sdillawn@germer-austin.com<br>cgeisler@germer-austin.com<br>sjarvis@germer-austin.com<br><br>*Attorneys for Defendant Dr. Melissa Miller* |
| Daniel Paret<br>David Jonathan Rubaum<br>Christopher T. Freyder<br>Wood Smith Henning Berman LLP<br>14860 Landmark Blvd., Suite 120<br>Dallas, Texas 75254<br>dparet@wshblaw.com<br>DRubaum@wshblaw.com<br>CFreyder@wshblaw.com<br><br>*Attorneys for Defendant Dr. Scott Woods* | Diane Doolittle<br>Alex Bergjans<br>Evan Pearson<br>Quinn Emanuel, Urquhart & Sullivan LLP<br>555 Twin Dolphin Dr., 5th Floor<br>Redwood Shores, CA 94065<br>alexbergans@quinnemanuel.com<br>evanpearson@quinnemanuel.com<br><br>*Attorneys for Defendant Coe Juracek* |
| Kurt S. Elieson<br>Carpenter & Associates<br>555 Republic Drive, Suite 510<br>Plano, Texas 75074<br>kurte@carplawfirm.com – Email<br><br>*Attorneys for Defendants Shawn Mayer and Jade Mayer* | |

EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

Matthew W. Schmidt*
**Schmidt Law Corporation**
116A Main Street
Tiburon, California 94920
Telephone:    (415) 390-6075
matt@schmidtlc.com
*Attorney for Plaintiffs*
*Admitted Pro Hac Vice

| | |
|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS,<br><br>                    Plaintiffs,<br><br>v.<br><br>TRAMMELL S. CROW, JR.; BENJAMIN TODD ELLER; RICHARD HUBBARD; MELISSA MILLER; SCOTT WOODS; COE JURACEK; PHILIP ECOB; CODY MITCHELL; RALPH ROGERS; ROBERT PRUITT; SCOTT BRUNSON; CASE GROVER; MICHAEL HYNES, JR.; SHAWN MAYER; JADE MAYER; AARON BURLINGAME; and  RCI HOSPITALITY HOLDINGS, INC.,<br><br>                    Defendants. | Case No. 5:23-cv-00580-FB<br><br><br>Judge: Hon. Fred Biery<br>Date Action Filed: May 8, 2023 (transferred) |

## PLAINTIFF JULIA HUBBARD'S RESPONSE TO DEFENDANT CROW'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure ("Rule") 26 and 33, Plaintiff Julia Hubbard hereby responds to the Interrogatories of Defendant Trammell S. Crow, Jr.

## **GENERAL OBJECTIONS**

1.      By responding to any Interrogatory, Plaintiff Julia Hubbard ("Plaintiff") does not concede the materiality of the subject to which it refers, Plaintiff's responses are made expressly subject to, and without waiving or intending to waive, any questions, or objections as to the competence, relevance, materiality, privilege, or admissibility of evidence, or for any other purpose, of any of the information or documents produced or of the subject matter thereof, in any proceeding including the trial of this action or any subsequent proceeding.

2.      Plaintiff objects to these Interrogatories to the extent that they seek information not within the relevant time period and fail to state the time period relevant to the Interrogatory.

3.      Plaintiff objects to these Interrogatories to the extent that they seek information that is not relevant to any party's claims or defenses.

4.      Plaintiff objects to these Interrogatories to the extent that they seek information or documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege.

5.      By responding to each Interrogatory, Plaintiff does not make any representation as to whether the documents are responsive to such Requests exist or are in her possession, custody, or control.

6.      Inadvertent production of any information that is privileged, was prepared in anticipation of litigation, or are otherwise immune from discovery, shall not constitute a waiver of any privilege or of another ground for objecting to discovery with respect to that document or any other document, or its subject matter, or the information contained therein, or of Plaintiff's right

to object to the use of any such the information contained therein during any proceeding in this litigation or otherwise. All documents containing any such inadvertently produced material or information shall be returned to Plaintiff's attorneys, along with all copies thereof.

7.      In providing these responses and objections, Plaintiff does not waive or intend to waive, but, rather, preserve and intend to preserve:

A.      All objections as to competency, relevancy, materiality, and admissibility of the Interrogatories, responses to the Interrogatories, or the subject matter thereof;

B.      All objections as to vagueness, ambiguity, overbreadth and undue burden;

C.      All rights to object on any ground to the use of responses or the subject matter thereof, in any subsequent proceedings, including the trial of this or any other action;

D.      All rights to object on any ground to the use of responses or the subject matter thereof, in any subsequent proceedings, including the trial of this or any other action; and

E.      All rights to object on any ground to any request for further responses to these or any other requests for documents, Request requests or other discovery requests involving or related to the subject matter of these Requests.

8.      Plaintiff will provide information within her knowledge or which she can reasonably determine based on available documents.

9.      Plaintiff is continuing to search for information responsive to the Interrogatories and therefore reserves the right to supplement her responses to each Interrogatories with additional information if and when such information becomes available to Plaintiff. Plaintiff also reserves the right to object to the future disclosure of any such information.

<u>**RESPONSES TO INTERROGATORIES**</u>

<u>**INTERROGATORY NO. 1:**</u>

      For each DEFENDANT, state all facts that support YOUR contention that they "received benefits from the Venture," including but not limited to "receiving sex and media of naked women or individuals engaged in sex acts," "social benefits or "financial benefits," as alleged at paragraphs 4, 38, 141, 330 and 414 and throughout the COMPLAINT.

<u>**RESPONSE:**</u>

      Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

      Defendant Trammel S. Crow, Jr. ("Crow") benefitted by receipt of sex acts; regular social dates; live sex performances; and the social value of having parties enhanced by the Venture's sex acts.

      Defendant Bejamin Todd Eller ("Eller") benefitted by receipt of financial payments, totaling monthly fees ranging from $2,500 to $5,000 over a period of years.

      Defendant Richard Hubbard ("Rick Hubbard") benefitted by receiving cash payments, social benefits, and sex acts.

      Defendant Melissa Miller ("Miller") benefitted by receipt of payments for Plaintiff Goedinghaus's visits to Defendant Miller.

      Defendant Scott Woods ("Woods") benefitted by receipt of payments of $100 per visit for Plaintiff's visits to Defendant Woods.

      Defendant Coe Juracek ("Juracek") and Defendant Phil Ecob ("Ecob") benefitted through attending sex parties and observing Plaintiff as well as Plaintiff Goedinghaus engaging in sex acts and receiving naked photos of Plaintiff.

      Defendant Cody Mitchell ("Mitchell") benefitted by receiving naked photos of Plaintiff.

Defendant Ralph Rogers ("Rogers") benefitted by receiving the benefit of sex parties on his property; by receiving sex acts in the form of watching Plaintiff Goedinghaus naked or in lingerie; by receiving sex acts in the form of watching Rick Hubbard and Plaintiff Goedinghaus having sex; by receiving sex acts in the form of groping Plaintiff Goedinghaus while masturbating; and by receiving naked photos of Plaintiff.

Defendant Robert Pruitt ("Pruitt") benefitted by receiving sex acts with Plaintiff and receiving naked photographs of Plaintiff.

Defendant Scott Brunson ("Brunson") benefitted by receiving sex acts from Plaintiff Goedinghaus.

Defendant Case Grover ("Grover") benefitted by receipt of cash payments which he confiscated from Plaintiff.

Defendant Michael Hynes ("Hynes") benefited by benefitted by receipt of cash payments which he confiscated from Plaintiff.

Defendant Shawn Mayer ("Shawn Mayer") benefitted by receiving cash payments, hotel rooms, and gifts, as well as social cachet.

Defendant Jade Mayer ("Jade Mayer") benefitted by receiving cash payments, hotel rooms, and gifts, as well as social cachet.

Defendant Aaron Burlingame ("Burlingame") benefitted by receiving information about and sex acts with Plaintiff Goedinghaus.

Defendant RCI Hospitality Holdings, Inc. ("RCI") benefitted by receipt of cash payments which it confiscated from Plaintiff.

**<u>INTERROGATORY NO. 2:</u>**

IDENTIFY every SEX PARTY that YOU attended since January 1, 2009.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome. However, objection notwithstanding, Plaintiff attended approximately 20 to 50 sex parties, beginning in the fall of 2009, which initial sex party took place at Defendant Crow's Dallas apartment near the courthouse and later a house in Dallas on Turtle Creek. Many of the sex parties happened or originated at Club Eden in Dallas. Plaintiff also attended sex parties hosted by H.J. Cole. Plaintiff attended approximately 10 to 30 sex parties that occurred or originated at Texas Land & Cattle restaurant.

**INTERROGATORY NO. 3:**

IDENTIFY every health care provider who has treated YOU for any physical or mental ailment or illness from January 1, 2009, to the present, including but not limited to doctors, nurse practitioners, chiropractors, psychiatrists, psychologists, addiction specialists, other practitioners of the healing arts, hospitals, clinics, medical offices, treatment facilities and emergency rooms.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Benjamin Todd Eller, Ph.D., c/o Cameron Jones LLP, 8383 Wilshire Boulevard, Suite 800, Beverly Hills, CA 90211.

Melissa Miller, M.D., Premier Health MD Direct Primary Care, Cedar Park, TX, c/o Carroll Kelly Trotter and Franzen, 111 West Ocean Boulevard, 14th Floor, P.O. Box 22636, Long Beach, CA 90801; Germer Beaman & Brown PLLC, 301 Congress Ave., Suite 1700,

Austin, TX 78701.

Joseph Bolin, D.O.

Scott Woods, M.D. c/o Wood Smith Henning & Berman LLP, 14860 Landmark Blvd., Suite 120, Dallas, TX 75254.

Mrugeshkumar Shah, M.D.

Emergency rooms all over country, including University of Utah Hospital in Salt Lake City, UT, and many ERs in Texas. Plaintiff to supplement this response upon receipt of records.

Homaira Behsudi-Wali, M.D., 6845 Elm St., #710, McLean, VA 22101.

John Burns, M.D., 9101 N Central Expy., #600, Dallas, TX 75225.

Orthopedic specialists from 2009 to present. Plaintiff to supplement this response upon receipt of records.

Inova Hospital System, Falls Church, VA.

MRIs and other imaging in relation to neck surgeries around approximately October 2013 and on or about August 3, 2016.

Cloud Health Scans, 2800 Guilder Dr, Plano, TX 75074.

Mimi Tyson, PMHNP, 5510 Cherokee Ave., Suite 300, Alexandria, VA 22310.

Yael Roggen, LCWS, 520 N Washington St., Suite 100, Falls Church, VA 22046.

Dominion Hospital, 2960 Sleepy Hollow Rd., Falls Church, VA 22044.

**INTERROGATORY NO. 4:**

IDENTIFY each GATHERING YOU attended at which YOU contend CROW was present for any part.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further

8

information becomes available, Plaintiff responds as follows:

See Response No. 2. Crow was present at each of the sex parties Plaintiff attended at his apartment or house. Of the other sex parties not at those locations, on information and belief, Crow was present for approximately 40-60% of those gatherings. However, even when sex parties did not originate at Crow's residence(s), they would commonly end there, as Crow was often part of the "option" in order to increase the prestige and social cachet of the parties and participants therein.

In addition, Plaintiff attended various other non-sexual gatherings with Crow, such as modeling events in 2009, several dinners over the years, and Earth Day events annually. Regarding the latter, Crow would throw Earth Day benefits to increase his family's good press, following which he would through a celebration which would invariably devolve into another sex party.

**INTERROGATORY NO. 5:**

State all facts that support YOUR contention that the "key financial support of the enterprise was Defendant Trammell S. Crow, Jr. [sic]," as alleged in paragraph 29 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Defendant Crow provided financial support to the Venture in the form of numerous payments to Rick Hubbard which were used to support Rick Hubbard to allow him to continue to promote the Venture, and which provided him inducement to do so. Crow also provided non-financial support in the form of a venue for the Venture's sex parties and providing additional

clients and customers of the Venture. Further, Crow employed, paid hush money to, and otherwise compensated other participants in the Venture, including but not limited to Defendant Coe Juracek.

**INTERROGATORY NO. 6:**

State all facts that support YOUR contention that "Crow was involved from the very start of the Venture in 2010, knew full well all the details of the force, fraud, threat, and coercion that Rick used (in substantial part due to his prior relationship with Hubbard), and without him the Venture never could have succeeded, or indeed, ever gotten started," as alleged in paragraph 30 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff first met Defendant Crow in summer 2009 at the Dallas nightclub Plush. Plaintiff introduced Defendant Crow to Defendant Rick Hubbard in late 2009. By 2010, Defendant Rick Hubbard had started pressuring Plaintiff to perform sex acts with Defendant Crow's then-girlfriend, Presley; find other women for the gatherings; and continue participating in the sex parties hosted and financed by Defendant Crow. Defendant Crow served as a catalyst to the Venture, as Rick Hubbard learning of the friendship between Crow and Plaintiff caused Rick Hubbard to see the financial and social profitability of the Venture. Given his communications with Rick Hubbard, Plaintiff, and Plaintiff Goedinghaus, Crow was aware of all aspects of the Venture.

**INTERROGATORY NO. 7:**

State all facts and legal theories that support YOUR contention that "Trammell was key to the Venture's existence and long running success," as alleged in paragraph 31 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

See Response No. 6. In addition to Crow providing Rick Hubbard the inspiration for the Venture and providing financial support, Crow's provisioning of venues and drugs for the Ventures sex parties and the recruiting of further clients and customers of the Venture allowed it to continue and grow.

**INTERROGATORY NO. 8:**

State all facts and legal theories that support YOUR contention that YOU were "traffic[ked] … to Crow," as alleged at paragraph 33 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome, and because it calls for legal conclusions. However, objection notwithstanding, Plaintiff was forced, under the influence of forced drug-use, coercion, and physical and other threats, to engage in sex acts for the prurient and social benefit of Crow.

**INTERROGATORY NO. 9:**

IDENTIFY each "other victim of the Venture" that YOU allege was "traffic[ked] … to Crow," as alleged at paragraph 33 and 34 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not

withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff Goedinghaus.

Romney Gray.

A woman known to Plaintiff as "Desiree."

A woman known to Plaintiff as "Severa."

Jaylynn Provenzano.

**INTERROGATORY NO. 10:**

State all facts that support YOUR contention that YOU "told Crow that Rick was forcing [YOU] to perform sex acts and forcing [YOU] to take drugs to induce such acts," as alleged in paragraph 35 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

In spring 2012, Crow took Plaintiff to dinner at Al Biernat's, during which time Plaintiff told Crow that Rick was forcing her to perform sex acts and was drugging her. In addition, Plaintiff informed Crow on several occasions at his Turtle Creek house that she was being forced to engage in sex acts under coercion and physical and other threats, as well as under the forced use of drugs. Plaintiff repeatedly asked for Crow's help in escaping her situation, which he did not provide.

**INTERROGATORY NO. 11:**

State all facts and legal theories that support YOUR contention that "Rick and Crow benefitted from working together to get other to join the Venture as co-investors and clients," as alleged at paragraph 37 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome; because it calls for legal conclusions; and because it is duplicative of prior requests (see Interrogatory Nos. 5, 6, 7). However, objection notwithstanding, Rick Hubbard and Crow mutually benefitted from their creation of and continued participation in the Venture—Rick Hubbard through financial, sexual, drug-related, and social benefit, and Crow from the receipt of sex acts, drugs, and social benefit. All of these benefits were enhanced as others joined and participated in the Venture.

**INTERROGATORY NO. 12:**

State all facts that support YOUR contention that CROW was "doing business with Rick and the Venture," as alleged at paragraph 185 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome, and because it is duplicative of prior requests (see Interrogatory Nos. 5, 6, 7, 11). However, objection notwithstanding, Crow invested in the Venture through various payments to Rick Hubbard, including through his companies including Integrity Based Marketing, LLC.

**INTERROGATORY NO. 13:**

State all facts and legal theories that support YOUR contention that CROW "enticed, harbored, provided, obtained, maintained, patronized and solicited [YOU]…. knowing or in reckless disregard of the fact that force, threats of force, or coercion would

13

be used to cause  [YOU] [to] engag[e] in a commercial sex act," as alleged at paragraphs 317 to 325 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory because it calls for legal conclusions. However, objection notwithstanding, Crow enticed, harbored, provided, obtained, maintained, patronized and solicited Plaintiff by encouraging her to continue her involvement with the Venture, including through sheltering her at his residences, where Crow hosted sex parties at which he caused her to become available to Crow and others for sex acts while also providing drugs; Crow also paid the Venture and provided it financing during these relevant times. While Crow was engaged in these acts, he knew (due to being told directly by Plaintiff) that money and other things of value were being exchanged for sex acts and in fact contributed money to the Venture as discussed further above.

**INTERROGATORY NO. 14:**

State all facts and legal theories that support YOUR  contention that "Crow knew, or recklessly disregarded, that [YOU] would be forced to engage in commercial sex acts," as alleged in paragraphs 325, 326, 327, and elsewhere in the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent it calls for legal conclusions. However, objection notwithstanding, Plaintiff told Crow, as discussed above, that she was being forced to

engage in commercial sex acts, including at various sex parties where Plaintiff would be non-consensually groped, touched, and otherwise violated for others' benefit, giving Crow actual knowledge that Plaintiff was forced to engage in commercial sex acts.

**INTERROGATORY NO. 15:**

State all facts that support YOUR contention that "Crow maintained each Plaintiff by providing financial support," and patronized each Plaintiff by paying them to perform sex acts for himself and others," as alleged in paragraphs 322 and 323 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

As discussed above, Crow invested in the Venture through various payments to Rick Hubbard, including through his companies including Integrity Based Marketing, LLC, which was used to provide financial support for Plaintiff.

**INTERROGATORY NO. 16:**

State all facts and legal theories that support YOUR contention that CROW "allegedly kn[e]w of [*sic*] should have known of the trafficking acts," as alleged in paragraph 326 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

See Response No. 10. Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. However, objection notwithstanding, Plaintiff told Crow, as discussed above, that she was being trafficked, giving Crow actual knowledge that Plaintiff was being trafficked.

**INTERROGATORY NO. 17:**

State all facts and legal theories that support YOUR contention that "Crow provided assistance, support and facilitation to the Venture through financial aid…. [s]pecifically [by] provid[ing] tens of thousands of dollars of payments to Rick Hubbard and the Venture, including under the pretext of paying for 'family lawyers' or business investments," as alleged at paragraph 329 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions and is duplicative of prior requests (see Interrogatory Nos. 5, 6, 7, 11, 12). However, objection notwithstanding, as discussed above, Crow invested in the Venture through various payments to Rick Hubbard, including through his companies such as Integrity Based Marketing, LLC; through financing his family law attorneys in ongoing child custody matters; and in providing venues for the Venture's sex parties and recruiting customers and clients to the Venture.

**INTERROGATORY NO. 18:**

State all facts and legal theories that support YOUR contention that "Crow received multiple things of value from the Venture, including in the form of sex acts (including Plaintiff Hubbard engaging in sex acts with Crow's then-girlfriend and watching Plaintiff Goedinghaus have sex) and the social benefits and esteem of the Venture providing sex acts to guests at his parties," as alleged in paragraph 330 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions.

However, objection notwithstanding, Crow's benefits were ongoing. Crow would constantly receive images of naked women, including Plaintiff, due to Rick Hubbard's facilitation of a steady stream of pictures of women's breasts to Crow. Crow also received sex acts from Plaintiff, including at his Turtle Creek house when he pressured Plaintiff into having sex with his then-girlfriend, Presley, an event which he then watched. Crow received sex acts from Plaintiff Goedinghaus, including on or about July 20, 2019, at his Turtle Creek house, when he observed Plaintiff Goedinghaus having sex with Rick Hubbard. Crow also benefitted from hosting, on information and belief, more than 50 sex parties at his residences, where many guests received sex acts from Plaintiff. As stated above, even when parties did not originate at Crow's residences, Crow was often an "option" given to increase the prestige and social cachet of the parties and participates therein.

**INTERROGATORY NO. 19:**

State all facts and legal theories that support YOUR contention that CROW engaged in labor trafficking under the TVPA by "obtain[ing] [YOUR] services," as alleged in paragraph 331 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. However, objection notwithstanding, Crow received sex acts from Plaintiff, including in or around 2012, when he observed Plaintiff having sex with his then-girlfriend, Presley; as well as generally from approximately 2009 through 2018, when he observed Plaintiff having sex numerous times with other people, often as an incentive to Crow to allow Rick Hubbard and

17

Julia's children to join him on the biannual "Kiddie Campouts."

**INTERROGATORY NO. 20:**

IDENTIFY every name that you have used from January 1, 2009 to the present, including, but not limited to, every legal name, alias, pseudonym, stage name and pen name.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Bridgette, Shayla, Julia Parsons, Julia Smith Miller, Julia Alexis Parsons, Julia Alexis Mayer, and Julia Alexis Hubbard.

**INTERROGATORY NO. 21:**

IDENTIFY all YOUR EMPLOYMENT from January 1, 2009 to the present.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plush, contract work for one or two months in summer 2009, as a waitress at parties.

The Lodge, 2009 to 2016, as a dancer.

Baby Dolls, in or about 2016, as a waitress.

Men's Club, in or about 2015, as a waitress.

Silver City, in or about 2015 through 2016, as a dancer.

Buck's, in or about 2013 or 2015 through 2016, as a waitress.

Labor trafficked by Defendant Hynes during 2018, to sell cocaine at Rick Hubbard's clubs mentioned in the Complaint.

Punch Bowl Social in Arlington, in or about January 2019 to July 2019, as a restaurant manager.

Bolero, in or about July 2019 to late 2019, as a restaurant manager.

The Renegade in Arlington, from late 2019 to March 2020, as a bartender.

Auggie's Muscle Bar in Alexandria, in or about 2021 to 2022, as a waitress.

Founding Farmers in Tyson's Corner, in or about 2022, as a waitress.

Chelsea Sienna, in or about March 2024 to the present, as a marketing coordinator.

Dated: Tiburon, California
March 13, 2024

By: _____
Matthew W. Schmidt*
**SCHMIDT LAW CORPORATION**
116A Main Street
Tiburon, California 94920
Telephone:    (415) 390-6075
matt@schmidtlc.com
*Attorney for Plaintiffs*
*Admitted Pro Hac Vice

TO:    HAWXHURST HARRIS LLP
1301 S. Capital of Texas Hwy
Building C, Suite 300
Austin, TX 78746
310-893-5150

GRAY REED & MCGRAW
1601 Elm Street, Suite 4600
Dallas, TX 75201
214-954-4135

**VERIFICATION**

I, Julia Hubbard, have reviewed the foregoing Plaintiff Julia Hubbard's Response to Defendant Crow's First Set of Interrogatories and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and recollection.


Executed on March 13, 2024


_____

Julia Hubbard

EXHIBIT D

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

Matthew W. Schmidt*
**Schmidt Law Corporation**
116A Main Street
Tiburon, California 94920
Telephone:     (415) 390-6075
matt@schmidtlc.com
*Attorney for Plaintiffs*
*Admitted Pro Hac Vice

|  |  |  |
|---|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| TRAMMELL S. CROW, JR.; BENJAMIN TODD ELLER; RICHARD HUBBARD; MELISSA MILLER; SCOTT WOODS; COE JURACEK; PHILIP ECOB; CODY MITCHELL; RALPH ROGERS; ROBERT PRUITT; SCOTT BRUNSON; CASE GROVER; MICHAEL HYNES, JR.; SHAWN MAYER; JADE MAYER; AARON BURLINGAME; and  RCI HOSPITALITY HOLDINGS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 5:23-cv-00580-FB  Judge: Hon. Fred Biery Date Action Filed: May 8, 2023 (transferred) |
| Defendants. | ) ) | |

## PLAINTIFF KAYLA GOEDINGHAUS'S RESPONSE TO DEFENDANT CROW'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure ("Rule") 26 and 33, Plaintiff Kayla Goedinghaus hereby responds to the Interrogatories of Defendant Trammell S. Crow, Jr.

## GENERAL OBJECTIONS

1. By responding to any Interrogatory, Plaintiff Kayla Goedinghaus ("Plaintiff") does not concede the materiality of the subject to which it refers, Plaintiff's responses are made expressly subject to, and without waiving or intending to waive, any questions, or objections as to the competence, relevance, materiality, privilege, or admissibility of evidence, or for any other purpose, of any of the information or documents produced or of the subject matter thereof, in any proceeding including the trial of this action or any subsequent proceeding.

2. Plaintiff objects to these Interrogatories to the extent that they seek information not within the relevant time period and fail to state the time period relevant to the Interrogatory.

3. Plaintiff objects to these Interrogatories to the extent that they seek information that is not relevant to any party's claims or defenses.

4. Plaintiff objects to these Interrogatories to the extent that they seek information or documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege.

5. By responding to each Interrogatory, Plaintiff does not make any representation as to whether the documents are responsive to such Requests exist or are in her possession, custody, or control.

6. Inadvertent production of any information that is privileged, was prepared in anticipation of litigation, or are otherwise immune from discovery, shall not constitute a waiver of any privilege or of another ground for objecting to discovery with respect to that document or any other document, or its subject matter, or the information contained therein, or of Plaintiff's right

to object to the use of any such the information contained therein during any proceeding in this litigation or otherwise. All documents containing any such inadvertently produced material or information shall be returned to Plaintiff's attorneys, along with all copies thereof.

7.     In providing these responses and objections, Plaintiff does not waive or intend to waive, but, rather, preserve and intend to preserve:

A.     All objections as to competency, relevancy, materiality, and admissibility of the Interrogatories, responses to the Interrogatories, or the subject matter thereof;

B.     All objections as to vagueness, ambiguity, overbreadth and undue burden;

C.     All rights to object on any ground to the use of responses or the subject matter thereof, in any subsequent proceedings, including the trial of this or any other action;

D.     All rights to object on any ground to the use of responses or the subject matter thereof, in any subsequent proceedings, including the trial of this or any other action; and

E.     All rights to object on any ground to any request for further responses to these or any other requests for documents, Request requests or other discovery requests involving or related to the subject matter of these Requests.

8.     Plaintiff will provide information within her knowledge or which she can reasonably determine based on available documents.

9.     Plaintiff is continuing to search for information responsive to the Interrogatories and therefore reserves the right to supplement her responses to each Interrogatories with additional information if and when such information becomes available to Plaintiff. Plaintiff also reserves the right to object to the future disclosure of any such information.

<u>**RESPONSES TO INTERROGATORIES**</u>

<u>**INTERROGATORY NO. 1:**</u>

For each DEFENDANT, state all facts that support YOUR contention that they "received benefits from the Venture," including but not limited to "receiving sex and media of naked women or individuals engaged in sex acts," "social benefits or "financial benefits," as alleged at paragraphs 4, 38, 141, 330 and 414 and throughout the COMPLAINT.

<u>**RESPONSE:**</u>

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Defendant Trammel S. Crow, Jr. ("Crow") benefitted by receipt of sex acts; regular social dates; live sex performances; and the social value of having parties enhanced by the Venture's sex acts.

Defendant Bejamin Todd Eller ("Eller") benefitted by receipt of financial payments, totaling monthly fees ranging from $2,500 to $5,000 over a period of years.

Defendant Richard Hubbard ("Rick Hubbard") benefitted by receiving cash payments, social benefits, and sex acts.

Defendant Melissa Miller ("Miller") benefitted by receipt of payments for Plaintiff's visits to Defendant Miller.

Defendant Scott Woods ("Woods") benefitted by receipt of payments of $100 per visit for Plaintiff Hubbard's visits to Defendant Woods.

Defendant Coe Juracek ("Juracek") Defendant Phil Ecob ("Ecob") benefitted through attending sex parties and observing Plaintiff as well as Plaintiff Hubbard engaging in sex acts and receiving naked photos of Plaintiff.

Defendant Cody Mitchell ("Mitchell") benefitted by receiving naked photos of Plaintiff

Hubbard.

Defendant Ralph Rogers ("Rogers") benefitted by receiving the benefit of sex parties on his property; by receiving sex acts in the form of watching Plaintiff Goedinghaus naked or in lingerie; by receiving sex acts in the form of watching Rick Hubbard and Plaintiff Goedinghaus having sex; by receiving sex acts in the form of groping Plaintiff Goedinghaus while masturbating; and by receiving naked photos of Plaintiff.

Defendant Robert Pruitt ("Pruitt") benefitted by receiving sex acts with Plaintiff Hubbard and receiving naked photographs of Plaintiff Hubbard.

Defendant Scott Brunson ("Brunson") benefitted by receiving sex acts from Plaintiff Goedinghaus.

Defendant Case Grover ("Grover") benefitted by receipt of cash payments which he confiscated from Plaintiff Hubbard.

Defendant Michael Hynes ("Hynes") benefited by benefitted by receipt of cash payments which he confiscated from Plaintiff Hubbard.

Defendant Shawn Mayer ("Shawn Mayer") benefitted by receiving cash payments, hotel rooms, and gifts, as well as social cachet.

Defendant Jade Mayer ("Jade Mayer") benefitted by receiving cash payments, hotel rooms, and gifts, as well as social cachet.

Defendant Aaron Burlingame ("Burlingame") benefitted by receiving information about and sex acts with Plaintiff.

Defendant RCI Hospitality Holdings, Inc. ("RCI") benefitted by receipt of cash payments which it confiscated from Plaintiff Hubbard.

**INTERROGATORY NO. 2:**

IDENTIFY every SEX PARTY that YOU attended since January 1, 2009.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome. However, objection notwithstanding, Plaintiff attended approximately 20 sex parties in 2019, at either Rick Hubbard's residence or others' private residences in the Austin area, as well as at the club Friends. Plaintiff also attended one sex party at Defendant Crow's house in Dallas on or around July 20, 2019.

**INTERROGATORY NO. 3:**

IDENTIFY every health care provider who has treated YOU for any physical or mental ailment or illness from January 1, 2009, to the present, including but not limited to doctors, nurse practitioners, chiropractors, psychiatrists, psychologists, addiction specialists, other practitioners of the healing arts, hospitals, clinics, medical offices, treatment facilities and emergency rooms.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. However, objection notwithstanding:

Benjamin Todd Eller, Ph.D., c/o Cameron Jones LLP, 8383 Wilshire Boulevard, Suite 800, Beverly Hills, CA 90211.

Melissa Miller, M.D., Premier Health MD Direct Primary Care, Cedar Park, TX, c/o

Carroll Kelly Trotter and Franzen, 111 West Ocean Boulevard, 14th Floor, P.O. Box 22636, Long Beach, CA 90801; Germer Beaman & Brown PLLC, 301 Congress Ave., Suite 1700, Austin, TX 78701.

Steven Bodi, PA-C, 500 W Whitestone Blvd., Suite 100, Cedar Park, TX 78613.

Roy Faget, M.A., LPC, LMFT, 7701 North Lamar Blvd., Suite 331, Austin, TX 78752.

The Kind Clinic, 101 West Koenig Lane, Suite 100, Austin, TX 78751.

Vivent Health, 104 E Highland Mall Blvd, Austin, TX 78752.

AHF Healthcare Center, 1400 S Grand Ave., #801, Los Angeles, CA 90015.

AHF Healthcare Center – Falls Church, 2946 Sleepy Hollow Rd., # 4B, Falls Church, VA 22044.

House of Hope Foundation, 235 W 9th St., San Pedro, CA 90731.

Exodus Recovery, 9808 Venice Blvd., Suite 700, Culver City, CA  90232.

Homaira Behsudi-Wali, M.D., 6845 Elm St., #710, McLean, VA 22101.

Yael Israel, MSW, RMT, LCSW, 520 N Washington St., Falls Church, VA 22046.

AdventHealth Central Texas, 2201 S Clear Creek Rd., Killeen, TX 76549.

SignatureCare Emergency Center, 800 W Central Texas Expy., Killeen, TX 76541.

The Joint Chiropractic, 737 Louis Henna Blvd., Suite 200, Round Rock, TX 78664.

**INTERROGATORY NO. 4:**

IDENTIFY each GATHERING YOU attended at which YOU contend CROW was present for any part.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further

information becomes available, Plaintiff responds as follows:

Plaintiff attended one sex party at Defendant Crow's house in Dallas on or around July 20, 2019.

**INTERROGATORY NO. 5:**

State all facts that support YOUR contention that the "key financial support of the enterprise was Defendant Trammell S. Crow, Jr. [sic]," as alleged in paragraph 29 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Defendant Crow provided financial support to the Venture in the form of numerous payments to Rick Hubbard which were used to support Rick Hubbard to allow him to continue to promote the Venture, and which provided him inducement to do so. Crow also provided non-financial support in the form of a venue for the Venture's sex parties and providing additional clients and customers of the Venture. Further, Crow employed, paid hush money to, and otherwise compensated other participants in the Venture, including but not limited to Defendant Coe Juracek.

**INTERROGATORY NO. 6:**

State all facts that support YOUR contention that "Crow was involved from the very start of the Venture in 2010, knew full well all the details of the force, fraud, threat, and coercion that Rick used (in substantial part due to his prior relationship with Hubbard), and without him the Venture never could have succeeded, or indeed, ever gotten started," as alleged in paragraph 30 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not

withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff Hubbard first met Defendant Crow in summer 2009 at the Dallas nightclub Plush. Plaintiff Hubbard introduced Defendant Crow to Defendant Rick Hubbard in late 2009. By 2010, Defendant Rick Hubbard had started pressuring Plaintiff Hubbard to perform sex acts with Defendant Crow's then-girlfriend, Presley; find other women for the gatherings; and continue participating in the sex parties hosted and financed by Defendant Crow. Defendant Crow served as a catalyst to the Venture, as Rick Hubbard learning of the friendship between Crow and Plaintiff Hubbard caused Rick Hubbard to see the financial and social profitability of the Venture. Given his communications with Rick Hubbard, Plaintiff Hubbard, and Plaintiff, Crow was aware of all aspects of the Venture. Rick Hubbard additionally spoke to Plaintiff constantly throughout 2019 of Crow's involvement in his life and supporting the Venture.

**INTERROGATORY NO. 7:**

State all facts and legal theories that support YOUR contention that "Trammell was key to the Venture's existence and long running success," as alleged in paragraph 31 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

See Response No. 6. In addition to Crow providing Rick Hubbard the inspiration for the Venture and providing financial support, Crow's provisioning of venues and drugs for the Ventures sex parties and the recruiting of further clients and customers of the Venture allowed it to continue and grow.

**INTERROGATORY NO. 8:**

State all facts and legal theories that support YOUR contention that YOU were "traffic[ked] … to Crow," as alleged at paragraph 33 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome, and because it calls for legal conclusions. However, objection notwithstanding, Plaintiff was forced, under the influence of forced drug-use, coercion, and physical and other threats, to engage in sex acts for the prurient and social benefit of Crow at Crow's Dallas residence on or around July 20, 2019.

**INTERROGATORY NO. 9:**

IDENTIFY each "other victim of the Venture" that YOU allege was "traffic[ked] … to Crow," as alleged at paragraph 33 and 34 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff Hubbard.

A woman known to Plaintiff as "Renee."

Monica Farkus.

A woman known to Plaintiff as "Tina."

**INTERROGATORY NO. 10:**

State all facts that support YOUR contention that YOU "told Crow that Rick was forcing [YOU] to perform sex acts and forcing [YOU] to take drugs to induce such acts," as alleged in

paragraph 35 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff Goedinghaus does not make the cited allegation in paragraph 35 of the Complaint.

**INTERROGATORY NO. 11:**

State all facts and legal theories that support YOUR contention that "Rick and Crow benefitted from working together to get other to join the Venture as co-investors and clients," as alleged at paragraph 37 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome; because it calls for legal conclusions; and because it is duplicative of prior requests (see Interrogatory Nos. 5, 6, 7). However, objection notwithstanding, Rick Hubbard and Crow mutually benefitted from their creation of and continued participation in the Venture—Rick Hubbard through financial, sexual, drug-related, and social benefit, and Crow from the receipt of sex acts, drugs, and social benefit. All of these benefits were enhanced as others joined and participated in the Venture.

**INTERROGATORY NO. 12:**

State all facts that support YOUR contention that CROW was "doing business with Rick and the Venture," as alleged at paragraph 185 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not

withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome, and because it is duplicative of prior requests (see Interrogatory Nos. 5, 6, 7, 11). However, objection notwithstanding, Crow invested in the Venture through various payments to Rick Hubbard, including through his companies including Integrity Based Marketing, LLC.

**INTERROGATORY NO. 13:**

State all facts and legal theories that support YOUR contention that CROW "enticed, harbored, provided, obtained, maintained, patronized and solicited [YOU].... knowing or in reckless disregard of the fact that force, threats of force, or coercion would be used to cause [YOU] [to] engag[e] in a commercial sex act," as alleged at paragraphs 317 to 325 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. However, objection notwithstanding, Crow enticed, harbored, provided, obtained, maintained, patronized and solicited Plaintiff by forcing her to don an outfit purchased at a sex shop, to put on a show by performing sex acts for Crow with Rick Hubbard, and to otherwise acquiesce to Crow's pleasures on or around July 20, 2019.

**INTERROGATORY NO. 14:**

State all facts and legal theories that support YOUR contention that "Crow knew, or recklessly disregarded, that [YOU] would be forced to engage in commercial sex acts," as alleged in paragraphs 325, 326, 327, and elsewhere in the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. However, objection notwithstanding, see Response Nos. 8, 13.

**INTERROGATORY NO. 15:**

State all facts that support YOUR contention that "Crow maintained each Plaintiff by providing financial support," and patronized each Plaintiff by paying them to perform sex acts for himself and others," as alleged in paragraphs 322 and 323 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

As discussed above, Crow invested in the Venture through various payments to Rick Hubbard, including through his companies including Integrity Based Marketing, LLC, which was used to provide financial support for Plaintiff.

**INTERROGATORY NO. 16:**

State all facts and legal theories that support YOUR contention that CROW "allegedly kn[e]w of [*sic*] should have known of the trafficking acts," as alleged in paragraph 326 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions.

However, objection notwithstanding, Crow had actual knowledge of the trafficking acts because he directed them: Crow enticed, harbored, provided, obtained, maintained, patronized and solicited Plaintiff by forcing her to don an outfit purchased at a sex shop, to put on a show by performing sex acts for Crow with Rick Hubbard, and to otherwise acquiesce to Crow's pleasures on or around July 20, 2019.

**INTERROGATORY NO. 17:**

State all facts and legal theories that support YOUR contention that "Crow provided assistance, support and facilitation to the Venture through financial aid…. [s]pecifically [by] provid[ing] tens of thousands of dollars of payments to Rick Hubbard and the Venture, including under the pretext of paying for 'family lawyers' or business investments," as alleged at paragraph 329 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory because to the extent that it calls for legal conclusions and is duplicative of prior requests (see Interrogatory Nos. 5, 6, 7, 11, 12). However, objection notwithstanding, as discussed above, Crow invested in the Venture through various payments to Rick Hubbard, including through his companies including Integrity Based Marketing, LLC, in addition to providing venues for the Venture's sex parties and recruiting customers and clients to the Venture. On information and belief, Crow provided at least $100,000.00 worth of financial aid or support to Rick Hubbard and the Venture, including by means of payments to Rick Hubbard's lawyers during his custody battles with Plaintiff Hubbard.

**INTERROGATORY NO. 18:**

State all facts and legal theories that support YOUR contention that "Crow received multiple things of value from the Venture, including in the form of sex acts (including Plaintiff

Hubbard engaging in sex acts with Crow's then-girlfriend and watching Plaintiff Goedinghaus have sex) and the social benefits and esteem of the Venture providing sex acts to guests at his parties," as alleged in paragraph 330 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. However, objection notwithstanding, Crow's benefits were ongoing. Crow would constantly receive images of naked women, including Plaintiff and Plaintiff Hubbard, from Rick Hubbard. Crow also received sex acts from Plaintiff, including at his Turtle Creek house when he pressured Plaintiff into allowing him to observe Plaintiff having sex with Rick Hubbard. Crow also benefitted from hosting, on information and belief, more than 50 sex parties at his residences, where many guests received sex acts from Plaintiff Hubbard.

**INTERROGATORY NO. 19:**

State all facts and legal theories that support YOUR contention that CROW engaged in labor trafficking under the TVPA by "obtain[ing] [YOUR] services," as alleged in paragraph 331 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. However, objection notwithstanding, Crow received sex acts from Plaintiff, including on or about July 20, 2019, by observing her having sex with Rick Hubbard as discussed above, for which

Rick Hubbard received compensation, and which Rick Hubbard forced Plaintiff to do for Crow as an incentive to allow Rick Hubbard to join him on another "Kiddie Campout" in 2019.

**INTERROGATORY NO. 20:**

IDENTIFY every name that you have used from January 1, 2009 to the present, including, but not limited to, every legal name, alias, pseudonym, stage name and pen name.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Kayla Claire Goedinghaus, Lily, Lillian.

**INTERROGATORY NO. 21:**

IDENTIFY all YOUR EMPLOYMENT from January 1, 2009 to the present.

**RESPONSE:**

Subject to and without waiving the above-mentioned General Objections—although not withholding any information on such basis—and reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome, and not reasonably calculated to the discovery of admissible evidence. However, objection notwithstanding:

Red Robin, in or about 2009 to 2011 and 2013 to 2014, Training Manager and bartender.

Sprouts Farmer's Market, in or about 2017 to 2019, and January to June 2020, Training Manager and Meat Cutter.

Target, few months in late 2018, overnight stocker.

EcoLoft Homes, from December 2018 to September 2019, Executive Assistant.

Terranea Resort, in or about November 2021 to June 2022, Banquet and Line Chef.

Reset180, in or about June 2023 to August 2023, IT Technical Internship.

Dogwood Tavern, in or about September 2023 to present, as a server.

Chelsea Siena LLC, March 2024 to present, in marketing and website design.

Dated: Tiburon, California
       March 13, 2024

By: _____
Matthew W. Schmidt*
**SCHMIDT LAW CORPORATION**
116A Main Street
Tiburon, California 94920
Telephone:    (415) 390-6075
matt@schmidtlc.com
*Attorney for Plaintiffs*
*Admitted Pro Hac Vice

## VERIFICATION

I, Kayla Goedinghaus, have reviewed the foregoing Plaintiff Kayla Goedinghaus's Response to Defendant Crow's First Set of Interrogatories and declare under penalty of perjury under the laws of the United States of American that the foregoing is true and correct to the best of my knowledge and recollection.


Executed on March 13, 2024


/s/Kayla Goedinghaus
Kayla Goedinghaus

19

EXHIBIT E

| | |
|---|---|
| **From:** | Jerry Hawxhurst |
| **To:** | Justin Loveland; Ken Stone |
| **Cc:** | Patrick Nichols; matt@schmidtlc.com; Jill Bindler |
| **Subject:** | Re: [EXTERNAL] Re: Hubbard v. Hubbard, et al. |
| **Date:** | Wednesday, March 20, 2024 6:25:52 PM |

If I could add a point of clarification:   We are not conceding that the other responses are proper.  Many are not.   We've identified examples to prove our points should we be forced to seek relief from the court.

-Jerry Hawxhurst

Cell: 310-293-2233

**From:** Ken C. Stone <kstone@grayreed.com>
**Sent:** Wednesday, March 20, 2024 7:02:06 PM
**To:** Justin Loveland <jloveland@rsf-llp.com>
**Cc:** Patrick Nichols <pat@hawxhurstllp.com>; matt@schmidtlc.com <matt@schmidtlc.com>; Jerry Hawxhurst <jerry@hawxhurstllp.com>; Jill Bindler <jbindler@grayreed.com>
**Subject:** Re: [EXTERNAL] Re: Hubbard v. Hubbard, et al.

Yes, it is 14. Sorry about that.
Sent from my iPhone

**Ken C. Stone**
**Partner**
Tel 469.320.6106 | Fax 469.320.6878 | kstone@grayreed.com
1601 Elm St., Suite 4600 | Dallas, TX 75201
grayreed.com | Connect with me on LinkedIn



CONFIDENTIALITY NOTICE: This electronic transmission and any attachments constitute confidential information which is intended only for the named recipient(s) and may be legally privileged. If you have received this communication in error, please contact the sender immediately. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication by anyone other than the named recipient(s) is strictly prohibited.

On Mar 20, 2024, at 6:35 PM, Justin Loveland <jloveland@rsf-llp.com> wrote:

Patrick,

I write to clarify what may be a typo in your email, based on the conversation today. Regarding the interrogatories, do you mean to say No. 15 or 14?

As you will recall, Jill had first said 15 when she listed the six separate

interrogatories, and then Matt clarified, in response to which both Ken and Patrick said it was not No. 15 but actually No. 14. The below email again references No. 15.

Please clarify so that we can move forward accordingly.

All the best,

Justin

Justin M. Loveland | Associate
Reinhardt Savic Foley LLP
New York: 200 Liberty Street, 27th Floor, New York, NY 10281
Office: +1.212.710.0970 | Fax: +1 212.710.0971
jloveland@rsf-llp.com | www.rsf-llp.com | Bio
New York | London | Denver | Stuttgart

NOTICE: This message (and any attachments) contains information that is confidential, privileged and/or protected from disclosure under applicable law and is intended for the exclusive use of the party named on the message. If you are not the intended recipient, disclosure, copying, use or distribution of the information included in this message (and any attachments) is not authorized and may be unlawful. If you have received this document in error, please notify the sender immediately by return email and then destroy the original and any electronic or paper copy of this message. The content of this email does not create an attorney-client relationship and the recipient of this email should not rely solely upon the information provided herein.
TAX ADVICE DISCLAIMER: Please be aware that any advice contained in this email or any attachment hereto is not intended to be used, and cannot be used, either (a) for purposes of avoiding penalties imposed under the Internal Revenue Code, or (b) promoting, marketing, or recommending to another party any tax-related matter addressed herein.

**From:** Patrick Nichols <pat@hawxhurstllp.com>
**Sent:** Wednesday, March 20, 2024 6:31 PM
**To:** matt@schmidtlc.com <matt@schmidtlc.com>; Justin Loveland <jloveland@rsf-llp.com>
**Cc:** Jerry Hawxhurst <jerry@hawxhurstllp.com>; Ken Stone <kstone@grayreed.com>; Jill Bindler <jbindler@grayreed.com>
**Subject:** Hubbard v. Hubbard, et al.

[EXTERNAL EMAIL] DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Matthew and Justin,

This email memorializes our conference of counsel on various deficiencies with Plaintiffs' discovery, including their interrogatory responses and their long past due document productions.

Concerning the interrogatory responses, and as a threshold issue, Plaintiffs agreed to amend all responses so it is clear that plaintiffs are not withholding any information on the basis of any objection. As we explained, the responses were nearly two months late and, as a result, any objections are waived. (In any event, the "general objections" are improper in the Fifth Circuit.) Accordingly, we expect the amended responses to be served without objections at all.

Plaintiffs also agreed to amend Interrogatory Nos. 1, 2, 4, 8, 11, and 15 to include more detail as required by the requests.  For example, in response to Interrogatory No. 2, Plaintiffs will state the date, time, location, host(s), attendees, and who engaged in sex acts at the alleged event.  And Ms. Goedinghaus agreed to amend her responses so that they reflect only her personal knowledge and to provide a proper verification.  As we stated, we need the amended responses by Friday or we will be forced to move to compel next week and seek sanctions for the attorney's fees incurred.

Concerning the document production, Plaintiffs promised that we would receive some documents "by the end of this week."  If the document production is not complete by this week, we will move to compel the production and seek sanctions for the attorney's fees incurred as well.

-Patrick

---

**Patrick B. Nichols**
**Hawxhurst**llp
11111 Santa Monica Blvd., Ste. 620
Los Angeles, California 90025
Direct: (310) 893-5157
Cell: (424) 259-2311
Fax: (310) 893-5195
www.hawxhurstllp.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

EXHIBIT F

```
 1                    REPORTER'S RECORD

 2                CAUSE NO. D-1-FM-20-001948

 3

 4   IN THE INTEREST OF          )  IN THE DISTRICT COURT OF
                                 )
 5                               )
                                 )
 6   ███████████████████████     )  TRAVIS COUNTY, TEXAS
                                 )
 7                               )
                                 )
 8   A CHILD                     )
     _____)  98TH JUDICIAL DISTRICT
 9

10

11

12          _____

13                      REVIEW HEARING
            MOTION TO MODIFY TEMPORARY ORDERS
14          _____

15

16

17

18          On August 28, 2023, the following proceedings

19   came on to be heard in the above-entitled and numbered

20   cause before the Honorable Julio A. de la Llata, Judge

21   Presiding, in Austin, Travis County, Texas, held via

22   videoconference.

23

24

25          Proceedings reported by machine shorthand.
```

1   at the end of the day, if there is additional time or

2   not.

3                    **MS. WHISNANT:**  Okay.

4                    **THE COURT:**  Ms. Hubbard, would you please

5   unmute yourself?

6                    **THE WITNESS:**  Yes, sir.

7                    **THE COURT:**  Please raise your right hand.

8                    (The witness was sworn.)

9                    **THE WITNESS:**  Yes, sir.

10                   **THE COURT:**  Go ahead, Ms. Whisnant.

11                   **MS. WHISNANT:**  Thank you, Your Honor.

12                   JULIA ALEXIS HUBBARD,

13       having been duly sworn, testifies as follows:

14                   **DIRECT EXAMINATION**

15  **BY MS. WHISNANT:**

16       Q    Ms. Hubbard, could you please state your name

17  for the record.

18       A    Julia Alexis Hubbard.

19       Q    And how do you know Ms. Goedinghaus?

20       A    I met Ms. Goedinghaus when I came to visit my

21  daughter with Mr. Hubbard in May of 2019.  It was the

22  first time we met.  Also, the first day I also met

23  Mr. Burlingame.

24       Q    And so where was Summer living at that time?

25       A    She had been taken illegally and he was

1   of -- and asked her to call the hotline as well to see

2   if the same things had happened to her.

3          I hope I'm staying on track.  But, yeah,

4   that's what happened.

5          Q    So my question was, how did you find Reset180?

6          A    It was a referral to me at the time when I was

7   also working with one of the other advocates at the

8   time.  It was just a referral.

9          Q    And was it through Reset180 that you got

10  connected to Ms. Israel?

11         A    No, actually.  I found myself a therapist.

12  Googled and found somebody who was really great, trauma

13  informed, and what really happened was I found her on

14  Facebook in a group called Arlington Neighbors helping

15  each other through COVID.  And there were a lot of great

16  questions, like helping families get groceries and

17  therapists that were offering their services.  And I

18  found her through that, and then Googled her and she --

19  her ideals and her ideology are important to me.  And so

20  she was a great fit for me.

21         Q    And have you done -- have you taken any

22  classes or done any training for yourself while you've

23  been there in Virginia?

24         A    Yes, ma'am.  I'm a board-certified criminal

25  profiler and a board-certified human-trafficking

1  investigator.  I was offered the job of the Fairfax

2  County human-trafficking task force director.

3          At the moment, I'm recovering from 758 rapes

4  and trying to put our lives back together.  And these

5  organizations are great because they remove the barriers

6  and allow us a safe place to heal, be good parents, and

7  be supportive so that we can continue to be -- learn and

8  grow.

9          And so, yes, I have.  And I'm very proud of

10  that.  I was an expert witness for Congress as well.

11  I'm very active in the Virginia Coalition Against Human

12  Trafficking.  I'm a senior board member there and policy

13  adviser.

14     Q    And you mentioned working on some legislation;

15  what was that?

16     A    Yes, ma'am.  I was instrumental in House Bill

17  2133, which vacates -- it's a vacatur bill for survivors

18  of human trafficking.  I'm continuing to work on local

19  legislation here.  Sometimes federal.  It depends on

20  what bill we're really excited about at the time.

21     Q    And how long have you been free of trafficking

22  and how long have you been sober?

23     A    Sure.  So I -- I take offense to the word

24  "sober" because I was never using drugs.  I was put on

25  drugs.  I went into my father's basement when I got here

```
 1                    REPORTER'S CERTIFICATE

 2

 3   STATE OF TEXAS    )
                       )
 4   COUNTY OF TRAVIS  )

 5        I, Latasha Bates, Official Court Reporter in and

 6   for the Family Court of the Honorable Julio A. de la

 7   Llata of Travis County, State of Texas, do hereby

 8   certify that the above and foregoing contains a true and

 9   correct transcription of all portions of evidence and

10   other proceedings requested in writing by counsel for

11   the parties to be included in this volume of the

12   Reporter's Record, in the above-styled and numbered

13   cause, all of which occurred remotely via

14   videoconference and were reported by me.

15        I further certify that this Reporter's Record of

16   the proceedings truly and correctly reflects the

17   exhibits, if any, admitted by the respective parties.

18        WITNESS MY OFFICIAL HAND this the 3rd day of March

19   2024.

20

21                    /s/ Latasha Bates
                       _____
                       Latasha Bates, Texas CSR No. 9457
22                     CSR Expiration Date:  1/31/26
                       Official Court Reporter
23                     Family Court
                       The Honorable Julio A. de la Llata
24                     Travis County, Texas
                       P.O. Box 1442
25                     Buda, Texas 78610
                       tasha.bates@traviscountytx.gov
```