# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

Matthew W. Schmidt*
**SCHMIDT LAW CORPORATION**
116A Main Street
Tiburon, California 94920
Telephone: (202) 746-9110
matt@schmidtlc.com
Attorney for Plaintiffs
*Admitted pro hac vice*

| | |
|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, | ) ) ) |
| Plaintiffs, | ) |
| v. | ) Case No. 5:23-cv-00580-FB |
| TRAMMELL S. CROW, JR.; BENJAMIN TODD ELLER; RICHARD HUBBARD; MELISSA MILLER; SCOTT WOODS; MRUGESHKUMAR SHAH; MICHAEL CAIN, COE JURACEK, PHILIP ECOB, H.J.COLE; CODY MITCHELL; KURT KNEWITZ; RALPH ROGERS; ROBERT PRUIT; SCOTT BRUNSON; CASE GROVER; RICHARD BUTLER; MICHAEL HYNES, JR.; SHAWN MAYER; JADE MAYER; AARON BURLINGAME; and RCI HOSPITALITY HOLDINGS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Judge: Hon. Fred Biery Date Action Filed: May 8, 2023 (transferred) |
| Defendants. | ) ) ) ) ) ) ) |

**DECLARATION OF MATTHEW W. SCHMIDT IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO TRAMMELL S. CROW MOTION TO COMPEL AMENDED
RESPONSES TO INTERROGATORIES AND FOR AN AWARD OF EXPENSES
OCCURED**

I, Matthew W. Schmidt, declare as follows:

1. I am a partner of Schmidt Law Corporation, counsel of record for Plaintiffs in this action, and make this declaration in support of the above-referenced motion.

2. Attached hereto as Exhibit A is a true and correct copy of an email and attachments that I sent to counsel for Defendant Crow on Sunday, March 24, 2024, at 5:16 p.m. PDT/7:26 p.m. CDT.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in the Town of Tiburon, April 1, 2024.


By: _____
Matthew W. Schmidt*
**SCHMIDT LAW CORPORATION**
116A Main Street
Tiburon, California 94920
Telephone:     (415) 390-6075
matt@schmidtlc.com
*Attorney for Plaintiffs*
*Admitted Pro Hac Vice

# EXHIBIT A

## Hubbard et al. v. Crow, et al. - Plaintiffs' Amended Responses to Defendant Crow's Interrogatories

### Matthew Schmidt <matt@schmidtlc.com>

Sun 3/24/2024 5:16 PM

To:Ken Stone <kstone@grayreed.com>;Jerry Hawxhurst <jerry@hawxhurstllp.com>;Jill Bindler <jbindler@grayreed.com>;Patrick Nichols <pat@hawxhurstllp.com>
Cc:Stefan Savic <ssavic@rsf-llp.com>;Justin Loveland <jloveland@rsf-llp.com>

📎 2 attachments (1 MB)
Pl. Goedinghaus's Amended Response to Def. Crow's Interrogatories.pdf; Pl. Hubbard's Amended Response to Def. Crow's Interrogatories.pdf;

Ken, Jerry, Jill, and Pat:

Please see Plaintiffs' amended responses to Mr. Crow's interrogatories. As you had discussed that you intended to move on Monday if we did not reach agreement, we had taken the weekend to give more fulsome responses, which I understood to be consistent with our discussion. We will respond to your motion in due course.

While we had some unexpected technical delays on our documents, we are now on track for an initial production tomorrow, Monday. I will follow up further once ready.

Best,
Matt

—



Matthew W. Schmidt

116A Main Street

Tiburon, California 94920

415.390.6075

matt@schmidtlc.com

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

Matthew W. Schmidt*
**Schmidt Law Corporation**
116A Main Street
Tiburon, California 94920
Telephone:    (415) 390-6075
matt@schmidtlc.com
*Attorney for Plaintiffs*
*Admitted Pro Hac Vice

| | | |
|---|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, | ) ) ) | |
|              Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| TRAMMELL S. CROW, JR.; BENJAMIN TODD ELLER; RICHARD HUBBARD; MELISSA MILLER; SCOTT WOODS; COE JURACEK; PHILIP ECOB; CODY MITCHELL; RALPH ROGERS; ROBERT PRUITT; SCOTT BRUNSON; CASE GROVER; MICHAEL HYNES, JR.; SHAWN MAYER; JADE MAYER; AARON BURLINGAME; and  RCI HOSPITALITY HOLDINGS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 5:23-cv-00580-FB<br><br>Judge: Hon. Fred Biery<br>Date Action Filed: May 8, 2023<br>(transferred) |
|              Defendants. | ) ) | |

**PLAINTIFF KAYLA GOEDINGHAUS'S FIRST AMENDED RESPONSE TO DEFENDANT CROW'S FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure ("Rule") 26 and 33, Plaintiff Kayla Goedinghaus hereby responds to the Interrogatories of Defendant Trammell S. Crow, Jr.

## GENERAL OBJECTIONS

1.      By responding to any Interrogatory, Plaintiff Kayla Goedinghaus ("Plaintiff") does not concede the materiality of the subject to which it refers.

2.      By responding to each Interrogatory, Plaintiff does not make any representation as to whether the documents are responsive to such Requests exist or are in her possession, custody, or control.

3.      Inadvertent production of any information that is privileged, was prepared in anticipation of litigation, or are otherwise immune from discovery, shall not constitute a waiver of any privilege or of another ground for objecting to discovery with respect to that document or any other document, or its subject matter, or the information contained therein, or of Plaintiff's right to object to the use of any such the information contained therein during any proceeding in this litigation or otherwise. All documents containing any such inadvertently produced material or information shall be returned to Plaintiff's attorneys, along with all copies thereof.

4.      Plaintiff will provide information within her knowledge or which she can reasonably determine based on available documents.

5.      Plaintiff is continuing to search for information responsive to the Interrogatories and therefore reserves the right to supplement her responses to each Interrogatories with additional information if and when such information becomes available to Plaintiff. Plaintiff also reserves the right to object to the future disclosure of any such information.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

For each DEFENDANT, state all facts that support YOUR contention that they "received benefits from the Venture," including but not limited to "receiving sex and media of naked women or individuals engaged in sex acts," "social benefits or "financial benefits," as alleged at paragraphs 4, 38, 141, 330 and 414 and throughout the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Defendant Trammel S. Crow, Jr. ("Crow") benefitted by receipt of sex acts; regular social dates; live sex performances; and the social value of having parties enhanced by the Venture's sex acts. Plaintiff saw Rick Hubbard texting or otherwise electronically sending photos and/or videos of Plaintiff naked or in bondage on multiple occasions starting in or around February 2019 through approximately October 2019, and then from approximately November 2019 through approximately January 2020. Plaintiff would look through Rick Hubbard's phone or computer on a near daily or at least weekly basis during that time period, including when Rick Hubbard would have her use his phone and ask her to perform tasks like a personal assistant, and Rick Hubbard's photo (and video) stream to Crow was near constant. Rick Hubbard also told Plaintiff that he would be sending photos and/or videos to Crow in a bragging or ostentatious fashion. This increased in particular just before the July 20, 2019 weekend when Plaintiff was forced to perform sex acts for Crow at Crow's Dallas residence, in order to "show off" Plaintiff to Crow as Rick Hubbard's new girlfriend.

Defendant Benjamin Todd Eller ("Eller") benefitted by receipt of financial payments, totaling monthly fees ranging from $2,500 to $5,000 from at least December 2018 through January 2020. Rick Hubbard would force Plaintiff to send Eller money over CashApp, often in

4

amounts of $1,000 or $1,200; the minimum base monthly payment was $1,200, to cover Plaintiff's weekly visits with Eller. All amounts beyond the base monthly pay were for additional services, as Eller and Rick Hubbard would talk over the phone late into the night and co-write assessments of Plaintiff, upon which Eller's prescription recommendations would be based. Per the emails Plaintiff saw between Eller and Rick Hubbard, Eller would ask for $800 to $1,000 for each of these nights, depending on how much Rick Hubbard contributed (if Hubbard contributed more, Eller would charge less). These payments sometimes totaled more than $5,000 per month, as Rick Hubbard would also use Eller as a business consultant and life coach. One night before a court hearing, in or around June 2019, Eller charged $1,000 just for Plaintiff to be able to speak with him.

Defendant Richard Hubbard ("Rick Hubbard") benefitted by receiving cash payments, social benefits, and sex acts. In particular, he has received approximately $250,000 from Paul Pendergrast, who attended at least one sex party at which Plaintiff was present at 501 Havana Street in or about June 2019; the Pendergrast payments included approximately $50,000 in order to find Plaintiff Hubbard when she escaped with her daughter Summer. Rick Hubbard has also received approximately $27,000 from Defendant Scott Brunson under the guise of an investment in EcoLoft Homes; however, the incentive for the "investment" was for Plaintiff to have sex with Brunson, as Plaintiff saw the physical exchange of money after she was forced to have sex with Brunson in or round February or March 2019. Rick Hubbard has also received at least $20,000 from Defendant Trammel Crow through a "loan" in relation to a court hearing in or around June 2019, which Plaintiff observed Rick Hubbard ask of Crow over the phone, following which Rick Hubbard told her that he would be wired the money. Rick Hubbard also received approximately $1,000 from Defendant Burlingame in or around April 2019. Rick Hubbard additionally received

other benefits, including but not limited to rent and apartment perks, such as having the hot water tank fixed, by Defendant Ralph Rogers in exchange for trafficking Plaintiff to perform sex acts.

Defendant Melissa Miller ("Miller") benefitted by receipt of payments of approximately $60 per month each for Plaintiff's and Rick Hubbard's visits to Defendant Miller (totaling $120 per month). Plaintiff enrolled in Miller's subscription payment plan in April 2019 and then discontinued in September 2019. Rick Hubbard continued in Miller's subscription plan at least for as long as after Plaintiff returned after leaving him in late 2019, *i.e.*, at least through January 2020, as Rick Hubbard would force Plaintiff to run errands for him, including picking up his prescriptions. This represented payments to Miller of at least $960 total.

Plaintiff Goedinghaus never saw or treated with Defendant Scott Woods ("Woods").

Defendant Coe Juracek ("Juracek") benefitted by receiving social cachet in exchange for writing character reference letter in support of Rick Hubbard's child custody case against Plaintiff Hubbard, which Plaintiff saw being exchanged. Juracek also sent Plaintiff to buy items at a sex shop on or about June 19, 2019, just before Plaintiff's weekend at Crow's residence.

Defendant Phil Ecob ("Ecob") benefitted through receiving naked photos of Plaintiff, including in bondage, in exchange for character references for Rick Hubbard's use in court.

Defendant Cody Mitchell ("Mitchell") benefitted by receiving naked photos of Plaintiff and by enjoying control over Plaintiff by means of telling her over speaker phone that he would tie her up and rape her with Rick Hubbard in the middle of the night, in or around April 2019, though Rick Hubbard stayed in contact with Mitchell long after that. Mitchell also told Plaintiff over speaker phone that he would get her arrested for conspiracy for kidnapping, in connection with the event when Plaintiff Hubbard escaped with her daughter Summer.

Defendant Ralph Rogers ("Rogers") benefitted by attending sex parties on his property at

28827 Fine Road, Marble Falls, Texas, where Plaintiff and Rick Hubbard were staying from approximately April 2019 on, during which time Rogers would visit the house about once every two weeks; by receiving sex acts in the form of watching Plaintiff naked or in lingerie; by receiving sex acts in the form of watching Rick Hubbard and Plaintiff having sex; by receiving sex acts in the form of groping Plaintiff while masturbating; by receiving naked photos of Plaintiff; and by being offered and doing drugs.

Defendant Robert Pruitt ("Pruitt") benefitted by receiving sex acts with Plaintiff Hubbard and receiving naked photographs of Plaintiff Hubbard, which Plaintiff learned through Rick Hubbard's attempts to groom Plaintiff in comparing her to Plaintiff Hubbard. Plaintiff also spoke with Pruitt in or around April 2019 when he leant Rick Hubbard money.

Defendant Scott Brunson ("Brunson") benefitted by receiving sex acts from Plaintiff at 1605 Grayford Drive, Austin, Texas. In particular, in or around December 2018, Plaintiff was forced to invite Brunson to this residence, on which night Brunson gave Plaintiff a drug which made her lose consciousness for at least 10 minutes, during which time he tried to rape her, though failed as Rick Hubbard intervened. Then, in the beginning of 2019, Brunson again came to the residence, at which time he, Plaintiff, and Rick Hubbard had a threesome with mainly Brunson having sex with Plaintiff.

Defendant Case Grover ("Grover") benefitted by receipt of cash payments which he confiscated from Plaintiff Hubbard.

Defendant Michael Hynes ("Hynes") benefitted by receipt of cash payments which he confiscated from Plaintiff Hubbard, as well as information from Rick Hubbard as to Plaintiff Hubbard. Plaintiff overheard Hynes and Rick Hubbard on the phone often, badmouthing Plaintiff Hubbard and exchanging information on her whereabouts.

Defendant Shawn Mayer ("Shawn Mayer") benefitted by receiving cash payments, hotel rooms, and gifts, as well as social cachet. This included, but was not limited to, roughly $800-1,000 for one night during the weekend of July 19-20, 2019, when Shawn and Jade Mayer took care of Plaintiff's and Rick Hubbard's children.

Defendant Jade Mayer ("Jade Mayer") benefitted by receiving cash payments, hotel rooms, and gifts, as well as social cachet. This included, but was not limited to, roughly $800-1,000 for one night during the weekend of July 19-20, 2019, when Shawn and Jade Mayer took care of Plaintiff's and Rick Hubbard's children.

Defendant Aaron Burlingame ("Burlingame") benefitted by receiving information about and sex acts with Plaintiff. Plaintiff overheard Rick Hubbard and Burlingame talking on the phone for hours at a time in or around April 2019, during which time Burlingame gave Rick Hubbard $1,000 as a putative investment. Burlingame additionally received sex acts from Plaintiff, in return for allowing her to see her daughter and "played house." This pattern would occur often between approximately April 2019 and December 2021.

Plaintiff Goedinghaus never interacted with Defendant RCI Hospitality Holdings, Inc. ("RCI").

**INTERROGATORY NO. 2:**

IDENTIFY every SEX PARTY that YOU attended since January 1, 2009.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome. However, objection notwithstanding, Plaintiff attended approximately 20 sex parties in 2019, at either Rick

Hubbard's residence or others' private residences in the Austin area, as well as at the club Friends, and additionally attended one sex party at Defendant Crow's house in Dallas on or around July 20, 2019. The sex parties Plaintiff attended include but are not limited to the following:

1. A sex party during Plaintiff's and Rick Hubbard's first date, in or around November 2018, at the Dungeon sex club and then at Rick Hubbard's residence, with Plaintiff's friend and her partner.

2. On or around New Years 2019, at a house with approximately 30 other people.

3. In or around November 2018, at the 1605 Grayford residence.

4. Starting in or around December 2018, Plaintiff and Rick Hubbard went to Friends sex club almost once a week or biweekly through April 2019. At various of these sex parties, Plaintiff would be forced to have sex with Rick Hubbard and others would masturbate around them; Plaintiff was forced to have sex with an employee of Friends; and she was forced to have sex with Rick Hubbard in front of the entire club.

5. In or about December 2018 at the 1605 Grayford residence, with Scott Brunson and other drug dealers, Gary and Ernesto, who forced Plaintiff to have sex for drugs.

6. In or around November or December 2018 at the 1605 Grayford residence.

7. In or around February 2019 at the 1605 Grayford residence.

8. In or around mid- to late spring 2019 at the Colette Club in Austin, Texas. (sp?) sex club where Rick wanted her to swap with this couple: they were already living in Marble Falls, so around mid to late spring 2019

9. Late spring 2019 at an Airbnb.

10. On or about March 26, 2019, at an Airbnb in Austin, Texas.

11. Multiple sex parties at the Marble Falls residence (28827 Fine Road), including at least six with people from Friends and at least two with Ralph Rogers present in summer 2019.

12. One sex party with a stranger Rick Hubbard invited to the Marble Falls residence in or around summer 2019.

13. One sex party at the Marble Falls residence with the owners of Friends, in or around June or July 2019 before Plaintiff and Rick Hubbard went to Dallas to meet Crow. Invited Danny and Ken and owners of sex club Friends, Adrienne and Mark (but Mark didn't come, just Adrienne; Mark was just her partner who also owned the club), in or around June or July 2019 before the Trammell weekend

14. On or about July 19-20, 2019, at Crow's Dallas house.

15. In or around August 2019 in north Austin, when Plaintiff was forced to have sex with a prostitute.

16. In or around October 2019 at the Havana House, during which Paul Pendergrast stopped by in the middle of the sex party.

17. In or around October 2019 at an Airbnb, when Plaintiff was forced to have sex with Monica Farkus, for which Rick Hubbard paid Farkus.

**INTERROGATORY NO. 3:**

IDENTIFY every health care provider who has treated YOU for any physical or mental ailment or illness from January 1, 2009, to the present, including but not limited to doctors, nurse practitioners, chiropractors, psychiatrists, psychologists, addiction specialists, other practitioners of the healing arts, hospitals, clinics, medical offices, treatment facilities and emergency rooms.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds

as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. However, objection notwithstanding:

Benjamin Todd Eller, Ph.D., c/o Cameron Jones LLP, 8383 Wilshire Boulevard, Suite 800, Beverly Hills, CA 90211.

Melissa Miller, M.D., Premier Health MD Direct Primary Care, Cedar Park, TX, c/o Carroll Kelly Trotter and Franzen, 111 West Ocean Boulevard, 14th Floor, P.O. Box 22636, Long Beach, CA 90801; Germer Beaman & Brown PLLC, 301 Congress Ave., Suite 1700, Austin, TX 78701.

Steven Bodi, PA-C, 500 W Whitestone Blvd., Suite 100, Cedar Park, TX 78613.

Roy Faget, M.A., LPC, LMFT, 7701 North Lamar Blvd., Suite 331, Austin, TX 78752.

The Kind Clinic, 101 West Koenig Lane, Suite 100, Austin, TX 78751.

Vivent Health, 104 E Highland Mall Blvd, Austin, TX 78752.

AHF Healthcare Center, 1400 S Grand Ave., #801, Los Angeles, CA 90015.

AHF Healthcare Center – Falls Church, 2946 Sleepy Hollow Rd., # 4B, Falls Church, VA 22044.

House of Hope Foundation, 235 W 9th St., San Pedro, CA 90731.

Exodus Recovery, 9808 Venice Blvd., Suite 700, Culver City, CA  90232.

Homaira Behsudi-Wali, M.D., 6845 Elm St., #710, McLean, VA 22101.

Yael Israel, MSW, RMT, LCSW, 520 N Washington St., Falls Church, VA 22046.

AdventHealth Central Texas, 2201 S Clear Creek Rd., Killeen, TX 76549.

SignatureCare Emergency Center, 800 W Central Texas Expy., Killeen, TX 76541.

The Joint Chiropractic, 737 Louis Henna Blvd., Suite 200, Round Rock, TX 78664.

**INTERROGATORY NO. 4:**

IDENTIFY each GATHERING YOU attended at which YOU contend CROW was present for any part.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff attended one sex party at Defendant Crow's house in Dallas on or around July 19-20, 2019.

**INTERROGATORY NO. 5:**

State all facts that support YOUR contention that the "key financial support of the enterprise was Defendant Trammell S. Crow, Jr. [sic]," as alleged in paragraph 29 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Defendant Crow provided financial support to the Venture in the form of numerous payments to Rick Hubbard which were used to support Rick Hubbard to allow him to continue to promote the Venture, and which provided him inducement to do so. Crow also provided non-financial support in the form of a venue for the Venture's sex parties and providing additional clients and customers of the Venture. Further, Crow employed, paid hush money to, and otherwise compensated other participants in the Venture, including but not limited to Defendant Coe Juracek.

**INTERROGATORY NO. 6:**

State all facts that support YOUR contention that "Crow was involved from the very start of the Venture in 2010, knew full well all the details of the force, fraud, threat, and coercion that Rick used (in substantial part due to his prior relationship with Hubbard), and without him the Venture never could have succeeded, or indeed, ever gotten started," as alleged in paragraph 30 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff Hubbard first met Defendant Crow in summer 2009 at the Dallas nightclub Plush. Plaintiff Hubbard introduced Defendant Crow to Defendant Rick Hubbard in late 2009. By 2010, Defendant Rick Hubbard had started pressuring Plaintiff Hubbard to perform sex acts with Defendant Crow's then-girlfriend, Presley; find other women for the gatherings; and continue participating in the sex parties hosted and financed by Defendant Crow. Defendant Crow served as a catalyst to the Venture, as Rick Hubbard learning of the friendship between Crow and Plaintiff Hubbard caused Rick Hubbard to see the financial and social profitability of the Venture. Given his communications with Rick Hubbard, Plaintiff Hubbard, and Plaintiff, Crow was aware of all aspects of the Venture. Rick Hubbard additionally spoke to Plaintiff constantly throughout 2019 of Crow's involvement in his life and supporting the Venture.

**INTERROGATORY NO. 7:**

State all facts and legal theories that support YOUR contention that "Trammell was key to the Venture's existence and long running success," as alleged in paragraph 31 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

See Response No. 6. In addition to Crow providing Rick Hubbard the inspiration for the

Venture and providing financial support, Crow's provisioning of venues and drugs for the Ventures sex parties and the recruiting of further clients and customers of the Venture allowed it to continue and grow.

**INTERROGATORY NO. 8:**

State all facts and legal theories that support YOUR contention that YOU were "traffic[ked] … to Crow," as alleged at paragraph 33 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome, and because it calls for legal conclusions. However, objection notwithstanding, Plaintiff was forced, under the influence of forced drug-use, coercion, and physical and other threats, to engage in sex acts for the prurient and social benefit of Crow at Crow's Dallas residence on or around July 20, 2019. In particular, Crow received services in the form of sex acts and observing Plaintiff parade around in lingerie outfits, specifically including one in leopard print and another in a cowgirl outfit. Crow then indicated that he desired to watch Plaintiff have sex with Rick Hubbard, which Plaintiff was forced to do; Crow then observed the two having sex in front of him.

**INTERROGATORY NO. 9:**

IDENTIFY each "other victim of the Venture" that YOU allege was "traffic[ked] … to Crow," as alleged at paragraph 33 and 34 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff Hubbard.

Renee.

Monica Farkus.

Tina.

**INTERROGATORY NO. 10:**

State all facts that support YOUR contention that YOU "told Crow that Rick was forcing [YOU] to perform sex acts and forcing [YOU] to take drugs to induce such acts," as alleged in paragraph 35 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff Goedinghaus did not tell Defendant Crow this.

**INTERROGATORY NO. 11:**

State all facts and legal theories that support YOUR contention that "Rick and Crow benefitted from working together to get other to join the Venture as co-investors and clients," as alleged at paragraph 37 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome; because it calls for legal conclusions; and because it is duplicative of prior requests (see Interrogatory Nos. 5, 6, 7). However, objection notwithstanding, Rick Hubbard and Crow mutually benefitted from their creation of and continued participation in the Venture—Rick Hubbard through financial, sexual, drug-related, and social benefit, and Crow from the receipt of sex acts, drugs, and social benefit. All of these benefits were enhanced as others joined and participated in the Venture. In particular, Crow knew all about and endorsed Rick Hubbard's efforts to attract other co-investors;

the two were from opposite sides of society, and Rick Hubbard capitalized on the relationship by using the occasions Crow offered to meet other business men and others from Crow's world. Plaintiff overheard several conversations between the two to this effect. In reference to the Kiddie Campout in 2019, Plaintiff and Rick Hubbard missed it due to court hearings, but Rick Hubbard told Shawn and Jade Mayer to bring their children to the Kiddie Campout, during the nights of which the men would throw sex parties, following which Crow and Rick Hubbard would often attract more "business men" to come into the Venture in order to continue the fun.

**INTERROGATORY NO. 12:**

State all facts that support YOUR contention that CROW was "doing business with Rick and the Venture," as alleged at paragraph 185 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome, and because it is duplicative of prior requests (see Interrogatory Nos. 5, 6, 7, 11). However, objection notwithstanding, Crow invested in the Venture through various payments to Rick Hubbard, including through his companies including Integrity Based Marketing, LLC.

**INTERROGATORY NO. 13:**

State all facts and legal theories that support YOUR contention that CROW "enticed, harbored, provided, obtained, maintained, patronized and solicited [YOU].... knowing or in reckless disregard of the fact that force, threats of force, or coercion would be used to cause [YOU] [to] engag[e] in a commercial sex act," as alleged at paragraphs 317 to 325 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. However, objection notwithstanding, Crow enticed, harbored, provided, obtained, maintained, patronized and solicited Plaintiff by forcing her to don an outfit purchased at a sex shop, to put on a show by performing sex acts for Crow with Rick Hubbard, and to otherwise acquiesce to Crow's pleasures on or around July 20, 2019.

**INTERROGATORY NO. 14:**

State all facts and legal theories that support YOUR  contention that "Crow knew, or recklessly disregarded, that [YOU] would be forced to engage in commercial sex acts," as alleged in paragraphs 325, 326, 327, and elsewhere in the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. However, objection notwithstanding, see Response Nos. 8, 13. In particular, the reason Rick Hubbard forced Plaintiff to come to Crow's house during the July 19-20, 2019 weekend was to have her engage in commercial sex acts, including providing services for Crow such as parading around in lingerie and being forced to allow Crow to observe Plaintiff and Rick Hubbard having sex. In exchange for these services, Rick Hubbard provided drugs to Crow, including mushrooms, ecstasy, Adderall, and Xanax.

**INTERROGATORY NO. 15:**

State all facts that support YOUR contention that "Crow maintained each Plaintiff by providing financial support," and patronized each Plaintiff by paying them to perform sex acts for himself and others," as alleged in paragraphs 322 and 323 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds

as follows:

As discussed above, Crow invested in the Venture through various payments to Rick Hubbard, including through his companies including Integrity Based Marketing, LLC, which was used to provide financial support for Plaintiff.

**INTERROGATORY NO. 16:**

State all facts and legal theories that support YOUR contention that CROW "allegedly kn[e]w of [*sic*] should have known of the trafficking acts," as alleged in paragraph 326 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. However, objection notwithstanding, Crow had actual knowledge of the trafficking acts because he directed them: Crow enticed, harbored, provided, obtained, maintained, patronized and solicited Plaintiff by forcing her to don an outfit purchased at a sex shop, to put on a show by performing sex acts for Crow with Rick Hubbard, and to otherwise acquiesce to Crow's pleasures on or around July 20, 2019.

**INTERROGATORY NO. 17:**

State all facts and legal theories that support YOUR contention that "Crow provided assistance, support and facilitation to the Venture through financial aid…. [s]pecifically [by] provid[ing] tens of thousands of dollars of payments to Rick Hubbard and the Venture, including under the pretext of paying for 'family lawyers' or business investments," as alleged at paragraph 329 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory because to the extent that it calls for legal conclusions and is duplicative of prior requests (see Interrogatory Nos. 5, 6, 7, 11, 12). However, objection notwithstanding, as discussed above, Crow invested in the Venture through various payments to Rick Hubbard, including through his companies including Integrity Based Marketing, LLC, in addition to providing venues for the Venture's sex parties and recruiting customers and clients to the Venture. On information and belief, Crow provided at least $100,000.00 worth of financial aid or support to Rick Hubbard and the Venture, including by means of payments to Rick Hubbard's lawyers during his custody battles with Plaintiff Hubbard.

**INTERROGATORY NO. 18:**

State all facts and legal theories that support YOUR contention that "Crow received multiple things of value from the Venture, including in the form of sex acts (including Plaintiff Hubbard engaging in sex acts with Crow's then-girlfriend and watching Plaintiff Goedinghaus have sex) and the social benefits and esteem of the Venture providing sex acts to guests at his parties," as alleged in paragraph 330 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. However, objection notwithstanding, Crow's benefits were ongoing. Crow would constantly receive images of naked women, including Plaintiff and Plaintiff Hubbard, from Rick Hubbard. Crow also received sex acts from Plaintiff, including at his Turtle Creek house when he pressured Plaintiff into allowing him to observe Plaintiff having sex with Rick Hubbard. Crow also benefitted from hosting, on information and belief, more than 50 sex parties at his residences, where many guests received sex acts from Plaintiff Hubbard.

**INTERROGATORY NO. 19:**

State all facts and legal theories that support YOUR contention that CROW engaged in labor trafficking under the TVPA by "obtain[ing] [YOUR] services," as alleged in paragraph 331 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. However, objection notwithstanding, Crow received sex acts from Plaintiff, including on or about July 20, 2019, by observing her having sex with Rick Hubbard as discussed above, for which Rick Hubbard received compensation, and which Rick Hubbard forced Plaintiff to do for Crow as an incentive to allow Rick Hubbard to join him on another "Kiddie Campout" in 2019.

**INTERROGATORY NO. 20:**

IDENTIFY every name that you have used from January 1, 2009 to the present, including, but not limited to, every legal name, alias, pseudonym, stage name and pen name.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Kayla Claire Goedinghaus, Lily, Lillian.

**INTERROGATORY NO. 21:**

IDENTIFY all YOUR EMPLOYMENT from January 1, 2009 to the present.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome, and not reasonably calculated to the discovery of admissible evidence. However, objection

notwithstanding:

Red Robin, in or about 2009 to 2011 and 2013 to 2014, Training Manager and bartender.

Sprouts Farmer's Market, in or about 2017 to 2019, and January to June 2020, Training Manager and Meat Cutter.

Target, few months in late 2018, overnight stocker.

EcoLoft Homes, from December 2018 to September 2019, Executive Assistant.

Terranea Resort, in or about November 2021 to June 2022, Banquet and Line Chef.

Reset180, in or about June 2023 to August 2023, IT Technical Internship.

Dogwood Tavern, in or about September 2023 to present, as a server.

Chelsea Siena LLC, March 2024 to present, in marketing and website design.

Dated: Tiburon, California
       March 24, 2024

By: _____
Matthew W. Schmidt*
**SCHMIDT LAW CORPORATION**
116A Main Street
Tiburon, California 94920
Telephone:     (415) 390-6075
matt@schmidtlc.com
*Attorney for Plaintiffs*
*Admitted Pro Hac Vice

## VERIFICATION

I, Kayla Goedinghaus, have reviewed the foregoing Plaintiff Kayla Goedinghaus's Response to Defendant Crow's First Set of Interrogatories and declare under penalty of perjury under the laws of the United States of American that the foregoing is true and correct to the best of my knowledge and recollection.


Executed on March 24, 2024


Kayla Goedinghaus

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

Matthew W. Schmidt*
**Schmidt Law Corporation**
116A Main Street
Tiburon, California 94920
Telephone:     (415) 390-6075
matt@schmidtlc.com
*Attorney for Plaintiffs*
*Admitted Pro Hac Vice

| | |
|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS,<br><br>              Plaintiffs,<br><br>v.<br><br>TRAMMELL S. CROW, JR.; BENJAMIN TODD ELLER; RICHARD HUBBARD; MELISSA MILLER; SCOTT WOODS; COE JURACEK; PHILIP ECOB; CODY MITCHELL; RALPH ROGERS; ROBERT PRUITT; SCOTT BRUNSON; CASE GROVER; MICHAEL HYNES, JR.; SHAWN MAYER; JADE MAYER; AARON BURLINGAME; and  RCI HOSPITALITY HOLDINGS, INC.,<br><br>              Defendants. | Case No. 5:23-cv-00580-FB<br><br>Judge: Hon. Fred Biery<br>Date Action Filed: May 8, 2023 (transferred) |

## PLAINTIFF JULIA HUBBARD'S FIRST AMENDED RESPONSE TO DEFENDANT CROW'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure ("Rule") 26 and 33, Plaintiff Julia Hubbard hereby responds to the Interrogatories of Defendant Trammell S. Crow, Jr.

## **GENERAL OBJECTIONS**

1.     By responding to any Interrogatory, Plaintiff Julia Hubbard ("Plaintiff") does not concede the materiality of the subject to which it refers.

2.     By responding to each Interrogatory, Plaintiff does not make any representation as to whether the documents are responsive to such Requests exist or are in her possession, custody, or control.

3.     Inadvertent production of any information that is privileged, was prepared in anticipation of litigation, or are otherwise immune from discovery, shall not constitute a waiver of any privilege or of another ground for objecting to discovery with respect to that document or any other document, or its subject matter, or the information contained therein, or of Plaintiff's right to object to the use of any such the information contained therein during any proceeding in this litigation or otherwise. All documents containing any such inadvertently produced material or information shall be returned to Plaintiff's attorneys, along with all copies thereof.

    A.

4.     Plaintiff will provide information within her knowledge or which she can reasonably determine based on available documents.

5.     Plaintiff is continuing to search for information responsive to the Interrogatories and therefore reserves the right to supplement her responses to each Interrogatories with additional information if and when such information becomes available to Plaintiff. Plaintiff also reserves the right to object to the future disclosure of any such information.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

For each DEFENDANT, state all facts that support YOUR contention that they "received benefits from the Venture," including but not limited to "receiving sex and media of naked women or individuals engaged in sex acts," "social benefits or "financial benefits," as alleged at paragraphs 4, 38, 141, 330 and 414 and throughout the COMPLAINT.

### RESPONSE:

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Defendant Trammel S. Crow, Jr. ("Crow") benefitted by receipt of sex acts; regular social dates; live sex performances; and the social value of having parties enhanced by the Venture's sex acts. In particular, the sex acts and live sex performances included sex parties and observation of Plaintiff participating in sex acts at sex parties, including at Crow's apartment and house in Dallas, including but not limited to on or about the following dates: April 23, 2011, May 18, 2011, June 27, 2011, August 25, 2011, January 4, 2012, April 22, 2012, September 18, 2012, April 20, 2013, April 21-22, 2013, June 3, 2013, June 12, 2013, December 23, 2013, April 22, 2014, July 9, 2014, February 19, 2015, April 22, 2015, multiple sex parties in summer 2015, April 22, 2016, September 7, 2016, September 16, 2016, December 3, 2016, and December 28, 2016. The social dates included Plaintiff's modeling show on or about May 15, 2011, which turned into a sex party afterward, as well as multiple dinners and hangouts between Plaintiff and Crow between approximately 2011 and 2016. Further, Crow benefitted by receiving drugs, including prescription drugs such as Xanax and hydrocodone, at the sex parties he hosted (above). Crow also benefitted by receiving naked photos of Plaintiff regularly, which Plaintiff observed Rick Hubbard sending to Crow at least four times, in addition to being told by Rick Hubbard many other times that he was sending more naked photos to Crow. In particular, Plaintiff was

forced to gather up her friends and other girls and write "Earth Day" across their breasts during the Earth Day events and sex parties that Crow hosted, and take pictures of the bare-chested women to be sent to Crow, at least between approximately 2013 to 2016.

Defendant Benjamin Todd Eller ("Eller") benefitted by receipt of financial payments, totaling monthly fees ranging from $1,200 to $5,000, from at least approximately early 2011 following the birth of Plaintiff's and Rick Hubbard's baby, through approximately 2017. The minimum base monthly payment was $1,200, to cover Plaintiff's visits with Eller. All amounts beyond the base monthly pay were for additional services, as Eller and Rick Hubbard would talk over the phone late into the night and co-write assessments of Plaintiff, upon which Eller's prescription recommendations would be based, including for fabricated medical conditions such as post-partum depression (in early 2011) and other symptoms (in the years following) which Rick Hubbard falsely stated Plaintiff was suffering from. These payments sometimes totaled more than $5,000 per month, as Rick Hubbard would also use Eller as a business consultant and life coach.

Defendant Richard Hubbard ("Rick Hubbard") benefitted by receiving cash payments, social benefits, sex acts, and services including labor and domestic servitude. In particular, in addition to the many purported business investments by others noted *infra*, Rick Hubbard received almost all of Plaintiff's money that she made, roughly $6,000 to $22,000 per month, while she was employed as a dancer and server from approximately 2011 to 2016. Rick Hubbard also received social benefits such as access to Crow and his elite circle, particularly through invitations to the Kiddie Campouts which Rick Hubbard especially prized. Rick Hubbard also received sex acts from Plaintiff in the form of forced marital sex and sodomy, throughout their relationship. Further, Rick Hubbard received services from Plaintiff including housekeeping and

domestic services, cleaning, childrearing, and other chores and errands which Plaintiff alone was forced to complete.

Plaintiff Hubbard never met or treated with Defendant Melissa Miller ("Miller").

Defendant Scott Woods ("Woods") benefitted by receipt of payments of $100 per visit for Plaintiff's visits to Defendant Woods, including monthly visits from approximately 2014 through 2018, totaling roughly $6,000.

Defendant Coe Juracek ("Juracek") benefitted by receiving naked photos of Plaintiff from approximately 2011 through 2016, and from his employment at Crow Holdings Capital, where Juracek was well compensated, in part to maintain his silence regarding what he knew about Crow's forced sex parties.

Defendant Phil Ecob ("Ecob") benefitted by receiving naked photos of Plaintiff and by receiving equity in Rick Hubbard's companies for "investments" which were really used to benefit the Venture.

Defendant Cody Mitchell ("Mitchell") benefitted by receiving naked photos of Plaintiff, which Rick Hubbard told Plaintiff that he sent Mitchell. Mitchell further benefitted by enjoying control over Plaintiff by means of telling her over speaker phone that he would arrest her and that he would come to a sex party, though he never did. These phone calls spanned from approximately 2009 to 2020.

Plaintiff Hubbard never met and has no personal knowledge of Defendant Ralph Rogers ("Rogers").

Defendant Robert Pruitt ("Pruitt") benefitted by receiving sex acts with Plaintiff and receiving naked photographs of Plaintiff. In particular, Pruitt received naked photos of Plaintiff weekly or at least monthly from Rick Hubbard. Once, Rick Hubbard forced Plaintiff to get naked

in Pruitt's office without Pruitt present, and Rick Hubbard took photos of Plaintiff and sent them to Pruitt. The sex acts that Pruitt received included forcing Plaintiff to sit on his lap while Pruitt kissed her, smelled her, groped her, and forced her to call him "Uncle Bob," which occurred approximately 20 times in or around 2016.

Plaintiff Hubbard never met and has no personal knowledge of Defendant Scott Brunson ("Brunson").

Defendant Case Grover ("Grover") benefitted by receipt of cash payments which he confiscated from Plaintiff. In particular, Grover stole or confiscated Plaintiff's wages to pay for a car which Grover had totaled, consisting of approximately three to four payments totaling $10,000 from around May 2017 to on or about October 23, 2017, on which date Grover broke Plaintiff's ribs. On that occasion, Grover jumped over a bathroom stall to get to Plaintiff, and fell on her, thus injuring her, all to grab $7,000 out of Plaintiff's hands, which Plaintiff had just been paid by a client. In addition, Grover received the benefit of Plaintiff working for him for free in fulfilling his managerial duties with RCI (below), and by garnishing or withholding her wages as purported "fees" and "tips" for himself and/or to fix Plaintiff's car which Grover had totaled. Grover further benefitted by receiving information about Plaintiff from Rick Hubbard throughout approximately 2017 and 2018.

Defendant Michael Hynes ("Hynes") benefitted by receipt of cash payments which he confiscated from Plaintiff. In particular, Hynes took all Plaintiff's cash and would not allow her to have a debit card or feed herself or leave his presence, from on or about December 26, 2017, to approximately October 2018. Hynes also benefitted by services from Plaintiff in the form of forcing her to sell drugs and steroids in the Sienna Clubs, as well as forced drug use including of methamphetamines which he disguised in vitamin supplement capsules, and forced sex with

7

Plaintiff, all during this time period.

Defendant Shawn Mayer ("Shawn Mayer") benefitted by receiving cash payments, hotel rooms, and gifts, as well as social cachet. In addition, Shawn Mayer benefitted by having additional time with Plaintiff's children to which Plaintiff did not consent, Shawn Mayer having withheld her children, and by receiving money from Rick Hubbard to keep Plaintiff's children away from her. Shawn Mayer benefitted by receiving approximately $2,500 from Rick Hubbard on or about July 19, 2019.

Defendant Jade Mayer ("Jade Mayer") benefitted by receiving cash payments, hotel rooms, and gifts, as well as social cachet. In addition, Jade Mayer benefitted by having additional time with Plaintiff's children to which Plaintiff did not consent, Jade Mayer having withheld her children, and by receiving money from Rick Hubbard to keep Plaintiff's children away from her. Jade Mayer benefitted by receiving approximately $2,500 from Rick Hubbard on or about July 19, 2019.

Defendant Aaron Burlingame ("Burlingame") benefitted by receiving information about Plaintiff Goedinghaus and by receiving time with Plaintiff Goedinghaus's children, including on or about March 9, 2020, when Plaintiff went to Burlingame's house to try to protect the children from Rick Hubbard, who was threatening to kill all the babies.

Defendant RCI Hospitality Holdings, Inc. ("RCI") benefitted by receipt of cash payments which it confiscated from Plaintiff through Grover and by receipt of free labor. In particular, RCI received many hours of free manual labor by allowing Grover to pawn off his managerial duties on Plaintiff for free, including closing up, cleaning, and other administrative and managerial duties that a waitress would not do, thereby knowingly allowing trafficking to occur.

**INTERROGATORY NO. 2:**

IDENTIFY every SEX PARTY that YOU attended since January 1, 2009.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome. However, objection notwithstanding, Plaintiff attended approximately 20 to 50 sex parties, beginning in the fall of 2009, which initial sex party took place at Defendant Crow's Dallas apartment near the courthouse and later a house in Dallas on Turtle Creek. Many of the sex parties happened or originated at Club Eden in Dallas. Plaintiff also attended sex parties hosted by H.J. Cole. Plaintiff attended approximately 10 to 30 sex parties that occurred or originated at Texas Land & Cattle restaurant. Specifically, sex parties Plaintiff attended at which Crow was also present include but are not limited to as follows:

- April 23, 2011 (Earth Day event).

- May 18, 2011 (following modeling gig).

- June 27, 2011 (when Rick Hubbard pushed her down stairs).

- August 25, 2011 (when Plaintiff injured her foot trying to run away from the sex party).

- January 4, 2012.

- April 22, 2012 (Earth Day event).

- September 18, 2012.

- April 20, 2013.

- April 21-22, 201 (Earth Day event, including with Crow's then-girlfriend Presley).

- June 3, 2013.

- June 12, 2013.

- December 23, 2013.

- Sex party in late 2013 or early 2014 (following which Plaintiff needed neck surgery for injuries received at or in connection to the sex party).

- April 22, 2014 (Earth Day event)

- July 9, 2014 (Sienna Club).

- February 19, 2015 (Texas Land & Cattle Steak House).

- April 22, 2015 (Earth Day event).

- Multiple sex parties in summer 2015, including one following which Plaintiff needed abdominal surgery for the injuries she suffered during the sex party.

- April 22, 2016 (Earth Day event).

- September 7, 2016 (The Pecan Room).

- September 16, 2016 (The Pecan Room).

- December 3, 2016.

- December 28, 2016.

**INTERROGATORY NO. 3:**

IDENTIFY every health care provider who has treated YOU for any physical or mental ailment or illness from January 1, 2009, to the present, including but not limited to doctors, nurse practitioners, chiropractors, psychiatrists, psychologists, addiction specialists, other practitioners of the healing arts, hospitals, clinics, medical offices, treatment facilities and emergency rooms.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Benjamin Todd Eller, Ph.D., c/o Cameron Jones LLP, 8383 Wilshire Boulevard, Suite 800, Beverly Hills, CA 90211.

10

Melissa Miller, M.D., Premier Health MD Direct Primary Care, Cedar Park, TX, c/o Carroll Kelly Trotter and Franzen, 111 West Ocean Boulevard, 14th Floor, P.O. Box 22636, Long Beach, CA 90801; Germer Beaman & Brown PLLC, 301 Congress Ave., Suite 1700, Austin, TX 78701.

Joseph Bolin, D.O.

Scott Woods, M.D. c/o Wood Smith Henning & Berman LLP, 14860 Landmark Blvd., Suite 120, Dallas, TX 75254.

Mrugeshkumar Shah, M.D.

Emergency rooms all over country, including University of Utah Hospital in Salt Lake City, UT, and many ERs in Texas. Plaintiff to supplement this response upon receipt of records.

Homaira Behsudi-Wali, M.D., 6845 Elm St., #710, McLean, VA 22101.

John Burns, M.D., 9101 N Central Expy., #600, Dallas, TX 75225.

Orthopedic specialists from 2009 to present. Plaintiff to supplement this response upon receipt of records.

Inova Hospital System, Falls Church, VA.

MRIs and other imaging in relation to neck surgeries around approximately October 2013 and on or about August 3, 2016.

Cloud Health Scans, 2800 Guilder Dr, Plano, TX 75074.

Mimi Tyson, PMHNP, 5510 Cherokee Ave., Suite 300, Alexandria, VA 22310.

Yael Roggen, LCWS, 520 N Washington St., Suite 100, Falls Church, VA 22046.

Dominion Hospital, 2960 Sleepy Hollow Rd., Falls Church, VA 22044.

**INTERROGATORY NO. 4:**

IDENTIFY each GATHERING YOU attended at which YOU contend CROW was present for any part.

11

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

See Response No. 2. Crow was present at each of the sex parties Plaintiff attended at his apartment or house. Of the other sex parties not at those locations, on information and belief, Crow was present for approximately 40-60% of those gatherings. However, even when sex parties did not originate at Crow's residence(s), they would commonly end there, as Crow was often part of the "option" in order to increase the prestige and social cachet of the parties and participants therein.

In addition, Plaintiff attended various other non-sexual gatherings with Crow, such as modeling events in 2009, several dinners over the years between approximately 2011 and 2016, and Earth Day events annually from approximately 2011 through 2016. Regarding the latter, Crow would throw Earth Day benefits to increase his family's good press, following which he would through a celebration which would invariably devolve into another sex party. Specifically, sex parties Plaintiff attended at which Crow was also present include but are not limited to as follows:

- April 23, 2011 (Earth Day event).

- May 18, 2011 (following modeling gig).

- June 27, 2011 (when Rick Hubbard pushed her down stairs).

- August 25, 2011 (when Plaintiff injured her foot trying to run away from the sex party).

- January 4, 2012.

- April 22, 2012 (Earth Day event).

- September 18, 2012.

- April 20, 2013.

- April 21-22, 201 (Earth Day event, including with Crow's then-girlfriend Presley).

- June 3, 2013.

- June 12, 2013.

- December 23, 2013.

- Sex party in late 2013 or early 2014 (following which Plaintiff needed neck surgery for injuries received at or in connection to the sex party).

- April 22, 2014 (Earth Day event)

- July 9, 2014 (Sienna Club).

- February 19, 2015 (Texas Land & Cattle Steak House).

- April 22, 2015 (Earth Day event).

- Multiple sex parties in summer 2015, including one following which Plaintiff needed abdominal surgery for the injuries she suffered during the sex party.

- April 22, 2016 (Earth Day event).

- September 7, 2016 (The Pecan Room).

- September 16, 2016 (The Pecan Room).

- December 3, 2016.

- December 28, 2016.

## INTERROGATORY NO. 5:

State all facts that support YOUR contention that the "key financial support of the enterprise was Defendant Trammell S. Crow, Jr. [sic]," as alleged in paragraph 29 of the COMPLAINT.

## RESPONSE:

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Defendant Crow provided financial support to the Venture in the form of numerous payments to Rick Hubbard which were used to support Rick Hubbard to allow him to continue to promote the Venture, and which provided him inducement to do so. Crow also provided non-financial support in the form of a venue for the Venture's sex parties and providing additional clients and customers of the Venture. Further, Crow employed, paid hush money to, and otherwise compensated other participants in the Venture, including but not limited to Defendant Coe Juracek.

**INTERROGATORY NO. 6:**

State all facts that support YOUR contention that "Crow was involved from the very start of the Venture in 2010, knew full well all the details of the force, fraud, threat, and coercion that Rick used (in substantial part due to his prior relationship with Hubbard), and without him the Venture never could have succeeded, or indeed, ever gotten started," as alleged in paragraph 30 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff first met Defendant Crow in summer 2009 at the Dallas nightclub Plush. Plaintiff introduced Defendant Crow to Defendant Rick Hubbard in late 2009. By 2010, Defendant Rick Hubbard had started pressuring Plaintiff to perform sex acts with Defendant Crow's then-girlfriend, Presley; find other women for the gatherings; and continue participating in the sex parties hosted and financed by Defendant Crow. Defendant Crow served as a catalyst to the Venture, as Rick Hubbard learning of the friendship between Crow and Plaintiff caused Rick Hubbard to see the financial and social profitability of the Venture. Given his communications

with Rick Hubbard, Plaintiff, and Plaintiff Goedinghaus, Crow was aware of all aspects of the Venture.

**INTERROGATORY NO. 7:**

State all facts and legal theories that support YOUR contention that "Trammell was key to the Venture's existence and long running success," as alleged in paragraph 31 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

See Response No. 6. In addition to Crow providing Rick Hubbard the inspiration for the Venture and providing financial support, Crow's provisioning of venues and drugs for the Ventures sex parties and the recruiting of further clients and customers of the Venture allowed it to continue and grow.

**INTERROGATORY NO. 8:**

State all facts and legal theories that support YOUR contention that YOU were "traffic[ked] … to Crow," as alleged at paragraph 33 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome, and because it calls for legal conclusions. However, objection notwithstanding, Plaintiff was forced, under the influence of forced drug-use (specifically including but not limited to Klonopin/clonazepam and other benzodiazepines, alcohol, and cocaine), coercion, and physical and other threats, to engage in sex acts for the prurient and social benefit of Crow. The threats from Rick Hubbard included but were not limited to withholding Plaintiff's children, threatening to withhold and actually

withholding food and groceries from both Plaintiff and her children, turning off Plaintiff's phone service, threatening to show Plaintiff's friends and family videos of Plaintiff having sex at sex parties, threatening to leave and abscond with Plaintiff's children and actually leaving for periods of days with the children, threatening to force her to be medicated for other mental illnesses from which Plaintiff did not suffer, threatening to have Plaintiff arrested for kidnapping her children if she tried to leave with them, withholding prescription drugs to force Plaintiff into withdrawal symptoms including seizures, threatening to choke Plaintiff and actually choking her until she lost consciousness, threatening to injure Plaintiff further, threatening to drug Plaintiff with GHB, and threatening to have his father (a lawyer) intervene and Plaintiff's children taken away. In return, Plaintiff would be forced to perform sex acts in front of Crow for Crow's benefit and to have sex with Rick Hubbard in front of cameras on Crow's property that would record the sex acts, for Crow's later benefit.

**INTERROGATORY NO. 9:**

IDENTIFY each "other victim of the Venture" that YOU allege was "traffic[ked] … to Crow," as alleged at paragraph 33 and 34 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff Goedinghaus.

Romney Gray.

Desiree.

Severa.

Jaylynn Provenzano.

**INTERROGATORY NO. 10:**

16

State all facts that support YOUR contention that YOU "told Crow that Rick was forcing [YOU] to perform sex acts and forcing [YOU] to take drugs to induce such acts," as alleged in paragraph 35 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

In spring 2012, Crow took Plaintiff to dinner at Al Biernat's, during which time Plaintiff told Crow that Rick was forcing her to perform sex acts and was drugging her. In addition, Plaintiff informed Crow on several occasions at his Turtle Creek house that she was being forced to engage in sex acts under coercion and physical and other threats, as well as under the forced use of drugs. Plaintiff repeatedly asked for Crow's help in escaping her situation, which he did not provide.

**INTERROGATORY NO. 11:**

State all facts and legal theories that support YOUR contention that "Rick and Crow benefitted from working together to get other to join the Venture as co-investors and clients," as alleged at paragraph 37 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome; because it calls for legal conclusions; and because it is duplicative of prior requests (see Interrogatory Nos. 5, 6, 7). However, objection notwithstanding, Rick Hubbard and Crow mutually benefitted from their creation of and continued participation in the Venture—Rick Hubbard through financial, sexual, drug-related, and social benefit, and Crow from the receipt of sex acts, drugs, and social benefit. All of these benefits were enhanced as others joined and participated in the Venture. In

particular, Crow knew all about and endorsed Rick Hubbard's efforts to attract other co-investors; the two were from opposite sides of society, and Rick Hubbard capitalized on the relationship by using the occasions Crow offered to meet other business men and others from Crow's world. Plaintiff overheard several conversations between the two to this effect. Crow also received benefits in the form of dates, including sex acts, through Rick Hubbard's connections, and Rick Hubbard's pool of connections would correspondingly increase the more others joined the Venture.

**INTERROGATORY NO. 12:**

State all facts that support YOUR contention that CROW was "doing business with Rick and the Venture," as alleged at paragraph 185 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory as vague, overbroad, unduly burdensome, and because it is duplicative of prior requests (see Interrogatory Nos. 5, 6, 7, 11). However, objection notwithstanding, Crow invested in the Venture through various payments to Rick Hubbard, including through his companies including Integrity Based Marketing, LLC.

**INTERROGATORY NO. 13:**

State all facts and legal theories that support YOUR contention that CROW "enticed, harbored, provided, obtained, maintained, patronized and solicited [YOU]…. knowing or in reckless disregard of the fact that force, threats of force, or coercion would be used to cause [YOU] [to] engag[e] in a commercial sex act," as alleged at paragraphs 317 to 325 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory because it calls for legal conclusions. However, objection notwithstanding, Crow enticed, harbored, provided, obtained, maintained, patronized and solicited Plaintiff by encouraging her to continue her involvement with the Venture, including through sheltering her at his residences, where Crow hosted sex parties at which he caused her to become available to Crow and others for sex acts while also providing drugs; Crow also paid the Venture and provided it financing during these relevant times. While Crow was engaged in these acts, he knew (due to being told directly by Plaintiff) that money and other things of value were being exchanged for sex acts and in fact contributed money to the Venture as discussed further above.

### INTERROGATORY NO. 14:

State all facts and legal theories that support YOUR contention that "Crow knew, or recklessly disregarded, that [YOU] would be forced to engage in commercial sex acts," as alleged in paragraphs 325, 326, 327, and elsewhere in the COMPLAINT.

### RESPONSE:

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent it calls for legal conclusions. However, objection notwithstanding, Plaintiff told Crow, as discussed above, that she was being forced to engage in commercial sex acts, including at various sex parties where Plaintiff would be non-consensually groped, touched, and otherwise violated for others' benefit, giving Crow actual knowledge that Plaintiff was forced to engage in commercial sex acts. In particular, Crow attended or hosted several sex parties during which Plaintiff expressed that she was being forced to engage in sex acts for money and other benefits, and asked Crow to put her somewhere safe, in response to which Crow would put her in a back room in his house until Rick Hubbard returned.

This included at least one occasion where Plaintiff was forced to do drugs, had no clothes on, and felt threatened by the other attendees at the sex party hosted by Crow; she told Crow then that Rick Hubbard was taking her to sex clubs, that she was on display, that she was very uncomfortable, and that she was a hostage in her own house and very afraid of Rick Hubbard. At least twice at sex parties, Plaintiff told Crow that she wanted to go home and be with her children. Nevertheless, Crow frequently saw Rick Hubbard passing Plaintiff around at sex parties and allowing attendees to grope her.

**INTERROGATORY NO. 15:**

State all facts that support YOUR contention that "Crow maintained each Plaintiff by providing financial support," and patronized each Plaintiff by paying them to perform sex acts for himself and others," as alleged in paragraphs 322 and 323 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

As discussed above, Crow invested in the Venture through various payments to Rick Hubbard, including through his companies including Integrity Based Marketing, LLC, which was used to provide financial support for Plaintiff.

**INTERROGATORY NO. 16:**

State all facts and legal theories that support YOUR contention that CROW "allegedly kn[e]w of [*sic*] should have known of the trafficking acts," as alleged in paragraph 326 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

See Response No. 10. Plaintiff objects to this Interrogatory to the extent that it calls for

legal conclusions. However, objection notwithstanding, Plaintiff told Crow, as discussed above, that she was being trafficked, giving Crow actual knowledge that Plaintiff was being trafficked.

**INTERROGATORY NO. 17:**

State all facts and legal theories that support YOUR contention that "Crow provided assistance, support and facilitation to the Venture through financial aid…. [s]pecifically [by] provid[ing] tens of thousands of dollars of payments to Rick Hubbard and the Venture, including under the pretext of paying for 'family lawyers' or business investments," as alleged at paragraph 329 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions and is duplicative of prior requests (see Interrogatory Nos. 5, 6, 7, 11, 12). However, objection notwithstanding, as discussed above, Crow invested in the Venture through various payments to Rick Hubbard, including through his companies such as Integrity Based Marketing, LLC; through financing his family law attorneys in ongoing child custody matters; and in providing venues for the Venture's sex parties and recruiting customers and clients to the Venture.

**INTERROGATORY NO. 18:**

State all facts and legal theories that support YOUR contention that "Crow received multiple things of value from the Venture, including in the form of sex acts (including Plaintiff Hubbard engaging in sex acts with Crow's then-girlfriend and watching Plaintiff Goedinghaus have sex) and the social benefits and esteem of the Venture providing sex acts to guests at his parties," as alleged in paragraph 330 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions.

However, objection notwithstanding, Crow's benefits were ongoing. Crow would constantly receive images of naked women, including Plaintiff, due to Rick Hubbard's facilitation of a steady stream of pictures of women's breasts to Crow. Crow also received sex acts from Plaintiff, including at his Turtle Creek house when he pressured Plaintiff into having sex with his then-girlfriend, Presley, an event which he then watched. Crow received sex acts from Plaintiff Goedinghaus, including on or about July 20, 2019, at his Turtle Creek house, when he observed Plaintiff Goedinghaus having sex with Rick Hubbard. Crow also benefitted from hosting, on information and belief, more than 50 sex parties at his residences, where many guests received sex acts from Plaintiff. As stated above, even when parties did not originate at Crow's residences, Crow was often an "option" given to increase the prestige and social cachet of the parties and participates therein.

**INTERROGATORY NO. 19:**

State all facts and legal theories that support YOUR contention that CROW engaged in labor trafficking under the TVPA by "obtain[ing] [YOUR] services," as alleged in paragraph 331 of the COMPLAINT.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. However, objection notwithstanding, Crow received sex acts from Plaintiff, including in or around 2012, when he observed Plaintiff having sex with his then-girlfriend, Presley; as well as generally from approximately 2009 through 2018, when he observed Plaintiff having sex numerous times with other people, often as an incentive to Crow to allow Rick Hubbard and Julia's children to join him on the biannual "Kiddie Campouts."

**INTERROGATORY NO. 20:**

IDENTIFY every name that you have used from January 1, 2009 to the present, including, but not limited to, every legal name, alias, pseudonym, stage name and pen name.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Bridgette, Shayla, Julia Parsons, Julia Smith Miller, Julia Alexis Parsons, Julia Alexis Mayer, and Julia Alexis Hubbard.

**INTERROGATORY NO. 21:**

IDENTIFY all YOUR EMPLOYMENT from January 1, 2009 to the present.

**RESPONSE:**

Reserving the right to amend as further information becomes available, Plaintiff responds as follows:

Plush, contract work for one or two months in summer 2009, as a waitress at parties.

The Lodge, 2009 to 2016, as a dancer.

Baby Dolls, in or about 2016, as a waitress.

Men's Club, in or about 2015, as a waitress.

Silver City, in or about 2015 through 2016, as a dancer.

Buck's, in or about 2013 or 2015 through 2016, as a waitress.

Labor trafficked by Defendant Hynes during 2018, to sell cocaine at Rick Hubbard's clubs mentioned in the Complaint.

Punch Bowl Social in Arlington, in or about January 2019 to July 2019, as a restaurant manager.

Bolero, in or about July 2019 to late 2019, as a restaurant manager.

The Renegade in Arlington, from late 2019 to March 2020, as a bartender.

Auggie's Muscle Bar in Alexandria, in or about 2021 to 2022, as a waitress.

Founding Farmers in Tyson's Corner, in or about 2022, as a waitress.

Chelsea Sienna, in or about March 2024 to the present, as a marketing coordinator.

Dated: Tiburon, California
March 24, 2024

By: _____
Matthew W. Schmidt*
**SCHMIDT LAW CORPORATION**
116A Main Street
Tiburon, California 94920
Telephone:     (415) 390-6075
matt@schmidtlc.com
*Attorney for Plaintiffs*
*Admitted Pro Hac Vice

TO:     HAWXHURST HARRIS LLP
        1301 S. Capital of Texas Hwy
        Building C, Suite 300
        Austin, TX 78746
        310-893-5150

        GRAY REED & MCGRAW
        1601 Elm Street, Suite 4600
        Dallas, TX 75201
        214-954-4135

## VERIFICATION

I, Julia Hubbard, have reviewed the foregoing Plaintiff Julia Hubbard's Response to Defendant Crow's First Set of Interrogatories and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and recollection.

Executed on March 24, 2024

*Julia Hubbard*
Julia Hubbard (Mar 24, 2024 19:27 EDT)

Julia Hubbard