UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

Matthew W. Schmidt*
**Schmidt Law Corporation**
116A Main Street
Tiburon, California 94920
Telephone: (415) 390-6075
matt@schmidtlc.com
*Attorney for Plaintiffs*
*Admitted Pro Hac Vice

| | |
|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS,<br><br>Plaintiffs,<br><br>v.<br><br>TRAMMELL S. CROW, JR.; BENJAMIN TODD ELLER; RICHARD HUBBARD; MELISSA MILLER; SCOTT WOODS; MRUGESHKUMAR SHAH; MICHAEL CAIN, COE JURACEK, PHILIP ECOB, H.J. COLE; CODY MITCHELL; KURT KNEWITZ; RALPH ROGERS; ROBERT PRUIT; SCOTT BRUNSON; CASE GROVER; RICHARD BUTLER; MICHAEL HYNES, JR.; SHAWN MAYER; JADE MAYER; AARON BURLINGAME; and RCI HOSPITALITY HOLDINGS, INC, | Case No. 5:23-cv-00580-FB<br><br>Judge: Hon. Fred Biery<br>Date Action Filed: May 8, 2023 (transferred) |

**PLAINTIFFS' OPPOSITION TO BALESTRIERE FARIELLO'S FIRST PLEA IN INTERVENTION**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ........................................................................................................................ 4

    I.    THE BALESTRIERE FIRM IS NOT ENTITLED TO INTERVENTION UNDER FEDRAL RULE OF CIVIL PROCEDURE 24(a)(2) ........................................................ 4

        A.    The Balestriere Firm Has No Financial Interest Which is Not Adequately Protected by the Current Parties to this Action ........................................................... 5

        B.    This Circuit's Limited Allowance of Intervention Where a Former Attorney Has a Contingency Interest Because Under What the Balestriere Firm Admits is Governing New York Law, it Has At Most a Quantum Meruit Interest in Any Recovery .......... 8

CONCLUSION ................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Edwards v. City of Houston*,
  78 F.3d 983 (5th Cir. 1996) .................................................................................................. 5

*Gaines v. Dixie Carriers, Inc.*,
  434 F.2d 52 (5th Cir. 1970) .................................................................................................. 8

*Gilbert v. Johnson*,
  601 F.2d 761 (5th Cir. 1979) ................................................................................................ 8

*Grumpy, Inc. v. Unidentified*,
  No. 95-30252, 1996 U.S. App. LEXIS 45256 (5th Cir. Feb. 12, 1996) .................................... 8

*In re Cooperman*,
  83 N.Y.2d 465 (N.Y. 1994) .................................................................................................. 9

*In re Thelen LLP*,
  24 N.Y.3d 16 (N.Y. 2014) .................................................................................................... 9

*Keith v. St. George Packing Co.*,
  806 F.2d 525 (5th Cir. 1986) ................................................................................................ 8

*Rose v. Travelers,*
  No. 06-7631, 2009 U.S. Dist. LEXIS 154431 (E.D. La. Dec. 16, 2009) .................................. 9

*Sofidiya v. Tex. S. Univ.*,
  No. 4:19-CV-2221, 2021 WL 4228896, 2021 U.S. Dist. LEXIS 180390 (S.D. Tex. Apr. 13, 2021) ................................................................................................................................... 9

*Sommers v. Bank of Am., N.A.*,
  835 F.3d 509 (5th Cir. 2016) ................................................................................................ 5

*St. Bernard Par. v. Lafarge N. Am., Inc.*,
  914 F.3d 969 (5th Cir. 2019) ................................................................................................ 5

*Texas v. United States*,
  805 F.3d 653 (5th Cir. 2015) ................................................................................................ 5

**Rules**

Fed. R. Civ. P. 24 ........................................................................................................... 1, 4, 5, 10

**PRELIMINARY STATEMENT**

The Court should deny the First Plea in Intervention (the "Plea," Dkt. No. 318) by Balestriere PLLC d/b/a Balestriere Fariello (the "Balestriere Firm"), which presents no authority giving it any right to intervene under Federal Rule of Civil Procedure ("Rule") 24. In fact, the Balestriere Firm failed to proceed by motion or file a brief at all, as required by Rule 24(c), instead filing a pleading which does not clearly explain what the Balestriere Firm is arguing as its basis to intervene. For that reason alone, the Balestriere Firm's intervention should be rejected, and it be required to properly brief the relief that it seeks.

But even from what Plaintiffs can gleam from the Balestriere Firm's Plea, its request should be denied, as the Balestriere Firm does not and cannot assert any basis by which its interests—or the interests of any successor in interest—are adequately protected by the charging lien which it has already asserted twice in this action. While the Balestriere Firm makes broad allegations that the current Parties to this suit will attempt to evade the charging lien before it is resolved by a court of competent jurisdiction (and a confusing and undeveloped argument that Texas law, rather than what the Balestriere Firm admits is governing New York law, entitles the Balestriere Firm to a contingency portion of any recovery), nothing it raises even suggests that this is likely. On the contrary, the Balestriere Firm's Plea suggests that if it is permitted to intervene, it will simply waste the time of the Parties and the Court in exactly these sort of irrelevant and procedurally-deficient arguments, apparently in a simple attempt to retaliate against former clients for exercising their right to counsel of their choice.

The situation here is simple: Plaintiffs Julia Hubbard and Kayla Goedinghaus terminated the Balestriere Firm for cause on February 2, 2024. Under applicable New York law, this termination for cause means that the Balestriere Firm is not entitled to any fees for its work. But

1

even if a court applying New York law finds that the Balestriere Firm was not terminated for cause, under well-settled and undisputedly governing New York law, the Balestriere Firm is entitled to only a quantum meruit value of the work for its time in the case. And if in the event of any recovery, Plaintiffs, their current counsel, and the Balestriere Firm cannot reach agreement as to what that quantum meruit value is, this can be resolved more efficiently in a separate action by a court experienced in applying these issues of New York law, rather than fighting over hypothetical recoveries for a case which is still in discovery.

The Balestriere Firm's Plea should be rejected.

## STATEMENT OF FACTS[1]

Plaintiffs engaged the Balestriere Firm on June 2022, under an engagement agreement which is, by its terms, "governed and construed in accordance with the laws of the State of New York without regard to any applicable principles." (*See* Plea at 5.) On February 1, 2024, Plaintiffs terminated the Balestriere Firm for cause. (Declaration of Julia A. Hubbard ("Hubbard Decl.") at ¶ 2.) While Balestriere Firm principal John Balestriere later claimed, in writing to Plaintiffs in March 2024 that Plaintiffs had "confirmed in writing that they did not terminate the firm for cause," Plaintiff Hubbard corrected him two days later, clarifying that Plaintiffs had "repeatedly" told Balestriere that Plaintiffs had terminated the Balestriere Firm for cause. (Hubbard Decl. at ¶¶ 3-4.)

The Balestriere Firm filed its motions to withdraw on February 7, 2027 (Dkt. No. 276), which were granted on February 13, 2024 (Dkt. No. 277). In its withdraw motion, the Balestriere Firm noted its position that it "maintain[ed] a fee interest in the matter and lien pursuant to

---

[1] The Balestriere Firm—which of course as movant bears the burden of proof—attaches neither documents nor declaration to its Plea. In an attempt to avoid further opening door to issues irrelevant to this action, Plaintiffs provide declaration support of factual assertions. However, Plaintiffs stand ready to provide documents if helpful to the Court or if belatedly provided by the Balestriere Firm in order to rebut any arguments the Balestriere Firm later attempts to make to support its arguments.

2

applicable law and rules." (Dkt. No. 276 at 2.) Despite already asserting these rights in its withdraw motion, the Balestriere Firm filed a month later, on March 5, 2024, a Notice of Charging Lien, claiming it was entitled to "a charging lien for legal services rendered in the above-entitled action of at least 37.5% of any sum recovered by way of settlement, and on any judgment that may be recovered." (Dkt. No. 284 at 2.)

On February 7, 2024, at Plaintiffs' counsel's request, John Balestriere of the Balestriere Firm forwarded outstanding discovery requests that the Balestriere Firm had received—he confirmed that following week that he had "forwarded you last week any discovery materials I saw in emails going back to late November." (Schmidt Decl. at ¶ 3.) Plaintiffs' counsel discovered three weeks later that John Balestriere had inadvertently omitted certain materials, which Plaintiffs' counsel obtained from defense counsel. (Schmidt Decl. at ¶ 4.)

Following the Balestriere Firm's withdraw, Plaintiffs, Plaintiffs' current counsel, and the Balestriere Firm engaged in various discussions concerning the Balestriere Firm's interest in this litigation and other matters. As part of these discussions, Balestriere Firm principal John Balestriere stated that in March 2020 he desired to enter into an agreement where Plaintiffs and their counsel would release all claims against the Balestriere Firm and agree to pay a percentage of any recovery to the Balestriere Firm, in exchange for, among other claimed benefits, agreeing to a standard lien subordination with a funder which the Balestriere Firm had been in discussions with prior to withdraw. (Hubbard Decl. at ¶ 5.) Plaintiffs' counsel also had discussions with that same funder had been in discussions with concerning funding the case prior to the Balestriere Firm's withdraw, the funder required such a subordination. (Schmidt Decl. at ¶ 7.)

About a month later, the Balestriere Firm filed its Motion, in the form of a purported pleading. (Dkt. No. 318 at 1, 12.) While the Motion included a signed certification from John

3

Balestriere that the motion was filed electronically and served on April 19, 2024, (Dkt. No. 318 at 9) the Balestriere Firm instead mailed the Motion to the Court, as the Balestriere Firm corrected on April 29, the Motion was received and filed by the Clerk of the Court of April 23, and not served on counsel until April 25 (Dkt. No. 322).

## LEGAL STANDARD

Rule 24 allows parties to intervene into an action "upon timely motion" that "sets the grounds for intervention." Rule 24(c). A party may intervene as of right where it shows an "interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Rule 24(a).

## ARGUMENT

### I. THE BALESTRIERE FIRM IS NOT ENTITLED TO INTERVENTION UNDER FEDRAL RULE OF CIVIL PROCEDURE 24(a)(2)

The Balestriere Firm should not be permitted to intervene, as it has no basis to intervene under Rule 24 and has no interest which is not currently better served by resolving in a separate action after the conclusion of this action if a recovery is obtained.

Indeed, the Balestriere Firm failed to comply even with the basic requirements of Rule 24(c), which allow intervention upon "motion" stating the "grounds for intervention" filed with a "pleading that sets out the claim or defense for which intervention is sought." Rule 24(c). Instead, the Balestriere Firm filed only a pleading—which it titled a "First Plea in Intervention"– and one which does not even set forth which claim or defense it seeks to intervene in nor, beyond an introductory sentence that it seeks to intervene "pursuant to Federal Rule of Civil Procedure 24(a)(2)," make any reference to Rule 24 nor cite any authority concerning intervention. (*See* Plea at 1.) At a minimum, the Court should deny the Balestriere Firm's Plea without prejudice

4

and require it to proceed by proper motion, so that Plaintiffs may respond to the Balestriere Firm's arguments, rather than attempt to guess as to what the Balestriere Firm believes is its entitlement.

But even if the Court does construe the Balestriere Firm's Plea as a motion to intervene, the Balestriere Firm has presented no argument as to why it should be permitted to intervene under Rule 24(a)(2).

### A. The Balestriere Firm Has No Financial Interest Which is Not Adequately Protected by the Current Parties to this Action

Even if the Court is to consider the Balestriere Firm's Plea as a motion consistent with Rule 24, the Balestriere Firm has failed to present any entitlement to intervention under Rule 24(a)(2).[2] In this Circuit, an application for intervention must be (1) "timely"; the applicant must (2) "have an interest relating to the property or transaction which is the subject of the action"; (3) the applicant must "be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest"; and (4) the applicant's interest must be adequately represented by the existing parties to the suit." *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019) (quoting *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 512 (5th Cir. 2016)). There is a presumption that a potential intervenor's interests are "adequately represented"—and intervention under Rule 24(a)(2) unavailable—where "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015). To rebut this presumption, the would-be intervenor must "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996).

---

[2] While the Court should not permit the Balestriere Firm to intervene even under Rule 24(b)'s permissive intervention, the Balestriere Firm's Plea explicitly seeks relief only as intervention as of right under Rule 24(a)(2), so Plaintiffs do not address the issue of intervention under Rule 24(b).

The Balestriere Firm has not shown and cannot show that it has an interest in this matter which is not adequately represented by Plaintiffs themselves, as they all have the same interest: to prosecute this action vigorously in order to obtain a successful recovery. While the Balestriere Firm claims that it would be "difficult, if not impossible" to recover fees without intervention, the Balestriere Firm offers no explanation whatsoever why its charging lien is insufficient, nor any evidence whatsoever that the current Parties to this suit would simply ignore the asserted charging lien, or otherwise show any adversity of interest, collusion, or malfeasance. The Balestriere Firm does not even assert how its presence as intervenor would safeguard its interest more than simply monitoring the public docket. It simply does not follow that because the Balestriere Firm has so far been "unable" to "negotiate an agreement" regarding the amount it is due (Plea at 6) and Plaintiffs and their current counsel have a financial interest in a recovery that Plaintiffs and their counsel, with cooperation from Defendants in the event of a recovery, would conspire to ignore an asserted charging lien before the amount due to the Balestriere Firm or its successor in interest in litigated. Nor do the Balestriere Firm's claimed "inaccurate statements regarding" the Balestriere Firm rise to the level to rebut the presumption. Again, even if these statements were inaccurate, it does not follow that Plaintiffs or any other parties would act in contravention of law concerning charging liens.

But none of these statements—that Plaintiffs terminated the Balestriere Firm for cause; that the Balestriere Firm did not provide files that it purported to; and that the Balestriere Firm interfered in Plaintiffs' obtaining litigation funding—are inaccurate. And the fact that the Balestriere Firm not only claims they are inaccurate, but so willfully false that they mean that Plaintiffs intend to violate a charging lien, necessitating intervention—is precisely why the

6


Balestriere Firm should not be permitted to intervene: it has signaled an intent to waste the time and resources of the Court and counsel with these irrelevant disputes.

First, Plaintiffs terminated the Balestriere Firm for cause, and unambiguously conveyed this to Balestriere Firm principal John Balestriere. (Hubbard Decl. at ¶¶ 3-4.) While the Balestriere Firm fails to explain *why* it believes this assertion is false, presumably it believes that the termination was not a valid for-cause termination. But not only did the Balestriere Firm fail to disclose that this is a disputed issue in its Plea, there is no value in resolving such an issue at this time, or in taking this Court's time in litigating issues of New York law which, if the Parties cannot reach agreement, are likely best resolved by a New York court at a later date resolving this issue of New York law (a law which otherwise does not apply to the present case) if a recovery is achieved.

Second, the Balestriere Firm did err in providing discovery, specifically discovery requests served by Defendant Coe Juracek. (Schmidt Decl. at ¶ 4.) Again, the Balestriere Firm does not explain why this is false—Plaintiffs did not even accuse the Balestriere Firm of acting in bad faith, and characterized it as an "error"—meaning there was no reason for Plaintiffs counsel to ever raise the issue with the Balestriere Firm as Plaintiffs obtained the files instead from defense counsel. In any event, the Balestriere Firm again fails to show how this demonstrates that its charging lien is at risk, but its use of this as an argument does again demonstrate how the Balestriere Firm's presence in this action would only district the Court and the Parties with litigation of such irrelevant issues.

Third, the Balestriere Firm has interfered in Plaintiffs' litigation funding by refusing to standard lien subordination of a litigation funder which the Balestriere Firm had been in discussions with prior to the withdraw of the Balestriere Firm. Neither Plaintiffs' nor their

counsel have any knowledge of what supposed evidence the Balestriere Firm has concerning this point—as the Balestriere Firm has refused to share it with Plaintiffs despite multiple requests—but Balestriere Firm principle John Balestriere stated in clear terms to Plaintiffs and their counsel that he was not willing to agree to such subordination and, and Plaintiffs' counsel confirmed with the funder in question that it did require such routine subordination. (Hubbard Decl. at ¶ 5; Schmidt Decl. at ¶ 7.) But in any event, in the context that Plaintiffs raised it, they were not even accusing the Balestriere Firm of misconduct: they were simply explaining that discovery had been slowed by issues involved in transition of counsel. So, again, this point only illustrates how the Balestriere Firm's involvement in this case would needlessly distract from the action without any concordant benefit.

> B. **This Circuit's Limited Allowance of Intervention Where a Former Attorney Has a Contingency Interest Because Under What the Balestriere Firm Admits is Governing New York Law, it Has At Most a Quantum Meruit Interest in Any Recovery**

While the Balestriere Firm fails to cite to any authority justifying intervention in this situation—and, as discussed above, for that reason alone should justify denial and the Balestriere Firm required to properly brief its position so that Plaintiffs may respond—the limited rule allowing intervention in this Circuit under *Gaines v. Dixie Carriers, Inc.,* 434 F.2d 52, 54 (5th Cir. 1970), does not apply here.

In *Gaines*, the Court of Appeals for the Fifth Circuit held that an attorney with a contingent interest in a case has a right to intervene. 434 F.2d at 54. But while *Gaines* remains binding, subsequent panels have declined to extend it beyond its specific holding. *See Grumpy, Inc. v. Unidentified*, No. 95-30252, 1996 U.S. App. LEXIS 45256, at *8 (5th Cir. Feb. 12, 1996) ("we have recognized that our holding [in *Gaines*] is 'not . . . the most persuasive use of [Rule] 24'") (second alteration in original) (quoting *Keith v. St. George Packing Co.*, 806 F.2d 525, 526

8

(5th Cir. 1986)); *Gilbert v. Johnson*, 601 F.2d 761, 768 (5th Cir. 1979) (Rubin, J., concurring) (noting concerns that intervention may "interfere with the management of the lawsuit by his successor as if he were a co-owner of the claim when he has only a contingent fee" and recognizing that fee interests can be protected by "can be protected by assertion of a lien"). Among other limitations, the United States District Court for the Southern District of Texas recently declined to extend *Gaines* to apply to a former attorney who had a quantum meruit claim in the proceeds of a former client's suit. *Sofidiya v. Tex. S. Univ.*, No. 4:19-CV-2221, 2021 WL 4228896, 2021 U.S. Dist. LEXIS 180390, at *5 (S.D. Tex. Apr. 13, 2021).

And a quantum meruit interest is, at most, exactly what the Balestriere Firm has here. *Gaines* and its progeny primarily concerned disputes with former attorneys who had contingency fee agreements under Louisia or Texas law, where such discharged attorneys at least potentially retain a contingent interest. *See Rose v. Travelers*, No. 06-7631, 2009 U.S. Dist. LEXIS 154431, at *6 (E.D. La. Dec. 16, 2009). (*See, e.g.,* Plea at 5 (collecting cases).)

But that is not the law in New York, which the Balestriere Firm admits in its Plea applies here. (*See* Plea at 5.) In New York, an attorney discharged even without cause[3] is entitled not to its contracted-for contingency fee, but to "the reasonable value of services rendered in *quantum meruit*." *In re Cooperman*, 83 N.Y.2d 465, 473 (N.Y. 1994) (recognizing that "nonrefundable retainer fees" and other attempts to alter rule via contract void as against public policy of "chilling the client's unbridled prerogative to walk away from the lawyer"); *In re Thelen LLP*, 24 N.Y.3d 16, 28 (N.Y. 2014) ("In New York, clients have always enjoyed the unqualified right to

---

[3] An attorney terminated for cause under New York law has "no right to compensation." *CPMI, Inc. v. Kolaj*, 137 A.D.3d 953, 956, 27 N.Y.S.3d 256, 258 (N.Y. App. Div., 2d Dep't 2016). Where a client and former attorney disagree on whether a termination was for cause, a "hearing is required" to resolve the dispute, an issue which the Court does not need to reach now. *See id.*

9

terminate the attorney-client relationship at any time without any obligation other than to compensate the attorney for the fair and reasonable value of the *completed services*. . . . no law firm has a property interest in future hourly legal fees because they are too contingent in nature and speculative to create a present or future property interest") (emphasis in original; internal quotation marks and citations omitted). Accordingly, even if a court applying New York law is to find that the Balestriere Firm was not terminated for cause, it has no contingency interest in this matter: it has at most a right to the quantum meruit value of work performed.[4]

## CONCLUSION

The Balestriere Firm has not made any showing of any interest justifying intervention under Rule 24(a)(2). It has asserted its charging lien, and has made no showing that Plaintiffs, their counsel, or Defendants would take steps to evade the lien before it is resolved by a court of competent jurisdiction. On the contrary, the Balestriere Firm's flimsy bases claiming that the current Parties to this action are simply more reason why the Balestriere Firm should not be permitted to intervene: it has already signaled that its presence will simply distract in this litigation by raising issues that have no relevance to this current case, are governed by a different law (that of New York) that is applicable anywhere in this action, and is best addressed at a later date.

At a minimum, the Balestriere Firm's intervention should be denied without prejudice and it be required to file a proper brief and pleading consistent with Rule 24(c), so that Plaintiffs may properly address the Balestriere Firm's claimed bases for relief, and give the Court the benefit of such full briefing.

---

[4] Plaintiffs and their current counsel have no way of determining what this amount is, since while they have attempted on numerous occasions discussions with the Balestriere Firm—including asking on numerous occasions for time sheets—the Balestriere Firm has refused to provide them.

Dated: Tiburon, California
       May 7, 2024

                                                By: _____
                                                Matthew W. Schmidt*
                                                **SCHMIDT LAW CORPORATION**
                                                116A Main Street
                                                Tiburon, California 94920
                                                Telephone: (415) 390-6075
                                                matt@schmidtlc.com
                                                *Attorney for Plaintiffs*
                                                *Admitted Pro Hac Vice

**CERTIFICATION OF SERVICE**

      I hereby certify by my signature below that a true and correct copy of the foregoing document was served on all attorneys of record via ECF on this 7th day of May 2024.

Dated: New York, New York
      May 7, 2024

By:_____
Matthew W. Schmidt
Attorney for Plaintiffs