IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS, | § § § | |
| *Plaintiffs,* | § § | |
| vs. | § § | CIVIL ACTION NO. SA-23-CV-580-FB |
| TRAMMELL S. CROW, JR., et al., | § § § | |
| *Defendants.* | § | |

**DEFENDANT BENJAMIN TODD ELLER'S AMENDED COUNTERCLAIMS**

Defendant Benjamin Todd Eller ("Dr. Eller") amends his counterclaims against Plaintiffs Julia Hubbard and Kayla Goedinghaus[1], as follows:

**I.**
**JURISDICTION AND VENUE**

1. Plaintiffs and Dr. Eller have consented to the jurisdiction of this Court, which may exercise diversity jurisdiction over Dr. Eller's counterclaims pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds the minimum amount specified by that statute (exclusive of interest and costs), and the parties are diverse.

**II.**
**THE PARTIES**

2. Plaintiffs reside in the state of Virginia, and both have appeared in this lawsuit.

3. Dr. Eller is a resident of the state of California and has appeared in this lawsuit.

---

[1] While Plaintiffs are also counter-defendants, they are referred to herein as "Plaintiffs."

1

## III.
## OVERVIEW

4. On January 30, 2024, an article in *Cosmopolitan* magazine reported on the sex trafficking allegations Plaintiffs have made in this lawsuit. Included in that article were statements Plaintiffs made about Dr. Eller to the authors of the article that are demonstrably false and defamatory because they implicate Dr. Eller as an active participant in a criminal enterprise that involved sex trafficking.

5. On January 31, 2025, Plaintiff Hubbard decided it was time to ramp up the defamation. In three separate social media posts, Ms. Hubbard described Dr. Eller (who has multiple degrees in psychology) as someone who pretended to be a physician, trafficked Plaintiffs, recorded a video in court in connection with the trafficking scheme, and received payment for assisting others allegedly involved in the sex trafficking conspiracy.

6. It is these statements about which Dr. Eller—who holds multiple degrees in psychology, provides support services for autistic children and their families, and provides executive coaching services—asserts counterclaims against Plaintiffs for defamation and other related causes of action.

7. Plaintiffs' false, malicious allegations about Dr. Eller have caused him financial loss, harmed his reputation, and caused him to suffer humiliation and other ongoing harm.

## IV.
## FACTS

### A. *Plaintiffs' defamatory statements to Cosmopolitan.*

8. On January 30, 2024, *Cosmopolitan*—a fashion magazine that also publishes sexually scandalous stories akin to investigative journalism—published an article entitled, "The Venture."[2] That article accuses Dr. Eller of being an integral part of a sex trafficking conspiracy.

9. Plaintiffs' statements to *Cosmopolitan* include some that are plainly false on their face and suggestions and implications based on those statements and the overall context of the story that Dr. Eller, who lives in California, was an integral part of a sex trafficking conspiracy in Texas.

10. More specifically, Plaintiffs characterized Dr. Eller as someone who conspired to drug, coerce, and sexually abuse Plaintiffs with help from an executive coaching client (Defendant Rick Hubbard) and various medical doctors who allegedly provided the drugs that enabled the conspirators to keep the Plaintiffs in a perpetual state of drug-induced captivity.

11. Examples of the specific false statements Plaintiffs made to *Cosmopolitan* include the following:

- The false statement that Ms. Hubbard had multiple "therapy" sessions with Dr. Eller.

- The false statement that Ms. Hubbard "discover[ed]" that Dr. Eller was conducting these "therapy" sessions even though he "had neither a psychology degree nor a license to practice therapy."

---

[2]    https://www.cosmopolitan.com/lifestyle/a46490439/sex-trafficking-ring-julia-hubbard-kayla-goedinghaus.

- That Dr. Eller, who is not a medical doctor, is not licensed to prescribe drugs, and has never attempted to do so, made "recommendations" to "a series of prescribing physicians" who followed his recommendations and prescribed Ms. Hubbard "stimulants, antidepressants, benzodiazepines, and opioids."

- That in part because of Dr. Eller's actions, Ms. Hubbard's life "became a substance-altered blur."

- That Plaintiff Kayla Goedinghaus had "weekly phone sessions" with Dr. Eller, who was her "provider," and that when she told Dr. Eller that Defendant Ms. Hubbard was abusing her in Texas, Dr. Eller failed to intervene to protect her.

12. Ms. Hubbard prominently features the *Cosmopolitan* article on her LinkedIn profile as a means of further disseminating its defamatory content.[3]

13. Plaintiffs' publication and republication of the false statements they made to *Cosmopolitan* about Dr. Eller have since been republished on the Internet by other unknown persons, thereby compounding and magnifying the harm to Dr. Eller,[4] which is difficult to calculate because of the viral nature of the Internet and society's appetite for salaciousness.

14. As a consequence of Plaintiff's false statements to *Cosmopolitan*, Dr. Eller has lost out on a position as Chief Educational Officer for First Media, an entity located at 3550 Wilshire Boulevard, 20th floor, Los Angeles, CA 90010.

15. When First Media informed Dr. Eller that his tenure was ending, Guy Oranim, a principal in the company, told Dr. Eller that he "had been sued before" and could not say anything more. Prior to this statement, Dr. Eller had been in negotiations with Mr. Oranim to continue in his role with First Media. Ultimately,

---

[3] https://www.linkedin.com/in/juliahub/.

[4] *See, e.g.,* https://www.tiktok.com/@cosmopolitan/video/7330307907038268714 (particularly the portion from 2:21-2:30 in the video).

however, Mr. Oranim stated that the only role for Dr. Eller was a volunteer position and that Dr. Eller might later be eligible for a paid role. Notably, after the *Cosmopolitan* was published, Mr. Oranim rarely communicated with Dr. Eller, which was unusual and inconsistent with their prior professional relationship. Based on this sequence of events, Plaintiffs' defamatory statements were a primary reason he lost his paid position with First Media.

16. Prior to being removed from his position with First Media, which paid him more than $40,000 per year, Dr. Eller held the position for 14 years, all without incident, and he intended to continue in this role for as long as he was able.

17. Dr. Eller learned about the *Cosmopolitan* article by a third party months after it was published. Since then, he has consistently anguished over the extent to which Plaintiffs' false statements in the article will harm him, perhaps irreparably. That anguish includes the fact that Dr. Eller cannot possibly know which of his colleagues, friends, neighbors, and clients have read the *Cosmopolitan* article or the extent to which the article has negatively affected their view of him as a person and a professional, perhaps forever. Nor can he know the extent to which Plaintiffs' defamation will harm or even jeopardize his livelihood in the future.

### B. Plaintiff Hubard's defamatory statements on Instagram.

18. On January 31, 2025, Ms. Hubbard again defamed Dr. Eller as part of what has become a voracious pastime—smearing Dr. Eller and others on social media (Instagram) while promoting herself in an unending pursuit of attention. Her most recent defamation appears in three separate videos, all of which Ms. Hubbard posted

on social media websites, including Instagram (a social media platform with more than two billion users).

19. The social media posts were a three-part smear campaign in which Ms. Hubbard smugly persisted in her longstanding, false contention that Dr. Eller is a sex trafficker. Below are true and correct links to the social media posts:

- https://www.instagram.com/juliahub/reel/DFfq3_DOP3A/
- https://www.instagram.com/juliahub/reel/DFf75oVvqZc/
- https://www.instagram.com/juliahub/reel/DFfo1SKuP9Z/

20. The tag line "#traffickedtoabillioniare" is prominently featured in the videos as it appears in the following true and correct screenshots:

 

21. Ms. Hubbard's use of social media platforms is calculated to maximize the harm to Dr. Eller and is evidence of actual malice. Treating serial slander as a

6

sport, Ms. Hubbard's defamatory statements in the above-referenced social media posts included the following:

- "This is a video of a man that told me he was my doctor."

- That Dr. Eller "presented himself as [Plaintiffs'] doctor in court."

- "He is just talking about how our trafficker needs more control over us and how we need more medication."

- "He's pretending to be a practicing psychologist, but he's not licensed by the State of California, and the police and Prosecutors office said that what he's doing is actually a crime."

- "This is a video of a man that told me he was my doctor."

- "The man who presented himself as our doctor in court is not licensed."

- "He recommended prescriptions in writing, and told us to be quieter when he was violent with us."

- "I escaped first, but he helped my trafficker maintain control of our daughter, by supporting my trafficker and appearing as our physician."

- He is an "UNLICENSED PHYSICIAN."

- "Ladies and gentlemen and idiots of ALL ages, this is 'Dr.' Todd Eller pretending he gave us psychological examinations, and recording a video for court to keep Kayla trafficked and with Rick."

- She says the video is one he "created for us for the court to maintain control of us."

- "He was paid $1200 by my trafficker so he could keep custody of my daughter away from me, and he could help Kayla because he got her in all kinds of trouble."

22.  Each of the above statements is false, and the gist of Ms. Hubbard's social media posts is that Dr. Eller is a California-based puppet-master who conspired with others to traffic Plaintiffs for sex and sought to harm Plaintiffs' children while pretending he was a physician. As Ms. Hubbard is well aware, Dr. Eller had no

7

professional relationship whatsoever with her, and this narrative she has fabricated is as destructive as it is false.

## V.
### FIRST CAUSE OF ACTION: DEFAMATION

23. Dr. Eller reasserts and incorporates by reference each of the above numbered paragraphs.

24. This cause of action is asserted against both Plaintiffs.

25. Plaintiffs joined in defaming Dr. Eller to *Cosmopolitan* and did so while acting in concert for an unlawful purpose. Plaintiffs have also collaborated, strategized, and carefully coordinated in most or all of their defamation of Dr. Eller.

26. Plaintiffs are liable for defamation because they have characterized Dr. Eller as a devious, malevolent person who is one of the key figures in a sex trafficking ring and a person who has fabricated and abused professional credentials in furtherance of that conspiracy, including by masquerading as a physician, directing physicians to prescribe medicine to Plaintiffs, and inducing Plaintiffs and others into trusting him even though his true motive was to conspire with others to harm Plaintiffs and make money through his integral role through the purported sex trafficking ring.

27. Plaintiffs' false statements about Dr. Eller, as described herein, went beyond ordinary negligence. When viewed objectively, Plaintiffs' statements and the overall gist of their characterization of Dr. Eller to *Cosmopolitan* and on social media created an extreme degree of risk, considering the probability and magnitude of potential harm to Dr. Eller as a consequence. Further, Plaintiffs had actual,

subjective awareness of this risk but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Dr. Eller, thereby causing harm to his professional reputation and good name.

28. Plaintiffs also defamed Dr. Eller by implication because an objectively reasonable reading of the main theme or "gist" of the *Cosmopolitan* article and the social media posts would be perceived by an ordinary reader or viewer as harmful to Dr. Eller's profession and reputation.

29. When it was convenient to overstate, enlarge, or embellish to impute wrongdoing to Dr. Eller in furtherance of the false narrative that he was an active participant in an alleged sex trafficking ring, Plaintiffs did so. And when it was expedient to understate, minimize, omit, or juxtapose facts to bolster their overall defamatory characterization of Dr. Eller or theme, they did that too—all to paint Dr. Eller in the most negative light possible.

30. Both Plaintiffs' statements and their overall depiction of Dr. Eller as a sex trafficker to *Cosmopolitan* and on social media were substantially untrue because as a whole, their depiction of Dr. Eller was more damaging to his reputation than a substantially truthful publication would be, and the statements Plaintiffs made about Dr. Eller are neither inactionable statements of opinion nor statements that are not susceptible to verification.

31. At the time they defamed Dr. Eller, Plaintiffs knew or should have known that the gist of the way they described and characterized him and the specific statements they made were false and harmful to Dr. Eller. Further, Plaintiffs made

9

false statements about Dr. Eller knowingly and with reckless disregard for their truth because (1) Plaintiffs entertained serious doubts about the truth of the false statements; and (2) Plaintiffs knew or strongly suspected that their characterization of Dr. Eller could create a substantially false impression to an ordinary reader or viewer.

32. The harm from the defamation is obvious. Plaintiffs' false statements, which include accusations of fraud, criminal activity, and sex trafficking have injured and continue to injure Dr. Eller in his occupation. Such defamation constitutes defamation per se that is so obviously harmful that general damages such as mental anguish and loss of reputation are presumed and need not be proved.

33. As a result of Plaintiffs' defamation, Dr. Eller has experienced financial loss and reputation damage and has been exposed to public hatred, contempt, ridicule, and financial injury that will be difficult if not impossible to repair. All of this has disrupted Dr. Eller's daily routine and caused him significant mental pain and distress.

34. Plaintiffs' defamation of Dr. Eller includes defamation per se.

35. In the alternative, Plaintiffs' defamation is actionable as defamation per quod for the reasons stated herein.

## VI.
### SECOND CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH CONTRACT

36. Dr. Eller reasserts and incorporates by reference each of the above numbered paragraphs.

37. This cause of action is asserted against both Plaintiffs.

38. But for Plaintiffs' unlawful acts and omissions, as set forth herein, there is a reasonable probability that Dr. Eller would have continued in his role at First Media, with the same or greater pay that he had historically received. This did not happen, however, because Plaintiffs' tortious, defamatory statements about Dr. Eller interfered with that contract—not just by ending Dr. Eller's role with First Media but also by tainting his reputation to a degree that he has since been unable to find a comparable role. As a consequence of Plaintiffs' relentless, ongoing defamation, there is also a reasonable probability that Dr. Eller will lose out on other contracts that he would otherwise have received, some of which he may never know about.

39. As a result of Plaintiffs' tortious interference, Dr. Eller has suffered actual damages and other monetary and non-monetary harm as set forth herein.

## VII.
### THIRD CAUSE OF ACTION: CONSPIRACY

40. Plaintiff reasserts and incorporates by reference each of the above numbered paragraphs.

41. This cause of action is asserted against both Plaintiffs.

42. As set forth herein, Plaintiffs, acting in concert and with a meeting of the minds, engaged in overt, tortious acts and omissions in furtherance of and toward an unlawful purpose, as set forth herein, that proximately caused harm to Dr. Eller's career, reputation, and good name—perhaps irreparably.

43. Since both Plaintiffs participated in the concerted tortious activity, they are jointly and severally liable for all concerted unlawful acts committed in furtherance of the unlawful combination.

## PRAYER

44. For the reasons set forth herein, Defendant/Counter-Plaintiff Benjamin Todd Eller seeks a judgment that Plaintiffs take nothing by their claims, which should all be dismissed with prejudice. Dr. Eller further seeks judgment in his favor on each counterclaim asserted herein and seeks the following damages arising from such causes of action:

   a) Actual damages;

   b) Special/consequential damages, including damages for injury to Dr. Eller's reputation, past and future lost wages, past and future mental anguish, and past and future economic injury;

   c) The monetary value of the contracts Plaintiffs tortiously interfered with, including all associated benefits and emoluments of such contracts;

   d) Exemplary/punitive damages;

   e) Joint and several liability to the extent authorized by law;

   f) All attorney's fees and costs of court to the extent authorized by law;

   g) All pre-judgment and post-judgment interest authorized by law; and

   h) All other legal and equitable relief to which Dr. Eller is justly entitled.

Respectfully submitted,

**MINCES RANKIN PLLC**

By: */s/ David M. Minces*
**David M. Minces**
Attorney-in-Charge
Federal I.D. No.: 435389
State Bar No.: 24026880
Email: david@mincesrankin.com
4545 Bissonnet Street, Suite 286
Bellaire, Texas 77401
Telephone: (346) 701-8563
Facsimile: (713) 583-9795

**ATTORNEY FOR DR. ELLER**

## CERTIFICATE OF SERVICE

      I hereby certify that on February 20, 2025, the foregoing was filed and served on all counsel of record via electronic mail through the Court's ECF system.

Matthew W. Schmidt
Schmidt Law Corporation
116A Maint Street
Tiburon, California 94920
Telephone : (415) 390-6075
matt@schmidtlc.com


                                */s/ David M. Minces*
                                  David M. Minces