UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JULIA HUBBARD and KAYLA GOEDINGHAUS,<br><br>Plaintiffs,<br><br>v.<br><br>TRAMMELL S. CROW, JR.; BENJAMIN TODD ELLER; RICHARD HUBBARD; MELISSA MILLER; SCOTT WOODS; MRUGESHKUMAR SHAH; MICHAEL CAIN; COE JURACEK; PHILIP ECOB; H.J. COLE; CODY MITCHELL; KURT KNEWITZ; RALPH ROGERS; ROBERT PRUITT; SCOTT BRUNSON; CASE GROVER; RICHARD BUTLER; MICHAEL HYNES, JR.; SHAWN MAYER; JADE MAYER; AARON BURLINGAME; and RCI HOSPITALITY HOLDINGS, INC.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 5:23-cv-00580-FB-ESC<br><br>Judge: Hon. Fred Biery referred for pretrial proceedings to Magistrate Judge Elizabeth S. Chestney [Dkt. 429]<br>Date Action Filed: May 8, 2023 (transferred) |

**TRAMMELL S. CROW'S MOTION TO STRIKE PLAINTIFFS' EXPERT DISCLOSURE AND DESIGNATION**

# TABLE OF CONTENTS


SUMMARY OF ARGUMENT ........ 1

RELEVANT BACKGROUND ........ 1

A. Ms. Hubbard's Designation of Dr. Dobson in the Dallas Action........ 1

B. Plaintiffs' Designation of Dr. Dobson in this Action........ 2

STANDARDS APPLICABLE TO THIS MOTION ........ 6

ARGUMENT ........ 7

CONCLUSION ........ 10

# TABLE OF AUTHORITIES[1]

## Cases

Arnold v. City of San Antonio,
2009 WL 780671 (W.D. Tex. Mar. 24, 2009) .......... 9

Barrett v. Atl. Richfield Co.,
95 F.3d 375 (5th Cir. 1996)) .......... 9

Bell v. Texaco, Inc.,
493 F. App'x 587 (5th Cir. 2012) .......... 10

Ecuadorian Plaintiffs v. Chevron Corp.,
619 F.3d 373 (5th Cir. 2010) .......... 7

Fuller v. CIG Fin., LLC,
2023 WL 8482889 (N.D. Tex. Dec. 7, 2023) .......... 7, 8

Geiserman v. MacDonald,
893 F.2d 787 (5th Cir. 1990) .......... 9

Lopez v. Fun Eats and Drinks, LLC,
2021 WL 3502361 (N.D. Tex. July 16, 2021) .......... 7

Torres v. City of San Antonio,
2014 WL 7339122 (W.D. Tex. Dec. 23, 2014) .......... 7, 10

Wilson v. Home Depot U.S.A., Inc.,
2014 WL 1882024 (N.D. Tex. May 12, 2014) .......... 9

## Rules

Federal Rule of Civil Procedure 26 .......... passim

Federal Rule of Civil Procedure 37 .......... 1, 7

[1] Unless stated otherwise, all emphasis is added, and internal quotations and citations are omitted.

Pursuant to Rule 37(c) Defendant Trammell S. Crow respectfully moves to strike plaintiffs Julia Hubbard's and Kayla Goedinghaus's expert disclosure and designation of Dr. Leslie Dobson.

## SUMMARY OF ARGUMENT

Plaintiffs have failed to comply with their discovery obligations on numerous occasions, necessitating repeated intervention by the Court. This has carried over into expert discovery where they have failed to disclose information and data that their testifying expert Dr. Dobson considered and used when preparing her report. Pursuant to Rule 26(a)(2)(B)(ii), Plaintiffs were required to disclose all facts and data underlying Dr. Dobson's opinions on August 20, 2026. However, Plaintiffs served Dr. Dobson's report without several significant categories of required information underlying her opinions. Despite Mr. Crow's repeated requests for the missing information and data, Plaintiffs have not disclosed it.

This motion is no surprise to Plaintiffs. Ms. Hubbard designated Dr. Dobson as an expert in another of her matters pending in the Northern District of Texas ("Dallas Action").[2] On June 16, 2026, the magistrate judge in the Dallas Action entered an order striking her designation of Dr. Dobson for failure to disclose the data underlying her opinions.

Mr. Crow is unfairly prejudiced by Plaintiffs' failure to comply with Rule 26. Pursuant to Rule 37, striking the designation and disclosure of Dr. Dobson for violation of Rule 26 is self-executing and is the appropriate remedy. Mr. Crow respectfully requests an order striking Dr. Dobson's disclosure and her purported opinion testimony.

## RELEVANT BACKGROUND

### A. Ms. Hubbard's Designation of Dr. Dobson in the Dallas Action.

In the Dallas Action, Ms. Hubbard is pursuing separate sex trafficking claims against

[2] Hubbard v. D.C.G., Inc, d/b/a The Lodge, et al., Case No. 3:25-cv-00380-X, in the United States District Court for the Northern District of Texas, Dallas Division.

multiple defendants (a strip club and its former customers on alleged events that occurred when Ms. Hubbard danced at that club). (Foltyn-Smith Decl. ¶ 2.) On March 31, 2026, Ms. Hubbard designated Dr. Dobson as an expert in the Dallas Action. (6/16/2026 Order (Foltyn-Smith Decl., Ex. A) at 2.) On May 30, 2026, Defendants in the Dallas Action filed a motion to strike the designation of Dr. Dobson on grounds that her expert disclosure was deficient because the underlying data that Dr. Dobson used to reach her conclusions was not produced. (Id.)

On June 16, 2026, the magistrate judge entered an order striking the disclosure and designation of Dr. Dobson due to the failure to disclose information and data that she considered or utilized in forming her opinions. (Id. at 9.) Ms. Hubbard has objected to the order.

**B. Plaintiffs' Designation of Dr. Dobson in this Action.**

Plaintiffs initiated this lawsuit November 1, 2022, against Mr. Crow and numerous other defendants alleging that they sex and labor trafficked Plaintiffs over several years. (Compl. (Dkt. 1).) Deadlines in this case have been continued multiple times due to Plaintiffs' repeated failures to comply with their discovery obligations and this Court's prior orders. Under the operative scheduling order, "the deadline for Plaintiffs to designate their testifying experts and serve all materials required by [Rule] 26(a)(2)(B)" was August 20, 2026. (Sec. Amend. Sched. Order (Dkt. 441) at 1.) Defendants' deadline to designate testifying experts is September 22, 2026. (Id. at 2.) The deadline to complete fact and expert discovery is October 23, 2026. (Id.)

On August 20, 2026, Plaintiffs served Dr. Dobson's report, curriculum vitae and case list. (Report (Foltyn-Smith Decl.) Ex. B).)[3] The report describes several categories of information and data that Dr. Dobson purports to have relied on, which were required to be produced but were not, including the following:

[3] Plaintiffs did not file an expert designation of Dr. Dobson. (Orig. Sched. Order (Dkt. 319) at 1 ("All parties asserting claims for relief shall file their designation of testifying experts….").)

1. Ms. Hubbard's original psychological intake questionnaire and supplemental psychological intake questionnaire, including the written instructions, Ms. Hubbard's complete written responses, and her signature pages (id. at 1-2);
2. Test templates, checklists, forms, worksheets and questions for the several tests that Dr. Dobson purportedly administered (id. at 2, 8-10);
   a. For example, the completed Life Events Checklist for DSM-5 (LEC-5) (id. at 8), Extended Version; the Clinician-Administered PTSD Scale or DSM-5 (CAPS-5) (id. at 8); the completed Generalized Anxiety Disorder-7 (GAD-7) and Patient Health Questionnaire-9 (PHQ-9) forms (id. at 9); the instrument containing the "standardized interference items" that the report does not identify by name (id. at 10), together with Ms. Hubbard's completed responses;
3. Information related to all tests and examinations, including, any record reflecting where, when and by what means each instrument was administered, and who was present;
   a. For example, the completed CAPS-5, including every question asked, every item response and notation, all frequency and intensity entries, severity ratings, subtotals, trauma-relatedness ratings, global validity rating, and summary sheet;
   b. As another example, the TSI-2 report and score sheets, the computerized score report, including the score summary, all critical items, the T-scores for every scale and subscale, and the profile form;
4. All data collected from tests (including raw data and copies of forms that were filled out);
5. Any psychological examination or evaluation, including the March 31, 2026 forensic psychological evaluation and the August 19, 2026 evaluation (id. at 1);
6. Notes from conversations with and examinations of Ms. Hubbard, including notes before, during and after any examination;

7. Any of Ms. Hubbard's social media that Dr. Dobson reviewed,

8. Any A.I. prompts or queries that were used as part of the analysis or report;

9. Clear identification of the sources for the various pay rates and session rates used in section XI of the report (id. at 14-19);

10. Communications between Ms. Hubbard and Dr. Dobson and any recordings of conversations with Ms. Hubbard (Foltyn-Smith Decl. ¶ 5).

In addition, Dr. Dobson considered and utilized "[her] own forensic psychological evaluation of Ms. Hubbard dated March 31, 2026, prepared in the [Dallas Action]." (Report (Foltyn-Smith, Ex. B) at 2.) Plaintiffs provided Mr. Crow with a copy of Dr. Dobson's report in the Dallas Action, but they never provided the information and data underlying it—the very information and data that they failed to disclose in the Dallas Action. (Foltyn-Smith Decl. ¶ 7.)

On August 22, 2026, Mr. Crow's counsel requested the above-reference categories of withheld information and data that Dr. Dobson had clearly used or considered in forming her opinions. (Emails (Foltyn-Smith Decl., Ex. D) at 11-12.) On August 24, 2026, Mr. Crow's counsel requested additional withheld records. (Id. at 10.) On August 25, 2026, Plaintiffs' counsel acknowledged receipt of the emails, and responded that they "will follow up." (Id. at 9.) Later that day, defendant Shah' counsel emailed the parties the following:

> "I echo the concerns that [Mr. Crow's counsel] has raised regarding the deficient disclosures and believe that these are the same defects that previously occurred as set forth in the briefing and order in [the] Hubbard/Lodge Case as to the Motion to Strike Expert Designation, though it appears that there may also be the lack of a designation altogether in this case. Kindly advise as to whether and how these issues will be addressed promptly, as it infringes upon our ability to conduct a meaningful review of the data and basis of Dr. Dobson's opinions." (Id. at 8.)

On August 26, 2026, Mr. Crow's counsel requested Plaintiffs' counsel's availability for a conferral call regarding their designation, again noting that Defendants had "not received any of

[Dr. Dobson's] required disclosure materials which is causing unfair prejudice." (Id. at 6-7.) On August 27, 2026, Plaintiffs' counsel emailed a response that included the following:

> "While [Plaintiffs had] intended to provide any supplemental materials … by [August 24], Dr. Dobson has been traveling internationally all week so I am still trying to coordinate with her. Once I am able to speak with her and understand her timing on outstanding items, we may seek an extension on the relevant expert deadlines, or simply withdraw the report—in any event, I don't intend to cause prejudice to anyone on this or play games to jam up Defendants' ability to find experts. Given that, I don't think we have a live dispute, but if helpful to speak this afternoon or tomorrow let me know." (Id. at 6.)

On August 28, Mr. Crow's counsel asked that, while waiting to hear from Dr. Dobson, Plaintiffs "provide any undisclosed information related to her report in the Dallas action." (Id. at 5.) On September 2, 2026, Mr. Crow's counsel followed up on the issue again, writing "[w]e've still not received any of the missing materials and information and this has caused prejudice to defendants. Please let us know your availability for a conference tomorrow." (Id. at 4.) On September 3, 2026, Mr. Crow's counsel followed up again to schedule a call to discuss the defective expert designation. On September 4, 2026, Mr. Crow's emailed that "it ha[d] been nearly two weeks and [Plaintiffs] have not provided any of the necessary documents or information" and requested availability to discuss the defective designation, noting that Mr. Crow would file a motion to strike if the issue was not resolved. (Id. at 3.) Later that day, Plaintiffs' counsel finally responded that it was his understanding that much of the requested information did not exist and provided the following update:

> "I'm hopefully speaking again with Dr. Dobson shortly, and I can't confirm or provide those documents until I do. [Mr. Crow's counsel] separately raised the documents produced in the [Dallas] [A]ction, which I also intend to produce but need to finish discussing certain items with Dr. Dobson. Being transparent, I expect we will withdraw the report but, again, I'm not comfortable doing so without speaking with Dr. Dobson. No one will suffer any prejudice because I've already stated I'll agree to or seek appropriate extensions if appropriate. I'm working to resolve this and hopefully

will later today, or by Monday [September 7].” (Id. at 1-2.)

Mr. Crow’s counsel responded that the missing categories of information and data is “a serious issue,” explained that extensions at this point in the case are not an appropriate remedy, and requested that Plaintiffs withdraw Dr. Dobson’s report. (Id. at 1.) As of the filing of this motion, Plaintiffs have not withdrawn Dr. Dobson’s report, provided any of the missing information and data, or otherwise responded further. Also, it is unclear why Plaintiffs’ counsel had difficulty discussing this issue with Dr. Dobson. While she was supposedly unavailable due to international travel, she has posted recorded videos and extensive messages to various social media nearly daily since August 20 regarding her opinions on Lindsay Clancy, even claiming to have “watched every second of the Clancy trial.” (Foltyn-Smith Decl. ¶ 8(a) – (x).)

Due to Plaintiffs’ failure to provide the information and data that Dr. Dobson used and considered when preparing her report in this action and the Dallas Action, Mr. Crow cannot conduct a meaningful review of Dr. Dobson’s report and opinions, Defendants’ experts are unable to meaningfully analyze Dr. Dobson’s report or evaluate the tests that she purportedly conducted, and Defendants have had to put off scheduling Dr. Dobson for deposition.

## STANDARDS APPLICABLE TO THIS MOTION

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert testimony. “[A] party must disclose to the other parties the identity of any witness it may use at trial to present [expert] evidence.” Fed. R. Civ. Proc. 26(a)(2)(A). “[I]f the witness is one retained or specially employed to provide expert testimony,” “[t]he report must contain,” *inter alia*, “a complete statement of all opinions the witness will express and the basis and reasons for them” and “the facts or data considered by the witness in forming them.” Fed. R. Civ. Proc. 26(a)(2)(B).

Under Federal Rule 37(c)(1), “[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or

witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. Proc. 37(c)(1). Exclusion is automatic and mandatory unless the sanctioned party shows the violation of Rule 26 was justified or harmless. Torres v. City of San Antonio, 2014 WL 7339122, at *1 (W.D. Tex. Dec. 23, 2014) In evaluating whether a violation of Rule 26 is harmless, the court examines four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. Fuller v. CIG Fin., LLC, 2023 WL 8482889, at *2-3 (N.D. Tex. Dec. 7, 2023). The court considers the four-factor test holistically. Id. It does not mechanically count the number of factors that favor each side. Id. The disclosing party bears the burden of proving that the failure to timely disclose was substantially justified or harmless. See Lopez v. Fun Eats and Drinks, LLC, 2021 WL 3502361, at *4 (N.D. Tex. July 16, 2021).

## ARGUMENT

Rule 26(a)(2)(B)(ii) requires an expert report to contain "the facts or data considered by the witness in forming" her opinions. Fed. R. Civ. Proc. 26(a)(2)(B)(ii); see Ecuadorian Plaintiffs v. Chevron Corp., 619 F.3d 373, 378 (5th Cir. 2010) ("Rule 26(a)(2)(B) provides that when experts testify before a court, they must submit a report disclosing the data or other information they have considered in reaching their conclusions.").

Here, Dr. Dobson's report specifically identifies multiple tests, questionnaires and other sources of information that Dr. Dobson considered or relied upon in forming her opinions. However, Plaintiffs have not produced any of the of test data, test templates, questionnaire forms, interview notes or other available information that Dr. Dobson used or considered and that is referenced in her report. (See Report (Foltyn-Smith Decl., Ex. B) at 1-2, 8-10.) For example, Dr. Dobson administered GAD-7, PHQ-9, TSI-2, PAI, Life Events Checklist, and

CAPS-5 and she relied on multiple clinical interviews and evaluations with Ms. Hubbard. Nor have Plaintiffs provided or at least clearly identified the sources for the various pay rates and session rates that Dr. Dobson relies on in section XI of her report to opine on treatment recommendations and estimated future cost of care. (Id. at 14-19.)

Plaintiffs have only ever provided Dr. Dobson's report in this action, her report in the Dallas Action, her CV and case list. Because Plaintiffs have not served any of the underlying test data, test templates, questionnaire forms, interview notes or other available information that Dr. Dobson relied upon, considered or utilized, Defendants cannot conduct a meaningful review of Dr. Dobson's report and opinions, their experts are unable to provide a meaningful analysis of the report or evaluate the tests she purportedly conducted, and they cannot schedule Dr. Dobson for deposition because they lack adequate information to conduct a meaningful examination.

There is no dispute that Plaintiffs have not produced any of the information and data that Mr. Crow has repeatedly requested. And, to the extent some of it may not exist, Plaintiffs have never identified with any specificity what information supposedly does not exist—which obviously cannot be the underlying test data. Here, the record supports a finding that Plaintiffs' violation of Rule 26 is not harmless or justified. Fuller, 2023 WL 8482889, at *2-3.

First, Ms. Hubbard cannot provide an adequate explanation for the non-disclosure. Two months before Plaintiffs' expert designations were due in this matter, the court in the Dallas Action entered an order striking Dr. Dobson's designation in that matter due to the failure to provide the information and data she used and considered when preparing her report. By the time Plaintiffs designated Dr. Dobson in this action, they had known for at least two months that they were required to provide the information and data underlying the report *when* it was served. They intentionally withheld those materials when they served the report and have still not provided them. Mr. Crow and other Defendants have been requesting the intentionally withheld

materials since August 22, 2026—two days after Plaintiffs designated Dr. Dobson. Plaintiffs have never provided any explanation for why the withheld information was not timely provided with the report and their after-the-fact excuses are inadequate to excuse their continued nondisclosure in the face of repeated requests for the materials. See Wilson v. Home Depot U.S.A., Inc., 2014 WL 1882024, at *3 (N.D. Tex. May 12, 2014) (Plaintiff "could have notified the Court of his inability to comply with the Rule by the set deadline or otherwise sought assistance. However, he did no such thing."); Arnold v. City of San Antonio, 2009 WL 780671, at *3 (W.D. Tex. Mar. 24, 2009) ("A party may not simply retain an expert and then make whatever disclosures the expert is willing or able to make notwithstanding the known requirements of Rule 26. The adverse party should not be placed at a disadvantage or be deprived of the full benefits of Rule 26 by the selection of an expert who cannot or will not make the required disclosures. The selection and retention of an expert witness is within the control of the party employing the expert. To the extent that there is a disadvantage created by the expert's failure to disclose it must be borne by the party retaining the expert witness.")

Second, Plaintiffs cannot dispute that Dr. Dobson's testimony is important. Dr. Dobson opines on the nature of Ms. Hubbard's purported injuries, causation, the apportionment of Ms. Hubbard's damages in this action and the Dallas Action, treatment recommendations and estimated future cost of care. Not only does the importance of such proposed testimony fail to override the enforcement of local rules and scheduling orders, but the importance of Dr. Dobson's expert testimony "merely underscores the need for [Plaintiffs] to have complied with the [C]ourt's deadlines or at least informed the [Court] in advance if good faith compliance was not possible." Wilson, 2014 WL 1882024, at *5 (quoting Geiserman v. MacDonald, 893 F.2d 787, 792 (5th Cir. 1990), and Barrett v. Atl. Richfield Co., 95 F.3d 375, 381 (5th Cir. 1996)).

Third, without the testing data sets, scoring protocols, raw item responses, interpretive

outputs, interview notes, and records reviewed, Defendants cannot, *inter alia*, adequately prepare for or conduct Dr. Dobson's deposition or challenge her methods, scoring accuracy, validity scales, or causation at hearing or trial. Plaintiffs' nondisclosure prejudices Defendants. See Bell v. Texaco, Inc., 493 F. App'x 587, 593 (5th Cir. 2012) (considering whether the other party's preparation for trial was substantially prejudiced.)

Fourth, under the circumstances, a continuance is not the appropriate remedy to cure the prejudice to Defendants. This case has been pending for nearly four years and the Court has repeatedly extended the deadlines in this case to accommodate Plaintiffs' discovery misconduct and delays. This is yet another instance of Plaintiffs' intentional and strategic discovery misconduct. They did not provide the underlying information and data even though they knew from the Rules and the Dallas Action that it was required. There is no justification for their misconduct and the defective designation is not harmless. See Torres, 2014 WL 7339122, at *1 (automatic exclusion where no showing defective designation was justified or harmless). Moreover, considering that Plaintiffs' counsel twice suggested that they may withdraw the report, striking it would not be a hardship. (Emails (Foltyn-Smith Decl., Ex. D) at 2, 6.)

Considering these four factors holistically, each weighs in favor of finding that Plaintiffs' non-compliance with Rule 26 was not substantially justified or harmless.

## CONCLUSION

Mr. Crow respectfully requests an order striking Plaintiffs' expert disclosure and designation of Dr. Dobson. Plaintiffs knew that they were required to produce by August 20 all information and data that Dr. Dobson considered or used when preparing her report. They intentionally and without excuse failed to produce those materials or timely correct the issue.

DATED: September 10, 2026 Respectfully submitted,

*/s/ Kenneth C. Stone*

______________________________

GRAY REED
KENNETH C. STONE
Texas Bar No. 19296300
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
kstone@grayreed.com

Gerald E. Hawxhurst
Texas State Bar No. 24090636
jerry@hawxhurstllp.com
HAWXHURST LLP
1301 S. Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
Tel: (512) 522-4995
Fax: (512) 522-4961

*Attorneys for Defendant*
*Trammell S. Crow*

## CERTIFICATE OF CONFERENCE

Over multiple weeks, Mr. Crow's counsel emailed Plaintiffs' counsel several times in a good faith attempt to resolve the subject matter of this motion. Plaintiffs promised to resolve the complained of issues or withdraw the expert report, but did not do so. Plaintiffs' counsel would not provide their availability for a call to discuss the issue and indicated that they did not believe there was a live dispute on the issue. Accordingly, Mr. Crow has sought the Court's intervention to strike Plaintiffs' expert disclosure and designation of Dr. Dobson.

Kyle Foltyn-Smith

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on September 10, 2026, on all counsel of record via ECF and Defendant Phil Ecob via email by agreement.

Kyle Foltyn-Smith