**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JULIA HUBBARD and KAYLA GOEDINGHAUS,** | § | |
| | § | |
| ***Plaintiffs,*** | § | |
| | § | |
| **vs.** | § | **CASE NO. 5:23-CV-00580-FB** |
| | § | |
| **TRAMMELL S. CROW, JR., et al.,** | § | |
| | § | |
| ***Defendants.*** | § | |

**DEFENDANT ELLER'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JULIA HUBBARD**

Respectfully submitted,

**MINCES RANKIN PLLC**

By: *__/s/ David M. Minces__*
**David M. Minces**
Attorney-in-Charge
Federal I.D. No.: 435389
State Bar No.: 24026880
Email: david@mincesrankin.com
4545 Bissonnet Street, Suite 298
Bellaire, Texas 77401
Telephone: (346) 701-8563
Facsimile: (713) 583-9795

**ATTORNEY FOR DEFENDANT ELLER**

## TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ........ 1

II. UNDISPUTED MATERIAL FACTS ........ 1

III. SUMMARY JUDGMENT STANDARD ........ 3

IV. ARGUMENT ........ 4

A. Hubbard cannot establish liability for sex trafficking against Eller ........ 4

1. Hubbard admitted that her only purported evidence in support of her accusation about the prescriptions rests on a guess ........ 5

2. Hubbard cannot meet her burden of proving that Eller helped Rick retain custody of Hubbard's daughter or compel Hubbard to engage in commercial sex ........ 8

B. Hubbard cannot establish beneficiary liability for her trafficking claims. ........ 8

C. The same evidentiary deficiencies defeat Hubbard's forced labor claim ........ 13

D. Hubbard cannot establish that Eller conducted an enterprise through a pattern of racketeering activity ........ 14

1. Hubbard's evidence does not establish that Eller directed the alleged enterprise ........ 15

2. The conduct Hubbard describes does not establish a pattern of racketeering activity ........ 16

3. Hubbard's claimed financial losses do not establish any racketeering injury attributable to Eller ........ 18

E. Hubbard's evidence does not establish Eller's agreement to a racketeering scheme ........ 19

V. PRAYER ........ 20

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. Singh*, 480 F.3d 351 (5th Cir. 2007) .................. 15, 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................. 4

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) .................. 18

*Beck v. Prupis*, 529 U.S. 494 (2000) .................. 19

*Boyle v. United States*, 556 U.S. 938 (2009) .................. 15

*Eason v. Thaler*, 73 F.3d 1322 (5th Cir. 1996) .................. 4

*Forsyth v. Barr*, 19 F.3d 1527 (5th Cir. 1994) .................. 4

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) .................. 16

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992) .................. 20

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc) .................. 7, 13

*Mack v. Newton*, 737 F.2d 1343 (5th Cir. 1984) .................. 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) .................. 4

*Medical Marijuana, Inc. v. Horn*, 604 U.S. 593 (2025) .................. 18

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) .................. 15

*Salinas v. United States*, 522 U.S. 52 (1997) .................. 19

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) .................. 14

*Snow Ingredients, Inc. v. SnoWizard, Inc.,* 833 F.3d 512 (5th Cir. 2016) .................. 19

*United States v. Lewis*, 157 F.4th 415 (5th Cir. 2025) .................. 5

*United States v. Simpson*, 741 F.3d 539 (5th Cir. 2014) .................. 17

**<u>Statutes and Rules</u>**

Fed. R. Civ. P. 56 .......... 1, 3, 20

18 U.S.C. § 1512.......... 17

18 U.S.C. § 1589(a) .......... 13

18 U.S.C. § 1589(c)(1) .......... 13

18 U.S.C. § 1589(c)(2) .......... 13

18 U.S.C. § 1591(a)(1).......... 5, 8

18 U.S.C. § 1591(a)(2).......... 9

18 U.S.C. § 1591(e)(1) .......... 8

18 U.S.C. § 1591(e)(2) .......... 8

18 U.S.C. § 1591(e)(4) .......... 9

18 U.S.C. § 1595.......... 4, 5, 9

18 U.S.C. § 1961.......... 16

18 U.S.C. § 1962(c).......... 14

18 U.S.C. § 1962(d) .......... 19

18 U.S.C. § 1964(c).......... 14, 18

Defendant Benjamin Todd Eller ("Eller") files this Motion for Summary Judgment against Plaintiff Julia Hubbard ("Hubbard") pursuant to Federal Rule of Civil Procedure 56. In support thereof, Eller shows as follows:

## I. Summary of Argument

Hubbard's case against Eller rests on everything but evidence—a supposed sealed envelope with unknown content, a video she never saw anyone play in court, and payments whose purpose she could only guess. She accuses Eller of directing physicians to prescribe drugs that her former husband, Rick Hubbard ("Rick"), used to force her into commercial sex and labor, and of helping Rick retain custody of their daughter to maintain control over her. But the evidence never connects Eller to those acts. Hubbard advances far-reaching theories, but her evidence does not connect Eller's conduct to the trafficking she alleges. Those missing connections defeat every claim against him. In short, Hubbard's evidence does not show that Eller obtained or maintained her for commercial sex or engaged in any of the other numerous types of actions listed to make a claim of trafficking under the relevant statute. Hubbard's evidence likewise does not establish that Eller directed a racketeering enterprise or knowingly agreed to its criminal purpose and merely repeating these same accusations under trafficking, forced labor, and RICO statutes does not supply those missing connections. Accordingly, the Court should grant this motion for summary judgment and dismiss all of Hubbard's claims against Eller.

## II. Undisputed Material Facts

Eller adopts and incorporates the factual background concerning the parties in the Undisputed Material Facts section of Defendant Trammell S. Crow, Jr.'s Motion

for Summary Judgment, including the supporting record citations. The following additional facts address Eller's involvement.

Eller provided Rick executive and life coaching in 2016, and again from 2017 to 2019. (Exhibit 1, ¶ 6). Rick paid Eller for these services in 2017 to 2019. (*Id.* at ¶¶ 6, 10). Hubbard is Rick's former wife. (Exhibit 1B, ¶ 85). Hubbard and Rick were together from approximately 2009 to 2017. (*Id.* at ¶¶ 84, 232). Kayla Goedinghaus ("Goedinghaus") is Rick's former fiancée. (*Id.* at ¶267). Goedinghaus and Rick were together from approximately 2018 to 2019. (*Id.*).

Plaintiffs allege that Eller recommended medications to physicians and participated in custody proceedings to help Rick control and traffic them. (Exhibit 1B, ¶¶ 111-29, 278, 316-25). Eller has never met, spoken with, written to, or otherwise communicated with Defendants Dr. Melissa Miller, Dr. Scott Woods, or Dr. Mrugeshkumar Shah. (Exhibit 1, ¶¶ 2-4). He never asked or directed any physician to prescribe medication to either Plaintiff, directly or through Rick. (*Id.* at ¶¶ 7-8).

Hubbard admitted that Eller never gave her drugs, offered her drugs, or wrote her a prescription. (Exhibit 2, 1415:5-11). She admitted that she never saw Eller speak with any defendant other than Rick. (Exhibit 4, RFA No. 14). She also acknowledged that she has no documents showing that Eller urged another person to prescribe her a drug. (Exhibit 2, 1423:23-1424:1; Exhibit 4, RFA No. 80).

Hubbard testified that she delivered "sealed envelopes" from Rick to her physicians and believed that inside those unopened envelopes were letters from Eller instructing the physicians to prescribe her drugs. (Exhibit 2, 1432:3-17; 1433:2-10).

She further testified that when she delivered an envelope, she was not allowed to open it. (*Id.* at 1432:14-17). Thus, she acknowledged that her "knowledge" of what the sealed envelopes contained is merely an assumption. (*Id.* at 1432:3-17; 1528:22-1529:4). When counsel asked whether she was "surmising" the contents of the unopened envelope, she agreed. (*Id.* at 1433:2-7). She then admitted that her description of its contents was a "guess." (*Id.* at 1433:2-10; 17-19).

Additionally, Hubbard alleges that Eller submitted a letter in her custody dispute to help Rick maintain control over her children. (Exhibit 1B, ¶ 120). Eller states that he did not write, sign, submit, or authorize that letter. (Exhibit 1, ¶ 11). At her deposition, Hubbard acknowledged previously telling another person that Rick had forged documents attributed to Eller and used them in court. (Exhibit 2, 1483:10-24). When told that Eller had reported Rick's alleged forgeries to the police, she responded, "I didn't know that, but that makes sense." (*Id.* at 1479:23-1480:3).

Hubbard testified that Rick told her he needed to pay Eller $2,500 per month. (*Id.* at 1398:15-1399:1.) She said she concluded sometime after 2020 that those payments were for helping Rick sexually traffic her. (*Id.* at 1399:6-11). When counsel asked whether she meant that every payment concerned trafficking and none concerned life coaching, she answered, "I . . . have no idea about that." (*Id.* at 1399:2-17).

## III. Summary Judgment Standard

Summary judgment is proper when the information before the court shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material

fact is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the movant meets its burden of showing no genuine dispute of material fact exists, the burden shifts to the non-movant to prove with affirmative evidence "specific facts showing that there is genuine issue for trial." *Id.* To meet this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This requires a proffering of significant probative evidence that would enable a jury to return a verdict in the non-movant's favor. *See Anderson*, 477 U.S. at 256-57.

When evaluating a motion for summary judgment, courts must draw reasonable inferences in favor of the non-movant. *See Mack v. Newton*, 737 F.2d 1343, 1350-51 (5th Cir. 1984). That requirement "does not extend so far as to allow a wholly unreasonable inference or one which amounts to mere speculation and conjecture." *Id.* at 1351. Thus, conclusory allegations are not competent summary judgment evidence. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Nor are unsubstantiated assertions, improbable inferences, and unsupported speculation. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

## IV. ARGUMENT

### A. Hubbard cannot establish liability for sex trafficking against Eller.

Per Hubbard's own sworn statements, she cannot establish essential elements of her sex trafficking claim pursuant to § 1591(a) against Eller. Section 1595(a)

permits a victim of sex trafficking pursuant to § 1591(a) to seek civil relief. 18 U.S.C. § 1595(a). To establish direct liability under § 1591(a)(1), Hubbard must prove that Eller (1) knowingly (2) recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited her (3) in a commercial sex act (4) in or affecting interstate or foreign commerce. *Id.* § 1591(a)(1). In order to meet the first element of having "knowingly" engaged in the prohibited activity, Hubbard is required to prove that Eller knew or recklessly disregarded that someone would use force, threats of force, fraud, or coercion to cause her to engage in a commercial sex act. *Id.*; *see United States v. Lewis*, 157 F.4th 415, 424 (5th Cir. 2025).

In this motion, Eller is not challenging the elements of commerciality and an interstate nexus. Nevertheless, Hubbard still has the burden to establish that Eller himself performed a covered act with the required knowledge or reckless disregard. *See Lewis*, 157 F.4th at 424. Thus, Hubbard must establish that Eller knowingly obtained or maintained her and knew or recklessly disregarded that coercion would cause her to engage in commercial sex. *Id.* She alleges that Eller did so by procuring drugs and manipulating custody proceedings to keep her under Rick's control. (Exhibit 1B, ¶¶ 111-12, 117-29, 316-20). Hubbard cannot establish essential elements to prove her claims under any of these theories.

1. **Hubbard admitted that her only purported evidence in support of her accusation about the prescriptions rests on a guess.**

Hubbard claims that Eller helped Rick maintain control over her for commercial sex by directing Drs. Miller, Woods, and Shah to prescribe drugs that Rick used to control her. (*Id.* at ¶¶ 126-29). Eller has never met, spoken with, written

to, or otherwise communicated with any of these physicians. (Exhibit 1, ¶¶ 2-4). He never asked or directed any physician to prescribe medication to Hubbard, directly or through Rick. (*Id.* at ¶¶ 7-8).

Hubbard has admitted that she has never seen Eller speak with any other Defendant, other than Rick. (Exhibit 4, RFA No. 14). Hubbard has admitted that Eller never gave her drugs, offered her drugs, or wrote her a prescription. (*Id.* at RFA Nos. 49-50, 78-80). Hubbard has never seen a prescription bearing Eller's signature or a document in which he recommended that a physician prescribe her a particular drug. (Exhibit 2, 1415:12-17; Exhibit 4, RFA No. 21). While Hubbard has produced unsworn statements in which she claimed that Eller prescribed her drugs, when asked about this during her deposition, she admitted under oath that she later learned that that accusation was false. (Exhibit 2, 1440:6-17).

Hubbard has at times claimed that Eller, through written communications, instructed other physicians to prescribe her drugs. (Exhibit 1B, ¶ 127; Exhibit 2, 1432:3-11). However, Hubbard admitted that she has no documents showing Eller recommending prescriptions for her to any doctor. (Exhibit 2, 1423:23-1424:1; Exhibit 4, RFA No. 80). Her accusation of "written communications" instead rests on the contents of an envelope she never opened. (Exhibit 2, 1432:14-17). Hubbard recalled delivering the envelope to a physician and assumed it contained prescription instructions from Eller. (*Id.* at 1432:3-17; 1433:2-10, 17-19). She admitted that she was "surmising" its contents and that her account was a "guess." (*Id.*). Her explanation was explicit: "I wasn't allowed . . . to open the envelope. I assume that's

what it was." (*Id.* at 1432:14-17). Delivering an unopened envelope gives Hubbard no personal knowledge of what it contained. Her assumption supplies no evidence that Eller wrote prescription instructions, that a physician followed them, or that Rick obtained drugs as a result.

Her testimony about overheard conversations between Rick and Eller concerned only the reasons for Hubbard going to a physician and the reasons her prescriptions needed to change. (*Id.* at 1529:5-18). Even accepting that Hubbard's testimony is accurate, the testimony identifies no particular drug Eller directed a physician to prescribe, no prescription a physician wrote in response, and no medication Rick obtained through Eller and used to compel commercial sex. Hubbard fills each missing link with an assumption. Nothing in her account establishes that the overheard discussions are admissible evidence of Eller procuring drugs for Rick.

The defect is substantive. Hubbard's admissions establish that she cannot meet her burden to prove prescription theory of coercion. Instead, she has acknowledged that the only way she can attempt to establish her accusation relies upon her guess about the envelope that she did not open. The conversations she describes supply no evidence that Eller caused a physician to prescribe drugs that Rick used to control her. Hubbard's speculation is not evidence and certainly insufficient to meet the requisite evidentiary burden. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (holding that conclusory allegations and unsubstantiated assertions cannot satisfy the nonmovant's summary judgment burden).

**2. Hubbard cannot meet her burden of proving that Eller helped Rick retain custody of Hubbard's daughter or compel Hubbard to engage in commercial sex.**

Section 1591 recognizes actual or threatened abuse of legal process as a form of coercion. 18 U.S.C. §§ 1591(e)(1), (e)(2)(C). Hubbard must connect the alleged court-related conduct to Eller's obtaining or maintaining her for commercial sex. *Id.* § 1591(a)(1). She does not.

Hubbard's complaint reproduces a letter she alleges Eller submitted in her custody dispute to help Rick maintain control over her children. (Exhibit 1B, ¶ 120). Eller expressly denies writing, signing, submitting, or authorizing that letter. (Exhibit 1, ¶ 11). Hubbard herself acknowledged that she previously told another person Rick had forged documents attributed to Eller and used them in court. (Exhibit 2, 1483:10-24). When told Eller had reported Rick's alleged forgeries to the police, she responded, "I didn't know that, but that makes sense." (*Id.* at 1479:23-1480:3). Even assuming Eller wrote and signed the letter, Hubbard makes an unsubstantiated leap from a letter supporting Rick in a custody dispute to participation in sex trafficking. Nothing connects the letter to obtaining or maintaining Hubbard for commercial sex or shows that Eller knew or recklessly disregarded that Rick would use coercion to cause commercial sex.

**B. Hubbard cannot establish beneficiary liability for her trafficking claims.**

Hubbard must prove that Eller knowingly benefited, financially or by receiving something of value, from participating in a venture that violates § 1591(a)(1). 18 U.S.C. § 1591(a)(2). Participation requires knowingly assisting, supporting, or

facilitating that violation. *Id.* § 1591(e)(4). Hubbard must also establish that Eller knew or recklessly disregarded that someone would use force, threats of force, fraud, or coercion to cause her to engage in commercial sex. *Id.* § 1591(a)(2). Civil beneficiary liability is also permitted when a defendant knowingly benefits from participating in a venture that he knew or should have known had engaged in trafficking. *Id.* § 1595(a). Even under that constructive-knowledge standard, Hubbard must establish participation in the venture and a benefit arising from that participation. *Id.* Hubbard cannot establish these essential elements under either provision.

The only benefit Hubbard claims Eller received was financial, and she has no idea the amount of financial benefit Eller supposedly received. When asked whether Rick paid Eller more than $100,000, she said she was unsure and that it "felt like that" to her, but she had never added up the payments and that any total she gave in that context would be a guess. (Exhibit 2, 1410:22-25; 1412:25-1413:5). The evidence Hubbard cites as a purported payment from Rick to Eller is a $2,000 Cash App transaction, and her representation of it is a fraud. (Exhibit 1B, ¶¶ 113-14, 323).

114. Below is an example of one such partial payment to Eller. Rick sent the below screenshot to Goedinghaus to show her that he had paid Eller.




This is not what the document said. In discovery, Hubbard produced the full confirmation email for the exact transaction she featured. Below is the confirmation email in full, with the omitted portion in a yellow box. (Exhibit 3, HUBBARD2-0010251-0010252). The amount, payment note, and most importantly the highlighted transaction identifiers (#AZNA6VS) match—but the missing portion shows an entirely different payment direction.

---------- Forwarded message ---------
From: **Cash App** <cash@square.com>
Date: Fri, Aug 2, 2019 at 9:36 PM
Subject: You sent $2,000 to Rick Hubbard for Dr. Eller
To: Kayla Goedinghaus <[redacted]>



Rick Hubbard

Payment to $TXEcoLoft

$2,000.00

for Dr. Eller

Completed

| | |
|---|---|
| Amount | $2,000.00 |
| Source | Cash |
| Identifier | #AZNA6VS |

What this document ***actually*** shows is ***Goedinghaus paying Rick***. The email receipt from Cash App went to Goedinghaus's personal email address (which is redacted in accordance with the Court's Protective Order) and its subject line states:

"You sent $2,000 to Rick Hubbard for Dr. Eller." This receipt does not show that Eller received any payment from Rick, Hubbard, or Goedinghaus.

Hubbard's beneficiary-liability theory rests on an unsupported inference: because Rick purportedly paid Eller, those payments must have compensated Eller for participating in sex trafficking. Hubbard alleges that Rick paid Eller thousands of dollars each month to procure drugs, use the courts to keep her under Rick's control, and otherwise help Rick traffic her. (Exhibit 1B, ¶¶ 111-14, 321-24). She concluded that the payments were for this trafficking after 2020—years after they were made and based on no particular evidence. (Exhibit 2, 1398:17-1399:1). Hubbard cannot substantiate a connection between any payment to Eller's alleged trafficking. Even if a jury credited every payment Hubbard claims Rick paid Eller for trafficking, through her inconsistent testimony alone, it would still have to determine what Eller received those payments for. Hubbard's evidence of this is pure speculation unworthy of credence—alternating between insisting that every dollar paid to Eller was for trafficking and admitting that she had "no idea" whether any of the money went towards the life coaching services Eller provided Rick. (*Id.* at 1399:1-1400:6). Thus, even crediting Hubbard's testimony that Rick made recurring payments to Eller, the evidence does not establish that those payments arose from Eller's participation in the alleged trafficking venture, rather than from his separate professional relationship with Rick.

The distinction is dispositive. Hubbard's assumption that the payments compensated Eller for trafficking cannot supply that connection: unsubstantiated

assertions and conclusory allegations cannot create a genuine issue for trial. *See Little*, 37 F.3d at 1075. Her evidence establishes, at most, a financial relationship—not the requisite connection between participation and benefit. Hubbard's evidence offers no non-speculative basis from which a reasonable jury could find those elements satisfied. Her beneficiary-liability claims therefore fail.

**C. The same evidentiary deficiencies defeat Hubbard's forced labor claim.**

Section 1589(a) prohibits knowingly obtaining or providing another person's labor or services through force or physical restraint, serious harm, abuse of legal process, or a scheme intended to make the person believe that refusing to work would result in serious harm or physical restraint. 18 U.S.C. § 1589(a)(1)-(4). Serious harm includes physical, psychological, financial, or reputational harm sufficiently serious to compel a reasonable person of the same background and circumstances to perform or continue performing labor to avoid that harm. *Id.* § 1589(c)(2). Abuse of legal process includes using or threatening to use legal proceedings for an improper purpose to pressure someone to act or refrain from acting. *Id.* § 1589(c)(1).

Hubbard relies on the same alleged conduct by Eller to support both her sex-trafficking and forced labor claims and identifies no additional conduct by Eller to support her forced labor theory. (Exhibit 1B, ¶ 325).

325. These acts also constitute labor trafficking under the TVPA, as Eller obtained the services of Plaintiffs through the same means described above, and participated in and benefitted from the Venture, which also obtained forced labor from Plaintiffs.

The same evidentiary deficiencies outlined in Section IV (B) above therefore resolve both claims against him. The evidence does not substantiate Eller's alleged role in the venture or connect any benefit he received to participation in it. Even assuming Rick or other defendants compelled Hubbard to work, no reasonable jury could find on this record that Eller knowingly obtained or provided her labor through a prohibited means or knowingly benefited from participating in a venture that did so. The Court should grant summary judgment in Eller's favor on Hubbard's forced labor claim.

**D. Hubbard cannot establish that Eller conducted an enterprise through a pattern of racketeering activity.**

To establish a RICO claim as Hubbard asserts, she must prove that Eller conducted an enterprise through a pattern of racketeering activity and that the violation caused injury to her business or property. 18 U.S.C. §§ 1962(c), 1964(c); *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Hubbard's RICO claim repackages the same unsupported prescription, custody, and payment allegations that underlie her trafficking claims. She alleges that Defendants formed an enterprise and committed trafficking, drug offenses, wire fraud, and witness tampering. (Exhibit 1B, ¶¶ 407-12). Those labels do not establish that Eller directed an enterprise, committed a pattern of predicate offenses, or caused injury to Hubbard's business or property. Each requires evidence. Hubbard's speculation supplies none.

**1. Hubbard's evidence does not establish that Eller directed the alleged enterprise.**

An association-in-fact enterprise, as Hubbard alleges in her Second Amended Complaint, requires a common purpose, relationships among its participants, and sufficient longevity to pursue that purpose. *See Boyle v. United States*, 556 U.S. 938, 944-46 (2009). Its participants must function as a continuing unit. *Id.* at 945, 948. The enterprise's existence is a separate element, although the same evidence may establish both the enterprise and the racketeering pattern. *Id.* at 947. The defendant must also be distinct from the enterprise. *See Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007). To impose liability on Eller, Hubbard must establish that he participated in the enterprise's operation or management, including some part in directing its affairs. *See Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993).

Hubbard alleges that Eller coordinated with physicians to obtain drugs that Rick used to control her. (Exhibit 1B, ¶ 127). But Eller never met, spoke with, wrote to, or otherwise communicated with those physicians. (Exhibit 1, ¶¶ 2-4). He never directed them to prescribe medication to Hubbard, personally or through Rick. (*Id.* at ¶¶ 7-8). She admits that she never saw Eller speak with any defendant other than Rick and has no documents showing that Eller urged a physician to prescribe her medication. (Exhibit 4, RFA Nos. 14, 80; Exhibit 2, 1423:23-1424:1).

The evidence therefore supplies no factual basis for the coordination Hubbard attributes to Eller. His relationship with Rick establishes contact between two people. It does not establish that they pursued a common trafficking purpose or that Eller directed a continuing organization. None of Hubbard's alleged evidence supplies that

missing proof. A jury could find that Eller operated the alleged enterprise only by assuming the very coordination Hubbard must prove and cannot.

### 2. The conduct Hubbard describes does not establish a pattern of racketeering activity.

A pattern of racketeering activity requires at least two qualifying predicate acts within ten years, together with proof that the acts are related and amount to, or threaten, continuing criminal activity. *Id.* § 1961(5); *see H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237-39 (1989). Hubbard therefore must establish conduct satisfying the elements of the offenses she invokes before those acts can constitute a racketeering pattern.

Hubbard identifies trafficking, controlled-substance offenses, wire fraud, and witness tampering as predicates in Count Three of her Second Amended Complaint. (Exhibit 1B, ¶ 411). Hubbard must establish conduct satisfying a qualifying offense under § 1961(1).

The trafficking predicates fail for the reasons addressed above. No evidence shows that Eller obtained or maintained Hubbard for commercial sex, obtained her labor through coercion, or benefited from participating in either alleged venture.

The same record supports no controlled-substance offense. Hubbard admitted that Eller never prescribed, offered, or gave her drugs. (Exhibit 4, RFA Nos. 49-50, 78, 80). She admits that she never saw Eller speak with any defendant other than Rick and has no documents showing that Eller urged a physician to prescribe her medication. (*Id.* at RFA Nos. 14, 80; Exhibit 2, 1423:23-1424:1). Hubbard identifies no evidence that Eller manufactured, distributed, dispensed, or otherwise unlawfully

dealt in controlled substances. Hubbard's speculation that Eller somehow influenced medical doctors to prescribe her medications based only on his (non-existent) recommendations cannot establish a qualifying controlled substance predicate.

The wire-fraud allegation likewise requires evidence of a scheme to defraud and use of wires to further that scheme. *See United States v. Simpson*, 741 F.3d 539, 547–48 (5th Cir. 2014). Hubbard cannot identify evidence that shows that Eller used a call, message, or payment to execute a scheme to obtain money or property through fraud. Hubbard's belief that Rick paid Eller for trafficking supplies no evidence of what any payment purchased. (Exhibit 2, 1399:12-1400:6).

She identifies no act by Eller that qualifies as witness tampering under any subsection of § 1512. Hubbard's evidence is a letter Eller allegedly wrote to influence a judicial custody determination of Hubbard's daughter. (Exhibit 1B, ¶ 120). Eller did not write or sign the letter that was featured in Hubbard's complaint. (Exhibit 1, ¶ 11; Exhibit 1B, ¶ 120). Even assuming Eller wrote and signed the letter, Hubbard identifies no evidence that the letter was intended to intimidate or corruptly influence a witness, prevent or alter testimony, suppress evidence, obstruct an official proceeding, or interfere with communications concerning a federal offense. Nor does she identify any federal proceeding or protected federal law-enforcement communication to which the alleged conduct was directed. At most, her allegation concerns a purported expression of support for Rick in a custody dispute. Without evidence of conduct satisfying the elements of § 1512, the letter cannot serve as a predicate.

Listing criminal statutes cannot turn Hubbard's allegations into racketeering. Hubbard will not be able to identify any evidence of qualifying predicates, and thus she cannot establish a pattern.

**3. Hubbard's claimed financial losses do not establish any racketeering injury attributable to Eller.**

Section 1964(c) requires injury to business or property proximately caused by the RICO violation. *See Medical Marijuana, Inc. v. Horn*, 604 U.S. 593, 600-02, 608-10 (2025). Physical and emotional injuries alone cannot support recovery. *Id.* at 601. A resulting business or property loss may qualify, but Hubbard must establish both that loss and its causal connection to the violation. *Id.* at 608-610.

Here, to the extent Hubbard also claims lost earnings, withheld wages, damaged property, housing losses, or other injury, she must connect those losses to predicate racketeering conducted through the alleged enterprise, and her evidence must establish that a RICO violation proximately caused them. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457-61 (2006) (requiring a direct relationship between the alleged RICO violation and the plaintiff's injury).

This requirement is not met. Instead, Hubbard's prescription, custody, and payment evidence does not establish the predicate offenses or the participation she attributes to Eller. Proof that she suffered financial losses alone falls short of showing the required causal connection. Accordingly, summary judgment is proper as to Count Three.

**E. Hubbard's evidence does not establish Eller's agreement to a racketeering scheme.**

Section 1962(d) requires proof of an agreement to accomplish a substantive RICO violation. The agreement is the core of the claim. *Abraham*, 480 F.3d at 357. Although Eller need not personally commit two predicates, Hubbard must establish his knowing agreement to the criminal scheme. *See Salinas v. United States*, 522 U.S. 52, 63-65 (1997).

Even crediting Hubbard's testimony that she told Eller about forced sex parties solely for summary judgment purposes, that testimony establishes nothing more than an alleged disclosure. (Exhibit 2, 1392:14-18). It does not establish Eller's agreement to facilitate trafficking or another predicate offense. Hubbard's accounts of medication discussions, custody-related conduct, and payments likewise do not establish a knowing agreement to facilitate a racketeering scheme. Further, considering those circumstances together also does not supply the criminal agreement her conspiracy claim requires. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525–26 (5th Cir. 2016) (requiring "an actual agreement between conspirators" and specific intent to engage in illegal conduct).

Civil recovery under § 1962(d) also requires injury to business or property through an act of racketeering or another act independently wrongful under RICO. 18 U.S.C. § 1962(d); *see Beck v. Prupis*, 529 U.S. 494, 505–07 (2000). An otherwise lawful act in furtherance of a conspiracy cannot supply the required injury. *Beck*, 529 U.S. at 505-07. As explained previously, no evidence connects Hubbard's claimed financial losses to the alleged racketeering, and her conspiracy allegation cannot

supply that missing causal connection. *Id.*; *see also Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992) (requiring "some direct relation between the injury asserted and the injurious conduct alleged"). Accordingly, the Court should grant Eller summary judgment on Count Four.

## V. Prayer

Pursuant to Federal Rule of Civil Procedure 56, Defendant Eller seeks summary judgment against Plaintiff Julia Hubbard and all additional relief to which he is entitled, whether at law or in equity.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2026, true and correct copies of the foregoing were served on all counsel of record via the Court's electronic filing system.

*/s/ David M. Minces*
David M. Minces